Get a Document - by Citation - 1997 U.S. Dist. LEXIS 15849　　　　　　　　　　　　　Page 1 of 12

Case 1:02-cv-00648-WDQ   Document 34-78   Filed 09/12/2003   Page 1 of 21

Service: **Get by LEXSEE®**
Citation: **1997 us dist lexis 15849**

*1997 U.S. Dist. LEXIS 15849, ** *

LINDA GALLIEN DEVINE, Plaintiff, v. RICHMOND REDEVELOPMENT AND HOUSING AUTHORITY, Defendant.

Civil Action Number 3:96CV1036

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION

1997 U.S. Dist. LEXIS 15849

August 13, 1997, Decided
August 13, 1997, Filed

**DISPOSITION:** [*1] Motion by defendant Richmond Redevelopment and Housing Authority ("RRHA") for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure GRANTED. Case DISMISSED with prejudice.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff employee filed an action against defendant employer (a redevelopment and housing authority) and alleged retaliation and discrimination on the basis of race, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.S. § 2000e, et seq., and on the basis of disability, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101, et seq. The employer moved for summary judgment.

**OVERVIEW:** The employee initiated an action against the employer and alleged retaliation and discrimination on the basis of race, in violation of Title VII, and on the basis of disability, in violation of the ADA. The employer filed a motion for summary judgment. The court granted the motion for summary judgement in favor of the employer. As to the employee's Title VII claim, the court held that the employee failed to establish a prima facie case of discrimination. Moreover, the court held that, even if the employee had established a prima facie case of discrimination, her claim of race discrimination could not succeed because the employer had articulated legitimate, non-discriminatory reasons for her demotion. As to the employee's ADA claim, the court held that the claim was subject to dismissal because the employee failed to meet the jurisdictional prerequisite of first filing her claim with the Equal Employment Opportunity Commission.

**OUTCOME:** The court granted the motion for summary judgment in favor of the employer.

**CORE TERMS:** supervisor, deadline, staff, demotion, demoted, skills, supervisory, accounting, assigned, team, directive, rating, summary judgment, prima facie case, satisfactorily, race discrimination, delegate, annual, duties, white male, insubordination, terminated, commended, proffered, return to work, communicate, demote, audit, discriminatory intent, replacement

**LexisNexis (TM) HEADNOTES - Core Concepts - ♦ Hide Concepts**

Case 1:02-cv-00648-WDQ   Document 34-7   Filed 09/12/2003   Page 2 of 12

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 15849                    Page 2 of 12

Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN1** A motion for summary judgment lies only where there is no genuine issue as to any material fact and where the nonmoving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion. While viewing the facts in such a manner, the court looks to the affidavits or other specific facts to determine whether a triable issue exists. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN2** In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the genuineness and materiality of any purported factual issues. Whether an issue is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Fed. R. Civ. P. 56(c) and (e). Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment

**HN3** An employee's claims of individual discriminatory treatment, in violation of Title VII, must be analyzed under the McDonnell Douglas framework. Under this analytical framework, the employee must first establish a prima facie case of discrimination. If the employee does so, the employer may rebut the presumption of discriminatory intent by articulating legitimate nondiscriminatory business reasons for the challenged actions. The ultimate burden of persuasion remains with the employee throughout the McDonnell Douglas process. If the employee can prove that the reasons proffered by the employer are not the true reasons, but instead, actually are pretexts for discrimination, the employee may prevail on a claim of disparate treatment. To prove pretext, the employee must demonstrate both the reason articulated by the employer was false, and that discrimination was the real reason for the challenged action. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment

**HN4** A plaintiff under Title VII may prove the discriminatory intent of the defendant through direct evidence, by introducing statements of the defendant. However, where the plaintiff has no direct evidence of discrimination, the plaintiff must attempt to prove discrimination through circumstantial evidence. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment

**HN5** A prima facie case of discrimination under Title VII consists of the following elements: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the job and performed the job satisfactorily; (3) in spite of plaintiff's qualifications and performance, plaintiff was demoted and ultimately discharged; and (4) the position remained open to similarly qualified applicants after plaintiff's dismissal. More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Enforcement
Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies

**HN6** In order to raise a discrimination claim under the Americans with Disabilities Act in federal court, the plaintiff must first resort to appropriate administrative proceedings through the Equal Employment Opportunity Commission. More Like This Headnote

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 13849

Case 1:02-cv-00648-WDQ Document 34-7 Filed 09/12/2003 Page 3 of 12

Page 2 of 12

**COUNSEL:** LINDA GALLIEN DEVINE, plaintiff, Pro se, Midlothian, Va.

For RICHMOND REDEVELOPMENT AND HOUSING AUTHORITY, defendant: David Edward Nagle, Sharon Jeanne Glover, LeClair Ryan, Richmond, VA.

**JUDGES:** James R. Spencer, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** James R. Spencer

**OPINION: MEMORANDUM OPINION**

THIS MATTER is before the Court on a motion by defendant Richmond Redevelopment and Housing Authority ("RRHA") for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, the Court will GRANT defendant's motion.

**STATEMENT OF FACTS**

Pro se plaintiff Linda Devine, a white female, began working at RRHA in April of 1990. She was hired by David Seabrook, a black male, as an accounting supervisor. During her five-month probationary period, through September 1990, Ms. Devine received favorable reviews. On her first full Personnel Evaluation in September 1991, she received all above-average marks, except in the areas of planning and organization [*2] of work and compatibility with other employees. In those categories, she received average marks.

For the twelve months ending October 6, 1992, Ms. Devine received a 4.50 rating and was commended for superior performance. In the weakness category, she was told to continue to strive to keep her supervisor informed of the status of assigned tasks.

On her Personnel Evaluation for the twelve months ending October 2, 1993, Ms. Devine received an overall rating of 3.25. In this evaluation, Mr. Seabrook noted that Ms. Devine should accept priorities as outlined by her supervisor. Further, she was told that her emotional responses in discussions with other RRHA employees should be kept to a minimum. Additionally, she was informed that she needed to continue to improve planning and review of work so that deadlines are met, ensure that staff are fully trained, keep her supervisor informed of the status of assigned tasks, and adhere to agreed upon deadlines.

On October 2, 1994, Ms. Devine received another annual Personnel Evaluation in which she received an overall rating of 3.25. As in her previous evaluations, Mr. Seabrook commended her for her accounting skills. However, he also directed [*3] her to continue to strive to keep management informed of the status of assigned tasks. Further, she was to accept all assigned tasks and complete them as scheduled.

Two months later, on December 2, 1994, Ms. Devine received an Interim Evaluation containing thirty-one points addressing the following issues needing improvement: (1) supervisory planning for her staff, (2) timely supervisory review of staff work, (3) staff training, (4) delegation of work to staff, (5) communication to staff and other employees, (6) communication with and response to her team leader, (7) the blaming of staff, supervisors, and other departments for failures or lack of success, and (8) prioritizing staff work load or following the priorities of her supervisor.

Ms. Devine's Interim Evaluation on December 14, 1994 notes that she should respond in a timely manner when her supervisor needs certain information instead of failing to respond at all. Additionally, Mr. Seabrook reiterated that Ms. Devine should follow through on agreed upon tasks, complete those tasks as instructed and adhere to the deadlines established for

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 15849 Page 4 of 12

Case 1:02-cv-00648-WDQ    Document 34-7    Filed 09/12/2003    Page 4 of 12

those tasks.

In an Interim Evaluation dated February 9, 1995, Mr. Seabrook commended Ms. [*4] Devine on her efforts as team leader on RRHA's annual external audit. However, she was also admonished about her difficulty with adhering to deadlines, her failure to properly delegate work duties, her problems in communicating with co-workers, and her refusal to follow RRHA policy regarding staff evaluations. At the end of the evaluation, Ms. Devine was warned that if she did not follow future team directives, Mr. Seabrook would evaluate her teamwork as unacceptable and evaluate her job performance accordingly.

Mr. Seabrook issued another Interim Evaluation of Ms. Devine on March 20, 1995. This evaluation discussed Ms. Devine's formal response to her February 9, 1995 Interim Evaluation. Mr. Seabrook pointed out that her response to his concerns addressed other non-related issues and set forth non-factual events. He also noted that her communication skills with her staff had not improved.

As for Ms. Devine's' supervisory skills, Mr. Seabrook indicated that her performance was less than competent for the following job specific criterion: "Supervises the general accounting functions of the company." Further, he stated that in 75 days he would initiate a special evaluation using the [*5] Personnel Performance Evaluation Form that is normally used on an annual basis. He continued by informing her that if her performance is not rated as at least "able performance," then he would assign tasks to her which exclude supervisory responsibilities. Mr. Seabrook also noted that this action could result in a demotion.

On June 16, 1995, Mr. Seabrook issued another Interim Evaluation remarking on Ms. Devine's failure to train the staff properly. Mr. Seabrook also discussed Ms. Devine's performance in the following areas: her failure to prioritize daily tasks and track them to determine if they have been completed on time, Ms. Devine's unprofessional behavior in getting into a loud argument with one of her subordinates, and the fact that Ms. Devine tape recorded another RRHA employee against the directives of her supervisor and without the consent of the employee. In conclusion, Mr. Seabrook asserted that her recent actions reconfirmed her inability to supervise an accounting team. On the positive side, Mr. Seabrook noted that Ms. Devine has good accounting technical skills, and he expressed his desire for her continued employment at RRHA. Then, he offered her a demotion to the [*6] position of Senior Accountant, and gave her a week off with pay to decide if she was willing to voluntarily accept the demotion. He added that if she decided to reject the demotion, "then the only other recourse may be termination."

It is undisputed that the stated reason for Ms. Devine's demotion was a lack of supervisory skills and failure to meet deadlines. The decision to demote Ms. Devine was also approved by Mr. Seabrook's supervisor, Harry Zulauf, a white male, and by Richard Gentry, the Executive Director of RRHA, also a white male.

On August 3, 1995, Ms. Devine received a memorandum from Peter Monse, her new supervisor, a white male. The memo expressed concerns about her performance since her arrival in his area on June 27, 1995. He outlined his expectations of her and what he wanted her to do in the future: (1) follow his specific instructions and ask for clarification if she does not understand something; (2) communicate with key individuals when needed and do not make assumptions about what they may say; (3) communicate any issues that she may have through the defined lines of authority; (4) do not take personal time off without approval first or when a key deadline will [*7] be missed unless it is a medical or other type of emergency; (5) cooperate with teammates in meeting department goals and refrain from openly criticizing teammates; (6) work at controlling her argumentative behavior with him; and (7) do not change the way they currently do business without a proper recommendation and a review process.

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 15849

Case 1:02-cv-00648-WDQ   Document 34-15   Filed 09/12/2003   Page 5 of 12

Page 5 of 12

Mr. Zulauf sent Ms. Devine a memorandum on September 29, 1995 regarding an additional act of insubordination. She had failed to follow the proper lines of authority in communicating certain issues that she had. He also stated that any future acts of insubordination may result in her dismissal.

On October 5, 1995, Ms. Devine's psychiatrist, Dr. Bressler, wrote a letter advising that Ms. Devine would need to take medical leave due to anxiety. n1 On October 11, 1995, Ms. Devine requested and received medical leave pursuant to RRHA's family and medical leave policy and the federal Family and Medical Leave Act ("FMLA"). She never returned to work at RRHA.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Ms. Devine admitted in her deposition that she has had problems with anxiety since at least 1979.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*8]

Dale Dutton, Director of Administration at RRHA, and a white male, sent Ms. Devine a letter on January 3, 1996 asking of her intent to return to work because her leave under FMLA had expired. Ms. Devine's attorney responded she could not return to work in an "intolerable and retaliatory work environment without further endangering her health." Further, the response letter provided that "The only 'accommodation' that could have been afforded was a cessation of the hostilities directed against her. n2 RRHA's reluctance to concede this environment, or its responsibility for Ms. Devine's present damages, makes it difficult for her to articulate an 'accommodation' with any more precision."

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The hostilities and retaliation to which Ms. Devine refers apparently relate to responses she has received to her objections to accounting practices at RRHA and RRHA's resistance to her objections.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

On January 17, 1996, Mr. Dutton sent a letter to Ms. Devine confirming that she was unable to return to work and that she did not [*9] believe that any accommodation would enable her to return to work. With that understanding, Mr. Dutton informed her that her name would immediately be removed from the payroll. On December 27, 1996, Ms. Devine filed the instant lawsuit claiming that RRHA discriminated against her based on her race and disability.

## ANALYSIS

### Standard of Review

HN1 A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where the nonmoving party is entitled to judgment as a matter of law. Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985); Fed.R.Civ.P. 56(c). The Court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion. Ballinger v. North Carolina Agr. Extension Serv., 815 F.2d 1001, 1004 (4th Cir.), cert. denied, 484 U.S. 897, 108 S. Ct. 232, 98 L. Ed. 2d 191 (1987). While viewing the facts in such a manner, the Court looks to the affidavits or other specific facts to

determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

> HN2
> In determining whether summary judgment may be granted, [*10] the district court must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues. Whether an issue is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Rule 56(c) and (e) . . . . Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes.

Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

**Race Discrimination**

Essentially, Ms. Devine claims that she was demoted on June 26, 1995 by her black supervisor because she is white. n3 Specifically, Ms. Devine alleges that her performance evaluations were false and malicious and that they were used to harass her and to justify the discrimination. Further, she maintains that her supervisor, Mr. Seabrook, "racially harassed her with unreasable [sic] work requests with unreasonable deadlines requiring 20 to 30 hours overtimes [sic] each week." She [*11] claims that these work requests were designed to harass her and cause her so much stress that she would be unable to do her job.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Because Ms. Devine is a pro se plaintiff, the Court will liberally construe her complaint. Paragraph Eight of the complaint states that Mr. Seabrook terminated her on June 26, 1996. The undisputed facts are that she was demoted to Senior Accountant on June 26, 1995, and she was terminated and removed from the payroll on January 17, 1996. Thus, the Court concludes that Ms. Devine's complaint contains a typographical error as to the June 26, 1996 date which should be June 26, 1995. Further, to the extent that Ms. Devine claims that she was wrongfully terminated on June 26, 1995, the Court will grant summary judgment to RRHA because the undisputed fact is that Ms. Devine was not terminated on that date. However, viewing Ms. Devine's complaint liberally, the Court will assume for purposes of this motion that she alleges that she was wrongfully demoted on June 26, 1995.

- - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

HN3 Ms. Devine's [*12] claims of individual discriminatory treatment must be analyzed under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny. Under this analytical framework, Ms. Devine must first establish a prima facie case of discrimination. n4 If she does so, RRHA may rebut the presumption of discriminatory intent by articulating legitimate nondiscriminatory business reasons for the challenged actions. The ultimate burden of persuasion remains with Ms. Devine throughout the McDonnell Douglas process. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). If Ms. Devine can prove that the reasons proffered by RRHA are not the true reasons, but instead, actually are pretexts for discrimination, Ms. Devine may prevail on her claim of disparate treatment. Texas Dept. of Community Affairs v.

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 15849

Case 1:02-cv-00648-WDQ   Document 34-7   Filed 09/12/2003   Page 7 of 27

Page 7 of 12

Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). To prove pretext, Ms. Devine must demonstrate "both the reason [articulated by the employer] was false, and that discrimination was the real reason [for the challenged action]." Hicks, 113 S. Ct. at 2752.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 HN4 A plaintiff under Title VII may prove the discriminatory intent of the defendant through direct evidence, by introducing statements of the defendant. Moore v. Charlotte, 754 F.2d 1100, 1104-05 (4th Cir.), cert. denied, 472 U.S. 1021, 87 L. Ed. 2d 623, 105 S. Ct. 3489 (1985). However, because Ms. Devine has no direct evidence of discrimination, she must attempt to prove discrimination through circumstantial evidence. Id.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*13] HN5

A prima facie case consists of the following elements:

> (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the job and performed the job satisfactorily; (3) in spite of plaintiff's qualifications and performance, plaintiff was demoted and ultimately discharged; and (4) the position remained open to similarly qualified applicants after plaintiff's dismissal.

Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994).

Ms. Devine cannot establish a prima facie case of discrimination based on the facts established in the record before this Court. Although Ms. Devine can show that she is a member of a protected class, she cannot proceed to satisfy the second prong of the test. Ms. Devine cannot establish that at the time she was demoted, she was qualified for the accounting supervisor position and that she performed her job satisfactorily.

Beginning with her annual Performance Evaluation on October 12, 1993, Ms. Devine received comments urging her to keep her supervisor informed about the status of assigned tasks and reminding her to meet agreed upon deadlines set by her supervisor, Mr. Seabrook. In that year, her overall evaluation rating dropped [*14] from 4.5 to 3.25. In her next evaluation in September 1994, Ms. Devine again received a 3.25 rating, however, Mr. Seabrook admonished her to continue to keep him apprised of her progress on assigned tasks. In addition to urging her to meet assigned deadlines, he also told her that she must accept all assigned tasks. This is a sign of what would become a pervasive pattern of insubordination and refusal to complete or even accept assigned duties from her immediate supervisor.

By December of 1994, Mr. Seabrook presented Ms. Devine with a lengthy, detailed Interim Evaluation of the areas in her work that he had identified as substantially lacking. He also suggested ways for her to improve and to meet deadlines. But, instead of responding to this evaluation by improving her work performance, delegating more work to her staff, and honing her supervisory skills, Ms. Devine responded point-by-point to Mr. Seabrook's evaluation. Most of her response consisted of denials that any problems existed or placing the blame on others for her shortcomings.

On February 9, 1995, Ms. Devine received yet another Interim Evaluation. This time the evaluation commended her on her work with the Finance Team [*15] in completing RRHA's external report. n5 However, Mr. Seabrook also commented on her failure to follow his directive in completing evaluations of her staff. n6 In direct relation to this incident, he

warned her that if she did not follow future team directives, he would evaluate her teamwork as unacceptable and evaluate her job performance accordingly.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Apparently, many of the employees on the team received a commendation letter and recognition for their help in completing the audit report on time since this had never been done before at RRHA.

n6 During oral argument, Ms. Devine discussed, at length, the reprimand that she received for failing to follow the team's evaluation policy when she evaluated April Giles, a black employee on her team. The policy was that before an employee's rating on an annual Personnel Evaluation could decrease, the supervisor must have conducted formal Interim Evaluations to validate the supervisor's concern with decreased performance. Mr. Seabrook explained that this method gives the employee notice and an opportunity to correct the problem before his or her rating drops.

On one occasion, Ms. Devine reduced Ms. Giles' rating from 4 to 3 without benefit of a single Interim Evaluation for conduct that she claimed had been ongoing for almost a year. Mr. Seabrook advised Ms. Devine that she could not do this because it was against the policy established for the team.

Ms. Devine claims that this reprimand is an example of discrimination against her when she was only "doing her job." Further, she maintains that Mr. Seabrook was directing her to give special treatment to a black employee. The Court does not accept Ms. Devine's view of these events. Instead, the Court finds that Ms. Devine's obstinacy regarding the rules that she was to follow in conducting evaluations is simply additional evidence of her inability to perform satisfactorily in her position as supervisor.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*16]

Another Interim Evaluation on March 20, 1995, criticized Ms. Devine's supervisory skills, specifically, her inability to communicate with her staff, her refusal to delegate work, her failure to develop and sign off on work plans, and her failure to follow her own supervisor's directives. At this point, Ms. Devine was informed that if her performance did not improve within the next 75 days, she would be relieved of all of her supervisory duties. Furthermore, he noted, this would result in a demotion.

By June 16, 1995, Ms. Devine's performance had not improved. She was still refusing to accept assigned projects, failing to meet deadlines, and failing to keep her supervisor informed about the progress of her tasks. She was even reprimanded for having a loud argument with one of her subordinates. Her final act of insubordination was taping a conversation with another RRHA employee without the employee's permission. This action was in direct violation of instructions that she had previously been given regarding the taping of RRHA employees.

Thus, although, Mr. Seabrook recognized Ms. Devine's laudable accounting knowledge and analytical skills, he demoted her to a position as Senior [*17] Accountant. This decision was based on Ms. Devine's demonstrated inability to perform her supervisory duties satisfactorily, which is well-documented by comments in her annual Personnel and Interim Evaluations over a period of approximately two years. Even though she admits that she failed to delegate some duties, that she did not follow the directives of her supervisor and that during the first three months of 1995 she "wasn't as good of an employee," Ms. Devine disagrees with her

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 15849

Case 1:02-cv-00648-WDQ   Document 34-7   Filed 09/12/2003   Page 9 of 12

Page 9 of 12

supervisor's assessment of her abilities as a supervisor. However, her perception of her abilities is irrelevant in this case. It is the perception of the decision maker which is relevant. Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980). Thus, based on this record of Ms. Devine's performance, she has failed to prove that she was qualified for and performed her job as a supervisor satisfactorily. Hence, by failing to satisfy the second prong of the McDonnell Douglas test, Ms. Devine has not set forth a prima facie case of discrimination.

Even assuming that she had set forth a prima facie case of discrimination, Ms. Devine's claim of race discrimination could not succeed because RRHA has articulated [*18] legitimate, non-discriminatory reasons for her demotion. The paper trail created by Ms. Devine's evaluations and her responses to them speak for themselves. Even Ms. Devine admits to being insubordinate, failing to follow the directives of her supervisors, refusing to delegate responsibilities to her staff, and an inability to accept the procedures created by her employer. All of these deficiencies go toward her inability to perform satisfactorily as a supervisor. To her credit, RRHA recognized her excellent skills as an accountant and decided that it wanted to retain her in that capacity rather than dismiss her entirely. The Court finds that all of the reasons proffered by RRHA for demoting Ms. Devine are legitimate and non-discriminatory explanations supporting Ms. Devine's demotion.

To show that RRHA's proffered reasons for the demotion are pretextual, Ms. Devine must prove both that the reasons are false and that race discrimination was the real reason for her demotion. Ms. Devine is utterly incapable of presenting evidence to support either of these factors. In attempting to satisfy her burden in this area Ms. Devine asserts a number of arguments. First, in trying to prove disparate [*19] treatment she claims that although Michelle Dabbs Brown, the black woman who replace her in her supervisor position, failed to meet deadlines, she was not demoted. Ms. Devine makes much of the fact that the 1994 audit was completed by the December 31 deadline while she was a supervisor, whereas the 1995 and 1996 audits were completed after the deadline when Ms. Brown was a supervisor. This is a non-issue in this case. The 1994 audit was completed due to the cooperative efforts of 17 RRHA employees, and it is the only time that an audit report has ever been completed on time, even during the previous years when Ms. Devine was a supervisor. More importantly, however, this is not the reason that Ms. Devine was demoted. She was demoted for consistently missing deadlines, for failing to supervise her staff, and for insubordination, among numerous other reasons.

Next, Ms. Devine argues that RRHA lowered the standards to be met by the supervisor for her replacement, Ms. Brown. However, Ms. Devine has not presented any evidence to support this notion. She has elicited testimony that there have been improvements in technology since her departure and that more supervisors have been hired, but [*20] this does not show discrimination. If anything, this evidence only shows that she and her replacement are not similarly situated, and therefore, no comparison can be made at all under the Title VII framework. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) ("to be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."). The evidence presented by Ms. Devine is that she and Ms. Brown were subject to different standards as the procedures in the department have changed since Ms. Devine was demoted. Further, there is no evidence in the record that Ms. Brown refused to follow the directives of her supervisors, failed to delegate work to her staff, or was insubordinate. It is not enough for Ms. Devine to show that her replacement was black. She must bring forth some evidence of discrimination, and she has not done so. Therefore, Ms. Devine cannot establish pretext by pointing [*21] to the manner in which Ms. Brown was treated by RRHA.

Ms. Devine also argues that her unfavorable interim reviews only began after RRHA received her physician's letter in October of 1994 advising that, for health reasons, she should not

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 15849
Case 1:02-cv-00648-WDQ   Document 34-7   Filed 09/12/2003   Page 10 of 12
Page 10 of 12

work any overtime. Not only does this argument have nothing to do with race discrimination, the record indicates that the caliber of her evaluations began to dwindle long before RRHA received this letter from Ms. Devine's doctor. Although it is true that her first Interim Evaluation was in December 1994, even a cursory review of Ms. Devine's annual Personnel Evaluations in 1993 and 1994 indicates that her supervisory skills were not up to par. n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 The 1994 evaluation was completed in September 1994. The doctor's letter is dated October 25, 1994. Thus, there can be no argument that the doctor's letter had any influence on this evaluation.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

With respect to showing that RRHA's decision to demote her was based on discrimination, Ms. Devine fails miserably n8. The only thing that [*22] Ms. Devine has managed to prove is that she was demoted by a black supervisor who commended her on her accounting skills even when demoting her from her position as supervisor. This does not violate the provisions of Title VII. Furthermore, the decision to demote her was authorized by Mr. Seabrook's two white supervisors. And, Ms. Devine's subsequent white supervisor, echoed similar complaints about her performance in his department.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 In the entire record before this Court, the only reference to Ms. Devine's race is an alleged comment by Harry Zulauf. Ms. Devine contends that Mr. Zulauf, on at least one occasion, told her that she was "the wrong color." Even accepting for the purpose of this motion that Mr. Zulauf indeed made that statement, no discriminatory intent arises. In her own deposition, Ms. Devine admitted that Mr. Zulauf did not discriminate against her. Thus, it is impossible to impute intentional discrimination to RRHA based on a statement made by a white male who did not discriminate against Ms. Devine based on her race.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*23]

So, in the final analysis, the record reveals that Ms. Devine's performance as an accounting supervisor was deficient. She was loath to follow the policies and directives implemented by her supervisor. And she was unable to communicate effectively with her subordinates. Moreover, she refused to delegate duties and tasks to the people on her team. Essentially, Ms. Devine turned her back on her core responsibilities as a supervisor and lost sight of her true position and authority in the chain of command at RRHA. All of this was in an effort to "do it her way." Ms. Devine's cry of racism under these circumstances minimizes the claims of all of the people who bring legitimate allegations of discrimination in the workplace. This case and other baseless lawsuits of this sort have the same effect on society as a person who yells "fire" in a crowded theater when there is none. Innocent people are needlessly tread upon and everyone comes out of it injured in some way.

After a needless waste of judicial time and resources over the past eight months since Ms. Devine filed this lawsuit, the evidence supports only one finding: there was no racial animus behind the decision to demote Ms. Devine [*24] from her position as supervisor. Ms. Devine has failed to persuade the Court that RRHA's proffered reasons for her demotion are pretextual. Therefore, the Court must grant summary judgment to the defendant on Ms. Devine's claim of race discrimination.

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 15849

Case 1:02-cv-00648-WDQ   Document 34-7   Filed 09/12/2003   Page 11 of 12

Page 11 of 12

### The Americans with Disabilities Act ("ADA") Claim

RRHA correctly argues that Ms. Devine's claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., must be dismissed. HN6 In order to raise a discrimination claim in federal court, the plaintiff must first resort to appropriate administrative proceedings through the EEOC. See Ritter v. Mount St. Mary's College, 814 F.2d 986, 993 (4th Cir.), cert. denied, 484 U.S. 913, 98 L. Ed. 2d 217, 108 S. Ct. 260 (1987). Ms. Devine's EEOC complaint only alleges a violation of Title VII. In her EEOC complaint she explicitly stated "I believe I was discharged because of my race (White) and because of my outspokenness in violation of Title VII of the Civil Rights Act of 1964 as amended." There is nothing in the EEOC complaint stating that she was terminated because of her emotional problems, depression and anxiety. Therefore, she has not met the jurisdictional [*25] prerequisite to arguing this theory in this Court. See id. Therefore, Ms. Devine's claim under the ADA will be dismissed.

### CONCLUSION

Ms. Devine has failed to prove a prima facie case of race discrimination and has failed to establish a violation of the ADA. For these reasons, the Court will GRANT defendant's motion for summary judgment and DISMISS this case.

An appropriate Final Order shall issue.

James R. Spencer

UNITED STATES DISTRICT JUDGE

AUG 13 1997
DATE

### FINAL ORDER

THIS MATTER is before the Court on a motion by defendant Richmond Redevelopment and Housing Authority ("RRHA") for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated in the accompanying Memorandum Opinion, the Court hereby GRANTS defendant's motion. Accordingly, this case is DISMISSED with prejudice.

Ms. Devine is advised that she has the right to appeal this decision. If she wishes to do so, she must file a notice of appeal with the Clerk of the district court within thirty (30) days after entry of this Final Order.

Let the Clerk send a copy of this Final Order to Ms. Devine and counsel for defendant.

And it is SO ORDERED. [*26]

James R. Spencer

UNITED STATES DISTRICT JUDGE

AUG 13 1997
DATE

Service: **Get by LEXSEE®**

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 15849

Case 1:02-cv-00648-WDQ   Document 34-7   Filed 09/12/2003   Page 12 of 12

Page 12 of 12

Citation: **1997 us dist lexis 15849**
View: Full
Date/Time: Thursday, September 11, 2003 - 12:33 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.