IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | : : : : | |
| Plaintiff, | : : | |
| and | : : | |
| KATHY KOCH | : : : | CASE NO.: WDQ 02-CV-648 |
| Intervenor/Plaintiff, | : : : | JURY DEMANDED |
| v. | : : | |
| LA WEIGHT LOSS | : : : | |
| Defendant. | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
LA WEIGHT LOSS'S MOTION FOR PROTECTIVE ORDER**

Having lured defendant, LA Weight Loss Centers, Inc. ("LA Weight Loss") into producing for inspection documents containing its trade secret, proprietary and confidential information based on an express agreement that the parties would negotiate a confidentiality stipulation, plaintiff Equal Employment Opportunity Commission ("EEOC") now has moved for production of copies of these documents declaring they are not entitled to any confidentiality protection. Had it known that the EEOC apparently never had any intention of negotiating a confidentiality stipulation in good faith, LA Weight Loss would have long ago sought the protection of the court under Federal Rule of Civil Procedure 26(c) and L.R. 104.13 of the Local Rules of the United States District Court for the District of Maryland . LA Weight Loss now seeks a protective order to permit production of copies of documents containing its trade secret, proprietary and confidential information pursuant to the confidentiality provisions of the order.

DSB:932319.1

There are two categories of documents for which LA Weight Loss seeks protection. First, the EEOC has requested a production of documents containing LA Weight Loss's trade secret and proprietary information about the operations of its highly successful weight loss program. These documents include: (1) training materials describing in detail the weight loss program developed and utilized exclusively by LA Weight Loss; (2) materials describing the step by step sales techniques utilized by LA Weight Loss in selling its products and services; and (3) detailed pricing information, including information regarding certain product discounts, on LA Weight Loss various dietary and nutritional products. Second, the EEOC seeks production of documents containing confidential employee information. For example, the EEOC seeks production of various employee's salary information, benefits elections and social security numbers. It is well established that documents in these two categories are entitled to the confidentiality between the parties as courts have regularly entered confidentiality orders to protect such information from disclosure. Accordingly, LA Weight Loss respectfully requests the Court enter the Confidentiality Order in the form attached.

I.   FACTUAL BACKGROUND

   A.   **LA Weight Loss's Trade Secret, Proprietary and Confidential Information**

The weight loss industry is a highly competitive business with vast numbers of diet programs and nutritional products all competing to assist the public in losing weight. (Declaration of Karen Siegel, attached hereto as Exhibit A, ¶ 3). LA Weight Loss is a leader in this highly competitive industry through its development and marketing of its exceptionally successful weight loss program. (Ex. A, ¶ 4). LA Weight Loss's program consists of a specialized diet regime, weight loss and weight maintenance counseling and the sale of various dietary and nutritional products. (Ex. A, ¶ 5). LA Weight Loss's diet regime, counseling

techniques and marketing and sales strategies of its services and products are unique to LA Weight Loss and serve to distinguish LA Weight Loss from its competitors.  (Ex. A, ¶ 6).

In order to qualify new employees to provide LA Weight Loss's weight loss system and methods, LA Weight Loss requires newly hired employees to participate in detailed training regarding the Company's program, diet, sales techniques and strategies and product pricing.  (Ex. A, ¶ 7).  This training contains detailed information on LA Weight Loss's weight loss program and its implementation and maintenance.  The information further contains detailed strategies and techniques for selling the Company's services and products including specific responses and techniques to consummate sales.  This information has been developed from the Company's knowledge and experience and is not readily obtainable from any other source. (Ex. A, ¶ 8).

LA Weight Loss's training information is not shared or conveyed to the general public or others in the weight loss industry and is only provided to employees after execution of a confidentiality agreement specifying that: "[the] employee agrees that (s)he will not disclose or communicate any information of any nature or description concerning the names of any of [LA Weight Loss's] clients, the charges it makes or has made, or any other information of or concerning the business of [LA Weight Loss], its plans, procedures, or other data . . ."  (Exhibit 1, ¶ 4, to Siegel Declaration, Ex. A, ¶ 9 hereto).  Further, upon termination of employment, LA Weight Loss requires all employees to return all documents, records, manuals and notebooks containing company information, so that such information remains confidential and does not become known by the general public or its competitors within the industry.  (Exhibit 1, ¶ 5, to Siegel Declaration, Ex. A, ¶ 9 hereto).

In addition to its confidential and proprietary training material, LA Weight Loss maintains its employee records in complete confidence.  Personnel files are maintained at

Corporate Headquarters in the Human Resources department and off-site in a storage warehouse, both of which are secured and locked.[1] (Ex. A, ¶ 11). Only employees of the Human Resources department,[2] the Company's owners and the subject of the respective file have access to the information contained in the personnel file.[3] (Ex. A, ¶ 13). Other than these limited individuals, access to employee personnel files is restricted.

### B. The EEOC's Document Request and LA Weight Loss's Response

In its requests for production of documents, the EEOC seeks numerous categories of confidential information, trade secret proprietary and confidential information. These categories of documents include,

(a) personnel records for various LA Weight Loss employees including each employee's salary information, social security numbers, medical information and benefits (See EEOC's Requests for Production of Documents, attached hereto as Exhibit B, Nos. 8, 29, 34, 36); and

(b) all orientation and training manuals used by LA Weight Loss (Exhibit B, Nos. 26, 31)

In response to these requests, LA Weight Loss interposed substantive objections to certain requests on the grounds of overbreadth and burdensomeness as well as that the requests sought information not relevant to the claims or defenses in this matter. On the other hand, LA

---

[1] Personnel files of corporate employees such as senior level field management and those employees who work out of the corporate office are maintained in a separate locked file. Only the Senior Vice President of Human Resources and the Payroll Manager have access to these files. (Ex. A, ¶ 12).

[2] When a Human Resources employee needs access to a personnel file stored at LA Weight Loss's warehouse a request is made to the warehouse's records retention clerk who provides the file to Human Resources. (Ex. A, ¶ 14).

[3] Subject to the requirements of applicable state laws, employees are generally granted access to review the contents of their personnel files upon written request and scheduling of an appointment to review their file in confidence under the supervision of an employee from the Human Resources department. (Ex. A, ¶ 15).

Weight Loss agreed to produce numerous responsive documents to these requests. To the extent that these documents contain confidential proprietary and trade secret information, LA Weight Loss requested that the parties enter into a stipulated protective order.

To facilitate and expedite the production of documents in this matter, LA Weight Loss agreed that it would produce documents for inspection prior to the final negotiation of a formal protective order, but that it would withhold actual production of the documents until a protective order had been entered. (Declaration of David L. Gollin, Esquire, attached hereto as Exhibit C, ¶ 4). This would permit the EEOC to begin to inspect over a hundred thousand documents that were to be produced. (Ex. C, ¶ 5). The EEOC entered into an oral agreement with LA Weight Loss on or about September 18, 2002, and LA Weight Loss produced documents for inspection to the EEOC and Koch. (Ex. C, ¶¶ 6, 7). During this inspection, the attorneys for the EEOC and Ms. Koch marked for copying numerous trade secret, confidential and proprietary documents of the Company. (Ex. C, ¶ 8). Pursuant to the agreement, LA Weight Loss withheld full production of photocopying some of these confidential documents (i.e. employee salary information) until the protective order had been agreed to. (Ex. C, ¶ 9). However, certain confidential documents (i.e. employee personnel files), were provided to the EEOC prior to negotiation of the final protective order in reliance on the EEOC's oral agreement. (Ex. C, ¶ 10).

   C. **The Draft Confidentiality Order**

Thereafter, on June 3, 2003, pursuant to LA Weight Loss's agreement with the EEOC, counsel for LA Weight Loss provided the EEOC and counsel for Intervenor-Plaintiff Kathy Koch with a draft Confidentiality Agreement and Order for their review and comment. (Exhibit D hereto). The draft was a standard confidentiality agreement providing for designation of certain documents and information as "confidential" or "confidential - for attorneys' eyes only"

and establishing boiler plate procedures for the use and protection of confidential information during the course of the litigation. Specifically included in the definition of "confidential" information were personnel files, employee compensation data, operating procedures, sales and marketing information and training materials. (Ex. D, ¶ 2). The agreement further provided a method for challenging particular designations of confidentiality with the burden remaining on the party seeking confidentiality (Ex. D, ¶ 12), and a method for filing documents under seal with the court (Ex. D, ¶ 7). Further, in accordance with LA Weight Loss prior agreement with the EEOC, the proposed agreement established a mechanism for designating documents produced prior to the execution of the agreement as confidential. (Ex. D, ¶ 16).

Shortly after receiving the draft agreement, counsel for Intervenor-Plaintiff Koch, Kelly Hoelzer, Esquire, contacted counsel for LA Weight Loss and stated that she would agree to the terms of the proposed agreement, but that she could not agree to its terms until the EEOC approved the draft. (Ex. C, ¶ 11). On July 2, 2003, the EEOC responded to LA Weight Loss's initial draft with a modified version of the agreement "setting forth the revisions *required* by the EEOC." (Exhibit E hereto)(emphasis added). The EEOC's "required" revisions significantly altered LA Weight Loss's proposed draft and removed many, if not all of the protections sought by LA Weight Loss. Most troubling was the fact that the EEOC's revisions removed personnel files, wage data, training materials and operating procedures from the definition of "confidential" information and specifically excluded documents produced prior to execution of the agreement from the class of documents that were covered by the agreement. (Ex. E, ¶¶ 1, 2 and 16). Such revisions directly contradicted to the Commission's prior agreement with LA Weight Loss and expressly excluded the very categories of documents for which LA Weight Loss was seeking protection.

In response to the EEOC's insufficient and overly narrow counter proposal and apparent refusal to abide by its prior agreement with LA Weight Loss concerning retroactive designation of confidential information, counsel for LA Weight Loss contacted the EEOC in an attempt to resolve the issue. After discussions with the EEOC regarding its concerns with LA Weight Loss's initial draft, LA Weight Loss provided the EEOC with a second draft in effort to address some of the concerns raised by the EEOC. (Exhibit F hereto). Specifically, this revised draft eliminated the designation of any information as "confidential - for attorneys' eyes only", and provided for a revised procedure for utilizing confidential information at a deposition by only requiring execution of the confidentiality agreement by nonparty deponents who would "retain" a copy of a confidential document. (Ex. F, ¶ 5). LA Weight Loss, however, could not agree to eliminate personnel files, wage data, training materials and operating procedures from the definition of "confidential" information, nor could LA Weight Loss agree that documents produced prior to execution of the agreement could not be designated as confidential. (Ex. F, ¶¶ 2, 12). Such concessions would completely eliminate the protections sought by the LA Weight Loss and were contrary to the agreement LA Weight Loss initially made with the EEOC. The EEOC did not provide LA Weight Loss with any further thoughts or comments on the proposed draft.

D.   **EEOC's Motion to Compel**

Without any further attempt to negotiate the terms of the agreement, the EEOC filed a motion to compel in which it objected to LA Weight Loss's proposed confidentiality agreement. Specifically, the EEOC made eight arguments against the proposal:

> (1) it does not permit the EEOC's use of designated documents, including payroll records and personnel documents, in informal interviews with nonparties;

(2) it seeks to restrict in an unworkable fashion the use of documents, including payroll records, at depositions of non-parties by requiring those non-parties to sign a confidentiality agreement before they are permitted to view documents, an act that they [have] no incentive to perform;

(3) it requires the EEOC to file documents under seal, an extraordinary measure in light of the principles mandating open judicial proceedings and the breadth of the documents that Defendant's vague definition of "confidential" material would embrace;

(4) it places unreasonable conditions on use of designated documents, including payroll records, at trial;

(5) it contains a vague and over-broad definition of confidentiality that potentially applies to numerous documents and information for which there is no compelling reason to assure confidentiality;

(6) it allows broad designation of testimony regarding multifarious subject as "confidential";

(7) it allows expansive, retroactive confidentiality designation regarding documents already produced in litigation;

(8) and other infirmities.

(See EEOC's Memorandum of Law in Support of Motion to Compel, pp. 15-16).

A number of these objections were raised for the first time in the EEOC's Motion to Compel. Other objections are simply without merit as they were specifically addressed in LA Weight Loss's revised draft. For example, while the EEOC objects to LA Weight Loss's proposed agreement alleging that it "seeks to restrict in an unworkable fashion the use of documents, including payroll records, at depositions of non-parties by requiring those non-parties to sign a confidentiality agreement before they are permitted to view documents, an act that they [have] no incentive to perform", this concern was specifically addressed by LA Weight Loss in its revised draft. Paragraph 5 of the revised draft (Exhibit F hereto), was expressly revised only to require execution of the confidentiality agreement by a non-party witness if the

deponent was to "retain" a copy of the confidential document. If the deponent was only going to review the document during the deposition, execution of the confidentiality agreement was expressly not required.

Accordingly, based on the EEOC's conduct discussed above, and for the reasons set forth below, LA Weight Loss requests that the Court enter a protective order to ensure the proper maintenance and use of LA Weight Loss's confidential information in this matter.

## II.     LEGAL ARGUMENT

### A.     Legal Standard

Pursuant to Fed. R. Civ. P. 26(c)(7), the Court may "for good cause shown" issue a protective order requiring that "confidential . . . commercial information not be revealed or be revealed only in a designated way." To obtain a protective order under Rule 26(c), the party resisting discovery must establish that the information sought is covered by the rule and that it will be harmed by disclosure. See 8 Charles Alan Wright, et al., Federal Practice and Procedure § 2043, at 555-57 (2d ed. 1994). If this showing is made, the party seeking the materials then must establish that the information is sufficiently necessary and relevant to his case to outweigh the harm of disclosure. See id. at 559.

### B.     The Information For Which LA Weight Loss Seeks Protection Is Clearly Confidential.

The proposed protective order sought by LA Weight Loss includes as "Confidential Matter" discovery material that:

> reflects non-public confidential or proprietary information of or relating to a party, including without limitation, research, development, technical, financial or commercial information, personnel files, and other employee or compensation data, internal management policy or procedure, employee relations, business plans, sales and marketing strategies or plans, operating procedures, know-how, training materials, trade secrets . . .

(See Proposed Protective Order, ¶ 2). Most importantly, this definition expressly includes personnel files, compensation data, sales and marketing strategies and training materials produced and/or demanded by the EEOC. As discussed below, these categories of documents and information are clearly confidential and appropriate subjects for a protective order.

>    1.   **Training Materials Containing LA Weight Loss's Weight Loss Techniques and Methods, Sales Techniques and Product Pricing Are Trade Secrets**

At issue in the EEOC's discovery requests are LA Weight Loss's training materials which contain the Company's proprietary and confidential information pertaining to its weight loss techniques and methods, sales techniques and product pricing. This information constitutes trade secrets and warrants the protection of a protective order regulating its use and dissemination in this matter.

Courts in this circuit as well as around the country acknowledge that information of the type at issue here constitutes confidential information. See also Woven Electronics Corp. v. The Advance Group, Inc., 1991 U.S. App. LEXIS 6004, *11-*12 (4th Cir. 1991)(upholding validity of nondisclosure agreement defining confidential trade secrets as including information pertaining to sales techniques, pricing methods and manufacturing processes)(Exhibit G); Marketing Assoc., Inc. v. Baker, 2000 U.S. Dist. LEXIS 2536, *5, ¶ 5 (M.D.N.C. 2000)(finding that a company's sales techniques and pricing guidelines for products constituted confidential information)(Exhibit H hereto); Optic Graphics, Inc. v. Agee, 591 A.2d 578, 586 (Md. App. 1991)(acknowledging that pricing information and marketing strategy are protectable as trade secrets)(citing S.I. Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1260 (3d Cir. 1985); National Starch and Chem. Corp. v. Parker Chem. Corp., 530 A.2d 31, 32 (NJ Super.

1987)(holding that information relating to marketing and sales strategies, manufacturing processes, pricing, research and development is protectable as trade secrets).

Although this is not a misappropriation of trade secrets case, the definition of trade secrets under Pennsylvania and Maryland law is also instructive. Pennsylvania's courts refer to the factors established in RESTATEMENT OF TORTS § 757 to determine whether business information is a trade secret. These factors include: (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. S.I. Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1256 (3d Cir. 1985) (citing RESTATEMENT OF TORTS § 757 cmt. b). Maryland's protection for trade secrets is codified in the Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code. Ann., Commercial Law II, § 11-1201(e)(1990), and uses a definition of trade secrets similar to Pennsylvania's :

> Information, including a formula, pattern, compilation, program, device, *method, technique, or process*, that:
>
> (1)    derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (2)    is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

(emphasis added).

Bush v. Trim and Swim Health Spa, Inc., 1979 Tex App. LEXIS 3562, *3-*4 (Tex App. 1979)(Exhibit I hereto), is particularly salient here. In Bush, the Court of Appeals of Texas

affirmed the judgment of the lower court granting an employer health spa an injunction against one of its former employees preventing the employee from working for one of the employer's competitors.  The court based its decision, in part, on its determination that the trial court properly could have found that the health spa's business methods and techniques were trade secrets that needed protection.  In reaching this decision, the court stated that:

> It is apparent that the trial court might have concluded that a portion of Trim and Swim's business methods and techniques constituted a trade secret which should be protected.  These business methods and techniques consist of promotional schemes, employee training manuals, customer program analysis, sales and motivation techniques and exercises invented by Trim and Swim's personnel.

Bush, 1979 Tex App. LEXIS 3562 at *3.

Similarly, here, LA Weight Loss's training materials contain detailed information pertaining to LA Weight Loss's methods and techniques for losing weight and selling its services and products.  The training information details the Company's unique and specially developed weight loss program, diets, menus, goals and techniques.  In addition, the training information contains detailed strategies and techniques for selling LA Weight Loss's services and products, including specific responses and sales techniques when confronted with various excuses and objections that might hinder a sale.  This information was developed from the sales history, knowledge and experience of LA Weight Loss and is not readily obtainable from any other source.  Finally, the training material contains information pertaining to pricing for the Company's services and products, including information on various discounts which can be offered by the Company.

As in Bush, this information clearly constitutes LA Weight Loss's trade secrets.  Further, this information fits squarely within the first part of the definition of a trade secret under the MUTSA and within the dictates of Pennsylvania law as it is information pertaining to LA

Weight Loss's methods, techniques, and business processes that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use. See Md. Code. Ann., Commercial Law II, § 11-1201(e)(1)(1990). See also S.I. Handling Sys., 753 F.2d at 1256. It is undeniable, that in a competitive industry such as the weight loss business, the successful methods and techniques developed and employed by LA Weight Loss present significant economic value to its competitors.

    LA Weight Loss's training material satisfies the second element of a trade secret as well. As discussed above, LA Weight Loss has made considerable efforts, reasonable under the circumstances, to maintain the secrecy of its training material. LA Weight Loss requires its employees to sign a confidentiality and non-disclosure agreement and promise not to divulge confidential or proprietary information relating to LA Weight Loss's trade secrets to others during and after employment. Further, LA Weight Loss endeavors to collect all confidential documents and information from departing employees upon the cessation of their employment with the Company. Such conduct is sufficient to maintain the secrecy of trade secrets. See PepsiCo, Inc. v. Redmond, 1995 U.S. Dist. LEXIS 19437, *63-*65 (N.D. Ill. 1994)(disclosure of information to employees under agreement not to disclose or use information constituted sufficient protection to qualify the information as trade secrets.)(internal citations omitted)(Exhibit J hereto).

    Accordingly, LA Weight Loss's training materials containing the Company's proprietary and confidential information pertaining to its weight loss techniques and methods, sales techniques and product pricing constitute trade secrets justifying the imposition of an

appropriate protective order for all such information produced to the EEOC previously or in the future in this matter.

### 2. Personnel Files Contain Sensitive and Private Information

The EEOC has no basis for objecting to imposition of a protective order regarding information contained in nonparty personnel files and compensation data.

LA Weight Loss zealously maintains the confidentiality of its personnel files. Such confidences should not be jeopardized simply because the EEOC and Ms. Koch have instituted this action against the Company. As discussed above, personnel files are maintained at Corporate Headquarters in the Human Resources department or in an off-site storage facility, both of which are secured and locked. Only employees of the Human Resources department, the Company's owners and the subject of the respective file have access to the information contained in the personnel file. Other than these limited individuals, access to employee personnel files is restricted.

Federal courts across the country have consistently held that personnel files, including information on employees' wages, is information of a private and personal nature warranting protection of a protective order. See Knoll v. American Telephone and Telegraph Co., 176 F.3d 359, 365 (6th Cir. 1999)(holding that defendants had a valid interest in the privacy of nonparty personnel files justifying district court's grant of a protective order to protect the privacy of the personal information contained therein, including the individual's address, marital status, *wage information*, medical background, credit history, and other work related problems unrelated to the plaintiff's claims)(emphasis added); Donald v. Rast, 927 F.2d 379 (8th Cir. 1991)(upholding district court's decision in § 1983 action to limit the disclosure of police officers' personnel files to plaintiff's attorney in light of the private nature of the information contained therein); Jones v.

Hamilton County Sheriff's Department, 2003 U.S. Dist. LEXIS 10100, * 19 (S.D. Ind. 2003)(stating that employers' "privacy concerns in its employment records are well founded.")(Exhibit K hereto); Tomanovich v. Glen, 2002 U.S. Dist. LEXIS 14885, *20 (S.D. Ind. 2002)(granting protective order regarding production of personnel files holding that "defendant's privacy concerns in its employment records are well founded since personnel files contain *highly sensitive information*.")(emphasis added)(internal citations omitted)(Exhibit L hereto); Davis v. Precoat Metals, 2002 U.S. Dist. LEXIS 13851, *13 (N.D. Ill. 2002)(ordering that the personnel files produced shall be subject to an appropriate protective order assuring that those files will be limited to attorneys' eyes only that that they can be used only for purposes of this litigation)(internal citations omitted)(Exhibit M hereto); Chavez v. Daimler Chrysler Corp., 206 F.R.D. 615, 622 (S.D. Ill. 2002)(court issued a protective order governing the conduct of discovery regarding "confidential employment documents" contained in various personnel files such as disciplinary records, performance reviews, *wage records*, and attendance records)(emphasis added).

Accordingly, all personnel files and compensation data provided to the EEOC previously or in the future should be governed by an appropriate protective order.

    **C.**    **The Terms of the Proposed Protective Order Are Reasonable and Appropriate for Protecting LA Weight Loss's Confidential Information.**

As required by L.R. 104.13, LA Weight Loss's proposed order includes: (a) a definition of confidentiality consistent with Fed. R. Civ. P. 26(c) which, as discussed above, includes categories of documents expressly recognized by law as confidential (See Paragraph 2 of the Proposed Order); (b) a method for challenging particular designations of confidentiality with the burden remaining on the party seeking confidentiality to justify it (See Paragraph 10 of Proposed Order); (c) a procedure for filing documents with the Court under seal pursuant to L.R. 105.11

(See Paragraph 6 of Proposed Order); and (d) a provision permitting the Clerk to return or destroy any sealed material at the end of the litigation.  (See Paragraph 11 of Proposed Order).

Second, the Order expressly permits use of confidential information during nonparty interviews and witness preparation sessions, subject to the terms and conditions of the Order. (See Paragraph 4(a) and (b)(v)).  This addition was made to the proposed order in response to the EEOC's objection on this issue.  Once again, the EEOC raised this issue for the first time in its Motion to Compel and did not attempt to resolve this dispute with LA Weight Loss prior to filing its Motion.

Third, the Order provides a procedure for utilizing confidential information at a deposition by only requiring execution of a certificate of confidentiality by a nonparty deponent if the deponent will "retain" a copy of a confidential document.  (See Paragraph 5 of Proposed Order).  This revision was initially made in the revised draft provided to the EEOC in response to the Commission's initial concerns over the stipulated protective order, but the Commission continues to raise objections in its Motion to Compel based on language from the original draft.

Finally, and most importantly, the Order provides a mechanism for designating as confidential documents produced prior to the entry of this Order.  (See Paragraph 12 of Proposed Order).  This term is of the utmost importance to LA Weight Loss as it has already produced a significant amount of confidential information in reliance on the EEOC's agreement that it would negotiate in good faith with LA Weight Loss over the formation and entry of a stipulated protective order after the initial production of documents.  Now that the EEOC has reneged on that agreement, it has effectively obtained LA Weight Loss's confidential information without restriction.  The proposed order remedies this situation.

### III. CONCLUSION

For the foregoing reasons, LA Weight Loss respectfully requests that a protective order in the form proposed be entered in this matter regarding the production and use of confidential information in this matter.

Respectfully submitted,

SHAWE & ROSENTHAL, LLP

/s/
_____
Elizabeth Torphy-Donzella
Bar No. 10809
20 S. Charles Street, 11th Flr.
Baltimore, MD  21201
(410) 752-1040

AND

WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP
David E. Landau
David L. Gollin
1650 Arch Street, 22nd Floor
Philadelphia, PA  19103-2097
(215) 977-2052/2335

Attorneys for Defendant
LA Weight Loss

Dated:   September 12, 2003

## CERTIFICATE OF SERVICE

I, Fiona Ong, Esquire, hereby certify that I caused a true and correct copy of the foregoing: to be served upon the following by first class mail, postage prepaid, as well as by the Court's electronic filing system, on September 12, 2003:

> Ronald L. Phillips, Esquire
> U.S. Equal Employment Opportunity Commission
> Baltimore District Office
> 10 South Howard Street, 3rd Floor
> Baltimore, MD 21201
> Attorneys for Plaintiff
>
> And
>
> Pamela White, Esq.
> Ober, Kaler, Grimes & Shriver, P.C.
> 120 East Baltimore Street
> Baltimore, Maryland 21201
> Attorney for Intervenor/Plaintiff

/s/
_____
Fiona Ong

Dated: September 12, 2003