Get a Document - by Citation - 2000 U.S. Dist. LEXIS 2536 Page 1 of 15

Case 1:02-cv-00648-WDQ   Document 35-11   Filed 09/12/2003   Page 1 of 15

Service: **Get by LEXSEE®**
Citation: **2000 us dist lexis 2536**

*2000 U.S. Dist. LEXIS 2536, **

MARKETING ASSOCIATES, INC., Plaintiff, v. RICHARD BAKER; LILLEY CONSTRUCTION SERVICES, LTD., a Corporation; and LILLEY, L.L.C., a Corporation, Defendants.

CIVIL ACTION NO. 1:99CV01096

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

2000 U.S. Dist. LEXIS 2536

January 21, 2000, Decided
January 21, 2000, Filed

**DISPOSITION:** [*1] Plaintiff's motion for preliminary injunction [Doc. # 2] GRANTED. Defendants RESTRAINED AND ENJOINED from contacting the individuals and entities listed in Exhibits. Defendants RESTRAINED AND ENJOINED from utilizing any proprietary information or trade secrets.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff marketing company filed a motion for a preliminary injunction in an attempt to enjoin defendant competitors from soliciting plaintiff's customers, contacting plaintiff's representatives, or using plaintiff's confidential business information, in a case where plaintiff's complaint alleged plaintiff's former employee helped defendants unfairly compete with plaintiff.

**OVERVIEW:** Plaintiff marketing company sued defendant competitors, alleging defendants committed multiple business torts. Plaintiff was involved in the marketing and distribution of road repair materials. It spent considerable time and money conducting demonstrations and nurturing business contacts. Plaintiff hired a marketing director. Pursuant to that employment, the marketing director, who later became one of the defendants, signed a confidentiality agreement, a non-disclosure requirement and a loyalty provision. Defendant received substantial information about plaintiff's business plans, pricing techniques and other confidential information, resigned within six months, and joined defendant competitor. Defendants used the confidential information to solicit plaintiff's customers, sales representatives and employees. The court granted plaintiff's preliminary injunction motion. The court held plaintiff had shown it would suffer irreparable harm without it, that defendant would not suffer, that plaintiff would likely succeed on the merits and that the public interest in fair dealing warranted it.

**OUTCOME:** Motion for preliminary injunction granted because plaintiff marketing company would be irreparably harmed without the injunction, defendant competitors would not suffer any significant harm from the injunction, plaintiff was likely to be successful on the merits and the public interest weighed in favor of granting the injunction.

**CORE TERMS:** customer, repair, preliminary injunction, resignation, injunction, applicator, contacting, public interest, hardship, irreparable harm, marketing, likelihood of success, decidedly, tip, trade secrets, proprietary, manager, utilizing, pricing, confidential, confidential information, marketing director, unfair advantage, confidentiality, demonstration, successors, concert, asphalt, message, e-mail

## LexisNexis (TM) HEADNOTES - Core Concepts - ✦ Hide Concepts

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions

**HN1** In determining whether to issue a preliminary injunction, courts have identified four factors, known as the balance of hardships test: (1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with the injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest. More Like This Headnote

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions

**HN2** A plaintiff must first make a clear showing that it will suffer irreparable harm without the injunction before any other inquiry is made. If the plaintiff makes a clear showing of irreparable harm, the court must them balance the likelihood of irreparable harm to the plaintiff without the injunction against the likelihood of harm to the defendant if the injunction is issued. More Like This Headnote

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions

**HN3** Where the balance of hardships "tips decidedly" in favor of a plaintiff, a preliminary injunction will be granted if the plaintiff has raised serious questions going to the merits. Where the plaintiff fails to establish that the balance tips decidedly in its favor, the plaintiff must make a strong showing of likelihood of success for a preliminary injunction to issue. Finally, Plaintiff must establish that the public interest favors issuance of a preliminary injunction. However, this final factor is rarely determinative. More Like This Headnote

**COUNSEL:** For MARKETING ASSOCIATES, INC., plaintiff: JEFFREY DEAN PATTON, PETER JOSEPH JURAN, BLANCO TACKABERY COMBS & MATAMOROS, P.A., WINSTON-SALEM, NC.

For RICHARD BAKER, LILLEY CONSTRUCTION SERVICES, LTD., LILLEY, L.L.C., defendants: JOHN B. MORRIS, DANIEL R. TAYLOR, JR., MARK ANDREW STAFFORD, KILPATRICK STOCKTON, L.L.P., WINSTON-SALEM, NC.

For RICHARD BAKER, defendant: CRAIG T. MERRITT, HENRY I. WILLETT, III, CHRISTIAN & BARTON, L.L.P., RICHMOND, VA.

For LILLEY CONSTRUCTION SERVICES, LTD., LILLEY, L.L.C., defendants: JOHN B. FARMER, KAREN S. ELLIOTT, MEZZULLO & MCCANDLISH, RICHMOND, VA.

For LILLEY CONSTRUCTION SERVICES, LTD., LILLEY, L.L.C., counter-claimants: JOHN B. MORRIS, DANIEL R. TAYLOR, JR., MARK ANDREW STAFFORD, KILPATRICK STOCKTON, L.L.P., WINSTON-SALEM, NC.

For LILLEY CONSTRUCTION SERVICES, LTD., LILLEY, L.L.C., counter-claimants: JOHN B. FARMER, KAREN S. ELLIOTT, MEZZULLO & MCCANDLISH, RICHMOND, [*2] VA.

For MARKETING ASSOCIATES, INC., counter-defendant: JEFFREY DEAN PATTON, PETER JOSEPH JURAN, BLANCO TACKABERY COMBS & MATAMOROS, P.A., WINSTON-SALEM, NC.

**JUDGES:** Frank W. Bullock Jr., United States District Judge.

**OPINIONBY:** Frank W. Bullock Jr.

**OPINION:** MEMORANDUM OPINION

Get a Document by Citation 2000 U.S. Dist. LEXIS 2536 — Page 3 of 15

Case 1:02-cv-00048-WDQ   Document 35-11   Filed 09/12/2003   Page 3 of 15

BULLOCK, District Judge

This matter, originally filed in state court and removed by Defendants pursuant to 28 U.S.C. § 1332, is before the court on Plaintiff's motion for a preliminary injunction. Plaintiff moves pursuant to Rule 65 of the Federal Rules of Civil Procedure to enjoin Defendants from soliciting Plaintiff's customers, contacting Plaintiff's representatives, or utilizing Plaintiff's confidential business information. The court conducted an evidentiary hearing on December 23, 1999. After consideration of the exhibits, affidavits, and the testimony of Defendant Richard Baker, the court makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. Plaintiff Marketing Associates, Inc. ("Plaintiff"), filed a complaint against Defendants Richard Baker, Lilley Construction Services, Ltd., and Lilley, L.L.C. (collectively "Defendants"), seeking injunctive and declaratory [*3] relief and damages for alleged breach of contract, breach of fiduciary duty, interference with contract, unfair and deceptive trade practices under North Carolina General Statute § 75-1.1 et seq., unjust enrichment, and misappropriation of trade secrets under North Carolina General Statute § 66-152 et seq. Plaintiff has also filed a motion for a preliminary injunction against Defendants seeking an order enjoining Defendants from demonstrating or selling products to Plaintiff's established or potential customers, contacting Plaintiff's employees, sales representatives, or certified applicators, or utilizing Plaintiff's proprietary or trade secret information.

2. Plaintiff is a North Carolina corporation engaged in the marketing and distribution of technologically enhanced road repair materials. Plaintiff has spent considerable time and expense (nearly two years and over $1,000,000.00) conducting demonstrations and nurturing business contacts in an attempt to develop a market within the United States for these road repair products. Defendant Richard Baker is a British citizen and a Virginia resident who was formerly employed with Plaintiff as its national marketing director. [*4] Defendant Baker is currently employed with Defendants Lilley Construction Services, a British corporation engaged in the sale of these enhanced road repair materials, and Lilley L.L.C., its Virginia-based subsidiary.

3. In early May of 1999, Plaintiff and Defendant Baker began employment discussions. As a prerequisite to these employment discussions, Defendant Baker signed a confidentiality agreement. These discussions led to the signing of an employment contract whereby Defendant Baker agreed to coordinate Plaintiff's marketing and sales efforts for a one-year period. In addition to addressing matters such as compensation and benefits, the employment agreement contained a non-disclosure requirement and a loyalty provision supplementing an employee's common law duties to his employer.

4. On May 20, 1999, Defendant Baker began his employment with Plaintiff pursuant to the confidentiality and employment agreements. As Plaintiff's national marketing director, Defendant Baker was responsible for finding new customers, furthering relations with Plaintiff's business contacts, and finalizing contracts for the sale of road repair products.

5. During the course of his employment, from May 20, 1999, through [*5] his resignation on November 1, 1999, Defendant Baker received substantial information regarding Plaintiff's business plans, customer relations, marketing and sales techniques, commission rates, and pricing guidelines for the road repair products. In addition to providing this confidential information, Plaintiff introduced Defendant Baker to numerous state department of transportation officials, as well as a majority of Plaintiff's sales representatives, certified applicators, and established and potential customers.

6. In early July of 1999, after a contract dispute with its original supplier, Plaintiff began

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 2536                    Page 4 of 15

Case 1:02-cv-00648-WDQ    Document 35-11    Filed 09/12/2003    Page 4 of 15

buying the road repair materials directly from Defendant Lilley Construction Services. At some point shortly thereafter, Defendant Baker was introduced to Stuart Lilley, the CEO of Defendant Lilley Construction Services.

7. On October 1, 1999, Defendant Baker wrote a letter to Plaintiff's president, David Simmons, expressing his desire to "seek other employment opportunities within the industry" but promising to "complete the tasks that [were] in [his] hand to the best of [his] abilities." Despite his disenchantment with Plaintiff, Defendant Baker did not tender his resignation [*6] until October 26, 1999.

8. In late October of 1999, the week before Defendant Baker tendered his resignation, Defendant Baker and Tony Morris, Plaintiff's product manager, traveled to Sweden on behalf of Plaintiff to develop foreign business contacts. Upon his arrival in Sweden, Defendant Baker was introduced to Mr. Bengt Westerholm. Defendant Baker and Tony Morris conducted a demonstration at the airport in Stockholm in an attempt to expand contractual relations with Bengt Westerholm's company. On October 22, 1999, Defendant Baker, Tony Morris, and Bengt Westerholm met with Swedish Roads, a large asphalt contractor, to discuss the possibility of entering into an exclusive applicator's contract. Upon the conclusion of the negotiations in Sweden, Defendant Baker traveled alone to England, ostensibly on Plaintiff's behalf, to meet with Stuart Lilley, the CEO of Defendant Lilley Construction Services.

9. On October 26, 1999, after his meeting with Stuart Lilley in England, Defendant Baker returned to Richmond, Virginia, and informed Plaintiff that he was resigning effective November 1, 1999. From his notification on October 26, 1999, until his actual resignation on November 1, 1999, Defendant [*7] Baker was asked to finalize the various deals he was pursuing for Plaintiff, especially a deal expanding Plaintiff's relationship with Asphalt Concrete Services, Inc., a Michigan construction company. Despite Plaintiff's requests, none of these deals were consummated during Defendant Baker's final week of employment.

10. The parties disagree over the nature of the Baker-Lilley relationship prior to Defendant Baker's resignation from his employment with Plaintiff on November 1, 1999. Defendants claim that their relationship prior to Defendant Baker's resignation was entirely legitimate and that no improprieties have taken place. To support their theory that this was merely a "sloppy exit," Defendants rely upon the testimony of Defendant Baker.

11. In the evidentiary hearing on December 23, 1999, Defendant Baker testified that he neither accepted an agreement nor began to work for Defendants Lilley Construction Services and Lilley L.L.C. prior to his resignation. Defendant Baker further testified that his meeting with Stuart Lilley in England was exclusively for Plaintiff's benefit. Specifically, Defendant Baker claimed that he met with Stuart Lilley to discuss the prospect of Plaintiff [*8] becoming the owner of Defendant Lilley L.L.C. and to attempt to resolve a payment dispute arising out of Plaintiff's recent purchase of road repair products from Defendant Lilley Construction Services. In sum, Defendant Baker contended that he acted consistent with the best interests of Plaintiff in every respect until his resignation on November 1, 1999.

12. After Baker's resignation, Plaintiff recovered a letter from Baker's computer dated October 26, 1999, to Stuart Lilley. The letter reads:

> Dear Stuart,
>
> Thank you so much for your hospitality during my recent visit; . . . . It really reinforced my commitment to join the team, and build a successful company in the United States. I will link up with Randy [employee of Lilley L.L.C.] this week to discuss the sequence of events and how we can move forwards towards the launch of the company. By the time Randy and I meet, I will have had a one-to-one with David [Plaintiff's CEO] and explained my desire to leave his company.

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 2536　　Page 5 of 15

Case 1:02-cv-00048-WDQ　Document 35-11　Filed 09/12/2003　Page 5 of 15

The letter proceeds to disclose Plaintiff's confidential information and discuss Defendants' plan for sabotaging Plaintiff's business efforts. In Defendant Baker's own words:

> From a practical [*9] standpoint I want to make certain we can recover some or all of the monies owing to us. I will work with him [Plaintiff's CEO] as best as possible to affect this possibility. There are of course several possibilities that we can exercise to accomplish this undertaking. [At this point, the letter proceeds to explain to Stuart Lilley how they can best recover from Plaintiff for any debt owed, including the option of taking legal action.] . . . We shall also have to advise all MAI current customers that they will be unable to supply these products for future projects.
>
> I will also try to avert the signing of the license by Asphalt Concrete Services, Inc., from Bay City, Michigan. As discussed with you, it would not be a smart thing for MAI [Plaintiff] to undertake the licensing of another company that MAI cannot support with materials or marketing support. I would like to think that we could take on ACS they are an excellent company who have done a good job in supporting the system in Michigan, which is a tough state to be approved in for maintenance work.
>
> We should also discuss the network of [Plaintiff's] sales managers, who are all on a straight commission basis with the exception [*10] of Don Silver, who is a direct employee. All the sales managers have an agreement with MAI to market and support the products in their areas, the commission is only paid on installation projects at 8% of the project value after billing. Most of the managers have successful companies that are recognized in their areas as the authority on maintenance of roads, bridges.
>
> In closing I am very excited about working with the Lilley team, and look forward to spending the foreseeable future with the company. . . . I will bring you up to speed on the Swedish opportunity as soon as I get clear direction from Bengt Westerholm . . . . The planned visit is still on the cards and I will get the exact dates from Bengt. There is a large asphalt contractor who is most interested in becoming an applicator for the systems; he will accompany the visiting group to the UK.
>
> Yours,
>
> /s/ Richard Baker.

13. Given Defendant Baker's demeanor, his obvious interest in the case, and the existence of the letter detailing his former, current, and anticipated breaches of the confidentiality and employment agreements, the court does not find his testimony credible. Instead, the court finds that there was an agreement [*11] between the Defendants on or before October 26, 1999, which was contrary to Plaintiff's interests. The court further finds that Defendant Baker's conduct constitutes a breach of the confidentiality and employment agreements as well as of his common law duties to his employer.

14. In early November of 1999, after resigning from his employment with Plaintiff, Defendant

Get a Document by Citation - 2000 U.S. Dist. LEXIS 25136

Case 4:02-cv-00648-VDO Document 35-6 Filed 09/12/2003 Page 6 of 15

Page 6 of 15

Baker officially began working for Defendant Lilley L.L.C. As set forth in his letter to Stuart Lilley on October 26, 1999, Defendant Baker immediately contacted Asphalt Concrete Services (the same company with whom he was unable to finalize a deal during his last week as Plaintiff's marketing director) on behalf of Defendants in an attempt to solicit its business. Around this same time, Defendant Baker began contacting Plaintiff's sales representatives whom he knew were under contract, and, in the case of Don Moody, whom he knew had a non-compete agreement. Defendant Baker clearly intended to persuade these representatives to leave Plaintiff, break their contracts if necessary, and work with Defendants as evidenced by his e-mail message to Don Moody and Jim Barber on November 16, 1999:

> Don
>
> An idea for your sales [*12] and engineering group to think about. You mentioned that the whole group was heading to Florida for a corporate meeting in December? We have an idea that may work as an introduction and possibility to meet the management team at Lilley LLC during this same meeting. What if we sponsored a day before or after your corporate meeting a get together with our management team in a social setting. Think about it and if it does not appeal just let me know, no problem. It would really allow us to present our team to anyone in your group who may have an interest in the business, those who have no interest would have no need to attend. We could even play that game with the little white ball!! Thanks Richard

Jim Barber's evasive response confirms the solicitous nature of the message:

> Richard,
>
> Not a good idea at this point. Time is very tight for all of us during our stay in Orlando and time on the ground is short. This is a URETEK time for all of us and dedicated to only that. I am not sure who Lilley is and has to do with Roadtechs and or URETEK [the marketing and distribution of the road repair products] anyway? Did I miss something?
>
> Jim Barber

15. In addition [*13] to contacting all of Plaintiff's sales representatives, Defendant Baker met with Plaintiff's certified applicators whom he knew were under contract in an attempt to solicit their business. On November 30, 1999, Defendant Baker arranged a meeting in person with the president and vice president of Sealcoating, Inc., where he informed them that Defendants were the source of Plaintiff's products, presented a less expensive pricing schedule for the products, and claimed that Plaintiff owed Defendants money.

16. Defendant Baker also contacted one of Plaintiff's employees whom he knew was under contract to encourage the employee to submit his resignation and "work for Lilley." Defendant Baker made frequent telephone calls and arranged several meetings with Don Silver, Plaintiff's regional sales manager, during which Defendant Baker criticized his former employer, calling Plaintiff a "sinking ship," and made misrepresentations about customers switching over to Defendants because they could no longer work with or trust Plaintiff.

17. The court finds that Defendant Baker clearly intended to sabotage Plaintiff's relationships

with its customers and to persuade Plaintiff's sales representatives, [*14] certified applicators, and at least one of Plaintiff's employees to leave Plaintiff and work with Defendants. Because of his position with the Plaintiff, Baker knew the prices paid and concerns of Plaintiff's customers, the commissions of Plaintiff's sales managers, and other confidential information which he used and, unless restrained, will use to give his new employer an unfair advantage over the Plaintiff. Baker's activities went well beyond any right of a departing employee to advise customers of his employer of his intention to leave and work for a competitor and to compete fairly for his former employer's business.

DISCUSSION

HN1 In determining whether to issue a preliminary injunction, the Fourth Circuit has identified four factors, known as the balance of hardships test: (1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with the injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest. See Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991) (citing Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc., 550 F.2d 189 (4th Cir. 1977)). [*15] Under the Blackwelder standard, HN2 a plaintiff must first make a clear showing that it will suffer irreparable harm without the injunction before any other inquiry is made. See Direx Israel Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991). If the plaintiff makes a clear showing of irreparable harm, the court must them balance the likelihood of irreparable harm to the plaintiff without the injunction against the likelihood of harm to the defendant if the injunction is issued. See id.

After balancing the hardships, the court then proceeds to evaluate the plaintiff's likelihood of success on the merits. HN3 Where the balance of hardships "tips decidedly" in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised serious questions going to the merits. See Rum Creek Coal Sales, 926 F.2d at 359. Where the plaintiff fails to establish that the balance tips decidedly in its favor, the plaintiff must make a strong showing of likelihood of success for a preliminary injunction to issue. See Dirax, 952 F.2d at 818. Finally, Plaintiff must establish that the public interest favors issuance [*16] of a preliminary injunction. However, this final factor is rarely determinative. See Rum Creek Coal Sales, 926 F.2d at 366.

In the instant case, Plaintiff has made a clear showing of irreparable injury in the absence of injunctive relief. Plaintiff has demonstrated that Defendants' soliciting of its customers, contacting of its representatives, and use of its confidential business information would cause Plaintiff to suffer incalculable harm to its competitive position. Specifically, the threatened loss of Plaintiff's newly developed market for the road repair products along with the threatened loss of Plaintiff's employees, sales representatives, certified applicators, and existing and potential customers constitute irreparable harm.

Conversely, Defendants will not suffer any substantial hardship if an injunction is issued. The injunction covers only a limited number of customers which comprise a small percentage of the potential market for these road repair products. Defendants are free to compete for the remaining universe of customers and sales persons who deal in these types of products. The harm to Defendants, if any, would be the denial of an unfair advantage [*17] over Plaintiff based on Defendant Baker's former employment with Plaintiff. On balance, the hardships tip decidedly in Plaintiff's favor.

Because Plaintiff has established that the balance of hardships tips decidedly in its favor, Plaintiff must establish only that a serious and substantial question exists with respect to the merits. Based on the letter and e-mail messages from Defendant Baker as well as Plaintiff's numerous affidavits, Plaintiff has surpassed its burden by making a strong showing of likelihood of success on its state law claims. At a minimum, Plaintiff has met its burden by

raising a serious question going to the merits on each of its claims.

Finally, the court must consider the public interest. Plaintiff contends that the public interest supports fairness and good faith in the employment setting. Defendants contend that the public interest favors free competition in the marketplace and an individual's right to pursue meaningful employment of his choosing. Although this factor appears to be somewhat equal, Plaintiff's position supporting fair dealing and the honoring of contracts is more closely aligned with the public interest.

CONCLUSIONS OF LAW

1. Defendant [*18] Baker's covert duplicity in the solicitation of Plaintiff's customers, contacting of Plaintiff's representatives, and utilization of Plaintiff's confidential business information, including pricing strategies and expertise gained through observation and knowledge of Plaintiff's demonstrations, will cause Plaintiff to suffer immediate, incalculable, and irreparable harm in the form of loss of its customer base for its road repair products, loss of its employees and representatives, and loss of the considerable resources it has devoted to developing its established and potential customers.

2. The issuance of an injunction will not cause Defendants to suffer any significant harm because there are many other possible customers and almost limitless business opportunities in the mostly untapped market for the road repair products.

3. Monetary damages are not an adequate remedy under the circumstances because there is no way to measure any losses of potential revenue flowing from the Defendants' exploitation of Plaintiff's proprietary information or how Plaintiff's business might have grown but for Defendants' wrongdoing, and unless an injunction is issued Defendants would be allowed to [*19] retain an unfair advantage over Plaintiff.

4. The balance of hardships tips decidedly in favor of Plaintiff.

5. Plaintiff has made a strong showing of likelihood of success on its claims for breach of contract, breach of fiduciary duty, interference with contract, unfair and deceptive trade practices, unjust enrichment, and misappropriation of trade secrets. See Sara Lee Corp. v. Carter, 351 N.C. 27, 519 S.E.2d 308 (N.C. 1999); Dalton v. Camp, 135 N.C. App. 32, 519 S.E.2d 82 (N.C. App. 1999); and Wilmington Star-News, Inc. v. New Hanover Reg'l Med. Ctr., 125 N.C. App. 174, 480 S.E.2d 53 (N.C. App. 1997). At a minimum, Plaintiff has raised a substantial and serious question as to the merits of its state law claims based on the solicitous e-mails and the incriminating letter from Defendant Baker to Stuart Lilley.

6. While free competition is in the public interest, the public's desire for good faith and fair dealing in the employment context outweighs it.

7. Injunctive relief is available under these circumstances. See Chem-Trend, Inc. v. McCarthy, 780 F. Supp. 458 (E.D. Mich. 1991); Alexander & Alexander Benefits Servs., Inc. v. Benefit Brokers & Consultants, Inc., 756 F. Supp. 1408 (D. Ore. 1991); [*20] and National Legal Research Group v. Lathan, 1993 U.S. Dist. LEXIS 6681, 1993 WL 169789 (W.D. Va. 1993).

8. A preliminary injunction, limited in time as to Plaintiff's customers, potential customers, representatives, and applicators, is necessary to restore the appropriate competitive balance between the parties.

CONCLUSION

For the foregoing reasons, the court will grant Plaintiff's motion for a preliminary injunction.

Get a Document by Citation - 2000 U.S. Dist. LEXIS 2536    Page 9 of 15

Case 1:02-cv-00648-WDQ    Document 55-11    Filed 09/12/2003    Page 9 of 15

An order and preliminary injunction in accordance with this memorandum opinion shall be entered contemporaneously herewith.

January 21ST, 2000

Frank W. Bullock Jr.

United States District Judge

ORDER and PRELIMINARY INJUNCTION

BULLOCK, District Judge

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Plaintiff's motion for preliminary injunction [Doc. # 2] is **GRANTED** as follows:

For a period of 120 days from the date of this Order, all Defendants and any agents, representatives, employees, and successors, and all other persons in active concert and participation with any of the Defendants are hereby **RESTRAINED AND ENJOINED** from contacting the individuals and entities listed in Exhibit 1 for [*21] the purpose of seeking to demonstrate or sell asphalt and concrete repair products or to otherwise enter into business relations relative to the manufacture, sale, distribution, or application of such products;

For a period of 120 days from the date of this Order, all Defendants and any agents, representatives, employees, and successors, and all other persons in active concert and participation with any of the Defendants are hereby **RESTRAINED AND ENJOINED** from contacting any Marketing Associates, Inc., (MAI) employee or any sales representative listed in Exhibit 2, or any certified applicator listed in Exhibit 3;

Until the trial of this action, Defendant Baker is **RESTRAINED AND ENJOINED** from utilizing proprietary information or trade secrets received while he was an employee of the Plaintiff, specifically (1) information concerning formulations, reports, physical property data, processing information, blending information, and similar information regarding certain performance chemicals for urethane used with rapid cure repairs; (2) procedures and documentation concerning rapid cure repairs; (3) manufacturing trade secrets concerning the development, sales systems, manufacturing, [*22] and operating procedures of MAI; (4) non-public information concerning rapid cure repairs; (5) business plans or projections; (6) new or anticipated business locations; (7) market research, pricing policies, cost information, financial and sales data; (8) personnel information and personnel policies; (9) business methods, product sourcing, proprietary software, and compensation methods; and

Until the trial of this action, Defendants Lilley Construction Services, Ltd., and Lilley, L.L.C., and any agents, representatives, employees, and successors, and all other persons in active concert and participation with any of the Defendants are **RESTRAINED AND ENJOINED** from utilizing any proprietary information or trade secrets as specified above which Defendant Baker may disclose or may have previously disclosed to them.

This order is conditioned upon continuation of the $ 25,000.00 bond which Plaintiff has previously posted with the Clerk of this court.

January 21ST, 2000

Frank W. Bullock Jr.

United States District Judge

EXHIBIT 1

[EDITOR'S NOTE: TEXT WITHIN THESE SYMBOLS [O> <O] IS OVERSTUCK IN THE SOURCE]

**DEMOS PERFORMED**

ALABAMA
4/30/98   Maxwell Airforce Base
5/1/98    ADOT Montgomery

ARIZONA
Don Moody -- Sales Rep
11/16/98  ADOT Phoenix
11/17/98  ADOT Prescott

ARKANSAS
Dwight Lee -- Sales Rep
12/7/98   ADOT Fort Smith
12/8/98   ADOT Little Rock
12/9/98   ADOT Forest City

CALIFORNIA
Don Moody - Sales Rep
9/30/98   CALTRANS Santa Marie
10/6/98   CALTRANS N. Hollywood
10/7/98   Victorville Airport
10/29/98  CALTRANS Sacramento
11/2/98   CALTRANS Moreno Valley
11/2/98   LAX Airport
11/5/98   CALTRANS Brea
11/9/98   CALTRANS Ventura
11/10/98  CALTRANS Walnut Grove
11/12/98  CALTRANS San Diego

GEORGIA
2/6/99    [O>National Pavement Expo<O]      Dekaib Peachtree Airport
2/8/99    GDOT Atlanta Division 7
2/9/99    UPS Doraville, GA

ILLINOIS
Paul Sullivan -- Sales Rep
8/13/98   IDOT Pontiac District 3
8/14/98   IDOT Schwamburg District 1        Failure
3/17/99   O'Hare Airport                    City of Chicago

KENTUCKY
Rod Farrington -- Sales Rep
3/98      Kentucky Transportation Cabinet
MAINE

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 25356
Case 1:02-cv-00648-WDQ   Document 35   Filed 09/12/2003   Page 11 of 15
Page 11 of 15

12/16/98 DOT Brunswick

MASSACHUSETTS

12/17/98 City of Worcester

MICHIGAN

Paul Matheson -- Sales Rep

6/29/98 MDOT Lansing I-496
6/30/98 MDOT Lansing US 127
7/1/98 MDOT Lansing I-96
8/12/98 Clinton County Rd Commission St. Johns

NORTH CAROLINA

Mark O'Neal -- Sales Rep

3/98 Winston Salem — Hwy 52 N
2/12/99 Charlotte Douglas Airport
7/13/99 Westinghouse Inc.
8/9/99 Statesville Airport
8/9/99 City of Charlotte

OHIO

Paul Sullivan -- Sales Rep

11/23/98 ODOT Columbus — I-70 E
3/23/99 Ohio State University Parking
3/23/99 City of Wisterville
3/24/99 City of Gahanna

OKLAHOMA

Dwight Lee -- Sales Rep

11/19/98 ODOT Paul Valley — Hwy 35
11/19/98 Pauls Valley Airport
11/20/98 ODOT Ardmore — Hwy 35
12/2/98 ODOT Oklahoma City — I-35
12/3/98 ODOT Tulsa — Hwy 412
12/4/98 ODOT Henrietta

SOUTH CAROLINA

JON SIMMONS -- APPLIED POLYMERICS

2/11/99 SCDOT — Greensville

TENNESSEE

Rod Farrington -- Sales Rep

3/30/98 FedEx Airport Terminal
3/30/98 Memphis Airport
3/31/98 Smyrna Airport
4/1/98 Nashville Airport
4/1/98 TDOT Nashville — I-40
4/2/98 TDOT Knoxville St. — Rte 115
5/28/98 TDOT Johnson City
12/10/98 TDOT Jackson

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 2536
Case 1:02-cv-00648-WDQ   Document 35-13   Filed 09/12/2003   Page 12 of 15
Page 12 of 15

| Date | Location |
|---|---|
| 12/11/98 | Nashville Airport |
| 2/16/99 | City of Kingsport |
| 2/17/99 | Morristown Airport |

VIRGINIA
Don Silver and Billy Hunt -- Sales Reps

| Date | Location |
|---|---|
| 5/5/98 | VDOT Henrecker Co. |
| 5/5/98 | VDOT Fredricksburg |
| 5/6/98 | VDOT Quantico |
| 5/6/98 | VDOT Culpepper |
| 5/7/98 | VDOT Louisa |
| 5/7/98 | VDOT Charlottsville |
| 5/28/98 | VDOT Bristol |
| 7/15/99 | VDOT Suffolk |
| 7/15/99 | City of Norfolk |
| 10/27/99 | VDOT Richmond / Slurry Pavers / C.A. Barnes / Landford Brothers |

WASHINGTON
KC Sullivan -- Sales Rep

| Date | Location |
|---|---|
| 9/22/98 | WDOT Belvue |
| 9/23/98 | WDOT Tacoma |
| 9/24/98 | WDOT Mesa |

TEXAS
Dwight Lee -- Sales Rep

| Date | Location |
|---|---|
| 11/23/98 | City of Dallas |
| 12/1/98 | TDOT Dallas |
| 12/1/98 | TDOT Fort Worth |

COLORADO

| Date | Location | |
|---|---|---|
| 4/9/99 | City of Colorado Springs | |
| 4/9/99 | City of Aurora | |
| 5/25/99 | City of Fort Collins | |
| 5/15/99 | City of Greeley | |
| 5/26/99 | City of Westminister | |
| 5/26/99 | City of Lakewood | |
| 5/26/99 | City of Aurora | |
| 5/27/99 | City of Wheatridge | |
| 5/28/99 | Fort Range Airport | Fort Range |

SOUTH DAKOTA
   [O>Highway Improvements Inc.   Sioux Falls<O]

SWEDEN
10/22/99  Bengt Westerholm / Swedish Roads / Arlander Airport
[*23]

EXHIBIT 2

**Sales Rep List**

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 2536   Page 13 of 15

Case 1:02-cv-00648-WDQ   Document 35   Filed 09/12/2003   Page 13 of 15

**Rod Farrington**

Tennessee

Kentucky

West Virginia

**Don Silver**

Virginia

**Paul Matheson**

Michigan

**Paul Sullivan**

Ohio

Illinois

Wisconsin

INdiANA

**Robert Emfinger**

Georgia

Alabama

Mississippi

**Dwight Lee**

Oklahoma

Arkansas

Texas

**Don Moody**

Southern California

Arizona

**Jim Barber**

Northern California

**Roger Stutzman**

Washington

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 2536	Page 14 of 15

Case 1:02-cv-00648-WDQ   Document 35   Filed 09/12/2003   Page 14 of 15

Oregon

Idaho

EXHIBIT 3

**Certified Applicators List**

Applied Polymerics

North Carolina

South Carolina

Virginia

West Virginia

Tennessee

Georgia

**Asphalt Concrete Services**

Michigan

**Eagle Sales & Consulting**

California

Washington

Oregon

Idaho

Arizona

**New England Sealcoating**

Massachusetts

Service: **Get by LEXSEE®**
Citation: **2000 us dist lexis 2536**
View: Full
Date/Time: Thursday, September 11, 2003 - 3:05 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 2536

Case 1:02-cv-00648-WDQ   Document 35-11   Filed 09/12/2003   Page 15 of 15

Page 15 of 15

Case 1:02-cv-00648-WDQ   Document 35-11   Filed 09/12/2003   Page 15 of 15