Service: **Get by LEXSEE®**
Citation: **2003 us dist lexis 10100**

*2003 U.S. Dist. LEXIS 10100, ***

PAMELA JONES, Plaintiff, vs. HAMILTON COUNTY SHERIFF'S DEPARTMENT, et al., Defendants.

CAUSE NO. IP 02-0808-C-H/K

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

2003 U.S. Dist. LEXIS 10100

June 12, 2003, Decided

**DISPOSITION:** [*1] Jones' motion to compel discovery GRANTED IN PART and DENIED IN PART.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendants, a sheriff's department and three department officials, for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and 42 U.S.C.S. § 1983. The employee moved to compel discovery.

**OVERVIEW:** The employee claimed that she was disciplined and terminated in retaliation for her complaints about sexual harassment and about conditions at a juvenile detention center. The employee's motion to compel followed several extensions of time for defendants to respond to discovery and attempts to resolve discovery disputes; therefore, the employee's failure to file a statement or arrange a conference as required by U.S. Dist. Ct., S.D. Ind., R. 37.1 did not warrant denial of the motion. Defendants failed to produce a privilege log as required by Fed. R. Civ. P. 26(b)(5). A draft version of defendants' Equal Employment Opportunity Commission position statement contained counsel's mental impressions, legal advice, and evaluation of the case and was protected by the attorney-client privilege. Correspondence between defendants and counsel also was protected. The employee was entitled to review personnel files of similarly situated employees and the department officials. She also was entitled to discovery of her own time sheets. Defendants were not allowed to impose costs on the employee for recovering and copying the documents.

**OUTCOME:** The employee's motion to compel was granted as to her request for a privilege log, information that did not fall within the attorney-client privilege, personnel files, and time sheets. The motion was otherwise denied.

**CORE TERMS:** discovery, personnel, interrogatory, attorney-client, responsive, motion to compel, log, work product doctrine, privileged, motion to compel discovery, protective order, legal advice, discoverable, disclosure, local rule, similarly situated, separate statement, subject matter, termination, social security, legal advisor, applicability, supervisory, withheld, withhold, discover, prevail, redact, discovery dispute, training session

### LexisNexis (TM) HEADNOTES - Core Concepts - ✦ Hide Concepts

Civil Procedure > Discovery Methods > Motions to Compel

HN1 See U.S. Dist. Ct., S.D. Ind., R. 37.1.

Civil Procedure > Discovery Methods > Motions to Compel
HN2 As U.S. Dist. Ct., S.D. Ind., R. 37.1 itself states, the court "may" deny a discovery motion if unaccompanied by a separate statement; the court is not required to deny such a motion. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Relevance
HN3 Fed. R. Civ. P. 26(b)(1) permits discovery into any matter, not privileged, that is relevant to the claim or defense of any party. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Relevance
HN4 Under Fed. R. Civ. P. 26(b)(1) as revised, parties are still able to obtain discovery that is relevant to the subject matter involved in the pending action if good cause is shown. Under the relevancy standard, information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Relevance
Civil Procedure > Discovery Methods > Motions to Compel
HN5 In the event the parties cannot informally resolve a discovery dispute, Fed. R. Civ. P. 37 provides a vehicle for the aggrieved party to request an order compelling discovery. When the discovery sought appears relevant, the party opposing the discovery bears the burden of proof to establish the discovery's lack of relevance by demonstrating that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters
HN6 To resolve discovery disputes, and determine what documents are at issue, courts often look to the privilege log produced by the discovery opponent required by Fed. R. Civ. P. 26(b)(5). More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters
HN7 See Fed. R. Civ. P. 26(b)(5).

Civil Procedure > Disclosure & Discovery > Privileged Matters
HN8 The requirement to provide a privilege log is described as follows: discovery opponents must produce a privilege log listing each separate document they claim to be beyond discovery, described in the following separate categories. For each document, the log should identify the date, the author and all recipients, along with their capacities. The log should also describe the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged or immune from discovery. These categories, especially this last category, must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden of establishing the requirements expounded upon in the foregoing discussion. Accordingly, descriptions such as "letter re claim," "analysis of claim," or "report in anticipation of litigation"--with which courts have grown all too familiar--will be insufficient. This may be burdensome, but it will provide a more accurate evaluation of a discovery opponent's claims and takes into consideration the fact that there are no presumptions operating in the discovery opponent's favor. Any failure to comply with these directions will result in a finding that the discovery opponents have failed to meet their burden of establish the applicability of the

privilege. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters
**HN9** If the description contained in a privilege log falls below the required standard and fails to provide sufficient information for the court and the party seeking disclosure to assess the applicability of the attorney-client privilege or work product doctrine, then disclosure of the document is an appropriate sanction. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters
**HN10** To establish the protection of a privilege, descriptions of privileged documents must contain sufficient information for the court to ascertain the content of the documents. More Like This Headnote

Legal Ethics > Client Relations > Attorney-Client Privilege
**HN11** The attorney-client privilege only protects a client's confidential communications made to an attorney for the purpose of obtaining legal advice from a professional legal advisor acting in such a capacity. A document is protected by the attorney-client privilege when (1) legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or the legal advisor, (8) except the protection may be waived. More Like This Headnote

Legal Ethics > Client Relations > Attorney-Client Privilege
**HN12** The purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. The party asserting the privilege bears the burden of establishing all of its elements on a document-by-document basis. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters
**HN13** Documents containing an attorney's and a client's mental impressions and strategies, and either soliciting or providing legal advice, are the very type of communications that the attorney-client privilege prevents an opposing party from obtaining in the discovery process. More Like This Headnote

Legal Ethics > Client Relations > Attorney-Client Privilege
**HN14** Attorney-client privilege claims protect only documents, from client to lawyer or from lawyer to lawyer or from lawyer to client, whose production would reveal the content of privileged communications from clients made for the purpose of securing legal advice or services. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Litigation Costs
**HN15** Practically speaking, parties typically absorb the costs associated with reasonable, routine discovery, recognizing the old adage that "what goes around comes around." Moreover, a prevailing party may seek to recover the costs associated with copying discovery at the conclusion of the case pursuant to 28 U.S.C.S. § 1920. This is not to say that a party must always produce discovery without any cost to the opponent, and hope for reimbursement only when the litigation ends. Where discovery is expected to be voluminous--particularly if the burden of production falls disproportionately on one party--a party might rightly insist on payment of costs at the time of disclosure, or send the copying to an outside vendor that will charge the party's opponent directly. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Relevance
HN16⤓ In an employment discrimination case, personnel files contain highly relevant information that would "greatly assist" a plaintiff in conducting discovery. More Like This Headnote

Civil Procedure > Discovery Methods > Requests for Production & Inspection
HN17⤓ Privacy concerns notwithstanding, personnel files may be discoverable under certain circumstances. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Relevance
HN18⤓ In Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., litigation, in which plaintiffs are required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Relevance
HN19⤓ Evidence of general patterns of discrimination is discoverable in disparate treatment cases. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Relevance
HN20⤓ Discovery of supervisory evaluations and other materials in personnel files is often permitted in employment discrimination cases, despite a concern that supervisors be allowed to discipline and evaluate their subordinates candidly, because these documents may, in many cases, be the best available evidence of the knowledge and state of mind of the supervisory officials. More Like This Headnote

Evidence > Privileges > Reports Privileged by Statute
HN21⤓ Under the Americans with Disabilities Act, employers are required to maintain medical records in a separate file from that of employee personnel files and treat them as confidential medical records. 42 U.S.C.S. § 12112(d)(3)(B). More Like This Headnote

Evidence > Privileges > Reports Privileged by Statute
HN22⤓ See 42 U.S.C.S. § 12112(d)(3)(B).

**COUNSEL:** For PLAINTIFF: John H. Haskin, Haskin Lauter & LaRue, Indianapolis, IN.

For DEFENDANTS: Michael B. Langford, Scopelitis Garvin Light & Hamson, Indianapolis, IN.

**JUDGES:** Tim A. Baker, United States Magistrate Judge, Southern District of Indiana.

**OPINIONBY:** Tim A. Baker

**OPINION: ENTRY ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**I. Background**

The complaint alleges that on or about February 6, 1999, Defendant Hamilton County Sheriff's Department ("HCSD") hired Plaintiff Pamela Jones as a correctional officer at its juvenile detention center. [Compl. P 4]. On January 7, 2001, Tim Tidwell, a fellow co-worker, engaged in a profanity-laced rage in Jones' presence. In response, Jones filed an internal complaint with HCSD alleging Tidwell sexually harassed her. [Id. at PP 15-16]. On February 7, 2001, Jones received a written reprimand and suspension from Defendant HCSD Captain Mitchell Russell. [Id. at P 17].

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 14100
Case 1:02-cv-00648-WDQ   Document 35   Filed 09/12/2003   Page 5 of 13
Page 5 of 13

On April 9, 2001, Jones complained to HCSD about conditions at the juvenile center that posed a serious danger to the public, fellow officers, and inmates. Specifically, Jones reported that a fellow **[*2]** correction officer, Jerry Young, left her unattended in the control room. Thereafter, on April 20, Jones received a verbal reprimand from Defendant HCSD Sergeant Angela Houston. [Id. at PP 18-19].

On Thursday, May 17, 2001, HCSD scheduled a training session. Jones' regularly scheduled days off were Thursday and Friday. [Id. at P 21]. In addition, Jones scheduled days off on May 19 and 20 to spend time with her son before he left for a military operation overseas. Jones' supervisor, Defendant Sergeant Donita Christy, knew this was the reason Jones scheduled off for those days. [Id. at PP 22-23]. In fact, Jones notified Christy on at least two occasions that she was unavailable to attend the training session. On May 21, HCSD terminated Jones for failure to attend the training session. [Id. at PP 21, 23-24].

Jones filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., alleging that the HCSD retaliated against her for exercising statutorily protected rights. Jones also brings this action under the First Amendment, 42 U.S.C. § 1983, alleging that HCSD, and Russell, Christy, and **[*3]** Houston in their individual capacities retaliated against her for exercising her free speech rights. [Id. at PP 25-29].

On October 7, 2002, Jones served her initial interrogatories and requests for production on Defendants. After Jones agreed to several extensions of time allowing Defendants to respond to discovery, on February 12, 2003, Defendants served their responses. On February 19, counsel for Jones sent a letter to counsel for Defendants stating his belief that Defendants' discovery responses were deficient. [Pl. Ex. I]. In the meantime, Jones served a second set of interrogatories and requests for production. After an unfruitful dialogue between counsel to resolve their discovery disputes on both sets of discovery, Jones filed a motion to compel. In dispute are Defendants' responses to Interrogatory Nos. 4, 8(e), and 17-20, and Requests for Production Nos. 2, 4-6, 7, 12, 19-22, 24-25, 30, 33 and 36. Defendants oppose this motion. For the reasons set forth below, Jones' motion to compel discovery is GRANTED IN PART and DENIED IN PART.

## II. Discussion

### A. Local Rule 37.1

As an initial matter, Defendants claim that Jones violated Local Rule 37.1 in filing her **[*4]** motion to compel. Local Rule 37.1, entitled "Informal Conference to Settle Discovery Disputes," provides:

> *HN1* The Court may deny any discovery motion (except those motions brought by a person appearing pro se and those brought pursuant to Rule 26(c), Federal Rules of Civil Procedure, by a person who is not a party), unless counsel for the moving party files with the Court, at the time of filing the motion, a separate statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorney(s) on the matter(s) set forth in the motion. The statement shall recite, in addition, the date, time, and place of such conference and the names of all parties participating therein. If counsel for any party advises the Court in writing that opposing counsel has refused or delayed meeting and discussing the problems covered in this rule, the Court may take such action as is appropriate to avoid unreasonable delay.

Richmond v. UPS Service Parts Logistics, 2002 U.S. Dist. LEXIS 7496, 2002 WL 745588, *2-3 (S.D. Ind. 2002), quoting S.D. Ind. L.R. 37.1. In this case, Defendants state that Jones violated the rule by not filing the separate statement [*5] or arranging a discovery conference to resolve their disputes. Defendants also state they encouraged Jones' counsel to arrange a time to review "7 inches of documentation" at their office. [Defs.' Br., pp. 3-4].

Jones' counsel did not file with the Court a separate statement demonstrating compliance with the rule, or make formal arrangements for a conference. Given the frequency with which Jones' counsel appears in this Court, counsel's failure to adhere to the requirements of Local Rule 37.1 is both surprising and disappointing. Nevertheless, Jones' counsel certainly made reasonable efforts to resolve the present discovery dispute before seeking Court intervention. For instance, on January 15, 2003, after agreeing to several extensions of time, counsel for Jones sent a letter to counsel for Defendant inquiring why their discovery responses were untimely. In addition, Jones' counsel sent a letter to Defendants' counsel on March 17 again addressing the parties' discovery disputes, and spoke with Defendants' counsel on the telephone on March 31 about this matter. The correspondences provided Defendants ample notice of the discovery dispute and Jones' intention of filing a motion to [*6] compel in the event an agreement was not reached.

Although Jones' counsel did not follow the letter of the local rule, he demonstrated substantial compliance in meeting the rule's requirements. To deny the motion to compel without prejudice, and to require further briefing "would be futile and expensive." Kobelco Metal Powder of America, Inc. v. The Energy Co-op., Inc., 2001 U.S. Dist. LEXIS 18393, 2001 WL 1397311, *1-2 (S.D. Ind. 2001). See also Felling v. Knight, 2001 U.S. Dist. LEXIS 22828, 2001 WL 1782361, *1 (S.D. Ind. 2001) ("the briefs leave little doubt the parties will not reach mutual agreement on the issues raised. Therefore, the court will address the underlying issues rather than deny Knight's motion solely on the basis of a procedural shortcoming. To hold otherwise would do little other than delay resolution of these issues, which have now been fully briefed."); Association For Disabled Americans v. Claypool Holdings, LLC, 2001 U.S. Dist. LEXIS 23729, 2001 WL 1112109, *8-9 (S.D. Ind. 2001) HN2 ("As the rule itself states, the court 'may' deny a discovery motion if unaccompanied by a separate statement; the court is not required to deny such a motion.").

With this in mind, the Court turns to the merits of [*7] Jones' motion.

## B. Standard on Motion to Compel Discovery

Federal Rule of Civil Procedure 26(b)(1) HN3 permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party." Sanyo Laser Products Inc. v. Bertlesmann Music Group Inc., 2003 U.S. Dist. LEXIS 8487, F. Supp.2d , 2003 WL 21181021, *2 (S.D. Ind. May 20, 2003), quoting Rule 26(b)(1). n1 Prior to this rule's revision in 2000, discovery was broadly defined in that information was generally discoverable if it was relevant to the subject matter involved in the pending action. See, e.g., Scaife v. Boenne, 191 F.R.D. 590, 592 (N.D. Ind. 2000). HN4 Under the revised rule, parties are still able to obtain discovery that is relevant to the subject matter involved in the pending action if good cause is shown. See White v. Kenneth Warren & Son, Ltd., 203 F.R.D. 364, 366 (N.D. Ill. 2001) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). Under the relevancy standard, "information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of [*8] admissible evidence." Martin Properties, Inc. v. Florida Industries Investment Corp., 2003 U.S. Dist. LEXIS 6181, 2003 WL 1877963, *2 (N.D. Ill. Apr. 14, 2003), quoting Rule 26(b)(1).

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 4010
Case 1:02-cv-00648-WDQ   Document 35-14   Filed 09/12/2003   Page 7 of 13
Page 7 of 13

n1 Although Rule 26(b)(1) was amended almost three years ago, Jones cited the wrong standard for discovery. [Pl.'s Br., p. 6].

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**HN5** In the event the parties cannot informally resolve a discovery dispute, Rule 37 provides a vehicle for the aggrieved party to request an order compelling discovery. See Adams v. Target, 2001 U.S. Dist. LEXIS 13052, 2001 WL 987853, *1 (S.D. Ind. 2001). When the discovery sought appears relevant, the party opposing the discovery bears the burden of proof to establish the discovery's lack of relevance by demonstrating that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. See, e.g., Beach v. City of Olathe, Kansas, 203 F.R.D. 489, 496 (D. Kan. 2001), citing Scott v. Leavenworth Unified School Dist. No. 453, 190 F.R.D. 583, 585 (D. Kan. 1999). [*9]

### C. Defendants Failed to Produce a Privilege Log

**HN6** To resolve discovery disputes, and determine what documents are at issue, courts often look to the privilege log produced by the discovery opponent required by Rule 26(b)(5). See Coltec Industries, Inc. v. American Motorists Ins. Co., 197 F.R.D. 368, 373 (N.D. Ill. 2000). Rule 26(b)(5) provides:

> **HN7** Claims of Privilege or Protection of Trial Preparation Materials. When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Mold-Masters Ltd. v. Husky Injection Molding Systems Ltd., 2001 U.S. Dist. LEXIS 20152, 2001 WL 1558303, *2-3 (N.D. Ill. 2001), citing Rule 26(b)(5).

In Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 145 F.R.D. 84 (N.D. Ill. 1992), **HN8** the requirement to provide a [*10] privilege log was described as follows:

> discovery opponents [must] produce a privilege log listing each separate document they claim to be beyond discovery, described in the following separate categories. For *each* document, the log should identify the date, the author and *all* recipients, along with their capacities. The log should also describe the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged or immune from discovery. These categories, especially this last category, must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden of establishing the requirements expounded upon in the foregoing discussion. Accordingly, descriptions such as "letter re claim," "analysis of claim," or "report in anticipation of litigation" -- with which we have grown all too familiar -- will be insufficient. This may be burdensome, but it will provide a more accurate evaluation of a discovery opponent's claims and takes into consideration the fact that there are no presumptions operating in the discovery opponent's favor. Any failure to comply with these directions [*11] will result in a finding that the

plaintiff-discovery opponents have failed to meet their burden of establish the applicability of the privilege.

Id. at p. 88 (emphasis in original). See also Allen v. Chicago Transit Authority, 198 F.R.D. 495, 498 n.1 (N.D. Ill. 2001) (same). HN9 "If the description falls below this standard and fails to provide sufficient information for the court and the party seeking disclosure to assess the applicability of the attorney- client privilege or work product doctrine, then disclosure of the document is an appropriate sanction." Mold-Masters, 2001 U.S. Dist. LEXIS 20152, 2001 WL 1558303, at *2-3, citing Smithkline Beecham Corp. v. Apotex Corp., 193 F.R.D. 530, 534 (N.D. Ill. 2000).

In the case at bar, Jones' Interrogatory No. 20 requested that Defendants "identify each document that is responsive to Plaintiff's First Request for Production of Documents" [Pl. Ex. F]. Essentially, this interrogatory requests a privilege log already mandated by Rule 26(b)(5). Defendants improperly objected to this request, stating only that they withheld documents they contended fell under the attorney-client privilege and work [*12] product doctrine without providing a description of the documents withheld. See Ash v. Theros Intern. Gaming, Inc., 2001 U.S. Dist. LEXIS 10952, 001 WL 648632, *2 (N.D. Ill. 2001), quoting Christman v. Brauvin Realty Advisors, Inc., 185 F.R.D. 251, 257 (N.D. Ill. 1999) HN10 ("To establish the protection of a privilege, descriptions of privileged documents must contain sufficient information for the court to ascertain the content of the documents."). Defendants' shortcoming in this respect has needlessly complicated Jones' and the Court's job of ascertaining which documents are properly withheld based on a privilege.

Accordingly, with regard to Interrogatory No. 20, Jones' motion to compel discovery is GRANTED. Defendants are ordered to provide a privilege log consistent with Rule 26(b)(5).

### D. Documents Prepared After EEOC Charge Filed

Jones states that Defendants provided deficient responses to Interrogatory Nos. 4, 18-19, and Request for Production Nos. 2, 7, 12, 19-22, and 24-25. [Pl.'s Br., pp. 8-9]. However, Defendants' responses reveal that they only dispute two categories of documents.

On June 13, 2001, Jones filed her first charge of discrimination with the EEOC. [*13] [Defs.' Ex. A]. Upon receiving this charge, the HCSD retained attorney Michael Howard to conduct an investigation. Howard's investigation encompassed contacting individuals involved in Jones' termination and the individually-named Defendants. Howard also asked the Defendants to prepare documents and compile information in order for him to submit a position statement on behalf of the HCSD to the EEOC. [Defs.' Br., p. 5]. Defendants contend that the attorney-client privilege applies to: (1) drafts of the position statement submitted to the EEOC; and (2) communications between Howard and Defendants regarding the charge filed by Jones. [Id. at p. 6].

HN11 The attorney-client privilege only protects a client's confidential communications made to an attorney for the purpose of obtaining legal advice from a professional legal advisor acting in such a capacity. See Rehling v. City of Chicago, 207 F.3d 1009, 1019 (7th Cir. 2000). To determine whether a document is protected by the attorney-client privilege, the Seventh Circuit has adopted the test formulated by Dean Wigmore. Under this test, a document is protected by the attorney-client privilege is when: (1) legal advice [*14] of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or the legal advisor, (8) except the protection may be waived. See United States v. White, 950 F.2d 426, 430 (7th

Cir. 1991); Vardon Golf Co., Inc. v. Karsten Mfg. Corp., 213 F.R.D. 528, 531 (N.D. Ill. 2003). HN12 The purpose of the attorney-client privilege is to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." Swidler & Berlin v. United States, 524 U.S. 399, 403, 141 L. Ed. 2d 379, 118 S. Ct. 2081 (1998). The party asserting the privilege bears the burden of establishing all of its elements on a document-by-document basis. See Mold-Masters Ltd. v. Husky Injection Molding Systems Ltd., 2001 U.S. Dist. LEXIS 20152, 2001 WL 1558303, *1 (N.D. Ill. 2001).

Applying these principles, the Court finds that the two categories of documents Defendants seek to protect fall [*15] under the attorney-client privilege. In Long v. Anderson University, 204 F.R.D. 129 (S.D. Ind. 2001), plaintiff sought to discover from defendant a draft response to plaintiff's complaint drafted by defendant's dean of students, and a letter from defendant's human resource manager regarding plaintiff's discovery requests. In denying plaintiff's motion to compel in these instances, and finding that the attorney-client privilege applied, the Court held that "these HN13 documents contain the attorney's and client's mental impressions, strategies, and either solicit or provide legal advice ... [they are the] very type of communications that the attorney-client privilege prevents an opposing party from obtaining in the discovery process." Id. at 135. Similar to the situation in Long, Defendants' drafts of the position statement contain counsel's mental impressions, legal advice, and evaluation of the case. In addition, the correspondence between counsel and Defendants was drafted with the expectation that the information contained therein would not be disclosed. See, e.g., [*16] American Nat. Bank and Trust Co. of Chicago v. AXA Client Solutions, LLC., 2002 WL 1058776, *2 (N.D. Ill. 2002) (drafts of letters protected by the attorney-client privilege); Old Second Nat. Bank of Aurora v. Commercial Union Midwest Ins. Co., 1999 U.S. Dist. LEXIS 18246, 1999 WL 1068635, *3 (N.D. Ill. 1999) (letters between attorney and client "are unquestionably attorney-client privileged."); Lexecon, Inc. v. Milberg Weiss Bershad Specthrie & Lerach, 1993 U.S. Dist. LEXIS 6898, 1993 WL 179789, *7 (N.D. Ill. 1993) HN14 ("Attorney-client privilege claims would protect only documents, from client to lawyer or from lawyer to lawyer or from lawyer to client, whose production would reveal the content of privileged communications from clients made for the purpose of securing legal advice or services."). n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 On page 4 of Defendants' brief, it appears Defendants are asserting the work product doctrine in regard to the drafts of the position statement and in their communications with counsel. However, Defendants fail to articulate how the work product doctrine applies to these documents. Therefore, this passing assertion of the work product doctrine is waived.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*17]

This does not end the Court's analysis. Since in their brief Defendants only claim a privilege on two categories of documents, it appears at first glance they concede they should respond to Interrogatory Nos. 4, 18-19, and Request for Production Nos. 2, 7, 12, 19-22, and 24-25 that request information outside of what the Court has deemed protected by the attorney-client privilege. Indeed, although Defendants objected to these discovery requests on the grounds of the attorney-client privilege and work product doctrine, they respond by stating that Jones may review responsive documents at their counsel's office. [Pl. Ex. F]. After reviewing each disputed interrogatory and request for production, in light of the Court's ruling in this section, Defendants' responses permitting Jones and her counsel an opportunity to review responsive documents appears to be appropriate as to the remaining discovery requests. See Fed. R. Civ. P. 33(b), 34.

However, the Court is troubled by Defendants' restraint that these responsive documents may only be copied at Jones' expense. HN15 Practically speaking, parties typically absorb the costs associated with reasonable, routine discovery, recognizing the **[*18]** old adage that "what goes around comes around." Moreover, a prevailing party may seek to recover the costs associated with copying discovery at the conclusion of the case pursuant to 28 U.S.C. § 1920. This is not to say that a party must always produce discovery without any cost to the opponent, and hope for reimbursement only when the litigation ends. Where discovery is expected to be voluminous -- particularly if the burden of production falls disproportionally on one party -- a party might rightly insist on payment of costs at the time of disclosure, or send the copying to an outside vendor that will charge the party's opponent directly. In this instance, however, Defendants' discovery responses are only 7 inches thick. As a result, Defendants are ordered to produce documents responsive to Jones' discovery requests under this section at no charge. In the event Defendants prevail in this litigation, they may elect to pursue their costs under Rule 54. See, e.g., AA Sales & Associates. Inc. v. JT&T Products Corp., 2001 U.S. Dist. LEXIS 11065, 2001 WL 855867, *2 (N.D. Ill. 2001) (court permitted defendant to recover a portion of its costs for "document discovery" under **[*19]** Rule 54 (d)).

Accordingly, Jones' motion to compel discovery is GRANTED IN PART and DENIED IN PART. Pursuant to the attorney-client privilege, Defendants may withhold from its discovery responses: (1) drafts of the position statement submitted to the EEOC; and (2) communications between Howard and Defendants regarding the Jones' EEOC charge. In regard to documents responsive to Jones' discovery requests under this section, Defendants are ORDERED to produce these documents to Jones' counsel at no charge.

### E. Personnel Files

Request Nos. 4, 5, and 6 seek the personnel files of the three individually-named Defendants, and Request Nos. 30, 33, and 36 seek the personnel files of Tim Tidwell, Jerry Young, and Becky Graham, all individuals Jones contends are similarly situated to her in respect to her Title VII claim. [Pl. Exs. F & G]. Defendants object to the production of this information, claiming that the requests seek confidential information such as medical records protected by federal and state law. [Pl. Exs. F & M].

Defendants' privacy concerns in its employment records are well-founded. However, Jones may discover the requested personnel files of similarly situated employees **[*20]** Tidwell, Young, and Graham. HN16 "Personnel files contain highly relevant information" that would "greatly assist" a plaintiff in conducting discovery. Spina v. Forest Preserve of Cook County, 2001 U.S. Dist. LEXIS 19146, 2001 WL 1491524, *3 (N.D. Ill. 2001). This was demonstrated recently in Tomanovich v. Glen, 2002 U.S. Dist. LEXIS 14885, 2002 WL 1858795 (S.D. Ind. 2002). In that case, plaintiff requested the personnel files of individuals similarly situated to her. In granting plaintiff's motion to compel, the Court held that the "production of these requested personnel files will[] assist Tomanovich in establishing a prima facie case of race, national origin, and age discrimination since she must show that similarly situated employees outside her protected class received more favorable treatment in compensation, promotion, disciplinary action, and termination, and will likely include relevant information such as age and last known address." 2002 U.S. Dist. LEXIS 14885, Id. at *7. However, the Court permitted the defendant to redact any social security numbers that may appear in documents. Id. See also EEOC v. Staffing Network, L.L.C., 2002 U.S. Dist. LEXIS 21318, 2002 WL 31473840, *5 (N.D. Ill. 2002) HN17 ("privacy concerns notwithstanding, personnel files **[*21]** may be discoverable under certain circumstances."); Wright v. Hollywood Casinos, 2002 U.S. Dist. LEXIS 8486, 2002 WL 989457, *2 (N.D. Ill. 2002) (plaintiff entitled to personnel files of employees who held the same job as plaintiff); Chavez v. DaimlerChrysler Corp., 206 F.R.D. 615, 622 (S.D. Ind. 2002) (the information contained in

personnel files of similarly situated individuals may assist plaintiff in establishing his disparate treatment claims); Coughlin v. Lee, 946 F.2d 1152, 1159 (5th Cir. 1991) HN18 ("In Title VII litigation, in which plaintiffs are similarly required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files.").

The Court also finds that Jones can discover the personnel files of the individually-named Defendants, each of whom allegedly played a role in Jones' termination. The discovery of personnel files of supervisory employees was discussed in Sykes v. Target Stores, 2002 U.S. Dist. LEXIS 6627, 2002 WL 554505 (N.D. Ill. 2002). There, plaintiff sought the personnel files of individuals involved in the decision not to promote him. Plaintiff claimed entitlement to these documents because this "information may lead to [*22] admissible evidence regarding instances where Target discriminated against other individuals." 2002 U.S. Dist. LEXIS 6627, Id. at *3. The court agreed. HN19 "Evidence of general patterns of discrimination is discoverable in disparate treatment cases ... [Plaintiff's] request for supervisor personnel files is reasonably calculated to lead to the discovery of prior complaints of discrimination against Target." 2002 U.S. Dist. LEXIS 6627, Id. at *4. See also Spina v. Forest Preserve of Cook County, 2001 U.S. Dist. LEXIS 19146, 2001 WL 1491524, *3 (N.D. Ill. 2001) (court ordered production of personnel files of individual defendants and of females who complained of sexual harassment and/or discrimination); Revelle v. Trigg, 1999 U.S. Dist. LEXIS 890, 1999 WL 80283, *3 (E.D. Pa. 1999) HN20 ("discovery of supervisory evaluations and other materials in police personnel files is often permitted, despite a concern that supervisors be allowed to discipline and evaluate their subordinates candidly, because these documents may, in many cases, be the best available evidence of the knowledge and state of mind of the supervisory officials."). Again, Defendants may redact any social security numbers that appear on any documents.

Defendants state that production of these personnel [*23] files "violate a variety of federal and state statutes regarding medical information, including the recently revamped HIPPA statutes and regulations." [Defs.' Br., p. 8]. Apparently, HCSD's personnel files contain documents on medical and psychological testing. [Id.]. HN21 Under the Americans with Disabilities Act, employers are required to maintain medical records in a separate file from that of employee personnel files and treat them as a confidential medical records. See Lindgren v. Camphill Village Minnesota, Inc., 2002 U.S. Dist. LEXIS 11078, 2002 WL 1332796, *8 (D. Minn. 2002), quoting 42 U.S.C. § 12112(d)(3)(B) (HN22 "information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record."). If in fact HCSD is co-mingling its employees' medical record with its personnel files, Defendants may exclude any medical records in responding to Jones' request. However, HCSD's apparent practice of co-mingling these records raises other issues that may require HCSD's attention.

Accordingly, Jones' motion to compel a response to Request Nos. 4, 5, 6, [*24] 30, 33, and 36 is GRANTED. Defendants are ordered to produce the responsive personnel files and shall redact any social security numbers that appear on any documents and exclude any medical records. n3

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Defendants state that they do not believe Jones can review the requested personnel files without a protective order. While a protective order under Rule 26(c) is not mandated, it is encouraged to curtail discovery disputes such as the one demonstrated in this case. The parties are certainly welcome to file and seek Court approval of an agreed protective order to prevent future discovery disputes. However, any such proposed order shall strictly comply with Citizens First National Bank of Princeton v. Cincinnati Insurance Co., 178 F.3d 943 (7th

Cir. 1999), and its progeny.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

### F. Time Sheets

Interrogatory No. 8(e) requests that Defendants provide "the average number of hours Plaintiff worked per week during the twelve months preceding her termination." [Pl. Ex. F]. Defendants respond by stating **[*25]** the "average number of hours worked by Plaintiff can be calculated by reviewing Plaintiff's time statements, which are in storage at this time. The documents can be located by a Hamilton County employee. Costs for pulling such documents will amount to $ 20.60 per hour. It is expected to take 4-8 hours. If Plaintiff wishes to pay this amount, these records can be obtained for Plaintiff's review." [Id.]. After Jones filed her motion to compel, Defendants offered Jones the opportunity to conduct her own inspection of these documents pursuant to a protective order. [Defs.' Br., p. 9].

Defendants do not dispute that Jones is entitled to this information, and for good reason. Jones can obtain damages for lost overtime in the event she prevails in her case. Not having access to this information inhibits her ability to estimate her alleged damages. Defendants' proposed limitation that Jones pay Defendants for their time in locating these documents in a warehouse, or have Jones or her counsel sifting through thousands of documents to locate a relatively small number of documents, is unreasonable. As a result, Defendants are ORDERED to produce these responsive documents free of charge **[*26]** to Plaintiffs. As previously noted, Defendants may request reimbursement of these costs in the event they prevail in this suit.

Accordingly, with regard to Interrogatory No. 8(e), Jones' motion to compel discovery is GRANTED. Defendants are ordered to provide the requested time sheets to Jones at no cost.

### G. Interrogatory No. 17

Interrogatory No. 17 asks Defendants to "state with particularity the legal and factual basis upon which [they] rely in asserting each and every affirmative defense contained in Defendants' Answer, Affirmative Defenses, and Demand for Trial by Jury." [Pl. Ex. A]. Although Defendants do not object to the interrogatory, Jones claims that they provided a response that did not set forth a legal or factual basis for their affirmative defenses. [Pl.'s Br., p. 11].

The information Jones seeks is certainly discoverable under the revised discovery standard, which states that litigants may obtain discovery on information "relevant to the claim or defense of any party." See Rule 26(b)(1). The Court has reviewed Defendants' response. While a more complete response may have been possible, the Court cannot say that Defendants' response is so deficient **[*27]** as to justify compelling a more detailed response.

Accordingly, with regard to Interrogatory No. 17, Jones' motion to compel discovery is DENIED.

### III. Conclusion

Jones' motion to compel discovery is GRANTED in regard to Interrogatory Nos. 8(e) and 20, and Request Nos. 4, 5, 6, 30, 33, and 36, and DENIED in regard to Interrogatory No. 17. With regard to Interrogatory Nos. 4, 18-19, and Request for Production Nos. 2, 7, 12, 19-22, and 24-25, Jones' motion is GRANTED IN PART and DENIED IN PART. Defendants may withhold: (1) drafts of the position statement submitted to the EEOC; and (2)

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10100    Page 13 of 13

Case 1:02-cv-00848-WBQ   Document 35-14   Filed 09/12/2003   Page 13 of 13

communications between Howard and Defendants regarding the EEOC charge Jones filed.

Consistent with this entry, Defendants shall respond to Jones' discovery requests and provide a privilege log within 15 days. The parties are encouraged to enter into a mutually agreed protective order to prevent future disputes and facilitate discovery.

So ordered.

DATED this 12th day of June, 2003.

Tim A. Baker

United States Magistrate Judge

Southern District of Indiana

Service: **Get by LEXSEE®**
Citation: **2003 us dist lexis 10100**
View: Full
Date/Time: Thursday, September 11, 2003 - 3:07 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.