Page 1

```
 1       IN THE UNITED STATES DISTRICT COURT
 2         FOR THE DISTRICT OF MARYLAND
 3                  -  -  -
 4   EQUAL EMPLOYMENT  OPPORTUNITY:  CASE NO.
     COMMISSION,                    :
 5        Plaintiff,                : WDQ-02-CV-648
             AND                    :
 6   KATHY C. KOCH,                 :
          Plaintiff-Intervenor,     :
 7                                  :
              V.                    :
 8                                  :
     LA WEIGHT LOSS,                :
 9        Defendant                 :
10
11                  -  -  -
12            September 25, 2003
13                  -  -  -
14
15        Oral deposition of LYNNE E.
     PORTLOCK, held in the offices of Esquire
16   Deposition Services, Suite 760, One
     Commerce Center, Wilmington, Delaware
17   19801 commencing at 10:10 a.m., on the
     above date, before Shenna M. Basye-Cara,
18   a Professional Reporter and a Notary
     Public in the State of Delaware.
19
                    -  -  -
20
21       ESQUIRE DEPOSITION SERVICES
        1880 John F. Kennedy Boulevard
22               15th Floor
        Philadelphia, Pennsylvania 19103
23            (215) 988-9191
24
```

Page 2

```
 1  APPEARANCES:
 2     UNITED STATES EQUAL EMPLOYMENT
        OPPORTUNITY COMMISSION
 3     BY: RONALD L. PHILLIPS, ESQUIRE
        3rd Floor, City Crescent Building
 4      10 South Howard Street
        Baltimore, Maryland 21201
 5      (410) 962-4626
        Counsel for the Plaintiff
 6
 7     WOLF, BLOCK, SCHORR AND
        SOLIS-COHEN, LLP
 8     BY: DAVID E. LANDAU, ESQUIRE
        22nd Floor
 9      1650 Arch Street
        Philadelphia, Pennsylvania 19103
10      (215) 977-2335
        Counsel for the Defendant
11
12     OBER KALER
        BY: PAMELA J. WHITE, ESQUIRE
13      120 East Baltimore Street
        Baltimore, Maryland 21202
14      (410) 347-7323
        Counsel for Kathy Koch
15
16  ALSO PRESENT:
17     KATHY C. KOCH
18
19
         - - -
20
21
22
23
24
```

Page 3

```
 1           - - -
 2           INDEX
 3
 4  Examination of: Lynne E. Portlock
 5     By Mr. Phillips..................5
 6
 7
 8
 9           - - -
10         EXHIBITS
11  NO.    DESCRIPTION         PAGE NO.
12
    Portlock-1  Subpoena              16
13
    Portlock-2  3/6/98 Employee
14              Warning Notice       242
15  Portlock-3  Handwritten Evaluations
                of Training          293
16
    Portlock-4  3/8/98 Letter to L.
17              Portlock from K. Koch 309
18
19           - - -
20
21
22
23
24
```

Page 4

```
 1           - - -
 2    DEPOSITION SUPPORT INDEX
 3
 4
 5  Direction To Witness Not To Answer
 6    Page   Line    Page   Line
 7           (None)
 8
 9
10  Request For Production Of Documents
11    Page   Line    Page   Line
12           (None)
13
14
15  Stipulations
16    Page   Line
17      (None)
18
19
20  Questions Marked
21    Page   Line    Page   Line
22           (None)
23
24           - - -
```

Page 5

```
 1           - - -
 2      LYNNE E. PORTLOCK, after
 3   having been duly sworn, was
 4   examined and testified as follows:
 5           - - -
 6         EXAMINATION
 7           - - -
 8  BY MR. PHILLIPS:
 9     Q.  Good morning. Could you
10  please state your full name for the
11  record.
12     A.  Lynne E. Portlock.
13     Q.  Ms. Portlock, I'll just
14  introduce myself. My name is Ron
15  Phillips. I'm an attorney with the Equal
16  Employment Opportunity Commission. I
17  represent the Commission in the matter of
18  EEOC and Kathy Koch versus LA Weight
19  Loss.
20       Are you represented today?
21     A.  Yes.
22     Q.  You're represented by Mr.
23  Landau?
24     A.  Yes.
```

Portlock, Lynn - 09/25/03 - Exhibits

Page 90

1  specific topic that led into half of the
2  meeting being interviewing, because
3  that's sometimes what happened in a
4  meeting. It was split.
5    Q.  Who else was at the meeting?
6    A.  I don't remember
7  specifically. It was either areas or
8  other regionals.
9    Q.  Do you remember anyone from
10 corporate being there?
11   A.  Are you counting regionals
12 as someone from corporate?
13   Q.  Yes. Let's exclude
14 regionals for now.
15   A.  Not that I remember.
16   Q.  Is there anything else you
17 remember about that meeting? What was
18 said, what --
19   A.  Not specifically.
20   Q.  Did you get any documents
21 before, during, or after that meeting?
22   A.  Not that I -- I don't
23 remember.
24   Q.  Lesia Petrizio promoted you

Page 91

1  to area supervisor the first time,
2  correct?
3    A.  Yes.
4    Q.  1994 time frame, right?
5    A.  Yes.
6    Q.  How did you know how to be
7  an area supervisor? Did you get training
8  on how to be an area supervisor?
9    A.  Yes.
10   Q.  Who gave you that training?
11   A.  She did.
12   Q.  Ms. Petrizio?
13   A.  Yes.
14   Q.  Who promoted you to regional
15 supervisor or regional manager?
16   A.  I'm not sure.
17   Q.  How did you -- did you need
18 training to become a regional
19 supervisor? Well, first I'll ask you,
20 did you have training on that?
21   A.  Of what my new
22 responsibilities were?
23   Q.  Training or instruction on
24 being a regional supervisor.

Page 92

1    A.  Yes.
2    Q.  Who did you get that from?
3    A.  I'm not sure. I don't
4  remember.
5    Q.  Eileen Stankunas? Does that
6  sound right?
7    A.  Yes. Could have been. She
8  would have been my next superior, so
9  that's where it would have come from.
10   Q.  Do you have specific
11 recollection of her doing that, of her
12 giving you instruction on being a
13 regional supervisor?
14   A.  No, because it wouldn't have
15 been a one-day thing. It would have been
16 something over a time frame. No.
17   Q.  Do you recall her ever doing
18 that?
19   A.  Yes.
20   Q.  Did that include hiring,
21 instruction on hiring?
22   A.  Yes.
23   Q.  Lesia Petrizio, when she was
24 giving you instruction on being an area

Page 93

1  supervisor, that also included hiring?
2    A.  Yes.
3    Q.  Again, I don't want to play
4  memory games with you here, so I'm just
5  going to go through this and you can give
6  me a "yes" or "no" or "sounds right" or
7  "you're way off" or something.
8      As a regional supervisor,
9  you were earning about 98 to $100,000 a
10 year. Does that sound correct?
11   A.  Correct.
12   Q.  What was that based on? How
13 did you end up with that number? Part
14 salary, part commission?
15   A.  Correct.
16   Q.  What was the salary?
17   A.  I don't remember.
18   Q.  What was the commission
19 structure?
20   A.  I don't remember. It's been
21 a long time. I don't remember.
22   Q.  So based on center income?
23   A.  There was a percentage.
24   Q.  Percentage of center income?

Page 242

1   Q.  Didn't know anything about?
2   A.  About certain areas. I
3   can't remember what the specifics were.
4       MR. PHILLIPS: I'm going to
5       show you a document and we'll mark
6       it Portlock Exhibit-2.
7       MR. LANDAU: The next area,
8       before you move on, can we take a
9       break?
10      MR. PHILLIPS: Yes.
11          - - -
12      (Exhibit Portlock-2 was marked
13      for identification.)
14          - - -
15  BY MR. PHILLIPS:
16  Q.  Ms. Portlock, if you could,
17  look at Portlock Exhibit-2. Let me know
18  when you're finished looking at that,
19  please.
20      Ms. Portlock, have you had a
21  chance to look at Exhibit-2?
22  A.  Yes.
23  Q.  Do you recognize Exhibit-2?
24  A.  Yes.

Page 243

1   Q.  Did you prepare Exhibit-2?
2   A.  Yes.
3   Q.  Is this the written warning
4   that you were referencing earlier?
5   A.  Yes.
6   Q.  I want to go through this
7   written warning. First of all, does this
8   written warning encompass all of the
9   issues that you had concern with
10  regarding Ms. Koch's performance?
11  A.  I believe so.
12  Q.  And that is your signature
13  next to the word "supervisor" on the
14  first page?
15  A.  Correct.
16  Q.  Now, it is dated 3/6/98.
17  Would you agree?
18  A.  Yes.
19  Q.  And in the company statement
20  portion it reads "ineffective training,"
21  and maybe perhaps you should read it
22  since it's your handwriting. Could you
23  go ahead and read that, please.
24  A.  Ineffective training.

Page 244

1   Kathy's employee training on 2/23/98 did
2   not cover PE's with role play. Not
3   enough time was spent on phone script.
4   Not enough time was spent on homework of
5   workups to where entire class had a full
6   understanding of supplement prices and
7   savings. Cost of health enhancers and
8   weight enhancers was not covered.
9   Kathy's training left employers confused
10  and not enough knowledge to place them in
11  a center the following week. Therefore,
12  I had to spend an entire day covering
13  material that wasn't properly covered.
14  Q.  So with respect to any
15  alleged deficiencies with Ms. Koch's
16  training, you would agree with me that
17  there are three issues primarily outlined
18  here, correct? The first issue being,
19  did not cover PE's with role play; second
20  issue being, not enough time was spent on
21  the phone script; the third issue being,
22  not enough time was spent on homework of
23  workup to where entire class had a full
24  understanding of supplement prices and

Page 245

1   savings, cost of health enhancers and
2   weight enhancers was not covered.
3   A.  Correct.
4   Q.  So those three issues,
5   right?
6   A.  It's actually four.
7   Q.  What's the fourth issue?
8   A.  Because you -- it looks like
9   the last issue was all combined, but it's
10  not. Not enough time was spent on
11  homework of workups to where the class
12  had a full understanding of supplement
13  prices and savings. That should be a
14  period there. That would have been the
15  third.
16      Cost of health enhancers and
17  weight enhancers was not covered. That
18  should be the fourth.
19  Q.  Thank you for explaining
20  that.
21      Let's talk about the first
22  issue here. Training on 9/23/98 (sic)
23  did not cover PE's with role play.
24  Q.  What is a PE?