In re: L.A. Weight Loss

# CONFIDENTIAL INTERVIEW OF LYNNE PORTLACK

April 27, 2000

COURT REPORTERS, ETCetera, INC.

(410) 653-1115   (202) 628-DEPO   1-800-947-DEPO (3376)

EEOC 01733

Page 1

1  In re: L.A. Weight Loss    *
2  * * * * * * * * * *
3
4           CONFIDENTIAL
5           INTERVIEW OF
6           LYNNE PORTLACK
7           APRIL 27, 2000

Page 2

1  IN ATTENDANCE:
2  JUDY NAVARRO, EEOC
3  REGINA ANDREW, EEOC
4  AMY MIRAGLIA, L.A. Weight Loss

Page 3

1  CONFIDENTIAL INTERVIEW OF LYNNE PORTLACK
2      MS. NAVARRO: Hello. My name is Judy
3  Navarro. I'm an investigator with EEOC in the
4  Baltimore District office. It is April 27, 2000,
5  and the time is approximately 1:00 p.m.
6      MS. ANDREW: My name is Regina Andrew,
7  EEOC.
8      MS. MIRAGLIA: Amy Miraglia for L.A.
9  Weight Loss.
10     MS. PORTLACK: Lynne Portlack, L.A.
11 Weight Loss.
12         QUESTIONS PROPOUNDED
13         BY MS. NAVARRO:
14 Q. Ms. Portlack, would you state your
15 full name and address.
16 A. Lynne --
17 Q. Could you spell that?
18 A. L-Y-N-N-E. Middle initial E.
19 Q. And what does that stand for?
20 A. Eve, E-V-E; Portlack, P-O-R-T-L-A-C-K.
21 Q. And your social security number?

Page 4

1  A. 221 --
2  Q. 221.
3  A. 54 --
4  Q. 54.
5  A. 2603.
6  Q. 2603?
7  A. Correct.
8  Q. Let me be sure I've got that right.
9  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?
10 A. Correct.
11 Q. And your address?
12 A. 1103 Chelmsford, C-H-E-L-M as in Mary,
13 S as in Sam, F as in Francis, O-R-D.
14 Q. All right.
15 A. That's Circle. Newark, Delaware
16 19713.
17 Q. 197?
18 A. 13.
19 Q. 13?
20 A. Correct.
21 Q. 197?

EEOC 01734

Page 209

1 with the training correctly. At this point, I
2 can no longer use you as my trainer."
3    Q. So she --
4    A. And she got up and got -- at that
5 time, when I did that, I had -- I put Kristi on
6 the speaker phone, because I needed to have
7 someone there with me as a witness. I just
8 thought, and there wasn't anybody in the center
9 that could do that. I didn't want to put a
10 manager into that. So I got Kristi and hit the
11 speaker button and put her one, so she could hear
12 what took place. And I don't really think -- at
13 that point, she was not my trainer.
14        If she wanted another position, we
15 could use her in another position. She promptly
16 got up and said, "Okay, and I'm out of here."
17 And I said, "Please make sure you turn in all of
18 your material," which she did not.
19    BY MS. ANDREW:
20    Q. Let me ask you this: Prior to making
21 a decision to fire her, did you consult with

Page 210

1 anybody else?
2    A. Yes.
3    Q. Who?
4    A. Eileen Stankunas or Stankunas, however
5 you say it.
6    Q. Was that after the conversation you
7 had with Eileen, regarding the letter that Cathy
8 Koch had given you?
9    A. No. That was towards the end of this
10 week of training. That's after observing the
11 training. We never discussed her termination or
12 anything to that nature with that letter. All we
13 discussed when I told of letter, she said "Lynne,
14 get back to training. Stop worrying about it."
15 I think I was more personally insulted by that
16 letter.
17    Q. I'm just trying to understand the time
18 line here --
19    A. Well, she was in the middle of
20 training.
21    Q. She was in the middle of training when

Page 211

1 you --
2    A. She wrote a letter.
3    Q. Yes. That's when --
4    A. Uh-huh.
5    Q. The training was complete --
6    A. Uh-huh.
7    Q. -- you made the decision that you
8 wanted to fire her?
9    A. Well, she didn't complete the
10 training. I completed the training. So she
11 didn't follow through with what her position was.
12 Her training was completed by me, which wasn't my
13 position.
14    Q. So the time line is, okay, you receive
15 the letter, you immediately fax it to Eileen.
16 You call Eileen. Eileen tells you, just complete
17 the training. Just go back to your training.
18    A. And to stop worrying about it, Lynne,
19 and that's it. And we never discussed it any
20 further.
21    Q. Okay.

Page 212

1    A. After all the training I sat in on,
2 then I completed -- sat in on the training like I
3 was supposed. The end of the training occurred.
4 I'm not sure whether it was that Friday or we
5 waited the weekend until Monday or Tuesday. I'm
6 not certain on that date. And I know I sat in on
7 the last day of training. I did her training on
8 the last day.
9    Q. After Eileen talked to you about going
10 back to your training, did she at no point come
11 back to you and say, "Okay, now that training is
12 over, let's talk about this letter. What is
13 this?"
14    A. No.
15    Q. She didn't ask you?
16    A. No.
17    Q. She didn't ask you about the
18 harassment?
19    A. No.
20    Q. She didn't ask you about --
21    A. Well, she knew about the harassment,

EEOC 01786