IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| KATHY C. KOCH, | )   Case No. WDQ-02-CV-648 ) |
| Plaintiff-Intervenor, | ) ) |
| v. | ) ) |
| LA WEIGHT LOSS, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF EEOC'S
MOTION TO BIFURCATE TRIAL AND DISCOVERY**

Pursuant to Fed. R. Civ. P. 42(b), Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") moves that the Court bifurcate both the trial and discovery in this action and set a new schedule in this matter in accordance with the attached proposed Order Regarding Bifurcation and Scheduling. For the following reasons, the EEOC respectfully requests that the Court grant its motion.

I. INTRODUCTION

On February 28, 2002, Plaintiff EEOC filed this action alleging that Defendant LA Weight Loss ("Defendant") engaged in a company-wide pattern or practice of sex discrimination against

male job applicants in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and that Defendant took adverse action against and discharged Plaintiff-Intervenor Kathy C. Koch in retaliation for engaging in conduct protected by Section 704(a) of Title VII, including opposing Defendant's discrimination against male job applicants. With regard to its pattern or practice claims, Plaintiff EEOC's action encompasses Defendant's hiring activities over a multi-year period, involving at least 10 job categories, and implicating vacant positions that were and are being filled at hundreds of facilities in at least 16 states. To date, the EEOC has located, identified and disclosed the names of 157 aggrieved male applicants in numerous states on whose behalf it is seeking relief in this matter ("the Class" or "Class members")[1] and continues to diligently pursue identification of more aggrieved persons. The EEOC estimates that ultimately the Class will include at least 300-400 persons. Discovery commenced in this matter in April 2002, and the present amended scheduling order, entered by Judge Smalkin on February 26, 2003 upon motion of the parties, provides that non-expert discovery terminates on January 9, 2004. Heretofore, discovery has proceeded in a unified manner, with both pattern or practice liability issues and issues regarding individual remedies for Class members being pursued simultaneously. However, while the parties have pursued discovery zealously, given the enormous size and scope of this case, the complicated legal and factual issues involved, as well as scheduling issues, much of the non-expert discovery that

---

[1] The EEOC uses the term "the Class" or "Class members" as a convenient shorthand to describe, collectively, the aggrieved persons on whose behalf the EEOC seeks relief in this action. It does not connote any Fed. R. Civ. P. 23 implications, as EEOC enforcement actions, including pattern or practice actions under Section 707 of Title VII and actions on behalf of groups of aggrieved persons under Section 706 of Title VII, are not governed by Rule 23 class action requirements. See, e.g, General Telephone Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318 (1980). The EEOC has brought this suit under both Section 707 and 706 in order to seek relief for the Class and secure other aspects of the public interest.

will be needed in this case has yet to be completed.

## II. THE FACTORS THAT SUPPORT BIFURCATION ARE APPLICABLE TO THIS ACTION

Plaintiff EEOC seeks bifurcation of the trial and discovery in this matter into two separate phases, with appropriate adjustments to the schedule in this action consistent with the needs of the case and the new bifurcated framework. The two proposed phases, described in greater detail in the attached proposed Order Regarding Bifurcation and Scheduling, will be referred to as Stage I and Stage II. Stated generally, Stage I consists of discovery and trial of (a) pattern or practice liability issues, as well as (b) certain remedial issues, such as punitive damages, that can only be properly adjudicated by a jury that has heard all of the pattern or practice liability evidence in the case. Stage I will also include discovery and trial of liability and remedial issues regarding the retaliation claims asserted by the EEOC and Plaintiff-Intervenor Koch. Examples of discovery permitted at this Stage include document production; depositions of witnesses establishing or rebutting the pattern of practice case, such as current and former employees or owners of Defendant, Class members whose testimony the EEOC intends to present to establish pattern or practice liability,[2] experts, and other witnesses; and other liability-related evidence. After the Stage I trial is concluded, all liability issues regarding the hiring discrimination claim asserted by the EEOC and all issues regarding Ms. Koch will be resolved. Should the trier of fact find liability regarding the pattern or practice hiring claim, the Court would determine appropriate class-wide injunctive remedies and Stage II discovery will commence, to be followed by a Stage II trial. Stage II will consist of discovery and trial of issues

---

[2] Plaintiff EEOC expects to present the testimony of approximately 30-40 of the 400+ anticipated Class members at the pattern or practice liability stage of this case, with the remaining Class members' testimony presented at the remedial stage. Given that most of the Class members reside beyond the subpoena authority of this Court under Fed. R. Civ. P. 45, the EEOC expects that most Class member testimony will be presented by deposition transcript or videotape.

3

pertaining to each individual Class member, such as whether Defendant is able to overcome each Class members' presumptive entitlement to remedies based on the jury's pattern or practice liability finding at Stage I and, if so, the amount of such remedies, including back pay, front pay, and compensatory damages, if any. Discovery at this stage will consist of depositions of each individual Class member not already deposed during Stage I (which will be the vast majority of the Class and will pertain to back pay and mitigation issues, pecuniary damages, and other Stage II issues), other witness depositions, related document discovery and other Stage II-related discovery.

A district court has authority to bifurcate proceedings in furtherance of convenience, to avoid prejudice, or when separate trials will be conducive to expedition and economy. See, e.g., Fed. R. Civ. P. 42(b). When considering whether to bifurcate proceedings, a court must consider four factors: convenience, prejudice, expedition and economy, and the interests of justice. See, e.g., 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2388 at 479 (2d ed. 1994). In light of the legal frame work for adjudicating pattern or practice actions, the size and scope of this case, and the interests served by bifurcated scheduling and proceedings under Fed. R. Civ. P. 42(b), bifurcation of both trial and discovery in this action is both appropriate and necessary.

a.  Pattern or practice actions are ordinarily bifurcated

Bifurcation of pattern or practice cases is the well-established norm. The U.S. Supreme Court has repeatedly endorsed use of bifurcation in pattern or practice and class action cases brought to redress Title VII violations, see, e.g., International Brotherhood of Teamsters v. U.S., 431 U.S. 324, 360-62 (1977), and lower federal courts presented with such cases have recognized that bifurcation is the preferred method for adjudicating such claims, see, e.g., Hill v. Western Electric Co., Inc., 672 F.2d 381, 387 (4th Cir. 1982); Sledge v. J.P. Stevens & Co., Inc., 585 F.2d 625, 637

(4th Cir. 1978); Craik v. Minnesota State Univ. Bd., 731 F.2d 465, 469-70 (8th Cir. 1984); EEOC v. Monarch Machine Tool Co., 737 F.2d 1444, 1449-50 (6th Cir. 1980); U.S. v. United States Steel Corp., 520 F.2d 1043, 1053-54 (5th Cir. 1975). See also Federal Judicial Center, Manual For Complex Litigation (Third) § 33.54 at 354 (1995)("Employment discrimination class actions have commonly been tried in separate stages under Rule 42(b). . . . The stage I trial determines whether the defendants have discriminated against the class. . . . If class-wide discrimination is found, issues of relief are tried in stage II."). The fact that these cases are regularly bifurcated stems from a recognition that such scheduling in pattern or practice cases greatly furthers the purposes underlying Rule 42(b). In International Brotherhood of Teamsters v. U.S., 431 U.S. 324 (1977), the Supreme Court described the legal framework governing this case, including the parties' respective burdens of proof, and consequent bifurcated proceedings in pattern or practice cases as follows:

> The Plaintiff in a pattern-or-practice action is the Government, and its initial burden is to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers. [Citation omitted.] At the initial, "liability" stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed. The burden then shifts to the employer to defeat the prima facie showing of a pattern or practice by demonstrating that the government's proof is either inaccurate or insignificant. . . .
>
> If an employer fails to rebut the inference that arises from the Government's prima facie case, a trial court may then conclude that a violation has occurred and determine the appropriate remedy. Without any further evidence from the Government, a court's finding of a pattern or practice justifies an award of prospective relief . . . .
>
> . . . [T]he question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination. The force of that proof does not dissipate at the remedial stage of the trial . . . .
>
> When the Government seeks individual relief for the victims of the discriminatory practice, a district court must usually conduct additional proceedings after the

5

> liability phase of the trial to determine the scope of individual relief . . . .
>
> The proof of the pattern or practice supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy. The Government need only show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of proved discrimination . . . . [T]he burden then rests on the employer to demonstrate that the individual applicant was denied employment for lawful reasons.

Id. at 360-62. Bifurcation of liability and individual remedies issues is a particularly appropriate manner of conducting proceedings where, as here, a class of claimants has been injured by the same policy or course of conduct, but the individual remedies differ. See, e.g., Fujita v. Sumitomo Bank of California, 70 F.R.D. 406, 411 (N.D. Cal. 1975); In re Master Key Antitrust Litigation, 70 F.R.D. 23, 28 (D. Conn. 1975).

Moreover, bifurcated discovery is a logical corollary to a bifurcated trial. See Ellingson Timber Co. v. Great Northern Railway Co., 424 F.2d 497, 499 (9th Cir. 1970)(holding courts have authority to require separate discovery of different issues and noting one purpose of Rule 42(b) "is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues."); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2040 at 523 (2d ed. 1994); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2387 at 472-73 (2d ed. 1994). This would result in enormous savings in time and resources and enable the trial on liability to proceed after a relatively brief additional period for discovery. In this regard, in its discussion of private class actions, which in all material respects are virtually identical to a pattern and practice case brought by the EEOC, the Federal Judicial Center's Manual For Complex Litigation (Third) recommends deferral of most class member discovery until after liability is established:

> Court approval should usually be required before any discovery from class members is undertaken, and the judge should limit such discovery to that which is genuinely needed and ensure that it is not used to harass either the members or the representatives of the class. . . . In some cases, limited discovery from class members may be conducted before a stage I trial on liability to the class, with the rest deferred. Each party should ordinarily be permitted to depose any class member whom the other party plans to call as a witness, and discovery may also be appropriate of a class member whose employment history will be used as evidence showing the existence (or non-existence) of the alleged discrimination. Whether anecdotal experiences of individual class members are relevant at a stage I trial will depend on the circumstances of the particular case. If such evidence will become relevant at subsequent proceedings only if liability to the class is established at the stage I trial, discovery from those class members may be deferred until after the first trial.

Federal Judicial Center, Manual For Complex Litigation (Third), § 33.53 at 354 (1995).

b.  Bifurcation of trial and discovery serves the purpose of judicial and other economies

The reasons that courts have frequently ordered the bifurcation of pattern and practice employment discrimination cases into a liability phase and a remedial phase include the great savings of judicial and litigant time and resources and the efficiency which results from the procedure. Liability can usually be determined in a reasonable period of time through a manageable trial. "The focus of the stage I trial, whether to the court or the jury, will frequently be on statistical evidence and expert testimony," Id. at 356. Although individual fact witness testimony is used to bring "the cold numbers convincingly to life," such testimony ordinarily involves far fewer witnesses than the number to be expected in the second stage of pattern or practice proceedings. See Teamsters, 431 U.S. at 339. Liability can be decided based on the testimony of a few expert witnesses and a manageable number of anecdotal witnesses. If no liability is found, then there is no need for the remedial phase of the trial and the very large number of witnesses that the remedial phase would require. If there is a finding of liability, in most cases a settlement is reached without the need for the remedial phase of the trial. At present, based on the expected number of Class

7

members, the EEOC anticipates that presentation of Stage II proof, individual remedial evidence, would require in excess of eleven weeks of trial time. The jury's deliberations would also be quite lengthy. Thus, bifurcation of the trial offers the potential of substantial time and other resource savings.

Moreover, the same efficiency considerations also favor bifurcation of discovery in this action. A second period of discovery for remedial issues, commencing after the Stage I trial, is appropriate because of the enormous potential savings if discovery on remedial issues is precluded by a finding of no liability, or if a liability finding induces settlement. In this case the evidence establishing liability and that concerning back pay, front pay, and compensatory damages is largely unrelated.[3] Although the EEOC presently anticipates calling between 30-40 of its present and future Class members as anecdotal evidence witnesses during the liability stage of the trial (whose testimony will then also be presented to support their individual remedy claims during Stage II proceedings), this number will be far smaller than the total estimated class of 300-400+ aggrieved individuals.[4] The potential reduction of discovery and associated savings of time and other resources are manifest.

---

[3] However, the evidence establishing liability and that relevant to assessment of punitive damages is inexorably intertwined such that trial of the issue during Stage II proceedings would result in duplicative presentation of voluminous evidence to separate juries. Accordingly, the EEOC proposes trial of Defendant's liability for punitive damages and assessment of the class-wide amount of such damages during Stage I proceedings. See proposed Order Regarding Bifurcation and Scheduling at 5. The Court would apportion any punitive damages award among the Class members at the conclusion of Stage II proceedings, taking into account the degree of actual harm suffered by each Class member, the statutory damages cap set forth in 42 U.S.C. § 1981a(b)(3)((D), and constitutional strictures.

[4] In addition to these Class members, the EEOC also presently estimates that it will present the testimony of 30-40 current or former employees of Defendant at trial.

    c.    <u>Bifurcation serves the purpose of ensuring just adjudication by preventing jury confusion</u>

The major consideration when deciding whether to bifurcate proceedings is whether separate proceedings are more likely to produce a just result. <u>See, e.g.,</u> 9 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2388 at 482 (2d ed. 1994)(citing cases).  Bifurcation of this case will allow for a streamlined initial trial on the issue of liability alone.  In that trial, the EEOC's burden will be "to establish by a preponderance of the evidence that . . . discrimination was the company's standard operating procedure -- the regular rather than the unusual practice." <u>International Brotherhood of Teamsters v. U.S.</u>, 431 U.S. 324, 336 (1977).  While the EEOC will seek to prove that Plaintiff-Intervenor Koch was subjected to retaliation, a claim factually and legally intertwined with its hiring discrimination claims, the vast majority of the liability evidence presented at trial will be directed to the EEOC's burden of proving that Defendant's regular practice was to discriminate against male job applicants.  In support of its case, the EEOC will proffer statistical evidence and related expert testimony, the testimony of current and former Defendant personnel, testimony of a limited number of male applicants, and documentary and other evidence.  The burden will then shift to the Defendant "to defeat the prima facie showing of a pattern or practice by demonstrating that the Government's proof is either inaccurate or insignificant." <u>Id.</u>

The trial of pattern or practice liability described above should not be complicated by testimony and legal instructions regarding issues pertinent only to the individual claimants.  Given the amount of trial time required, a unified trial on liability and relief is likely to produce an unduly burdensome proceeding for the parties, the Court and the jury.  The EEOC estimates that an omnibus trial of all liability and individual remedial issues in this case would exceed four months.

More importantly, in determining the key issue of liability, the jury will very likely become

9

confused if simultaneously forced to understand instructions regarding the entire shifting burden framework of Teamsters while also evaluating liability evidence and a host of individual issues pertaining to back pay, mitigation of damages, timing of applications and other individual circumstances regarding 300-400+ persons.  Conversely, bifurcation allows for a second stage proceeding that is relatively uncluttered by proof supporting pattern or practice liability.  In the second stage, the Government must "show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of proved discrimination." Id. at 362.  The burden then shifts to the Defendant to demonstrate "that the individual applicant was denied employment for lawful reasons." Id. at 362.  However, the need for this burden-shifting and related jury instructions only arise *after* the initial pattern and practice finding has been made.

      The confusion that would a arise from a unified trial, and resulting injury to the interest of just adjudication, is well illustrated by Sledge v. J.P. Stevens & Co., Inc., 585 F.2d 625 (4th Cir. 1978), a bench trial in which the Fourth Circuit reversed the district court's denial of back pay relief to individual class members who testified at the liability stage of trial because, as the Fourth Circuit recognized, the district court had failed to accord proper weight to the presumption of discrimination that arose from the liability determination. Id. at 637-43.  The potential for such error in the absence of bifurcation is infinitely magnified when it is a lay jury, and not a district judge, who is the trier of fact.  In a single trial, an ordinary jury's ability to understand and correctly apply these shifting burdens and responsibilities, to recall and evaluate vast amounts of evidence regarding both liability and individual remedies issues, and to appropriately compartmentalize their deliberations would be severely compromised.  Federal Rule of Civil Procedure 42(b) and the Fourth Circuit case law applying that Rule authorize this Court to prevent such confusion by bifurcating this action. See

Shetterly v. Raymark Indus., Inc., 117 F.3d 776, 782 (4th Cir. 1997)(holding in complex tort case that District Court has discretion to bifurcate trials to ensure orderly trial presentation and avoid jury confusion). Bifurcation, therefore, will more likely produce a just result because it will serve to ensure that the liability claims are appropriately evaluated and that the legal standards for evaluating individual relief claims are correctly applied. For the foregoing reasons, bifurcation of the present action will tend to avoid prejudice and serve the interests of justice.

d.  Bifurcation will make this pattern or practice action more manageable

As discussed above, the shifting burdens of proof, complex jury instructions, and volume and diversity of types of evidence necessary to try this matter in a unified proceeding is substantially likely to produce juror confusion and an unjust result. Moreover, an attempt to conduct a single trial of both liability and all issues of relief for the class in a single proceeding is likely to be unwieldy and create significant problems in terms of scheduling and coordination; logical, orderly and efficient presentation of evidence; and other aspects of case management. Also, such a trial would exceed four months in duration, placing an enormous burden on the parties, the jury, and the Court. Bifurcating the trial and the discovery in this matter as set forth in the proposed Order will make the case infinitely more manageable.

III. PROPOSED SCHEDULE

Attached to the instant Motion and this Memorandum is a proposed Order Regarding Bifurcation and Scheduling, which provides for bifurcation of both the trial and discovery in this action and sets forth a new schedule for discovery regarding Stage I proceedings. With regard to the new discovery schedule, the EEOC notes that further discovery is necessary in light of the size and scope of this case (involving discrimination in numerous job categories in many states over a

11

multi-year period) and progress in discovery to date, and the proposed schedule is calculated to address that concern. The EEOC recommends that the schedule regarding Stage II proceedings, which will in large part consist of depositions and other discovery regarding individual Class members, not be set until after Stage I proceedings have been concluded. For the reasons set forth above, the EEOC respectfully requests that the Court enter the proposed Order Regarding Bifurcation and Scheduling.

    Respectfully submitted,

    EQUAL EMPLOYMENT OPPORTUNITY
    COMMISSION

    ERIC S. DREIBAND
    General Counsel

    JAMES LEE
    Deputy General Counsel

    GWENDOLYN YOUNG REAMS
    Associate General Counsel

    GERALD S. KIEL (Bar No. 07770)
    Regional Attorney

    _____/s/_____
    TRACY HUDSON SPICER (Bar No. 08671)
    Supervisory Trial Attorney

    _____/s/_____
    RONALD L. PHILLIPS
    Trial Attorney
    Baltimore District Office
    City Crescent Building, 3rd Floor
    10 South Howard Street
    Baltimore, Maryland 21201
    Telephone number: (410) 962-4628
    Facsimile number: (410) 962-4270/2817