IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY     *
COMMISSION
                                          *

             Plaintiff
                                          *

and
                                          *

KATHY C. KOCH
                                          *

             Intervenor/Plaintiff
                                          *

       v.                                 *           Civil No. S-02-CV-648
                                          *

LA WEIGHT LOSS
                                          *

             Defendant

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**REPLY MEMORANDUM OF INTERVENOR/PLAINTIFF
KATHY KOCH IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND INTERROGATORY ANSWERS**

       Intervenor/Plaintiff, Kathy C. Koch, by her attorneys Ober, Kaler, Grimes & Shriver, pursuant to Federal Rule of Civil Procedure 37 and Local Rule 104, files this reply to Defendant LA Weight Loss' Opposition to Intervenor Plaintiff Kathy Koch's Motion to Compel Answers to Interrogatories and Production of Documents.

       Kathy Koch's interrogatories were limited in scope and number but intended to avoid expensive depositions and other discovery costs necessary to elicit LA Weight Loss' precise descriptions of (a) its "policies, practices and procedures" for lodging and investigating employee complaints of discrimination and retaliation, as well as actual complaints (Interrogatories 6, 7, 9, 17); and (b) its agendas and content of training regimens and program participants among all corporate and area trainers in 1997 and

1998 (Interrogatories 14, 15).   While still refusing to supplement its vague, non-responsive interrogatories, LA Weight Loss instructs that Koch must search for the information in witness depositions.  The 2003 deposition testimony of Kristi O'Brien and Lynne Portlock reflects both Defendant's arrogance and its refusal to provide any basic information by the managers who hired, trained, supervised, disciplined, and fired Kathy Koch.   Neither O'Brien nor Portlock could recall relevant events and circumstances in 1997 and 1998.  The deposition testimony of owner and COO Scott Moyer [Deposition September 3, 2003 at pp. 18-19] describes his authority to set relevant policies, [pp. 42-44], to supervise O'Brien, Portlock and his direct report to Eileen Stankunus [pp. 29-30] as to hiring policies [p. 48], to investigate complaints of discrimination  [pp.223-224] and delegation of certain duties concerning complaint investigations to Stankunus and to counsel Landau [pp. 234, 272-73, 293-94].   However, Moyer could not recall "this whole incident with Kathy Koch" [pp. 226-227], or how he came to draft an EEO policy published by the Company two weeks after Koch was terminated [pp. 89, 91], or any but a vague memory of a discussion about gender discrimination with Stankunus [p.242], or even the basic procedures that existed for making disciplinary and employee discharge decisions. [pp.71-72].

Compounding the problem of their poor memories, both Moyer and O'Brien were instructed by counsel Landau not to answer certain questions.  For example, on August 28, 2003, Kristi O'Brien responded to brief examination by Koch's counsel:

> Q.    My name is Pamela White and I represent Ms. Koch and I've represented her at least since April of 1998 when I corresponded with Mr. Landau representing LA Weight Loss at that time.

When did you learn that Ms. Koch was making a claim against LA Weight Loss?

A.    I don't remember when I learned of it.

Q.    When did you learn that she was represented by counsel?

A.    I don't remember when.

Q.    You became general manager in the summer of '98?

A.    Yes.

Q.    Were you advised at that time of the existence of a claim by Ms. Koch?

A.    I don't remember.

Q.    Were you informed to the best of your recollection, either in your capacity as general manager or in your prior capacity as training director, of the importance of retaining documents associated with Ms. Koch's employment?

A.    I don't recall that.

Q.    I'm asking that because there is a legal responsibility on the part of the company and its counsel and its corporate officials to retain documents when they know that there's a claim outstanding arising under Title VII.  Does that assist you to refresh your recollection?

A.    No.  Really, I don't remember

                    *    *    *    *

Q.    Do you keep any Day-Timers, calendars?   Did you in 1998?

A.    Yes.

Q.    And what happened to that Daytimer or diary, calendar?

A.    I don't know.  I probably threw it out.

Q.    And you don't recall that anyone, Mr. Landau included, instructed that you should preserve your diaries and records as supervisor of Kathy Koch at that time?

A.    My personal travel records or --

Q.    Any personal diaries of any kind.

A.    I don't remember that conversation, no.

Q.    Do you remember the first time you ever met Mr. Landau?

A.    Do I remember? No.

Q.    Do you remember the circumstances of your first meeting with Mr. Landau?

A.    No.

Q.    Do you remember what documents you reviewed to prepare for your deposition today?

MR. LANDAU:  Object to that question because it calls for work product and I'll instruct the witness not to answer that. Actually, strike that. I withdraw that objection. You can answer that question, if you remember or not.

MS. WHITE:  Thank you, counsel.

THE WITNESS:  I don't remember. I think it was--

MR. LANDAU:  No.  Only answer yes or no, whether you remember or not.

THE WITNESS:  I don't remember.

BY MS. WHITE:

Q.    To the best of your recollection, what documents did you review in preparation for your deposition today?

MR. LANDAU:  Now, don't answer that question.

MS. WHITE:  She started to say I think, and I want to test this witness' recollection, which has been abysmal about substantive matters.  I can at least test her about the documents.

4

MR. LANDAU:  You can show her documents and ask her if she reviewed them individually.  But to ask her generally what documents she reviewed would reveal my selection of documents for her and therefore my work product.

BY MS. WHITE:  What did you do to prepare for this deposition?

A.    I met with my attorney and I read the documents that were provided to me.

Q.    By whom?

A.    By my attorney.

Q.    Were you provided any documents in advance of the meeting with your attorney?

A.    No.

Q.    Did you take any documents home with you to study after meeting with your attorney?

A.    Just what he gave me.

MS. WHITE:  I'd ask counsel to provide me those documents at a convenient point in time.

MR. LANDAU:  I don't think I have to, but we can take that up later.

BY MS. WHITE:

Q.    Now, does any of that refresh your recollection about the documents that you now recall having reviewed to prepare for the deposition today?

MR. LANDAU:  Does it refresh your recollection?

THE WITNESS:  I don't understand the question.

MR. LANDAU:  Does it refresh your recollection about what documents you reviewed?  Not the documents.  Does it refresh, now can you remember them, yes or no?

THE WITNESS:  I can remember them, yes.

5

Q.    What were they?

MR. LANDAU:  Object to the question.  Instruct the witness not to answer

BY MS. WHITE:

Q.    What were the documents you reviewed in preparation for today's deposition?

MR. LANDAU:  Again, I instruct the witness not to answer that question.

MS. WHITE:  I'll take that up with the judge.

(O'Brien deposition at pp. 410, line 10 – 411, line 23; pp. 414, line 6 – 419, line 4).

At his deposition on September 3, 2003, Moyer testified that he "may have heard" about the reasons that Karen left the Company – "I've gotten some information or heard about it in a discussion with Karen Siegel." [p.61].   Although Moyer 'doubted' that Landau was present during the conversation and did not recall the time of his discussion with Siegel, Landau again instructed the company witness not to answer questions about the matter:

BY MR. PHILLIPS:

Q.  Just to clarify, just to clarify, I don't want to know what you've had conversations with Mr. Landau about, but --

MR. LANDAU:  Let me clarify.  Does your question, Mr. Phillips, relate to the substance of a conversation, the actual substance of the conversation Mr. Moyer may have had with Ms. Siegel concerning the Koch matter?

MR. PHILLIPS:  Yes.

MR. LANDAU:  Then I will instruct the witness not to answer that question, because its work product of a party under Rule 26.  You can ask him about the matter, when, as you have, place, other

people being present, but you can't ask him the actual substance of it.
[Moyer at p. 63].

Thus, LA Weight Loss and its counsel refuse to allow witnesses to testify[1] or identify documents, or to produce interrogatory answers requested as to Koch's employment, her discrimination complaints, her retaliatory discharge, her EEOC charge, and any investigation by the company years before the EEOC filed this lawsuit.

Defendant's opposition to Koch's Motion to Compel declines to provide such documents or information from which Koch may address her employment performance, her complaints about discriminatory hiring practices, or retaliatory discharge but Defendant concludes that there are only two outstanding discovery disputes: (1) whether LA Weight Loss should produce correspondence between the Company and its litigation counsel as well as between its litigation counsel and opposing counsel (or even a privilege log) and (2) whether LA Weight Loss should produce all claims of discrimination in its hiring practices. Opposition at p.1.  While the extended course of attention to Koch's discovery motion has yielded Defendant's production of additional documents and narrowed the scope of discovery subjects in dispute, Defendant's misapprehension of Koch's requests, its non-responses to interrogatory answers, and the absence of alternative sources for the information, are startling.

**Relevant Circumstances**

Kathy Koch had a successful sales background (Century 21) and solid experience in the weight loss business (Jenny Craig) when she was hired by Kristi O'Brien as the corporate trainer to help staff new LA Weight Loss centers and train new counselors in

---

[1] A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or if the deposition is being conducted in bad faith.  FED. R. CIV. P. 30 (d)(4).

Lynne Portlock's rapidly expanding region in Delaware and Maryland. While O'Brien served as Koch's training supervisor, Portlock had provided her own training manual to Koch even before Koch was on the payroll, and she instructed that Koch use Portlock's own 'flip chart' for Koch's training program during her last week of employment. Between November 1997 and March 1998, both O'Brien and Portlock also informed and demonstrated to Koch that the hiring practices of LA Weight Loss disfavored and excluded men. Koch saw those discriminatory practices and saw that the policy was acknowledged by Scott Moyer, acting as COO of LA Weight Loss. When Koch complained about those hiring practices, she was terminated for allegedly poor training practices.

Koch's week-long training programs for new counselors, the flip charts and handouts, the demonstrative exercises and trainee tests, all were scripted according to LA Weight Loss schedules, agendas, and formal training manuals handed to Koch by Portlock and also by O'Brien when she was trained at corporate headquarters in Horsham, Pennsylvania in November, December and January. In addition to training duties, Koch had hiring responsibilities. Koch received instructions and was informed of documents used to place newspaper employment ads announcing new positions at centers throughout the region, track applicants' calls, secure candidates' application forms and resumes, conduct screening calls, conduct first interviews, evaluate applicant qualifications, and relay offers of employment by Portlock to prospective counselors.

Koch challenged the policy and repeatedly contradicted her employer's practices not to hire men. Her efforts in the hiring process were unsuccessful to provoke offers to male applicants, and Koch was threatened with termination by O'Brien and warned of

concocted training deficiencies by Portlock. Koch called and sought advice from the EEOC, drafted her complaint and mailed it to the EEOC's District Director, and told O'Brien and Portlock of her intentions to do so. Portlock received Koch's written notice of her complaint on March 9, 1998 shared Koch's letter notice of her EEOC claim with Portlock's direct superior, Eileen Stankunus, and fired Koch three days later.

Upon Koch's discharge by Portlock on Thursday, March 12, 1998, witnessed by O'Brien (by phone), Portlock demanded and secured Koch's return of the flip charts and handouts, the collection of Koch's materials used just that week in her final training program. Portlock signed a receipt for the training materials returned by Koch. Koch subsequently located and returned applicant tracking forms and applicant information to David Landau, employment counsel for LA Weight Loss.

At Portlock's deposition on November 6, 2003, Portlock[2] identified her writing and signature on the March 12, 1998 receipt for Koch's training materials. Portlock probably sent corporate materials, including Koch's training materials, to corporate headquarters [Portlock Depo. at pp. 451, 474]. Nevertheless, LA Weight Loss insists that Koch did not return such documents.

As of November 6, 2003, Portlock did recall receiving and sending Koch's internal letter of complaint dated March 8, 1998 to Eileen Stankunus, and Portlock knew that Stankunus had approved Koch's termination [p. 456], but Portlock did not remember any training deficiencies or the bases for her own decision to terminate Koch on March 12, 1998 [p. 486]. Nor did Portlock recall having seen Koch's administrative charge filed with the EEOC in June 1998. [p. 455]. However, two weeks after Portlock's deposition,

---

[2] Koch's counsel is prevented from exploring factual questions with Portlock outside of deposition because Portlock (a former employee) is now represented by Landau. But see Md. Lawyer's Rules of Professional Conduct 4.2, 4.4.

Defendant produced additional documents identified as coming from Portlock's personnel file. By counsel's letter dated November 17, 2003 "[s]ome of these documents (LA0109297 through LA0109360) are from Lynne Portlock's personnel file…"[3] Document LA0109317 was a handwritten label "Kathy Koch LA Weight Loss EEOC Charge," followed by an index naming and attaching copies of the "Notice of Charge of Discrimination dated 11/3/98", with "Position Statement dated 1/06/99" and "Response to Request for Information dated 1/6/99." (pages LA0109318-LA0109360). At her deposition, Portlock did not recall her participation in any investigation or even a simple document search by counsel. However, with the additional documents produced on November 17, Defendant also produced two undated job descriptions for a "Corporate Trainer" and a "Recruiter/Trainer", with a "Service Training Agenda" for a seven day training regimen. Now, Koch's counsel is not permitted to inquire of Portlock as to those materials or to test Portlock's recollection about her file contents.

The absence of Portlock's testimony about any discussion or investigation of Koch's complaints in 1998 or 1999 make obvious the need for Defendant's interrogatory answers and investigatory documents.

Also back in 1998, years before any litigation, Koch had followed her March complaints to Portlock and O'Brien by informing the owner, President, and CEO of LA Weight Loss, by a 4 -page letter dated April 21, 1998, of her claims of his discriminatory hiring practices and her retaliatory discharge just weeks before. Landau responded by letter dated May 1, 1998. After successive letters between Koch (by her counsel) and

---

[3] On November 20, 2003, White's e-mail to Gollin responded and inquired: "We have received and appreciate your letter of November 17 with enclosed documents bates labeled LA0109297 through LA0109632. Your further information is requested to describe where these documents came from and to which request they are intended to be responsive." White received no further information.

Landau, his letter of June 4, 1998 simply informed Koch that "Ms. Koch was terminated for poor performance. The company has engaged in no discriminatory or retaliatory actions towards Koch." Almost three weeks later, on June 23, 1998, LA Weight Loss and Landau were provided notice by the EEOC of Koch's charge of retaliation pursuant to Title VII, and Landau began to respond to that agency's requests for relevant information. On January 6, 1999, Landau filed his client's "Position Statement & Response to Request for Information" with the EEOC. Now, Koch seeks the basic information – and relevant documents – supporting Landau's representation in his June 4, 1998 letter.

Landau was familiar with Defendant's investigatory policies and practices in 1998, and spoke at least to Moyer on that subject [Moyer depo. at 272-73]. Moyer hired Landau to conduct one investigation undertaken in February 1998 and concluded by Moyer's letter dated March 28, 1998 [pp. 293-94]. Landau certainly was and remains in an ideal position to search and produce requested documents in this litigation but such documents remain unproduced. For example, Moyer testified at deposition on September 3, 2003:

> Q.    Which centers did you help to open, on the real estate side or otherwise, in the Baltimore/Delaware area?
>
> A.    Gosh, that's really hard -- I'd have to go back to my notes and everything. It's hard to tell you. I mean, I know I opened a lot of centers between Baltimore and Washington, which happened to be two different TV markets, by the way. And we were -- I really can't tell you. I mean, I'd have to look at my notes and go back in the sequence.
>
> Q.    Where are your notes?
>
> A.    Probably my old Day-timer, with my Day-timer material.

Q.    So you kept a Day-timer during the 1997, '98, '99 time frame?

A.    Yeah; mostly for scheduling and things like that.

Q.    Has counsel ever asked you to provide those Day-timers for production in this matter?

A.    No.

MS. WHITE:  Will counsel please secure the existing Day-timers from the witness for production in this matter?

MR. LANDAU:  Sure.

                    *        *        *        *

Q.    My client, Ms. Koch recalls that you had summoned her to a meeting at 6:00 a.m. one morning.  Would your Day-timer reflect whether that was the case?

A.    Would you ask that question again.

Q.    My client recalls that you had summoned her to a meeting at 6:00 in the morning on one occasion, and I'd like to address with you whether your Day-timer might reflect if that took place?

A.    It's possible.  I can't recall a meeting with Ms. Koch at ay time of the morning anyplace.

Q.    I appreciate that.  But you will make your Day-timer available to counsel at your earliest convenience so that we can address that matter?

A.    Yeah.

[Moyer depo at pp. 303-304, 310-311].

Of course, in 1998 and to the present date, Landau and his client were obliged to investigate and respond to Koch's internal and agency-filed claims of discrimination and retaliation, to refrain from reprisals against Koch for engaging in protected activities, and assure the preservation of documents relevant to Koch's claims.  Title VII requires every

employer, employment agency, and labor organization to 1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, 2) preserve such records for certain periods, and 3) make such reports therefrom as the Commission shall prescribe by regulation or order.  42 U.S.C. § 2000e-8.  The applicable regulations further  provide where a charge pursuant to Title VII has been filed against an employer, the employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or action.  29 C.F.R. § 1602.14.

Koch has asked interrogatories and propounded document requests intended to elicit such relevant information.  With the Defendant's deficient responses, she has yet to learn from LA Weight Loss whether and how it undertook to preserve the contemporaneous information she seeks but which the defendant has not provided.  She has yet to learn how and what the Defendant's managers and decision makers in 1998 communicated among themselves to learn and respond to the Koch claims, whether and how they participated in any investigation of the Koch claims, whether and how Landau or any corporate official was responsible for any investigation and responsive or corrective action—or if they declined to do so.

The probability of contemporaneous communications among corporate officials on the subjects of Koch's claims, the probability of their sensitivity (or counsel's) to the importance of preserving contemporaneous documents described by Koch and the Title VII statute, the likelihood that an investigation was considered, if not conducted, appears from the recent disclosure of investigation undertaken by Scott Moyer and counsel in February 1998 as to the complaints of discrimination and gender biased hiring practices

by a center manager Sandra Brown-Talavera.  At the same time that Koch was employed and challenging hiring practices beginning in November 1997, officers of LA Weight Loss and Landau learned and began to investigate other complaints of gender-biased hiring practices described in Sandra Brown-Talavera's letters to Moyer in December 1997 and January 1998.  Indeed, several contemporaneous complaints of discriminatory hiring practices and reprisals were known to O'Brien and to Portlock's supervisor, Eileen Stankunus, when O'Brien, Portlock and Stankunus learned or addressed Koch's complaint.  Moyer, Stankunus and O'Brien were interviewed and questioned about those hiring practices challenged by Brown-Talavera just weeks before Koch's discharge.[4]  Landau also was familiar with the complaints and issues of Brown-Talavera at the same time that he acknowledged Koch's claims; Moyer testified as to certain events in early 1998:

> Q.    In the period of time when you were COO and you were making a decision to investigate the Talavera matter, was that your decision to make?
>
> A.    To investigate it?
>
> Q.    Yes.
>
> A.    Yes, I think it was my decision.
>
> Q.    And it was your decision to retain Mr. Landau's firm to accomplish the investigation for you?
>
> A.    I think so.

---

[4] According to investigatory documents produced by Defendant on October 28, 2003 as to the Brown-Talavera matter, Moyer was interviewed and discussed gender hiring practices on February 2, 1998; Stankunus was interviewed contemporaneously (without a recording or transcription).  Representative (and contemporaneous) documents produced included "meeting notes", counsel's interview summaries (without notes or report), "center checklist", fax transmittal cover sheets, lists of area managers, payroll records, time records, certain 1998 Day Planners (not Moyer's) phone lists, diaries, advertisements.

Q. And what was the product that you expected from Mr. Landau's firm with respect to the investigation?

A. It was to examine what had taken place and then to make recommendations so that the company, you know, was following rules and regulations of the different federal and state, you know, regulatory bodies.

Q. On how many other occasions, if any, did you retain Mr. Landau's firm to undertake an investigation of other personnel issues?

A. Before that issue -- before that or after that?

Q. At any time.

A. I really -- I cannot recall. Mr. Landau's services may have been used by the company, by Mr. Karian. I don't know. I can't specifically recall.

Q. Where would I look among company records to make that determination?

A. Perhaps with Karen Siegel's department, human resources department.

[Moyer depo. at pp. 293-295].

After Landau's recommendations, the Talavera investigation was concluded with Moyer's letter dated March 26, 1998, stating in part: "With respect to your allegation of retaliation for writing your letters, our investigation shows that the change in your job duties and responsibilities was entirely unrelated to any allegation of race or gender discrimination made by you . . . Finally, we have found no evidence of gender discrimination at the Company."

Weeks later, on June 4, 1998, Landau's letter to Koch's counsel similarly reported, in part: "Ms. Koch was terminated for poor performance. The Company has engaged in no discriminatory or retaliatory actions towards Ms. Koch."

15

**Discovery Requests by Koch**

LA Weight Loss has refused to identify or produce relevant documents contemporaneous to Koch's employment, or to explain their destruction, or to provide a log of relevant but allegedly privileged communications about Koch, or to give sworn, substantive answers to interrogatories reasonably intended to elicit such information. Since serving her Motion to Compel on September 16, 2003, LA Weight Loss has supplemented its original 34 page document production with, several hundred additional pages of documents. However, LA Weight Loss has failed to produce any of the flip charts, trainee handouts, or other training materials returned by Koch to Portlock on March 12, 1998.  LA Weight Loss proffered certain 1998-1999 training materials as responsive by suggesting that Portlock "would have" referred to those training documents.  At her deposition, however, Portlock was unable to identify particular training agendas or manuals that were handed to her; nor could she describe any materials returned to her for which she had handed Koch a receipt. Most telling, Portlock, was unable to identify or articulate any deficiencies in Koch's training program at the time of her discharge.

Koch's need for responsive interrogatory answers and identification of documents is obvious in these circumstances, especially in view of O'Brien's inability at deposition in 2003 to recall events relevant to Koch's employment in 1997-98.  Both the instruction of counsel to O'Brien (and Moyer) not to answer questions at deposition, and the latest objections of LA Weight Loss to providing answers, constitute sanctionable conduct. LA Weight Loss also asserts that Koch should depose a particular corporate

representative (Karen Siegel) instead of expecting interrogatory answers.  That assertion is not one countenanced by the Federal Rules of Civil Procedure.

Defendant's position is particularly galling, in view of Siegel's existing testimony taken pursuant to the EEOC's Rule 30(b)(6) notice of deposition.  On August 28, 2002, Siegel described her employment history with LA Weight Loss, including her reassignment in April 1998 from duties as the Defendant's Director of Franchising to "Director of HR I guess is the title." (Siegel Dep. page 42). She described that she was on her own to perform recruiting functions, at a time when the number of centers was growing from 22 to 80 nationwide. Then,  "I had the benefits specialist was hired in like November '98, and then another HR manager was hired in '99." (page 44).  Siegel was asked to describe the human resources duties she assumed in and after April 1998, and she did so without any description of duties responsive to Koch's complaints before or after Koch had been fired on March 12, 1998.  On August 28, 2002, Siegel testified:

> Q.    What are your responsibilities or job duties as the human resources director, limiting it to the period of April '98 to April of '99?
>
> A.    I was working with counsel to establish formalized policies and procedures putting together a formalized handbook.  We had certain policies that were in place but I was undertaking the task of really formalizing it and put together a handbook. Develop the department and take on literally all the responsibilities from an HR standpoint, employee relations, anything relative to employee, employee relations, that sort of thing." (Page 49)

*      *      *

> Q.    So let's go back to the responsibilities of the human resources director from the period 1998 to 1999?
>
> A.    Okay.
>
> Q.    You said you were responsible for setting up the policies and procedures and putting together these policies and procedures in a handbook?

A.    Yes.

Q.    And that you developed all the responsibilities for your staff as well as managing employee relations; is that accurate?

A.    Yes. Yes.

Q.    Was there anything else that you were responsible for besides what I've just mentioned?

A.    At that particular time, no. (Page 54-55)

Siegel subsequently 'got involved', with assistance of counsel, in organizing a "formalized recruitment manual". (page 57).  Siegel observed that personnel files and employment record-keeping as of that time were not well-maintained, and that "there wasn't any true HR person before she was assigned and became "responsible for overseeing the policies and procedures and handbook for the 22 stores."(page 50).

At the time that LA Weight Loss and Mr. Landau were statutorily obliged to investigate and respond to Koch's complaints and to preserve the relevant records, Siegel was not assigned, according to her sworn testimony, to any investigative duties.[5]

On Koch's part, over the years from the time in 1998 that Koch was unsuccessful to prevent her retaliatory discharge or to correct the discriminatory hiring practices of LA Weight Loss, Koch has cooperated fully and deferred to the EEOC's investigation, conciliation and litigation efforts.  As intervening plaintiff in this litigation, Koch has continued to follow the lead of the EEOC, especially as to discovery matters so as to control her attorneys fees and expenses incurred in this expensive, time-consuming class

---

[5] Counsel now represents that  "the Company through its new human resources director Karen Siegel, investigated the [Koch] allegations."  *See* Opposition at p. 5; *see also*. p. 10, fn.4 (". . .the Company, through its Human Resources Director; Karen Siegel, conducted the investigation).  Ms. Siegel did not testify to this.  Moreover, if Ms. Siegel did "investigate the allegations" and "conduct an investigation," Defendant has not produced any investigatory documents such as interviews, notes of discussions with decision makers, and other related statements and or records.

action litigation.  Koch has monitored the EEOC's discovery exchanges with LA Weight Loss, including its notices of witness depositions.  Koch's own, limited "paper" discovery requests have sought sworn answers to interrogatories, and her examination of original documents produced by LA Weight Loss as they existed contemporaneous with her training duties and job performance, her challenges and complaints about hiring practices in 1997-1998, communications of her supervisors and decision makers, and the investigation or other responses of LA Weight Loss to her protected activities. LA Weight Loss has failed and refused to respond to these reasonable discovery requirements, without excuse and without justification to have forced Koch to incur unnecessary fees and the cost of this motion to compel.

Defendant's opposition wholly mischaracterizes Koch's efforts to resolve her discovery issues, going as far to say that Koch filed her motion to compel "before engaging in any good faith negotiation." Opposition at p. 2.  LA Weight Loss accuses Koch of not engaging in good faith negotiation simply because she does not  "agree" with its position in regards to certain disputes.  Defendant contends that it has been overly cooperative and reasonable, "reaching out" and providing "detailed responses" to resolve the discovery matters.  This position is incredible given the fact that it was not until Koch filed the motion to compel that Defendant produced more than its initial production of 34 pages and one employee handbook to Koch.

Defendant's representation of Koch's efforts to resolve discovery disputes ignores several communications, reflecting good faith efforts by Koch to obtain the discovery that was due and the efforts undertaken by Koch to secure the information in depositions. LA Weight Loss still has not properly supplemented Interrogatories, despite the Motion

To Compel. Especially in view of the extended chronology of Koch's efforts, her Motion to Compel is substantially justified and Koch should be awarded fees and costs in connection with the motion.

The following timeline gives some sense of the nature of Koch's efforts – still unsuccessful to gain substantive interrogatory answers or identification of contemporaneous employment and investigatory documents:

- August 28, 2003: Kristi O'Brien deposition

- September 3, 2003: Scott Moyer deposition

- September 5, 2003, White letter to Landau, Gollin with draft discovery motion

- September 8, 2003, Gollin letter to White

- September 9, 2003 White e-mail to Landau, Gollin as to certain documents

- September 9, 2003 Gollin response to draft motion

- September 9, 2003 Gollin response to White's e-mail of September 9, advising that Koch can look at certain original documents

- September 15, 2003: White to Gollin (requesting production of documents referenced in Gollin's Sept. 9 letter)

- September 16, 2003: **filed Koch Motion to Compel**

- September 16, 2003, LA produced documents (training materials Koch returned to Landau in July 1998)

- October 16, 2003: White and Gollin teleconference

- October 21, 2003; LA produced portions of Portlock personnel file, certain 1989-99 training materials, LA Weight Loss Employee Handbook from Sept. 1998 with Oct. 1999 Supplements

- October 27, 2003: LA's Supplemental Discovery Responses

- October 28, 2003: LA produced documents related to charges by Talavera, McCann, Walker, Catagnus

- November 3, 2003: White and Gollin teleconference

- November 4, 2003: LA produced additional documents from Portlock's personnel file (received by Koch, November 5)

- November 6: Koch counsel conducts Portlock deposition, referring to Portlock personnel file documents

- November 17, 2003: LA produced additional Portlock personnel file documents, now including Portlock's copy of Koch's EEOC charge and January 6, 1999 response to charge

- December 3, 2003: LA conducts Kathy Koch deposition

Despite the multiple communications between counsel about Koch's discovery requests, Defendant now suggests that Koch demands "many documents not originally sought in her requests."  Nevertheless, the requests are common and straightforward, and prompted Defendant to have supplemented its document production since the filing of the motion to compel.  Before Koch's Motion, Defendant had only produced 34 pages of documents and an employee handbook.  Koch knew – and logic dictated – there were many more responsive documents.  Koch's motion to compel is (still) necessitated by Defendant's behavior and incomplete responses.  Open requests are repeated below:

### INTERROGATORIES

**INTERROGATORY NO. 9:    Identify and describe fully the policies, practices and procedures in place from 1997 until the present to be followed by any employee making a complaint against LA Weight Loss or any other employee of LA Weight Loss with respect to gender discrimination and/or retaliation, whether written or oral, including any investigative steps utilized by LA Weight Loss to investigate such a complaint.  Your answer should include, but not be limited to, an identification of all documents reflecting or relating to any facts set forth in your answer and an identification of all persons with personal knowledge thereof.**

**INTERROGATORY NO. 7:** **Identify and describe fully all formal complaints of retaliation in the Maryland/Delaware region filed with the United States Equal Employment Opportunity Commission or any state or local human rights commission, or as a lawsuit against LA Weight Loss, from 1996 through the present, and state the outcome of each claim. Your answer should include, but not be limited to, an identification of all documents reflecting or relating to any facts set forth in your answer and an identification of all persons with personal knowledge thereof.**

**INTERROGATORY NO. 6:** **Identify and fully describe each complaint of retaliation that any employee in the Maryland/Delaware region has made against any other employee of L.A. Weight Loss, or against LA Weight Loss itself, whether written or oral, internally or with any outside administrative agency, from 1997 to the present. With respect to each complaint, describe fully any investigation action taken by LA Weight Loss and the final result of each such complaint. Your answer should include, but not be limited to, an identification of all documents reflecting or relating to any facts set forth in your answer and an identification of all persons with personal knowledge thereof.**

These interrogatories are straight-forward and Koch reasonably, and appropriately, expects LA Weight Loss to describe complaint policies and practices in 1997 and 1998 (especially given the apparent lack of any written documents reflecting policies in 1997). The existence of the Talavera and Catagnus investigatory materials indicate the existence, at least of oral policies and practices for the relevant time period. Now, LA Weight Loss is bound to describe the investigative steps and an identification of all persons with knowledge of the relevant policies, practices and procedures followed or ignored as to Koch's complaints. LA Weight Loss, however, refuses to provide a substantive response to Koch's inquiries and demands instead, that Koch depose Karen Siegel because it is a less burdensome manner for LA Weight Loss to provide information responsive to Koch's interrogatory. Such a response is unacceptable both in view of Siegel's existing testimony and its blatant contradiction of the Federal Rules. Koch is to obtain discovery by the methods she chooses (and in any sequence she chooses). *See* FED. R. CIV. P. 26 (a), 26 (d). LA Weight Loss cannot be permitted to dodge this interrogatory in this manner and must be compelled to respond.

LA Weight Loss also has failed to offer any substantive answer to the complaints, interrogatories. Instead, it now points to documents recently produced that relate to complaints made by Sandra-Brown Talavera and Nina Catagnus in 1997-1999 and which describe extensive interviews and investigation by L Weight Loss (prior to litigation). Koch acknowledges that the burden of ascertaining the majority of the information related to those two complaints from the documents is substantially the same for her as LA Weight Loss, however, LA Weight Loss wholly fails to identify documents and describe the circumstances surrounding <u>Ms. Koch's complaints</u> of discrimination and retaliation. Koch made complaints to LA Weight Loss and to the EEOC contemporaneously with the Defendant's investigation(s) of the Talavera and Catagnus claims. The probability that some investigatory work was undertaken (and statutory

records preserved) is reflected by the fact of Koch's written complaints in March, April and June 1998 and Landau's acknowledgments.[6]  LA Weight Loss must be compelled to describe both Koch's verbal and written complaints, any investigative actions, and all related documents and persons with knowledge of the circumstances.  A substantive response to these interrogatories is especially important given the lack of documents reflecting investigative efforts and O'Brien and Portlock's inability of to recall events relevant to Koch's complaints at deposition.

**INTERROGATORY NO. 14:**      **Identify and describe fully the agenda and content of any and all training provided to area corporate trainers, area trainers and/or corporate trainers in 1997 and 1998.  Your response should include, but not be limited to, the identity of those employees or agents providing the training, the dates, locations and subjects covered for each training session, and the attendees of each session.  Your answer should include, but not be limited to, an identification of all documents reflecting or relating to any facts set forth in your answer and an identification of all persons with personal knowledge thereof.**

**INTERROGATORY NO. 15:**      **Identify all area corporate trainers, corporate trainers, area trainers and/or service trainers employed by LA Weight Loss in 1997 and 1998.  Your answer should include, but not be limited to, an identification of all documents reflecting or relating to any facts set forth in your answer and an identification of all persons with personal knowledge thereof.  Your answer should further include the names, addresses, telephone numbers, dates of employment of all such individuals.**

LA Weight Loss provides no substantive answer to these interrogatories and states, instead, that "[a]ny information pertaining to these topics is best obtained from current and former LA Weight Loss managers and employees such as Lynne Portlock and Kristi O'Brien. . .." Opposition at p. 39.  That this response is improper and does not fulfill LA's discovery obligations is borne out by the grossly inadequate deposition testimony of Mmes. O'Brien and Portlock.  The obvious need for an interrogatory answer also appears from LA Weight Loss' failure to produce certain flip charts, trainee handouts and other training materials, the training agenda, while also failing to identify others, besides Portlock and O'Brien, having any familiarity with training requirements. LA Weight Loss' contention that it did not maintain lists of the dates and persons involved in the training sessions during the time Koch was employed, does not absolve its obligation to make a diligent good faith effort to obtain this information from its then current managers and employees to answer Koch's interrogatory.  This is not Koch's responsibility; LA Weight Loss must be compelled to respond appropriately.

---

[6] Koch's interrogatories instruct the words "you," "your" and "LA Weight Loss" mean Defendant LA Weight Loss, its employees, agents, representatives, directors, officers, attorneys, investigators, and consultants.

Koch's interrogatory No. 15 is basic and clear-cut, yet LA Weight Loss refuses to provide a substantive answer identifying the area corporate trainers, corporate trainers, area trainers and/or service trainers employed by LA Weight Loss in 1997 and 1998. LA Weight Loss' supplemental response takes the untenable position that because it made the personnel files of all trainers available to Koch's counsel over a year ago, and "answers could have been ascertained from these business records. . ..," it is not required to answer an interrogatory seeking the information. Opposition at p. 40. LA Weight Loss condemns Koch for not requesting copies of these personnel records at this time. However, Koch determined to seek this information by interrogatory. In light of its complete failure to answer these interrogatories, LA Weight Loss must be compelled to provide names, addresses, telephone numbers, and dates of employment for the requested trainers.

**INTERROGATORY NO. 17:** **Identify and describe fully all complaints made by employees of LA Weight Loss, whether formal or informal, internally or to an outside agency, referring or relating to LA Weight Loss' new-hire application and/or hiring policies and procedures from 1997 to the present. Your answer should include, but not be limited to, an identification of all documents reflecting or relating to any facts set forth in your answer and an identification of all persons with personal knowledge thereof.**

Dodging this interrogatory, LA Weight Loss merely points to partially responsive documents – documents related to complaints of alleged discrimination against men only, and fails again to provide a substantive answer. For the reasons set forth below, in response to Document Request No. 12, LA Weight Loss must be compelled to fully identify and describe any and all complaints related to its hiring policies and procedures at least in the Maryland/Delaware region.

**REQUESTS FOR DOCUMENTS[7]**

**REQUEST NO. 7:** **All correspondence between Kathy Koch and LA Weight Loss, or concerning Kathy Koch by or to any employee of LA Weight Loss, or concerning Kathy Koch by or to the Equal Employment Opportunity Commission or to any person other than LA Weight Loss.**

---

[7] Koch has received supplemental documents responsive to Requests Nos. 5 and 17; however it was not until LA Weight Loss' Opposition to Motion to Compel that Defendant memorialized its representation that the two retaliation complaints of Sandra Brown Talavera and Nina Catagnus "arising out of allegations of discrimination against men," are the only retaliation complaints in the Maryland/Delaware region for the applicable time period. In any event, the request is now moot for purposes of this motion to compel. Supplemental document production by LA Weight Loss has also mooted Request No. 19 for purposes of this motion to compel.

**REQUEST NO. 8:**   **All documents prepared by, or at the direction of, any employee of LA Weight Loss respecting Kathy Koch.**

Despite the straight-forward nature of these requests, LA Weight Loss has had difficulty comprehending Koch's inquiry and continues to withhold correspondence exchanged between counsel for the parties and refuses to provide a privilege log identifying communications of Landau or other counsel with LA Weight Loss, concerning Koch and her claims, and investigation of those claims as required by Federal Rule of Civil Procedure 26 and Guideline 9 of the Local Rules.

Koch has yet to learn from LA Weight Loss how and what its decision makers communicated among themselves in 1998 to learn and respond to the Koch claims, whether and how they participated in any investigation of the Koch claims, and whether and how Landau or any corporate official was responsible for any investigation and responsive or corrective action—or if they declined to do so. If documents concerning such information exist, and LA Weight Loss insists they are privileged and/or protected by the work product doctrine, it must be compelled to provide a privilege log to enable Koch to assess the applicability of the privilege, her entitlement to documents evidencing underlying facts, and to determine whether non-opinion work product must be produced. *See* Fed. R. Civ. P 26 (b) (3); 26 (b) (5).[8]   Substantial need and undue hardship to discover such information already is apparent given Portlock and O'Brien's failure to recollect the circumstances surrounding Koch's employment and her complaints of discrimination and retaliation, and the special value attributed to any such contemporaneous statements and/or reports concerning these circumstances.  *See e.g. Cogan v. Cornet Transp. Co., Inc*., 1999 F.R.D. 166, 167-68 (D. MD. 2001).

Accordingly, LA Weight Loss must be compelled to produced a detailed privilege log to support its assertions in response to this document request.

**REQUEST NO. 12:**   **All documents that reflect, refer, or relate to any and all complaints made by any employee of LA Weight Loss, whether internal or to an outside agency, whether formal or informal, respecting LA Weight Loss' new-hire application and/or hiring policies or procedures from 1997 to the present.**

LA Weight Loss maintains that Koch is only entitled to complaints related to alleged discrimination against men, and that any other complaints of discrimination, even those involving Koch's supervisors during the time Koch was employed by LA, are irrelevant and not discoverable.  The requested complaints are relevant, however, to show that LA Weight Loss, and in particular, Koch's supervisors, do not comply with Title VII, other acts of discrimination and retaliation for engaging in protected activity, motive, and evidence indicating that LA Weight Loss acted with malice in discriminating against men and retaliating against Koch for filing her claim.

---

[8] See *also Marens vs. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35 (D. Md. 2000) (privilege log required by Rule 26(b)(5) and Discovery Guideline 9 (c); party who asserts a privilege, but fails to demonstrate the applicability of the privilege fails to properly reserve it; sweeping assertions that a particularized showing that privileges apply would be unduly burdensome "will not do").

Defendant also asserts questionable privilege as to certain documents related to the complaints recently disclosed by LA Weight Loss.  For example, Defendant has produced a Privilege Log identifying memoranda and employee interview notes in and following 1999 as to the Catagnus matter, describing in part that Karen Siegel had prepared "compilation of data requested by Wolf Block in anticipation of litigation" in documents dated February 22, 2000, and April 26, 2000.  LA Weight Loss apparently received an agency-filed complaint on or about April 21, 2000.  If Siegel had engaged in any similar "compilation" as to the Koch matter (when Landau and/or Siegel responded to the EEOC charge beginning in January 6, 1999 and extending through 2000 and into 2001), the factual "data" gained is not protected from production – regardless whether the "data" was produced to or withheld from the EEOC.

Defendant has produced privilege logs as to the <u>McCann</u> and <u>Walker</u> matters identifying charts and compilations and Siegel's memoranda, for example, dated November 10, 1998 and January 12, 1999 which "provides employment information specific to Warren Walker" and Siegel's fax "regarding request for information received from EEOC" and "statements as to how it will proceed in responding to request."  By further example, the log identifies Siegel's fax dated December 11, 2000 "notifying counsel of McCann claim and attaching documents pertinent to defense of claim."  Similar documents relating to Koch's complaints have yet to be identified or produced.

LA Weight Loss also argues Request No. 12 is overly broad and burdensome.[9] Koch, however, has narrowed the time frame of the request to 1997 through 1998. The request is also limited to a reasonable geographical scope; the request covers only the Maryland/Delaware region, where Koch performed her duties, and encompassing the area in which Ms. Portlock and Ms. O'Brien supervised other trainers.  It is well established that complaints about the same decision maker are relevant.  *See Marshall v. District of Columbia*, 214 F.R.D. 23, 26 (D.D.C. 2003).  Koch is merely requesting information that concerns the people that are charged with the discriminatory and retaliatory animus; she has not waged an across-the-board attack on any and all alleged unequal employment practices by her former employer.[10] In addition, the subject of Request No. 12 is narrow in that Koch merely seeks discrimination complaints concerning hiring policies. Accordingly, LA Weight Loss must be compelled to respond fully to this request.

---

[9]  As asserted in the motion to compel, the provision of such information is not overly burdensome -indeed, if it is too difficult or costly for LA Weight Loss to compile the documents concerning any such claims of discrimination, the relevance of the information sought would seem to be enhanced by the sheer volume thereof.

[10]  Defendant cites to *Robbins v. Camden City Board of Ed.,* 105 F.R.D. 49 (D. N.J. 1985).  However, in that case, the plaintiff's requests contained *no* limitations as to time, type of action complained of or type of discrimination claim.  To the contrary, Koch's request is narrowly tailored in time, scope and the type of action complained of, ie. hiring practices.

**REQUEST NO. 21: Produce copies of any of LA Weight Loss' policies, practices or procedures concerning discrimination and/or retaliation since 1997.**

LA Weight Loss contends that it has produced all responsive documents "that have been located for the 1997 and 1998 time periods,[11] and maintains that any policies and or procedures after 1998 can be provided at Koch's expense. Moyer has testified and LA Weight Loss also has described in its supplemental response that its EEO policy was "released on March 28, 1998." Accordingly, the Motion to Compel Request No. 21 is now moot.

**REQUEST NO. 24: All documents gathered during the preparation of the defense of the Intervenor/Plaintiff's First Amended Complaint, including documents received as responses to subpoenas, voluntary requests to outside parties, and internal document-gathering processes.**

In response to this document request, Koch expected to receive non-privileged fact witness statements, transcripts of interviews, and responses to subpoenas. The importance and context of this request follows from the apparent loss of documents or failure, at least, for LA Weight Loss to produce records contemporaneous with Koch's termination, claims, and correspondence in 1998. LA Weight Loss, however, has refused to produce any such documents and baldly contends that all responsive documents are protected by the work product doctrine, relying upon *Allen v. McGraw*, 106 F. 3d 582, 608 (4th Cir. 1997) and *Sporck v. Peil*, 759 F. 2d 312 (3rd Cir. 1985).

The present case, however, is not analogous to *In re Allen*, which involved an attempt to obtain counsel's selection and collection of certain employment records; or to *Sporck*, which involved an attempt to obtain documents selected by counsel for the express purpose of preparing a witness to testify. In those cases, opposing counsel sought disclosure of matters which were essentially internal and which the lawyer could reasonably expect would never see the light of day. Here, Koch is attempting to obtain non-privileged, factual evidentiary material, which forms the factual basis for asserting defenses that will ultimately be disclosed. "Any insight into counsel's understanding of the case or of defenses is outweighed by contribution to the efficacious operation of the judicial system which expedited disclosure provides." *The Mead Corp. v. Riverwood Nat. Resources Corp.*, 145 F.R.D. 512 (D. Minn. 1992) (requiring defendant to disclose all documents upon which defendant relied when it filed and served the Answer to the Amended Complaint to support the defenses raised and the Counterclaim interposed).

Accordingly, LA Weight Loss must be compelled to produce all responsive documents.

**REQUEST NO. 25: All documents that refer, reflect or constitute any correspondence and/or any other documents received by you from Kathy Koch after Ms. Koch's termination from her employment with LA Weight Loss.**

---

[11] Request No. 27, seeking documents regarding employee discipline, also is moot in the face of Defendant's representation.

LA Weight Loss has failed to produce any of the flip charts, trainee handouts, or other training materials returned to Portlock on March 12. If LA Weight Loss has failed to preserve these documents, it must be compelled to respond accordingly.

**REQUEST NO. 26:** **All documents that refer, reflect or constitute the training provided by area corporate trainers, corporate trainers, and/or service trainers to center counselors in the Maryland/Delaware region from 1997 through 1998, including but not limited to materials provided to trainees, training agenda and content, identity of the trainers providing any such training sessions, the test scores of all trainees who received such training, and any feedback or evaluations provided by trainees respecting such training.**

Koch still awaits the production of the flip charts, handouts, demonstrative exercises, trainee tests, agendas, and formal training manuals used for training at corporate headquarters by Kristi O'Brien in November '97. Defendant concedes that it "gathered all the documents with respect to Koch's performance it could locate," weeks after her termination but continues to fail to produce all such documents. *See* Opposition at p. 33. LA Weight Loss also has failed to produce the flip charts, trainee handouts, or other training materials returned by Koch to Portlock on March 12. Instead, LA Weight Loss contends that its production of certain 1998-1999 training materials that "*would have been*" utilized by Portlock constitutes sufficient production. However, Portlock was unable to identify at her deposition any particular training agendas or manuals that were handed to her for identification. LA Weight Loss simply cannot be permitted to dodge its discovery obligation by producing selected substitute documents. Such a response is entirely insufficient and LA Weight Loss must be compelled to produce the actual training materials as requested.

In the face of Defendant's own discovery failures, and counsel's arrogance even to instruct its witnesses not to answer questions to identify relevant documents, LA Weight Loss now asserts that Koch's Motion to Compel is unjustified. LA Weight Loss' request for sanctions is a transparent attempt to fabricate a discovery violation where none exists on Koch's part. Given Defendant's refusal to provide relevant documents, a privilege log, and substantive answers to interrogatories, Koch had no alternative but to pursue the Motion after having been substantially justified to file her motion to compel in the first place. Koch should be awarded attorneys' fees and costs incurred in making the motion in view of her good faith effort to obtain discovery prior to the filing of the

motion.   LA Weight Loss' uncooperative conduct necessitated the motion, and its objections and responses are not substantially justified.  *See* FED. R. CIV. P. 37 (1)(4)(a).

Defendant nevertheless cites cases purporting to explain Koch's discovery demands as unreasonable and sanctionable.   However, the cases cited by Defendant establish that courts will not contemplate sanctions of the party seeking discovery except where that party's persistence to demand discovery contrary to previous orders of the court or its requests are blatantly improper.   No such circumstances exist in the present case.   LA Weight Loss had only produced to Koch 34 documents and an employee handbook at the time Koch filed her motion to compel.   Since the filing of the motion, Defendant in fact has produced hundreds more documents.   The interrogatories and documents that still remain subject to Koch's motion to compel have not been provided and Koch has explained their relevance.

This is not a rare and exceptional case where plaintiff is disobeying the court or persisting for completely unreasonable discovery.   Rather, LA Weight Loss reflects its own abuses of the civil discovery process.   LA Weight Loss has been obstructive and has caused Koch to incur extraordinary legal expenses. Defendant has imposed severe inconvenience and hardship on Koch by failing to provide discovery before crucial depositions.

Respectfully submitted,

Pamela J. White, Bar No. 00181
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21201
Telephone Number: (410) 347-7323
Facsimile Number: (410) 547-0699
E-mail address: pjwhite@ober.com

Dated January 13, 2004