**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** | : | |
| | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **and** | : | |
| | : | **CASE NO.: WDQ 02-CV-648** |
| **KATHY KOCH** | : | |
| | : | |
| **Intervenor/Plaintiff,** | : | **JURY DEMANDED** |
| | : | |
| **v.** | : | |
| | : | |
| **LA WEIGHT LOSS** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OF LA WEIGHT LOSS IN RESPONSE TO PLAINTIFF
EEOC'S MOTION TO BIFURCATE TRIAL AND DISCOVERY AND IN SUPPORT OF
MOTION FOR PRE-TRIAL CONFERENCE**

**I.     Introduction**

The EEOC bifurcation proposal raises more important questions than it answers.  It commits the parties and the Court to trial bifurcation procedures that do not have to be selected at this time and to punitive damage, due process and Seventh Amendment determinations that do not need be addressed unless and until they are better informed by discovery.  As reflected in the accompanying proposed orders, the sensible thing to do at this time is to hold a pretrial conference, schedule a stage of further discovery not quite as limited as now called for by the EEOC and then, assuming the case has not been resolved, return to the Court for rulings on trial bifurcation issues.

Under no circumstances should the Court order the trial of punitive damages on a class wide basis before actual damages are determined for each class member. Nor should it preclude LA Weight Loss from crucial discovery of all but those alleged class members chosen by the EEOC as its best witnesses. Finally, the claim of Kathy Koch should not be tried until after the trial on the EEOC pattern or practice claim.

## II.     The First Priority Should Be to Hold A Pre Trial Conference

The claim here is that LA Weight Loss ("LAWL") engaged in a pattern or practice of employment discrimination by not hiring men as managers or counselors to counsel its overwhelmingly female clientele on how to lose weight. The alleged discrimination supposedly "encompasses" hiring activities over a "multi-year period" involving "at least 10 job categories" and vacant positions "at hundreds of facilities in at least 16 states." (EEOC Br. at 2.) The EEOC describes its case as involving "enormous size and scope [and] complicated legal and factual issues." (Id.).

The Court so far has not had a pre-trial conference to begin to consider how to deal with that size and complexity. Rather, as its initial exposure to this potentially unwieldy litigation, the Court is faced with the EEOC's motion for bifurcation and its eight page suggested order. That order would limit LAWL to depositions of "class members" selected by the EEOC as its best witnesses, expose LAWL to a class wide punitive damages trial before it is found liable to any individual class member and have LAWL defend innumerable further trials that may well span the next several years.

Rather than trying to solve all long range problems raised by the EEOC's proposal all at once at this time, the first priority should be to schedule a conference so that the parties and the trial judge can discuss a judicious management of the case.

A conference will help the Court appreciate that questions on how discovery should proceed and how this case should be tried.   The claim is described by the EEOC in its own "convenient shorthand" as a "class action" -- but one which the EEOC hastens to point out is not governed by Fed. R. Civ. P. 23.  (EEOC Br. at 2, n.2).  Although LAWL may not be entitled to the protection of Rule 23, it is still very much entitled to manageable proceedings and the fundamental fairness that comes with substantive due process.  Indeed, this case presents serious management, due process and Seventh Amendment issues.

That is the case largely because the EEOC is seeking not just injunctive relief and not just back pay, but also punitive damages of up to $300,000 for each of hundreds of men allegedly victimized by the purported employment discrimination.  The EEOC suggests that a drastic finding that LA Weight Loss is liable for over $100 million in punitive damages should be made on a "class wide" basis in an initial "liability" trial.  It wants this punitive award to be made before it is determined whether any individual was actually victimized by the alleged discriminatory practice or suffered any damages and thus without any information from which the jury or the court could determine the proportionality of punitive damages to actual damages.

In considering the EEOC proposal for an early class wide determination of punitive damages, the court should have in mind the LAWL position that this case is fundamentally misconceived on the merits.  LAWL customers care about their appearance and care about their health.  They are over 90 percent female.  Counselors and center managers administering the LAWL program are not physicians.  It is common sense that most lay men are generally not ideally suited to counsel women about their bodies and the very personal matters of health and appearance that relate to their ability to lose weight.  Women do not want men dealing with them on intimate issues such as their menstrual cycles, bowel movements and other bodily functions

related to weight loss.  They can be just as troubled, to say the least, to have men weigh them while they are undressed as they are to men attending them in a ladies dressing room.  Equally important, most men simply are not interested in weight loss center jobs in the first place and many who are lose interest once they learn about what is involved in such work.  The fact that LAWL has relatively few men employed as center managers or counselors is merely a reflection that all of this reality come into play -- together with experience, communications skills and other qualifications -- during a good faith evaluation of an employment application.

The EEOC is apparently on a mission not to accept this reality, but to punish it.  It seeks to punish the Company because very few men in our society want to work in the weight loss industry.  It wants to punish the Company for rejecting men whose background and experience do not suggest they would make successful weight loss counselors.  Among just a sampling of the rejected applicants for counseling positions for whom it seeks $300,000 each in punitive damages are men whose last jobs before applying to LAWL were managing a loading dock; (George Adkins, Jr.); selling wireless telephones (Frank Cicero); doing paralegal work on auto accident claims (Victor Mayer); trading securities (Mark Sernitsky); running a yogurt business (Adam Fondrk); selling water treatment systems (Alan Barnes); and working in a car dealership (Robert Genovese).[1]

These may be able men -- but men for women to confide in about losing weight?

It is men's lack of interest and the extremely sensitive and intimate nature of the interaction between LAWL and its largely female clientele which dictates the gender composition of the LAWL work force  --  not an animus or  pattern or practice of employment

---

[1]    Resumes for these individual class members are attached to illustrate who it is that the EEOC claims was rejected as an LAWL employee because of sex discrimination. See Ex. A.

discrimination against men.   The fact men constitute only a small portion of LAWL's workforce is merely a reflection of these realities.  It is not conduct that should be deemed sufficiently malicious or reckless as to warrant the imposition of punitive damages.

Yet, it is the prospect of a huge punitive damages award, an award of such magnitude that it could break the company, which the EEOC wants LAWL to face before the EEOC proves that even one job applicant was not hired because he was a male.  The EEOC is therefore relying on the in terrorem  effect of such a trial as a pressure tactic.  Hence, the EEOC statement that "If there is a finding of liability [at a punitive damages Stage I trial] in most cases a settlement is reached without the need for the remedial phase of the trial" (EEOC Br. at 7); and hence the EEOC noting the advantages of bifurcation if a liability finding "induces settlement." (Id. at 8).

The tactic is something that the court should not tolerate at this time.  It should instead have the parties make a discovery record that will inform the court on whether  punitive damages is a genuine issue for trial.  Further determination of how this case should proceed through discovery and a possible trial bifurcation should be deferred until the parties report back to the court on the results of that discovery -- or on settlement prospects that may materialize once it is completed.  Otherwise the court will now have to resolve manageability, Due Process and Seventh Amendment issues that will not even arise if it is later recognized that this is simply not a case where punitive damages deserve consideration.

Above all the court should schedule a conference to best grasp the problems which LAWL believes must be reckoned with before any trial bifurcation can be ordered.

**III.    The Case Seeks Relief for A Class Without Offering the Manageability or Procedural Protections of a Traditional Class Action**

This case exists in a very unusual procedural framework.   Even though it seeks relief for men who have supposedly suffered discrimination because of their gender, no man initiated this

lawsuit.  The pattern or practice of discriminating against men is alleged as a result of an investigation of charges brought by a former female LAWL employee, Kathy Koch, claiming that she was fired as retaliation for her objecting to such alleged gender discrimination.  The EEOC filed this action without contacting a single man to determine if the EEOC could act on his behalf.  Since the filing of the Complaint almost two years ago, not one man has come forward to intervene and not one man has sought to represent himself or anyone else.

Instead, the EEOC requested in discovery the applications of all male applicants.  It then contacted them, informed them about this lawsuit and the possibility of a monetary recovery and asked permission to make them claimants in this matter.  The group of claimants is apparently one which is perpetually in formation.  Although the EEOC says that although it has to date identified 157 claimants, it "continues to diligently pursue identification of more aggrieved persons . . .[and] estimates that ultimately the Class will include at least 300 - 400 persons." (EEOC Br. at 2).

The EEOC is therefore seeking injunctive relief, back pay and punitive damages[2] for a class for which it is a self appointed rolling admissions officer.  It does so without having a class representative; without being subject to any preliminary judicial determination that a litigation of punitive damages for each member of the class would be at all manageable; without being subject to a cut off date for defining the class; without offering LAWL the binding effect of a favorable liability ruling on all class members; and without having satisfied any of the other class action requirements of Fed. R. Civ. P. 23.

---

[2]      The EEOC has stated that it does not intend to seek compensatory damages.  (Pl. EEOC's Answer to Def.'s Second Set of Interrogatories to Pl., No. 1 [16]).  Despite this statement, the EEOC's draft order provides for recovery of compensatory damages. (EEOC Proposed Order at 6, 8).

It has been held that the EEOC has the right to proceed at least to some extent in this manner.  In <u>General Telephone Company of the Northwest, Inc. v. Equal Employment Opportunity Commission</u>, 446 U.S. 318 (1980), the Court ruled that the EEOC may seek class wide relief without obtaining class certification or being certified as the class representative under Rule 23.  That decision, however, was made in 1980 when the only relief which the EEOC could seek was injunctive relief and back pay.  The decision was 11 years before the passage of 42 U.S.C. § 1981a providing for the recovery of compensatory and punitive damages by complaining parties in actions for unlawful intentional employment discrimination.

The Supreme Court has not since addressed procedural and due process concerns arising from the EEOC trying to recover punitive damages for each member of a class.  <u>E.g</u>: Can punitive damages be awarded for any individual class member before it is determined that he was not hired or damaged because of the pattern or practice of discrimination?   Can they be awarded on a class wide aggregate basis where no one in the class has a claim which has been determined to be typical or representative of the other class members?  Can they be awarded by a different jury than the jury which decided whether a pattern or practice of discrimination existed in the first place?

## IV.    The Proposed Trial Bifurcation Further Exposes the Problems Inherent in Such a Putative Class Action

The EEOC proposed trial bifurcation order for this case raises precisely these issues.  The EEOC proposes a trial in two stages: In the first stage the EEOC evidence would include testimony largely "by deposition transcript or videotape."  It would be from "30 - 40 of the 400+" anticipated Class members" (EEOC Br. at 3, n.2), and from "30 to 40 current or former LAWL employees." (<u>Id.</u> at 8, n.4).  The jury would determine "liability" in the sense of whether LAWL had a policy to discriminate against male job applicants or employees.  That trial would

not include a determination of whether the policy actually came into play and caused the actual hiring or promotion decision made about any particular individual.  So there would be no determination in Stage I either that anyone was actually victimized by discrimination or that anyone therefore has the right to recover actual damages for having suffered discrimination.

Even though any class member's right to recover in the first place would not be established until Stage II, the EEOC would also include in the Stage I trial a determination of "punitive damages related to the hiring discrimination claim(s), <u>both liability and class-wide amount</u>" (EEOC Proposed Order at 5-6 and EEOC Br. at 8, n.3) (emphasis added).  Punitive damages are therefore to be awarded to the entire class by one jury months  -- or even years -- before liability or actual damages as to any single class member is addressed by a second jury.

The second stage would not take place for months or even years after the first stage was completed, because there would have to be time before that stage for a second wave of discovery that would be necessary only if a pattern or practice of discrimination was found to exist during Stage I.  The second stage trial or trials would accordingly necessarily involve entirely different jurors than the first.

The second stage would address for the first time whether each individual class member actually sought employment during the period of alleged discrimination, whether there were non-discriminatory reasons or other affirmative defenses relevant to why he was not hired, whether non discriminatory reasons given were merely a pretext for discrimination and what back pay, if any, should be due to each class member.  According to the EEOC it would take approximately three months to present the evidence at the second stage trial, with jury deliberations thereafter on the claims of the 300 to 400 class members to "also be quite lengthy."  (EEOC Br. at 8).

There is no suggestion as to how any class wide punitive damages award is to be quantified.  Presumably, the EEOC will claim before the Stage I jury that it is entitled to an award equal to the statutory maximum of $300,00 for each "complaining party."[3]  At that time, however, the Stage I jury will not have before it any of the facts pertaining to LAWL's failure to hire any particular class member.  It is as if the Stage I jury is simply to award the maximum without knowing how any individual applicant was actually treated by LAWL, whether he was really qualified or whether there was a reasonable basis for concluding that someone else should be given the job instead.   Nor will there be any possibility of relating the amount of punitive damages to the amount of actual damage suffered, because the only recoverable actual damage will be back pay and front pay, an issue to be considered only months or years later at the second stage of the trial.

Thus, notwithstanding the complete disconnect between any class member's particular case and the punitive damages to which he could conceivably be entitled, the EEOC will expect a "class wide" award of the $300,000 maximum per class member, then presumably to be multiplied by the number of class members, according to the EEOC, "to include at least 300 - 400 persons." Voila! -- the EEOC will claim a punitive damage award of over $100 million.

As to who is to be entitled to that punitive award, the suggestion is that after the second stage of the trial, the court will make an appropriate apportionment among the class members. (EEOC Br. at 8, n.3).   There is no suggestion as to what happens if the second trial creates doubt as to any individual's right to share in an apportionment or what to do with any resulting excess award.

---

[3]     See 42 U.S.C. § 1981a(b)(3).

**V.    Statutory and Decisional Authority Show That Trying Punitive Damages Before Trying Liability To Individual Plaintiffs and Their Individual Actual Damages Is So Fundamentally Unfair As To Constitute a Denial Of  Substantive Due Process**

A.    <u>The Applicable Statutory Authority</u>

By statute, an employer cannot be liable for punitive damages unless it "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an <u>aggrieved </u>individual."  42 U.S.C. § 1981a(b)(1) (emphasis added).  We emphasize the word "aggrieved," because an individual can not be "aggrieved" by a discriminatory practice unless that practice is established as the reason he was denied employment.  Such an interpretation is merely consistent with the underlying scheme of section 706 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, which repeatedly refers to "persons aggrieved" or "claiming to be aggrieved" as those whose interests are served by the mechanism therein established for sanctioning unlawful employment practices.[4]

In the context of a pattern or practice class action, this means that even where an employer may have engaged in a pattern or practice of discrimination, it can not be liable for punitive damages to any particular person unless that person was actually victimized by the practice.  Thus, for example, if a male job applicant were rejected because he was simply unqualified, or in this case for some reason other than his gender, he is not aggrieved by the discrimination and therefore can not be entitled to punitive damages.

---

[4]     42 U.S.C.A.§2000e-5(b) refers to "[c]harges by persons aggrieved . . . of unlawful employment practices" and charges filed "by or on behalf of a person claiming to be aggrieved."  Section 2000e-5(e) refers to charges filed by "the person aggrieved" with state or local authorities.  Section 2000e-5(f) refers to civil actions by the EEOC "or person aggrieved" in federal district court.

Moreover, in this case it may also turn out that only a handful of the 300 to 400 class members were not hired because of a discriminatory policy.  It would hardly be fair under those circumstances to have put the cart before the horse -- to have awarded punitive damages against LAWL for tens of millions of dollars on a class wide basis before the minimal scope of that liability was established.

      B.     <u>The Decisional Authority</u>

          1.     <u>The Supreme Court Jurisprudence on Punitive Damages</u>

Supreme Court rulings compel the conclusion not only that it is improper to find a defendant liable for punitive damages without determining that any person has actually been victimized by the alleged discriminatory policy.  It is also improper to determine punitive damage liability on a class wide basis without a fact-finder first determining the amount of actual damages suffered by each class member.

Punitive damages are designed to punish.  While punitive damages serve the same purpose as criminal penalties, they do not themselves afford defendants the same protections as defendants in criminal cases.  Rather, they "pose an acute danger of arbitrary deprivation of property."  <u>Honda Motor Co. v. Oberg</u>, 512 U.S. 415, 432 (1994).  To minimize this danger, the Supreme Court in <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1996), stated that there must be a reasonable relationship between the harm suffered by a plaintiff and a punitive damage award, and "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct."  <u>Id.</u> at 575.

In <u>State Farm Mutual Automobile Insurance Company v. Campbell</u>, 123 S. Ct. 1513 (2003), the Supreme Court further clarified this requirement by explaining that "punitive damages should only be awarded if the defendant's culpability, <u>after</u> having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve

punishment or deterrence."  123 S. Ct. at 1521 (citing <u>Gore</u>, 517 U.S. at 575) (emphasis added).

Otherwise a punitive damages award violates the concept of substantive due process.  <u>Id.</u>[5]

A defendant therefore cannot be found liable for punitive damages unless and until a

judge or jury has awarded the plaintiffs actual damages.  Until then, it is impossible for the fact-

finder to determine whether actual damages alone will be sufficient punishment or whether

additional punishment in the form of punitive damages is necessary.  Moreover, if the defendant

is found to have no liability whatsoever to an individual class member because the  reason he

was not hired had nothing to do with a discriminatory policy, not even actual damages, let alone

punitive damages, would ever be considered.

2.    <u>Due Process In Title VII Cases</u>

Consideration of fundamental fairness and substantive due process govern the

administration of Title VII cases just as they do in tort cases like <u>State Farm</u> and <u>Gore</u>.  They

restrict fact-finders from addressing punitive damages until the question of actual damages has

been resolved.   In <u>Corti v. Storage Technology Corp.</u>, 304 F.3d 336 (4th Cir. 2002), the Fourth

Circuit  had to determine whether punitive damages could be awarded in a Title VII case where

back pay had been awarded pursuant to 42 U.S.C. § 2000e-5(g), but compensatory damages,

pursuant to 42 U.S.C. § 1981a, had not.  Finding that "back pay awards serve a similar purpose

as compensatory damage awards," the Fourth Circuit embraced "the 'familiar tort mantra' that

punitive damages may not be assessed in the absence of compensatory damages" and held that in

a Title VII case, punitive damages may be awarded only if actual damages -- either in the form

---

[5]        That is so because a defendant should be punished for the conduct that harmed the
plaintiff, not for being an unsavory individual or business."  <u>State Farm</u>, 123 S. Ct. at
1523.  Unless compensatory damages have been awarded it is impossible to determine
whether the conduct being punished is that which harmed the plaintiff and how harmful it
truly was to the plaintiff.  <u>See</u> <u>Id.</u>

of compensatory damages or back pay -- have been awarded. <u>Corti</u>, 304 F.3d at 343. This is

consistent with the Supreme Court's decisions in <u>State Farm</u> and <u>Gore</u>.

The Fourth Circuit has also discussed the lack of fairness in a "Stage I" class wide

determination of punitive damages in the context of a pattern or practice class action. In <u>Lowery</u>

<u>v. Circuit City Stores, Inc.</u>, 158 F.3d 742 (4th Cir. 1998), <u>vacated on other grounds</u>, 527 U.S.

1031 (1999), the Fourth Circuit affirmed the district court's decision to decertify the class in a

pattern or practice race discrimination case rather than permit the jury to decide liability for

punitive damages before each class member's intentional discrimination claim was resolved and

actual damages, if any, awarded:

> [T]he district court had legitimate concerns about fairness. The
> Plaintiffs' proposed trial method would allow the Stage I jury to
> determine punitive damages before the Stage II jury hears evidence
> of actual harm to the class members or Circuit City's proffered
> justifications for its adverse employment decisions. It would have
> been entirely possible that the evidence adduced in Stage I would
> have resulted in stiff punitive damages, while the evidence of
> actual harm presented in Stage II would have shown that Circuit
> City's actions were not sufficient to merit compensatory damages,
> or even egregious enough to have merited punitive damages. We
> cannot conclude that such concerns led the district court to abuse
> its discretion in decertifying the class.

<u>Id.</u> at 758-59. Similarly, in <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402, 418 (5th Cir. 1998),

the court affirmed denial of class certification explaining that "punitive damages must be

determined after proof of liability to individual plaintiffs at the second stage of a pattern or

practice case, not upon the mere finding of general liability to the class at the first stage."

In pattern or practice cases, actual damages cannot be determined for each plaintiff until

after the fact-finder has decided whether the defendant actually discriminated against that

particular plaintiff. Even where the fact-finder has already determined that the defendant

engaged in a pattern or practice of discrimination, a plaintiff is not entitled to damages unless the

defendant fails to prove that it would have treated the plaintiff similarly even if it had not had the discriminatory practice.  See Desert Palace, Inc. v. Costa, 123 S. Ct. 2148 (2003) (affirming the jury instruction given by the trial court in this mixed motive case).  Here none of that evidence is called for in the EEOC's proposed Stage I trial.  Accordingly, punitive damages can not be decided during that first stage.

3.    EEOC Pattern or Practice Class Actions

The Supreme Court in the 1977 Teamsters case explained a bifurcation procedure that courts could follow in pattern and practice class actions:  Stage I -- pattern or practice liability and whether injunctive relief is appropriate; Stage II -- liability to individual plaintiffs and their actual damages.  The Teamsters Court did not have to address where punitive damages fit into this scheme because punitives were not at issue in that case.[6]  Similarly, for the next 14 years, courts applying the Teamsters model to pattern or practice employment class actions did not have to address fairness issues arising from punitive damage claims in EEOC "class actions," because they were not statutorily available until the 1991 Amendments to Title VII.  Indeed, although the EEOC cites several cases generally approving of bifurcation in pattern or practice cases (EEOC Br. at 4-5), they are all pre-1991 -- and the  EEOC does not offer a single authority, including the Manual For Complex Litigation,[7] addressing the issue of when and how punitive damages get determined in an EEOC "class action."

---

[6]    See EEOC Br. at 5 quoting Teamsters that "a court's finding of a pattern or practice justifies an award of prospective relief . . ." (emphasis added).   Class wide punitive damages was neither addressed nor sanctioned in the Teamsters opinion.

[7]    Not only do the sections of the Manual on which the EEOC relies fail to address the trial of punitive damages claims in employment class actions generally, but they do not address EEOC class actions at all.  In Section 33.52, which is titled "Class Actions," the Manual speaks only of Rule 23 employment class actions and collective actions under the Age Discrimination in Employment Act and the Fair Labor Standards Act.

As discussed earlier, post-1991 Supreme Court opinions make clear  that punitive damages raise important due process concerns requiring that punitive damages be awarded only after entitlement to and the amount of actual damages are determined.  Incorporating this requirement into the Teamsters framework does not at first blush appear to be overly burdensome:  save the punitive damages determination until after actual damages are decided.

In this case, however, such a proposal raises a Seventh Amendment problem.[8]  Assume the pattern or practice issue is to be tried in a first stage and the causation, actual damage and punitive damage issues for each individual class member are to tried in a later second stage following several months or more of intervening discovery on the individual issues.  Under that scenario, the Stage II adjudications will have to take place before one or more panels of jurors who did not sit at the Stage I trial.

Those Stage II jurors, however, will not have heard pattern or practice evidence that was heard and weighed by the Stage I jury.  They will therefore have no feel for the critical variable on a punitive damages determination -- the  "degree of reprehensibility of the defendant's conduct."  BMW v. Gore, supra, 517 U.S. at 575.  They will not have in mind, for example, that while the Stage I jury may have found the existence of a pattern or practice of discrimination, it also believed that the evidence just barely tipped the scales in favor of such a finding or that the nature of the pattern or practice was by no means pernicious, malicious or reckless in its conception. To allow a Stage II jury to assess punitive damages without being able to apply the Stage I jury's collective judgment and memory about these beliefs will effectively lead to a decision of punitive damages in a vacuum and deprive LAWL of its rights to a jury trial on the

---

[8]    The Seventh Amendment:  "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

punitive damages issue.  Cf. Bacon v. Honda of America Mfg. Co., Inc., 205 F.R.D. 466, 489

(S.D. Ohio 2001) (explaining that it would violate the Seventh Amendment for a Stage I jury to

decide punitives before actual damages have been awarded because the Stage I jury would be

making its decision in a vacuum without knowing the reprehensibility of the defendant's

conduct).  Indeed the EEOC concedes that punitive damages "can only be properly adjudicated

by a jury that has heard all of the pattern or practice liability evidence in the case."  (EEOC Br. at

3).

     If, to help it make its punitive damages determination, the second jury were somehow

presented with evidence of the nuances in the pattern or practice determination made by the first

jury, there would then be another potential Seventh Amendment problem.  There would be an

overlap of facts being determined at the initial stage when the first jury decides whether a pattern

or practice existed and the final stage when the second jury decides punitive damages.  See, e.g.,

Bacon, 205 F.R.D. at 489 ("[I]f the issue of punitive damages is deferred to a later stage, the

second jury would be required to re-weigh evidence and issues relating to liability determined by

the first jury in determining who is entitled to compensatory and punitive damages which would

violate the Seventh Amendment.") and cases cited therein at 488-89.  As the EEOC itself

acknowledges "the evidence establishing liability and that relevant to assessment of punitive

damages is inexorably intertwined such that trial of the issue during Stage II proceedings would

result in duplicative presentation of voluminous evidence to separate juries." (EEOC Br. at 8, n.

3).

     Two juries considering the same issues would, however, violate the Seventh Amendment.

That problem could be avoided only if the same jury decided all stages of the case, here a

scenario which is a practical impossibility.

The trial of punitive damages as part of an EEOC class action therefore puts LAWL between a rock and a hard place.  It can not be accorded fundamental fairness in the adjudication of its punitive damages claims without losing its jury trial rights under the Seventh Amendment. This is reason alone to explore whether this case can be resolved without litigating punitive damages, an exploration which can only be made by following the LAWL suggestion on how to proceed.

**VI.    Membership In The Class Should Be Cut Off and The Parties Should Take Appropriate Discovery to Help the Court Make More Informed Decisions On Both Bifurcation And Whether Punitive Damage Issues Must Really Be Confronted**

The problems inherent in the EEOC proposed trial bifurcation are compounded by the discovery proposed by the EEOC to go along with it.  The EEOC wants to be able to present testimony from 40 class members in the initial liability trial.  It wants to limit LAWL's right to depose class members before the Stage I trial to those same 40 plus 10 others of the EEOC's choosing.   (EEOC Proposed Order at 3).  An LAWL expert will likely want to refute statistical evidence offered at Stage I that the facts pertaining to those 40 to 50 class members evidence a pattern of discrimination.  Yet under the EEOC proposal, that expert would not be allowed to compile any evidence from depositions of the other 300 or so class members.

It is entirely arbitrary to preclude LAWL from deposing any class member before a Stage I trial other than the 50 which the EEOC  hand picks as its best witnesses.  If the class has 300 to 400 members as the EEOC claims, then a statistical analysis of information obtained from depositions of the other 250 to 350 class members would certainly be relevant on whether there was a  pattern of discrimination as to the class as a whole.

That is not to suggest that LAWL will insist on taking 300 to 400 depositions before trial. To the contrary, although it will certainly want information about all class members in order to

show statistically or otherwise that there was no pattern or practice of discrimination, it does not need depositions of each one to obtain that information. Rather LAWL proposes the following:

First, there should be a cut off date of March 1, 2004 for the EEOC to identify to LAWL the members of the class. Then at last LAWL can know the pool of applicants whose experience with LAWL supposedly evidences the pattern or practice of discrimination.

Second, within 30 days thereafter (April 1, 2004), the EEOC should produce to LAWL for each class member a copy of his resume or a written description of his qualifications as they existed at the time he sought employment at LAWL.[9]

Third, within 90 days thereafter (July 1,2004), the EEOC should identify those class members it will have testify on the pattern or practice issue.

Fourth, by December 31, 2004,  a) the parties would complete all discovery related to the Kathy Koch claim; and b) LAWL would have the right to depose (i) each of the class members who have been designated by the EEOC  to testify on the pattern or practice, and (ii) class members previously identified but not so designated up to that number which, in addition to those deposed pursuant to the prior clause (i), constitutes 30% of all class members (e.g., if the class, as of the cut off date, consists of 200 members, LAWL can depose 60 of them in addition to those designated by the EEOC to testify on the pattern or practice issue).

This approach does not require the court to decide any punitive damage, bifurcation, due process or Seventh Amendment issues at this time.  It allows the parties to take all of what the EEOC would deem Stage I discovery and to reckon later with how any additional discovery that might be necessary can be managed to avoid duplication.

---

[9]    LAWL does not have that information for all rejected applicants because many of them never get as far as even submitting a resume.  They are instead screened out as a result of a communication during their telephone response to an ad or in a brief meeting if they come into an LAWL center asking about the possibility of employment.

The parties would then evaluate the discovery record. Ideally from LAWL's point of view, the record would show that it is by no means the Public Enemy in its treatment of male job applicants because most of them were entirely unqualified in the first place. This would hopefully compel the EEOC to moderate or discontinue its pursuit of punitive damages. That would obviate the need to confront the troublesome issues flowing from the punitive damages claim. It could also lead to a good faith settlement discussion and a resolution. If not it would in any event provide the court with a more informed basis for deciding what further discovery is appropriate and how to manage a trial of the EEOC claim while preserving the due process and discovery rights LAWL needs to defend it.

**VII.    To Avoid Prejudice to LAWL, Kathy Koch's Retaliation Claim Should Be Tried Only After the EEOC's Pattern or Practice Claim**

Ms. Koch was employed by LAWL as a regional trainer in the Delaware/Maryland region from November 1997 through March 1998. She claims she was terminated because she complained to LAWL about the company's alleged policy or practice of not hiring men.

To prove a prima facie case of retaliation, Koch must show: (1) that she engaged in a protected activity, (2) that LAWL took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action. See King v. Rumsfeld, 328 F.3d 145, 150-51 (4th Cir. 2003), cert. denied, 2003 WL 22023205 (U.S. 2003). An employee who complains about an employment practice that is unlawful under Title VII engages in a protected activity. See Scott v. Norfolk Southern Corp., 153 F.3d 722 (4th Cir. 1998) (quoting Mayo v. Kiwest Corp., No. 95-2638, 1996 WL 460769, at *4 (4th Cir. Aug. 15, 1996)); Laughlin v. Metropolitan Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998).

The practice about which the employee complains need not actually violate Title VII. It is enough for the employee to have "an objectively reasonable belief that . . . [the conduct is] unlawful under Title VII." Scott, 153 F.3d 722 (quoting Mayo, 1996 WL 460769, at *4).

Where the parties to a retaliation claim stipulate to the reasonableness of the plaintiff's belief that the defendant engaged in conduct prohibited by Title VII, courts often entirely preclude the parties from introducing evidence regarding the illegality of the conduct about which the plaintiff complained. See, e.g., Easley v. American Greetings Corp., 158 F.3d 974 (8th Cir. 1998) (affirming trial court's decision to exclude testimony regarding sexual harassment about which the plaintiff complained and for which complaint the plaintiff alleged she was retaliated against because this evidence was too prejudicial and because the defendant had admitted that the plaintiff had been sexually harassed); Harvey v. District of Columbia, 949 F. Supp. 874 (D.D.C. 1996) (precluding the introduction of evidence for the plaintiff's retaliation claim regarding specific instances of sexual harassment about which the plaintiff complained because the defendant stipulated that the plaintiff had engaged in protected activity). See also Fleming v. County of Kane, 898 F.2d 553 (7th Cir. 1990) (affirming trial court's decision in a whistleblower action to preclude the defendant from introducing evidence regarding the legality of the practice about which the plaintiff complained).

Where courts have admitted such evidence, it is because the allegedly illegal conduct was directed at the plaintiff – for example, where the plaintiff claims to have been the victim of sexual harassment. In both Bianchi v. City of Phila., No. 02-2687, 2003 WL 22490388 (3d Cir. Nov. 4, 2003) (attached as Ex. B) and McCue v. State of Kansas, 165 F.3d 784 (10th Cir. 1999), the courts upheld the trial courts' admission in these retaliation cases of evidence regarding the sexual harassment about which the plaintiffs complained because the plaintiffs argued this was

necessary to show the causal connection between their complaints and their termination for poor performance. The defendants in both cases argued that the plaintiffs were terminated for substandard performance, and the plaintiffs sought to prove that this was a pretext -- the real reason their performance declined was because they were subjected to harassment. In Koch's case, the conduct about which she complained was not directed at her, so the argument that persuaded the Bianchi and McCue courts to admit evidence regarding the underlying conduct are not persuasive. Moreover, both the Bianchi and McCue courts made clear that evidence regarding the conduct about which the plaintiffs complained "is very prejudicial"[10]; such evidence therefore "should not dominate the trial." Bianchi, 20003 WL 22490388 at *3; McCue, 165 F.3d at 789.

Here, were the court to permit Koch's claim to be tried along with the EEOC's pattern or practice claim, evidence regarding the pattern or practice about which Koch complained would clearly dominate the trial and would be prejudicial to LAWL. Indeed, this is clearly the EEOC's plan: a lengthy trial on pattern and practice and punitive damages, with week after week of testimony, so that Koch's claim becomes a mere footnote.

Koch was employed by LAWL for four months in a region that included only two states. The EEOC has alleged that LAWL had a pattern or practice of not hiring men "over a multi-year period . . . at hundreds of facilities in at least 16 states." (EEOC Br. at 2). The EEOC intends to prove at trial that LAWL's alleged pattern or practice extended over this protracted time period and this expanse of the country. Were Koch to try her retaliation case at the same time the EEOC tried its pattern or practice case, the jury would not only hear evidence regarding the pattern or practice that allegedly existed at the time and in the part of the country where Koch

---

[10]     Federal Rule of Evidence 403 permits the exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice."

worked.  It would also hear evidence extending far beyond these geographic and temporal limits.

Plaintiffs' hope is that a jury would just bring Koch along for the ride and find liability and

punitive damages for her too.  This approach has been forbidden by the courts as prejudicial and

should be rejected here as well.

The Court should therefore deny the EEOC's request that Koch's retaliation claim be

tried along with the EEOC's pattern or practice claim.  If the Court declines to wait until further

discovery has been taken to determine when Koch's claim should be tried, it should order that

the retaliation claim be tried only after the trial of the EEOC's pattern or practice claim.

**VIII.   <u>Conclusion</u>**

For the reasons stated, the court should convene a pretrial conference, defer any decision

on trial bifurcation and enter the attached orders proposed by LAWL.


                                        _____/s/_____
                                        David Landau
                                        Larry Spector
                                        David Gollin
                                        Jennifer Blum Feldman
                                        WOLF, BLOCK, SCHORR AND SOLIS-
                                        COHEN
                                        1650 Arch St, 22d Floor
                                        Philadelphia, PA 19103-2097
                                        215 977 2049


                                        Elizabeth Torphy-Donzella
                                        SHAWE & ROSENTHAL, LLP
                                        20 S. Charles St.
                                        Baltimore, MD 21201
                                        410 742 1040

                                        **Attorneys for Defendant LA Weight Loss**

 Dated: January 20, 2004

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing Motion for Pre-Trial Conference and  Memorandum of LA Weight Loss In Response To Plaintiff EEOC's Motion to Bifurcate Trial and Discovery and in Support of Motion for Pre-Trial Conference to be filed and served electronically on this day, the 20th day of January 2004.  I further certify that a copy of each of the foregoing documents shall be served by first-class mail, postage pre-paid, upon Intervenor/Plaintiff, through her counsel, as follows:

> Pamela J. White, Esquire
> Ober, Kaler, Grimes & Shriver, P.C.
> 120 East Baltimore Street
> Baltimore, Maryland 21201
>
> Attorney for Intervenor/Plaintiff

and upon Plaintiff via first-class mail, postage pre-paid as follows:

> Ronald L. Phillips, Esquire
> U.S. Equal Employment Opportunity Commission
> Baltimore District Office
> 10 South Howard Street, 3rd Floor
> Baltimore, MD 21201
>
> Attorneys for Plaintiff


                                    _____/s/_____
                                    Elizabeth Torphy-Donzella

Dated:   January 20, 2004