80 Fed.Appx. 232                                                                                                                                   Page 1
**(Cite as: 80 Fed.Appx. 232, 2003 WL 22490388 (3rd Cir.(Pa.)))**

H This case was not selected for publication in the Federal Reporter.

NOT PRECEDENTIAL

Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,
Third Circuit.

Robert C. BIANCHI,
v.
CITY OF PHILADELPHIA; Philadelphia Fire Department, City of Philadelphia,
Appellant.

No. 02-2687.

Submitted Under Third Circuit LAR 34.1(a) Oct. 14, 2003.
Decided Nov. 4, 2003.

Male former firefighter who was administratively discharged after he failed to apply for unpaid disability leave brought action against city, alleging sexual harassment and retaliation under Title VII and Pennsylvania Human Relations Act (PHRA), § 1983 for denial of procedural due process rights, and intentional infliction of emotional distress. After summary judgment was granted, 183 F.Supp.2d 726, on some claims, the retaliation and procedural due process claims proceeded to trial. The United States District Court for the Eastern District of Pennsylvania, Anita B. Brody, J., entered judgment on jury verdict awarding firefighter $500,000 in compensatory damages, $225,000 in back pay, and $512,500 as front pay. City appealed The Court of Appeals, Sloviter, Circuit Judge, held that: (1) district court did not abuse its discretion in admitting evidence of harassment after Rule 403 balancing; (2) jury's due process finding would not be overturned; and (3) front pay and back pay awards were sufficiently supported by evidence and were not so excessive as to shock court's conscience.

Affirmed.

West Headnotes

**[1] Evidence** ⚷146
157k146

In trial of Title VII and Pennsylvania Human Relations Act (PHRA) retaliation claims, district court did not abuse its discretion in admitting evidence of sexual harassment of firefighter, including threatening letter written after firefighter first made public his harassment complaint, based on finding it was more probative than prejudicial; evidence went to third prong of retaliation inquiry which required investigation of reasons motivating adverse employment action, brief summary of harassment in lieu of evidence would not have been explanatory of progression of events leading to employee's separation, and harassment evidence did not dominate trial and was not highly confusing in light of limiting instructions given. Fed.Rules Evid.Rule 403, 28 U.S.C.A.; Civil Rights Act of 1964, § 704(a), as amended, 42 U.S.C.A. § 2000e-3(a); 43 P.S. § 951 et seq.

**[2] Civil Rights** ⚷1430
78k1430

Issue of whether due process was violated by procedures associated with firefighter's separation was for jury in § 1983 action against city; availability of procedures providing some postdeprivation redress did not negate firefighter's ability to maintain action merely because pretermination procedure was neither impossible nor impractical. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[3] Civil Rights** ⚷1563
78k1563

**[3] Civil Rights** ⚷1571
78k1571

District court did not abuse its discretion in awarding front pay to separated firefighter, rather than coupling back pay with reinstatement, based on finding that relationship between parties had been irreparably damaged due to lack of mutual respect and trust, and that firefighter's reinstatement consequently would put lives in danger. Civil Rights Act of 1964, § 706(g), as amended, 42 U.S.C.A. § 2000e-5(g).

**[4] Federal Courts** ⚷634
170Bk634

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

80 Fed.Appx. 232                                                                                                               Page 2
**(Cite as: 80 Fed.Appx. 232, 2003 WL 22490388 (3rd Cir.(Pa.)))**

City waived on appeal claimed error from district's decision of propriety of front pay award in employment discrimination case after amount had already been determined by jury, where it neither formally objected to jury charge on front pay nor to jury interrogatories thereon.

**[5] Civil Rights** 🗝1573
78k1573

**[5] Civil Rights** 🗝1574
78k1574

Award of $512,500 in front pay to firefighter was reasonable, and district court's refusal to reduce award based on firefighter's failure to mitigate was not abuse of discretion given city's failure to examine firefighter at trial on his job prospect or future earnings potential and firefighter's evidence that he could not find comparable employment. Civil Rights Act of 1964, § 706(g), as amended, 42 U.S.C.A. § 2000e-5(g).

**[6] Civil Rights** 🗝1574
78k1574

Jury award of $225,000 in back pay to separated firefighter was reasonable and would be upheld on appeal, notwithstanding city's argument that award should have commenced when firefighter's paid leave expired and not, as jury found, when he asked for reinstatement. Civil Rights Act of 1964, § 706(g), as amended, 42 U.S.C.A. § 2000e-5(g).

**\*233** On Appeal from the United States District Court for the Eastern District of Pennsylvania. (D.C. Civil No. 99-cv-02409). District Judge: Hon. Anita B. Brody.

Andrew F. Erba, Williams, Cuker & Berezofsky, Philadelphia, PA, for Appellee.

Jane L. Istvan, Craig R. Gottlieb, City of Philadelphia Law Department, Philadelphia, PA, for Appellant.

Before: SLOVITER, ROTH and CHERTOFF, Circuit Judges.

*OPINION OF THE COURT*

SLOVITER, Circuit Judge.

### I.

**\*\*1** The City of Philadelphia (the "City") appeals from the judgment entered by the District Court in favor of the appellee, Robert Bianchi ("Bianchi"), following the jury's verdict for Bianchi on his retaliation and due process claims against the City. The City argues that the District Court erroneously admitted graphic evidence and testimony of sexual harassment notwithstanding the fact that the court had dismissed the harassment count; the District Court improperly upheld the jury's finding for Bianchi on his procedural due process claim, an alternative basis to uphold the jury's damage award; the District Court erred in awarding Bianchi front pay; and the amount of damages awarded cannot be sustained by the evidence.

After consideration, we conclude that the District Court did not abuse its discretion or err as a matter of law, and we will affirm.

### II.

Inasmuch as we are writing only for the parties and the District Court, we need not **\*234** set forth the factual and procedural background of this matter in detail except as may be helpful to the ensuing discussion.

Bianchi joined the Philadelphia Fire Department in 1977, and in 1994 he was promoted to Lieutenant. In 1996 he was assigned to supervise Ladder Company No. 2 and quickly became the target of harassment because he was perceived as gay. The harassment manifested itself in the placement of used condoms and homosexual paraphernalia in his desk drawer, gear, and mail. He informed his Captain and Battalion Chief, who chastised Bianchi's platoon but did not alert the Fire Department administration of the situation.

In late 1997 the harassment intensified. Bianchi's running gear had been soiled with urine or feces from which he contracted a fungal infection around his mouth, and once again he discovered playing cards depicting nude males placed where he would see them. In November he informed his superiors that he intended to file an official complaint, and he did file such a complaint, sending them a written memo ("November Memorandum"). This led to an internal investigation overseen by two Battalion Chiefs who took statements from the firefighters regarding the harassment as well as Bianchi's behavior. The firefighters characterized Bianchi as unstable, and a number of them requested a transfer out of his

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

command.

On December 15, 1997, Bianchi was removed from his command and transferred to a desk job in the safety office. In January 1998, disheartened by his transfer and frustrated with the investigation, he again complained about his situation. Shortly thereafter, after a meeting with his supervisors and union representatives, he was placed on a 30-day medical leave.

Bianchi was required by the Fire Department to undergo psychiatric evaluation with Dr. A. Anthony Arce, a psychiatrist employed by the City as an independent consultant in psychiatry, before he could resume employment. Dr. Arce concluded that "from a psychiatric standpoint, Mr. Bianchi [could not] be considered disabled and [was] able to resume his regular duties." App. at 1191. Bianchi returned to work, but on April 7, 1998, a threatening letter smeared with feces was sent to his twin brother's residence, where Bianchi was then living. [FN1]

> FN1. This letter read:
> HERE IS SOME SHIT FOR YOU ASSHOLE. WE HEAR YOU ARE BACK TO WORK IN A PUSSY JOB. YOU WILL NOT BECOMING TO YOUR REGULAR JOB ANYMORE, WE WILL SEE TO THAT DON'T GET TO COMFORTABLE BECAUSE WE WILL NOT BE HAPPUY UNTIL WE GET YOU OUT FOR GOOD!!!! YOU AND YOUR BROTHER ARE TWO QUEERS LIVING TOGETHER WE PREFER WOMAN. YOUR BROTHER IS NEXT. SO TELL ME WHAT IT IS LIKE TO JERK OFF TOGETHER. YOU DO NOT HAVE ONE FRIEND IN THE DEPARTMENT AND YOU ARE NOT SHIT!!!! YOU AND YOUR BROTHER WILL BE GONE SOON. DON'T DRIVE AROUND TO MUCH AND DONT THINK YOU WILL BECOMING BACK!!!!
> App. at 1109 (the "April 7 Letter") (mistakes in original).

**2 Following this, Bianchi's personal therapist, Dr. Raymond Floven, recommended that he take a medical leave, but cleared him for return in October 1998; Dr. Arce also cleared him for return at that time but Bianchi was still barred from returning by the opinion of other City psychiatrists. Ultimately, in March 1999, Bianchi was informed by the Fire Department's Human Resources Manager that unless he applied for unpaid disability leave (as opposed to the paid medical leave he was on), he would be administratively **235 discharged; when Bianchi failed to apply for such leave, he was discharged.

Bianchi then filed a complaint against his former employer, the City, alleging (1) sexual harassment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § § 2000e et seq. and the Pennsylvania Human Relations Act, 43 P.S. § § 951 et seq. (the "PHRA"); (2) retaliation pursuant to these two acts and in violation of the First Amendment; (3) denial of his procedural due process rights (via 42 U.S.C. § 1983); and (4) intentional infliction of emotional distress. Only the retaliation and procedural due process claims proceeded to trial. The jury found in favor of Bianchi, awarding $500,000 in compensatory damages, $225,000 in back pay, and $512,500 as front pay. On March 14, 2002, the District Court denied the City's Post-Trial Motion and upheld the verdict. On May 30, 2002, the District Court ruled that front pay was the appropriate remedy because of the embittered relationship between Bianchi and his employer.

These decisions form the basis of this timely appeal. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

### III. DISCUSSION
*A. Admission of Harassment Evidence and Rule 403*

[1] The City first argues that under Rule 403, the evidence of harassment was inadmissible because it prejudiced and confused the jury. We review a district court's evidentiary rulings for abuse of discretion. We have explained that an abuse of discretion must be " 'a clear error of judgment, and not simply a different result which can arguably be obtained when applying the law to the facts of the case.' " [FN2] *Coleman v. Home Depot, Inc.,* 306 F.3d 1333, 1341 (3d Cir.2002) (quoting *SEC v. Infinity Group Co.,* 212 F.3d 180, 195 (3d Cir.2000)). Rule 403 provides:

> FN2. The City argues that because the District Court never explained its Rule 403 analysis, we should exercise plenary review over the admission of the harassment evidence pursuant to *United States v. Himelwright,* 42 F.3d 777, 785 (3d Cir.1994). The District Court's Rule 403 analysis is evident from the record. The court termed the evidence "highly probative

and highly material," even though it recognized that such evidence could be prejudicial. App. at 157-58.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed.R.Evid. 403. In general, the balance under the rule should be struck in favor of admissibility, *Spain v. Gallegos,* 26 F.3d 439, 453 (3d Cir.1994), and highly probative evidence is exceptionally difficult to exclude. *Coleman,* 306 F.3d at 1343-44.

The City argues the harassment evidence in this case was not probative on the retaliation claim for which it was proffered and admitted. To prevail on a retaliation claim under the PHRA and Title VII, Bianchi was required to show that he engaged in protected conduct, that the City subsequently took adverse employment action against him, and that this adverse employment action was caused by the protected activity.

**\*\*3** The evidence at issue is probative of the third prong of the retaliation inquiry, which requires investigation of the reasons motivating the adverse employment action. Bianchi argued that the Fire Department was aware of the harassment and, prompted by a desire to keep it quiet, separated **\*236** Bianchi from his employment after he publicized it. The District Court admitted the evidence specifically for this purpose, stating that it was material to show the nexus between the retaliation and the filing of the complaint. Because plaintiff's establishment of a hostile work environment might help a jury decide whether or not the reason given for his separation was a pretext, *see Glass v. Phila. Elec. Co.,* 34 F.3d 188, 195 (3d Cir.1994) (quoting *Estes v. Dick Smith Ford, Inc.,* 856 F.2d 1097, 1103 (8th Cir.1988)), the April 7 threatening letter, which was written after Bianchi first made public his complaint in the November Memorandum, could reflect and therefore be probative of hostility within the Fire Department. Moreover, the harassment evidence is probative of the basis for Bianchi's anger, which the City itself cites as the cause of his eventual separation.

The City argues further that if the evidence was admitted, it should have been limited to a brief summary of the harassment. However, a brief summary would not have been explanatory of the progression of events. The District Court explained in its opinion on the City's motion for judgment n.o.v. or for a new trial that it had ruled at the final pretrial conference that Bianchi "could present evidence of the specific incidents of harassment as relevant and important background to the claims at hand," but specified that the evidence should not dominate the trial. Our review of the record indicates that the harassment evidence does not dominate the trial as the City contends.

The City finally argues that the admission of the harassment evidence was highly confusing to the jury. However, in *Gallegos* we stated that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 26 F.3d at 453 (admitting evidence that defendant feared would turn trial into a sexual harassment trial instead of breach of ethics trial). Here the District Court, which found that the probative value of the evidence outweighed its prejudice and tipped the Rule 403 calculus in favor of its admission, gave careful limiting instructions when appropriate, namely in the opening instruction, throughout the case, and in the final jury instructions. Thus, it did not abuse its discretion by admission of the evidence.

*B. Due Process*

[2] The City next argues that as a matter of law, the jury's due process finding should be overturned. [FN3] It argues that Bianchi could have, and did, challenge the refusal to reinstate him by going through state court, and that he could have employed both the union's grievance procedure and Civil Service Regulation 22 to challenge the assessment of the City's medical director, Dr. Hayes, that he was unable to return to work. We have held that the availability of procedures that provide some post-deprivation redress does not negate plaintiff's ability to maintain an action merely because a pretermination procedure was neither impossible nor impracticable. *Stana v. Sch. Dist. of the City of Pittsburgh,* 775 F.2d 122, 129 (3d Cir.1985).

> FN3. Because we conclude that the evidence objected to was admissible, the issue of whether the due process finding must be overturned because it resulted from inadmissible evidence is moot and will not be discussed further.

**\*\*4** In this case, the jury was charged with, and decided, that the appeal mechanisms proffered by the

80 Fed.Appx. 232  Page 5
**(Cite as: 80 Fed.Appx. 232, 2003 WL 22490388 (3rd Cir.(Pa.)))**

City did not effectively provide Bianchi the opportunity to challenge Dr. Hayes's medical determination *237 that Bianchi take forced leave. The District Court then found that the "plaintiff sustained his burden of proof on the issue at each stage of the litigation by highlighting the incongruity between existing regulations and Bianchi's situation." App. at 34.

We will not disturb the jury's finding that the procedures deprived him of due process, and we therefore reject the City's due process argument.

*C. Damages Awards*

The City finally objects to the District Court's upholding of the jury's damages award. We review the District Court's decision not to grant a new trial or vacate the damage award for an abuse of discretion. *Evans v. Port Auth. of New York & New Jersey,* 273 F.3d 346, 351 (3d Cir.2001).

The City argues that front pay can be justified only when the employer irreparably harmed the working relationship. However, in *Blum v. Witco Chem. Corp.,* 829 F.2d 367, 373-74 (3d Cir.1987), we stated that while back pay coupled with reinstatement is the preferred remedy in employment discrimination, "reinstatement is not always feasible, *e.g.,* because of irreparable animosity between the parties.... In such a case ... front pay must be used to make the plaintiff whole for future expected losses." The irreparable animosity does not have to originate with the employer for front pay to be appropriately awarded.

[3] The District Court in this case awarded front pay, finding that the relationship between the parties had been irreparably damaged due to a lack of mutual respect and trust, and that reinstatement of Bianchi as a firefighter would put lives in danger because of this damage. We review the District Court's assessment for abuse of discretion. *See Feldman v. Phila. Hous. Auth.,* 43 F.3d 823, 832 (3d Cir.1994). We see no reason to disturb the District Court's determination.

[4] The City also argues that it was error for the District Court to have decided the propriety of a front pay award after the amount had already been determined by the jury. The City neither formally objected to the jury charge on front pay nor to the Jury Interrogatories on Front Pay. Having failed to object at trial, it cannot do so on appeal.

The City finally contends that the front pay and back pay awards were excessive. In reviewing a jury verdict on damages, a district court has an obligation "to uphold the jury's award if there exists a reasonable basis to do so," and may not "vacate or reduce the award merely because it would have granted a lesser amount of damages." *Evans,* 273 F.3d at 351-52 (internal quotation marks and citations omitted). A new trial is warranted only upon the showing that the verdict amounted from passion or prejudice, and yet the size of an award alone is insufficient to prove passion or prejudice. *Id.* at 352.

**5** [5] The jury awarded Bianchi $512,500 as front pay. The jury heard that Bianchi's salary was $49,000 annually, App. 801, and could infer that at age 52, Bianchi had approximately thirteen more years of work left until his retirement. The award was not unreasonable.

The City argues nonetheless that Bianchi had a duty to mitigate damages, and that the District Court should have lessened his front pay award. The City had the burden of proof on mitigation, and it failed to examine Bianchi on his job prospects or future earnings potential at trial. *See Robinson v. Southeastern Pa. Transp. Auth.,* 982 F.2d 892, 897 (3d Cir.1993) (placing the burden of proving failure to *238 mitigate on the employer); *Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 889 (3d Cir.1984) (same). On the other hand, Bianchi put forth evidence that he could not and cannot find comparable employment. Bianchi testified that he could find work only as a tow truck driver, truck driver helper, and auto parts delivery person. His last employment paid $5.60 an hour with no medical benefits. In light of the City's failure to produce evidence, we cannot conclude that the District Court's refusal to reduce the front pay for the failure to mitigate constituted an abuse of discretion.

[6] The jury's back pay award of $225,000 for the period from October 1998 to February 2002 was similarly within reason. The City argues that the back pay award should have commenced on November 4, 1999, when Bianchi's paid leave expired, and not, as the jury found, on October 1998, when he asked for reinstatement. However, given a district court's obligation to uphold a jury award when there is a reasonable basis for doing so, this award must stand.

We have previously stated that such an award does not have to be determined with absolute precision. *See Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 156 (3d Cir.1999) ("The court may estimate what a claimant's earnings would have been without discrimination, and uncertainties are resolved against a discriminating employer."). The City refused to

80 Fed.Appx. 232                                                                                                                                    Page 6
**(Cite as: 80 Fed.Appx. 232, 2003 WL 22490388 (3rd Cir.(Pa.)))**

issue Bianchi medical clearance to return to work when he requested reinstatement, and so compelled him to use accumulated leave time whose benefit and value is impractical to measure. As such there was sufficient evidence in the record to justify the jury award for back pay.

Because the jury's front pay and back pay awards are sufficiently supported by the evidence and are not so excessive as "to shock the conscience of this court," *Feldman v. Phila. Hous. Auth.,* 43 F.3d 823, 833 (3d Cir.1994), we find no abuse of discretion by the District Court's decision to let them stand.

### IV. CONCLUSION

For the reasons set forth, we will affirm the District Court's judgment and orders.

80 Fed.Appx. 232, 2003 WL 22490388 (3rd Cir.(Pa.))

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works