# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
                                 )
        Plaintiff, )
                                 )
and )
                                 )
KATHY C. KOCH, )       Case No. WDQ-02-CV-648
                                 )
        Plaintiff-Intervenor, )
                                 )
v. )
                                 )
LA WEIGHT LOSS, )
                                 )
        Defendant. )
_____ )

## PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR A PRE-TRIAL CONFERENCE AND REPLY TO MEMORANDUM OF DEFENDANT IN RESPONSE TO PLAINTIFF EEOC'S MOTION TO BIFURCATE TRIAL AND DISCOVERY

Plaintiff Equal Employment Opportunity Commission ("EEOC") files the instant Response to Defendant's Motion For a Pre-trial Conference and Reply to Memorandum of Defendant in Response to Plaintiff EEOC's Motion to Bifurcate Trial and Discovery. For the reasons set forth below and in its previous filings, Plaintiff EEOC respectfully requests that the Court grant its Motion and enter the proposed Order Regarding Bifurcation and Discovery.

1.     **Punitive damages should be tried during the liability trial in this action**

        a.     Awarding punitive damages in Stage I ensures that the jury will consider the evidence relevant to that issue and avoids Seventh Amendment concerns

Punitive damages serve the goals of retribution and deterrence. See, e.g., Gore v. BMW of North America, 517 U.S. 559, 568 (1996). Under Title VII, the focus of punitive damages is the employer's state of mind when committing the violation. See 42 U.S.C. §1981a(b)(1)(punitive

damages warranted when employer acts with "malice or with reckless indifference to the federally protected rights"); Kolstad v. American Dental Ass'n, 527 U.S. 526, 534-35 (1999).

In a pattern or practice case, the issue is whether discrimination is the company's "standard operating procedure – the regular rather than the unusual practice." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 336 (1977). A pattern or practice is legally distinct from any individual's particular claim. See Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 876 (1984) (crucial difference between an individual and a pattern or practice claim is "manifest," in that "[t]he inquiry regarding an individual's claim is the reason for a particular employment decision, while 'at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking.'")(quoting Teamsters at 360 n.46). Once a pattern or practice of discrimination has been established, "[t]he force of [the pattern or practice] proof does not dissipate at the remedial stage of the trial. The employer cannot, therefore, claim that there is no reason to believe that its individual employment decisions were discriminatorily based; it has already been shown to have maintained a policy of discriminatory decisionmaking." See Teamsters, 431 U.S. at 361-62. If, in this case, the evidence establishes classwide liability in Stage I, Plaintiff EEOC would be entitled to obtain classwide relief with no further showing. Moreover, a legal presumption would be raised that persons who are part of the class are victims entitled to individual remedies. In Stage II, Plaintiff EEOC would only need to make the simple showing that any man for whom it seeks relief unsuccessfully applied for a job or was deterred from applying. See id. at 362. Each class member for whom EEOC makes out this burden may be denied individual recovery *only* if Defendant proves the person was, in fact, not hired for lawful reasons. Id. This will not, however, give Defendant a second bite at the Stage I pattern

or practice finding, because "the finding of a pattern or practice [will have] changed the position of the employer to that of a proved wrongdoer." Id. at 359 n.45.

Trying punitive damages at the same time as liability places the issue of the reprehensibility of Defendant's discrimination before the jury best able to determine it – the jury that heard the discrimination evidence and made the pattern or practice finding. The existence and operation of Defendant's corporate policy of discrimination will be borne out by direct evidence, statistical proof, other relevant circumstances, and anecdotal evidence of discrimination against enough individual men to bring "the cold numbers convincingly to life." See id. at 339. Stage I also will include Defendant's efforts to defeat Plaintiff EEOC's case. The Stage I jury will have a true feel for the reprehensible nature of the company's discriminatory state of mind and policy, and will be able to make an informed, intelligent decision on the issue of punitive damages. The Stage II jury will not be in nearly the same position.

Defendant in fact states that the "Stage II jurors ... will not have heard pattern or practice evidence ... and will therefore have no feel" for reprehensibility. See Memorandum of LA Weight Loss in Response to Plaintiff EEOC's Motion to Bifurcate Trial and Discovery at 15 ("Defendant's Opposition"). As Defendant also points out, leaving the punitive damages issue to the Stage II jury may present considerable Seventh Amendment problems because it would require the Stage II jury to hear evidence substantially similar to that heard by the Stage I jury. But more fundamentally, presenting the pattern or practice evidence twice would ruin the economy and efficiency served by proposed bifurcation. It would defeat the economy of resources that favors bifurcation and would be more wasteful than a unified Stage I trial on classwide liability and damages.

Numerous courts have come to this conclusion and recognized that it is entirely appropriate

for a jury to award classwide punitive damages contemporaneously with a finding of classwide liability, before a determination of individualized harm and remedies.  See Hilao v. Estate of Marcos, 103 F.3d 767, 780-81 (9th Cir. 1996); Jenkins v. Raymark Indus., Inc., 109 F.R.D. 269, 280-82 (E.D. Tex. 1985), aff'd, 782 F.2d 468 (5th Cir.1986); EEOC v. Dial Corp., 259 F. Supp.2d 710, 712-15 (N.D. Ill. 2003); Palmer v. Combined Ins. Co., 217 F.R.D. 430, 439-40 (N.D. Ill. 2003); In re Shell Oil Refinery, 136 F.R.D. 588, 593-95 (E.D. La. 1991), aff'd, 979 F.2d 1014 (5th Cir. 1992); Barefield v. Chevron, U.S.A., Inc., No. C 86-2427 THE, 1988 WL 188433, at *3-*5 (N.D. Cal., Dec. 6, 1988)(unpublished decision attached as Exb. 1); In re Federal Skywalk Cases, 95 F.R.D. 483, 485 (W.D. Mo. 1982).  Indeed, *this Court* has ordered the trial of punitive damages on a class-wide basis in the liability phase of bifurcated discrimination cases, with compensatory damages and allocation of punitive damages determined later.  See Buchanan v. Consolidated Stores Corp., 217 F.R.D. 178, 188-89 (D. Md. 2003)(Chasanow, J.); Kernan v. Holiday Universal, Inc., No. JH90-971, 1990 WL 289505, at *5-*7 (D. Md., Aug 14, 1990)(Howard, J.)(unpublished decision attached as Exb. 2).

Permitting the Stage I jury to award punitive damages on a classwide basis, rather than in Stage II remedial proceedings, also avoids unfairness.  Shifting the Stage I classwide determination of punitive damages to Stage II for a wholly individualized assessment could result in individual awards that may cumulate to an amount that is excessive; or could result in victims with substantially equal compensatory damages and back pay receiving substantially unequal punitive awards; or could result in victims in the latter part of Stage II receiving lesser punitive awards simply because the jury believes the Defendant has been punished enough. See Barefield, 1988 WL 188433, at *5.

4

b.    <u>An award of classwide punitive damages does not violate Due Process</u>

The core of Defendant's opposition to EEOC's motion to bifurcate is a speculative constitutional argument.  As its theory goes, *if* EEOC proves in Stage I that the company acted on a corporate policy of discrimination, the company *might* be able to prove that all but a handful of the hundreds of men subjected to the discriminatory policy were not discriminated against, which *might* then make the Stage I jury's punitive damages award *so* excessive as to be unconstitutional under the principles in <u>Gore v. BMW of North America</u>, 517 U.S. 559 (1996) and <u>State Farm Mutual Auto. Ins. Co. v. Campbell</u>, 538 U.S. 1513 (2003).  Defendant asserts that a pattern-or-practice defendant "cannot be found liable for punitive damages unless and until a judge or jury has awarded actual damages." Defendant's Opposition at 12.  However, these cases do not stand for that proposition.

In <u>Gore</u> and <u>State Farm</u>, the Supreme Court articulated guideposts for ensuring that a punitive award is not grossly excessive.  The guideposts ensure that an award of punitive damages does not offend the constitutional requirement that "a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty," <u>Gore</u>, 517 U.S. at 574, and ensures that the award does not constitute an arbitrary deprivation of property.  <u>See State Farm</u>, 123 S. Ct. at 1520.  The three guideposts are the degree of reprehensibility of the defendant's misconduct, the disparity between the harm suffered by victims and the punitive damages award, and the difference between the remedy and civil penalties authorized or imposed in comparable cases.  <u>See Gore</u>, 517 U.S. at 575; <u>State Farm</u>, 123 S. Ct. at 1520.  The most important of the three guideposts is the reprehensibility of the defendant's misconduct. <u>See State Farm</u>, 123 S. Ct. at 1521.

<u>Gore</u> and <u>State Farm</u> do not stand for the proposition that punitive damages may not be tried

and awarded until compensatory damages have been tried and awarded. These cases simply say that *one* of the guideposts for measuring the fairness of a punitive damages award is whether it is reasonable and proportionate to the harm. Importantly, a punitive damages award may be measured not only against the "harm" but also the "*potential* harm." Gore, 517 U.S. at 575 (emphasis added). The fact that the harm need only be likely and need not have actually occurred undercuts the argument that due process does not permit a punitive damages award to precede a determination of compensatory damages or back pay. See EEOC v. W&O, Inc., 213 F.3d 600, 616 n.7 (11th Cir. 2000) (noting that Gore permits courts to look to potential damages in weighing reasonableness of punitive damages, and stating that "[t]estimony showed that W&O had applied the policy to other women and would likely have continued to apply it in the future without this lawsuit"). The proper focus is on the defendant's conduct, and timing of the punitive damages assessment vis-a-vis the compensatory damages and back pay determinations is not critical. See Jenkins v. Raymark Indus., Inc., 782 F.3d 468, 474 (5th Cir. 1986) (relative timing of punitive and compensatory assessments not critical); Hilao, 103 F.3d at 781 (holding due process principles announced in Gore did not preclude punitive damages phase of trial from preceding compensatory damages phase); EEOC v. Dial Corp., 259 F. Supp 2d. 710, 713-14 (N.D. Ill. 2003) (stating that "State Farm does not say that a Phase I jury cannot return a verdict for punitive damages before compensatory damages have been awarded. Guideposts were laid down by the Court ... to ensure [reasonable and proportionate punishment]," and holding that same jury could make pattern-or-practice finding and award classwide punitive damages).

The most important guidepost—reprehensibility—should not be overlooked. The reprehensibility of a pattern or practice of discrimination flows from its very existence. Title VII

now is almost forty years old and firmly rooted in the public's consciousness. A pattern or practice means that a company has a made standard operating procedure of exactly that which Title VII prohibits, and the reprehensibility of such a policy is manifest. Plaintiff EEOC accordingly expects that its showing of malice or recklessness will be intertwined with the pattern or practice evidence, though they will not be identical in all respects.

In addition to Gore and State Farm, Defendant's fairness argument erroneously relies on Lowery v. Circuit City Stores, Inc., 158 F.3d 742 (4th Cir. 1998), vacated by 527 U.S. 1031 (in light of Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999)). In Lowery, the Fourth Circuit held, among other things, that the lower court did not abuse its discretion in deciding, on fairness grounds, not to allow punitive damages to be tried in a Stage I proceeding in that case. Lowery is not controlling for several reasons. The issue in Lowery was not constitutional fairness. Rather, the issue was whether decertification of a class under Rule 23 was an abuse of discretion, a rule which has no application to an EEOC action.[1] Lowery did not hold as a matter of law that punitive damages may never be tried on a class-wide basis. The Lowery court's decision not to upset the district court's ruling also rested in part on an erroneous belief that punitive damages depend on "egregious" conduct. After Kolstad, it is clear that the sole issue in determining whether punitive damages should be awarded is the employer's state of mind. See Kolstad, 527 U.S. at 534-35.

---

[1]    In General Telephone Co. of Northwest v. EEOC, 446 U.S. 318 (1980), the Supreme Court held that Rule 23 does not apply to EEOC enforcement actions because EEOC does not sue as a class representative but as a law enforcement agency with authority to sue in its own name to vindicate the public interest and secure relief for victims. Defendant admits this, yet in its Opposition at page 7 it implies that General Telephone may have less precedential application here because it is a 1980 case, decided prior to the availability of punitive damages in Title VII cases. However, the principles in General Telephone have not weakened with age, and the passage of the Civil Rights Act of 1991 has not called those principles into question. See EEOC v. Waffle House, Inc., 534 U.S. 279, 288 (2002); In re Bemis Co., Inc., 279 F.3d 419, 421 (7th Cir. 2002); EEOC v. Dinuba Medical Clinic, 222 F.3d 580, 587 (9th Cir. 2000).

7

Clearly, the Stage I jury is in the best position to assess the employer's mental state as to the class.

In one of the cases upon which Defendant relies, <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402 (5th Cir. 1998), the court assumed that Rule 23 would permit punitive damages to be awarded on a class-wide basis where members of the class were subjected to the "same discriminatory act or series of acts." <u>Id.</u> at 417. <u>Allison</u> involved the very different situation of a challenge to various policies and practices in different work settings over many years. <u>Id.</u> Plaintiff EEOC's case is akin to the type in which the <u>Allison</u> court assumed class-wide punitive damages would be appropriate. Of course, the other key reason <u>Allison</u> is inapplicable is that EEOC is not bound by Rule 23, and therefore EEOC should not be restricted by any court's notion of how punitive damages affect Rule 23 class certification. <u>See</u> <u>In re Bemis Co., Inc.</u>, 279 F.3d at 421 (Rule 23 does not apply to EEOC because it sues as a law enforcement agency and not representative of victims).

Not only are the fairness concerns raised by Defendant not persuasive, but adequate safeguards exist to ameliorate those concerns. The Court may order remittitur if punitive damages are grossly excessive in light of the compensatory damages and back pay ultimately awarded.[2] In addition, as discussed in subsection d., <u>infra</u>, proportionality can be ensured by awarding punitive damages on a pro rata basis. <u>Cf.</u> <u>Palmer v. Combined Ins. Co.</u>, 217 F.R.D. 430, 439-40 (N.D. Ill. 2003) (Rule 23(b)(2) certification of Title VII class action for only injunctive relief and punitive damages, reasoning that the purpose of punitive damages is not to make victims whole but to punish the employer, and in later stages of the case punitive damages can be distributed pro rata, or by some

---

[2]    In addition to punitive damages, Plaintiff EEOC is seeking monetary recovery for victims in the form of compensatory damages, nominal damages, front pay and back pay. Defendant's assertion in its opposition brief (page 6, n.2) that Plaintiff EEOC is not seeking any compensatory damages is incorrect. It is based on a mistaken reading of one of Plaintiff EEOC's interrogatory answers in which Plaintiff EEOC stated that it is not seeking compensatory damages for emotional pain and suffering of then-identified victims.

other formula). Moreover, Defendant benefits from the built-in protection against grossly excessive punitive damages awards provided by the statutory caps on damages, which this court may look to in deciding to remit any award that exceeds the statutory caps. See 42 U.S.C. §1981a(b)(3)(D).[3] The damages caps address the Gore concern that defendants need adequate notice of their potential exposure to punitive damages. See W&O, 213 F.3d at 617 (Section 1981a put employer on notice that it could be liable for punitive damages up to the statutory cap).

      c.     <u>Title VII permits an award of class-wide punitive damages without a previous finding of compensatory damages or back pay</u>

Section 1981a does not require that individual injuries to class members be determined prior to an award of punitive damages. The statute is silent as to the timing of when punitive damages can be awarded. See 42 U.S.C. §1981a. The statute does, however, focus on the employer's state of mind toward the legal rights of individuals. See 42 U.S.C. §1981a(b)(1); Kolstad, 527 U.S. at 535.

Defendant essentially argues that Title VII punitive damages should focus primarily on the number of victims and the amount of monetary losses each of them suffered. This approach undermines civil rights enforcement, and does not respect Section 1981a's focus solely on the mental state of the employer. See Paciorek v. Michigan Consol. Gas. Co., 179 F.R.D. 216 (E.D. Mich. 1998) (although some courts have held that punitive damages require actual damages to have been awarded, the contrary view is more persuasive, is supported by the national policy against discrimination and, most importantly, "there is nothing within the statute that conditions the

---

[3]     Defendant is incorrect in its assumption that "EEOC will claim before the Stage I jury that it is entitled to an award equal to the statutory maximum of $300,000 for each 'complaining party.'" Defendant's Opposition at 9. To the contrary, the law does not permit a jury to be informed of the caps on damages. See 42 U.S.C. §1981a(c)(2).

imposition of punitive damages upon an award of compensatory or nominal damages").

One of the underpinnings of Defendant's argument is its view that in the Fourth Circuit punitive damages may not be awarded under Title VII unless and until compensatory damages and back pay have been awarded. See Defendant's Opposition at 12-13. This is wrong. The Fourth Circuit has said this is an open question. In Corti v Storage Technology Corp., 304 F.3d 336 (4th Cir. 2002), a panel of the Fourth Circuit held that it was not plain error for the lower court to issue a judgment order for $0 in compensatory damages, but $100,000 in punitive damages and over $400,000 in back pay. The Corti court distinguished its prior decision in People Helpers Found. v. Richmond, 12 F.3d 1321 (4th Cir. 1993), in which it held that punitive damages are not recoverable under the Fair Housing Act when compensatory damages have not been awarded, because it would allow the recovery of a "windfall." Corti, 304 F.3d at 342. The Corti panel reasoned that People Helpers did not apply because the Fair Housing Act and, unlike Title VII, does not contain a provision for an award of back pay. Id. The Corti panel also stated that it did not need to reach the question of whether a punitive damages award may survive without any compensatory damages or back pay in a Title VII case because back pay had in fact been awarded. See id. at 343 & n.13. After Corti, this issue remains open in the Fourth Circuit. See id. at 341 (calling the issue one of "first impression" and declining to reach it).

One unfortunate irony of Defendant's approach is that punitive damages would turn on the number of victims who were able to mitigate their losses. However, that the class happened not to have suffered from large back pay losses says nothing about the company's malicious or reckless state of mind or the reprehensibility of its conduct. That mental state and conduct, if proven, should not be absolved of punishment simply because the victims of the discrimination were successful in spite of it. The Seventh Circuit recognized this in Timm v. Progressive Steel Treating, Inc., 137

F.3d 1008 (7th Cir. 1998). The Court upheld a jury award of punitive damages to a sexual harassment victim even though the jury did not award compensatory damages or back pay, stating that "[p]unitive damages are not inconsistent with the lack of compensatory damages. ... [Moreover,] the fact that the victim can find better-paying work and therefore does not receive back pay does not extinguish other remedies. ... *Extra-statutory requirements for recovery should not be invented.*" Id. at 1110 (emphasis added). See also Cush-Crawford v. Adchem Corp., 271 F.3d 352, 358-599 (2d Cir. 2001) (holding that Title VII punitive damages may be awarded absent actual harm because (1) courts' concern that juries otherwise would award unreasonably high awards does not apply in Title VII cases because Section 1981a places caps on damages; and (2) "there is some unseemliness for a defendant who engages in malicious or reckless violations of legal duty to escape either the punitive or deterrent goal of punitive damages merely because either good fortune or a plaintiff's unusual strength or resilience protected the plaintiff from suffering harm").

Defendant's approach suffers from another flaw. The effects of a policy of discrimination often are far reaching, and "are not always confined to those who were expressly denied a requested employment opportunity." Teamsters, 431 U.S. at 365. In our case, there likely will be many men who never even applied due to the chilling effect of Defendant's discriminatory practices, as well as victims who EEOC will not be able to locate despite its best efforts. Framing reprehensibility solely in terms of the financial harm to identified class members thus would result in a punitive award that is *under*-representative of the real effect of the pattern or practice of discrimination.

Defendant makes much of the fact that Teamsters was decided in 1977 and thus did not involve an award of punitive damages. However, there is nothing in Teamsters precluding a Stage I assessment of punitive damages. Indeed, the purposes for punitive damages align with those the Supreme Court ascribed to Stage I relief. The Teamsters Court stressed that a pattern-or-practice

11

of discrimination requires an "appropriate remedy" designed to ensure that the employer "eliminate[s] the[] discriminatory practices and the effects therefrom." Id. at 361 & n.47. The primary purpose for punitive damages – deterrence – is in agreement with these goals.

Moreover, punitive damages are very different from back pay, the monetary relief the Teamsters court left for Stage II. The primary purpose of back pay is to make the victim whole, which is why the employer's lack of "bad faith" is not determinative on back pay. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 417-22 (1975) (back pay awards serve both to spur employers to eliminate unlawful practices and to make victims whole; the absence of bad faith is not a sufficient reason for a court to deny back pay to a victim). By contrast, punitive damages depend "solely on an employer's state of mind," Kolstad, 527 U.S. at 535, and an employer may avoid vicarious liability for punitive damages where a manager's decisions are contrary to the employer's good faith efforts to comply with Title VII." Id. at 545. This is distinction is critical, particularly in an EEOC pattern-or-practice case brought to vindicate the public interest.[4]

    d.    Basic plan for determination of punitive damages during the liability trial

Plaintiff EEOC believes that the concerns raised by Defendant are properly addressed through trial of punitive damages, both liability and class-wide amount, during the liability phase of bifurcated proceedings. The following is a procedure for the trial and award of punitive damages:

---

[4] Defendant has cited the decision in Desert Palace, Inc. v. Costa, 123 S. Ct. 2148 (2003), as support for its assertion that "[e]ven where the fact-finder has already determined that the defendant engaged in a pattern or practice of discrimination, a plaintiff is not entitled to damages unless the defendant fails to prove that it would have treated the plaintiff similarly even if it had not had the discriminatory practice." Costa, however, is not a pattern-or-practice case, it is an individual mixed motive case involving an affirmative defense only available in that context, see 42 U.S.C. §§2000e-2(m) & 5(g)(2)(B), and says nothing about the issue before the Court, which is whether the Stage I classwide relief for a pattern or practice should include punitive damages if EEOC proves in Stage I that the requisite mental state has been satisfied.

(1)    The Stage I jury is informed that it may award punitive damages regarding the alleged pattern of practice if it finds liability and the other legal standards for an award are satisfied;

(2)    The jury is given standard instructions on punitive damages, the proof required under 42 U.S.C. § 1981a and Kolstad standards, and the factors they may consider when determining a class-wide amount;

(3)    The jury is informed of the number of class members and that after their finding of a pattern or practice violation all class members are legally presumed to be victims of discrimination.  The jury is also told that there may be additional class members who have not been identified to date but might also be victims of the pattern or practice.  The jury is then cautioned that although they have found a violation of Title VII regarding a class of victims and are permitted to award class-wide punitive damages based on that finding, the Defendant will have opportunity to prove at a separate trial that particular class members were rejected for lawful reasons.  The jury is instructed to assume that the class will be fully compensated for their losses, and that punitive damages to be paid by Defendant, if any is awarded by the jury, are to punish Defendant for illegal discrimination done with malice or reckless disregard for the class' federally protected rights and to deter future violations; and

(4)    After the Stage II remedial verdict, the Court will assess the actual harm proven in the case as a whole, as well as the harm likely to result from Defendant's conduct, and determine if the class-wide amount of punitive damages awarded by the Stage I jury is excessive in light of the factors articulated by the Supreme Court in Gore, such as reprehensibility and proportionality.  If excessive, the Court will reduce the class-wide punitive award through remittitur as required. After the Court performs any needed reduction, the punitive damages will be allocated to each victim (for whom Defendant did not meet its burden of proof in the remedial trial) separately. The allocation will be performed using a pro rata method that is based on each victim's fraction or percentage of the total back pay, compensatory damages, front pay, and other harm to the class.  Aggrieved males without back pay, compensatory damages, front pay, or the like but regarding whom Defendant has not met its burden of proof will receive an appropriate share of the class-wide punitive damages award that is less than the lowest punitive damages allocation for the class member with the lowest amount of back pay, compensatory damages, front pay, or other injury.  After pro-rata allocation, the Court also ensures that the monetary award to each individual class member comports with the $300,000 cap on regarding punitive and certain compensatory damages set forth in 42 U.S.C. § 1981a(b)(3)(D); or

(5)    As an alternative to (4), above, after the Stage II remedial verdict, the Court will determine whether the class-wide punitive award in Stage I exceeds the statutory cap set forth in § 1981a based on an aggregate of the number of class members for whom Defendant failed to meet its Stage II burden of proof.  If so, the award would be

reduced to the maximum allowable by law for the number of victims found.  Then the Court distributes those punitive damages among the class members pro rata, again making appropriate adjustments to conform to the statutory caps.

2.  **Defendant's proposed schedule and suggestion that the Court "cut off" Plaintiff EEOC's ability to secure remedies in the public interest is inappropriate**

In its opposition to Plaintiff EEOC's Motion to Bifurcate Trial and Discovery, Defendant submits its own proposed schedule. See Defendant's Opposition at 17-19.  Plaintiff EEOC does not agree with Defendant's proposal.  Read literally, Defendant's proposal does not permit Plaintiff EEOC to obtain any additional liability discovery other than that pertaining to the retaliation claims regarding Ms. Koch.  This is unfair and prejudicial, as to date Plaintiff EEOC has not been afforded an adequate opportunity to take discovery given the scope of the case and progress in discovery to date.  Also, the proposal does little to advance the progress of this case.  It does not offer a long-term schedule or define the issues for discovery and trial at various stages, thereby failing to settle the parties' and the Court's expectations regarding future progress of the case and allow for planning.

In addition, Defendant's proposal permits depositions not only of the EEOC's Stage I trial witnesses (who will be offered to present direct and compelling circumstantial evidence of discrimination), but also of 30% of the other class members identified by Plaintiff EEOC.  This is excessive.  If the Court is inclined to permit Defendant to take depositions of class members other than those identified by the EEOC as liability trial witnesses, Defendant should be limited to no more than the same number as are identified as trial witnesses.

The most objectionable portion of Defendant's proposed schedule pertains to its suggestion that the Court set "a cut-off date of March 1, 2004 for the EEOC to identify to [Defendant] the members of the class." Defendant's Opposition at 18.  This proposal is related to Defendant's allegation that Plaintiff EEOC's class is "perpetually in formation" and that Plaintiff EEOC has

14

proposed no cut-off date, which is untrue. Defendant's proposed cut-off date is unfairly prejudicial to Plaintiff EEOC, the public, and the aggrieved persons regarding whom the EEOC is seeking recovery in this action and is unsupported by law.

Defendant's demand that Plaintiff EEOC be required to identified all claimants by March 1st is not only unreasonable, it is impossible. During the administrative investigation of this case, Defendant produced approximately three boxes of employment applications to Plaintiff EEOC. In early 2003, Defendant produced to the EEOC an additional volume of application-related materials numbering some 35 boxes. These application forms, resumes, applicant logs, and other documents pertain to hiring incidents in 1997 to mid-2002. Plaintiff EEOC has also requested, but Defendant has not yet produced, application-related materials spanning from approximately mid-2002 to the present. While Plaintiff EEOC has not yet counted every single application, there are easily tens of thousands of persons. Sifting through all of these documents, identifying claimants, locating them (frequently they have moved), contacting them, and then determining whether inclusion is appropriate is a highly time-consuming, labor-intensive and expensive task. It is simply unrealistic to assume that this process could be completed by now. This is especially true given delays in the production of certain documents possessed by Defendant or third-parties, such as payroll records, which can inform the EEOC's decisions regarding potential class members.[5]

---

[5] Plaintiff EEOC's task of identifying victims has been further complicated by Defendant's record-keeping practices. Plaintiff EEOC alleges that Defendant has committed record-keeping violations under Title VII and its regulations by among other things discarding/ destroying application-related documents. Plaintiff EEOC believes that it will seek an order requiring Defendant to publish advertisements giving notice to class members of both the case and the potential for relief. Plaintiff EEOC also seeks relief for all males who did not apply because they were deterred by Defendant. While some may be identified from Defendant's telephone logs, targeted advertisements will also be necessary to locate these individuals.

More fundamentally though, Defendant's request that the Court cut-off Plaintiff EEOC's ability to identify aggrieved persons who may obtain relief in remedial proceedings is contrary to well-settled legal principles governing pattern or practice cases. Defendant's proposed early cut-off date ignores the basic nature of a pattern or practice case. As discussed in Plaintiff EEOC's memorandum in support of the instant Motion, the bifurcated case structure set forth in International Broth. of Teamsters v. U.S., 431 U.S. 324 (1977), and its progeny is the preferred method for conducting pattern or practice litigation under Section 707 of Title VII. As the Supreme Court held:

> At the initial, "liability" stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. . . . [T]he question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination.

Id. at 360-61. Thus, the pattern or practice framework that the Court announced in Teamsters was not intended to require full disclosure of *all* class members/claimants prior to a trial establishing a policy of discrimination. The Court's own discussion of remand in Teamsters confirms this proposition. See id. at 376 (stating hearings on remand would determine "the size and the composition of the class of minority employees entitled to relief" and "the number of identifiable victims and the consequent extent of necessary relief"). Early cut-off of class identification serves no valid purpose because under Teamsters the vast majority of class members will not testify at the liability trial but will wait until the commencement of separate remedial proceedings.

Moreover, in many cases (this case being one example) the government alleges that the pattern or practice of unlawful discrimination is on-going. The term "pattern or practice" implies a continuing course of conduct. To cut-off the ability of the government to identify victims of discrimination at such an early stage in the proceedings is to deny any relief to persons aggrieved

16

after the cut-off date, as well as anyone whom the government has been unable to locate before that date.  While Plaintiff EEOC agrees that at some appropriate time it should be required to identify Stage II remedial witnesses, requiring it to do so now unnecessarily and unreasonably restricts the agency's enforcement authority and arbitrarily trammels the remedial interests of victims of discrimination and the interest of the American public in seeing that federal law is enforced.

In recognition of these considerations, the history of federal court practice in pattern or practice cases verifies that there is no requirement that the government identify all aggrieved persons up front and before there has even been a finding of liability.  It is well-settled that the EEOC and the Justice Department are empowered to proceed with discrimination claims beneficial to classes of unidentified aggrieved persons. See, e.g., EEOC v. United Parcel Service, 94 F.3d 314, 318 (7th Cir. 1996); EEOC v. United Parcel Service,  860 F.2d 372, 374-76 (10th Cir.1988).  Furthermore, federal courts generally defer identification of the class for whom the government seeks relief until the remedial phase of a pattern or practice case. See, e.g., EEOC v. O & G Spring and Wire Forms Specialty Co., 38 F.3d 872, 879 (7th Cir. 1994); EEOC v. Murray, Inc., 175 F. Supp.2d 1053, 1059-60 (M.D. Tenn. 2001); U.S. v. City and County of Denver, 49 F. Supp.2d 1233, 1235 (D. Colo. 1999); U.S. v. City of Warren, Case No. 86-CV-75435-DT, 1993 WL 260681, at *5-*9 (E.D. Mich., January 15, 1993), aff'd, 138 F.3d 1083 (6th Cir. 1998)(unpublished decision attached as Exb. 3); U.S. v. Board of Educ. Caddo Parish, Civ. A. No. 94-0155, 1994 WL 792659 (W.D. La., Dec. 15, 1994)("[T]he government does not have the burden at the liability stage of affirmatively undertaking to identify all individuals allegedly affected by the policy.")(unpublished decision attached as Exb. 4); EEOC v. Riss Intern. Corp., No. 76-0560-CV-W-6, 35 FEP Cases 430 (W.D. Mo., June 10, 1982)(unpublished decision attached as Exb. 5); EEOC v. Federal Reserve Bank, 84 F.R.D. 337, 340

(W.D. Tenn. 1979). Private class action cases also are not bound by any requirement that all members of the class be identified by name prior to establishment of pattern or practice liability. See, e.g., Sledge v. J.P. Stevens & Co., Inc., 585 F.2d 625, 652 (4th Cir. 1978)(no error for district court to establish claim procedure for identification of potential claimants after liability but prior to remedial proceedings). Given that government Title VII enforcement authority is broader than claims available to private parties, see generally General Telephone Co. of Northwest, Inc. v. EEOC, 446 U.S. 318 (1980), there is no reason why the EEOC should be subject to a more restrictive rule.

Terminating Plaintiff EEOC's efforts to identify victims now would be grossly prejudicial to the American public's interest in redressing violations of federal law and the strong congressional policy favoring complete relief for victims of discrimination. See, e.g., General Telephone at 332 (noting "the strong congressional intent to provide 'make whole' relief to Title VII claimants[.]"). There is no necessity for such a measure. Contrary to Defendant's assertion, the agency has already proposed a cut-off date by which it must identify all claimants to be presented in Stage II proceedings.[6] The EEOC's proposed deadline for claimant disclosure will afford Defendant ample opportunity to depose these individuals in preparation for its attempt to meet its Teamsters burden of proof at the Stage II trial. The EEOC has identified 157 class members to date and anticipates that it will be positioned to identify an additional 75-100 in the very near future. The EEOC's proposed schedule sets forth deadlines by which EEOC must identify Stage I liability trial witnesses and does not permit any subsequently identified class member/claimant to testify at the liability trial

---

[6] In its proposed Order Regarding Bifurcation and Scheduling, the EEOC has suggested that the Court require disclosure of a final list of all persons for whom it seeks relief within fourteen days of entry of a Stage II scheduling order governing remedial discovery and other matters. See id. at 7. This list would include all class members currently identified in this action plus any additional claimants identified by the EEOC in the interim.

unless ordered by the Court and for good cause shown. <u>See</u> proposed Order Regarding Bifurcation and Scheduling at 4.  If Defendant's strategy is to offer persons it alleges to be unqualified in an effort to rebut the EEOC's direct, circumstantial, and statistical evidence of discrimination, the current (or soon to be) class members will serve that purpose because there is no reason to believe that they are unrepresentative of the anticipated class as a whole. These class members are not the best or the worst of the anticipated 300-400 class members; they simply happen to have been contacted and identified first.  Given that the vast majority of the aggrieved men will not be presented at the liability trial, and any men identified by Plaintiff EEOC after the Stage I witness identification date could not be used as a liability trial witness (absent good cause and an opportunity for Defendant to depose), Defendant suffers no prejudice if the class member identification process continues until the remedial phase of this action.  Thus, Defendant's proposal to truncate the EEOC's class member identification serves no legitimate purpose.  The sole interest served by the Defendant's proposal is the limitation of its own liability.  This is not an appropriate basis for a scheduling order.

**3.    <u>A separate trial of the retaliation claims is inappropriate</u>**

In Defendant's Opposition, it also seeks a separate trial of Plaintiff EEOC's retaliation claims regarding Plaintiff-Intervenor Koch.  Defendant cites Fed. R. Evid. 403 and asserts that this scheme is necessary to avoid prejudice resulting from presentation of sex discrimination pattern or practice evidence to the same jury that will decide the retaliation claims.  Defendant's argument is meritless.

First, Defendant's proposal is contrary to the principles of convenience, expedition and economy that courts must take into account when determining whether separate trials are warranted. Separate trials of the legally and factually intertwined sex discrimination and retaliation claims

would result in a waste of judicial and party resources.  It would necessitate empaneling a separate jury and conducting a separate trial, with all of the expense and time that a trial entails.  Much of the same liability evidence offered at any retaliation trial would be offered at the pattern or practice trial as well, resulting in cumulative presentation of evidence.  There would also be considerable prejudice to Koch (who resides in New York) and a number of non-party witnesses who have knowledge probative of both the retaliation and the pattern or practice hiring claims.  These witnesses would be burdened with appearing and testifying in two separate trials.

Moreover, a separate trial of the retaliation claims is not supported by Defendant's meritless claim of prejudice.  Federal Rule of  Evidence 403 permits exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury . . . ." Id. (emphasis added).  As the Advisory Committee Notes to Rule 403 state, "unfair prejudice" is "an undue tendency to suggest decision *on an improper basis*, commonly, though not necessarily, an emotional one." Id. (emphasis added).

Applying the aforementioned standard, Defendant's claim of prejudice is baseless.  As a threshold matter, Defendant's argument is rooted in an incorrect characterization of the retaliation claims, stating that Ms. Koch "claims she was terminated because she complained to [Defendant] about the company's alleged policy or practice of not hiring men." Defendant's Opposition at 19. This assertion is false because it is incomplete.  Plaintiff EEOC's retaliation claims are predicated on Koch's expressions of opposition to Defendant's pattern or practice of discrimination against male job applicants.  However, there are two additional categories of Title VII protected conduct that are also the basis for the EEOC's retaliation claims regarding Koch, namely, (1) Koch's efforts to interview, recommend, and otherwise provide equal employment opportunities to male job

applicants in disobedience of Defendant's discriminatory policy and (2) her reporting of Defendant's discriminatory practices to the EEOC.  Plaintiff EEOC alleges that Defendant's hostility to this series of protected activity culminated in harassment, disciplinary action, and discharge.

There is no risk of unfair prejudice here, let alone one that substantially outweighs the probative value of evidence concerning Defendant's pattern or practice of sex discrimination. Defendant attempts to avoid admission of evidence regarding its hiring policy by implying, but not stating, that it will stipulate that Koch engaged in § 704(a) protected conduct.  However, Defendant's argument ignores that evidence of its hiring policies, in the context of this case, is highly probative of a separate element of the retaliation case, viz., *Defendant's retaliatory motive and intent*. The evidence pertaining to Defendant's policy of sex discrimination against men is admissible in any trial of the retaliation claims regarding Koch because it is highly probative of the Defendant's motive and intent for the actions it took against Koch for refusing to comply with that policy and for complaining both internally and to the EEOC.  It is well-established that evidence of an employer's practice or policy of discrimination is highly probative, admissible proof of retaliatory motivation for taking action against persons who complain of those practices and policies. See Quinn v. Consolidated Freightways Corp., 283 F.3d 572, 577-79 (3d Cir. 2002); Hawkins v. Hennepin Technical Ctr., 900 F.2d 153, 155-56 (8th Cir. 1990); Ruffino v. State Street Bank and Trust Co., 908 F. Supp. 1019, 1040 n.38 (D. Mass.1995); Tang v. State of R.I., 904 F. Supp. 69, 76-77 (D.R.I.1995).  As the Eighth Circuit has stated, "[A]n employer's past discriminatory policy and practice may well illustrate that [its] asserted reasons for disparate treatment are pretext . . . . [A]n atmosphere of condoned sexual harassment in a workplace increases the likelihood of retaliation for complaints in individual cases." Hawkins, 900 F.2d at 155-56.  The evidence will show that

Defendant not only condoned sex discrimination against men, but made it a company hiring policy, making retaliation against those who opposed that policy much more likely.

Thus, evidence of a pattern or practice of discrimination that was the subject of protected opposition is highly probative of retaliation for engaging in that opposition. The nature of the protected conduct in this case makes such evidence even more critical than the usual case. First, evidence of Defendant's discriminatory hiring policy regarding men is exceptionally probative of its retaliatory motive for taking adverse action against Koch for her efforts to interview and recommend men. In order to establish that Defendant was in part motivated by Koch's disobedience of its policy against hiring men, Plaintiff EEOC will necessarily have to establish that there was such a policy. Without such proof, a fact-finder may be hard-pressed to find any retaliatory motivation, as Defendant denies having a policy of discrimination and has certain documents that purport to be a non-discrimination policy. Moreover, consideration of male candidates in a non-discriminatory fashion is not intrinsically harmful to a company and is mandated by law and by most employers as a matter of policy. Thus, that an employer would be motivated to take action against an employee for carrying out her hiring duties in a non-discriminatory manner seems implausible and certainly counter-intuitive, unless of course that employer has a policy requiring discriminatory hiring. Plaintiff EEOC and Koch should not be denied this highly probative evidence.

The evidence of Defendant's sex discriminatory hiring policy is also highly probative of Defendant's retaliatory motive for taking adverse action against Koch because she reported that policy to the EEOC. The existence of such a policy, and resulting broad potential liability, makes it far more likely that Defendant would have reason to retaliate against Koch than if her report to the EEOC was baseless, in which case the Defendant would have had little to worry about.

22

The five cases cited by Defendant do not support its argument. <u>Fleming v. County of Kane</u>, 898 F.2d 553 (7th Cir. 1990), involves a completely inapposite factual scenario and issue. In <u>Fleming</u>, it was the employer, not the plaintiff, who sought to introduce evidence regarding the legality of the employer actions that the plaintiff complained about. <u>Id.</u> at 558. The reason why the Seventh Circuit found no abuse of discretion in the district court's decision to exclude this evidence was its concern that the relevance was substantially outweighed "by the potential unfair prejudice which it could have had on the jury's perception of [the plaintiff's] right to exercise his first amendment right to speak out." <u>Id.</u> As the court noted, "[B]oth parties concede, that the extent to which [plaintiff's] allegations were true or false did not affect his right under the first amendment to raise those concerns." <u>Id.</u> Obviously, the instant case has nothing to do with the situation in <u>Fleming</u>. There is no risk of prejudice to Koch or any element of the retaliation claims regarding Koch. Furthermore, in this case Ms. Koch was subjected to retaliation not only for complaining, but also for carrying out her hiring duties in contravention of company policy requiring illegal discrimination, a fact that makes policy evidence much more probative in this context.

The other four cases cited by Defendant are also entirely unhelpful to its argument. <u>Easley v. American Greeting Corp.</u>, 158 F.3d 974 (8th Cir. 1998), and <u>Harvey v. District of Columbia</u>, 949 F. Supp. 874 (D.D.C. 1996), both involve plaintiffs with sexual harassment and retaliation claims whose harassment claims did not survive to trial and were not presented to the jury. In both cases, the employer either stipulated to the protected conduct element of the retaliation claim or admitted to the underlying discrimination. <u>See</u> <u>Easley</u>, 158 F.3d at 976; <u>Harvey</u>, 949 F. Supp. at 876-77. <u>McCue v. State of Kansas</u>, 165 F.3d 784 (10th Cir. 1999), and <u>Bianchi v. City of Philadelphia</u>, No. 02-2687, 2003 WL 22490388 (3d Cir., Nov. 4, 2003), also involve situations where a plaintiff with

23

a retaliation claim sought to introduce harassment evidence despite the lack of a harassment claim. See McCue, 165 F.3d at 789; Bianchi at *2-*3.  As Easley explained, evidence of specific instances of harassment is excluded in such cases because proof of the severity of the harassment does not make retaliatory motivation more likely and creates a risk that a jury will, out of sympathy or confusion, award relief to the plaintiff based on injuries incurred as a result of the harassment and not because of proof of the only claim presented, i.e., the retaliation. See Easley, 158 F.3d at 976-77. This is the reason why the McCue court identified evidence of harassing conduct that prompts a complaint as "very prejudicial." McCue, 165 F.3d at 789 (noting near impossibility of separating injury caused by harassment from injury caused by retaliation and risk that jury will improperly award damages for the former).  Also, allowing such evidence encourages mini-trials on issues that are not the subject of a pending claim and may confuse the jury and waste time. See id. at 977.

The present case stands on far different footing.  The plaintiffs in the aforementioned cases were alleging retaliation for internal complaints about harassing conduct that was not required by the employers' policies (i.e., it was not the employer's policy to allow its personnel to harass one another).  This case involves a policy of discrimination, Ms. Koch's defiance of that policy, and her report of that policy to the EEOC.  As previously discussed, these facts make the existence of the Defendant's discriminatory policy highly probative of retaliatory motivation.  More importantly, unlike the plaintiffs in the cases cited by Defendant, the underlying discrimination that was the subject of Ms. Koch's protected conduct was not directed at her.  She does not allege (nor could she) that she herself was the target of the sex discrimination against men that was the subject of her protected conduct/complaints; therefore, there is no risk in this case that the pattern or practice evidence will have "an undue tendency to suggest a decision on an improper basis[,]" see Fed. R.

24

Evid. 403 Advisory Committee Notes, due to sympathy for injuries flowing from unalleged claims or juror confusion about which claims are at issue regarding Koch or the source of her damages. Nor is there a risk of wasting time with presentation of claims not asserted, for there is a pending pattern or practice claim. Thus, the Rule 403 concerns highlighted by the aforementioned cases have no relevancy to this action. To the extent there is even a minute risk of jury confusion, this can be addressed without denying the EEOC highly probative evidence of its retaliation claims through crafting of appropriate jury instructions that clearly distinguish between the hiring claims and the retaliation claims and set forth the respective elements of each. Plaintiff EEOC is confident that the jury will understand the distinction and follow the law.

**4.    Defendant's motion for a scheduling conference**

Plaintiff EEOC does not oppose Defendant's motion for a scheduling conference in this matter. For the foregoing reasons, Plaintiff EEOC requests that the Court grant its Motion to Bifurcate Trial and Discovery and enter the proposed Order Regarding Bifurcation and Scheduling.

Respectfully submitted,

_____/s/_____

TRACY HUDSON SPICER (Bar No. 08671)
Supervisory Trial Attorney
CORBETT L. ANDERSON
Trial Attorney
RONALD L. PHILLIPS
Trial Attorney
EEOC-Baltimore District Office
10 South Howard Street, 3rd Floor
Baltimore, Maryland 21201
Telephone number: (410) 962-4628
Facsimile number: (410) 962-4270/2817

25