1993 WL 260681
61 Empl. Prac. Dec. P 42,271
**(Cite as: 1993 WL 260681 (E.D.Mich.))**

United States District Court, E.D. Michigan, Southern Division.

UNITED STATES of America, Plaintiff
v.
CITY OF WARREN, MICHIGAN et al., Defendants.

**No. 86-CV-75435-DT.**

Jan. 15, 1993.

DUGGAN, District Judge.

**\*1** On October 31, 1986, the U.S. Department of Justice, on behalf of plaintiff, filed its complaint alleging that the City of Warren (hereinafter "Warren" or "the City") engaged in a pattern or practice of resistance to the full enjoyment by blacks of their rights to equal employment opportunities without discrimination on the basis of race. (Complaint, ¶ 13). On February 14, 1991, this Court ruled that Warren violated Title VII of the Civil Rights Act of 1964, *as amended* 42 U.S.C. § 2000(e) *et seq.* (hereinafter "Title VII"), by maintaining preapplication durational residency requirements as prerequisites for municipal employment as a police officer or firefighter until 1984, and for all other municipal employment until 1986. On August 12, 1992, this Court ruled that Warren's recruitment practices prior to October 1986 for police and firefighter positions unlawfully discriminated against black applicants. Further, this Court ruled that Warren, to date, has failed to eliminate the unlawful effects of its pre-October 1986 discriminatory employment practices. In this Court's August 12, 1992 opinion, the Court instructed the United States to submit, within 30 days, a brief demonstrating "that there is a reasonable likelihood that it can prove that there are identifiable victims of Warren's pre-October 1986 discrimination." (August 12, 1992 Opinion, at 55). Both parties have submitted briefs on this issue.

The issue currently before this Court is whether the Department of Justice should be allowed to attempt to locate prospective victims of Warren's discriminatory practices. The government seeks to have Warren place advertisements in various local newspapers and other black-oriented media sources in an attempt to locate victims of Warren's discriminatory practices. The government also seeks to have Warren send notice to the black police and firefighter organizations in Detroit and to all black applicants to Warren since October 1986. (See Government's Brief in Support of Individual Relief, at 6, n. 5). For the reasons which follow, this Court shall permit the government to notify potential victims of Warren's discriminatory practices and Warren shall bear the cost of their notification.

Discussion

The Supreme Court, in *Albemarle Paper Company v. Moody,* [9 EPD ¶ 10,230] 95 S.Ct. 2362 (1975), addressed the discretionary power of the district court in awarding remedial relief under Title VII. The Supreme Court noted:

> It is true that backpay is not an automatic or mandatory remedy; like all other remedies under the Act, it is one which the courts "may invoke.... However, such discretionary choices are not left to a court's "inclination, but to its judgment" and its judgment is to be guided by sound legal principles."

*Id.* at 2370-71 (quoting *United States v. Burr,* 25 F.Cas. No. 14,692d, pp. 30, 35 (CC Va.1807) (Marshall, C.J.)). The Court held that a district court's decision regarding remedial relief must be measured against the purposes of Title VII. The Court stated that these purposes were " 'to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees.' " *Id.* at 2371 (quoting *Griggs v. Duke Power Co.,* [3 EPD ¶ 8137] 401 U.S. 424, 429-30 (1971)).

**\*2** The Court stated further:

> It is also the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination.... Title VII deals with legal injuries of an economic character occasioned by racial or other antiminority discrimination. The terms "complete justice" and "necessary relief" have acquired a clear meaning in such circumstances. Where racial discrimination is concerned, "the [district] court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as

well as bar like discrimination in the future."

95 S.Ct. at 2372 (citations omitted). From this "make whole" purpose:

> It follows that, given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.

95 S.Ct. at 2373 (emphasis added). The Eighth Circuit has held:

A presumption exists in favor of backpay; backpay may be denied only if there are compelling reasons justifying the denial. Consequently, the district court is required to state reasons for the denial in order that a reviewing court may determine if compelling reasons exist.

*E.E.O.C. v. Rath Packing Co.,* [39 EPD ¶ 35,956] 787 F.2d 318, 329 (8th Cir.), *cert. denied* [41 EPD ¶ 36,474] 479 U.S. 910 (1986). Backpay is just one of the forms of remedial relief which may be awarded by the district court, as listed in Section 706(g) of Title VII, 42 U.S.C. § 2000e-5(g).

Thus, as this Court weighs each party's arguments at this remedial relief phase of these proceedings, this Court recognizes that its discretion is limited by the purposes of Title VII, one of which is to make persons whole for injuries suffered due to a party's acts of discrimination--and that where, as here, a party has been found to have committed an act of discrimination, backpay (and other remedial relief) should be denied only for reasons which would not frustrate the purposes of Title VII. These principles apply with equal force to the situation of the non-applicant, as evidenced by the Supreme Court's holding in *International Bhd. of Teamsters v. United States,* [14 EPD ¶ 7579] 97 S.Ct. 1843 (1977):

> The denial of Title VII relief on the ground that the claimant had not formally applied for the job could exclude from the Act's coverage the victims of the most entrenched forms of discrimination. Victims of gross and pervasive discrimination could be denied relief precisely because the unlawful practices had been so successful as totally to deter job applications from members of minority groups. A *per se* prohibition of relief to nonapplicants could thus put beyond the reach of equity the most invidious effects of employment discrimination--those that extend to the very hope of self- realization....

\* \* \*

**\*3** ... To conclude that a person's failure to submit an application for a job does not inevitably and forever foreclose his entitlement to seniority relief under Title VII is a far cry, however, from holding that nonapplicants are always entitled to such relief. A nonapplicant must show that he was a potential victim of unlawful discrimination. Because he is necessarily claiming that he was deterred from applying for the job by the employer's discriminatory practices, his is the not always easy burden of proving that he would have applied for the job had it not been for those practices.

*Teamsters,* 97 S.Ct. at 1871.

42 U.S.C. § 2000e-5(e)

Warren argues that individual relief should be denied in the instant case because no individual who might come forward could have a timely claim for discrimination based on the City's pre-1986 recruitment for police officers or firefighters. (Warren's Br. in Opp. to Ind.Relief, at 12; Warren's Letter to this Court, dated Oct 21, 1992). To be timely, asserts Warren, a claim would have had to arise within the 180 days prior to the filing of the government's charge letter in the instant lawsuit. 42 U.S.C. § 2000e-5(e).

The United States filed this suit pursuant to 42 U.S.C. § 2000e-6(a), which provides:

> § 2000e-6. Civil actions by Attorney General.
> Complaint
> (a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described.

In March of 1974, the functions of the Attorney General under this section were transferred to the Equal Employment Opportunity Commission. *See* 42 U.S.C. § 2000e-6(c). 42 U.S.C. § 2000e-6(e) provides:

Subsequent to March 24, 1972, the Commission shall have authority to investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission. All such actions shall be conducted in accordance with the procedures set forth in section 2000e-5 of this Title.

On its face, section 2000e-6(e) makes all procedural limitations set forth in section 2000e-5 applicable to the Equal Employment Opportunity Commission. The issue remains open whether section 2000e-6(e), which makes all limitations contained in section 2000e-5 applicable to pattern and practice suits brought by the EEOC, applies to the Department of Justice as well.

**\*4** This Court appears to be faced with a question of first impression: whether, in a suit against a local government initiated by the Department of Justice under § 2000e-6(a) (which has already proceeded through the liability phase), the individuals at the remedial phase of the proceedings are subject to the 180-day provision contained in § 2000e-5(e). This Court believes that the question currently facing the Court is not a true limitations question. This action has already been initiated and litigated by the Department of Justice. This Court is now at the remedial phase of the proceedings. The only limitation in Title VII concerning remedial relief is contained in section 2000e-5(g), which provides that "[b]ack pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission." 42 U.S.C. § 2000e-5(g). Nothing contained in § 2000e-5(g) indicates that the individuals who may come forward and seek relief in the instant litigation, as opposed to individuals who initiate a lawsuit by filing a charge with the EEOC, shall be limited by § 2000e-5(e)'s 180-day charge-filing provision.

The Supreme Court's decision in *International Bhd. of Teamsters v. United States,* 97 S.Ct. 1843 (1977) lends support to the argument that the individuals who may come forward in the litigation at hand should not be subjected to § 2000e-5(e)'s 180-day charge-filing provision. Although the *Teamsters* Court did not reach this precise issue, the Supreme Court, after affirming the district court's finding that the government had proven a pattern and practice of racial and ethnic discrimination, held that every minority group member who had applied for a line-driver position after the effective date of Title VII would be presumptively entitled to relief. 431 U.S. at 362, 97 S.Ct. at 1868. The Supreme Court stated that the "Government need only show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination." *Id.* The Court did not hold that the individuals coming forward would be subject to Section 2000e-5(e)'s 180 day charge-filing requirement. Since the effective date of Title VII for private employers was July 2, 1965, individuals in *Teamsters* who had applied for positions more than *five years* prior to the filing of suit by the United States were deemed eligible for remedial relief.

In accord with the plain language of § 2000e-5(e) (which governs an individual's filing of an initial charge with the EEOC within 180 days of the alleged adverse employment action) and § 2000e-5(g) (Title VII's only limitation at the remedial phase of a proceeding), this Court rejects Warren's argument that § 2000e-5(e) limits all prospective victims from coming forward and claiming relief at this remedial stage of the instant proceedings.

Reasonable Likelihood

Warren argues that it is within this Court's discretion to decide not to award individual relief based on Warren's pre-1986 recruitment or its use of pre-hire residency requirements and that, in this case, the facts justify the denial of such relief. (Warren's Brief in Opposition, at 2).

**\*5** This Court, in its August 12, 1992 Opinion, held:
This Court believes that it may be very difficult, if not impossible, for the Government to meet [the burdens as set forward in *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) ]. Also, this Court has concerns as to whether or not the time, effort and expense that would be involved in any attempt to identify and prove the discrimination claims of individual victims is warranted--or, whether some alternative remedy would better serve the ends of justice.
However, the Court recognizes that the Government has interviewed many individuals in conjunction with

the case at bar. If such investigation, to date, has produced information that indicates that there is a reasonable likelihood that there exists identifiable individual victims that are entitled to relief as a result of Warren's pre-October 1986 discrimination, the Government should present such information to the Court.

(August 12, 1992 Opinion, at 54-55). At footnote 15, this Court stated:
> The Government contends that it should, at present, be entitled to proceed to the individual relief phase of this litigation and present evidence to establish the claims of individual victims and, in its post-trial brief, points to the testimony of Mr. Mainor and others during the trial of the liability phase of this litigation. The testimony referred to by the Government does not persuade this Court that there is a likelihood that proofs can be introduced which will persuade this Court that individual victim relief can be awarded. The testimony presented thus far, and referred to by the Government in its post-trial brief, would not allow this Court to make a finding, by a preponderance of the evidence, entitling individuals to relief. In this Court's opinion, it would be pure speculation, based on the limited evidence presently available, for this Court to conclude that any individuals are actual victims and are entitled to make whole relief.

Government's Response to Court's Concern

The government argues that the trial testimony of Arthur Mainor establishes that be applied to Warren for a janitor position in 1983 or 1984, that he was qualified for the position, and that he was not hired. The government argues that, under *Teamsters,* the government has met its burden to show that an alleged individual discriminatee unsuccessfully applied for a position for which he was qualified while the discriminatory employment practice--the unlawful preapplication durational residency requirement--was in effect. (Plaintiff United States' Brief in Support of Individual Relief, at 5). The government argues that under *Teamsters* the burden then shifts to Warren to demonstrate by a preponderance that Mainor was denied employment for lawful reasons. Because, contends the government, Warren has destroyed the relevant hiring records for the time period in question, "it is unlikely that Warren could meet its legal burden." (Pl.Br. at 5).

**\*6** The government then states that "[t]here is no reason to believe that Arthur Mainor is the only qualified black applicant who applied or attempted to apply for employment with Warren prior to October 1986." (Pl.Br. at 6). The government points to the testimony of Joan Gower, a former secretary to the City of Warren Police and Firefighter Civil Service Commission, where she stated that she recalled black individuals coming to City Hall to inquire about police or firefighter positions prior to 1986. (Pl.Br. at 6). The government further contends that "it is possible that there exist qualified black nonapplicants who could meet the burden of proving that they would have applied to Warren prior to October 1986 but for Warren's discriminatory practices." (Pl.Br. at 6).

Warren argues that neither the testimony of Mainor nor Gower establishes that there exist any individuals who were discriminated against because of the City's pre-1986 recruitment. Warren argues that the United States carries the burden of showing that there is at least one victim with a legitimate claim based on the City's pre-1986 recruitment program in the liability phase of trial before this Court may proceed to the remedial phase of this proceeding. (Warren's Brief in Opposition, at 11-12). Warren relies on *EEOC v. Sears, Roebuck & Co.,* [39 EPD ¶ 35,853] 628 F.Sup. 1264 (N.D.Ill.1986), *aff'd* [45 EPD ¶ 37,681] 839 F.2d 30 (7th Cir.1988). Warren's reliance in *Sears* is misplaced. *Sears* was a disparate treatment case. Unlike the policy in *Warren* which was facially neutral but discriminatory in impact, the policy in *Sears* was discriminatory on its face. In *Sears,* the EEOC argued that it was not required to identify specific victims of the discriminatory policies in the *liability* stage of the case in order to establish a *prima facie* case of discrimination. The court disagreed and wrote: "While the EEOC need not identify every victim of the policies, it does need to identify some victims or produce some valid direct or circumstantial evidence to show that Sears actually followed the policies in its treatment of employees." *Id.* at 1276.

In the instant case, liability has already been established. The government has met their *prima facie* burden of establishing a Title VII violation. The issue here is not whether Warren is liable for a Title VII violation; the issue is whether any individuals are entitled to remedial relief. Thus the reasoning in *Sears,* which applied to the liability phase of a disparate treatment case, does not apply in the case at hand. Likewise, *Warren's* reliance on *Durant v.*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*Owens-Illinois,* [23, EPD 31,118] 571 F.Supp. 710 (E.D.La.1980), *aff'd* [27 EPD ¶ 32,129] 656 F.2d 89 (5th Cir.1981), which held that the plaintiffs had failed to meet their burden of proving liability when they could not establish that anyone was affected by the challenged policy, does not apply to the instant case because Warren's liability has already been established.

***7** In *EEOC v. Andrew Corp.,* 54 EPD 140,166 (N.D.Ill.1990), the defendant argued that, because the EEOC had failed to identify any victims in the liability phase of the proceedings, back pay should be denied. Much like Warren's argument in the instant case, the defendant, Andrew Corporation, argued: "It is simply impossible to ascertain retrospectively, with any degree of certainty, who, from among Blacks in the general public, would have applied to and been hired but for word-of-mouth recruitment" 54 EPD at 63,784. The court rejected Andrew's argument and stated:

> This argument, which in effect contends that because Andrew's discriminatory recruitment policy was so successful that virtually no blacks applied for clerical positions during an eight year period[,] there should be no remedy, turns Title VII on its head.... Andrew cannot take advantage of an uncertainty caused by its own wrongdoing. Accordingly, its argument that this court should not attempt to identify victims of Andrew's discriminatory recruitment is without merit

*Id.*

For the above reasons, Warren's argument that, because the government has not identified any during the liability phase of these proceedings nor in its current brief in support of individual relief, this Court should not allow the government to attempt to identify victims of Warren's discriminatory practices, is without merit.

The government argues that this Court was correct in stating that the United States has already interviewed many individuals in conjunction with this litigation. The government points out, however, that those interviews were conducted by the United States in preparation for a trial as to liability and were not directed toward the individual relief stage of the instant proceedings. The government argues that their interviews did not reach "all or even a large segment of potential victims, *i.e.,* those black individuals who either applied, attempted to apply, or were deterred from applying to Warren from employment prior to October 1986 and who did not apply thereafter. Nor has there been general advertising for such victims."

The government contends that, accordingly, there is no reason as yet to believe that all potential victims have been given notice of their possible entitlement to relief. (Plaintiff United States' Brief in support of Individual Relief, at 7 n. 6). This Court finds the government's arguments persuasive.

The government asks that Warren be ordered to pay for the cost of general advertising for such victims. The relief the government seeks has been ordered in circumstances similar to the case at band. In *Catlett v. Missouri Highway and Transportation Commission,* 489 F.Supp. 929 (W.D.Mo.1984), the court ordered the defendant to pay for notice to the plaintiff class in a class action sex discrimination suit. The court stressed that "a number of cases have recovered that cost allocation is proper once the defendant's liability has been established." *Id.* at 951. The court also emphasized that a decision to shift the notice costs is not based on the defendant's ability to pay; rather, it is based on the fact that the liability of the defendant has already been established and the cost involved would be substantial. *Id.* at 952.

***8** In *EEOC v. Riss Int'l Corp.* 35 FEP Cases 430 (W.D.Mo.1982), the court ordered the publication of notice in newspapers and radio to persons who had applied for employment with defendant between six and eight years prior to the court's order. *Id.* at 435. The court ordered the defendant to pay all costs of advertising and mailing.

*Id.* at 436.

In *Meadows v. Ford Motor Company,* 62 F.R.D. 96 (W.D.Ky.1974), plaintiff sued on behalf of herself and other women similarly situated for her employer's alleged violation of Title VII where her employer required that all employees weigh at least 150 pounds. Although neutral on its face, the court found the practice discriminatory in impact. After finding the employer liable for violating Title VII, the Court entered its order allowing plaintiff to maintain the action for damages and attorney's fees as a class action. The court wrote:

> As to the expense of notifying the members of the class, it has generally been held that the initial cost must fall upon the plaintiff. However, this is true since usually the identity of the class and its notification are accomplished early during the proceedings, where there is strong doubt that the plaintiff will prevail. In the instant case, the class

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

action order has come very late in the proceedings, and at a time when the Court has already determined that the plaintiff and the members of her class are entitled to recover on their demands for injunctive relief. Therefore, the expense of sending the class action notices out must be both by the defendant ... In the instant case, the Court is not guessing as to the outcome of the action, but has already formulated the outcome and determined it. Only details as to the method of perfecting the remedies available to the plaintiff, insofar as hiring goes, remain to be accomplished by the Court.

 *Id.* at 101-02.   Likewise, in the case at bar, the defendants have already been found to have violated Title VII.

 In *Kyriazi v. Western Electric Co.,* [21 EPD ¶ 30,300] 465 F.Supp. 1141 (D.M.J.1979), the court noted that once there has been a finding of class-wide discrimination, the burden shifts to the employer to prove that a class member was not discriminated against. *Id.* at 1143 (citing *Franks v. Bowman* [11 EPD ¶ 10,777] 424 U.S. 747 (1976). The court ordered that the defendant bear the cost of providing notice to all class members. The court ordered that the defendant send notice to all class members whose addresses are known to defendant with a prepaid envelope and a Proof of Claim form. "The remaining class members will be notified by publication in six local newspapers for two consecutive weeks in the Sunday editions and three weekday editions. All costs of notification are, of course, to be borne by [the defendant]." *Id.* at 1144. Likewise, Warren should bear the costs of identify potential class members in the case at hand.

 **\*9** Once these potential class members come forward, the government shall conduct a preliminary review of the potential claimants to determine what claims, if any, the government believes are meritorious and what relief they believe appropriate. After the government's preliminary screening of the claims, Warren shall have an opportunity to review their determinations and to decide which, if any, it would challenge. Any determinations that cannot be settled shall then be submitted to this Court for resolution. (*See* Government's brief in support, at 6, n. 5).

Warren's Argument that the Testimony to Support
Individual Relief would be
Speculative and Inadmissible

 Warren argues that the testimony of alleged victims who might claim that they would have applied for employment with the City "but for its recruitment or but for its pre-hire residency requirement and were, therefore, 'deterred applicants' for jobs in the City of Warren before 1986 would be speculative, lacking in foundation, not admissible under any of the Federal Rules of Evidence, and specifically inadmissible pursuant to F.R.E. 403 as more prejudicial than probative." (Warren's brief in opposition, at 12-13). The Supreme Court, in *Teamsters,* held that non-applicants shall not be precluded from establishing their status as a victim under Title VII:

> A nonapplicant must show that he was a potential victim of unlawful discrimination. Because he is necessarily claiming that he was deterred from applying for the job by the employer's discriminatory practices, his is the not always easy burden of proving that he would have applied for the job had it not been for those practices.

 *Teamsters,* 97 S.Ct. at 1871. To declare that potential victims may not come forward and establish that they would have applied but for the discriminatory practices at issue due to Fed.R.Evid. 403 and those cases relied upon by Warren would be tantamount to a holding that non-applicants shall be foreclosed from relief. Such a holding would contravene the Supreme Court's holding in *Teamsters*. Accordingly, this Court finds Warren's reliance on Federal Rule of Evidence 403 unpersuasive.

Laches

 Warren argues that the doctrine of laches bars any individuals from pursuing individual relief. In *United States v. City of Warren,* 759 F.Supp. 355 (E.D.Mich.1991), this Court rejected Warren's argument that the government improperly waited twenty-five years, until 1986, to inform the City that it considered the residency requirement to violate Title VII. This Court held:

> Indeed, if Warren's argument were accepted as true, many employers, public and private, using employment practices having a disparate impact on Title VII-protected groups, could escape liability when sued by the Government for Title VII violations simply because the Government should have informed them, when they adopted the challenged practice, that it violated Title VII. Such an outcome is untenable.

 *Id.* at 364. Warren's argument is no more forceful at

this individual relief stage of the proceeding and, for reasons to follow, this Court rejects Warren's argument.

**\*10** Laches will bar a claim where there has been (1) unreasonable or unexplained delay by the government in bringing the proceeding; and (2) resulting prejudice to the employer. *EEOC v. American National Bank,* [16 EPD ¶ 8234] 572 F.2d 1173, 1180 (4th Cir.1978).

Warren argues that, under the first prong, the government's delay first in filing the lawsuit and then in waiting to identify victims entitled to relief is unreasonable and unexplained. (Warren's brief in opposition, at 26). This Court has already held that "this Court is not convinced that the Government waited an unreasonably long time before it filed its suit against Warren." 759 F.Supp. at 368.

As to Warren's argument that the government has delayed in identifying victims, the government has simply complied with the method of proceeding in a disparate impact case as set forth in *Albemarle Paper Co. v. Moody,* 95 S.Ct. 2362 (1975) and *Dothard v. Rawlinson* [14 EPD ¶ 7632] 97 S.Ct. 2720 (1977). The government met its burden of proof through use of statistical evidence. To establish its *prima facie* case, the government was not required, at the liability phase, to identify individual victims of Warren's discriminatory practices. (August 12 Opinion, 2-9, 46-48). Warren has come forward with no evidence that the government has engaged in unreasonable delay in locating individuals entitled to remedial relief.

Further, even if there was delay on the government's part, Warren has not established prejudice by the government's alleged delay. Warren argues:

> In this case, the City of Warren has been prejudiced. The Department of Justice is seeking back pay and other retroactive relief for a class of individuals who were allegedly victims of the City's use of durational preapplication residency requirements. It will be virtually impossible for the City to defend against a claim of an individual who asserts in 1992, that he or she would have applied for and gotten a job with the City in 1986, six years earlier, but for the City's residency requirement. The City simply will not be able to reconstruct the circumstances surrounding each individual's claim.

(Warren's Brief in Opposition, at 28). The *Andrew* court was faced with a similar argument and addressed it as follows:

> While Andrew makes a general claim that it is prejudiced because witnesses' memories have faded and supervisors have left, it has provided no evidence that such is the case here, or that memories faded because of the EEOC's delay. *See EEOC v. Massey-Ferguson, Inc.,* [23 EPD ¶ 30,932] 622 F.2d 271, 280 (7th Cir.1980) (it is entirely possible that supervisors would not remember hiring decisions for more than a few months after the decision was made, and if memories faded quickly, prejudice would not be due to EEOC's delay). *EEOC v. CW Transport, supra,* 658 F.Supp. at 1295 (that key CWT personnel do not know where the majority of the supervisory ex-employees are located is insufficient to establish material prejudice).

**\*11** 54 EPD at ¶ 40,166. Likewise, Warren has failed to establish that it will not be able to "reconstruct the circumstances surrounding each individual's claim" due to any inordinate delay on the part of the government. Accordingly, Warren's laches argument is without merit.

Compliance with Statute

Warren argues that their compliance with a state statute bars any claims for individual relief. This Court previously addressed Warren's similar argument, that compliance with a state statute constitutes a defense to Title VII liability, and held:

> With regard to Warren's argument that until 1984 it was required by state law, to wit, Act 78, to have a preapplication residency requirement for police and firefighter positions, this Court notes that such a requirement was not an absolute legal requirement. Under Michigan law, Warren did not have to adopt the police and firefighter residency requirement. *See* Mich.Comp.Laws Ann. § 38.517a (requiring that provisions of Act 78 cannot go into effect until a majority of electors in the municipality approve its adoption). Further, once having adopted Act 78, Warren could have sought its repeal. Mich.Comp.Laws Ann. § 38.518 (allowing for rescission of a municipality's adoption of the provisions of Act 78)). Additionally, Act 78 only applied to police and firefighter positions; it did not apply to other municipal jobs.
> In sum, the Court finds unpersuasive Warren's proffered business justifications for its use of the preapplication residency requirement.

759 F.Supp at 364.

Warren argues that this Court should exercise its discretion to deny remedial relief because Warren relied on Act 78. (Warren's brief in opposition, at 19- 20, 22). This Court has fully considered, and rejected, Warren's argument regarding its compliance with state law as grounds for denying remedial relief. In fact, Warren once again relies on *City of Los Angeles, Dep't of Water v. Manhart* 98 S.Ct. 1370 as support for this argument. This Court specifically held that *Manhart's* outcome should be narrowly construed and does not apply to bar relief in the case at hand. *See* 759 F.Supp. at 367 n. 15. Likewise, Warren *again* cites *Manning v. International Union,* [5 EPD ¶ 7964] 466 F.2d 812 (6th Cir.1972), *cert. denied,* [5 EPD ¶ 8463] 410 U.S. 946 (1973) and *United Steelworkers of America, Local 1104 v. United States Steel Corporation,* [5 EPD ¶ 8654] 479 F.2d 1255 (6th Cir.1973). These cases have previously been considered and distinguished by this Court. *See* 759 F.Supp. at 367. This Court finds Warren's arguments unconvincing.

Conclusion

For the reasons set forth above this Court shall grant the government's request that potential victims be notified. The government shall be responsible for preparing the requested advertisements and submitting them to appropriate media sources, as well as directly notifying any potential victims whose addresses are known. Upon doing so, Warren shall reimburse the government for reasonable expenses incurred by the government in locating prospective victims of Warren's discriminatory employment practices.

**\*12** An Order consistent with this Opinion shall be submitted for entry by the Court.

1993 WL 260681, 1993 WL 260681 (E.D.Mich.), 61 Empl. Prac. Dec. P 42,271

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works