35 FEP Cases 430
1982 WL 31059 (W.D.Mo.), 35 Fair Empl.Prac.Cas. (BNA) 430
**(Publication page references are not available for this document.)**

**H**

W.D.Mo., 1982.
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, AND FORT, INTERVENOR
v.
RISS INTERNATIONAL CORPORATION

**No. 76-0560-CV-W-6**

U.S. District Court, Western District of Missouri

June 10, 1982

Proceeding to determine remedies for EEOC following
35 FEP Cases 416, 525 F.Supp. 1094.

See also 35 FEP Cases 4??5 and 4??3

BNA Labor Relations Reporter Headnote - FEP Cases
CIVIL RIGHTS ACT OF 1964
1. Injunction - Retention of jurisdiction
C215.101 C250.781
W.D.Mo., 1982.
  Employer will be enjoined for initial period of five years from discriminating in hiring, with federal district court retaining jurisdiction to extend or modify injunction, where employer failed to alter pattern of "capping" black percentage of employment over period of several years.
EEOC v. RISS INTERNATIONAL CORP.
35 FEP Cases 430

BNA Labor Relations Reporter Headnote - FEP Cases
CIVIL RIGHTS ACT OF 1964
2. Hiring quota
C245.101
W.D.Mo., 1982.
  "Hiring goal" relief will not be imposed at present time on employer that discriminated against blacks in hiring, where employer's violations in recent years seem to be primarily attributable to legalistic error of

supposing that its duty is to employ blacks in proportion to their share in population, and record does not allow intelligible matching of applicants and job skills except in a few instances.
EEOC v. RISS INTERNATIONAL CORP.
35 FEP Cases 430

BNA Labor Relations Reporter Headnote - FEP Cases
CIVIL RIGHTS ACT OF 1964
3. Remedy - Hiring
C215.051
W.D.Mo., 1982.
  Employer that discriminated against blacks in hiring is ordered to establish priority hiring list for past discriminatees.
EEOC v. RISS INTERNATIONAL CORP.
35 FEP Cases 430

BNA Labor Relations Reporter Headnote - FEP Cases
CIVIL RIGHTS ACT OF 1964
4. Back-pay period - Hiring
C210.304 C215.011 C200.15
W.D.Mo., 1982.
  All persons who applied for positions during period commencing six months prior to date on which employer received notice of EEOC charge and continuing through date of ruling on liability are potential claimants for priority hiring or back pay, since this is period for which employer reasonably could have been expected to have preserved all application data.
EEOC v. RISS INTERNATIONAL CORP.
35 FEP Cases 430

BNA Labor Relations Reporter Headnote - FEP Cases
CIVIL RIGHTS ACT OF 1964
5. Back pay - Defense
C210.501 C200.15
W.D.Mo., 1982.
  Nonretention of records, delay in court proceedings, and difficulty in computation are not type of prejudice that justify denial of back pay.
EEOC v. RISS INTERNATIONAL CORP.
35 FEP Cases 430

BNA Labor Relations Reporter Headnote - FEP Cases
CIVIL RIGHTS ACT OF 1964
6. Remedy - Recruitment
C215.055

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

W.D.Mo., 1982.

Employer that discriminated against blacks in hiring is ordered to adopt advertisements and recruiting literature reflecting policy of equal employment opportunity, to give notice of vacancies to appropriate employment services and organizations involved in referral of blacks for employment, to post all vacancies in common areas, to give application forms to all persons who inquire in person about employment and to explain to those who inquire on phone how, when, and where to obtain application form.

EEOC v. RISS INTERNATIONAL CORP.

35 FEP Cases 430

BNA Labor Relations Reporter Headnote - FEP Cases
CIVIL RIGHTS ACT OF 1964
7. Remedy - Hiring
C230.401 C215.101
W.D.Mo., 1982.

Employer that discriminated against blacks in hiring is ordered to discontinue use of its vocabulary employment test.

EEOC v. RISS INTERNATIONAL CORP.

35 FEP Cases 430

BNA Labor Relations Reporter Headnote - FEP Cases
CIVIL RIGHTS ACT OF 1964
8. Records
C245.651
W.D.Mo., 1982.

Employer that engaged in hiring discrimination is ordered to maintain records of all applications for employment, all employment tests, interview notices, reference checks, investigatory reports on applicants, applicant flow log, all advertisements for employees, and all personnel files of employees who work for employer.

EEOC v. RISS INTERNATIONAL CORP.

35 FEP Cases 430

BNA Labor Relations Reporter Headnote - FEP Cases
CIVIL RIGHTS ACT OF 1964
9. Reports
C245.651
W.D.Mo., 1982.

Employer that engaged in hiring discrimination is ordered to prepare and submit, every six months, applicant flow log detailing whether applicant was hired, whether position was hourly or weekly salaried, and explanation for failure to hire if not hired, number of applicants and hires for hourly, weekly salaried, and hourly and weekly salaried work, number and percentage of blacks among such applicants and hires, list of all current hourly and weekly salaried employees with name, race, job title, department and salary, date of hire, and date placed in job title, number of current and hourly and weekly salaried employees and number and percentage of blacks among such employees, and date and minutes of meetings or conferences held on instructing those involved in hiring process.

EEOC v. RISS INTERNATIONAL CORP.

35 FEP Cases 430

BNA Labor Relations Reporter Headnote - FEP Cases
CIVIL RIGHTS ACT OF 1964
10. Remedy - Hiring
C215.051
W.D.Mo., 1982.

Employer that engaged in hiring discrimination is ordered to instruct those involved in hiring process of its obligations under remedial orders and to conduct annual conferences concerning these obligations, and it may form oversight committee to coordinate various provisions and obligations of remedial orders with EEOC officials.

EEOC v. RISS INTERNATIONAL CORP.

35 FEP Cases 430

BNA Labor Relations Reporter Headnote - FEP Cases
CIVIL RIGHTS ACT OF 1964
11. Remedy - Hiring - Back pay claim form
C210.114 C215.055
W.D.Mo., 1982.

Employer that engaged in hiring discrimination is ordered to compile list of potential claimants by mailing notice and claim form to all individuals who applied during period for which employer has retained applications, by placing advertisements in daily newspaper and two other papers, once a week for four weeks, and by arranging for spot announcements on two radio stations at cost not to exceed $1,500.

EEOC v. RISS INTERNATIONAL CORP.

35 FEP Cases 430

Robert G. Johnson, St. Louis, Mo., for plaintiff.

Arthur A. Benson II, Kansas City, Mo., for plaintiff-intervenor.

Rodger J. Walsh, Kansas City, Mo., for defendant.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Full Text of Opinion

SACHS, District Judge: -

By Memorandum and Order dated November 6, 1981, the Court granted judgment on liability against defendant and in favor of plaintiff and intervenor. As of this date, the Court has also fully determined the question of individual relief to the intervenor. This Order deals with the "second stage" of relief proceedings as set out in the November 6 ruling, that is, general injunctive and equitable relief warranted by the Court's findings, and initial identification of potential claimants who may be involved in the third, individual stage.

There would appear to be little substantive dispute as to appropriate general equitable relief, as based on the factual findings on liability, except as to possible imposition of quota hiring. In defendant's proposed stipulations and procedures, application methods, reporting requirements, and retention of jurisdiction have been discussed. While the proposals were in an attempt to settle all relief aspects of the case, and the EEOC did not agree to the plan, the Court finds such filings an appropriate starting place for this portion of remedial proceedings. Paragraphs 2 through 10 of defendant's proposals filed February 10, 1982, will be adopted as a part of this Order in respect to application procedures, company practice and self-regulation of Court orders, and reporting and retention of documents requirements. [FN1]

Defendant's proposals also included provisions for a "temporary" injunction and retention of jurisdiction for a period of two years following this Order. Based on the pattern and practice of discrimination found, and, as noted in the liability ruling, the failure to alter that pattern of "capping" the black percentage of employment by defendant over a period of several years, an injunction against discrimination is warranted for an initial period of five years, with retention of jurisdiction to extend or modify the injunction. The Court will retain jurisdiction for a period of five years to monitor the implementation of this Order and to "require additional specific action if necessary to eradicate any remaining discrimination." Peltier v. City of Fargo, 533 F.2d 374, 380, 12 FEP Cases 945 (8th Cir. 1976).

The Court declines at this time to impose quota or "hiring goal" relief. As pointed out in granting the initial remedial order in Cook Paint, such relief is often (perhaps generally) granted when a major employer or public body is involved. As in Cook Paint, when the record justifies such relief it will be granted in a case involving a smaller employer. Several distinctions between this case and Cook Paint exist, however, and on the present record the Court concludes that, as a matter of discretion, it should refrain from imposing such relief at this time while retaining jurisdiction to enter a more stringent order depending on future developments. [FN2]

The Court notes several reasons for caution in this case. As a general proposition, so-called group rights are not the focus of civil rights legislation. As noted in the Court's earlier ruling in this case, individual rights are primarily protected. The Court has required full compensation for the only clear victim of discrimination and has made provision for identifying and compensating other victims, even though they have not filed independent charges to protect their own rights.

In patterning relief against race discrimination, the Court has sought to draw analogies to the relief granted in unfair labor practice cases, where there has been discrimination because of union activities. The Labor Board generally obtains individual relief and an injunction against future violations of the law, punishable by contempt. To impose intrusive sanctions in addition to those readily granted here may be carrying deterrence beyond what may be required. It may be supposed that this employer has been sufficiently "burned" so that it will obey the law, as declared by the Court in its opinion of November, 1981 (assuming affirmance).

This employer's violations of law in recent years seem to be primarily attributable to a legalistic error, supposing its duty is to employ blacks in proportion to their share in the population. There assertedly was concern that reverse discrimination could be charged if the black proportion of the work force approached 20 or 30%. While the Court views the legal error as flagrant, the employer's motivation in recent years does not seem egregiously racist. It may be assumed that the substantive ruling of last November will materially change defendant's employment practices. If not, and if there are grounds for ruling that arbitrary preferences for white applicants persist, a proceeding for contempt

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

may be instituted or there may be a renewed request for hiring goals or quotas.

Cook Paint is different in several respects. The Court tends to consider discrimination because of sex (or age) rather easily correctible, and therefore had fewer reservations about causing undue complications for that employer by imposing a hiring goal minimum related closely to application rates. The Cook Paint goals will probably leave that employer with a ratio of employees in the disfavored class which is below that group's share of the general population. The Cook Paint goals are thus demonstrably "mild". The setting of goals in this case at double or triple the black share of the general population would be intrinsically more drastic.

Use of past application rates, as contrasted with hires, to show discrimination is a somewhat conservative methodology. Discrimination, if known, would tend to reduce applications, thereby alleviating the employer's burden of explanation. Use of future application rates to establish hiring goals would have the opposite tendency. Knowledge of such an order would tend to increase minority applications and thereby artifically increase the obligation of the employer. As in public education, there may be some danger of "tipping points" which would discourage white participation. The Court notes that in the Eighth Circuit's Omaha School District decision in 1975 there was reference to a school being perceived as unnaturally "black" if the percentage of black pupils exceeded 25%. See 521 F.2d 530, 547. While the Court will not permit an employer to use any such ceiling on employment, which would apparently be unprecedented, the Court feels some obligation not to serve as a positive agent of possible resegregation. The Court again warns defendant, however, against using a racial "cap".

A final reason for caution is that the record does not allow intelligible matching of applicants and job skills, except in a few instances noted in the prior opinion. From the limited showing made, the Court is not prepared to order conduct based on an assumption that black applicant job qualifications average out identically with the job qualifications of others, for all of defendant's various jobs. While such an assumption may prove to be true, and defendant may ultimately have the burden of disproving the assumption, the Court deems it preferable on the present record to simply order defendant to obey the law, subject to the penalties for contempt, and subject to the remedial measures appropriate for identifiable discriminatees.

A priority hiring list will be established to directly provide relief to past discriminatees. See, e.g., Ass'n Against Discrimination v. City of Bridgeport, 647 F.2d 256, 25 FEP Cases 1013 (2d Cir. 1981). Following completion of hiring from the list, it will be assumed that the permanent injunction against discrimination will be sufficient to enable blacks to obtain jobs without handicap, an assumption which may be reexamined under the retention of jurisdiction herein upon request with supporting documentation from the EEOC.

The dates of application to be considered in determining potential claimants to either priority hiring or back pay are disputed. Plaintiff contends that anyone who applied for a position within two years prior to filing of the EEOC charge by Fort should be eligible, based on the maximum statutory accrual period. 42 U.S.C. § 2000e-5(g). Plaintiff is correct that the section applies to all actions for which charges are filed after March 24, 1972. Stewart v. General Motors Corp., 542 F.2d 445, 453 n. 5, 13 FEP Cases 1035 (7th Cir. 1976), cited with approval in Wells v. Meyer's Bakery, 561 F.2d 1268, 1275, 15 FEP Cases 930 (8th Cir. 1977). However, there is a difference between recovering back pay accrued during that period based on ongoing discrimination, such as the failure to promote in the cited cases, and recovering back pay for acts of discrimination which occurred during that period. In a hiring case, the back pay cannot start accruing until the date of the refusal to hire. Plaintiff cannot recover for specific incidents of discrimination which could not have been the subject of the filing of a timely charge on the date this charge was filed. See, e.g., EEOC v. Akron Nat'l Bank, 497 F.Supp. 733, 742, 22 FEP Cases 1665 (N.D. Ohio 1980) (citing United Airlines v. Evans, 431 U.S. 553, 14 FEP Cases 1718 (1977)). Under the particular circumstances of the instant case, it is also deemed pertinent that, as discussed in the ruling on liability, Fort's initial charge dealt with discharge rather than hiring practices. The period for which the employer could reasonably have been expected to have preserved all application data and for which it had the "opportunity to gather and preserve evidence," Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 14 FEP Cases 1718 (1977), is six months (the required record retention time) prior to the first date upon which it was put on notice of the investigation, through the date of the ruling on liability. The class of potential claimants will therefore include all persons who applied for positions between February 1, 1973 [FN3] and November 6, 1981. As applications have been retained from September of 1975 through the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

present, the advertising suggested by plaintiff is found necessary only to attempt to locate those persons who may have applied between February 1, 1973 and September 1, 1975. Other than the issues which have been discussed, the parties' suggestions as to compilation of a priority hiring list do not substantively differ.

There has been no adequate basis presented or argued upon which to deny back pay to all possible claimants. As the Court stated previously, defendant, in individual back pay hearings, may be able to present specific evidence of prejudice as to that claimant. The nature of the prejudice argued to date however, e.g., nonretention of records, delay in court proceedings, and difficulty in computation, is not of the type which would bar a back pay award. The presumption is in favor of back pay, and the exceptions are narrow. Albemarle Paper Co. v. Moody, 422 U.S. 405, 10 FEP Cases 1181 (1975); Wells v. Meyer's Bakery, supra; Alexander v. Aero Lodge No. 735, 565 F.2d 1364, 1371, 15 FEP Cases 1413 (6th Cir. 1977), cert. den. 436 U.S. 946, 17 FEP Cases 897. The Court has expressed the preference for individualized remedies as to potential claimants due to the particular circumstances of this case. As pointed out by the Eighth Circuit in Wells v. Meyer's Bakery, the procedures outlined in Stewart v. General Motors Corp., supra, for determining the amount of back pay, do not "completely cast aside a formula for individualized relief." 561 F.2d at 1275. Methods will be set forth for compiling a list of potential claimants which will serve as the basis for later determination of the persons entitled to be placed on the priority hiring list and to back pay. The specific outlines for computation of back pay, and a determination as to whether appointment of a special master is necessary, will be made by further order of the Court upon completion of the notice and claim provisions when the number of potential claimants has been specified and after further negotiations of the parties in an attempt to settle the remaining aspects of this case in light of the Court's ruling and the general guidelines set forth herein. [FN4]

It is hereby ORDERED:

1. Defendant Riss International Corporation and its officers, agents, employees, and successors, and all persons in active concert or participation with it, are enjoined from engaging in any act or practice or maintaining any policy or rule that has the purpose or effect of discriminating against any applicant for employment because of the applicant's race.

2. Defendant shall make no changes in its normal recruiting methods as they were described at the trial in this case from March 6 through March 12, 1981 (for instance, at pages 921-22, 717-18 of the transcript), without giving prior notice to Plaintiff and receiving prior permission from the Court. Defendant shall forthwith adopt advertisements and recruiting literature reflecting a policy of equal employment opportunity for persons of all races and shall give notice of vacancies to appropriate employment services and organizations involved in the referral of blacks for employment.

3. Defendant shall post all vacancies in a common area in the Company to which all employees have access.

4. Defendant shall give an application form to each person who inquires in person about employment with defendant and explain to each person that assistance in completing the form is available upon request. Defendant shall also explain to each person inquiring by telephone or mail about employment how, when, and where he or she can obtain an application form. Defendant shall inform all applicants, at the time the application form is completed, of any requirement defendant may maintain for periodic renewal of the application in order to remain eligible for employment, and defendant shall consider all applications that do remain current under that requirement when filling a vacancy.

5. The defendant shall discontinue the use of its vocabulary employment test.

6. During the period the Court retains jurisdiction over this case, defendant shall maintain the following records:

(a) All applications for employment;

(b) All employment tests, interview notes, reference checks, and investigative reports on applicants;

(c) An applicant-flow log, kept separate from the applications, showing the name of each applicant, his or her race, the date of the application, and whether the application is for hourly or weekly-salaried work;

(d) All advertisements for employees; and

(e) All personnel files of employees who work for

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Defendant at any time during this period.

7. For every six-month period during the five years following the entry of this Order, defendant shall prepare and submit to plaintiff's counsel of record within 15 days after the end of the period the following:

(a) The applicant-flow log described in Paragraph 6(c), supra, with the following additional information concerning each applicant: (i) whether hired; (ii) if hired, the position given, whether the position is hourly or weekly- salaried, and the starting date; and (iii) if not hired, an explanation for the failure to hire.

(b) (i) The number of applicants for hourly and weekly-salaried work; (ii) the number and percentage of blacks among such applicants; (iii) the number of hires for hourly and weekly-salaried work; and (iv) the number and percentage of blacks among such hires.

(c) (i) The number of applicants for hourly work; (ii) the number and percentage of blacks among such applicants; (iii) the number of hires for hourly work; and (iv) the number and percentage of blacks among such hires.

(d) (i) The number of applicants for weekly-salaried work; (ii) the number and percentage of blacks among such applicants; (iii) the number of hires for weekly-salaried work; and (iv) the number and percentage of blacks among such hires.

(e) A list of all current hourly employees, as of the close of the period, with name; race; current job title, department, and salary; date of hire; and date placed in current job title.

(f) A list of all current weekly-salaried employees, as of the close of the period, with name; race; current job title, department and salary; date of hire; and date placed in current job title.

(g) (i) The number of current hourly and weekly-salaried employees, as of the close of the period; and (ii) the number and percentage of blacks among such employees.

(h) The date and minutes of any meeting or conference held, or any memorandum circulated, pursuant to Paragraph 8, infra.

8. Defendant shall instruct its officials, supervisors, and other employees involved in the hiring process of its obligations under this and any further Order of this Court. In addition, defendant shall conduct annual conferences with its officials, supervisors, and other employees involved in the hiring process concerning its obligations under this and any further Order of this Court and its compliance with those obligations.

9. Defendant may, and is recommended but not required to, form an oversight committee of its employees composed of its personnel director and various department heads to coordinate with local officials of the plaintiff the various provisions and obligations of the Court's Orders.

10. Defendant shall allow representatives of plaintiff, within normal business hours and with reasonable notice, to review defendant's compliance with this Order by inspecting and copying relevant books, records, and documents, interviewing employees on its premises, and inspecting its premises.

11. A list of potential claimants, for use in further proceedings in which entitlement to priority hiring and to back pay will be determined, shall be complied as follows:

(a) For all applicants between September 1, 1975 and November 6, 1981, a notice in the form attached hereto as Appendix A, together with a claim form attached hereto as Appendix B, [FN*] shall be mailed to the last known address of the applicant by defendant, by certified mail, return receipt requested, within thirty (30) days of the date of this Order. A postage-paid return envelope, addressed to the EEOC at its address of record herein, shall be enclosed. For each applicant whose notice and claim forms are returned as undeliverable, defendant promptly shall submit the applicant's name, social security number, and date of birth (if known) to plaintiff, which shall attempt to obtain a more current address for the applicant. If a more current address is located, plaintiff shall promptly provide it to defendant, and defendant shall send a notice and claim form to the applicant at the more current address. The deadline for filing claims forms to be filled in on the notice by defendant shall be no earlier than twenty (20) and no later than (30) days from the date of mailing. Defendant shall keep a record of the persons to whom notices are mailed, the date of mailing, and the date listed on that person's notice as the deadline for submitting a claim form, and provide copies of same to plaintiff upon completion of mailings.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

(b) As to applicants between February 1, 1973 and September 1, 1975, plaintiff shall place an advertisement of suitable size, not to exceed the equivalent of one-eighth page of a standard daily newspaper, and suitable content, similar to that of the notice mailed to applicants, once per week for four weeks in one daily newspaper of large circulation in the Kansas City metropolitan area, and once per week for four weeks in two other newspapers, either daily or weekly, as deemed appropriate by plaintiff in circulation for locating past applicants for employment with defendant. Publication shall commence no later than thirty (30) days from the date of this Order and shall require persons who may be potential claimants to respond to the advertisement by contacting plaintiff no later than forty (40) days from first publication. Plaintiff shall promptly send each person responding to the advertisement the notice attached hereto as Appendix A, together with a claim form. The deadline for submitting the claim form shall be no earlier than twenty (20) and no later than thirty (30) days from the date of mailing. Plaintiff shall keep a record of persons contacting it in response to the advertisement, the date upon which the notice and claim form are mailed, and the date listed on that person's notice as the deadline for submitting a claim form. Defendant shall pay all costs of advertising and mailing.

(c) Plaintiff shall arrange for spot announcements on two radio stations which it shall select as appropriate for locating past applicants for employment with defendant (between February 1, 1973, and September 1, 1975). The total cost of the announcements shall not exceed $1,500 and the latest broadcast shall not take place later than the last publication of the newspaper advertisement. Response to the announcements, and procedures to be followed, shall be the same as that for the newspaper advertisement.

(d) Within ninety (90) days of the date of this Order, plaintiff shall provide to defendant copies of all claim forms submitted. Plaintiff shall then compile a list of the persons who have submitted claim forms, their address, and their date of application with defendant, and submit that list to the Court.

(e) When filing the list of potential claimants with the Court, the plaintiff shall also file detailed suggestions, in light of the number of persons responding and the time periods involved, and other factors which may be apparent from the claim forms that would be pertinent to further proceedings, for conducting discovery,

appointment of a master if appropriate (or a U.S. Magistrate), and individual hearings, including order and burden of proof as to each claimant in light of this Court's prior rulings in this case. Defendant may respond within ten (10) days of the date of plaintiff's suggestions. Procedural and substantive guidelines for further proceedings will then be set forth by the Court, unless the parties are able to agree and settle the remaining questions involved.

13. The Court shall retain jurisdiction over this matter for a five (5) year period subsequent to the date of this Order.

   IT IS SO ORDERED.

> FN1 Recruiting and applicant procedures have been included as part of many remedial orders in discrimination cases. See, e.g., cases cited in EEOC v. Cook Paint, 26 E.P.D. ¶ 31,935, 35 FEP Cases 437 (W.D. Mo. 1980).

> FN2 Imposition of a hiring goal or quota has repeatedly been declared discretionary rather than mandatory. E.g., Dawson v. Pastrick, 600 F.2d 70, 77, 19 FEP Cases 1540 (7th Cir. 1979). The Court of Appeals for this Circuit suggests the existence of a checkerboard pattern by noting that "at times" such relief has been judicially mandated. EEOC v. Contour Chair Lounge Co., 596 F.2d 809, 813, 19 FEP Cases 818 (8th Cir. 1979). An explanation of the exercise of discretion seems appropriate, particularly where the relief is not granted.

> FN3 The notice of the charge was dated July 24, 1973, and can be presumed to have reached defendant at the very latest by August 1, 1973. At that time defendant should have had all employment records, including application data. from February 1, 1973 on.

> FN4 The parties appear to have made some progress in this direction. At least some effort by defendant has been made to agree on certain aspects of relief. Now that the Court has resolved the issues of quotas or hiring

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

goals and liability for back pay, the two major relief issues disputed, it may be expected that the parties could resolve all or most of the remaining (primarily procedural) questions to fully implement this Order. The parties may propose a settlement which would differ from the Court's guidelines, if, as is presumed, trade-offs can be made which will be supportable in terms of EEOC's general objectives and fairness to the debatable rights of individual claimants.

FN* [Ed. note: - Omitted.]

APPENDIX A

TO: All black persons who applied for work in the general office or head-quarters of Riss International Corporation at any time from February 1, 1973 through November 6, 1981. (If you are not black, please disregard this notice).

FROM: Equal Employment Opportunity Commission and Riss International Corporation

RE: Equal Employment Opportunity Commission v. Riss International Corporation, Civil Action No. 76-CV-560-W-6 (Western District of Missouri)

At the direction of Judge Howard F. Sachs, United States District Judge for the Western District of Missouri, we have been asked to contact those black persons who applied for work in the general office of Riss International Corporation at any time from February 1, 1973 through November 6, 1981. If you are black and applied for a job you may be entitled to back pay, an offer of employment, and/or other relief.

Judge Sachs has ordered this notice based on his findings on November 6, 1981, that Riss International Corporation violated Title VII of the Civil Rights Act of 1964 by discriminating against black applicants because of their race.

In order to learn whether you are entitled to any relief, you must complete the attached claim form and return it in the enclosed envelope no later than -. If you misplace the enclosed envelope, you may mail the claim form to:

Sharon J. Parsons

Equal Employment Opportunity Commission

625 North Euclid

St. Louis, Missouri 63130

If you have any questions about completing the form, you may contact Ms. Parsons at (314) 425-6535.

110

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works