**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION : <br>         Plaintiff, : <br> : <br> and : <br> : <br> KATHY KOCH : <br>         Intervenor/Plaintiff, : <br> : <br> v. : <br> : <br> LA WEIGHT LOSS : <br>         Defendant. : <br> : | CASE NO.: WDQ 02-CV-648 <br><br> JURY DEMANDED |

**REPLY BRIEF OF DEFENDANT LA WEIGHT LOSS
IN SUPPORT OF MOTION FOR PRE-TRIAL CONFERENCE AND
REGARDING EEOC MOTION TO BIFURCATE**

**There Is No Reason To Rule Now On A Bifurcation Plan Which Assumes a Trial of Punitive Damages Because The Discovery Record Will Show That LAWL Can Not Be Liable For Punitive Damages**

There is not one sentence in the EEOC's 23 page brief[1] to dispute the position of LA Weight Loss ("LAWL") that this case is fundamentally misconceived. The government is trying to punish LAWL not for conduct which is reprehensible, but merely for alleged conduct which recognizes the realities and limitations on appropriate interactions between men and women in carrying out a weight loss program.

The EEOC's brief in fact confirms the wisdom of our suggestion to defer until further discovery what should prove to be an unnecessary ruling on how to manage a trial involving a claim for punitive damages. Deferring the ruling will allow all the discovery necessary to show

---

[1] See Plaintiff EEOC's Response To Defendant's Motion For A Pre-Trial Conference and Reply to Memorandum of Defendant In Response to Plaintiff EEOC's Motion to Bifurcate Trial and Discovery filed February 3, 2004.

95485

that punitive damages simply do not belong in this case. That is because the conduct complained of cannot be considered malicious, reckless or otherwise reprehensible as to warrant a punitive award.

The discovery to date, viewed in light most favorable to the EEOC, shows that a few LA Weight Loss managers in a few narrow geographic areas, principally in the Mid-Atlantic area, believed the company did not want them to hire men. There is no evidence of a company-wide policy of not hiring men -- and no evidence at all of any such policy continuing after the company implemented rigorous human resource policies against discrimination. On the contrary, other than the fact that LA Weight Loss does not have a large percentage of male employees, there is no evidence of any discriminatory conduct in at least the last 4 years.

If further discovery yields no evidence to contradict the foregoing summary, the question will then be whether the EEOC can possibly establish that a pattern or practice of discrimination is "reprehensible" as to warrant punishment and serve the deterrent purposes of a punitive damage award.

The EEOC says that "the reprehensibility of a pattern or practice of discrimination flows from its very existence." (EEOC Br.6) For the EEOC, it therefore does not matter that a defendant may have believed in good faith that the aggrieved "class" truly lacked the qualifications or sensitivities required for the job; it does not matter that the defendant never manifested any ill-will or prejudice to the complaining parties; and it does not matter that the defendant put policies in place to prevent discrimination. For the EEOC, a company found to have engaged in a pattern or practice of discrimination is automatically liable for punitive damages.

Yet nothing could be more wrong as a statement of the law. To the contrary, for a punitive award to be allowed, there must be evidence of reprehensibility above and beyond evidence that a defendant intentionally engaged in a pattern or practice of discrimination.

This is clear on the face of the applicable statute, 42 U.S.C. Section §1981(a). Upon a showing of "unlawful intentional discrimination", subsection a(1) allows for recovery for back pay under section 706(g) of the Civil Rights Act, 42, U.S. C. § 2000e-5(g). But punitive damages are recoverable only under subsection b(1) and only upon a further showing that the defendant engaged in the intentional discrimination "with malice or reckless indifference to the federally protected rights of an aggrieved individual." As explained by the Supreme Court decision principally relied upon by the EEOC, Kolstad v. American Dental Association, 527 U.S. 526, 119 S. Ct. 2118 (1999), there is thus a two tiered structure of Section 1981(a):

> The very structure of § 1981(a) suggests a congressional intent to authorize punitive awards in only a subset of cases involving intentional discrimination, while § 1981(a)(b)(1) requires plaintiffs to make an additional "demonstrat[ion]" of their eligibility for punitive damages. Congress plainly sought to impose two standards of liability -- one for establishing a right to compensatory damages and another, higher standard that plaintiff must satisfy to qualify for a punitive award. 527 U.S. at 534, 119 S. Ct. at 2124.[2]

Thus the maliciousness or recklessness required for punitive damages has to go beyond the mere intent to engage in the discriminatory practice or the discriminatory practice itself. For this case that means that evidence of a practice of not hiring men, while arguably probative of

---

[2] The court explained the application of the two tiered structure by saying that the conduct engaged in did not have to be "egregious" in order to be eligible for punitive damages. But the malice/recklessness element required focusing "on the actor's state of mind" and pertained to "the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." 527 U.S. at 535, 119 S. Ct. at 2124. The court thus expressly recognized that "there will be instances where intentional discrimination does not give rise to punitive damages under this standard. 527 U.S. at 536, 119 S. Ct. at 2125. The court acknowledged one example, particularly relevant to this case -- that the employee may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense . . ." 526 U.S. at 536-7, 119 S. Ct. at 2125.

intentional discrimination, cannot in itself satisfy the second independent evidentiary requirement. Otherwise every pattern or practice of discrimination case would by definition be sanctionable with punitive damages. The additional maliciousness/recklessness requirements of section 1981(a)(b) would be rendered meaningless.

Similarly, it is clear from the Supreme Court's decisions that as a matter of due process, wrongful conduct lacking "reprehensibility" cannot be subject to a punitive award. In <u>Gore v. BMW of North America</u>, 517 U.S. 559, 575 (1996), the Supreme Court recognized that some wrongs are more "blameworthy than others"; and that even intentionally inflicted economic injury is not necessarily conduct that "is sufficiently reprehensible to justify a significant sanction in addition to compensatory damages." In the Court's most recent punitive damages opinion, <u>State Farm Mutual Auto Insurance Co. v. Campbell</u>, 123 S. Ct, 1513, 1520 (2003), the Court emphasized that punitive damages had to be evaluated in light of the degree of reprehensibility of the defendant's misconduct.

> "It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of other sanctions to achieve punishment or deterrence."

123 S. Ct. at 1521; citing <u>Gore</u>, 116 S. Ct. at 1589, 517 U.S. at 575.

It is no surprise to us that the EEOC tries to equate reprehensibility warranting punitive damages with nothing more than evidence of a pattern or practice of discrimination. It knows full well from the record of discovery thus far that there is no evidence of reprehensibility. There is at most evidence of a good faith belief by some of LAWL's mid-level managers responsible for only some regions of LAWL's operations during only some years prior to the year 2000 that men simply were not suited to serve as weight loss counselors for the company's ninety percent plus female clientele.

The fundamental integrity of our initial suggestion therefore remains. Let the EEOC and LAWL pursue some further appropriate measure of discovery. If we are correct that the resulting record will contain no evidence of maliciousness, reckless indifference or any other form of reprehensibility, then either the EEOC should withdraw the claim for punitive damages; or LAWL will seek summary judgment on the issue; or the court will be guided in its determination of how this case should be tried by the realization that punitive damages should not be the driving factor in that decision.

**Reply to Specific EEOC Points**

Having exposed the fundamental misconception in the EEOC brief, it remains only to briefly rebut several of its miscellaneous points:

<u>Fairness</u>. The EEOC says that it would not be fundamentally unfair to award class wide punitive damages in a stage one trial because the court can order a remittitur or assure proportionality in the later stage two trial. The EEOC conveniently overlooks that the stage two trial will likely be months or even a year or more after the stage one trial. Yet, as soon as the stage one award is made and throughout that ensuing interval, the potentially huge liability arising from the punitive award (the EEOC seeks $100 million) would have to be noted in LAWL's financial statements. That liability would cripple the company's credit worthiness and overall ability to function long before the "fairness" of the stage two proceedings could do it any good.

<u>Lowery v. Circuit City Stores, Inc., 158 F. 3d 742 (4th Cir. 1998) (Lowery I).</u>  Notwithstanding the EEOC's argument (Br. 7), the Fourth Circuit's ruling should be deemed controlling here on the "fairness" issue. The opinion was vacated only because it suggested that conduct on its face had to be "egregious" to be submitted to a jury for a punitive damages

determination, a ruling inconsistent with the Supreme Court's Kolstad ruling that conduct not egregious on its face could still be subject to punitive damages if accompanied by a malicious, reckless or otherwise reprehensible state of mind.  This was an issue entirely separate and distinct from the bifurcation ruling affirmed by the Fourth Circuit in Lowery I and at issue here -- whether it is fair to the defendant to bifurcate by calling for a class wide punitive damages determination  "without the entire universe of information, including actual harm to the individual class members and information regarding defendant's potential legitimate non-discriminatory reasons for its allegedly adverse employment actions."  McKnight v. Circuit City Stores, Inc., 168 F.R.D. 550, 553 (E.D. Va. 1996).  The Fourth Circuit's ruling that it was not fair was never undermined by Kolstad or the subsequent history of the Lowery litigation.  See Lowery v. Circuit City Stores, Inc., 206 F.3d 431, 437 (4th Cir. 2000) (Lowery II) (upholding the lower court's punitive damages award, rather than vacating it as the Lowery I court had done, in light of the Supreme Court's decision in Kolstad.)

    Due Process.  It is perhaps theoretically conceivable that some determination of whether LAWL should be liable for punitive damages -- the "fact" of punitive damages issue -- could be based on its state of mind in a stage one trial.  But due process and Supreme Court rulings in Gore and State Farm require that the amount of punitive damages must bear some proportion to actual damages.  The amount of punitive damages therefore could not be determined until a stage two trial.  It can not be award on a "classwide " basis in stage one.

    Seventh Amendment.  It is no answer for the EEOC to say (EEOC Br. 13) that eventually, after the "remedial" verdicts rendered by the stage two jury, the court will assess the actual harm proven in the case as a whole and determine if the stage one punitive damage award was excessive in light of considerations mandated by the Supreme Court on reprehensibility and

proportionality.  LAWL is entitled to have a jury make that determination in the first instance, and that it be made by the same jury which has a feel for the degree of reprehensibility that supposedly justified a punitive award in the first place.  Having the court do so would deny its rights under the Seventh Amendment.

<u>Deterrence</u>.  Punitive damages are supposed to deter.  The only evidence of any alleged pattern or practice will show that it stopped several years ago.  There is nothing left to be deterred.

<u>Cutoff for identifying "class members"</u>.  The EEOC says it should not face an imminent cutoff for identifying class members because it needs time to sift through the documents relating to "tens of thousands" of LAW job applicants.  It needs to do so as part of its ongoing "class member identification process." (EEOC Br. 15, 19).  This "class member identification process" is taking place without any court approval or review of the substance or the method of the EEOC's communications.  Representatives of the federal government are apparently calling people and having conversations with them to solicit their participation as "class members."  There is nothing to prevent the individuals called from being intimidated, confused or otherwise making uninformed judgments.  The calls are not to gather evidence of the alleged pattern or practice, because such evidence comes from discovery of LAWL itself.

The EEOC class member identification process therefore raises serious questions on whether the EEOC is engaged in improper communications.  In a similar context, even written communication with job applicants has been deemed improper.  <u>Hoffman v. United Telecommunications, Inc.</u>, 111 F.R.D. 332, 1986 U.S. Dist. LEXIS 27483 (Dist. Kan. 1986) (EEOC denied permission to send letters and questionnaires to potential claimants); see also <u>Hammond v. City of Junction City</u>, 2002 U.S. Dist. LEXIS 4093 (Dist. Kan. 2002) (plaintiff's

counsel disqualified for contacting defendant's employee before class was certified because he should have first sought guidance from the court before communicating with defendants director or any class member).

Far from being a process which the court should indulge for another year or more, this class member identification process should promptly brought to a halt. The EEOC "class action" should proceed with class members specifically identified as of an imminent date certain.

/s/
_____
David Landau
Larry Spector
David Gollin
Jennifer Blum Feldman
WOLF, BLOCK, SCHORR AND SOLIS-COHEN
1650 Arch St, 22d Floor
Philadelphia, PA 19103-2097
215 977 2049

Elizabeth Torphy-Donzella
Bar No. 10809
SHAWE & ROSENTHAL, LLP
20 S. Charles St.
Baltimore, MD 21201
410 742 1040

**Attorneys for Defendant LA Weight Loss**

Dated: February 20, 2004