IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| and | ) ) | |
| KATHY C. KOCH, | ) ) | Case No. WDQ-02-CV-648 |
| Plaintiff-Intervenor, | ) ) ) | |
| v. | ) ) | |
| LA WEIGHT LOSS, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF EEOC'S MEMORANDUM IN REBUTTAL TO DEFENDANT'S SUR-REPLY BRIEF REGARDING MOTION TO BIFURCATE**

Plaintiff Equal Employment Opportunity Commission ("EEOC") files the instant Memorandum in Rebuttal to Defendant's Sur-Reply Brief Regarding Motion to Bifurcate.

Defendant Has Mischaracterized the Evidence and Merits of this Action

As Plaintiff EEOC has previously stated in its Memorandum in opposition to Defendant's motion for leave to file its sur-reply, the agency has refrained from arguing liability issues in this case in the context of its Motion to Bifurcate because such argument is premature and irrelevant to the scheduling issues before the Court. Defendant has repeatedly made such arguments for the purpose of disparaging the EEOC's claims and encouraging the Court to defer decision on certain issues, such as the timing of trial regarding punitive damages. However, Defendant's arguments regarding what the future evidence will or will not show are speculative, as discovery is not yet complete, and simply not pertinent to how this action should be scheduled. The agency's claims are

clearly set forth in its pleadings, and as is true of any other scheduling matter, now is not the proper time to make arguments about the evidence, arguments that should be reserved for the summary judgment and trial stages of this case. However, in view of Defendant's persistent efforts to preview its version of the case for the Court, Plaintiff EEOC is compelled to offer a very brief rebuttal so as to avoid a false impression that EEOC acquiesces to Defendant's mischaracterizations.

      Defendant has repeatedly mischaracterized Plaintiff EEOC's claims by focusing solely on the position of weight loss Counselor. However, Plaintiff EEOC's case challenges Defendant's hiring practices regarding a wide-range of positions, including not just Counselor jobs, but also all other positions in its field operations, such as center-level managerial positions, other non-center level positions such as Trainer and Recruiter, and mid- and high-level managerial positions, such as Area Manager and Regional Manager. Defendant is well-aware of the scope of the agency's case.

      Defendant has also repeatedly mischaracterized the evidence in this case and ignored the fact that the record is not even close to being fully developed. For example, Defendant claims that the present record "viewed in [a] light most favorable to the EEOC, shows that a few LA Weight Loss managers in a few narrow geographic areas, principally in the Mid-Atlantic area, believed the company did not want them to hire men." Defendant's Reply Brief (sur-reply) at 2. This contention is simply disingenuous. Although discovery is not yet complete, the evidence yielded to date shows that numerous corporate officers and high-level management officials made statements while employed by the Defendant that the company does not and should not hire males, as well as other discriminatory remarks about male employees and job applicants as a group. Some examples of these officers and management officials include: (1) a Chief Operating Officer; (2) a Senior Vice President of Operations, Director of Operations and General Manager in charge of the Defendant's

entire field operations; (3) a Vice President of Training and Development, Director of Training, General Manager in charge of Tennessee, Indiana and Florida centers, and corporate trainer; (4) a Vice President of Operations for Philadelphia/Florida and former Divisional Manager and Regional Manager; (5) a Regional Operations Manager and traveling assistant to a Senior Vice President; (6) a Regional Manager in the Delaware-Maryland region; and (7) others.  Indeed, the present record evidence shows that Defendant has conducted training for new managers and trainers at its corporate headquarters in Horsham, Pennsylvania in which its personnel were instructed to refrain from hiring males.  A former Area Manager in New Jersey has even admitted, under oath, that she discriminated against male job applicants in conformity with instructions from various high-level management officials.  And this is an incomplete record.  The statistical evidence in this case is yet to be examined, and Defendant has not yet deposed many of the EEOC's witnesses, such as female former managers and male job applicants.  Both categories of witnesses will provide even more direct and circumstantial evidence of sex discrimination, past and present.[1]  Moreover, the evidence to date viewed in a light most favorable to Plaintiff EEOC shows that Defendant and its personnel knew that sex discrimination is unlawful, yet the company proceeded to discriminate in the face of that knowledge, did not retain records in accordance with the law, and now it and its current managerial witnesses simply deny the discrimination ever occurred.  Punitive damages will be the result.

<u>Scheduling is Based on the Law and the Pleadings, Not What is Best for Defendant's Credit Rating</u>

Defendant's reliance on <u>Lowery v. Circuit City Stores, Inc.</u>, 158 F.3d 742 (4th Cir. 1998)

---

[1] For example, as Defendant is well-aware from the investigative records that EEOC produced to Defendant during this litigation, a former Regional Manager from Virginia has already stated to government investigators that she was told by Defendant's General Manager at the time, Eileen Stankunas, that it was company policy to not hire males, and that this was pursuant to a verbal directive of Vahan Karian, Defendant's CEO and one of its owners.

(Lowery I), vacated by 527 U.S. 1031 (in light of Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999)) continues to be misplaced. After Kolstad, there simply is no support for the reasoning embraced by Lowery that punitive damages should be assessed in Stage II in order to take account of the "egregiousness" of the Defendant's conduct. Compare Lowery, 158 F.3d at 758-59 (affirming denial of class certification and proposed Stage I assessment of punitive damages based on speculation that Stage II might show that the company's actions were not "egregious enough to merit punitive damages"), with Kolstad, 527 U.S. at 535-36 (rejecting egregiousness standard). Defendant's reliance on Lowery v. Circuit City Stores, 206 F.3d 431 (4th Cir. 2000) (Lowery II) also is misplaced, as the issue of bifurcation quite clearly was not part of that decision. Thus, Defendant's argument amounts to an appeal to the Court to save it from itself, i.e., to base the scheduling ruling not on the law and claims pleaded, or the interest of the public in vindicating civil rights, but instead on what best serves Defendant's interest in being exposed to the least amount of punitive damages possible for its policy of unlawful discrimination. See Defendant's Reply Brief (sur-reply) at 5.

The Reprehensibility of Defendant's Policy of Discrimination Should be Gauged by the Stage I Jury, Not in Connection with the Scheduling Motion

Reprehensibility as referred to in Gore goes to the "enormity" and "gravity" of the Defendant's discrimination. See Gore v. BMW of North America, 517 U.S. 559, 575 (1996). If Plaintiff EEOC proves, as it expects, that Defendant "kn[ew] that it may be acting in violation of federal law," Kolstad 527 U.S. at 535, that proof will only enhance the Stage I jury's appreciation of the enormity and gravity of Defendant's pattern or practice. It will mean that Defendant did not simply engage in isolated acts that it knew to be illegal; rather it decided to establish discrimination that it knew to be illegal as standard operating procedure. The enhanced reprehensibility of a

standard operating procedure of such discrimination is simply a matter of common sense. This is not to say that a pattern or practice finding establishes that punitive damages are warranted automatically and as a matter of law. Plaintiff EEOC has never represented that it will not satisfy the requisite mental state in 42 U.S.C. §1981a and <u>Kolstad</u>. Indeed, Plaintiff EEOC plainly stated in its Reply Brief that EEOC's showing of the requisite mental state for punitive damages will not be identical to the pattern or practice evidence. Defendant has chosen to ignore this statement and the nuance it captures, instead seizing on the notion of reprehensibility as another avenue for making inappropriate and inaccurate arguments about the facts of the case.

In any event, the issue before the Court is not whether a pattern or practice of discrimination is reprehensible, but whether the Stage I jury that hears the pattern or practice evidence – for and against – is in a better position than the Stage II jury to determine the retribution and deterrence called for by Defendant's discrimination. Clearly it is.

<u>The Scheduling Issue Before the Court Does Not Present a Constitutional Double Bind</u>

Plaintiff EEOC's Reply Brief clearly provides alternatives to avoid the constitutional double bind Defendant has contrived. As the cases cited therein demonstrate, no constitutional impediment prevents a classwide assessment of punitive damages by the Stage I jury, the jury most able to determine punitive damages, both as to liability and amount. Remittitur is available to ensure that the amount of punitive damages actually awarded does not offend statutory or constitutional constraints. As evident from <u>Gore</u> itself, it is the court rather than the jury that performs this post-verdict due process evaluation.

<u>The Stage I Jury Will be Best Able to Fashion a Deterrent Punitive Award</u>

The evidence will permit a fact-finder to determine the reality in this case, viz., that

5

Defendant continues to engage in an on-going pattern or practice of sex discrimination. In any event, ongoing discrimination is not required for an award of punitive damages. Defendant's argument ignores the fact that punitive damages serve to deter repetition of the unlawful conduct and that the deterrent purposes served by punitive damages are both specific and general, which is to say, punitive damages are awarded to deter the wrongdoer *and similar violations by others*. See, e.g., City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 266-67 (1981). It also ignores the retributive purpose of punitive damages.

EEOC is Properly Identifying Class Members and Must Continue to Do So

Defendant has made the outrageous claim/insinuation without any factual or legal basis that Plaintiff EEOC has done something improper by contacting potential claimants. The agency has done nothing improper. It has truthfully and non-coercively contacted male job applicants to discover direct and circumstantial evidence of discrimination, which it will present at trial, and to determine the identities of those for whom it seeks relief in order to aid the Defendant in determining which job applicants it will need to depose in this case and whose situations will require Defendant to investigate and introduce proof at trial. Plaintiff EEOC is legally authorized to do this.[2] Indeed,

---

[2] Cf. Gulf Oil Co. v. Bernard, 452 U.S. 89, 99-104 (1981)(court-ordered restriction on party communications with potential class members not permitted unless narrowly-tailored and based on clear record of specific findings reflecting weighing of the need for restriction and potential interference with rights of parties). The two District of Kansas cases cited by Defendant, Hoffman v. United Telecomm., Inc., 111 F.R.D. 332 (D. Kan. 1986), and Hammond v. City of Junction City, No. 00-2146-JWL, 2002 WL 169370, 2002 U.S. Dist. LEXIS 4093 (D. Kan., Jan. 23, 2002)(unpublished), are inapposite. Both cases involve ex parte communications with either *current managerial employees* and/or mailings to *all current employees*, communications that those courts determined created a substantial risk of interference with the defendant-employer's business operations, see Hoffman, 111 F.R.D. at 335-36, or violated Model Rule of Professional Conduct 4.2, see Hammond, 2002 WL 169370 at *1,*3-8. This case does not present that situation. All of the potential class members in this case are *applicants* who are not now, nor have they ever been, employees of Defendant.

Defendant has known full well that the EEOC was contacting potential class members and previously reached a written agreement with the EEOC regarding the early stages of this process and the conditions of Defendant's own contacts with male applicants. Moreover, Defendant's allegation contradicts a basic premise of its argument that EEOC's attempts to locate and identify claimants should be prematurely cut-off. On the one hand, Defendant is saying that the EEOC should identify all class members by March 1st, but on the other hand it claims that it is somehow improper for the EEOC to make contact with class members. Defendant's argument does not withstand scrutiny.

                                              Respectfully submitted,

                                              /s/
                                      TRACY HUDSON SPICER (Bar No. 08671)
                                      Supervisory Trial Attorney
                                      CORBETT L. ANDERSON
                                      Trial Attorney
                                      RONALD L. PHILLIPS
                                      Trial Attorney
                                      EEOC-Baltimore District Office
                                      10 South Howard Street, 3rd Floor
                                      Baltimore, Maryland 21201
                                      Telephone number: (410) 962-4628
                                      Facsimile number: (410) 962-4270/2817