Not Reported in F.Supp.
24 Fair Empl.Prac.Cas. (BNA) 937, 25 Empl. Prac. Dec. P 31,699
**(Cite as: 1980 WL 340 (N.D.Ga.))**

United States District Court; N.D. Georgia, Atlanta Division.

**Equal Employment Opportunity Commission, Plaintiff**
v.
**Sears, Roebuck and Company, Defendant.**

**Civil Action No. 79-1957 A**

September 9, 1980

FREEMAN, D.J.

***1** This Title VII action, 42 U.S.C. § 2000e *et seq.,* alleges race discrimination in employment in three Sears facilities in the Atlanta area. The action is currently before the court on (1) defendant's motion for summary judgment, Rule 56, Fed. R. Civ. P., (2) defendant's motion to amend the March 14, 1980, order of this court denying defendant's motion for summary judgment and to stay proceedings, 28 U.S.C. § 1292(b), and (3) plaintiff's motion to compel the production of certain documents, Rule 37, Fed. R. Civ. P. Defendant also filed a motion for a protective order on July 7, 1980, which was subsequently withdrawn by stipulation of the parties on July 10, 1980. Although defendant requests oral argument on its motion for summary judgment and motion to amend, *see* Local Rule 91.3, we find that the issues can be adequately treated on paper, and will deny defendant's request.

### Summary Judgment

Title VII sets out express prerequisites to the filing of suits in federal court by the Equal Employment Opportunity Commission (EEOC). The Commission must first serve a notice of the written charge, made under oath or affirmation, on the respondent employer. Next, the Commission must investigate the charge, and make a determination whether there is reasonable cause to believe that the charge is true, and dismiss the charge if reasonable cause does not exist. If reasonable cause is found, however, the Commission must attempt to eliminate the alleged unlawful practices through conciliation. Only when conciliation fails may the Commission file suit in district court. 42 U.S.C. § 2000e-5(b), (f). Defendant has already moved this court for summary judgment on the grounds that the charge issued by the Commission in this case was invalid, and that the Commission failed to engage in conciliation of the charge. The court denied this motion on March 14, 1980. Defendant now moves for summary judgment on the ground that the EEOC failed to satisfy the intermediate step of conducting a proper investigation of the facilities and employment practices on which this suit is based.

### [*Investigation*]

It says the Commission failed properly to investigate the charges before filing a "bare bones complaint," and now seeks to flesh out its allegations through discovery. Defendant charges that the Commission had no factual foundation on which to base this lawsuit against the three facilities. It is contended that the Commission's failure to discharge its duty under Title VII is evident from its inability to respond to defendant's request for a full explication of the specific unlawful employment practices with which defendant is being charged. Moreover, the Commission failed to comply with its own compliance Manual which spells out the procedures to be used in investigating charges. *See* Plaintiff's Brief, Exhibit 1, EEOC Compliance Manual § 11.

The gist of defendant's argument is similar to the argument it made against plaintiff's conciliation attempts. Defendant claims that the EEOC only engaged in a national investigation of Sear's hiring practices, not in an investigation of hiring practices in the three Atlanta facilities. Because an investigation is a condition precedent to bringing suit, defendant argues, the Commission's failure to meet this condition requires dismissal. *See Truvillion v. King's Daughters Hospital* [22 EPD P 30,798], 614 F.2d 520 (1980).

***2** The EEOC argues that the grounds for its suit were fully developed during the investigation of defendant's employment practices. The Commission originally sent requests for information to Sears containing 544 detailed questions concerning Sears' employment practices at over 400 facilities. The number of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

designated facilities was later reduced to 168. With the help of personnel directors and unit managers were instructed on how to gather and compile the requested data. The data was then forwarded to the EEOC. *See* Plaintiff's Brief at 2, citing affidavit of Ray J. Graham, Sears' National Corporate Director of Equal Opportunity. The Commission analyzed the data and on April 19, 1977 issued Commission Decision 77-21, finding reasonable cause to believe that Sears was in violation of Title VII. Specifically, the EEOC found that statistics showing the applicants, hires, terminations, and promotions by race, sex, and national origin relating to the three facilities involved in this litigation demonstrated that Sears discriminated against black applicants in hiring at the facilities in the 180-day period prior to the filing of the charge. [FN1]

> FN1 Although Sears contends that only one out of the original 544 questions propounded by the Commission "even touched upon Atlanta," Sears does not argue that during the subsequent year-long investigation plaintiff failed to request and defendant failed to provide information relating to the three Atlanta facilities. *See* Affidavit of Aimee A. Gibson in support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, dated August 31, 1980.

After conciliation broke down and this suit was filed, the Commission contends it answered Sears' discovery requests seeking information as to the particulars of the complaint. The Commission set out quarterly statistics as to the proportional disparity of black applicants to hires, and enumerated the policies of defendant that the Commission believed to be the cause of the disparity. *See* Plaintiff's Brief at 4-7, citing answers to defendant's interrogatory 1, c. When Sears requested the Commission to "describe each unlawful employment practice alleged to have occurred during the 180 days immediately preceding the filing of [each] charge, and state [the particular of each charge]," the Commission responded that it was unable to reply "except to the extent that it has done so above." Defendant's Brief at 5 n.4, citing defendant's interrogatories 1,c(i),(ii); Plaintiff's Brief at 4.

It is the responsibility of the district court to determine whether the EEOC has satisfied the statutory conditions precedent to suit, including the required investigation of the alleged violation. *See EEOC v. National Cash Register* [12 EPD P 11,046], 405 F. Supp. 562 (N.D. Ga. 1975). The mandatory statutory prerequisites of charge, notice, investigation, reasonable cause determination, and conciliation that the Commission must follow before bringing suit have led to the rule that

**\*3** the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

*Sanchez v. Standard Brands, Inc.* [2 EPD P 10,252], 431 F.2d 455, 466 (5th Cir. 1970). Reviewing the contentions of the parties, this court is persuaded that the Commission's lawsuit is based on evidence revealed during the investigation of defendant's employment practices.

The Commission gathered and assessed data as to defendant's employment practices at a large number of facilities, and found statistics and other information indicating racial discrimination. Based on this material distilled from the broad-based investigation, the Commission eventually filed suit. The scope of the pleadings in this action charge race discrimination at the three Atlanta Sears' facilities; the scope of the investigation conducted by the Commission included Sears' employment practices as they relate to these same facilities. Thus, we do not have here a situation where the Commission's suit either is founded on insufficient information, or expands the litigation beyond the matters investigated. The factual allegations in the complaint correlate with the factual investigation pursued by the Commission. *See, e.g., EEOC v. Mallinkrodt, Inc.,* 23 EPD (CCH), P 30,842 (E.D. Mo. 1980) (judicial complaint limited to individual claims of race and sex discrimination where Commission did not investigate company-wide discrimination); *EEOC v. The Bailey Co.* [15 EPD P 7840], 563 F.2d 439 (6th Cir. 1977), *cert. denied* [16 EPD P 8148], 435 U.S. 915 (1978) (remark by defendant official not sufficient investigation of religious discrimination issue to support complaint); *EEOC v. Brown Transport Corp.,* 15 F.E.P. 1063 (N.D. Ga. 1975) (where only race discrimination charged, and investigation of sex discrimination not complete, complaint limited to race).

Although defendant targets its challenge as going to the "scope" of the EEOC's investigation, several of defendant's arguments in reality ask the court to test the sufficiency of the Commission's evidence. For example, defendant complains that because the EEOC

recently requested more employment statistics from defendant to "test" the "premise" of its complaint, the Commission has therefore admitted it has no factual foundation for its complaint. *See* Defendant's Supplemental Reply Brief at 1-2. It is not the duty of this court, however, to review the sufficiency of the evidence underlying the Commission's determination of reasonable cause. *See, e.g.,* EEOC v. E. I. DuPont de Nemours & Co. [7 EPD P 9324], 373 F. Supp. 1321 (D. Del. 1974), *aff'd* [9 EPD P 10,152] 516 F.2d 1297 (3d Cir. 1975). Plaintiff need not prove its case or complete discovery before filing suit. The law requires only that the suit be based on the matters covered in the Commission's investigation.

[*Means of Investigation*]

Finally, defendant contends that it is entitled to summary judgment because the investigation conducted by the Commission did not comply with the Commission's own rules and regulations. The investigation of charges processed by the National Programs Division, such as in the instant case, must comply with section 11 of the EEOC Compliance Manual. Defendant points particularly to the Commission's failure to issue administrative subpoenas, to conduct interviews, and to make on-site inspections. *See* Plaintiff's Brief, Exhibit 1, EEOC Compliance Manual at § 11.9. The Manual states that the

> **\*4** two major elements in any National Programs investigation will be (1) an analysis of extensive documentary material relating to the respondent's employment systems, and (2) an analysis of detailed statistics showing the results of these employment systems. Thus, National Programs respondents will be served a series of written requests for information....

*Id.* at § 11.9(c). As a supplement to the primary documentary material, the Commission may interview or depose respondent officials and other witnesses, make on-site inspection of respondent's facilities, and issue subpoenas when "all amicable means" of obtaining relevant materials breaks down. *Id.* at § 11.9(c),(d),(e).

We do not read these regulations to require the Commission to pursue each and every avenue of investigation available to it. In this case, the requests for information sent by the Commission to defendant yielded acceptable results and the necessary information. No statutory rights of defendant have been infringed by the Commission's failure to issue subpoenas, tour the job sites, or interview witnesses or employees. *Cf.* EEOC v. Western Electric Co. [8 EPD P 9655], 382 F. Supp. 787 (D. Md. 1974) (EEOC regulation requiring notice to employer that conciliation would not be resumed confers procedural right on employer and must be observed). Defendant is not entitled to summary judgment on the ground that the plaintiff failed to comply with Commission regulations or failed to investigate the charges underlying the complaint in this action.

**Motion to Amend**

This action is one of five cases originally filed by the EEOC against Sears in five different federal district courts. On March 14, 1980, this court denied defendant's motion for summary judgment. EEOC v. Sears, Roebuck and Co., 22 EPD (CCH) P 30,768 (N.D. Ga. 1980). Similar summary judgment motions involving many of the same issues had been filed by defendant in several of the other suits then pending. On May 22 and June 13, 1980, courts in the Middle District of Alabama and the Southern District of New York granted Sears' motion for summary judgment. In particular, both courts disagreed with this court's conclusion that the Commission's charge had been properly verified and that the Commission had complied with the conciliation requirement of Title VII. *See* EEOC v. Sears, Roebuck and Co. [22 EPD P 30,768], 22 F.E.P. 1479 (M.D. Ala. 1980); *EEOC v. Sears, Roebuck and Co.,* No. 79-5708 (S.D.N.Y. June 13, 1980). The EEOC filed a notice of appeal from the Alabama decision on July 30, 1980.

[*Appeal*]

Sears now requests this court to amend the March 14 order to permit an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Section 1292(b) provides for interlocutory appeal upon permission of both the district judge and the court of appeals:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order:

Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

**\*5** Due to the disagreement in the district courts on certain issues involved in this litigation, Sears asserts that the March 14 order involves controlling questions of law as to which there is substantial ground for difference of opinion, and that an immediate appeal may materially advance the ultimate termination of the litigation. Sears also requests that the court stay proceedings in this action pending the appeal.

Certification of an interlocutory appeal is a matter of discretion with the district court, and is granted only in exceptional cases. We do not find that this is an exceptional case in which interlocutory review is appropriate.

First, defendant's protestations to the contrary, an appeal at this stage of the litigation would not advance the ultimate termination of this case. It would, in fact, retard it. The questions ruled on in our March 14 order on which defendant seeks appellate review involved the compliance of the EEOC with certain statutory prerequisites to suit. Defendant argues that if our ruling is reversed on appeal, this court is ousted of jurisdiction over the case. *See* Defendant's Reply to Plaintiff's Memorandum at 2. The question of whether the EEOC complied with statutory requirements does not, however, affect the jursidiction of this court, but instead relates to whether plaintiff has stated a claim under the statute. The usual remedy for failure by the Commission to satisfy all statutory prerequisites is dismissal without prejudice or stay of the proceedings for not more than sixty days pending further efforts by the Commission. *See* 42 U.S.C. § 2000e-5(f)(1); *EEOC v. Pet, Inc.* [22 EPD P 30,716], 612 F.2d 1001 (5th Cir. 1980). If Defendant believes that further conciliation could hasten conclusion of this dispute, or preclude the necessity for this law suit, defendant may petition the court for a stay pending further conciliation. 42 U.S.C. § 2000e-5(f)(1). *See EEOC v. Canadian Indemnity Co.* [12 EPD P 11,043], 407 F. Supp. 1366 (C.D. Cal. 1976).

Second, we do not believe that the issues determined in our March 14 order are "controlling questions of law" within the meaning of section 1292(b). Although an appellate ruling in defendant's favor might postpone litigation for a time, the litigation would ultimately most likely be conducted in the same way. Reversal of our March 14 order would not substantially alter the course of the proceedings, or shorten the time needed for completion of this law suit. The scope, length, and complexity of the case would remain unaffected regardless of the outcome of the interlocutory appeal.

There is a strong federal policy against piecemeal appellate review. The focus in determining the propriety of interlocutory review should be on whether appellate intervention is necessary or desirable to speed the proceedings to a conclusion. *See* 9 *Moore's Federal Practice* P 110.22[2] (2d ed. 1980). This is not an exceptional case requiring intermediate appellate intervention, and this court will not certify our March 14 order for review, or stay proceedings in this case.

**Motion to Compel**

**\*6** The parties attended an in-chambers conference on July 18, 1980, to resolve a discovery dispute that had arisen as to what data maintained in Sears' personnel/payroll computer system would be provided to plaintiff on machine-readable tapes. The court signed an order on July 29, 1980, limiting the discoverable information to (1) employee name, (2) education, (3) prior experience, (4) initial job code and title, (5) date of hire, (6) part-time or full-time status at date of entry, (7) any change to full-time or part-time status, (8) facility of employment, and (9) race. Sears is to provide this information as of August 1, 1971. The court did not order production of social security numbers or job history. The court reserved decision, pending submission of briefs by the parties, on whether defendant would be required to provide the birthdate and sex of employees.

The Commission filed a motion to compel on July 31, 1980, requesting the inclusion of additional data on the tapes. Besides sex and birthdate, plaintiff requests that job history, date of termination, social security numbers, and time card management reserve group or management trainee status be included, and that defendant be required to provide information concerning employees incumbent on August 1, 1971.

[*Scope of Discovery*]

Sears objects both procedurally and substantively to the Commission's discovery requests. As a procedural matter, Sears contends that plaintiff's motion to compel is improperly brought, and therefore should be denied. Plaintiff should first request production under Rule 34,

Fed. R. Civ. P., before moving to compel. This court is in full agreement with Sears' contention that Rule 34 was designed to operate extrajudicially without the intervention of the court. [FN2] Defendant's argument loses force, however, when defendant then proceeds to object strenuously to the substance of plaintiff's discovery requests. Although we agree that plaintiff's motion to compel is premature, from the posture taken by Sears in regard to the information sought by plaintiff, it is evident to this court that defendant is not willing to voluntarily provide the data. In the interest of saving judicial time, therefore, we will rule on the substantive issues raised in plaintiff's motion.

> FN2 We remind the parties that motions to compel discovery filed in this court should comply with Local Rule 91.6 and be accompanied by a statement certifying that moving counsel has conferred with opposing counsel in a good faith effort to resolve the dispute.

The Commission contends that a valid statistical analysis of Sears' hiring practices requires the inclusion of all the data elements enumerated above. The basic premise appears to be that all factors that may be or are considered by an employer in making a hiring decision must be included in the analysis to insure that, if an applicant was rejected, it was on the basis of race rather than some other factor.

> For example, assume that blacks are 50% or 500 of 1,000 female applicants and 30% or 300 of 1,000 male applicants, assume that for some reason, such as a greater turnover in positions for which males showed a greater interest, males were hired at a rate in excess of their representation among applicants, and that there were thus 100 male hires of which 30 or 30% were blacks and only 50 females hires of which 25 or 50% were black. In such circumstances, blacks as a whole would appear to be disparately rejected because they constituted 40% or 800 of 1,000 applicants, but only 36.7% or 55 of 150 hires, even though figures differentiated by sex show that black males were hired at the same rate as non-black males and black females were hired at the same rate as non-black females.

*7 Plaintiff's Brief at 2-3. An analysis that includes the data requested would, plaintiff argues, be more probative of plaintiff's contentions and less open to challenges of inaccuracy.

1. *Sex*

Plaintiff argues that sex is one of the factors that should be included in the analysis. Sears objects to providing this data on the grounds (1) that gender-based discrimination is not alleged in this "one-issue" race discrimination case and therefore the sex of employees is irrelevant, and (2) that because discovery in the nationwide sex discrimination suit against Sears filed in federal district court in Chicago, Illinois, has been stayed pending a ruling on Sears' motion to dismiss, plaintiff should not be able to use this suit as a vehicle for obtaining sex-based employment information. We believe, however, that data as to the sex of defendant's employees is discoverable.

First, plaintiff has met its burden of showing that the gender information is relevant to producing a valid statistical analysis of possible race discrimination in Sears' hiring practices. Sears is correct in its statement that the Commission has not alleged sex discrimination, but it does not necessarily follow that information as to the gender of employees is irrelevant to this suit. The Federal Rules permit discovery of all matters relevant to the subject matter of the suit, and "the requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms." 8 Wright & Miller, *Federal Practice and Procedure: Civil § 2008 at 45 (1970)*. Plaintiff has made a sufficient showing of the relevancy of the requested sex information.

Second, we are hard pressed to see how the stay of proceedings in the sex discrimination suit filed in Chicago affects the discoverability of the gender of employees at three stores in Atlanta. Sears does not assert that the sex of its Atlanta employees is either privileged information or is, for some other reason, protected from discovery. We assume, and have no reason to think otherwise, that discovery was suspended in the Chicago suit to avoid the possible unnecessary expediture of time and money until the motion to dismiss is decided, not to protect defendant's files from legitimate discovery in either that or any other litigation. The information as to employee gender is discoverable in this case. [FN3]

> FN3 Plaintiff attests, and defendant does not dispute, that the inclusion of this or any of the other information requested by plaintiff in this motion is a relatively inexpensive process. In

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

fact, the cost of including the data requested by the EEOC on the tapes Sears has already agreed to provide is, apparently, minimal. *See* Plaintiff's Brief, Exhibit 1, Affidavit of Margaret P. Barry at P 7.

2. *Social Security Numbers*

Plaintiff claims it needs the social security numbers of employees to use as an identifying factor in obtaining and merging employee and applicant data from the computer system. A social security number is more reliable and consistent identifier than a name, plaintiff argues, because a name can be recorded in many variations and make retrieval of information by name difficult. For example, records referring to John Mason Smith may be entered under the name of J. M. Smith, John Smith, or J. Mason Smith. Plaintiff's Brief at 7-8. Sears argues that names alone are adequate identifiers, and the EEOC computer experts can compare the items to avoid confusion.

**\*8** The court originally excluded social security numbers from discovery at the July 18, 1980, in-chambers conference on the protestation by Sears that the Commission could use that data to seek other information about the employees from the Social Security Administration (SSA). Plaintiff contends that disclosure of information by the SSA is generally forbidden by federal regulations. *See, e.g.,* 20 C.F.R. § 422.428(b). We now conclude that defendant's objections to providing this information are insubstantial and do not preclude disclosure.

3. *Birthdate*

The Commission states it needs the birthdate of employees to use as another variable factor, like sex, that should be included in plaintiff's statistical analysis. Plaintiff also argues it needs birthdates to use as it would a social security number to identify each individual. We do not believe, with the variables already included in the analysis and the availability of social security numbers to use for identification, that plaintiff is entitled to birthdate information.

4. *Job History and Date of Termination*

Plaintiff contends that the job history of employees at the three facilities will show whether black applicants are hired at an allegedly low rate because Sears limits the black composition of various job categories, and is important to the analysis because positions may be filled through promotion and transfer as well as hire. Promotion and termination data will also reflect the way blacks are treated as employees, which will be relevant to the way blacks are treated with respect to hiring. Further, because Sears does not have formal job ladders, this data is necessary to assess the promotion potential of entry-level jobs. Sears argues that this information is irrelevant to a simple hiring case, and that plaintiff should have sought this information during its presuit investigation.

Although the job history information plaintiff requests is more tangential to the hiring allegations than, for example, sex, we do not believe it is so divorced from the subject matter of this suit that it is irrelevant within the meaning of Rule 26, Fed. R. Civ. P. Plaintiff has made a showing of the value of the information, and defendant should provide it to plaintiff.

5. *Time Card Reserve Group and Management Trainee Status Designations*

Plaintiff seeks this information for much the same reason it seeks job history: employees hired for regular positions but with Reserve Group or Management Trainee status indicates that they are being groomed for higher level positions. The racial composition of hires given this status could reflect discrimination. Defendant counters that less than 1% of Sears' hires at the three Atlanta facilities are assigned to these groups, and therefore the sample size is so small it has little validity.

On a discovery motion it is not the duty of either the parties or this court to determine the admissibility or assess the probative weight of the material sought. This information is, we believe, relevant and discoverable.

**\*9** 6. *Information Concerning Employees Incumbent on August 1, 1971*

At the in-chambers conference on July 18, 1980, the court limited the scope of plaintiff's discovery to data collected since August 1, 1971. This restriction was based on the two-year limitation period on back pay awards, *see* 42 U.S.C. § 2000e-5(g), and the expense involved in restructuring hiring practices and decisions back to 1965, the limitation date for injunctive relief. Plaintiff claims information as to incumbents as of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

August 1971 would be useful to its analysis "to produce a coherent picture of the movement of employee populations at the facilities." Plaintiff's Brief at 10.

This court is aware that antecedent information may influence or help explain present practices. Nevertheless, the temporal scope of this suit is already broad, and the data plaintiff requests is so old that it would probably be of limited consequence in fashioning injunctive relief. Balancing the burden on defendant against the benefit to plaintiff, we will not alter our prior ruling restricting discovery to data collected since August 1, 1971.

Accordingly, defendant's motion for summary judgment is Denied. Defendant's motion to alter the March 14, 1980 order and to stay proceedings is Denied. Plaintiff's motion to compel is Granted in part and Denied in part, pursuant to the terms of this order.

It is so Ordered.

1980 WL 340 (N.D.Ga.), 24 Fair Empl.Prac.Cas. (BNA) 937, 25 Empl. Prac. Dec. P 31,699

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works