# WolfBlock

1650 Arch Street, 22nd Floor, Philadelphia, Pennsylvania 19103-2097
Tel: (215) 977-2000 ■ Fax: (215) 977-2740 ■ www.WolfBlock.com

David L. Gollin
Direct Dial: (215) 977-2335
Direct Fax: (215) 405-3935
E-mail:   dgollin@wolfblock.com

March 19, 2004

**VIA FACSIMILE AND
FIRST CLASS MAIL**

Pamela J. White, Esquire
Ober Kaler, PC
120 East Baltimore Street
Baltimore, MD 21202-1643

Re:   <u>EEOC and Koch v. LA Weight Loss</u>

Dear Pamela:

As we discussed, in an effort to resolve the current discovery dispute in this matter, we are providing you with additional supplemental discovery responses on the issues and topics set forth below. This information is being provided based on our negotiations. You have requested certain of this information in the form of written responses rather than deposition testimony. The topics enumerated below are based on issues you have raised during our efforts to resolve this dispute. In providing this information, LA Weight Loss does not waive its position that it has previously fully and completely responded to all non-objectionable discovery requests propounded upon it by Ms. Koch.

1.   **LA Weight Loss's Policy On Equal Employment Opportunity in 1997 and 1998 Prior to Dissemination of Written Policies and Procedures**

In 1997 and up until September 1998, prior to LA Weight Loss's ("LAWL") employee handbook, the following was the Company's position and procedure on EEO matters.

The Company had a policy of equal employment opportunity. All employment decisions, policies and practices were in accordance with applicable federal, state and local anti-discrimination laws. Furthermore, the Company did not engage in or tolerate discrimination (including any form of harassment) on account of a person's sex, age, race, color, religion, creed, sexual preference or orientation, marital status, national origin, ancestry, citizenship, military status, veteran status, handicap or disability or any other protected status.

DSB:959894.1/LAW024-142120

Pamela J. White, Esquire
March 19, 2004
Page 2

This policy of non-discrimination and anti-harassment applied to all of the Company's officers, managers, supervisors, employees and applicants.

If an employee believed that any officer, manager, supervisor, subordinate, co-worker, client, franchisee, agent or other non-employee of the Company discriminated against, harassed or retaliated against him or her with regard to any term or condition of their employment in violation of the Company's EEO policy, the employee was to report the alleged violation to his or her Location Manager, Area or Regional Manager or to the Corporate Human Resources designee, who between 1997 and April 1998 was Sandi Miller, and from April, 1998 on was Karen Siegel. Employees were to speak with whichever person he or she felt most comfortable, whatever the reasons.

Prior to Koch's complaint in April 1998, there was only one complaint of discrimination of which the Company is aware. Management engaged outside counsel to investigate that complaint (See Documents and Information produced re: Sandra Brown Talavera). Beginning in the April 1998, Complaints were investigated by Ms. Siegel. Ms. Siegel's standard investigation procedure was to compile all relevant employment related documents, review those documents, speak with involved parties, reach a determination as to the merit of the complaint, and then, after a prompt and thorough investigation, reach a determination and take appropriate corrective measures, if necessary, up to and including termination of employment. Ms. Siegel did not begin memorializing the details and results of any investigations until the Fall of 1998.

In addition, the Company did not tolerate any coercion, retaliation, intimidation or harassment directed against any employee who registered a complaint in good faith or who, in good faith, served as a witness on behalf of another employee.

Even if conduct did not constitute discrimination, harassment or retaliation in the legal sense, an officer, manager, supervisor, subordinate, employee, franchisee, agent or non-employee who engaged in inappropriate behavior inconsistent with the policy was subject to corrective and/or disciplinary action, up to and including termination of his or her employment or other relationship with the Company. Any officer, manager, supervisor, employee, franchisee, agent or non-employee who, after appropriate investigation, was found to have unlawfully harassed or discriminated or retaliated against another person was subject to appropriate corrective and/or disciplinary action, up to and including termination of his or her employment or other relationship with LAWL.

Pamela J. White, Esquire
March 19, 2004
Page 3

2. Karen Siegel's Investigation Into Koch's Complaint

In April, 1998, Karen Siegel became of Director of Human Resources. In this position, Ms. Siegel was responsible for, among other duties, ensuring compliance with the Company's EEO policy, including investigating internal complaints of discrimination, harassment and/or retaliation.

On or about April 23, 1998, LAWL received correspondence from counsel for Kathy Koch ("Koch") detailing Koch's complaint and allegation that she was illegally discharged based on complaints she raised while employed by LAWL that the Company had a policy of not hiring men. This was the first time that LAWL and Ms. Siegel were informed of Koch's claims of discrimination against men and retaliation.

Upon receipt of this letter, Ms. Siegel undertook an investigation of Koch's complaint of retaliation. Initially, Ms. Siegel reviewed Koch's personnel file to determine the circumstances of Koch's employment with the Company and the cessation of her employment with LAWL. Included in this review were the complaints raised by managers and trainees regarding Koch's job performance. Ms. Siegel also spoke with Ms. Portlock and Ms. O'Brien regarding the details of Koch's discharge. Ms. Siegel also gathered documents relevant to the claims raised in the April 21, 1998 letter. Ms. Siegel did not speak with Koch as part of her investigation who by then was a former employee represented by counsel. As was her practice at the time, Ms. Siegel did not memorialize the steps and/or results of her investigation. Outside counsel did not participate in this investigation.

After completing her investigation, Ms. Siegel reached the conclusion that the decision to terminate Koch's employment was based on job performance and that no illegal discrimination or retaliation had occurred against Koch. Ms. Siegel also concluded that because this complaint was received after the cessation of Koch's employment with the Company and as part of a demand letter from counsel, the response to Koch's counsel's letter would come from outside counsel who would be defending any anticipated litigation. Outside counsel sent a response letter to Koch's attorney.

Pamela J. White, Esquire
March 19, 2004
Page 4

### 3. Training Provided to Trainers During Koch's Tenure with LAWL

In late 1997 and early 1998, the time frame during which Koch was employed by LAWL, trainers were provided with training in the following manner.

Initially, all employees, including trainers, participated in a 5 day training program which was held at either Corporate or in their respective markets. Although the Company did not maintain lists of the participants present at these training programs, all employees of LAWL were expected to attend this program. During the program, a wide variety of topics were covered including:

- Lab procedures
- Care calls
- Program explanations
- Menu planning
- Conducting daily visits
- Stabilization and maintenance phases
- Problem solving
- Medical histories
- Chart work-ups
- Phone scripts
- Program knowledge
- Product knowledge
- Medical Conditions and their Compatibility and Non-Compatibility with Program
- Paperwork
- Lead calls
- Setting up appointments

During this initial training, employees were provided with the following materials:

- Service Training Agenda (KK0001-KK0005)
- Training Manual (KK0021-KK0225)
- LA Weight Loss Nutritional Plan Instructions (KK0226-KK0245)
- Bloodborne Pathogen Training Material (KK0246-KK0407)

In addition, during the time period in question, trainers were provided with additional training in training sessions referred to as "Train-the Trainer". These training sessions were held at Corporate and were conducted after trainers completed their initial training program.

DSB:959894.1/LAW024-142120

Pamela J. White, Esquire
March 19, 2004
Page 5

During the Train-the-Trainer sessions, such topics as trainer responsibility, new hire paperwork, adult learning theories and preparation of training materials were covered. Trainers were provided with material and information similar to that contained in the "Welcome to the First Field Trainers' Information Sharing Workshop" Manual produced by Koch in this matter (KK0408-KK0557).

4. Koch's Performance Expectations

In late 1997 and early 1998, Koch was expected to train newly hired employees in two different training programs: (1) a 5 day service training program like the service training program Koch went through as a newly hired employee; and (2) a 2 day sales training program. These training programs were held at various training centers throughout the Maryland/Delaware region.

Koch was expected to train employees in all areas of sales and service of the LA Weight Loss program. This information was contained in Koch's training manual (KK0021-KK0225). Koch was to utilize the information contained in her training manual in the preparation of handouts, tests and demonstrative aides utilized during her training sessions.

Throughout 1997 and 1998, LAWL was in a state of constant growth and change. New programs and techniques were being added to the training agenda as the Company grew and refined its product. The training manual in use at the time was the training manual produced during discovery in this matter. (KK0021-KK0225).

Koch's performance as a trainer was judged by, among other things, her trainees' knowledge of the topics covered in training and the satisfaction with her training expressed by her trainees and the managers and assistant managers of the centers for which she was training employees. Any dissatisfaction was to be reported to Koch's direct supervisor, in this case Ms. Portlock. Upon receipt of complaints about Koch's performance, it was the responsibility of Ms. Portlock to review the complaints, take whatever steps she felt necessary to evaluate those complaints, and then attempt to resolve the performance problems she identified. Ms. Portlock had significant discretion to evaluate and remedy performance problems in her region, up to and including termination.

\* \* \* \*

Pamela J. White, Esquire
March 19, 2004
Page 6

    I trust that these supplemental responses adequately address the issues you raised during our conversations on these topics. If you have any questions, or if you would like to discuss this matter further, please call me or David Landau.

                                                Sincerely,

                                                David L. Gollin
                       For WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP

cc:    Ronald Phillips, Esquire

DSB:959894.1/LAW024-142120