IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | * |
| | * |
| Plaintiff | |
| and | * |
| KATHY C. KOCH | |
| | * |
| Intervenor/Plaintiff | |
| | * |
| v. | Civil No. Q-02-CV-648 |
| | * |
| LA WEIGHT LOSS | |
| | * |
| Defendant | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**INTERVENOR/PLAINTIFF KATHY C. KOCH'S
MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS**

Intervenor Plaintiff Kathy C. Koch seeks Sanctions Pursuant to Federal Rules of Civil Procedure 37 consequent to Defendant LA Weight Loss' protracted discovery abuses and spoliation of critical documents.   Koch's Motion for Sanctions requests several remedies, including: evidence preclusion regarding Defendant's performance-based defense; adverse inference instruction; evidence preclusion concerning any alleged investigation into Ms. Koch's retaliation claim; and striking several deficient interrogatory answers with instruction to amend such responses in compliance with this Court's Order of April 6, 2004.

## I.    <u>Introduction and Background</u>

This Court is quite familiar with the status and circumstances surrounding Plaintiff Kathy Koch's efforts in 2003-2004 to obtain responsive and adequate discovery responses in this matter relating to her employment and performance in 1997-98, her complaints about gender-based hiring practices, her written Complaint about retaliation dated March 8, 1998, her termination on March 12, 1998, her counsel's letter of Complaint dated April 21, 1998, and her EEOC charge in June, 1998.  Despite the fact that Ms. Koch served her discovery requests on Defendant over a year ago, and the Court recently ordered substantial compliance with those requests, LA Weight Loss continues to falter, failing to produce critical documents and complete answers, in direct violation of that Order.  Most telling is Defendant's failure to preserve training and employment-related documents concerning Ms. Koch upon her termination in March, 1998.  LA Weight Loss also continues to fail to explain how and what the Defendant's managers and decision makers communicated in 1998 among themselves to learn and respond to the Koch claims, whether and how they participated in any investigation of her claims, and whether and how any corporate official was responsible for responsive or corrective action.  Defendant's recently produced privilege log, containing only four entries, also appears on its face to not satisfy the Court's Order compelling production of a log of privileged communications, at least until the EEOC filed its Complaint in this action on February 28, 2002.

LA Weight Loss' recent affidavits and "third supplemental" answers confirm that Defendant did not retain relevant Koch training and employment materials.  LA Weight Loss, however, was obligated to preserve all relevant evidence because it was,

admittedly, on notice of Koch's discrimination and retaliation claims at the time of her termination. Supervisor Lynne Portlock's deposition testimony confirms that Portlock received Koch's written notice dated March 8, 1998, of her complaint about retaliatory discipline after she had questioned gender-biased hiring practices.   Portlock shared Koch's letter notice of her EEOC claim with her direct superior, Eileen Stankunus, and 'someone in human resources,' and then fired Koch three days later.

LA Weight Loss' awareness of potential litigation and employee protests concerning its hiring policies was heightened with the Sandra Brown-Talavera complaints made and formally investigated by counsel just a few weeks before Koch's termination. Given these circumstances, Defendant's conscious and reckless disregard for preserving documents in view of its clear notice of Koch's claims, but failing to preserve all relevant documents, is patently inexcusable.

The materiality and value of this suppressed evidence is significant.  Koch is prevented from discovering and exploring facts relevant to LA Weight Loss' defense based on her alleged performance deficiencies, especially in relation to the last week of her training program to new counselors.  During critical depositions, Kristi O'Brien and Lynne Portlock refused to provide basic information and could not (or would not) recall relevant events and circumstances in 1997 and 1998.   In her sworn testimony, Ms. O'Brien failed to recall most of the events relevant to Ms. Koch's employment, performance, discharge and complaints to the EEOC in 1998, and she refused to produce or describe relevant notes and documents prepared contemporaneously in 1997-98. Similarly, Portlock could not even remember the basis for her decision to terminate Koch based on "poor performance," let alone articulate the reasons for termination.  With no

substantive information or documents concerning Koch's actual job performance in the critical week (the same week Portlock and Stankunus received Koch's first letter complaining of retaliatory disciplinary action), she is unable to fully question, evaluate and refute LA Weight Loss' position.

Not only was LA Weight Loss obligated to preserve all relevant documentation concerning Koch, her employment and performance, but it was also obligated to investigate Koch's claim of retaliation.  LA Weight Loss has asserted that in April 1998, when it received a letter from Ms. Koch's counsel, Karen Siegel thoroughly investigated Koch's claim.  LA Weight Loss, however, has failed to detail this investigation – as requested in discovery and as ordered by this Court.  Koch continues to try and ascertain what roles Portlock, O'Brien and especially  Stankunus played in the investigation of her claims.

Defendant also has failed to answer interrogatories in accordance with this Court's Order.  LA Weight Loss has undertaken a deliberate and protracted campaign to deny Ms. Koch fundamental information about her claims and information central to LA Weight Loss' preparation of its defense.  LA Weight Loss succeeded in hampering Ms. Koch's ability to receive the basic, discoverable information to which she is entitled under the Federal Rules by failing to preserve critical documents, presenting witnesses with poor memories of the events surrounding Ms. Koch's employment, while instructing them not to answer certain questions in depositions, and failing to provide responsive answers to interrogatories, now even evading the specific Court order requiring it to do so[1].  Defendant's efforts have been so successful that over a year passed before LA

---

[1] LA Weight Loss' "Third Supplemental Responses" identify the former CFO Ron Martigoni as having had some contact with White's letter of April 21, 1998 to LA Weight Loss' Chief Executive Vaughn

Weight Loss provided anything approaching an answer to Ms. Koch's Interrogatories; many remain inadequate and incomplete. This long history is recounted in the Memorandum of Intervenor/ Plaintiff in Support of Motion to Compel Production of Documents and Interrogatory Answers and Ms. Koch's corresponding Reply Memorandum previously filed with the Court (Docket Nos. 36, 52), and Ms. Koch respectfully incorporates those Memoranda here for a more detailed description of LA Weight Loss' evasion of its discovery duties.

In sum, Defendant's failure to preserve documents, its non-responses to interrogatory answers, and the absence of alternative sources for the information, are startling and require this Court to impose the appropriate, requested sanctions.

## II.    Procedural Points

The Court is well versed with the procedural history that leads to this motion for sanctions.  Ms. Koch served interrogatories and document requests to LA Weight Loss in February 2003.  LA Weight Loss responded on March 31, 2003 and subsequently produced its initial 34 pages of documents. Counsel exchanged correspondence addressing the inadequacy of those responses on repeated occasions. On July 30, 2003, Counsel for Koch questioned whether there had been spoliation of evidence and advised that LA Weight Loss was obligated to identify the relevant circumstances of any lost or destroyed documents.  See letter dated July 30, 2003, attached as Exhibit A. Koch's counsel also observed certain depositions in August and tracked the EEOC's motion to compel LA Weight Loss' discovery responses in the summer of 2003, all in an effort to

---

Karabajakian.  LA Weight Loss offers no explanation of the role or response to Koch's claims of either Martigoni or Karabajakian.  At the same time, LA Weight Loss cautions that "[a]ny attempts to contact any current or former management level employee should be made through counsel for Defendant only."

secure relevant information from alternative sources and to avoid redundant discovery disputes and increased attorneys fees.

Koch necessarily filed her Motion to Compel in September 2003 demanding production of critical documents and complete and responsive answers to interrogatories. On April 6, 2004, this Court ordered substantial compliance with Ms. Koch's discovery requests and specifically warned Defendant that "incomplete or evasive answers will violate both Rule 37 (a)(3) and [the] Court's order, and may subject Defendant to appropriate 37 (b)(2) sanctions."  April 6, 2004 Order (Docket No. 70).  The Court also instructed that Defendant particularize facts related to its efforts to locate responsive training materials, observing that that Ms. Koch apparently did return some materials to the Defendant that it did not subsequently produce, and if such documents were destroyed or otherwise not preserved, Defendant was ordered to provide an explanation for this, sufficient to enable the Court to determine whether spoliation of evidence occurred, and if so whether an adverse jury instruction would be appropriate.

On May 11, 2004 (by fax on May 7), Koch received eight pages of supplemental interrogatory answers, copies of three documents (letters dated in 1998 by White), and two short Affidavits of Kristi O'Brien and Karen Siegel.  See Defendant's Second Supplemental Reponses, attached as Exhibit B.  On May 13, 2004, Koch communicated her dissatisfaction with the responses of LA Weight Loss, noted her intention to file a Rule 37(b) Motion for Sanctions, and invited Defendant's attention to "several critical points" of concern with its responses.  See Letter dated May 13, 2004, attached as Exhibit C.

Defendant represented that it would supplement its responses and produce all non-privileged correspondence by or to Defendant concerning Kathy Koch, and to the EEOC or any other person concerning Kathy Koch prepared prior to the filing of the EEOC's Complaint in this action. Counsel for Koch acknowledged said correspondence on May 18, 2004. See Letter dated May 18, 2004, attached as Exhibit D. On May 28, 2004, LA Weight Loss provided its Third Supplemental Responses, including supplements to Request for Production Nos. 6, 25, and 25; a privilege log (containing only four entries); contact information for previously identified persons with knowledge; and supplemental affidavits of Kristi O'Brien and Karen Siegel, all attached as Exhibit E. Although this late attempt to comply with this Court's Order, and provide appropriate discovery responses, marks mild improvement, as more fully addressed below, several interrogatory responses and LA Weight Loss' privilege log raise more questions than resolve, and LA Weight Loss' explanation for its failure to preserve relevant documents is equally inadequate. Defendant is in direct violation of this Court's Order and must be sanctioned for its conduct.

**III.    Legal Argument**

     **A. Failure to Preserve Documents and Respond to Document Request No. 8 (all documents respecting Kathy Koch) & Request No. 26 (all training materials) Necessitates Evidence Preclusion Sanctions And Adverse Jury Instruction to Reflect Spoliation of Evidence**

The duty to preserve evidence "is triggered when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Thompson v. HUD, 219 F.R.D. 93, 100 (D. Md. 2003) (citing Zubulake v. UBS Warburg LLC, 2003 WL 22410619 (S.D.N.Y. Oct. 22,

2003). "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents." Id. Thus, the duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation. Silvestri v. General Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001).

Title VII also requires every employer, employment agency, and labor organization to 1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, 2) preserve such records for certain periods, and 3) make such reports therefrom as the Commission shall prescribe by regulation or order. 42 U.S.C. § 2000e-8. The applicable regulations further provide where a charge pursuant to Title VII has been filed against an employer, the employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or action. 29 C.F.R. § 1602.14. The term personnel records "relevant to the charge" includes personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held by the aggrieved person. See id.

The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences. Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. Silvestri, 271 F.3d at 591. The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is

limited to that necessary to redress conduct which abuses the judicial process.  Id.  When imposing spoliation sanctions, "the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct."  Id.;  See also Vodusek v. Bayliner Marine Corp., 71 F.3d 148  (4th Cir. 1995).

Rule 37 (b) (2) provides a non-exclusive list of possible sanctions, which include ordering that certain facts be taken as established at trial; that the disobedient party may not oppose adverse claims or support its own defenses at trial; that pleadings may be stricken, the action dismissed, or a default judgment issued against the disobedient party; and that an order treating the failure to obey the prior order as a contempt of court be issued. Thompson, 219 F.R.D at 102.  Another commonly requested and granted sanction is an adverse jury instruction.   Three things must be shown to warrant an adverse inference instruction for spoliation of evidence: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable fact finder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.  Thompson, 219 F.R.D. at 101.

Three possible states of mind satisfy the culpability requirement:  bad faith/knowing destruction; gross negligence, and ordinary negligence. Id.  Sometimes even the inadvertent, albeit negligent, loss of evidence will justify dismissal because of the resulting unfairness.  Silvestri at 593.  The expansion of sanctions for the inadvertent

loss of evidence recognizes that such physical evidence often is the most eloquent impartial 'witness' to what really occurred, and further recognizes the resulting unfairness inherent in allowing a party to destroy evidence and then to benefit from that conduct or omission.  Id.

The courts have addressed issues related to the spoliation of evidence and imposition of sanctions in several Title VII cases, revealing that employers who fail to preserve relevant information, in the face of a clear duty to do so, are to be sanctioned accordingly.  In Zimmerman v. Associates First Capital Corp., 251 F.3d 376, 383-85 ( 2nd Cir. 2001), the court upheld an instruction of adverse inference from missing evidence in a Title VII claim where the employer threw out the employee's documents 30-60 days after termination, failed to retain training documents from the period in question, and failed to contact other employees about said documents, despite the fact that employee kept copies of many of her records and submitted them into evidence.  Because the employer failed to offer documentary evidence that Zimmerman had been terminated for inferior performance and denied Zimmerman the ability to compare her treatment to that of other employees, the jury charge permitting an adverse inference was fully warranted. See Zimmerman , 251 F.3d at 379, 84.[2]

Hicks v. Gate Rubber Co., 833 F. 2d 1406 (10th Cir. 1987),  a Title VII claim brought by a security guard, also is instructive.  In Hicks, the employer was sanctioned for failing to maintain clock charts and the daily reports of the security guards, while on notice of Hick's Title VII claims.  Hicks, 833 F. 2d at 1418-20.  Despite the employer's

---

[2] Rambus, Inc. v. Infineon Technologies AG, 220 F.R.D. 264 (E.D. Va. 2004) is instructive for its attention to sanctions following from Defendant's "sparse and inadequate" privilege log, failure to produce documents necessarily retained for use in other proceedings or otherwise in anticipation of litigation, in disobedience of the Court's Order requiring production, and where spoliation of evidence occurred when the party knew the evidence to be relevant to anticipated litigation.

argument that such charts and reports were not personnel records which it had a duty to maintain, the court found that the documents were indeed " records having to do with . . . demotion, . . . or termination," within the meaning of 29 C.F.R. § 1602.14 (a), and were personnel or employment records which should of been retained by the employer.  Id. at 1419.  The destruction of such information entitled Hicks to the benefit of a presumption that the destroyed documents would have bolstered her case.  Id.  See also Shipley v. Dugan, 874 F. Supp. 933 (S.D. Ind. 1995) (where records from comparators destroyed, job applicant was entitled to an inference that the records contained evidence favorable to her case).

### 1.  Defendant Had A Duty to Preserve Koch Documents

LA Weight Loss was obligated to maintain documents responsive to Ms. Koch's Request for Production Nos. 8 and 12:

REQUEST NO. 8:    All documents prepared by, or at the direction of, any employee of LA Weight Loss respecting Kathy Koch.

REQUEST NO. 26:    All documents that refer, reflect or constitute the training provided by area corporate trainers, corporate trainers, and/or service trainers to center counselors in the Maryland/Delaware region from 1997 through 1998, including but not limited to materials provided to trainees, training agenda and content, identity of the trainers providing any such training sessions, the test scores of all trainees who received such training, and any feedback or evaluations provided by trainees respecting such training.

Deposition testimony and recent affidavits establish that LA Weight Loss destroyed evidence relevant to Koch's case at a point in time when it knew or anticipated litigation and therefore had a duty to preserve the evidence.  As set forth in Koch's Complaint and prior discovery motions filed with this Court, Koch challenged LA Weight Loss' hiring policy and repeatedly contradicted her employer's practices not to

hire men.  Her efforts in the hiring process were unsuccessful to provoke offers to male applicants, however, her efforts resulted in threats of termination by O'Brien and a warning of concocted training deficiencies by Portlock on March 6, 1998, after Koch had first informed O'Brien and Portlock of her intentions to file an EEOC charge.

Portlock's deposition testimony confirms that Portlock received Koch's written notice describing her complaint just after the March 8 date of Koch's letter, but before Koch's termination on March 12.  Koch had written:

> I respectfully, but adamantly disagree with the issuance of the Employee Warning Notice which you gave to me Friday, March 6, 1998.  It is clear that the purpose of issuing the Warning Notice was to create a fallacious paper trail to achieve unknown alternative purposes since I have not followed company hiring policy. This is to advise you that I have this morning initiated a formal complaint with the U.S. Equal Employment Opportunity Commission to protest the employment policies of LA Weight Loss Centers.

March 8, 1998 Letter, attached as Exhibit F.

Portlock called a Delaware Human Resources agency for advice and shared Koch's letter notice of her EEOC claim with her direct superior, Eileen Stankunus. (Portlock depo. at pp.433, line 15-434, line 12).  Portlock fired Koch three days later. In fact, Portlock read the entire letter to Stankunus, who then told her to "get it to human resources," and so that is what Portlock did. (Portlock depo. at pp. 434, line 9-12. Contemporaneous with receipt of Koch's letter, on March 10, 1998, Portlock sought and secured written evaluations from prior trainees of Koch in an attempt to support her previously unsupported and retaliatory warning to Koch on March 6, 1998.

Unbelievably, Defendant now states several times in its supplemental discovery and in sworn Affidavits that sometime after April 23, 1998, when the company received

correspondence from counsel for Koch detailing Koch's complaints, *"was the first time"* that the company became aware of Koch's claims of discrimination against men and retaliation. See Supplemental Affidavit of Karen Siegel at ¶ 1, at Exhibit E (emphasis added). The fact that LA Weight Loss takes this position, and contradicts its previous sworn testimony, is a transparent attempt to explain its failure to preserve Koch documents. There is no excuse. Even if the Court were to accept that LA Weight Loss did not have knowledge of Koch's complaint until April 23, 1998, it is inherently unbelievable that during the weeks between Koch's dismissal on March 12, 1998 and receipt of her counsel's detailed letter dated April 21, 2003, all Koch training materials (and similar materials of other trainers), her flip chart, tests, cards, were destroyed and/or discarded; all other general training manuals and agenda were similarly destroyed; and all supervisors' notes and 1998 calendars also disposed of, in the regular course of LA Weight Loss' business.

There also is no justification for Defendant's complete failure to address Portlock's testimony concerning Koch's March 8th complaint letter. LA Weight Loss has yet to address the fact that Stankunus and "someone at human resources" received this letter and were aware of Koch's complaints before her termination. Refusal to describe the circumstances surrounding receipt of Koch's complaint, any investigation (or not) thereof, and efforts to secure all relevant evidence, is unacceptable.

The Defendant's conduct, as set out in the latest O'Brien and Siegel Supplemental Affidavits, allegedly complied with policy to immediately discard training material; that conduct was unreasonable in Koch's case and clearly in dereliction of its duty to preserve evidence beginning at least by March 9, 1998. The company representatives - Portlock,

O'Brien, Stankunas and Human Resources - had notice of Koch's claims and should have preserved all relevant documents.  Furthermore, even if the company followed some policy (yet to be produced), it does not appear that any plausible document retention or destruction program mandated disposal of all the Koch documents. For example, O'Brien's new Affidavit states that it was the policy of LA Weight Loss to discard worn and out-dated flip charts.  <u>See</u> Supplemental Affidavit of Kristi O'Brien, attached as Exhibit E.   Portlock testified, however, that she created Koch's flip chart just days before Koch was terminated.  (Portlock depo. at pp. 439, line 16-17).  It also appears odd that the tests of trainees in Koch's last training program in March would have been immediately discarded, as LA Weight Loss now contends; "its policy,"now described, was to have the trainers review the tests with the trainees, and return the tests to the trainees, who then were instructed to provide the completed tests for their managers to review.  <u>See</u> Supplemental Affidavit of Kristi O'Brien, attached as Exhibit E.  Again, it is inherently unbelievable that such tests of Koch's trainees would be graded, reviewed by trainers and trainees, returned to trainees for a time and then given to the managers for their review,  then to be discarded,  in such a short time period.

LA Weight Loss' representation that it did not maintain outdated training materials for "historical purposes," and /or replaced 1997-1998 materials, certainly does not absolve it from its duty to maintain such documents in circumstances, such as Koch's, for Title VII and evidentiary purposes when it was on notice of related claims. Certainly, Defendant's duty was heightened with the complaints of discrimination and gender biased hiring practices by a center manager Sandra Brown-Talavera and the corresponding investigation undertaken by Scott Moyer and counsel in February 1998.

Indeed, the Brown-Talavera complaint was one of several contemporaneous complaints of discriminatory hiring practices and reprisals that were known to O'Brien and to Portlock's supervisor, Eileen Stankunus, when O'Brien, Portlock and Stankunus learned of Koch's complaint on March 9, 1998.    Moyer, Stankunus and O'Brien were interviewed and questioned about the hiring practices challenged by Brown-Talavera just weeks before Koch's discharge.    Stankunus' interview, which necessarily included inquires of gendered biased hiring practices, was memorialized in counsel for LA Weight Loss' investigatory report.    Within weeks of the completion of that investigation in February or March 1998, LA Weight Loss released a written policy of non-discrimination in employment for the first time.

A transcript of a recorded interview of Sandra Brown, conducted on February 2, 1998, describes the circumstances of retaliation of which Ms. Brown complained. Ms. Brown reported that she had told several co-workers and Kristi O'Brien:  "[w]hen I was trying to hire, Lesia [Petrizzio, her supervisor] said that I couldn't hire males" [p.38]. Chief Operating Officer Scott Moyer noted his intention "to make sure that we talk to everybody.  I want to get all the facts out." [p.53]  Ms. Brown specifically urged that "the gender issue…needs to be investigated."   "I don't feel it is fair that men can't be on board…"  [p.58].  Mr. Moyer responded that "the company does not have a policy against hiring men." [p.58].

It is clear and unequivocal that LA Weight Loss had the duty to preserve Koch's training and employment documents, including the flip charts and trainee handouts, the demonstrative exercises and trainee tests, LA Weight Loss schedules, agendas, and formal training manuals, notes and calendars of supervisors.  However, these documents

were discarded despite their critical roles and relevancy when Defendant first asserted that it discharged Ms. Koch for performance-related reasons, including her failure to carry out certain training duties in her capacity as an Area Trainer during her last week of training.  The importance of these training materials was reiterated in Defendant's second supplemental response to document request no. 26:

> "Trainers were expected to train employees in all areas of sales and service of the LA Weight Loss Program….  Koch was to utilize the information contained in her training manual in the preparation of handouts, tests, demonstrative aides utilized during her training sessions."

LA Weight Loss has produced none of these materials, and Portlock swore she was unable to recall the particular or problematic elements of Koch's use of the flip charts and training cards during her last days of training, or the basis for her decision to terminate Koch for poor performance.  (Portlock depo. pp. 485, line 18- 486, line 21, attached as Exhibit G).

Portlock did recall certain of these matters at her interview during the EEOC's investigation in April 2000.  Although Koch has no way to reconstruct Portlock's preparation for the EEOC's questions, Portlock did explain that that she had no intention of firing Koch when she gave her the March 6 warning,  (Portlock EEOC interview, pp. 156, line 14), and that intervening events between the March 6 warning and the March 12 termination involved Koch's deficiencies with last few days of training  (Id. at pp. 164, line 11).  Portlock explained in 2000 that Koch did not use the flip chart or her training cards correctly during the last week of Koch's employment.  (Portlock EEOC interview, pp. 147, line 4).  Clearly these materials, which Portlock contends Koch misused or failed

to use - which was the basis for her termination – were required to be preserved and are germane to Koch's case and LA Weight Loss' defenses.

## 2. Defendant Did Not Preserve Koch Documents

LA Weight Loss has failed to produce the Koch training materials and now confirms that all such material was destroyed. At her deposition, Koch testified that she returned a large flip chart, a small flip chart, an expander file with various handouts for the training, tests for the trainees, a bingo game, a card game – all used as training tools (Koch depo. pp. 194, line 194- pp. 195, line 12). The Supplemental Affidavit of Siegel represents that Koch's specific training materials, i.e. the flip charts, and blank and completed tests, that Koch returned to Portlock, were all destroyed. See id.[3] This flagrant disregard of the duty to preserve potentially relevant evidence cannot go without punishment.

In addition, it appears that other documents relevant to Koch's employment were not preserved. The Supplemental Affidavit of O'Brien states "I am not in possession, custody or control of any electronic or paper copies of any training documents I created in 1997 and 1998." See Exhibit E. LA Weight Loss' breach is apparent upon referring to Ms. O'Brien's deposition testimony on August 28, 2003. As she testified, Ms. O'Brien

---

[3] As this Court observed in its April 6th Order, "it appears from the Portlock deposition that Plaintiff did return some materials to the Defendant that it did not produce." Portlock signed a receipt for the training materials returned by Koch on March 12, 1998. Portlock probably sent corporate materials, including Koch's training materials, to corporate headquarters [Portlock Depo. at pp. 451, 474]. Nevertheless, LA Weight Loss does not have any of these materials. Judge Grimm's Order required certification by "a representative of the defendant with personal knowledge of the facts" concerning the documents returned to Portlock, who has signed a receipt for those documents. Certainly, Portlock (also represented by LA Weight Loss' counsel) would be the individual to explain the circumstances and respond to this instruction.

had maintained appointment calendars and certain records related to hiring and training in 1997-98 and did not throw out those records, but was never asked to turn those documents over to management or counsel (O'Brien depo. at pp. 410, line 10- pp. 414, line 23, attached as Exhibit H). Ms. O'Brien recalled that she had kept records of reasons why she let trainers go but was not asked to provide those documents to counsel. Ms. O'Brien also recalled that she took contemporaneous notes of telephone calls about trainer performance and conversations with trainers on note pads and eventually would discard those notes. Ms. O'Brien received no instructions in 1998 about keeping those notes or notes of her conversations with Ms. Portlock about Ms. Koch.   By the time Koch asked for production of "documents which reflect, refer, or relate to any evaluation (formal or informal) of Kathy Koch" (Request No.2), and "informal files kept by any supervisor or manager . . . or any complaints made by or concerning Ms. Koch" (Request No. 3), LA Weight Loss had determined not to produce such documents but failed to explain what happened to Ms. O'Brien's notes.

O'Brien and others also have failed to produce and preserve the training materials of any other trainers, and the test results of any trainees who received such training. These materials are important to compare Koch's performance and expectations as a trainer with that of other trainers. More importantly, test scores and evaluations concerning training by other trainers are critical to determine the extent to which the company relied upon trainee feedback in disciplining other trainers, and whether or not tests and evaluations were regularly administered and relied upon.

LA Weight Loss cannot blindly destroy documents and expect to be shielded by a simplistic statement of policy of discarding training and employment materials that it

does not consider as "personnel records."   The resulting unfairness inherent in allowing a party to destroy evidence and then to benefit from that conduct or omission is apparent. LA Weight Loss' conduct is clearly blameworthy and its conscious and reckless disregard for discovery obligations cannot go unpunished.

### 3.   Koch is Severely Prejudiced By Defendant's Failure to Preserve Relevant Documents

Without documents or information from which Koch may address her employment performance, especially her training in the last week before she was terminated, the prejudice to prove her complaints about discriminatory hiring practices, or the retaliatory discharge suffered by Ms. Koch is evident.   Koch cannot adequately address and respond to LA Weight Loss' allegations of performance deficiencies without her training materials, the tests, flip charts and training cards.   Even Portlock noted the importance of having such materials present  while she attempted to articulate Koch's training deficiencies during her EEOC interview in 2000:   "And those cards, she has those cards.  Maybe what we should of asked her to bring those cards." (Portlock EEOC interview, pp. 149, line 16-18). Koch's proof is clearly impaired by LA Weight Loss' destruction.

Ms. Koch is unable to mitigate this prejudice because the relevant information was not provided during critical depositions and has not been provided in answers to interrogatories.  The 2003 deposition testimony of Kristi O'Brien and Lynne Portlock reflects both Defendant's arrogance and its refusal to provide any basic information by

the managers who hired, trained, supervised, disciplined, and fired Kathy Koch.[4]  Neither

O'Brien nor Portlock could recall relevant events and circumstances in 1997 and 1998.

In her sworn testimony, Ms. O'Brien failed to recall most of the events relevant to

Ms. Koch's employment, performance, discharge and complaint to the EEOC in 1998,

and she refused to produce, identify or describe relevant documents; however, she

testified that she had prepared contemporaneous notes and reviewed contemporaneous

personnel and hiring records in 1997-98.

At her deposition, Portlock was unable to identify particular training agendas or

manuals that were handed to her; nor was she able to identify or articulate any

deficiencies in Koch's training program at the time of her discharge. (Portlock depo. at p.

486).  However, Portlock had recalled in her 2000 EEOC interview that Ms. Koch

allegedly misused the flip chart and the training cards in the final week of training- which

only confirms the importance of these documents.  At her deposition, Portlock also did

not recall her participation in any investigation or even a simple document search by

counsel.  The absence of Portlock's testimony about any of Koch's training and

performance makes obvious the prejudice Koch suffers from the lack of the physical

training materials and the absence of any details of investigation undertaken in 1998-

2000.

Defendant also has failed to provide any relevant information in Interrogatory

answers.  Although not subject to Koch's motion to compel,  in response to Koch

Interrogatory  Nos. 4, 8, 21, and 22,  requesting descriptions of Koch's performance and

---

[4] Koch anticipates Stankunus' deposition will be taken in the future,  however,  she is unable to adequately prepare for such  deposition given LA's total failure to  produce relevant documents relating to Stankunus' receipt of her March 8th letter,  any ensuing investigation and/or efforts to preserve documents. None of this information has been provided in answers to interrogatories.

reasons for Koch's termination, LA Weight Loss responded in a simple paragraph stating all relevant documents would be produced.  Koch did not pursue a more detailed answer at the time because of the representation that all relevant employment documents and training material would be forthcoming. Given the fact that no documents have been produced,  these answers are  seriously inadequate.

LA Weight Loss' conduct obviously contradicts the fundamental purpose of fact discovery under the Federal Rules.  Koch cannot fairly be required to prepare to defend against allegations of her poor performance with no documents, no testimony and defective answers to interrogatories.  The prejudice to Koch stemming from LA Weight Loss' failure to preserve documents, endless discovery abuses, and its blatant disregard of the Court's Order is irreparable at this stage.  LA Weight Loss' reprehensible conduct should be sanctioned in accordance with principles condemning spoliation and under Rule 37 of the Federal Rules.

**B.    LA Weight Loss' Failure to Timely and Properly Answer Ms. Koch's Interrogatories, Now in Violation of the Existing Court Order, Requires Exclusion of Certain Testimony and Certain Answers Stricken**

Despite the clear and unequivocal language in Judge Grimm's April 6, 2004 Order, LA Weight Loss has failed to provide complete answers to several of Ms. Koch's interrogatory Answers.  As recognized by this Court, Koch has a right to specific responses, concise descriptions of  relevant complaints and corresponding investigations, including that of Ms. Koch's complaint, and full accurate descriptions of training materials, especially given the lack of testimonial evidence and documents evidencing LA Weight Loss' defense premised upon alleged deficient training.  LA Weight Loss'

tactics deny Koch this fundamental right to learn of the evidence LA Weight Loss will use to defend against her claims, are in violation of the Court's Order and cannot go unsanctioned.

Under these circumstances, Rule 37(b)(2) applies.  It provides that, when "a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just," including "[a]n order striking out pleadings or parts thereof, . . . or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]"  Fed. R. Civ. P. 37(b)(2)(C).  District courts are afforded substantial latitude in exercising their powers to sanction recalcitrant litigants pursuant to Rule 37.  Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707 (1982) ("'The question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have [applied the sanction]; it is whether the District Court abused its discretion in so doing.'") (quoting National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976)).  See also Anderson v. Foundation for Advancement, Educ. & Empl. of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998); Rabb v. Amatex Corp., 769 F.2d 996, 999-1000 (4th Cir. 1985).  In this Circuit, the Courts generally look to four factors before imposing Rule 37 sanctions: (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective.  E.g., Anderson, 155 F.3d at 504; Wilson, 561 F.2d at 503-05.

First, Defendant's long and persistent pattern of delay, over more than a year, and obfuscation reflects bad faith of the highest order.  See Anderson, 155 F.3d at 504 (bad

faith found were litigant "stonewalled on discovery from the inception of the lawsuit"). Second, LA Weight Loss' conduct has caused extreme prejudice to Ms. Koch as addressed in detail below in response to the specific outstanding interrogatories. In failing for over a year to describe LA Weight Loss' handling of related complaints, Ms. Koch's complaint and investigation, and certain training sessions and agenda with the requisite degree of specificity, LA Weight Loss has fought a protracted campaign to keep Ms. Koch in the dark and thereby prevent her from discovering necessary facts relevant to her claim and Defendant's defenses.[5]

Third, sanctions are necessary to deter LA Weight Loss – and other employers - from failing to preserve important documents and refusing to obey discovery commands in the future.   In other words, a lesson must be taught: namely, such conduct will not be countenanced.   Finally, at this stage, less drastic sanctions would not be effective.   LA Weight Loss has been cautioned and rebuked.   Yet, it has maintained its stonewalling posture.   Ms. Koch has been patient.   So too has this Court.   But, at some point, judicial patience wears thin and sanctions under Rule 37 are warranted.   See National Hockey League, 427 U.S. at 642 ("Th[e] record shows that the District Court was extremely patient in its efforts to allow the respondents ample time to comply with its discovery orders.   Not only did respondents fail to file their responses on time, but the responses which they ultimately did file were found by the District Court to be grossly inadequate.")   Indeed, after almost a year of improper discovery responses, Defendant was warned that Rule 37 sanctions were a distinct possibility if it did not change its ways

---

[5] Fees incurred since Koch's motion to compel have increased by quantum amounts due to her struggle to obtain documents and discover relevant and crucial information relating to her claim.   This increase in fees is reflected on Koch's quarterly fees statements provided in accordance with Appendix B of the Rules of the U.S. District Court (MD).

and comply with discovery procedures and the Court's Order.  LA Weight Loss failed to

heed that warning.

Defendant continues to fail to fully and properly answer Interrogatory Nos. 6, 7,

14 and 17.

### Interrogatories No. 6 & 7

Interrogatory No. 6 :  Identify and fully describe each complaint of retaliation that any employee in the Maryland/Delaware region has made against any other employee of L.A. Weight Loss, or against LA Weight Loss itself, whether written or oral, internally or with any outside administrative agency, from 1997 to the present.  With respect to each complaint, describe fully any investigation action taken by LA Weight Loss and the final result of each such complaint.  Your answer should include, but not be limited to, an identification of all documents reflecting or relating to any facts set forth in your answer and an identification of all persons with personal knowledge thereof.

Interrogatory No. 7:  Identify and describe fully all formal complaints of retaliation in the Maryland/Delaware region filed with the United States Equal Employment Opportunity Commission or any state or local human rights commission, or as a lawsuit against LA Weight Loss, from 1996 through the present, and state the outcome of each claim.  Your answer should include, but not be limited to, an identification of all documents reflecting or relating to any facts set forth in your answer and an identification of all persons with personal knowledge thereof.

This Court's Order of April 6, 2004, recognized  LA Weight Loss' previous

responses to these interrogatories were entirely defective.  The Court granted Koch's

request to compel and stated that :

> Defendant's answer is incomplete, and evasive, which is tantamount to a failure to answer. . . Further, Defendant has not demonstrated that, as required by Rule 33 (d), a fully responsive and complete answer to I 6 can be derived from the documents it produced pursuant to RPD 5.  Defendant will supplement its answer to fully and completely respond to the interrogatory, including identifying persons with personal knowledge of the facts, and a description of any responsive documents, other than those already produced in response to RPD 5, in sufficient detail to enable Plaintiff to locate them.

(Docket No. 70).

Defendant's Second Supplemental Answers would comply with this mandate by providing an additional complaint of retaliation, with an explanation, that was not previously identified. LA Weight Loss, however, wholly discounts the Court's instruction that it   supplements its previous answer to "fully and completely respond to the interrogatory" because the mere reference to the production of documents concerning Sandra-Brown Talavera and Nina Catagnus is inadequate.   LA Weight Loss' supplemental answer does not fully describe these complaints, any investigative action taken by LA Weight Loss and the results of such and each complaint, as requested and ordered by the Court.

Most importantly, LA Weight Loss does not even address Koch's complaint and the unexplained investigation that Koch has been attempting to learn about for well over a year.  From the outset of this case,  LA Weight Loss has refused to address its investigation with the specificity required, or address any corporate response to Koch's March 8, 1998 letter first advising Defendant of her retaliation claim, or address counsel's attention to this matter as the parties corresponded in 1998 and with the EEOC in 1998-2000.  Defendant's most recent answer does not help Koch to learn how and what the Defendant's managers and decision makers in 1998 communicated among themselves to learn and respond to the Koch claims,[6] whether or not and how they participated in any investigation of the Koch claims at any time in 1998-2000, whether and how counsel Landau or any corporate official was responsible for any investigation and responsive or corrective action—or if they declined to do so.

---

[6] Koch's oral complaints were followed by her letter dated March 8, 1998, counsel's letter dated April 21, 1998, and subsequent correspondence with counsel, and the EEOC charge which was the subject of LA Weight Loss' position statement and successive document production and employee interviews in 1998-2000.

## Interrogatory No. 14

Interrogatory No. 14:   Identify and describe fully the agenda and content of any and all training provided to area corporate trainers, area trainers and/or corporate trainers in 1997 and 1998.  Your response should include, but not be limited to, the identity of those employees or agents providing the training, the dates, locations and subjects covered for each training session, and the attendees of each session.  Your answer should include, but not be limited to, an identification of all documents reflecting or relating to any facts set forth in your answer and an identification of all persons with personal knowledge thereof.

Defendant's Second Supplemental Answer to Interrogatory No. 14 describes more fully than ever before the content of training and training sessions.  It still fails, however, to specifically recount the particular subjects covered for each training session, and instead provides generalizations of training sessions, i.e. without identifying exact training sessions, the number of certain sessions, attendees, the length of the sessions, and what exactly was covered in each session.  Defendant's reference, for example, to a seven-day training agenda, does not assist Koch to identify and defend vague allegations of her performance deficiencies during a five-day training regimen.

Most disturbing is Defendant's statement that the trainers were provided with "material and information *similar to that contained* in the "Welcome to the First Field Trainers' Information Sharing Workshop" Manual produced by Koch in this case.  See Exhibit B, at p. 7-8 (emphasis added).  Defendant has attempted this tactic before and was warned by the Court that such speculative and evasive answers are inappropriate.

## Interrogatory No. 17:

Interrogatory No. 17:  Identify and describe fully all complaints made by employees of LA Weight Loss, whether formal or informal, internally or to an outside agency, referring or relating to LA Weight Loss' new-hire application and/or hiring policies and procedures from 1997 to the present.  Your answer should include, but not

be limited to, an identification of all documents reflecting or relating to any facts set forth in your answer and an identification of all persons with personal knowledge thereof.

The Court granted Ms. Koch's motion to compel a complete answer to Interrogatory No. 17 for the same reasons stated above in connection with Interrogatory No. 6, noting that Defendant additionally failed to demonstrate the foundational requirements that the burden of reviewing the documents identified and deriving the answer to I 17 substantially would be the same for Plaintiff as it would for Defendant. Just as LA Weight Loss has failed to fully and completely respond to Koch Interrogatory Nos. 6 and 7, it also fails to comply with the Court's Order here. Defendant's prior answer merely asserting all responsive documents related in the complaints by Todd McCann, Warren Walker, Sandra-Brown Talavera and Nina Catgnus will be produced, is not sufficient. At this time, however, Defendant has still failed to describe these complaints and identify people with knowledge and relevant documents. Such information is significant to learn of the Defendant's response and investigative actions to complaints and to contrast such with the lack of investigation of Koch's complaints of March 8 and April 21.

**C.**    **Defendant's Privilege Log Is Gravely Inadequate**

LA Weight Loss' privilege log, produced on May 28, 2004, contains only four entries dated May 13, 1998;  May 19, 1998;  June 4, 1998; and December 6, 1999. See Defendant's Privilege Log attached as Exhibit E. Defendant's offering is quite surprising given its failure to produce any such log over the last year based on objections of undue burden. LA Weight Loss' privilege log is also curious in light of the fact that

LA Weight Loss submitted its Position Statements and Document Responses to Koch's EEOC charge beginning November 1998 and extending through 1999 and 2000. Were there no descriptions of investigation or written communications between LA Weight Loss representatives and counsel at any time in 1998-99 to prepare counsel's submissions?  Were there no document transmittals?

The apparent absence of any notes of communications between Ms. Siegel and Ms. Landau suggests that no investigation was actually undertaken by Ms. Siegel as to Ms. Koch's successive charges by letter in March, 1998 to Portlock, by letter in April, 1998 to Karabajakian, or by her charges to the EEOC in June, 1998.  There was no apparent attention or discussion about LA Weight Loss officer Eileen Stankunas' response to Portlock's call(s) on March 9, 1998, or about "a note" by Portlock "regarding Koch's discharge meeting"[7], or about the preparation of LA Weight Loss' response to the EEOC charge or the EEOC's requests for documents.

The alternative conclusion to be drawn is that LA Weight Loss or its counsel destroyed any notes of LA Weight Loss' investigation and exchanges with counsel about the course of such investigation.[8]  In the absence of document production and substantive interrogatory answers, Ms. Koch necessarily expected to refer and rely upon Defendant's privilege log to identify possible alternative sources of investigatory information. Defendant must be compelled to explain why the entries on its privilege log are so sparse or clarify its previous objections based upon burden.

---

[7] The note just produced as a poor copy requires transcription and our review of the original.

[8] Nevertheless, LA Weight Loss' counsel felt comfortable enough to prepare Kristi O'Brien for her deposition in 2003 by giving her certain documents to review prior to her testimony; LA Weight Loss' counsel have yet to provide Koch's counsel with any of those documents, or a description of their relevance to LA Weight Loss' defenses, or O'Brien's own description of her participation in any investigation.

**IV.**      <u>**Conclusion**</u>

For the above reasons, Intervenor/Plaintiff Kathy Koch respectfully requests that,

pursuant to Rule 37, the Court subject Defendant to the appropriate sanctions for its

spoliation of evidence and failure to comply with this Court's April 6, 2004 Order.

Ms. Koch also respectfully requests that the Court order Defendant LA Weight Loss to

pay her costs incurred in filing this motion necessitated by LA Weight Loss' failure to

preserve critical documents and refusal to properly answer interrogatories.

Respectfully submitted,

_____

Pamela J. White, Bar No. 00181
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21201
Telephone Number: (410) 347-7323
Facsimile Number: (410) 547-0699
E-mail address: pjwhite@ober.com