# OBER | KALER
### A Professional Corporation

**Ober, Kaler, Grimes & Shriver**
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com

**Pamela J. White**
pjwhite@ober.com
410-347-7323

**Offices In**
Maryland
Washington, D.C.
Virginia

May 13, 2004

**VIA FACSIMILE AND U.S. MAIL**

David E. Landau, Esquire
David L. Gollin, Esquire
Wolf, Block, Schorr & Solis-Cohen, LLP
1650 Arch Street, 22nd Floor
Philadelphia, Pennsylvania 19103

   *Re:*  *EEOC v. LA Weight Loss*
      Civil Action No.: WDQ-02-CV-648

Dear Counsel:

   Your correspondence dated May 7, 2004, encloses LA Weight Loss' "Second Supplemental Responses" to Koch's Interrogatories and Document Requests. Upon an initial review of the responses, I remain deeply dissatisfied. Although Ms. Koch and I continue to review LA's responses, while I contemplate filing a Rule 37 (b) motion for sanctions, I address several critical points at this time.

   First, I am shocked at the absence of a privilege log.[1] Defendant has stated that it "has no objection to logging as privileged attorney-client communications relating to Kathy Koch before the EEOC filed this lawsuit, including such documents created while her charges were pending before the EEOC." Ms. Koch requires such a privilege log, in accordance with Judge Grimm's order, immediately. As Judge Grimm cautioned, "an incomplete or evasive answer will violate

---

[1] I understand that LA Weight Loss objects to Judge Grimm's Order on the production of a privilege log reflecting correspondence after the EEOC filed its suit. Ms. Koch has not filed an opposition to this objection. There is, however, no excuse for the delay in furnishing a privilege log reflecting communications up until the EEOC's filing.

OBER | KALER
A Professional Corporation

David E. Landau, Esquire
David L. Gollin, Esquire
May 13, 2004
Page 2

both Rule 37 (a)(3) and [the] Court's order, and may subject Defendant to appropriate 37 (b)(2) sanctions."

LA Weight Loss' responses to Koch's remaining requests for production are similarly inadequate. In fact, LA's Second Supplemental Responses furnish just three additional documents, which are copies of letters from Koch's counsel. Please advise me of the source of these copies – and the source of the fax transmittal notice(s) on those copies. Of most concern is LA's response to Ms. Koch's Request No. 26, the request for training materials. The only training documents that have been produced by the parties to this litigation, were produced by the EEOC and Ms. Koch. LA explains that it is not in possession of any training documents because the programs and techniques were constantly being refined, pages were added and subtracted from the training agenda frequently, and the company did not maintain these records. The affidavits of Kristi O'Brien and Karen Siegel do not offer any explanation as to how these records were created, constantly edited, and then discarded in any manner or pursuant to any retention or destruction policy that might detail the loss of such records. Especially with regard to training materials, LA Weight Loss has not produced any electronic communications and/or word processing materials in this case, nor has it ever addressed its electronic systems and the existence (or nonexistence) of electronically stored information.

Judge Grimm specifically ordered that Defendant "particularize the efforts taken to locate the responsive documents. . .." LA Weight Loss has simply failed to do so. Instead, you merely state:

> In April 1998, when Koch's demand letter was received . . . the Company attempted to locate all documents relevant to Koch's employment. It also searched for documents after receiving Koch's EEOC charge of discrimination filed with the EEOC. All such documents have been produced."

You do not "particularize" Defendant's efforts; you do not explain how and where Defendant searched, or individuals consulted and involved in its efforts. In addition, no mention is made concerning any current efforts to locate such documents.

LA's explanation why Koch's training materials, including the flip charts, blank tests, and completed training tests, were not preserved is inadequate. The fact that LA did not consider Koch's training materials to be "personnel records" does not absolve it from its duty to preserve

725423.1

OBER | KALER
A Professional Corporation

David E. Landau, Esquire
David L. Gollin, Esquire
May 13, 2004
Page 3

all documents relevant to Koch's employment performance and circumstances. LA's response does nothing more than indicate that spoliation of evidence has occurred.

Concern for spoliation appears from review of the very "personnel records" to which you have confirmed Defendant's production. Attached to this letter is a copy of Kathy Koch's "Employee Agreement", signed on November 10, 1997, as produced in her personnel file. That "Employee Agreement" describes the obligation of departing employees to leave and/or return to Employer "all documents, records, manuals, notebooks containing any of the information..." to be protected from disclosure outside of LA Weight Loss, including "any information of any nature or description concerning the names of any of its clients, the charges it makes or has made, or any other information of or concerning the business of Employer, its plans, procedures, or other data of any nature or description...." The importance of securing and protecting such business records to LA Weight Loss is apparent.[2] It is not apparent, yet, in Defendant's discovery responses, what happened to any training materials or any other relevant "documents, records, manuals, notebooks" held or returned by Koch or any other terminated employees or used by Kristi O'Brien and Lynne Portlock, for example.

Finally, several of Ms. Koch's interrogatories request that LA Weight Loss identify both persons with knowledge and relevant documents. In response, LA has merely named individuals and a sampling of some responsive documents without properly "identifying" either. LA fails to provide any contact information for individuals with knowledge, (some mentioned for the first time), including addresses and telephone numbers. LA also fails to fully and properly identify documents, especially documents lost or not produced, as instructed describing the nature of the document, the date it was written, its subject matter, and the name of the author, addressee(s), and any other recipient(s).

---

[2] The importance of training materials, in particular is reiterated in your second supplemental response to document request no. 26:

"Trainers were expected to train employees in all areas of sales and service of the LA Weight Loss Program.... Koch was to utilize the information contained in her training manual in the preparation of handouts, tests, demonstrative aides utilized during her training sessions."

In your first position statement to the EEOC dated January, 1999, you reported that after about six weeks on the job, in late 1997 and early 1998, "it was discovered that Ms. Koch was improperly and ineffectively training counselors."

725423.1

OBER | KALER
A Professional Corporation

David E. Landau, Esquire
David L. Gollin, Esquire
May 13, 2004
Page 4

As stated above, I expect to prepare a Rule 37 (b) motion addressing these matters and detailing how LA's lack of preservation and production severely prejudices Ms. Koch's ability to address any performance-based defense LA asserts in this matter. In the meantime, I require at least, an appropriate privilege log from your client.

Very truly yours,

Pamela J. White

PJW/cnb
cc:    Ronald L. Phillips, Esquire (via facsimile & U.S. mail)

725423.1

# *EMPLOYEE AGREEMENT*

AGREEMENT between the above Employer and the undersigned Employee:

1) All new and re-hired Employees shall serve an initial probationary period of ninety (90) days, starting with their first day of employment or re-employment. Employees shall also serve a probationary period of ninety (90) days whenever they are promoted, demoted, or transferred to a new position or to another center location.

2) Employee agrees that (s)he will at all time faithfully and to the best of her/his ability perform all of the duties that may be required of her/him. Such duties shall be rendered at such places as Employer or as the interest, needs, business and opportunities of Employer shall require or make advisable.

3) Employee agrees that during the term hereof, (s)he will not be involved, directly or indirectly, in any other weight reduction business similar to Employer's business.

4) Employee agrees that (s)he will not at any time disclose or communicate any information of any nature or description concerning the names of any of its clients, the charges it makes or has made, or any other information of or concerning the business of Employer, its plans, procedures, or other data of any nature or description without regard to whether any or all of such matters would be deemed confidential, material, or important.

5) Upon termination of employment, all documents, records, manuals, notebooks containing any of the information referred to in #4, including copies thereof, whether prepared by Employee or Employer, will be left and/or returned to Employer.

6) Upon termination of employment, by discharge or otherwise, Employee shall not directly or indirectly, within 50 miles of any Employer location, enter into or engage in the weight reduction business or any branch thereof, whether or not said business utilizes precisely the same format or otherwise, joint venture, or as an employee or agent, for any person, or as an officer, director or shareholder of a corporation or otherwise, for a period of three(3) years after the date of termination of employment hereunder. This covenant on the part of the Employee shall be construed as an agreement independent of any other provision in this agreement; and the parties acknowledge that this covenant is strictly bargained for and is an essential element of the employment relationship.

(continued on opposite side)

LA-0106434



## BENEFITS PACKAGE

The following benefits apply to full time employees only
(effective only after 90 days of full time (36 hours)employment)

I. Sick Days
- All full time employees will be entitled to 1 sick day for every 73 calendar days of full time employment
- Maximum of 5 sick days per year
- For every sick day not taken by the end of 1 full year of full time employment, employee shall receive a $40 bonus in recognition of their superior attendance. Maximum yearly bonus being $200 per year. Sick days cannot be accrued to the following year
- Personnel reserves the right to request a doctor's note for sick days taken prior to payment for said date
- Sick days are not personal days and I understand that I will not be paid for any approved personal days
- Salaried employees will receive their base pay along with their normal percentage of $1,500 only if center hits $1,500 or over with no bonuses

II. Vacations
- 5 days after 1 year of employment
- 10 days after 2 years of employment
- Vacation cannot be accrued to the following year
- Salaried employees will be paid their base pay along with normal percentage on commissions with no bonuses

III. Health Insurance
- To start on the 1st of the month after the 90 day
- Employee contributes 25% to the plan and 100% for additional spouse and dependents

IV. Paid Holidays
- Recognized dates:
  1. New Year's Day
  2. Memorial Day
  3. Independence Day
  4. Labor Day
  5. Thanksgiving Day
  6. Christmas Day
- Hourly employees pay is based on an 8 hour day x hourly rate
- Employees paid on a base + commission schedule will have their holiday pay based on their base pay only

_____
Employee Signature

11/16/97
Date

LA-010643