## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

EQUAL EMPLOYMENT OPPORTUNITY ) 
COMMISSION, )
                          )
           Plaintiff, )
                          )
           and )
                          )
KATHY C. KOCH, )      Case No. WDQ-02-CV-648
                          )      (Magistrate Judge Paul W. Grimm)
           Plaintiff Intervenor, )
                          )
           v. )
                          )
LA WEIGHT LOSS CENTERS, INC., )
                          )
           Defendant. )
_____ )

## DEFENDANT LA WEIGHT LOSS CENTERS, INC.'S RESPONSE TO
## PLAINTIFF INTERVENOR KATHY C. KOCH'S MOTION FOR SANCTIONS

Plaintiff Kathy C. Koch's ("Koch") Motion for Sanctions (the "Motion") has two different parts: (1) the allegations that LA Weight Loss Centers, Inc. ("LAWL" or the "Company") failed to preserve documents in accordance with its discovery obligations; and (2) the allegation that LAWL failed to comply with the Court's April 6, 2004, Order ("the Order") requiring it to provide supplemental discovery responses to certain of Koch's interrogatories. LAWL submits that it has engaged in no sanctionable conduct with respect to preservation of documents and that it has complied fully with the Order.

I.    **THE MOTION FOR SANCTIONS REGARDING FAILURE TO PRESERVE**

    A.    **Factual Background**

The Court is well versed with the facts underlying Koch's claim of retaliatory discharge. Accordingly, LAWL will detail only the facts relevant to the discovery at issue in Koch's motion for sanctions.

            1.    **Koch's Substandard Performance**

Shortly after she was hired as a trainer in November 1997, LAWL found Koch's performance deficient. Koch was improperly and ineffectively training counselors by failing, among other things, to follow the LAWL training program. On or around March 6, 1998, Koch was given a written warning documenting her substandard performance. Notwithstanding, Koch's lackluster performance did not improve.

            2.    **Koch's March 8, 1998, Letter to Lynne Portlock**

Shortly after March 8, 1998, Lynne Portlock, Koch's direct supervisor, received a letter from Koch. See March 8, 1998, letter, attached hereto as Exhibit A. The letter was largely an attempt at rebuttal about the written warning  Koch received two days earlier concerning her substandard performance. The letter suggested that the real purpose of the warning was to "achieve unknown alternative purposes since I have not followed company hiring policy." Id. There is no reference to what "company hiring policy" Koch was referring, and says that Koch initiated a formal complaint with the "EEOC" to protest the "employment policies of LA Weight Loss Centers." Id. Once again, there was nothing to shed light on what "employment policies" were at issue.

The only practices specifically complained of in the letter were "several incidents of intolerable sexual harassment." Id. It was the "sexual harassment" claim that impressed Portlock. At her deposition, Portlock testified as to her impressions of the letter:

A:    I think I more or less concentrated on the sexual harassment. . .

A:    I didn't understand.  What -- my first reaction, what you asked me was that, how did you first feel.  I was confused.

Q:    Then when it was explained to you, how did you feel?

A:    Well, it wasn't explained to me.  I called and -- made a call to the Department of Labor to ask them what my rights were and what I could do.

Q:    And they explained to you what sexual harassment could be, correct?

A:    Re-explained it to me, yes.

Q:    Then how did you feel about Kathy Koch's [March 8, 1998] letter?

A:    I was still confused, because then I had to talk to her to ask her specifically, what did she mean by the sexual harassment.

Q:    Then she told you, right?

A:    Yes.

Portlock Dep., at pp. 314:11-12; 319:8 - 320:4, attached hereto as Exhibit B.

Portlock further testified about her response to the letter:

A:    . . . So I called the Department of Labor because I didn't understand what was clarifying [sic] as sexual harassment.  So when I called them up I read them the letter, so they helped me clarify it.  And I said: What do I do as the employer, because apparently there's been a miscommunication.  Apparently, something broke down.

She said:  Well, you have to -- you should call the person, have a conversation with them, have them explain to you what they meant by -- verbally explain to you what they meant by "sexual harassment" and then you have to recant your statement, and that I did.

Id. at pp. 421:24-422:15.

As Portlock testified, she believed that Koch was making a complaint of sexual harassment on March 8, 1998. She did not understand it to be a complaint of retaliatory discharge. Further, that complaint was promptly addressed and corrected in the manner prescribed by the Department of Labor.

In addition to calling the Department of Labor, Portlock telephoned her supervisor, Eileen Stankunas,[1] to inform her of the letter. Stankunus told Portlock to contact human resources.

On March 12, 1998, Koch was dismissed for failing to correct the performance issues about which she was warned. Koch never alleged a claim of retaliatory discharge until over six weeks later. Sometime after Koch's employment was terminated, Portlock discussed Koch's discharge with human resources. See Exhibit B at pp. 421-22; 433-36. Although Portlock cannot remember if she provided Stankunus with a copy of the letter, she testified that she and Stankunus "didn't have much time to talk" about the issue. Id. at 436:13-14. Further, Portlock specifically recalled that she never spoke to Stankunus about the EEOC:

> Q:    Did you ever have a conversation with Eileen Stankunus about the fact that Ms. Koch was making a complaint to the EEOC?
>
> A:    No.

Id. at 436:21-24 - 437:1.

As Portlock's testimony demonstrates, Stankunus was not on notice that Koch filed a retaliatory discharge claim with the EEOC. Stankunus was only aware that Portlock received a letter complaining of sexual harassment and, accordingly, she instructed Portlock to inform

---

[1]    Stankunus is a former LAWL employee and was terminated by the Company in June 2002.

LAWL's human resources department.  There is no evidence, however, that Portlock ever did so.

Although she remembers communicating with Karen Siegel about Koch, she does not remember

when.  Siegel stated that she did not talk to Portlock until after April 21, 1998.  Exhibit D.

### 3.    Training Documents Retained by Koch and Materials Returned

Koch alleges LAWL destroyed "all its training materials."  Memorandum at p. 13.  That

statement is not true.  Upon her discharge, Koch did not return a number of her training materials

to LAWL.  Rather, Koch retained these documents and turned them over to the EEOC.  As Koch

testified:

> Q:    Were there L.A. Weight Loss documents such as training
> manuals or a bloodborne pathogen training session document that
> you had at your home, for example, and not in your car at the time
> you were discharged?
>
> A:    At the time I was discharged I believed I had turned in
> everything.  When I packed to go to New York I found other items
> and turned them in.
>
> Q:    But you turned some of them over to the EEOC, some of
> them over to your lawyer.  Isn't that correct?
>
> A:    That is correct.

Koch Dep. at pp. 192:11-22, Exhibit C.

Koch then testified she returned only five types of LAWL documents in her possession

on the day she was discharged.  Specifically, she returned:  (1) one large flip-chart; (2) one small

flip-chart; (3) an expander file with training handouts; (4) new tests for counselors; and (5)

markers and stickers.  As Koch testified:

> Q:    . . . Can you tell me as specifically as you can what
> documents you returned to Lynne Portlock in that box the day you
> were terminated?
>
> A:    A large flip chart, a small flip chart, an expander file with
> various handouts for the training.  Specifically what those handouts
> were I cannot at this point recall.

But they were handouts as required by the company for the training . . . Copies of the test, a brand-new test, markers, stickers. Did I say a large flip chart?

Q:    Yes.

A:    Can you read the list back to me and I'll see if I can remember anything else, please.

Q:    Two flip charts, a large one and a small one.

A:    Correct.

Q:    Handouts for the training which were Xeroxed company forms type handouts.

A:    Correct.

Q:    A new test for the trainers.

A:    Correct.

Q:    For the counselors.  I'm sorry.  Markers?

A:    Stickers.

Q:    And stickers . . .

Q:    Anything else?

A:    I don't believe.  At this time I can't recall any.

Id. at pp. 193:21-195:13.  This was the extent of the materials returned by Koch and it is these documents that are now at issue.  Koch retained other training materials -- namely, her training manuals and instructions she received from LAWL -- and provided them to the EEOC.  Id. at 193.

### 4.    Document Retention Policy in 1997 and 1998

At the time of Koch's discharge, LAWL's policy was to preserve personnel records only. See Exhibit D at ¶8.  LAWL considered personnel records to include:  (1) applications and resumes; (2) employee change forms; (3) new hire information; (4) payroll and salary

information; (5) benefits elections; (6) job performance information; and (6) attendance records. Id. Pursuant to this policy, training materials such as blank test forms, completed tests and flip charts were not routinely maintained. In keeping with this policy, Koch's personnel file, including job performance information, was maintained (and produced in discovery). The training materials and demonstratives that Koch returned to LAWL were not preserved because they are not personnel records. They were used by other trainers or discarded weeks in between Koch's discharge and the time LAWL had notice of Koch's retaliatory discharge claim. Id. at ¶ 9. Similarly, completed tests from trainings were disposed of after they were reviewed with trainees and center managers. Id.

### 5.    Koch's April 21, 1998, Letter to LAWL

Sometime after April 21, 1998, LAWL received a letter from Koch's counsel advising that Koch believed that she was discharged in retaliation for filing a complaint with the EEOC on the basis of LAWL's allegedly gender-biased hiring policies. See April 21, 1998, letter, attached hereto as Exhibit E. This was LAWL's first awareness of Koch's claims of retaliatory, discharge, her only cause of action in this lawsuit.

### 6.    LAWL's Investigation of Koch's Retaliatory Discharge Claim

Upon receipt of Koch's April 21, 1998, letter, LAWL investigated Koch's complaint of retaliation. See Exhibit D at ¶2-7. Karen Siegel, a senior executive and head of LAWL's human resources department, conducted the investigation. Id. She did not, however, contemporaneously document her investigation.

Siegel's investigation involved obtaining a copy of Koch's personnel file, which included complaints by managers and trainees regarding Koch's job performance. Id. Siegel also spoke to LAWL employees who potentially had relevant information and documents -- namely, Lynne Portlock and Kristi O'Brien. Id. Siegel inquired whether either of them had any documents in

their possession relating to Koch.  Id.  Portlock had a note regarding Koch's discharge meeting. Id.  The note was forwarded to Siegel and produced in discovery.  Id.  O'Brien did not have any documents.  Id.  Indeed, O'Brien testified that she did not have any documents regarding Koch and that it is her practice to turn over any performance-related documents or notes to human resources for placement in an employee's personnel file.  O'Brien Dep. at p. 265, attached hereto as Exhibit F.  Siegel performed another search for documents after Koch's charge of discrimination was filed with the EEOC.  Exhibit D at ¶6. This search entailed once again speaking with Portlock and O'Brien.  No additional documents were found.  Id.

### 7.    Koch's Motion for Failure to Preserve

Koch now seeks evidence preclusion and an adverse inference on the basis of her assertion that, in flagrant disregard of its discovery obligations, LAWL destroyed or discarded certain documents.  Sifting through Koch's lengthy argument, it appears that the materials allegedly destroyed are those described on page 17 of her brief - training materials returned by Koch to LAWL and training materials actually used by Koch:  (1) one large flip-chart; (2) one small flip-chart; (3) an expander file with training handouts; (4) new tests for counselors; (5) completed tests for counselors; and (6) evidence of LAWL's internal investigation of Koch's retaliatory discharge claim.  Other than the evidence of LAWL's internal investigation, which does not, and has never existed,  LAWL reiterates that it does not have the documents Koch seeks.  LAWL was never under any obligation to preserve the documents, and the fact that they are not in LAWL's possession is not sanctionable.

### B.    Argument

The spoliation doctrine is a rule of evidence, administered at the discretion of the trial court to respond to circumstances in which a party fails to present, loses, or destroys evidence. See Anderson v. National R.R. Passenger Corp., 866 F.Supp. 937, 945 (E.D. Va. 1994), aff'd, 74

F.3d 1230 (4th Cir. 1996).  See also Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th

Cir. 1995).  "Spoliation refers to the destruction or material alteration of evidence or the failure

to preserve property for another's use as evidence in pending or reasonably foreseeable

litigation."    Silvestri v. General Motors Corp., 271 F.3d 586, 590 (4th Cir. 2001).  The court

should consider the blameworthiness of the parties and prejudice to the opposing party.  See

Anderson, 866 F.Supp. at 945.  An adverse inference instruction is a severe sanction that often

ends litigation -- "it is too difficult a hurdle for the spoliator to overcome…. The party suffering

this instruction will be hard-pressed to prevail on the merits.  Accordingly, the adverse inference

instruction should not be given lightly."  Thompson v. United States Dept. of Housing and Urban

Dev., 219 F.R.D. 93, 100-101 (D. Md. 2003) (citing Zubalake v. UBS Warburg LLC, 2003 WL

22410619 at *5 (S.D.N.Y. Oct. 22, 2003)).

To get an adverse inference instruction for spoliation of evidence, a party must show that:

(1) the adverse party had control over the evidence and had an obligation to preserve it when it

was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of

mind;" and (3) the evidence that was destroyed or altered was "relevant" to a parties claims or

defenses.  Id.    In Thompson, the court found that:  (1) the defendants were under a duty to

preserve records as of the date the lawsuit was filed; (2) they failed in their duty; (3) the spoliated

records were relevant to the plaintiff's claims; and (4) the failure to produce the records was done

with, at a minimum, a negligent state of mind.  Despite these findings, the court did not provide

plaintiffs with the adverse inference instruction they were seeking.

Moreover, the second prong of the test is not satisfied simply by negligent loss or

destruction of evidence.  Id.  Rather, it requires a showing that a party knew the evidence sought

was relevant to an issue at trial and at least negligently destroyed or that a party's conduct

resulting in loss or destruction of documents was <u>willful</u>. <u>Id.</u> Here, LAWL was under no obligation to preserve any evidence at the time the documents at issue were returned to the Company.

Koch's motion also seeks "evidence preclusion regarding [LAWL's] performance-based defense." The memorandum in support of that motion, however, does not argue why evidence preclusion is an appropriate remedy for LAWL's alleged conduct. In fact, she fails to set out the appropriate legal standard for evidence preclusion.

In <u>Southern States Rack and Fixture, Inc. v. Sherwin Williams</u>, 318 F.3d 592 (4th Cir. 2003), the Fourth Circuit identified a five-factor test to guide the trial court in determining appropriate sanctions to impose under Rule 37: (1) surprise to the party against whom evidence would be offered; (2) ability of that party to cure the surprise; (3) extent to which allowing the evidence would disrupt the trial; (4) importance of the discovery; and (5) explanation of the non-disclosing party for its failure to provide the discovery. <u>See</u> <u>Thompson</u>, 219 F.R.D. at 103 ("the court's analysis in <u>Southern States</u> is helpful in addressing a request for sanctions under Rule 37(b) and provides a useful measure to insure against unwarranted imposition of sanctions that may be so severe as to end, or severely damage, a party's ability to present its case at trial.").

In <u>Thompson</u>, the court imposed evidence preclusion sanctions <u>only</u> after determining that the nearly 80,000 e-mails produced after the discovery cutoff could not be reviewed and digested by the plaintiff. <u>Id.</u> at 103-104. In this case, Koch cannot satisfy even the first prong of the <u>Southern States</u> test because she does not and cannot allege surprise. This case is over one

year away from trial and, accordingly, evidence preclusion on the basis of surprise is both premature and unwarranted.[2]

        **1.**     **LAWL Did Not Have Any Duty to Preserve Documents Until Receipt of the April 21, 1998, Letter From Koch's Counsel**

The duty to preserve material evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation. Thompson, 219 F.R.D. at 100. Where no duty exists, spoliation cannot occur. See also Silvestri, 271 F.3d at 591 (duty to preserve triggered when party reasonably should know that evidence may be relevant to anticipated litigation). Here, Koch does not and cannot satisfy this threshold inquiry.

LAWL's duty to preserve the purportedly lost or destroyed documents sought by Koch arose on April 21, 1998, at the earliest. Exhibit D at ¶ 1. On March 12, 1998, the day Koch was terminated, she had not filed for charge or retaliatory discharge with the EEOC, nor had her counsel sent a demand letter. Koch's March 8, 1998, letter to Portlock says that she lodged a complaint with the EEOC about LAWL's "employment policies." "Employment policies," however, is so broad that it would have been unreasonable for LAWL to anticipate that Koch's performance as a trainer would be relevant to future litigation. The March 8, 1998, letter makes no reference to retaliatory discharge. In fact, it could not have because Koch's employment was not terminated until four days after Koch authored the letter.

Nor would it have been reasonable for LAWL to anticipate litigation concerning the adequacy of Koch's job performance simply because she referred to "company hiring policy." If anything, LAWL might have expected litigation concerning the "several incidents of intolerable

---

[2]     Koch does not cite a single case in support of her motion for evidence preclusion on the basis of spoliation because LAWL has not been able to locate one.

sexual harassment" about which she complained.  Despite Koch's assertion to the contrary, unrelated lawsuits, complaints and Koch's verbal protests about hiring policies are not sufficient to put a "litigation hold" on all documents relating to Koch's job as a trainer.[3]  LAWL did not, therefore, have any obligation to preserve Koch's training materials and demonstratives between the time of her discharge on March 12, 1998, and receipt of the April 21, 1998, letter threatening litigation.

### 2.    LAWL Did Not Willfully Destroy or Discard Relevant Documents

Even if LAWL could reasonably foresee litigation at the time of her discharge, Koch is not entitled to an adverse inference (or evidence preclusion) because LAWL did not have a "culpable state of mind."  <u>Vodusek</u>, 71 F.3d at 156 (an adverse inference is not appropriate if a piece of evidence was disposed of prior to the possessor learning it may be relevant to litigation against it).

In this case, LAWL  did not willfully discard or destroy Koch's training materials with an awareness of their potential relevance to future litigation.  <u>See</u> Exhibit D at ¶1.  The company did not perceive or understand the letter to threaten litigation.  The record shows LAWL saw the letter as a component of sexual harassment, not retaliatory discharge.  The letter did not alert LAWL to the fact that the specific documents at issue here -- generic training materials -- would be relevant to potential litigation because they do not pertain to employment policies or sexual harassment.

---

[3]      Koch devotes nearly one full page of her brief to Sandra Brown-Talavera's February 1998, claims of gender-biased hiring policies.  Brown-Talavera, who was employed in northern New Jersey, however, is irrelevant for purposes of determining when LAWL had notice that litigation was threatened by Koch, or when LAWL purportedly knew that Koch's training materials might be relevant to litigation.

Moreover, the materials underlying Koch's Motion are not particular to her and do not reflect her performance as a trainer. They are company-generated, basic, non-specific, unannotated materials akin to an instruction manual. Even if they were available, they could not possibly help Koch "address and respond to LAWL's allegation of performance deficiencies," because they do not reflect the way in which Koch used them to train LAWL employees. It is, in part, Koch's poor utilization of training materials that led to her dismissal, not the materials themselves. See Exhibit F at pp. 262-64.

Koch's suggestion that completed tests could be used to rebut LAWL's performance-based defense is wrong. Koch presents no evidence that completed tests were used to evaluate trainers. To the contrary, training was judged by counselor performance in the centers, and the counselors Koch trained did not and could not perform well. As O'Brien testified, there were "employees [trained by Koch] that were in the field no prepared to conduct and feeling competent and comfortable conducting the daily visits, the medical histories and the chart work-ups." Exhibit F at p. 262:1-8.

LAWL's destruction of Koch's flip charts and blank and completed trainee tests was, at worst, unknowing and in keeping with LAWL's document retention policy. See Exhibit D at ¶ 8. It was not, however, conduct sanctionable by the Court.

Finally, although Koch's motion seeks "[e]vidence preclusion concerning any alleged investigation into [her] retaliation claim," Koch's memorandum fails to even mention why she believes the investigation was documented. LAWL has on numerous occasions informed Koch that the investigation into her claim was: (1) performed by Karen Siegel, a current employee of LAWL and the senior executive responsible for human resources; and (2) not contemporaneously documented. See Exhibit D at ¶¶ 2-7. Most recently, LAWL produced to

Koch the Supplemental Affidavit of Karen Siegel detailing her investigation, including whom Siegel spoke to, which documents she searched for and found or did not find. <u>Id.</u> Siegel is and has been available for deposition on this subject. Yet, in the two years since this lawsuit began, Koch has not availed herself of the opportunity to question Siegel about her investigation.

Koch's accusations that her "proof is impaired by [LAWL's] destruction" and that LAWL "refuse[s] to provide any basic information" in deposition is conclusory at best. Nearly six years have elapsed since the events giving rise to this case, and deponents' memories of those events are not fresh. Failure to recollect, however, is not sanctionable. LAWL is equally stuck with its witnesses' testimony of events surrounding Koch's termination, making the "evidentiary playing field" even. A failure to recollect goes to credibility, not culpability, and is not sanctionable conduct. Accordingly, her motion for sanctions should be denied.

### 3. LAWL Was Not Required to Maintain Koch's Training Materials Because They Are Not Personnel Records

Koch also seeks an adverse inference pursuant to Title VII's document retention requirements. That requirement, however, is a specific cause of action whose disposition must be made by the finder of fact after trial. Koch's attempt to force a determination on the merits of Count I of the Amended Complaint through a discovery sanctions motion is improper and should not be countenanced. At very least, LAWL respectfully requests an evidentiary hearing and full briefing of this issue.

Assuming <u>arguendo</u> that the Court considers this issuue, § 2000e-8 of Title VII is inapplicable because the documents are not personnel records and are not related to the claims or defenses in this case. Title VII requires every employer to: "(1) make and keep such records relevant to the determination of whether unlawful employment practices have been or are being

committed, (2) preserve such records for such periods, and (3) make such reports therefrom as the Commission shall prescribe by regulation or order. . . ." 42 U.S.C.A. § 2000e-8.

Koch's argument that a negative inference (or evidence preclusion) is warranted because generic training materials are personnel records within the ambit of § 2000e-8 is wrong. Training materials are not personnel records. Title VII's implementing regulations clearly state that personnel records include "requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship. . . " 29 C.F.R. § 1602.14. As discussed above, the materials here were not specific to Koch. They would not reflect her performance as a trainer and therefore have no bearing on hiring, promotion, demotion, transfer, lay-off or termination. They do not affect pay or other terms of compensation, and they do not reflect requests for accommodation or application forms. As such, Title VII's document retention requirements are inapplicable to the discovery Koch seeks.

Koch also contends that LAWL destroyed Kristi O'Brien's notes concerning Koch's substandard trainer performance and dismissal. See Memorandum at p. 18. In support of her contention, Koch references O'Brien's deposition testimony. Koch argues that O'Brien testified to preparing notes regarding Koch's performance and termination, and that those notes constitute personnel documents. An accurate reading of O'Brien's testimony shows that she did not remember whether or not she took any notes during conversations with Koch.[4] Exhibit F at p. 265. O'Brien also testified that she generally took notes during conversations involving trainer performance and that if she had taken notes she would have placed them in Koch's

---

[4]    LAWL notes Koch fails to include citations to O'Brien's testimony in her motion.

personnel file.  <u>Id.</u> at 266.    Further, she testified that she did not recall placing any notes in Koch's personnel file.  <u>Id.</u>    Accordingly, Koch has no basis upon which to accuse LAWL of destroying O'Brien's purported notes, and Koch's motion should be denied.

## II.    THE MOTION FOR SANCTIONS REGARDING THE ORDER

On September 16, 2003, Koch filed a motion to compel demanding production of documents and answers to interrogatories.  On April 6, 2004, the Court overruled LAWL's objections, ordered compliance with Koch's discovery requests and instructed LAWL to particularize facts related to its efforts to locate responsive training materials.  Docket No. 70.  Thereafter, LAWL served Second and Third Supplemental Responses to Intervenor Plaintiff's Interrogatories and Requests for Production of Documents, attached hereto as Exhibits G and H, respectively.

In the Motion, Koch contends that she is entitled to discovery sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(C) because LAWL's supplemental responses to four interrogatories and its privilege log are deficient in violation of the Court's Order.  In deciding the appropriateness of discovery sanctions, the Court must consider: (1) the bad faith of the non-complying party; (2) any prejudice caused by the noncompliance; (3) the need for deterring future noncompliance; and (4) the effectiveness of less drastic sanctions.  <u>See</u> <u>Riggins v. Steel Technologies</u>, 48 Fed. Appx. 460, 462 (4th Cir. 2002)(citing  <u>Mutual Federal Savings & Loan Ass'n v. Richards & Associates, Inc.</u>, 872 F.2d 88 (4th Cir. 1989)).  Consideration of these four factors, however, does not arise until the Court first determines that a party has failed to comply with a discovery order.  <u>See</u> Fed. R. Civ. P. 37(b)(2)("If a party.... fails to obey an order to provide or permit discovery...").  Here, the Court need not reach the four factors set forth above because, despite Koch's assertions to the contrary, LAWL complied with the Order and did not engage in any sanctionable conduct.

A.     **LAWL Fully Complied with the Court's Order Regarding Interrogatories Nos. 6, 7 & 17**

As stated in the Court's Order, Intervenor/Plaintiff's First Set of Interrogatories to LA

Weight Loss ("Interrogatories") Nos. 6, 7 and 17 sought:

> **I 6** - Identify and describe each complaint (written, oral, internal,
> or outside) of retaliation made by any LA Weight Loss employees
> against any other employee, or against LA Weight Loss, in the
> MD/DE region from 1997 until the present.
>
> **I 7 -** Identify and describe all formal complaints of retaliation in
> the MD/DE region filed with the United States EEOC or any other
> human rights commission, or a lawsuit against LA Weight Loss
> from 1996 through the present.
>
> **I 17 -** Identify and describe all complaints (written, oral, internal,
> or outside) regarding LA Weight Loss's new hire application
> and/or hiring policies from 1997 to the present.

Docket No. 70.

> With respect to each of these three interrogatories, the Court expressly ordered LAWL to:

> [S]upplement its answer[s] to fully and completely respond to the
> interrogatory, including identifying persons with personal
> knowledge of the facts, and a description of any responsive
> documents, other than those already produced in response to RPD
> 5, in sufficient detail to enable Plaintiff to locate them.

Docket No. 70.

On May 7, 2004, LAWL provided Koch with Supplemental Discovery Responses. <u>See</u>

Exhibit G.  Specifically, with respect to Interrogatories Nos. 6, 7 and 17, LAWL identified all

formal and informal complaints of retaliation in the Maryland and Delaware region and those

regarding LAWL's application and/or new hire policy about which the Company is aware.  As

the Court ordered, for each complaint, LAWL also identified the nature of the complaint, the

persons with personal knowledge of the facts and a description of any responsive documents in

enough detail to enable Koch to locate them.  LAWL then made the responsive documents

available for inspection.

In addition, LAWL explained that it was not in possession of a database of informal complaints on the matters requested and that it has no knowledge of any other responsive complaints. Nevertheless, as stated in its answer, LAWL has undertaken a manual review of thousands of personnel files to verify once again that it has completely responded to these interrogatories. LAWL will produce further responsive information if any is located.[5]

In its supplemental responses, LAWL did not address complaints for which documents had already been produced to Koch (Interrogatory No. 5) because that category of documents was expressly excluded by the Court's Order. These complaints consisted of the complaints filed by Sandra Brown-Talavera, Warren Walker, Todd McCann and Nina Catagnus. Before this matter was referred to the Court, LAWL produced to Koch the litigation files related to the complaints filed by these individuals. LAWL produced all pleadings, position statements and documents submitted to the EEOC, deposition transcripts and document productions from these matters. LAWL also produced detailed privilege logs for all documents withheld from production from the litigation files in these matters.

Koch contends that LAWL did not comply with the Order because it: (1) failed to identify the Brown-Talavera, Walker, McCann and Catagnus complaints in its supplemental discovery responses; and (2) failed to identify any complaints raised by Koch. These contentions are without merit.

First, the Court's Order did not require LAWL to produce information pertaining to documents already produced in response to Request for Production No. 5. These documents consist of the litigation files in the Brown-Talavera, McCann, Walker and Catagnus matters.

---

[5]        Discovery in this case is ongoing until February 25, 2005.

Accordingly, LAWL reasonably read the Court's Order and excluded further supplementation of its answers pertaining to these four complaints.

It must be stressed that Koch is already in possession of the information regarding these four complaints that she now claims LAWL has failed to provide. For example, with respect to the Brown-Talavera complaint, Koch alleges that LAWL failed to comply with the Court's Order because it did not provide her with a description of the nature of the complaint, people with relevant knowledge and relevant documents. See Memorandum at pp. 25, 27. Koch's allegations ignore the fact that LAWL produced to Koch the litigation file from the Brown-Talavera complaint. This file contained pleadings, various discovery responses, productions and deposition transcripts, all of which clearly identify the nature of the claims, the individuals with knowledge of the facts and the relevant documents. Further, on August 1, 2003, Koch deposed Ms. Brown-Talavera in this matter and was free to ask her questions about her lawsuit. Similarly, for McCann, Walker and Catagnus matters, responsive information may be found in the position statements of LAWL submitted to the EEOC in these matters. The position statements were produced to Koch. Moreover, Koch deposed Catagnus in this matter. Therefore, all information responsive to these interrogatories has been produced.

Finally, with respect to Koch's allegations pertaining to the absence of information on Koch's alleged complaints in LAWL's supplemental answers to Interrogatories Nos. 6, 7 and 17, LAWL did not understand these interrogatories to seek information pertaining to Koch's complaints. Rather, LAWL reasonably interpreted these interrogatories as seeking information relating to complaints of retaliation and complaints about hiring made by persons other than Koch. This interpretation is premised upon the fact that Koch propounded, and LAWL responded to, numerous other discovery requests about Koch's complaints of retaliation and/or

alleged complaints concerning LAWL's hiring policies.  See Intervenor/Plaintiff's First Requests for Production of Documents and Things, attached hereto as Exhibit I, No. 3 (complaints raised by Koch); No. 16 (steps taken to investigate Koch's complaints);  Intervenor/Plaintiff's First Set of Interrogatories to Defendant, attached hereto as Exhibit J, Nos. 1 and 2 (identification of people with knowledge of Koch's complaint); No. 11 (identification of people who investigated Koch's complaint and their findings).  LAWL did not interpret Interrogatories Nos. 6, 7, and 17 as seeking duplicative information and did not understand the Court's Order to require it to re-disclose information specifically requested by other discovery requests.

To the extent the interrogatories at issue seek information pertaining to Koch's complaints of retaliation and LAWL's hiring policies, information has been provided to Koch throughout the course of discovery.  As discussed above, LAWL provided responses to the discovery requests that expressly concerned Koch's complaints.  Further, Lynn Portlock, Koch's direct supervisor, specifically testified to her response to Koch's March 8, 1998, letter.  Exhibit B at pp. 434: 9-12.  Portlock said that she believed the letter to be a complaint of sexual harassment, called the Delaware human rights commission seeking guidance about addressing Koch's concerns, and spoke to Koch about the letter.  Id. at pp. 432-34.  In addition, Siegel's Supplemental Affidavit of May 27, 2004, produced to Koch with LAWL's Third Supplemental Responses and attached hereto as Exhibit D, details LAWL's position that the April 21, 1998, letter from Koch's counsel was LAWL's first awareness of Koch's claims of retaliation and gender discrimination against men.  Exhibit D at ¶1.  Siegel's Supplemental Affidavit further details her investigation following receipt of the April 21, 1998 letter, including the individuals with whom she spoke and the documents she compiled.  Exhibit D at ¶¶ 2-7.

Accordingly, Koch's motion with respect to Interrogatories 6, 7 and 17 should be denied.

**B.    LAWL Fully Complied with the Court's Order Regarding Interrogatory No. 14**

As stated in the Court's Order, Koch's Interrogatory No. 14 sought:

> **I 14** - Identify and describe fully the agenda and content of all training provided to area corporate trainers, corporate trainers and/or service trainers in 1997 and 1998, to include the names of the trainers, etc.

Docket No. 70.

In response to the Court's Order to provide a supplemental response to this interrogatory, LAWL provided Koch with a detailed description of the length of the training program as it existed in 1997 and 1998, the topics covered, the materials utilized during training and the individuals who conducted the training. See Exhibit G. LAWL was unable to provide Koch with a list of the participants in the 1997 and 1998 trainings because, as explained in its supplemental discovery response, LAWL did not maintain lists of participants present at training programs. In an effort to provide as complete and thorough an answer as possible, however, LAWL stated that all employees of LAWL were expected to attend the five-day training program identified and that all trainers were expected to attend the "Train-the-Trainer" program, which was also identified. A list of trainers in 1997 and 1998 has already been produced. LAWL's supplemental answer to Interrogatory 14 complies with the Court's Order.

Koch argues LAWL did not identify exact training sessions, the number of certain sessions, attendees, the length of the sessions and what exactly was covered in each session. LAWL is not in possession of this information. As explained above and in its response to Interrogatory No. 14, LAWL did not maintain rosters and schedules of the training classes held in 1997 and 1998. It is not aware of the exact training sessions held, attendees, length of each session, and/or what was covered in each individual session. If LAWL were in possession of this

information, it would provide it.  LAWL should not be found in violation of the Court's Order for failing to provide information that it does not possess.[6]

### C.    LAWL's Privilege Log Is Proper

Koch's Request for Production No. 7 sought:

> **RPD 7** - All correspondence between Kathy Koch and LA Weight Loss, or any correspondence concerning Kathy Koch by or to any LA Weight Loss employee, or concerning Kathy Koch by or to the EEOC or to any person other than LA Weight Loss.

Docket No. 70.

In its Order, the Court instructed LAWL to produce documents responsive to this request and further instructed LAWL to provide a privilege log in compliance with Guideline 9.c, Appendix A to the Local Rules of the Court for any documents withheld from production on the basis of privilege or the work product doctrine.  <u>See</u> Docket No. 70.

LAWL filed an Objection to Order with respect to its ruling on RPD 7.  In its objection LAWL stated it would produce documents and/or a privilege log in response to RPD 7 with respect to documents created prior to the complaint in this matter, but not after the litigation began.  Koch did not oppose the objection.  The objection has not yet been ruled upon; nevertheless, LAWL has produced documents and a privilege log up to the point when the EEOC filed its complaint in this matter.

---

[6]    Plaintiff also takes issue with the fact that LAWL identified the information contained in the "First Field Trainers'" Manual as information similar to what was provided to trainers during "Train the Trainer" programs in 1997 and 1998.  LAWL identified this information in an effort to provide as complete an answer as possible to Interrogatory No. 14.  LAWL is not in possession of the exact material utilized by trainers during these programs in 1997 and 1998.  LAWL was able, however, to identify this Manual, which was produced by Koch, as similar to the information used during the Train-the-Trainer program.  This is not an evasive response, but rather an attempt to provide whatever information LAWL can with respect to what training materials were in use in 1997 and 1998.

In response to this request, LAWL provided Koch with copies of all correspondence between Koch and LAWL, as well as all correspondence concerning Koch by or to LAWL or the EEOC up until the time the EEOC filed its complaint in this matter.  <u>See</u> Exhibit H.  LAWL also identified for Koch the location of the originals of these documents.

LAWL provided Koch with a privilege log identifying any documents and/or portions of documents withheld from production on the basis of attorney-client privilege and/or the work product doctrine.  Exhibit K.  LAWL's privilege log complies with the requirements of Discovery Guideline 9.c, as it identifies the date of the document, the author, the recipient, a description of the document and the basis upon which the document or portion of the document is being withheld from production.

In her motion, Koch does not take issue with LAWL's production of documents in response to this request, nor does she object to the form or content of LAWL's privilege log.  Rather, Koch challenges the adequacy of LAWL's privilege log because it contains four entries.

Koch does not offer any evidence that LAWL withheld a single document encompassed by this request and ordered produced by the Court that was not disclosed in its privilege log.  Instead, Koch supports her objection to LAWL's privilege log with baseless conclusory accusations that LAWL must have "destroyed" notes and failed to conduct any investigation because LAWL's privilege log does not contain the information she "expected" to receive.  Koch's unsupported accusations are without merit.  LAWL produced all non-privileged documents responsive to Request for Production No. 7 and provided a proper privilege log as ordered by the Court.  There is no evidence to the contrary.  Although Koch "expected" to receive more, four documents is all there is to log.  Koch suggests that her request seeks production of documents beyond correspondence and also encompasses all "communications"

and "notes". This is not the case. The request is limited to certain "correspondence," and LAWL thus fully responded as ordered by the Court. If "notes" had been submitted with or attached to correspondence, they would have been produced or listed on the privilege log. Accordingly, Koch's Motion should be denied.

## III.    CONCLUSION

For the foregoing reasons, LAWL respectfully requests that the Court deny Koch's Motion for Sanctions.

Respectfully submitted,

_____/s/_____

David Landau
Larry Spector
Jonathan Wetchler
David Gollin
WOLF, BLOCK, SCHORR AND SOLIS-COHEN
1650 Arch St, 22d Floor
Philadelphia, PA 19103-2097
215 977 2052

Elizabeth Torphy-Donzella
Bar No. 10809
SHAWE & ROSENTHAL, LLP
20 S. Charles St.
Baltimore, MD 21201
410 742 1040

**Attorneys for Defendant**
**LA Weight Loss Centers, Inc.**

Dated: June 21, 2004

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing Defendant LA Weight Loss Centers, Inc.'s Response to Plaintiff Intervenor Kathy C. Koch's Motion for Sanctions to be filed and served electronically on this day, the 21st day of June 2004.  I further certify that a copy of each of the foregoing documents shall be served by first-class mail, postage pre-paid, upon Intervenor/Plaintiff, through her counsel, as follows:

Pamela J. White, Esquire
Ober, Kaler, Grimes & Shriver, P.C.
120 East Baltimore Street
Baltimore, Maryland 21201

Attorney for Intervenor/Plaintiff

and upon Plaintiff via first-class mail, postage pre-paid as follows:

Ronald L. Phillips, Esquire
U.S. Equal Employment Opportunity Commission
Baltimore District Office
10 South Howard Street, 3rd Floor
Baltimore, MD 21201

Attorneys for Plaintiff

_____/s/_____
David Gollin

Dated:  June 21, 2004