IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY | * | |
| COMMISSION | | |
| | * | |
| Plaintiff | | |
| and | * | |
| KATHY C. KOCH | * | |
| Intervenor/Plaintiff | * | |
| v. | * | Civil No. Q-02-CV-648 |
| LA WEIGHT LOSS | * | |
| Defendant | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**INTERVENOR/PLAINTIFF KATHY C. KOCH'S
<u>REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS</u>**

Intervenor/Plaintiff, Kathy C. Koch, by her attorneys, replies to LA Weight Loss' Opposition to Koch's Motion for Sanctions. The basic thrust of the Defendant's Opposition is that it cannot be held accountable for disappearing training documents in 1998-2000 because Koch's first written complaint dated March 8, 1998 failed to provide sufficient notice of her claims so as to prompt LA Weight Loss to preserve contemporaneous performance records and training materials. The current arguments of LA Weight Loss are incredible, and its entire Opposition is full of specious remarks and astounding representations which emphasize its improper, sanctionable conduct. In that infuriating context, Koch nevertheless will focus on specific examples of Defendant's patterns of misconduct, denials of basic discovery obligations, and its breaches of this Court's April 6, 2004 Order, which examples reflect Koch's difficulties

to prepare for trial, prove her claims, and deal with unsubstantiated assertions of her problematic performance as an LA Weight Loss Trainer in March 1998.

The Defendant's sanctionable conduct continues even after its failure to preserve 1998 training materials and its failure even to describe the training program against which Koch's performance was to be measured. The deposition of Defendant's former Traveling Trainer Dawn Lang was taken on June 7, 2004.[1] Lang conducted certain training programs familiar to Kathy Koch in 1997-98 at Headquarters in Horsham, Pennsylvania. Lang described her training duties and retention of training manuals used in 1997-98 when she reported to both Eileen Stankunas and Kristi O'Brien. Lang described the Horsham file room in which training materials were retained for herself and for O'Brien in 1997-98 and thereafter, even up to her termination in August 2002 when Lang destroyed her own accumulated collection of those training materials.

LA Weight Loss has not explained what happened to the Lang training materials in its supplemental discovery responses, and has not responded to Koch counsel's letter of June 10, 2004, attached hereto as Exhibit A ("…please advise of the current location or disposition of the training file room contents."). But see Judge Grimm's April 6 Order, Interrogatory 14, Document Request 26.

Documents produced in Lang's personnel file (received and reviewed by Koch counsel on June 7) included a 'personnel action' note by O'Brien reporting that the LA Weight Loss corporate leadership, Vahan Karabajakian, Scott Moyer and Eileen Stankunas, all met on May 4, 1998 and had approved Lang's salary increase to $50,000. LAWeight Loss has not responded to Koch counsel's letter inquiry "whether any notes, diary references, minutes or other documents of any sort memorialize the fact or substance of that meeting". Ms. Siegel's recent affidavit did

---

[1] The Dawn Lang deposition transcript is not yet received. Lang was employed by LA Weight Loss between 1994 and 2002, most recently as Director of Training.

not provide any investigative information from that meeting.[2] Siegel notes that her investigation(s) of Koch's complaint began with receipt of counsel's April 21, 1998 letter to Karabajakian, and that she inquired of Portlock and O'Brien of unspecified documents. However, no interrogatory answer details any communications (or any substantive aspects of Siegel's investigations) with Karabajakian, Moyer[3], or Stankunas. But see Judge Grimm's April 6 Order, Interrogatories 9, 7, 6.

Siegel did identify and produce a new Portlock document on May 28, 2004. Describing her investigation of the Koch complaint after April 21, 1998, Siegel "instructed" Portlock to "forward any documents related to Koch to me. Ms. Portlock was in possession of one additional document, a copy of a note she prepared regarding Koch's discharge meeting and she forwarded this document to me." (Supplemental Affidavit of Siegel at Paragraph 4). The Portlock document[4] then was sent by Siegel's faxed note to David Landau on May 13, 1998.[5] The Portlock notes, on their face, expressly instructed: "AttN: Karen  Please get to David  Thanks Lynne". The Portlock notes refer to Koch's discharge on March 12, 1998: "Am terminating you—[indecipherable]…For poor perform of training…."

LA Weight Loss has not described any circumstances of the Portlock notes, or their context in any investigation, or their withholding as privileged until now. Nor have defense counsel responded to Koch counsel's June 10 letter inquiry seeking a transcription and

---

[2] Koch is extremely intrigued with the coincidence of timing of this meeting of corporate leadership and whether or why Siegel requested (or failed to request) such leaders to participate in the Koch investigation.
[3] Scott Moyer and counsel both were asked and agreed at his deposition on September 3, 2003 to "secure the existing Day-timers from the witness for production" and "make your Day-timers available to counsel at your earliest opportunity…" (pp.304, 311). Moyer's calendars have yet to be produced.
[4] The new Portlock document is attached to Koch counsel's letter dated June 10, 2004, Exhibit A.
[5] Siegel's Fax of May 13, 1998, to the attention of David Landau, reports: "1st 2 pages refer to Kathy Koch issue." The remainder of the fax note is "REDACTED" and listed on the new 4-item privilege log offered by LA Weight Loss.

3

information about the location of the original Portlock notes since their creation. But see Judge Grimm's April 6 Order, Document Requests 7, 8, 12, 26.

The recent production of the Portlock notes, and the fact of their transmittal six years ago to David Landau on May 13, 1998[6], provide further example, even an exclamation point, to the misstatements of the LA Weight Loss Opposition to Koch's demand for sanctions. LA Weight Loss would explain, in part, the disappearance of Koch's flip charts and trainee tests among other training documents (at page 11): "Koch's March 8, 1998 letter to Portlock says that she lodged a complaint with the EEOC about LAWL's 'employment policies' [a term] so broad that it would have been unreasonable for LAWL to anticipate that Koch's performance as a trainer would be relevant to future litigation." However, just two months after Koch's discharge on March 12, 1998 and days after Landau received Koch counsel's letter dated April 21, 1998[7], Siegel faxed to Landau the Portlock notes about "terminating" Koch and her "poor perform of training".

The duty of LA Weight Loss to preserve training documents and not to destroy relevant documents, to conduct appropriate investigation of training standards applied to Koch, and to produce such relevant documents to the EEOC in 1998-1999, could not have been lost on Landau and Siegel as they exchanged the Portlock notes and a volume of other material reflected among documents just produced on May 28, 2004. For example:

| May 1, 1998 | Just before Siegel sends the Portlock discharge notes to Landau on May 13, 1998, Landau's letter to Koch counsel (White) reports that "[w]e are currently evaluating the claim…." |

---

[6] At her deposition in this litigation, Portlock's sworn testimony inconsistently reported her first contact with Landau at the time of Portlock's interview by the EEOC in April 2000.

[7] On May 28, 2004, LA Weight Loss produced a copy of an April 30, 1998 fax from its CFO "Ron M." to David Landau, transmitting the Koch counsel letter April 21, 1998 addressed to Vahan Karabajakian. No interrogatory answer yet explains the circumstances of receipt or substantive reaction by Karabajakian as to Koch's notice of claims. With the April 21 letter, Karabajakian, "Ron M.", Landau, and Siegel, all were informed in great detail of the "nature of Ms. Koch's claims" and her expectation "to investigate issues of wrongful discharge, unlawful discrimination and retaliation in connection with her dismissal."

| June 3, 1998 | Landau transmits to Siegel White's May 29, 1998 letter to Landau |
|---|---|
| June 3, 1998 | Landau writes to White, with letter copies to Siegel and Karabajakian, reiterating that "Ms. Koch was terminated for poor performance." |
| June 29, 1998 | Siegel sends EEOC Notice, Charge by Koch to Landau |
| November 3, 1998 | EEOC's Navarro requests information from Siegel for relevant period between 1995 and 1998, including investigative reports and information of comparable disciplinary discharges |
| January 5, 1999 | Siegel sends to Landau/Miraglia 14 pages of Koch personnel file notes faxed to and assembled by Portlock on or about March 24, 1998 |
| January 6, 1999 | Siegel sends to Landau/Miraglia 13 pages of seven day Service Training Agenda and corporate trainer job descriptions |
| January 6, 1999 | Miraglia transmits to EEOC's Navarro a trainer job description, " a sample service training agenda," and reason for Koch's termination "for failing to follow the Company's Training Program." |
| September 21, 2000 | Landau seeks EEOC reconsideration of "Ms. Koch's *seriously inadequate performance as a trainer*. Her manager spent an entire Sunday with her in order to help her re-work her training program *to comply with Company standards*. However, Ms. Koch ignored her manager and continue to not only *perform inadequately*, but in *clear violation of company guidelines* and requirements." |

It is obvious that Defendant had a duty to preserve documents which cannot be mitigated by what it now claims it knew--or didn't know—six years ago. The duty is triggered when a party "should have known" evidence "may be" relevant to future litigation. *See Thompson v. HUD*, 219 F.R.D. 93, 100 (D. Md. 2003).

LA Weight Loss suggests that the loss or destruction of Koch's training materials between her discharge on March 12 and April 23, 1998, excused any subsequent destruction or unsuccessful document search. LA Weight Loss relies on the arrogant and unreasonable argument that Koch's supervisor, Lynne Portlock, somehow neglected to address the first paragraph of Koch's March 8 complaint letter stating that Koch has "initiated a formal complaint with the EEOC to protest the employment policies of LA Weight Loss Centers." Grasping at straws, LA Weight Loss contends that because Koch's letter did not specifically spell out that

5

she had initiated a *formal complaint for retaliation* with the EEOC, it was in the dark and could not reasonably know the basis of the Koch complaint so as to have saved any training documents.[8] It is patently unreasonable for an employer in these circumstances *not to* anticipate that Koch's performance and employment conditions may be relevant to future claims. Nevertheless, because Koch did not "alert LAWL to the fact that the specific documents at issue here…general training materials…would be relevant to potential litigation," LA Weight Loss contends that it was not under a duty to preserve such documents. Opposition at 12. If the Court were to accept Defendant's astonishingly narrow interpretation of Koch's correspondence—or the fact that her claims were detailed by counsel just weeks later--an employer would never have a duty to preserve basic documents long required by EEOC and FLSA regulations. The LA Weight Loss proposition is absurd.

LA Weight Loss' reliance on Portlock's testimony, that the "sexual harassment claim" was the only mention in Koch's letter that "impressed her" and that she 'believe[d] that Koch was making a complaint of sexual harassment on March 8, 1998", is unimpressive. Opposition at 4. Even in that bizarre context, the employer was still under a duty to preserve any and all documents that may be relevant to that claim and her employment. Of course, the reality was that both Portlock and her boss, Stankunas, were aware of the contents of Koch's letter, and fired[9] Koch two days later with O'Brien in on the call.

With LA Weight Loss' admission that it did not preserve Koch's demonstrative training and performance documents, as well as general training agenda and materials, it is not saved

---

[8] LAWeight Loss also minimizes the importance of the Brown-Talavera complaint and Koch's verbal protests; these contemporaneous events, however, certainly serve, at least, to heighten LA Weight Loss' awareness of the issues Koch memorialized in her March 8th letter.

[9] LA Weight Loss has yet to answer an interrogatory to address the context or substance of Stankunas' attention to Koch's dismissal—or Stankunas' participation in any investigation of Koch's claims. Now, LA Weight Loss baldly asserts (without proper citation) that "Stankunas was only aware that Portlock received a letter complaining of sexual harassment." Opposition at 4. Portlock actually testified: "I read the entire letter to Ms. Stankunus." (Portlock Dep. at 434, lines 5-6.)

from sanctions by denying intentional misconduct, suggesting negligent destruction, or excluding such material from proper "personnel" documents. The Tenth Circuit Court in *Hicks v. Gate Rubber Co.*, 833 F.2d 1406 (10th Cir.1987) rejected the exact position LA Weight Loss now advances. In *Hicks,* despite the employer's argument that clock charts and daily reports were not personnel records which it had a duty to maintain, the court found that the documents were indeed "records having to do with… demotion, … or termination," within the meaning of 29 C.F.R. § 1602.14(a), and were personnel or employment records which should have been retained by the employer.[10] *Id*. at 1419.

Koch's successive complaints and EEOC Charge about the circumstances of her discharge more than adequately advised LA Weight Loss of her claims. LA Weight Loss' destruction of evidence in March and April 1998 must be condemned. Defendant had an affirmative duty to ensure the conservation of information and Koch related documents, including "generic" training documents reflecting the "Company's Training Program". LA Weight Loss' shifting excuses are not compelling and do nothing to alter the fact that it "should have" known that the training and performance evidence might be relevant to future litigation. All told, LA Weight Loss' tactics are quite unavailing and do not obviate the need for sanctions.

LA Weight Loss would minimize the importance of the training documents that it has failed to preserve and produce. LA Weight Loss labels the training materials underlying Koch's motion as immaterial because the materials not unique to her do not reflect her performance as a trainer. Opposition at 3. Further, "it is, in part, Koch's poor utilization of training materials that

---

[10] LA Weight Loss' Opposition states, without citation or explanation, that an adverse inference pursuant to Title VII's document retention requirements "is a specific cause of action whose disposition must be made by the finder of fact after trial, "and thus not an appropriate issue for this Court to address. Opposition at 14. This statement is quite curious and is unsupported by law. *See e.g. Shipley v. Dugan*, 874 F. Supp. 933 (S.D. Ind. 1995) (during motions practice, determination that defendant violated Title VII regulations entitled plaintiff to inference that the destroyed records contained evidence favorable to plaintiff's case; "The effects of this inference shall be addressed in due course.").

7

lead to her dismissal, not the materials themselves." *Id*. LA Weight Loss begs the question how Koch is to refute her poor utilization of assigned training materials without referring to the underlying materials.

The need thus appears for the drastic sanction of evidence preclusion.[11] Defendant insists that "Koch was improperly and ineffectively training counselors by failing, among other things, to follow the LAWL training program". Opposition at 2. Without general or Koch-specific training materials, Koch will be deprived of physical evidence such as the flip charts which is the "most eloquent impartial 'witness' to what really occurred." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001).[12]

Such sanctions necessarily follow from LA Weight Loss' failure to satisfy this Court's Order of April 6, 2004 in other respects. LA Weight Loss did not "fully and completely respond" to Interrogatories 6, 7, 17. There is no description, for example, of the particulars and resolution of the Brown-Talavera investigation which was contemporaneous with Koch's complaints; there is no description of Stankunas' interview and her responses to relevant questions about gender-related hiring practices either as to Brown-Talavera's complaint or

---

[11] Defendant states that Koch did not cite a single case in support of her motion for evidence preclusion on the basis of spoliation because LA Weight Loss has not been able to locate one. It is well established, however, that courts have broad discretion in crafting an appropriate sanction for the destruction of evidence and, in fact, Rule 37(b)(2) provides that when a party fails to obey an order or provide or permit discovery, the court may disallow the disobedient party to support or oppose designated claims or defenses, or prohibit that party from introducing designated matters into evidence. Fed. R. Civ. P. 37(b)(2)(B).
    LA Weight Loss' assertion that Koch is not entitled to evidence preclusion sanctions because she did not allege "surprise," as set forth in *Southern States Rack and Fixture, Inc. v. Sherwin Williams*, 318 F. 3d 592 (4th Cir. 2003), is similarly flawed. In that case, as in the *Thompson* case which merely concludes that the *Southern States* factors may be "helpful to consider," the issue was one of failure to disclose information *that did exist*- not *the destruction of relevant evidence*. Thus, in those cases, surprise upon the party against whom the evidence would be offered (at the eleventh hour) was an important factor to be considered. The *Southern States'* factors, however, obviously have no application to Koch's circumstances and the present case.

[12] And Koch has been unable to mitigate the prejudice to her given the lack of substantive information provided in interrogatory answers and critical depositions. Unsuccessful even to gain indirect information gleaned from investigation, Koch will be unable effectively to cross-examine LA Weight Loss witnesses or otherwise challenge its defense.

8

Koch's complaint.  For further example, the absence of any substantive description of investigation of Koch's complaints also makes the production of a privilege and work product log absolutely necessary in order to determine last-chance, alternative sources of such information.

The importance of a proper privilege log is reflected throughout the Court's April 6 Order and Rule 26(b)(5) as implemented by Discovery Guideline 9(c).  However, even when ordered to do so, LA Weight Loss only produced a log for privileged "correspondence" sought in Document request 7.  Although LA Weight Loss asserted its privilege objection to 20 out of 28 of Koch's document requests, it has logged only privileged "correspondence" about Koch.  Now, with its selective attention to Interrogatory 7,  Defendant remains out of compliance with the Court's Order as to Interrogatories 6, 7, 9, 17 and Document requests 7, 8, 12, 24, 25.

For the above reasons, and those more fully set forth in Koch's memorandum in support of sanctions, Ms. Koch respectfully requests the Court subject Defendant to the appropriate sanctions for spoliation of evidence and failure to comply with this Court's April 6, 2004 Order, including: evidence preclusion regarding Defendant's performance-based defense; adverse inference instruction; evidence preclusion concerning any alleged investigation into Ms. Koch's retaliation claim; and the striking of several deficient interrogatory answers with instruction to amend such responses in compliance with this Court's Order of April 6, 2004.  Ms. Koch also respectfully requests the Court order Defendant LA Weight Loss to pay her costs incurred in

filing this motion necessitated by LA Weight Loss' failure to preserve critical documents and refusal to properly answer interrogatories.

        Respectfully submitted,

        */s/ Pamela J. White*
        _____
        Pamela J. White, Bar No. 00181
        Ober, Kaler, Grimes & Shriver
        120 East Baltimore Street
        Baltimore, Maryland 21201
        Telephone Number: (410) 347-7323
        Facsimile Number: (410) 547-0699
        E-mail address: pjwhite@ober.com