IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| KATHY C. KOCH, | )   Case No. WDQ-02-CV-648 ) |
| Plaintiff Intervenor, | ) ) |
| v. | ) ) |
| LA WEIGHT LOSS CENTERS, INC., | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS TO MAGISTRATE JUDGE'S RECOMMENDATION OF JUNE 24, 2004, ON PLAINTIFF INTERVENOR KATHY KOCH'S MOTION FOR SANCTIONS**

**I.   INTRODUCTION**

Acting under a misapprehension of LA Weight Loss ("LAWL"), witnesses' testimony and without a hearing to judge their credibility, the Magistrate Judge recommended (the "Recommendation") that an "adverse inference" instruction should be given to the jury concerning LAWL's purported destruction of certain documents. Any consideration that this recommendation should be adopted is entirely premature. Proceedings at or closer to trial will show that the credibility of one LAWL deponent was unfairly doubted by overlooking that she was incapacitated during her deposition; certain materials that LAWL supposedly failed to preserve never existed in the first place; others supposedly destroyed were actually produced to Koch during discovery; and that plaintiff Kathy Koch will suffer little if any prejudice from documents that cannot be produced.

**II.    BACKGROUND**

During a telephone conference on June 29, 2004, Magistrate Judge Paul W. Grimm ruled on Plaintiff Intervenor Kathy Koch's ("Koch") Motion For Sanctions. The motion consisted of two parts: (1) an allegation that LAWL failed to preserve certain documents thereby entitling Koch to an adverse inference instruction; and (2) an allegation that LAWL failed to comply with the Court's April 6, 2004 Discovery Order. The second part of the motion was largely denied. These objections are only to the ruling on the first part.[1]

Koch's spoliation argument was that LAWL should have preserved certain materials after she wrote to Lynne Portlock, her immediate supervisor at LAWL, on March 8, 1998. In that letter she said she had complained to the EEOC about LAWL's "employment policies". She also suggested that an earlier warning from her supervisor concerning inadequate performance as a trainer was merely a pretext for sanctioning her for not following "company hiring policy". Koch also rebutted the claim that her performance was inadequate and alleged that she had been "subjected . . . to several incidents of humiliating sexual harassment."

---

[1]   Magistrate Judge Grimm made the following recommendation:

> I find under the facts before me that it was grossly negligent [for LAWL not to preserve certain documents]. If not grossly negligent, it was negligent. And that this state of mind coupled with -- this culpable state of mind coupled with the high relevance of these documents, the clear duty to preserve, and the clear evidence they did not do so, I find that an adverse inference instruction would be proper to give to the jury if this case goes to trial, and I, therefore, recommend to Judge Quarles that he give exactly such instruction, a spoliation instruction, adverse inference instruction, to the jury regarding the failure of LA Weight Loss to preserve these documents.

Transcript of Motions Hearing before Magistrate Judge Paul W. Grimm, June 29, 2004, at 43, (hereinafter "Tr. at ___"), attached hereto as Exhibit A.

The Magistrate Judge ruled that after receipt of this letter on or around March 8, 1998, and Koch's termination on March 12, 1998, LAWL was under a duty to put a litigation hold on all materials that might relate to a subsequent dispute over why she was fired. LAWL failed, however, to preserve flip charts, trainee handouts, demonstrative exercises, trainee tests, schedules, agendas, training manuals and notes from Koch's supervisors about her performance.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 72(b) provides, in pertinent part, that: "[t]he district judge to whom the case is assigned shall make a <u>de novo</u> determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule." <u>See also</u> <u>United States v. Johnson</u>, 140 F. Supp.2d 485, 486 (D. Md. 2001) (in reviewing a magistrate judge's decisions, the District Court must conduct a <u>de novo</u> review under 28 U.S.C. § 636(b)(1)(B) and make a determination as to those portions of "'the magistrate judge's disposition to which specific written objection has been made'") (citations omitted). Rule 72(b) continues that "[t]he district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." The Recommendation underlying these objections falls within the ambit of Rule 72(b) because it is evidentiary in nature and semi-dispositive.

## IV. ARGUMENT

An adverse inference instruction is a severe sanction that often ends litigation -- "it is too difficult a hurdle for the spoliator to overcome…. The party suffering this instruction will be hard-pressed to prevail on the merits. Accordingly, the adverse inference instruction should not be given lightly." <u>Thompson v. United States Dept. of Housing and Urban Dev.</u>, 219 F.R.D. 93, 100-101 (D. Md. 2003) (citing <u>Zubalake v. UBS Warburg LLC</u>, 2003 WL 22410619 at *5 (S.D.N.Y. Oct. 22, 2003)).

Here, the impact of an adverse inference instruction is compounded exponentially by the fact that Koch's claims will be tried together with the pattern and practice claims raised by the Equal Employment Opportunity Commission in this matter. LAWL's defense will be severely prejudiced in the pattern and practice case if the same jury hearing the EEOC's claims receives an adverse inference instruction on Koch's claims as part of the same preceding.

### A.    Objection No. 1. - The Recommendation is Premature

In support of the Recommendation that an adverse inference instruction be given to the jury, Magistrate Grimm found that LAWL's failure to preserve the documents at issue has resulted in "clear prejudice to Koch." Tr. at 41. This finding is premature and speculative. Over seven months of factual discovery still remain in this matter. Either during that discovery or at trial it will be established that certain of the documents could not possibly have been probative of either party's version of why Koch was terminated. For example, the materials underlying Koch's Motion are not particular to her and do not reflect her performance as a trainer. They are company-generated, basic, non-specific, unannotated materials akin to an instruction manual. Even if they were available, they could not possibly help Koch "address and respond to LAWL's allegation of performance deficiencies," because they do not reflect the way in which Koch used them to train LAWL employees. It is, in part, Koch's poor utilization of training materials that led to her dismissal, not the materials themselves. See Dep. of Kristi O'Brien, Ex. B, at 262-64.

Koch's suggestion that completed tests could be used to rebut LAWL's performance-based defense is wrong. Koch presents no evidence that completed tests were used to evaluate trainers. To the contrary, training was judged by counselor performance in the centers, and the counselors Koch trained did not and could not perform well. There were "employees [trained by Koch] that were in the field not prepared to conduct and feeling competent and comfortable

conducting the daily visits, the medical histories and the chart work-ups." O'Brien Dep., Ex. B, at 262.

Evidence presented at trial or developed in a full evidentiary hearing and/or outstanding discovery will show Koch has not been prejudiced by the absence of these documents. Accordingly, the Court should hold the Magistrate's Recommendation in abeyance until a complete record appropriate to a <u>de novo</u> review of the matter has been made.

### B. Objection No. 2. - The Recommendation is in Error to the Extent it Relies Upon the Deposition Testimony of Lynne Portlock Without the Benefit of a Complete Record

As the Magistrate acknowledges in his decision, "it's somewhat hard to get too much assistance from these depositions since neither side provided a complete copy of the deposition to allow the Court the context to review the pages in sequence . . ." Tr. at 23. Despite this acknowledgment, the Magistrate issued his recommendation without the benefit of obtaining a complete copy of the deposition of Koch's immediate supervisor, Lynne Portlock. Rather, the Magistrate relied only on the limited excerpts of Portlock's deposition testimony in his possession. A review of Portlock's deposition testimony in its entirety, however, highlights a number of errors in the Magistrate's Recommendation.[2]

In determining that an adverse inference is justified, the Magistrate ruled that the documents at issue were not only relevant but "critical." Tr. at 21. The Magistrate reached this conclusion, in part, based on his observations of Portlock's lack of memory regarding Koch's discharge. Tr. at 22. Specifically, the Magistrate cites page 486 of Portlock's deposition for the fact that Portlock could not even recall the basis for her decision to fire Koch for poor

---

[2]   Complete copies of the deposition transcripts of Kristi O'Brien and Lynne Portlock are attached hereto at Exhibits B and C, respectively.

performance.  Id.  The Magistrate went so far as to label Portlock's memory "faded at best and evasive at worst."  Id.

This conclusion is in error, however, because what the Magistrate did not know was that shortly after making that statement, Portlock testified that she was "having a hard time right now because I'm getting ready to get a migraine . . . I'm hypoglycemic and I'll get a migraine and I can feel it coming, so I'm having a hard time concentrating . . ."  Portlock Dep, Ex. C at 491.  As the Magistrate predicted might occur without the benefit of the entire transcript, he was precluded from gleaning the entire context in which Portlock's memory failed.  Her memory had not faded, nor was she being evasive.  Rather, she was in the midst of a debilitating medical situation.

The effects of this hypoglycemic episode are further exemplified by Portlock's previous day of deposition testimony.  Portlock provided in-depth testimony about Koch's poor performance.  Portlock testified to the subjects that Koch should have covered in training, the amount of time that should have been devoted to those subjects and the basis upon which she concluded that Koch's performance was deficient.  Portlock Dep., Ex. C at 303-309.  Once again, this was testimony about which the Magistrate was unaware when he made his Recommendation.  This testimony directly contradicts the Magistrate's conclusions about Portlock's lack of memory on the subject of Koch's poor performance and his determination about the lack of evidence of Koch's performance deficiencies.

In addition, Portlock's deposition has never been completed.  Once she disclosed that she was having a hypoglycemic episode, her deposition was adjourned.  Portlock Dep., Ex C at 491.  LAWL never had the opportunity to question Portlock.  To the extent the Magistrate relied upon Portlock's deposition testimony, he not only did so without the benefit of the complete deposition

transcript as it exists today, but his reliance was placed on a deposition that has yet to be completed.

Accordingly, it was error for the Magistrate to reach substantive conclusions adverse to LAWL regarding Portlock's memory based on limited excerpts from an incomplete deposition.

### C. Objection No. 3. - The Recommendation is Based on an Inaccurate Interpretation of the Deposition Testimony of Kristi O'Brien

Another error made by the Magistrate in the Recommendation is the assumption that Kristi O'Brien, the former director of Training for LAWL during Koch's employment, "recalled taking notes with respect to conversations regarding the training deficiencies by Ms. Koch." Tr. at 25.  In fact, throughout the Recommendation, the Magistrate references O'Brien's alleged notes and relies upon LAWL's purported failure to preserve them as a basis for determining that an adverse inference instruction is appropriate.  See Tr. at 31, 39 and 40-41.

An accurate reading of O'Brien's testimony, however, shows that she did not remember whether or not she took any notes during conversations with Koch.  O'Brien Deposition, Ex. B at 265.  O'Brien also testified that she generally took notes during conversations involving trainer performance and that if she had taken notes she would have placed them in Koch's personnel file.  Id. at 266.  Further, she testified that she did not recall placing any notes in Koch's personnel file.  Id.  Based on this testimony and the undisputed absence of any notes from O'Brien in Koch's personnel file which was produced to Koch in discovery, it is logical to conclude that O'Brien did not take any notes of her conversations with or regarding Koch.

The Magistrate accepts as an undisputed fact that O'Brien took notes of discussions with Koch and that LAWL allowed those notes to be destroyed.  There is absolutely no record evidence that either of these things occurred, nor does the Magistrate provide any basis for his conclusion that O'Brien took notes of her conversations with Koch.

Accordingly, to the extent the Recommendation is based on the misperception that LAWL destroyed O'Brien's purported notes, it is in error and should not be adopted by the Court.

### D. Objection No. 4. - The Recommendation Incorrectly Implies That No Documents Supporting Koch's Performance Deficiencies Exist

In the Recommendation, the Magistrate notes that Portlock asked Koch's trainees who were trained by Koch to document deficiencies in Koch's performance. Tr. at 26. The Magistrate's Recommendation implies that these trainee evaluations were not maintained, leaving no proof of Koch's performance deficiencies beyond Portlock's personal knowledge. Id. The Magistrate relies on this implication in reaching his ultimate conclusion that an adverse inference instruction is appropriate because of the prejudice to Koch created by the absence of documentary proof. The Magistrate's unsupported conclusion that trainee evaluations do not exist is incorrect.

The trainee evaluations of the training classes conducted by Koch were maintained in Koch's personnel file which was produced in discovery. Copies of the trainee evaluations are attached hereto as Exhibit D. These documents were not attached to any of the papers presented to the Magistrate because the existence and maintenance of these documents was never at issue.[3]

---

[3] The EEOC even examined Portlock on these very documents during her deposition. See Portlock Dep., Ex. C at 297-309. Portlock testified that these trainee evaluations evidenced the performance deficiencies that served as the basis for the March 6, 1998 Warning Notice received by Koch prior to her discharge. Exhibit E; Portlock Dep., Ex. C at 296-97. Further, during her deposition, Portlock walked the EEOC through these evaluations and expressly testified as to how they indicated to her that Koch was not conducting trainings properly. Id. at 304-309.

To the extent that the Recommendation is based on the Magistrate's belief that the only proof of Koch's performance deficiencies comes from Portlock's personal knowledge, such reliance is in error.

### E. Objection No. 5. - It Was Error For the Magistrate to Make Credibility Determinations Without An Evidentiary Hearing

The heart of the Magistrate's finding that LAWL spoliated evidence and that an adverse inference instruction is appropriate to cure this conduct is his determination that the March 8, 1998, Letter from Koch to Portlock, (Exhibit F) put LAWL on reasonable notice to preserve any records relating to Koch's alleged performance deficiencies. Tr. at 37.

In support of its position that LAWL did not spoliate evidence, LAWL proffered specific testimony from Portlock that when she received the Letter, she understood it to be a complaint of sexual harassment and not a complaint of pretextual discipline. Portlock Dep., Ex. C at 314, 319-320, 421-22. Portlock explained that she held this belief because a majority of the Letter objected to a prior written warning that Portlock had given to Koch -- a topic Portlock and Koch previously discussed. Id. at 423-24, 429-30. Further, the only new topic that Portlock identified in the Letter was the reference to sexual harassment. Id. at 425, 429. Portlock focused exclusively on this aspect of the Letter because she already had addressed the performance issues with Koch and an incident with sexual undertones recently had occurred between Koch and a vendor utilized by LAWL. Id. at 423-432. Portlock believed Koch was referring to this situation and set out to correct that problem. Id.

In the Recommendation, the Magistrate rejects Portlock's explanation out of hand. He does so without an evidentiary hearing to assess Portlock's credibility or examine the context in which the Letter was received.

Although the Magistrate is correct that a determination as to what notice the Letter provides must be assessed under an objective standard, that standard is based on the reasonable person. That reasonable person must be placed in the shoes of Portlock in March 1998, when the Letter was received. Being in Portlock's shoes includes taking into consideration the interactions between Portlock and Koch both prior to and after receipt of the Letter. Appreciating this context can only be achieved through an evidentiary hearing. But for the Magistrate's determination that Portlock's interpretation of the Letter was incredible, he may not have found that LAWL was on notice of litigation or potential litigation as of March 8, 1998.

Although LAWL did not request an evidentiary hearing at the time it filed its opposition to Koch's Motion for Sanctions, it did not do so because it did not expect that the Magistrate was going to make credibility assessments based on transcripts. Since this clearly was not the case, an evidentiary hearing should have been held.

## V. CONCLUSION

LAWL's objections to Magistrate Grimm's June 29, 2004, Recommendation with regard to the propriety of an adverse inference instruction should be sustained. In the alternative, the Court should hold the Recommendation in abeyance until the facts are presented at trial and the Court can review the Recommendation with the benefit of a complete record.

Respectfully submitted,

*/s/ David E. Landau*

David E. Landau
Larry H. Spector
David Gollin
Jennifer Blum Feldman
WOLF, BLOCK, SCHORR AND SOLIS-COHEN LLP
1650 Arch St, 22d Floor
Philadelphia, PA 19103-2097
215 977 2049

Elizabeth Torphy-Donzella
SHAWE & ROSENTHAL, LLP
20 S. Charles St.
Baltimore, MD 21201
410 752 1040

Attorneys for Defendant
LA Weight Loss Centers, Inc.