Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF MARYLAND

 3   EQUAL EMPLOYMENT              :
     OPPORTUNITY COMMISSION
 4           Plaintiff             :

 5        and                      :

 6   KATHY C. KOCH                 :
         Plaintiff-Intervenor
 7        v.                       :   NO. WDQ-02-CV-648

 8   LA WEIGHT LOSS CENTERS,INC:

 9           Defendant             :   Pages 1 - 56

10                          -----------

11

12

13

14                      Motions Hearing

15                    Baltimore, Maryland

16                   Tuesday, June 29, 2004

17

18

19

20

21   Reported by:  Kathleen R. Turk, RPR-RMR
```

Page 2

```
 5                     June 29, 2004
 6                     4:20 p.m.
 7
 8   Motions Hearing held telephonically before
 9   The Honorable Paul W. Grimm at the offices of:
10
11
12      Ober, Kaler, Grimes & Shriver
13      120 East Baltimore Street
14      Ninth Floor, Chesapeake Room
15      Baltimore, MD  21202
16
17
18   Pursuant to notice, before Kathleen R. Turk, RPR-RMR,
19   a Notary Public of the State of Maryland.
```

Page 3

```
 1   APPEARANCES:
 2
 3   Equal Employment Opportunity Commission, Baltimore
 4   District Office
 5   For the Plaintiff EQUAL EMPLOYMENT OPPORTUNITY
 6   COMMISSION
 7       City Crescent Building, Third Floor
 8       10 South Howard Street
 9       Baltimore, MD  21201
10       (410) 962-4628
11   BY:  Ronald L. Phillips, Esq.
12
13   Ober, Kaler, Grimes & Shriver
14   For the Plaintiff-Intervenor KATHY C. KOCH
15       120 East Baltimore Street
16       Baltimore, MD  21202
17       (410) 685-1120
18   BY:  Pamela J. White, Esq.
19        Carla N. Bailey, Esq.
```

Page 4

```
 1   Wolf, Block, Schorr and Solis-Cohen, LLP
 2   For the Defendant LA WEIGHT LOSS CENTERS, INC.
 3       1650 Arch Street
 4       22nd Floor
 5       Philadelphia, PA  19103
 6       (215) 977-2000
 7   BY:  David E. Landau, Esq., via telephone
 8
 9   Shawe & Rosenthal, LLP
10   For the Defendant LA WEIGHT LOSS CENTERS, INC.
11       20 South Charles Street
12       Baltimore, MD  21201
13       (410) 752-1040
14   BY:  Bruce S. Harrison, Esq., via telephone
```

Page 5

```
 1              P R O C E E D I N G S
 2          THE COURT:  This is the case of Equal
 3   Employment Opportunity Commission versus Kathy Koch
 4   and LA Weight Loss Centers, Inc.  It's
 5   Case WDQ-02-648.  I am Grimm to whom this case has
 6   been assigned by Judge Quarles, the District Judge
 7   presiding, to handle discovery disputes in
 8   Paper No. 67 of the papers in this file of the Court.
 9          In Paper No. 98, I issued a paperless
10   Order setting the hearing for today to begin at four
11   o'clock to rule on an outstanding motion that has been
12   fully briefed, and what I intend to do is to allow
13   counsel to just introduce themselves -- I understand
14   that there's some interns, but we don't need to take
15   the whole time to go through that again -- I just want
16   counsel for the principal parties to identify
17   themselves briefly for the record.
18          I will allow any comments first by
19   Ms. Koch, the moving party, and while I said five
20   minutes, I would be grateful if the time that it has
21   taken us to get this thing started would be taken into
```

Page 6

1  consideration in terms of any comments. Afterwards,
2  Mr. Landau, who represents the Defendant, LA Weight
3  Loss, will have an amount of time not to exceed five
4  minutes. After that, I intend to rule.
5       Ms. Turk, it's important that if you
6  cannot hear what is being said, or if the lawyers or I
7  go too fast, that you immediately say slow down or I
8  lost that, and we will work to your needs.
9       Can you hear me so far all right?
10      THE REPORTER: Yes, I can.
11      THE COURT: All right. Ms. White, go
12 ahead.
13      MS. WHITE: Thank you.
14      Pamela J. White with Carla N. Bailey
15 for Kathy Koch.
16      MR. PHILLIPS: Ron Phillips
17 representing the EEOC.
18      MR. LANDAU: David Landau representing
19 LA Weight Loss Centers.
20      MR. HARRISON: Bruce Harrison
21 representing LA Weight Loss Centers as local counsel.

Page 7

1       MS. WHITE: Your Honor, for Ms. Koch, I
2  will tell you as a matter of practice and in this case
3  I dislike Interrogatories. Over the years,
4  Interrogatories and, to a lesser extent, Requests for
5  Production have become a matter of games and
6  gamesmanship when dealing with big litigation. But
7  they are useful for contention purposes, and Koch's
8  Interrogatories were essentially contention
9  Interrogatories.
10      I point out Interrogatory No. 4 and
11 Interrogatory No. 8 which were not the subject of the
12 Court's Order to Compel information by LA Weight Loss,
13 but which were recited or cited in our Motion for
14 Sanctions, nevertheless, and I will quote them for the
15 record.
16      Interrogatory No. 4 said identify and
17 describe in detail all warnings, cautions, counseling,
18 criticisms, reprimands, adverse evaluations, written
19 or oral, made or communicated to Kathy Koch about her
20 job performance while she was with LA Weight Loss.
21      No. 8 asked if you contend that Koch

Page 8

1  had performance problems during her employment with LA
2  Weight Loss, please fully describe each specific
3  performance problem and all facts on which you rely in
4  identifying this problem.
5       In the absence of Answers to those
6  Interrogatories, they promised to produce responsive
7  documents instead, and in response, in absence of
8  documents or Interrogatory Answers responsive to the
9  Court's Order to Compel, we are reduced to seeking in
10 our Motion for Sanctions an instruction to exclude any
11 evidence that may yet be determined or turned up by LA
12 Weight Loss and to exclude any testimony about Kathy
13 Koch's performance as it existed or as it had been
14 evaluated by LA Weight Loss in March of 1998.
15      That's the reason for our Motion for
16 Sanctions. We haven't gotten the performance
17 information. We haven't gotten the documents instead
18 of Answers to Interrogatories. And we still don't
19 have substantive Answers to Interrogatories.
20      Thank you, Your Honor.
21      THE COURT: All right. Mr. Landau.

Page 9

1       MR. LANDAU: Your Honor, mindful of the
2  Court's initial comment, other than that we disagree,
3  I'm going to rely on my papers, unless the Court has
4  questions.
5       THE COURT: All right, thank you.
6       All right. The papers here before me
7  that frame the disputes to be ruled on stem initially
8  from Paper No. 70, which was an Order issued by this
9  Court on April 6th of 2004 that partially granted and
10 partially denied Ms. Koch's Motion to Compel, Rule 33
11 and Rule 34, discovery. That motion was Paper No. 58.
12 And subsequently, Paper No. 93, which was an Order
13 awarding a certain amount of money as attorney's fees
14 and costs as a result of Ms. Koch partially prevailing
15 on that motion.
16      In Paper No. 94 filed on June 7th,
17 Ms. Koch filed the present Motion for Sanctions. It
18 was opposed under a somewhat abbreviated briefing
19 schedule by LA Weight Loss in Paper No. 97, and a
20 reply was filed yesterday pursuant to that abbreviated
21 schedule in Paper No. 100.

Page 10

1        I'll note at the outset that there is a
2   good deal about which the parties do not agree, and
3   the depth of the disagreements in the briefing that
4   has been associated with the initial motions that I've
5   referred to and the present motion reflect that, but I
6   will -- I will say that resolving motions of this
7   nature imposes a good deal of demand on the Court to
8   parse through all that, and I am not in the habit of
9   ruling on discovery issues or other issues that are
10  not raised in the briefings.
11       And so to the extent that Ms. Koch's
12  opening comments refer to Interrogatory responses or
13  document production responses that were not briefed in
14  the pending motion, they are not right before me, and
15  I will not undertake them.  And piecemeal litigation
16  of discovery disputes is particularly abusive of the
17  Court's time and resources, which are strained at the
18  best of times.
19       So I'm not going to address anything
20  that was not briefed in the case in chief, which is
21  Paper No. 94.

Page 11

1        Indeed, I note that in Paper No. 94, at
2   the conclusion of Ms. Koch's memo, she identifies
3   certain Interrogatories to which the motion is
4   addressed and certain document production requests
5   tangentially in the privilege log.  Those were the
6   ones that LA Weight Loss responded to in its paper,
7   and in the reply brief, reference was made to
8   additional document production requests.  Those are
9   not before me because they were raised in passing as
10  part of the reply brief and LA Weight Loss had no
11  opportunity to respond; therefore, I do not intend to
12  take them into consideration and will rule only on
13  those matters that were actually briefed in Paper
14  No. 94.
15       Now, the relief sought by Ms. Koch in
16  Paper No. 94 is as follows.
17       She seeks an Order that LA Weight Loss
18  be required to comply with Paper No. 70, which was the
19  Court's April 6th, 2004, letter Order partially
20  granting the Motion to Compel.
21       Secondly, she seeks an adverse

Page 12

1   inference instruction to the jury if the case goes to
2   trial with respect to spoliation of evidence.
3        Third, she seeks the imposition of
4   sanctions to include evidence preclusion sanctions
5   pursuant to Federal Rule of Civil Procedure -- and
6   when I use the word Rule, I'm referring to the Rules
7   of Civil Procedure, unless I state otherwise --
8   37 (b)(2), and she seeks the document, or the evidence
9   preclusion sanctions pursuant to Rule 37 (b)(2) with
10  regard to defenses that were raised by LA Weight Loss
11  to Ms. Koch's Amended Complaint that asserts that
12  Ms. Koch's own performance deficiencies were the
13  result of her, or caused her to be fired and,
14  secondly, that Ms. Koch seeks preclusion of any
15  evidence that LA Weight Loss conducted inadequate
16  investigation into her retaliation claim.  And
17  finally, the Plaintiff seeks -- Ms. Koch seeks
18  attorney's fees and costs.
19       Essentially, distilled to its essence,
20  it seems to me that there are two broad areas of
21  relief that Ms. Koch seeks.

Page 13

1        First, she seeks to get relief in
2   connection with her assertion that LA Weight Loss
3   failed to preserve documents that related to
4   Ms. Koch's performance of her duties and her ultimate
5   termination when they were under a duty to do so and,
6   secondly, that LA Weight Loss failed to comply with
7   the Court's April 6th Order compelling Rule 33 and
8   Rule 34 discovery.
9        Some factual background will help frame
10  this issue from the pleadings and the memos and the
11  exhibits which have been submitted with respect to
12  this motion.
13       It is helpful to recollect that the
14  EEOC initiated the lawsuit here in February of 2002 on
15  behalf of Ms. Koch in a class of male applicants, and
16  it was asserted by the EEOC that these male applicants
17  had been discriminated against by LA Weight Loss
18  pursuant to an alleged policy to not hire men as
19  weight loss counselors.  In addition, the EEOC alleged
20  discrimination against Ms. Koch by LA Weight Loss in
21  that it was alleged that LA Weight Loss retaliated

Page 14

1  against Ms. Koch for opposing LA Weight Loss' alleged
2  antimale discrimination.
3          Obviously, LA Weight Loss denied these
4  allegations in its responsive answer.
5          Ms. Koch intervened on her own behalf
6  and, in an Amended Complaint, Paper No. 21, asserts a
7  single count claim in her own individual capacity
8  against LA Weight Loss. That count asserts violations
9  of Title VII, the employment discrimination law, based
10 upon a retaliation and, in addition, a claim for
11 violation of 42 United States Code Section 1981, also
12 described as retaliatory discrimination, and a jury
13 demand was filed.
14         In Paper No. 23, LA Weight Loss
15 submitted its answer, and it denies retaliation and
16 denied any policy discriminating against males.
17         As its fifth defense, LA Weight Loss
18 asserts that Ms. Koch was fired for legitimate
19 nondiscriminatory business reasons, and as its seventh
20 defense alleges that it complied in good faith with
21 all antidiscrimination laws.

Page 15

1          So that's the pleading background that
2  frames the issues that this discovery dispute flows
3  from.
4          The specific facts as alleged by
5  Ms. Koch that frame the dispute that I'm to rule on
6  today, she alleges in her papers and in her pleadings
7  that she was employed for a brief period of time by LA
8  Weight Loss, beginning in November of 1997 and ending
9  on March 12th of 1998 when she was fired.
10         She alleges further that she was hired
11 as an area corporate trainer and that her job
12 involved, in part, interviewing prospective counselors
13 for LA Weight Loss, which is a weight loss
14 organization that appears to have multiple centers,
15 which may or may not be franchises, and a prescribed
16 program of counseling to assist its clients in losing
17 weight, and the counseling includes dietary counseling
18 and the use of foods and possibly supplements to
19 assist them in their weight loss goals.
20         Ms. Koch alleges that when she was
21 trained by LA Weight Loss in November of 1997 she was

Page 16

1  told that their practice was not to hire men as
2  counselors, presumably because the clientele of LA
3  Weight Loss was, in large part, made up of women who
4  might feel uncomfortable with a male counselor with
5  respect to their weight loss goals.
6          Ms. Koch alleges that she disagreed
7  with this policy and that she had attempted to hire or
8  recommend for hiring male applicants that she believed
9  were qualified to serve as counselors.
10         She further alleges that these efforts
11 were rebuked and that when she refused to comply with
12 what she viewed as a discriminatory policy, LA Weight
13 Loss took adverse employment action against her which
14 included several things.
15         Number one, she alleges that she was
16 subject to disciplinary action to include receiving an
17 employee warning notice from her immediate supervisor,
18 Ms. Lynne Portlock, which allegedly was given to her
19 on March 6th, 1998. If this document exists, no copy
20 was attached as an exhibit to any of these papers, but
21 it is referred to frequently in the briefing by the

Page 17

1  parties. So this was one example of alleged
2  disciplinary action based upon discrimination.
3          And, in addition, Ms. Koch alleges that
4  she ultimately on March 12th of 1998 was fired.
5          On approximately March 9th of 1998,
6  Ms. Koch alleges that she sent a letter to the Equal
7  Employment Opportunity Commission complaining about LA
8  Weight Loss' allegedly discriminatory policy not to
9  hire males. That was a letter allegedly dated
10 March 8th, 1998. Again, that letter was not attached
11 to any of the pleadings relevant to these motions.
12 What was attached as Exhibit F to Ms. Koch's initial
13 motion, Paper No. 94, is what appears to be a letter
14 from Ms. Koch dated March 8th of 1998 addressed to
15 Ms. Portlock in which she did a number of things.
16         First, the letter states in part -- and
17 I'll refer to it in more detail in a moment -- that
18 she was notifying Ms. Portlock -- and I'm paraphrasing
19 now -- that Ms. Koch had on March 8th, 1998, filed
20 a -- initiated a formal complaint with the EEOC to --
21 and here I am quoting -- protest the employment

Case 1:02-cv-00648-WDQ   Document 112-3   Filed 07/19/2004   Page 6 of 15
Hearing

Page 18

1  policies of LA Weight Loss Centers.
2          Now, this does not identify which
3  specific employment practices were the subject of the
4  complaint. In addition, however, it's very clear that
5  in the letter that Ms. Koch submitted to Ms. Portlock,
6  which Ms. Portlock admits receiving and discussing
7  with certain of her superiors at LA Weight Loss, that
8  among the things stated by Ms. Koch was that she
9  believed that the employee warning notice she received
10 was pretextual and that it was, in her words, part of
11 a fallacious paper trail to achieve some unknown
12 alternative purposes since Ms. Koch had not followed
13 company hiring policy.
14         So in the first paragraph of this
15 letter, it makes admittedly a, or what has to be
16 conceded as a somewhat vague reference to company
17 hiring policy in a complaint about employment
18 practices of LA Weight Loss that was made to the EEOC.
19         In addition, it's crystal clear that
20 Ms. Koch's March 8th, 1998, letter constitutes what
21 she viewed as a detailed rebuttal of the employee

Page 19

1  warning notice that she had received from Ms. Portlock
2  on March 6th of 1998 in that she gives a blow-by-blow
3  rebuttal of various grounds that I must assume, since
4  I haven't seen the employee disciplinary notice, were
5  points raised by Ms. Portlock's disciplinary notice.
6          Among the things that she does is
7  address how she asserts that she properly used certain
8  flip charts and other training tools to train
9  counselors who were recently hired by LA Weight Loss
10 and who were about to go out and begin their work as
11 counselors, and rebutting, in her view, allegations by
12 Ms. Portlock that Ms. Koch had failed properly to
13 train these counselors to do their jobs.
14         In addition, it's pretty clear that
15 Ms. Koch's letter specifically refers to the test
16 scores that her students received when they were
17 tested as being able to prove that she had properly
18 instructed them in accordance with the training
19 objectives of LA Weight Loss and that their grades on
20 these tests would reflect her successful training and
21 that they were not confused as had been alleged.

Page 20

1          Now, in addition, in multiple discovery
2  requests, Ms. Koch has sought to discover any
3  documents relating to her claim that she was fired in
4  retaliation for her opposition to what she has alleged
5  to be the discriminatory antimale hiring policies of
6  LA Weight Loss.
7          An important additional fact is that
8  she was fired on March 12th, less than a week after
9  she sent the letter to Portlock and the letter to the
10 EEOC. So in terms of the temporal relationship
11 between the adverse ultimate employment activity that
12 occurred in this case and the protected activity,
13 activity that is associated with Ms. Koch's claims of
14 retaliation, there is a very close nexus which the
15 Fourth Circuit has commented is relevant in terms of
16 whether or not retaliation took place.
17         Among the documents that Ms. Koch has
18 sought through multiple discovery requests would be
19 all documents that may shed light on whether or not
20 she did, indeed, perform her duties as a corporate
21 trainer properly or whether she was deficient as

Page 21

1  alleged by her boss, Ms. Portlock, her supervisor.
2          In this regard, it appears as though a
3  number of documents identified in summary at Page 15
4  of Document No. 94 would include flip charts, trainee
5  handouts, demonstrative exercises, trainee tests,
6  schedules, agendas, training manuals, and notes from
7  Ms. Koch's supervisors about her performance.
8          Now, from my review of the materials
9  provided, it seems clear to me and I find that these
10 documents are not only relevant to the issues here,
11 but they're actually critical because they would be
12 documents that would corroborate either Ms. Koch's
13 claims of retaliation or LA Weight Loss' claims that
14 the reason why she was terminated was because of
15 deficient performance which would constitute a
16 defense; namely, a legitimate nondiscriminatory basis
17 for the adverse action. That's really the central
18 issue of the single count complaint that was filed by
19 Ms. Koch.
20         So these documents clearly are
21 critical. They're even more critical because,

Esquire Deposition Services
D.C. - 1-800-441-3376
MD - 1-800-539-6398
VA - 1-800-752-8979

Page 22

1   obviously, the events that underlie this case as to
2   Ms. Koch took place in the first quarter of 1998, and
3   we now find ourselves many years later in 2004, and
4   it's very clear from the exhibits that were attached
5   by the parties to their motion papers in this case
6   that the principal witnesses against Ms. Koch,
7   Ms. Portlock, her immediate supervisor, and others who
8   testified, Ms. O'Brian, the training director, that
9   their memories about the events that underlie her
10  termination are faded at best and evasive at worst,
11  and it's not for me to comment on which of those
12  extremes would be the case, that will be the fact
13  finder's job if the case goes to trial.
14          But examples of what I mean by the lack
15  of helpfulness that the exhibits demonstrate reflect
16  the memories, poor memories of Portlock and O'Brian
17  are as follows, and these are but examples.
18          In Exhibit G to Ms. Koch's motion,
19  Ms. Portlock's deposition at Page 486, she testified
20  that she could not recall the basis for her decision
21  to fire Ms. Koch because of poor performance.

Page 23

1           I have to comment in passing that it's
2   somewhat hard to get too much assistance from these
3   depositions since neither side provided a complete
4   copy of the deposition to allow the Court the context
5   to review the pages in sequence, but both sides -- in
6   some instances, more helpfully than in others --
7   provided snippets, and sometimes there were multiple
8   exhibits of the same deposition, and to try to divine
9   the total impact of a witness' deposition testimony
10  from snippets that have been provided is of limited
11  assistance.
12          In addition, it's fairly important that
13  the record reflect that in Exhibit B to LA Weight
14  Loss' response memo, Paper No. 97, it's clear that
15  before firing Ms. Koch, Ms. Portlock consulted with
16  one of her superiors, a Ms. Eileen Stankunaf.  In
17  Ms. Portlock's deposition, she made it clear that she
18  did consult with Ms. Stankunaf, who was described as
19  the general manager, about a letter that she received
20  from Ms. Koch, and since the firing took place on the
21  12th of March, 1998, the conversation with

Page 24

1   Ms. Stankunaf had to have taken place after
2   Ms. Koch's March 8th, 1998, letter rebutting her
3   disciplinary memo and before her firing.
4           Now, it's also interesting to note that
5   Ms. O'Brian, the training director, or former training
6   director, testified in Plaintiff's Exhibit H,
7   Pages 410 through 414, that she could not recall when
8   she first was aware of the Koch claim, nor could she
9   recall being informed of the importance of preserving
10  documents relating to the Koch performance, nor was
11  she told that she was under any obligation to preserve
12  any of her notes or records related to Ms. Koch's
13  performance of her duties and her termination.
14          In LA Weight Loss' reply memorandum,
15  Paper No. 97, Exhibit B, again referencing the
16  Portlock deposition at Page 318, Ms. Portlock was
17  again very vague on the details of what the
18  deficiencies were that resulted in Koch's being fired
19  for improperly training her trainees.
20          Similarly, in Paper No. 97, Exhibit C,
21  Portlock deposition Page 438, Ms. Koch returned

Page 25

1   various training manuals to Portlock on March 12th of
2   1998 when she was fired.  So, again, whatever
3   materials, or at least a number of important materials
4   that Ms. Koch had, were given back to Portlock when
5   Ms. Koch was fired.
6           In addition, in Paper No. 97,
7   Exhibit D, Ms. Koch in her deposition, at Page 194,
8   testified that she returned the flip charts and
9   training handouts to Ms. Portlock when she was fired.
10          In Paper 97, Exhibit G, Ms. O'Brian's
11  deposition transcript at Pages 258 through 261, she
12  acknowledged that she had no personal knowledge of the
13  training deficiencies associated with Ms. Koch's
14  performance, but instead was told by Portlock what
15  those were, and at Exhibit G to Paper No. 97,
16  Pages 264 through 265, Ms. O'Brian testified that it
17  was her practice to keep notes on conversations with
18  subordinates, that she recalled taking notes with
19  respect to conversations regarding the training
20  deficiencies by Ms. Koch and, in addition, at
21  Exhibit G of Paper No. 97, Ms. O'Brian testified that

Page 26

1   she would generally save those notes for a couple
2   months before discarding them, that she was never
3   instructed to maintain them or to keep them, those
4   regarding Ms. Koch, no one ever told her to keep them
5   or maintain them, and at Page 263, she testified that
6   Ms. Portlock had various trainees that were trained by
7   Ms. Koch put in writing the bases for their
8   allegations that Koch did not train them properly or
9   that they were confused by the training they received.
10          So this is all significant because
11  O'Brian and Portlock, the ones with the allegedly
12  greatest knowledge about the circumstances for
13  Ms. Koch's performance deficiencies, which are the
14  alleged nondiscriminatory reason for her termination
15  by LA Weight Loss, only Ms. Portlock has personal
16  knowledge; whatever Ms. O'Brian had, she was told by
17  Portlock.
18          Portlock appears to be confused because
19  in Paper 97, Exhibit B, at Page 240, Ms. Portlock
20  denied ever having a conversation with Ms. O'Brian,
21  and Ms. O'Brian recalls otherwise.

Page 27

1           So O'Brian has nothing that she didn't
2   learn from Portlock, and Portlock, charitably viewed,
3   doesn't remember much anymore; less charitably viewed,
4   one might draw less, more adverse conclusions
5   regarding the nature of her testimony. But, again,
6   that's not for the Court to assess.
7           Now, I also find that the investigation
8   that was conducted by employees of LA Weight Loss
9   regarding Koch's complaint shows an insufficient
10  effort to preserve, and the explanation for the nature
11  of this investigation and what was done once Koch was
12  terminated is, I find, insufficient.
13          First of all, LA Weight Loss claims
14  that the first knowledge it had of any retaliation
15  claim was only after it received in about the third
16  week of March, 1998 -- excuse me -- April, 1998, a
17  detailed letter from Ms. White, counsel for Ms. Koch,
18  that detailed the basis for her claims, which included
19  the retaliation, or the retaliation claim based upon
20  Ms. Koch's alleged complaints against LA Weight Loss'
21  alleged discrimination against males.

Page 28

1           That letter is Paper No. 97, Exhibit F.
2   It's an April 21st, 1998, letter from Ms. White to the
3   CEO of LA Weight Loss.
4           The person who conducted the so-called
5   investigation was a woman whose last name is Siegel.
6   She provided an affidavit and a supplemental affidavit
7   that was attached as an exhibit, and that is Exhibit E
8   to Document No. 97.
9           She claims that her first knowledge of
10  the retaliation claim was March 23rd, 1998, after
11  Ms. White's letter was received and that she
12  investigated Ms. Koch's complaint. In essence, a fair
13  summary of what her investigation consisted of was
14  going to Portlock and O'Brian, asking them if they had
15  any records, and then either getting records from them
16  or being told that there were none and then reporting
17  back to her superiors.
18          Absent from the record before me is any
19  evidence that any effort was made to notify the
20  various centers where Ms. Koch may have trained
21  counselors. Since she was an area trainer, that they

Page 29

1   would be facilities in Delaware and Maryland and,
2   perhaps, elsewhere. There does not appear to be any
3   instructions to these centers to save the flip charts
4   and the training aids and the test scores of the
5   students. There are no written instructions to all
6   managers or other individuals to assemble that or try
7   and identify people with knowledge. No instructions
8   to preserve E-mail.
9           There's reference to LA Weight Loss not
10  having a system for electronic communications that was
11  organization-wide, but certainly there is not any
12  suggestion that there were no E-mails communicated.
13          And there doesn't appear to be any
14  instruction -- at least, not attached as exhibits that
15  I saw -- to those who might be in a position to
16  preserve the record that would help supplement the
17  clearly deficient memories of Ms. Portlock and O'Brian
18  about what, indeed, happened that led to Ms. Koch's
19  termination.
20          Now, LA Weight Loss' position in the
21  pending dispute is that Koch's March 8th letter to

Page 30

1  Portlock did not mention discrimination against males
2  or retaliation and, therefore, they had no notice of
3  any possible retaliation claim.
4       Secondly, LA Weight Loss contends that
5  it was not until April 21st, 1998, when Ms. White's
6  letter outlined in great detail what the basis of
7  Koch's complaints were that they had any inkling that
8  there was a retaliation claim.
9       It's further their argument that
10 O'Brian initiated a reasonable investigation and that
11 LA Weight Loss' policy -- and I use that word
12 advisedly since no written policy was provided and
13 nothing other than a conclusory description of the
14 policy by Ms. Siegel in her affidavit -- but, in any
15 event, this so-called policy that was referred to by
16 Siegel was that LA Weight Loss would not preserve
17 training materials and flip charts and test scores,
18 the very information sought to prove or disprove the
19 various allegations and defenses by the parties in
20 this case, for the simple reason that LA Weight Loss
21 did not consider them to be personnel records and that

Page 31

1  they had no notice of the need to do so until April of
2  1998.
3       Now, a very clear indication of the
4  fallacy of that reasoning is that O'Brian testified
5  that she did, in fact, have documents relating to
6  notes with respect to Koch's performance and that it
7  was her typical practice to keep them for a couple
8  months. And if that were, indeed, her practice and if
9  it was the 12th when Koch was fired and if it was
10 April 21st -- the 12th of March when she was fired and
11 it was April 21st or 23rd when the letter was
12 received -- then a real investigation, a prompt
13 investigation, with an effort toward fulfilling the
14 duty to preserve documents would have, one would
15 imagine, resulted in a better effort to capture and
16 maintain O'Brian's notes regarding the termination or
17 the performance of Koch.
18       In addition, again, LA Weight Loss at
19 Pages 6 and 8 of its brief, Document 97, states that
20 it had a policy -- again, unwritten and described only
21 in general terms -- only to preserve personnel

Page 32

1  records, that the training materials sought were not
2  personnel records, and that they could not possibly
3  have known from what they knew at the time that there
4  was any duty to preserve records relating to
5  Ms. Koch's performance deficiencies because they
6  weren't training records.
7       The duty to preserve documents was the
8  subject of a recent case by this Court in Thompson
9  versus HUD cited by both parties, which is located at
10 219 Federal Rules Decision 93, and beginning at
11 Page 99, that decision discusses the duties to
12 preserve electronic records.
13      It's quite clear in the Fourth Circuit
14 that at Page 99 citing to the Silvestri -- and I'm not
15 going to cite the cases cited in Thompson because
16 they're contained within the Opinion, I'm just going
17 to refer to the first name of the case -- the
18 Silvestri case is discussed at Pages 99 and 100 of the
19 Thompson Opinion. It's crystal clear that the duty to
20 preserve material evidence precedes the actual filing
21 of litigation and it is -- that's the time when the

Page 33

1  party reasonably should know -- reasonably should know
2  under an objective standard, not a subjective
3  standard -- that litigation could be anticipated.
4       In addition, the Zubulake case cited at
5  Page 100 of the Thompson Opinion states that the duty
6  to preserve has some qualifications and some
7  requirements that affect what a policy -- what a
8  company's retention policy of documents can be.
9       In the Zubulake case, the Southern
10 District of New York stated that once a party
11 reasonably anticipates litigation, it has to suspend
12 its routine document retention or destruction policy
13 and place a litigation hold to ensure the preservation
14 of relevant documents. And that's not an unlimited
15 obligation, but it is an obligation that extends to
16 the key players in the events that led to litigation
17 and, also, to the individuals who were the
18 decision-makers and the documents that are likely to
19 be important to any dispute.
20      Now, we're talking about a very narrow
21 window of time here. This is not a situation where an

Page 34

1  employee performed in a less than sufficient way for a
2  number of months and then left and goes off and then
3  first surfaces months or years later to file a
4  complaint.
5           Portlock issued a warning letter to
6  Koch on March 6th of 1998. It was rebutted by Koch's
7  letter on March 8th of '98. Koch is fired on
8  March 12th of '98. And on April 21st, '98,
9  Ms. White's letter to the CEO of LA Weight Loss laid
10 it all out.
11          We're talking about a month and a half,
12 a very short window of time, and somehow the Court is
13 asked to believe that during that brief period of
14 time, to use an excuse that children use in school
15 that the dog ate the homework, the dog ate all the
16 records, and that this undefined, unwritten policy of
17 records retention, resulting from some so-called
18 investigation by Siegel, that everything disappeared
19 and could not be found, and I just don't find that
20 credible. I don't find that credible for the
21 following reasons.

Page 35

1           First of all, Koch's letter, which is
2  Exhibit F to Document 94, if you read it fairly, it's
3  clear that it makes reference to the March 6th
4  employee warning notice. It clearly puts LA Weight
5  Loss on a notice that Koch viewed that disciplinary
6  action, that warning, as pretextual, as a fallacious
7  paper trail to achieve unknown alternative purposes
8  since I have not followed company hiring policy.
9           That's a direct quote from Exhibit F to
10 Paper 94.
11          Well, what might that hiring policy be?
12          Well, in the very next sentence, we're
13 told that Ms. Koch complained in a formal complaint
14 with the U. S. Equal Employment Opportunity Commission
15 the employment practices of LA Weight Loss Centers.
16          Now, whether or not Ms. Portlock in her
17 subjective capacity could connect the dots and figure
18 out that there was some employment policy that
19 resulted in Ms. Koch's complaint to the EEOC that was
20 involved with hiring, whether or not that involved
21 discrimination against males or not, is not

Page 36

1  dispositive of this because it's an objective
2  standard.
3           You then go on, and in the remainder of
4  the letter that Ms. Koch wrote, she makes reference to
5  her alleged training deficiencies, she talks about the
6  flip charts, the folders and tools, test scores, she
7  alleges her students were neither confused nor
8  unprepared and that the test scores would evidence
9  that.
10          And then at the end, in the final
11 paragraph, there is some vague reference to sexual
12 harassment which, apparently, according to
13 Ms. Portlock, she would have us believe was the only
14 thing that caused her to have any concern because she
15 believed that she was being accused of sexual
16 harassment.
17          The reference points to a pretextual
18 purpose behind the employee disciplinary record, the
19 employment policies of LA Weight Loss, coupled with
20 the references to Koch's rebutting the allegations of
21 her own deficient training, coupled with the

Page 37

1  additional fact that we know that Portlock then
2  consulted with Stankunaf before Koch was fired, shows
3  that Portlock understood the gravity of Koch's
4  charges, or she should have if she didn't, and the
5  evidence that she discusses with Stankunaf is in
6  Document 97, Exhibit C, Portlock deposition Pages 433
7  through 34.
8           Moreover, Portlock then at the
9  suggestion of Stankunaf consulted with the Delaware
10 Department of Labor after she received Koch's letter
11 because there was some reference to sexual harassment.
12 This is Exhibit C to Document No. 97, Portlock
13 deposition Pages 420 to 422.
14          So from all of this, it's pretty clear
15 to me, anyway, that objectively viewed that LA Weight
16 Loss was under reasonable notice as of the 8th of
17 March, 1998, that it was to preserve any records
18 relating to alleged deficient performance by Koch, and
19 that since Koch herself referred to some of the very
20 training tools that LA Weight Loss did not believe
21 were personnel documents in her letter, at the same

Page 38

1  time she makes reference to employment policies and
2  not toeing the line with respect to LA Weight Loss'
3  hiring practices, there's just no question in my mind
4  that as of March 12th, 1998, LA Weight Loss had a duty
5  to preserve documents relevant to the reasons why Koch
6  was fired, and this includes, but is not limited to,
7  the flip charts, the folders, the test scores, the
8  training aids, the notes from supervisors such as
9  O'Brian.
10          It's further clear to me that under the
11 duty that -- that because LA Weight Loss was under a
12 duty to preserve it, the next inquiry with regard to
13 the issue of spoliation as discussed in Thompson
14 versus HUD is whether or not they preserved it.  And
15 even if there was some retention policy, which has
16 been described only in a conclusory fashion by Siegel
17 and was, apparently, unwritten, not to keep these
18 records or not to look at them as employee records,
19 that, as we learned from the Zubulake case, that
20 policy had to be suspended when there was a reason to
21 believe that these documents might be relevant to

Page 39

1  litigation.
2          And there's no question in my mind that
3  Koch's memo of March 8th of '98 put LA Weight Loss on
4  that notice.
5          Siegel's investigation, such as it was,
6  was too little too late, and we know for a fact that
7  O'Brian testified that she, in fact, had notes
8  regarding Koch's performance matters, and it was her
9  custom to keep them for a couple months.
10         Now, under Evidence Rule 406, that
11 custom would be admissible to show compliance
12 therewith, and if she did keep them for a couple of
13 months, that would have kept them around until later
14 in April or early May, even.  And if, indeed, Siegel
15 had done any kind of investigation worthy of the name
16 of an investigation, they should have been able to be
17 found.
18         And there's, also, simply no evidence
19 of any reasonable effort to try to go out to the
20 centers where Koch performed her training and to
21 interview individuals about what she did or didn't do

Page 40

1  and to find out if these training aids that Koch
2  herself referred to in her March 8th memo as being
3  evidence of the fact that the reason why she got the
4  employee warning notice was pretextual.  And if
5  there's any evidence this was done, it's absent from
6  the papers filed before me.
7          Furthermore, there appears to be no
8  instructions to O'Brian from counsel or from superiors
9  in LA Weight Loss to O'Brian to maintain her notes and
10 no memos to people other than Portlock and O'Brian to
11 look out and seek documents that I have found there
12 was a duty to preserve.
13         So I find, secondly, that not only was
14 there a duty to preserve, but that it was not complied
15 with.
16         Now, the next step is were these
17 documents relevant or not relevant in the spoliation
18 analysis that's discussed at Thompson versus HUD, and
19 I already found that the documents were not only
20 relevant, but they're critical because given the fact
21 that Portlock is the only person with real personal

Page 41

1  knowledge about why Koch was terminated, O'Brian is
2  secondhand and comes from Portlock, and Portlock's
3  knowledge or her memory from the information attached
4  as exhibits to these briefings can be charitably
5  described as vague, deficient, and faded.  What we
6  have are conclusory allegations by Portlock that Koch
7  was deficient, and the particulars that could show
8  this -- the training aids, the flip charts, the test
9  scores, any contemporaneous notes that O'Brian may
10 have kept -- are gone.
11         So in this regard, these documents are
12 highly relevant, and the absence of these documents
13 make their clear prejudice to Koch.
14         Now, it's true that because the
15 documents were lost or destroyed that Koch would be
16 able to testify and provide secondary evidence as to
17 the contents of these writings under the original
18 writing rule, under Evidence Rule 1004, Subparagraph
19 1, but the problem is, is that if Portlock says that
20 they stand for something else, then under Evidence
21 Rule 1008, the competing versions go to the jury, and

11 (Pages 38 to 41)

Page 42

1 the jury's got to figure out just based upon its
2 ordinary assessment of credibility which version's
3 correct.
4     So a loss of these documents that were
5 not preserved is highly prejudicial to Koch because
6 they go to the central issue of whether or not she was
7 fired for a legitimate nondiscriminatory reason or for
8 pretext or for retaliation.
9     And for that reason, since the records
10 are highly relevant, the final test is whether or not
11 LA Weight Loss' failure to preserve these records was
12 done with the requisite state of mind to allow
13 spoliation to be found.
14     In this regard, as Thompson points out
15 at Page 101, we have three choices; bad faith or
16 knowing destruction, gross negligence, or simple
17 negligence. It's a sliding scale according to the
18 case law; the more culpable a state of mind, the less
19 the plaintiff, or the party that seeks a spoliation
20 instruction, the less relevance it must demonstrate.
21     But I've already found that the

Page 43

1 relevance is incredibly relevant and highly critical
2 and, therefore, there is no need to determine whether
3 there was bad faith and knowing destruction.
4     At a minimum, it was negligence, and I
5 find under the facts before me that it was grossly
6 negligent. If not grossly negligent, it was
7 negligent. And that this state of mind coupled
8 with -- this culpable state of mind coupled with the
9 high relevance of these documents, the clear duty to
10 preserve, and the clear evidence they did not do so, I
11 find that an adverse inference instruction would be
12 proper to give to the jury if this case goes to trial,
13 and I, therefore, recommend to Judge Quarles that he
14 give exactly such instruction, a spoliation
15 instruction, adverse inference instruction, to the
16 jury regarding the failure of LA Weight Loss to
17 preserve these documents.
18     Now, the question is whether or not
19 Rule 37 sanctions also should be imposed.
20     I find they should not for the
21 spoliation.

Page 44

1     The spoliation occurred years before
2 any discovery requests that were the subject of Koch's
3 Motion to Compel and my Order compelling discovery, so
4 that it would be improper under Rule 37 (b)(2), which
5 is the sanction that is available when a party fails
6 to obey a Court Order for production of discovery.
7     The destruction preceded by years --
8 the failure to preserve preceded by years the
9 discovery requests and the Court's subsequent Order to
10 produce. So while there may be cases where Rule 37
11 sanctions would be appropriate in addition to a
12 spoliation adverse inference, this is not one of them
13 because there is no evidence that the documents were
14 either destroyed or were not maintained after the
15 Court's Order that they be produced.
16     The remaining issue, therefore, is
17 whether or not the specific responses, the
18 supplemental responses, to the Interrogatories and the
19 document production requests that this Court Ordered
20 were deficient so that those responses would form an
21 independent basis under Rule 37 (b) to impose evidence

Page 45

1 preclusion sanctions, and I find that they are not.
2     The following Interrogatories are at
3 issue here, and only these, because these are the only
4 ones that are briefed; Interrogatory No. 6 that dealt
5 with employee retaliation complaints for the
6 Maryland/Delaware region from 1997 to the present,
7 Interrogatory 7 which dealt with all formal employee
8 complaints of retaliation in the same region for the
9 same time for the EEOC, Interrogatory 14 asking for a
10 description of agenda and contents of training
11 provided to corporate trainees, or trainers, in '97
12 and '98, and Interrogatory 17 asked to describe
13 complaints of employees of LA Weight Loss regarding
14 new hire policies.
15     As this Court pointed out in Lee versus
16 Flagstaff Industries, and as Ms. White's preliminary
17 comments indicate, Interrogatories serve a function,
18 but it's a limited function. They are not the vehicle
19 for follow-up questions.
20     The reasons stated in the Court's
21 original Motion to Compel, or Order to Compel, against

Page 46

LA Weight Loss stemmed from what the Court perceived to be inappropriate, vague, evasive, conclusory, and factually nonspecific objections to proper discovery, and supplementation was required.

I reviewed the supplemental responses. Many of the complaints articulated by Koch to the sufficiency of those answers deal with respect to follow-up questions asserted by Ms. Koch's counsel -- we don't know this, we don't know that, we don't know this -- and this is exactly the type of follow-on information that Interrogatories do not well provide.

Instead, I believe that it is appropriate to allow Koch some additional discovery in connection with Interrogatory 6, 7, 14, and 17 as follows.

With regard to Interrogatory 6, LA Weight Loss identifies as people with personal knowledge Karen Siegel of the investigation and Nicola Fryer. They're alleged as having personal knowledge of any additional details with regard to Interrogatory 6.

Page 47

Since many of the issues raised as alleged deficiencies by Koch to their Supplemental Answers deal with follow-up-type questions, I will permit an additional deposition or depositions to be taken by Ms. Koch's counsel, and they'll be of the following nature.

First of all, I want to say I read the supplemental responses. They're not perfect, but no responses ever are. And they partly are due to the inherent limitation of Interrogatory Answers.

Having said that, part of what it seems to me that Ms. Koch complains about is that there may not be answers to these because LA Weight Loss doesn't know, either because the people who gave reasons before don't remember or the reasons given can't be backed up with anything other than a conclusory statement, or they just don't know, and there's nothing better that you're going to get if that's all they can know. That's not going to help LA Weight Loss at trial if that's the best they can do by way of evidence.

Page 48

But I'm going to require that LA Weight Loss identify a Rule 30 (b)(6) designee; may be Siegel, may be Fryer, may be anybody, may be more than one. That person will be available to be deposed for a period of time not to exceed three additional hours by Ms. White or whatever lawyer in her firm is to take the deposition. They will be able to answer the follow-up questions that Ms. White identifies in her Paper No. 94 as being deficiencies in Answer to Interrogatory No. 6.

Because people will be appointed under Rule 30 (b)(6), they will have a duty to inform themselves of the relevant information. They will not be bound by their personal knowledge. And their testimony, because they will be designated by LA Weight Loss, in all likelihood will be looked at by the Court as an admission under Evidence Rule 801 (d)(2)(C) or (D). And so if they testify in vague and conclusory fashion, then that will be the best that LA Weight Loss can do at trial.

The exact same ruling with respect to

Page 49

Interrogatory No. 7 and Interrogatory No. 14.

Now, with respect to Interrogatory No. 14, LA Weight Loss identifies Dawn Lang and Christie O'Brian. Again, it's up to LA Weight Loss who they want to designate.

It will be up to LA Weight Loss in these depositions; if they want to designate one person or two people for all three, they can do it. If they want to have separate ones, they can do that as well.

But, in any event, as for the supplemental depositions to get additional details on Interrogatory 6, 7, and 14, it will be LA Weight Loss' obligation under Rule 30 (b)(6) to produce a deponent that is fully prepared to give information, and if they're not, then that's going to inure to the benefit of Koch's trial, and it will not be helpful to LA Weight Loss.

With respect to Interrogatory No. 17 describing complaints, LA Weight Loss improperly states that it will make certain documents available

Page 50

1   at a mutually convenient time. In Lee versus
2   Flagstaff, 173 Federal Rule Decision 651 at Pages 654
3   through 55, this Court made clear that that's an
4   improper response to a document production request.
5        I'm going to require that within five
6   business days of today's date or at some other time,
7   if agreed to by counsel for Koch, that all additional
8   documents necessary to respond to any of the existing
9   document production requests or Interrogatories for
10  which there's a continuing supplementation duty will
11  be produced. And then, if there is any need for any
12  follow-up depositions regarding the complaints of
13  other employees, they can be addressed in a
14  Rule 30 (b)(6) deposition similar to that which I have
15  ordered for Interrogatories 6, 7, and 14.
16       Now, one other thing I want to comment
17  on before I turn my attention to the privilege log.
18       In response to a couple of the
19  Interrogatories, LA Weight Loss made reference to the
20  identity of former employees of LA Weight Loss who
21  could be available to interview -- be interviewed by

Page 51

1   counsel for Ms. Koch, quote-unquote, through counsel
2   for LA Weight Loss.
3        This is improper. LA Weight Loss has
4   no legal authority to restrict the access of counsel
5   for Koch to any former employee.
6        It is true under Rule of Professional
7   Responsibility 4.2 that there are ethical limitations
8   on what Ms. White may and may not pursue with these
9   individuals depending upon the status that they occupy
10  with LA Weight Loss; whether they were knowledgeable
11  of confidential information, whether they were a type
12  of person whose statements could constitute
13  evidentiary admissions or liability for LA Weight
14  Loss.
15       And it's true that Ms. White proceeds
16  at some peril if she questions these people improperly
17  under Rule 4.2, particularly since there are no fewer
18  than five published Opinions by this Court taking
19  inconsistent positions with regard to the duty of
20  Rule 4.2 and what a lawyer may or may not do, and that
21  in and of itself will cause Ms. White to proceed with

Page 52

1   caution, but it's her peril if she gets this wrong.
2        And since Judge Quarles is not the
3   author of any of those Opinions, none of us knows what
4   his Opinion might be.
5        But there is no way that LA Weight Loss
6   can filter access to these former employees through
7   their counsel, and so I'm going to require that as for
8   any of those individuals LA Weight Loss supplement its
9   Interrogatory Answers to give, if known, a current
10  address and phone number, and Ms. White is free to
11  proceed with them or not proceed with them with or
12  without the permission of LA Weight Loss consistent
13  with her obligations under Rule 4.2.
14       If these individuals are, in fact,
15  represented by counsel, then it's pretty clear what
16  Ms. White can and cannot do, but there is no filtering
17  process by which counsel for LA Weight Loss can
18  prevent access to a former employee.
19       Now, the -- that is, no more
20  restrictive measures than the ethics rule itself
21  provides.

Page 53

1        As for the privilege log, it seems to
2   me that at Pages 27 and 28 of Koch's memo that the
3   objections that are raised by counsel are largely
4   speculative.
5        There are four documents in the
6   privilege log. Now, whether or not they like it or
7   not, that's all that's there. If counsel for LA
8   Weight Loss says they're the only ones for which they
9   assert privilege, that's the only ones for which they
10  assert privilege.
11       There's an ongoing duty to supplement;
12  if additional documents pop up, they'll have to
13  supplement the privilege log.
14       In this regard, I note that there is an
15  outstanding issue with regard to one aspect of my
16  earlier ruling in that with respect to Request for
17  Production Document No. 7, LA Weight Loss objected to
18  producing a privilege log for any documents created
19  after the initiation of litigation, and Koch does not
20  object to them not having to produce them. So it
21  seems, given the fact that Koch does not seek a

Page 54

1  privilege log for those documents and has not opposed
2  the objections filed by LA Weight Loss, that there's
3  simply no reason for Judge Quarles to have to rule on
4  that. I will revise that earlier Order to limit the
5  privilege log obligations pursuant to Request for
6  Production of Document 7 to end with the filing of the
7  complaint. Counsel will give due notice of this to
8  Judge Quarles so that he renders -- he is aware that
9  that dispute is moot because I have modified my Order
10 to withdraw that obligation since Koch does not appear
11 to object to that.
12         Now, with respect to any of the
13 deficiencies with Request for Production of
14 Document 7, 8, 12, 24, and 25 raised at Page 9 of
15 Koch's reply brief, Paper No. 100, they weren't
16 briefed, LA Weight Loss didn't have an opportunity to
17 respond to it, and I'm not addressing them.
18         So this is the Order of the Court.
19         I would like a copy of the transcript
20 of this to be filed, not with the Court, but with me
21 and with -- I will provide a copy to Judge Quarles,

Page 55

1  but since this is not done by an official court
2  reporter, I am told by the Clerk's Office it should
3  not be filed with the Clerk's Office but can be sent
4  here and, of course, a transcript can be prepared, but
5  if any exceptions are taken to this ruling, that they
6  can be briefed.
7          I reserve the right to follow this
8  Order up with a Written Opinion, but my reason to have
9  this hearing today was to expedite the response so
10 that the parties would have a ruling and can move on
11 accordingly.
12         So that is the nature of the ruling,
13 and that concludes the hearing.
14         MS. WHITE: Thank you, Your Honor.
15         MR. LANDAU: Thank you, Your Honor.
16         MR. PHILLIPS: Thank you, Your Honor.
17         (Thereupon, at 5:28 p.m., the hearing
18 was concluded.)
19
20
21

Page 56

1          CERTIFICATE OF NOTARY PUBLIC
2          I, Kathleen R. Turk, the officer before
3  whom the foregoing hearing was taken, do hereby
4  certify that the foregoing proceedings were taken by
5  me in stenotype and thereafter reduced to typewriting
6  under my direction; that said record is a true record
7  of the proceedings; that I am neither counsel for,
8  related to, nor employed by any of the parties to the
9  action in which this hearing was taken; and, further,
10 that I am not a relative or employee of any attorney
11 or counsel employed by the parties hereto, nor
12 financially or otherwise interested in the outcome of
13 the action.
14
15         _____
           Kathleen R. Turk
16         Notary Public in and for the
           State of Maryland.
17 My Commission Expires:
18 March 1, 2007.
19
20
21