# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
            )
      Plaintiff, )
            )     **Case No. WDQ-02-CV-648**
v. )
            )
LA WEIGHT LOSS, )
            )
      Defendant. )
_____)

## PLAINTIFF EEOC'S MEMORANDUM IN OPPOSITION TO DEFENDANT LA WEIGHT LOSS CENTERS, INC.'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND DOCUMENT REQUESTS

1

<u>TABLE OF CONTENTS</u>

Page

TABLE OF CONTENTS     2, 3

TABLE OF AUTHORITIES     4, 5

I.     DEFENDANT'S MOTION TO COMPEL IS UNTIMELY     6

II.     INTERROGATORIES     9

III.     <u>EEOC Argument Regarding Interrogatory Nos. 32 and 33</u>     10

    A.     Interrogatory Nos. 32 and 33 are Unduly Burdensome and Seek Attorney Work Product     10

    B.     Interrogatory Nos. 32 and 33 are Overbroad and Contrary to the Court's Order Regarding Bifurcation and Discovery, and Defendant Has Failed to Demonstrate Exceptional Circumstances or Substantial Need and Undue Hardship     14

IV.     <u>EEOC Argument Regarding Interrogatory Nos. 34, 35 and 36</u>     20

    A.     Interrogatory Nos. 34, 35, and 36 Request Attorney Work Product, Privileged Information, and Information Not Relevant     20

      1.     The Interrogatories Request Attorney Work Product     22

      2.     The Interrogatories Request Information Protected by the Attorney Client Privilege, the Common Interest Rule, and that is Not Relevant to a Claim or Defense in this Action     24

V.     DOCUMENT REQUESTS     25

VI.     <u>EEOC Argument Regarding Document Request Nos. 52-57</u>     30

    A.     Document Request Nos. 52-57 Seek Attorney Work Product Without The Requisite Showing     30

      1.     Questionnaires and Cover Letters Sent to or Returned From Potential Claimants, and EEOC's Notes and Other Documents Related to Potential Claimants, are Attorney Work Product     30

      2.     Defendant Cannot Demonstrate Substantial Need or Undue Hardship     33

B.    Document Request Nos. 52-57 Seek Attorney-Client          36
      Privileged Communications

C.    No Waiver of Privilege Simply Because Questionnaires Not    39
      Identified on a Formalized Privilege Log

TABLE OF AUTHORITIES

Barton v. United States District Court for the Central Dist. Of CA,    38
410 F.3d 1104 (9th Cir. 2005)

Bauman v. Jacobs Suchard, Inc., 136 F.R.D. 460 (N.D.Ill. 1990)    24, 37

Berkey Photo, Inc. v. Eastman Kodak Co.,    13

74 F.R.D. 613 (S.D.N.Y. 1977)

Bhd. Of Teamsters v. United States, 431 U.S. 324 (1977)    14, 15

Connelly  v. Dun & Bradstreet, Inc., 96 F.R.D. 339 (D.Mass.1982)    31, 37

Dingler v. Halcyon Lijn,N.V., 50 F.R.D. 211 (E.D. Pa. 1970)    33, 35

Donovan v. Forbes, 614 F. Supp. 124 (D.Vermont 1985)    31

EEOC v. American National Bank, 652 F.2d 1156 (4th Cir. 1981)    14, 15

EEOC v. Carrols Corp., 215 F.R.D. 46 (N.D.N.Y.2003)    31, 32

EEOC v. Chemsico, 203 F.R.D. 432 (E.D. Mo. 2001)    24, 37

EEOC v. General Motors Corp.,  No.4:96CV01547, 1997 WL 807862    31
(E.D. Mo., Nov. 24, 1997)

EEOC v. HBE Corp., 157 F.R.D. 465 (E.D. Mo. 1994)    13

EEOC v. Int'l Profit Associates, 206 F.R.D. 215 (N.D. Ill.2002)    34, 37

EEOC v. Plessey, Inc., No. 78-1383, 1981 WL 2441    31, 34
(D. Kan. Apr.30, 1981)

EEOC v. The Pasta House Co.,    34
No. 4:94CV1715, 1996 WL 120648 (E.D. Mo., Jan. 29, 1996)

Guilford Nat. Bank of Greensboro v. Southern Railway Co.,    33
297 F.2d 921 (4th Cir. 1962)

Hickman v. Taylor, 329 U.S. 495 (1947)    12, 13, 16, 22,
    32, 34

<u>H.L. Hayden Co. of New York v. Siemens Medical Sys., Inc.</u>,     35
108 F.R.D. 686 (S.D.N.Y. 1985)

<u>Hudson v. General Dynamics</u>, 186 F.R.D. 271 (D. Conn. 1999)     39

<u>In re Allen</u>, 106 F.3d 582 (4th Cir.1997).     13, 23

<u>In re Imperial Corp.</u>, 174 F.R.D. 475 (S.D. Cal. 1997)     40, 41

<u>Intel Corp. v. VIA Tech.</u>,  204 F.R.D. 450  (N.D. Cal. 2001)     32, 40

<u>McPeek v. Ashcroft</u>, 202 F.2d 332 (D.D.C. 2001)     33

4 Moore's Federal Practice par. 26.64(3) (2d ed. 1984)     35

<u>Shelton v. American Motors Corp.</u>, 805 F.2d 1323 (8th Cir. 1986)     13, 23

<u>Sporck v. Peil,</u> 795 F.2d 312 (3d Cir. 1985)     13

<u>United States v. Chatham,</u> 72 F.R.D. 640  (S.D. Ga. 1976)     32, 33, 35

<u>United States v. Deere & Co.,</u> 9 F.R.D. 523 (D. Minn. 1949)     31

<u>United States v. Jones,</u> 696 F.2d 1069 (4th Cir. 1982)     36, 38

<u>Upjohn Co. v. United States</u>, 449 U.S. 383  (1981)     12, 32

Pursuant to Federal Rule of Civil Procedure 37(a) and Rule 104(8) of the Local Rules of the United States District Court for the District of Maryland and agreement of the parties regarding time for service of this pleading, Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission") files this Memorandum in Opposition to Defendant LA Weight Loss Centers, Inc.'s Motion to Compel Answers to Interrogatories and Document Requests.  For the reasons set forth below, Plaintiff EEOC respectfully requests that Defendant LA Weight Loss Centers, Inc.'s Motion to Compel Answers to Interrogatories and Document Requests ("Defendant's Motion to Compel") be denied.

## I.    DEFENDANT'S MOTION TO COMPEL IS UNTIMELY

As an initial matter, Defendant's motion should be denied because it is untimely.  Under Local Rule 104(8)(a), a party that is dissatisfied with responses to interrogatories or requests for the production of documents "shall serve a motion to compel within thirty days of the party's receipt of the response."  EEOC served its answers to Defendant's Fourth Set of Interrogatories to Plaintiff, which included Interrogatory Nos. 32-33, by regular first class mail on May 4, 2005, making Defendant's Motion to Compel answers due to be served on or about June 6, 2005.  On May 26, 2005, the parties held a conference call to discuss various discovery issues.  It is Defendant's position that during the conference EEOC counsel verbally granted Defendant an extension of time for service of its Motion to Compel in order for Defendant to provide EEOC with a letter discussing its disagreement with EEOC's objections and answers for the purpose of informally resolving the parties' dispute regarding Interrogatory Nos. 32-33.

EEOC maintains that it did not grant an extension to Defendant.  Defendant provided EEOC with a letter on June 20, 2005, describing its disagreement with EEOC's answers to the

6

Interrogatories. In response, EEOC sent a letter to Defendant on July 5, 2005, stating its position that Defendant had failed to serve a Motion to Compel within the requisite time frame under Local Rule 104(8) and had waived its right to file such a motion. Defendant then sent two letters to EEOC, one on July 6, 2005 and one on July 20, 2005, stating its position regarding the alleged extension, stating it had not waived its right to serve a Motion to Compel due to un-timeliness, declaring its intention to serve such a motion and inviting EEOC to discuss the matter further before July 22, 2005. See Exb. 1 (Letter from David Landau, Esq. to Tracy Hudson Spicer, EEOC Supervisory Trial Attorney dated July 20, 2005). No further discussions were held regarding this issue, yet Defendant chose to not serve its Motion to Compel until December 29, 2005.

For purposes of the present Motion, EEOC assumes that there was simply a good faith misunderstanding between counsels regarding the extension issue. Nevertheless, as of July 5th Defendant knew EEOC's position regarding both the substance of Interrogatory Nos. 32-33 and Defendant's ability to serve a Motion to Compel. Moreover, in accordance with its own deadline set forth in its correspondence, Defendant knew or should have known by not later than July 23rd that EEOC was maintaining its position. Yet, Defendant chose to wait five more months and less than one month before the close of non-expert discovery, to serve the instant Motion. As to Interrogatory Nos. 32-33, Defendant's Motion is untimely under Local Rule 104 and should be denied.

The balance of the instant Motion, consisting of Defendant's Interrogatory Nos. 34-36 and Requests for Production Nos. 52-57, is also untimely under Local Rule 104(8). EEOC served its answers and responses to the aforementioned discovery requests on September 6,

2005, by facsimile transmission and regular first class mail.  Defendant's Motion to Compel was therefore due to be served by not later than October 10, 2005.  On October 3, 2005, counsel for Defendant contacted EEOC by e-mail requesting an extension of time to serve its Motion and to allow it to first submit a letter to EEOC for the purpose of informal dispute resolution.  While EEOC did not agree with the form of extension originally proposed by Defendant, it did agree to give Defendant until October 13, 2005, to provide its letter to EEOC, and EEOC would thereafter have a reasonable timeframe within which to consider and respond to the letter. Finally, EEOC agreed to give Defendant seven (7) calendar days after Defendant received EEOC's response in which to serve its Motion to Compel.  Defendant provided its letter to EEOC on October 13, 2005. See Exb. 2 (E-mail from Ronald L. Phillips, EEOC Trial Attorney, to Aliza Karetnick, Esq., dated October 4, 2005).  EEOC faxed and mailed its response to Defendant's letter on November 18, 2005, in which EEOC stated it would supplement its answers to Defendant's discovery requests by providing a list of all persons who had completed a claimant questionnaire in this case (other than already-disclosed claimants) along with their last known addresses and telephone numbers, but that in all other respects EEOC would not provide the discovery sought by Defendant for the reasons previously stated by EEOC in its answers/responses. See Exb. 3 (Letter from Ronald L. Phillips, EEOC Trial Attorney, to Aliza R. Karetnick, Esq., dated November 18, 2005).  EEOC provided the promised supplementation on November 23, 2005.

By agreement of the parties, Defendant's Motion to Compel regarding Interrogatory Nos. 34-36 and Requests for Production Nos. 52-57 was to be served by not later than November 25, 2005 and even if the date of EEOC supplementation were to be used (which was not parties'

agreement), by not later than November 30, 2005.  Defendant chose to wait until December 29th, less than 30 days before the close of non-expert discovery.  In accordance with Local Rule 104(8) and Defendant's own agreement with EEOC, Defendant's Motion in untimely and should be denied.[1]  Nevertheless, to the extent the Court determines the merits of Defendant's Motion, this memorandum sets out EEOC's arguments supporting its primary objections.  EEOC sets forth the text of the interrogatories and document requests, as well as the responses and objections thereto, the latter of which are incorporated herein by reference.

## II.    INTERROGATORIES

### Interrogatory No. 32

INTERROGATORY:  Identify each woman that LA Weight Loss interviewed and/or hired possessing the same or similar employment qualifications/background as any class claimant(s).

ANSWER: The EEOC objects to this interrogatory on the ground that it seeks information protected from discovery by the attorney work product doctrine.  Such information encompasses EEOC counsel's mental impressions and opinions regarding the case and the evidence, including EEOC counsel's interpretation and opinions of what constitutes "employment qualifications/background" in this case, which of these are relevant as to particular claimants and female candidates, what constitutes "similar[ity]" in that regard, and which individuals should be compared with one another.  In addition, EEOC objects to this interrogatory on the ground that it is unintelligible and is vague in its use of the phrase "same or similar employment qualifications/background as any class claimant."  Specifically, the terms "similar," "employment qualifications," and "background" are undefined and vague.  EEOC further objects to the interrogatory as over-broad and contrary to the Court's Order Regarding Bifurcation and Discovery in this action, as it seeks information related to any and all EEOC claimants, many  regarding whom EEOC will not seek to present individualized proof at Stage I of this action.  EEOC further objects to this interrogatory as unduly burdensome, as provision of a responsive answer would require EEOC's counsel to manually sift, analyze and form opinions regarding hundreds of thousands of documents.  EEOC further objects on the ground that the

---

[1]  This is especially true in light of the voluminous nature of the information Defendant seeks, which is unduly burdensome as discussed more fully below.  The parties are currently engaged in a heavy deposition schedule with non-expert discovery set to close shortly.  Even if Defendant's highly burdensome written discovery requests were otherwise legally tenable, attempting to answer these requests at this late date would substantially impair the ability of EEOC to complete its own non-expert discovery as well as accommodate Defendant's efforts to secure deposition testimony.

interrogatory is premature because discovery (both formal and informal) is not yet complete. Moreover, Defendant has failed to retain and produce all responsive information and documents that would allow for an answer to this interrogatory, were one otherwise required. The EEOC reserves the right to supplement, change or otherwise modify its answer to this interrogatory any time prior to the trial of this action. Finally, EEOC objects on the ground that Defendant is in possession of documents and information responsive to this Interrogatory, some of which have not been produced to EEOC or have been produced in a form not readily understood by a party without personal knowledge of the events in question, and Defendant has a superior ability to discern answers to this interrogatory given its possession of and far greater familiarity with the documents, as well as its personal knowledge of its own hiring practices and specific instances of hiring.

Subject to and without waiving the foregoing objections and any of its general objections, in accordance with Fed. R. Civ. P. 33(d), EEOC refers Defendant to the documents produced by Defendant and EEOC in response to requests for document production in this action, with particular emphasis on job applications, resumes, electronic applications, cover letters, interview notes, pre-screening forms, and any hiring guidelines actually followed by its personnel in particular instances.

## Interrogatory No. 33

INTERROGATORY: For each woman identified in response to Interrogatory Number 32, provide the following information:

a.    the claimant with whom she is being compared;
b.    whether the woman was interviewed and/or hired;
c.    the date of her interview and/or hire;
d.    the position for which she applied and/or was hired;
e.    the region in which she was hired;
f.    the person or people with whom she interviewed; and
g.    the person or people who made the hiring decision, if applicable.

ANSWER:    The EEOC incorporates by reference its objections and answer to Interrogatory No. 32, set forth above.

## III.    EEOC Argument Regarding Interrogatory Nos. 32 and 33

### A.    Interrogatory Nos. 32 and 33 are Unduly Burdensome and Seek Attorney Work Product

Interrogatory Nos. 32 and 33 seek attorney work product. Through these two

Interrogatories, Defendant improperly seeks to discern EEOC counsel's opinions, mental

impressions, and strategies regarding the evidence and the case.

10

For purposes of the attorney work product doctrine and EEOC's other objections to these Interrogatories, it is important to be clear about the nature of the information that Defendant seeks and the process by which such information would be gathered. Defendant has asked for EEOC to provide information about all female candidates whom EEOC believes were interviewed or hired possessing the same or similar "qualifications/background"[2] as each of more than 200 presently identified EEOC claimants. In order to answer Interrogatory Nos. 32 & 33, multiple mental tasks and inferential steps would be required of EEOC counsel. EEOC first would have to peruse hundreds of thousands of Defendant's recruitment, hiring, personnel and payroll documents which were produced to EEOC by Defendant and draw inferences and conclusions as to each female employee and interviewee; each job title, each time period and each region of the country; and regarding what selection criteria, "qualifications" and "background" are even relevant.[3]

Then EEOC counsel would have to review the resumes and applications of hundreds of its male claimants and draw subjective conclusions regarding whether these individuals were comparably qualified or more qualified than each one of more than 10,000 female employees of Defendant and many tens of thousands more female candidates whom Defendant has interviewed since 1997. This endeavor would be oppressively burdensome.[4] More importantly, it would

---

[2] To date, Defendant has not defined these terms despite an objection to them as vague and unintelligible. Rather than inviting EEOC to request a conference call to discuss these terms, which EEOC did not request because the Interrogatories were otherwise objectionable, the proper course would have been for Defendant to supplement its definitions in writing, which it did not do.

[3] Thus far the record suggests subjective, vague, and inconsistent selection criteria, with a high degree of variation between individual decision-makers, regions, and time frames.

[4] EEOC estimates that this task of attempting to answer two interrogatories would require weeks, if not months, of full-time attorney work to complete.

require EEOC counsel to sift the record for relevant facts, interpret the evidence, and draw inferences from among a range of alternatives – and thus clearly intrude into the EEOC counsel's mental processes, opinions, and trial preparation.

While Defendant asserts that it seeks only "factual information," this is a highly dubious characterization. Answering Interrogatory Nos. 32 and 33 necessarily would require disclosure of EEOC counsel's opinions as to which of the female employees hired by Defendant and female candidates Defendant has interviewed are or may be comparably qualified or less qualified than EEOC claimants, and therefore, which female employee's or candidate's information might be useful evidence in this case. Providing such information would also allow Defendant to gain a piercing insight into EEOC counsel's interpretation of the evidence and opinions regarding Defendant's actual selection criteria; which of the myriad "employment qualifications/background[s]" purported to be in use by Defendant are relevant as to particular persons, regions and time periods; what constitutes "similar[ity]" among candidates; and which individuals should appropriately be compared with one another.

Although Fed. R. Civ. P. 26(b)(3) by its terms protects "documents and tangible things," the Supreme Court made clear in Hickman v. Taylor, 329 U.S. 495 (1947), that the attorney work product doctrine also protects intangible work product. See, e.g., Hickman, 329 U.S. at 511. Attorney mental impressions are entitled to virtually absolute protection, and are not disclosed upon a showing of substantial need. See Fed. R. Civ. P. 26(b)(3) (notwithstanding substantial need test for work product, "the court shall protect against disclosure of attorney mental impressions"); Upjohn Co. v. United States, 449 U.S. 383, 401 (1981). The mental conclusions, impressions and theories of counsel (including the kind sought by Defendant) are

core opinion work product, and opinion work product is not discoverable except in rare and extraordinary circumstances. See, e.g., Hickman, 329 U.S. at 510-11; In re Allen, 106 F.3d 582, 607 (4th Cir. 1997).

Simply put, Defendant seeks discovery of the results of EEOC counsel's efforts to sift scores of documents in a highly voluminous record for potential trial evidence, and to compel substantially more such efforts by EEOC counsel and disclosure of the results of those efforts. Defendant's position is without merit. "[I]t is the selection and compilation of the relevant facts that is at the heart of the work product doctrine." EEOC v. HBE Corp., 157 F.R.D. 465, 466 (E.D. Mo. 1994). As the Supreme Court stated in Hickman v. Taylor, "[p]roper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." Hickman, 329 U.S. at 511. Consistent with the bedrock principle discussed in Hickman, the federal courts have long held that an attorney's selection and compilation of relevant evidence from the record for possible use on behalf of his/her client is attorney work product and as such is not discoverable. See, e.g., In re Allen, 106 F.3d 582, 608 (4th Cir. 1997)(holding selection and compilation of discoverable documents by counsel is opinion work product and not discoverable); Shelton v. American Motors Corp., 805 F.2d 1323, 1328 (8th Cir. 1986); Sporck v. Peil, 795 F.2d 312, 316-17 (3d Cir. 1985); HBE Corp., 157 F.R.D. at 466; Berkey Photo, Inc. v. Eastman Kodak Co., 74 F.R.D. 613, 616 (S.D.N.Y. 1977)(holding notebooks containing counsel's ordering of facts was work product).

**B.      Interrogatory Nos. 32 and 33 are Overbroad and Contrary to the Court's Order Regarding Bifurcation and Discovery, and Defendant Has Failed to Demonstrate Exceptional Circumstances or Substantial Need and Undue Hardship**

Defendant has made no real effort to demonstrate the existence of rare and extraordinary circumstances required to obtain discovery of opinion work product. Indeed, Defendant has not even demonstrated a substantial need and inability to obtain the substantial equivalent without undue hardship under Fed. R. Civ. P. 26(b)(3) if the aforementioned information were to be considered not opinion work product but fact work product. Defendant cannot make either showing. First, Interrogatory Nos. 32 and 33 seek information related to any and all EEOC claimants, most of whom EEOC will not present individualized proof at Stage I of this action.

Moreover, even as to male claimants whose testimony EEOC will present in Stage I, it appears from the Interrogatories that Defendant has a misapprehension of the relative burdens of the parties. The focus of Stage I will be whether discrimination against male job applicants was Defendant's "standard operating procedure – the regular rather than the unusual practice." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 336 (1977). As the Supreme Court noted in Teamsters, "at the initial, 'liability' stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy." Teamsters, 431 U.S. at 360. Defendant rightly points out that EEOC is likely to put on testimony of some claimants as Stage I witnesses. However, whether these claimant-witnesses were in fact discriminated against, and whether they are entitled to individual relief, will not be adjudicated in Stage I. Rather, to the extent anecdotal testimony will be offered, it merely serves to buttress or corroborate the extensive evidence of Defendant's general pattern or practice of sex discrimination. See EEOC v. American National

Bank, 652 F.2d 1156, 1200 (4th Cir. 1981) (anecdotal testimony in Stage I is offered not to establish entitlement to individual relief, but merely as evidence corroborating or buttressing evidence of a general pattern of discrimination; fact-finder's conclusion that Stage I witnesses did not buttress other EEOC evidence establishing pattern-or-practice meant that such evidence would simply be set aside in Stage I).

Defendant's argument may very well be that despite its pattern or practice of violating federal law, certain claimants were rejected because they were not as qualified as the women the Defendant hired instead.  But by asking EEOC counsel to identify the women that Defendant "interviewed and/or hired possessing the same or similar employment qualifications/background as any class claimant(s)," and by asking EEOC counsel to provide a laundry list of particulars as to each woman's hiring, Defendant improperly asks that EEOC in effect prepare Defendant's case.  While EEOC is free to offer any combination of statistical and anecdotal (whether direct or circumstantial) evidence to satisfy its Stage I burden of proof under Teamsters, it does not have the burden of showing, for each male claimant then-identified, that an equally or less qualified female was selected.  It is Defendant, not EEOC, who will bear the *Stage II* burden of proof as to all claimants shown to have applied and been rejected, including those who testified in Stage I. Id. at 1201 ("As earlier noted, the district court has made findings and conclusions in respect of some persons who may present claims in the Stage II proceedings.  Those findings and conclusions, made in connection with the general issue of the existence of a discriminatory pattern or policy and under different burdens of proof, have no preclusive effect in Stage II proceedings.").

Most importantly, Defendant has utterly failed to demonstrate that it cannot obtain the

substantial equivalent of the information it seeks without undue hardship. Defendant is quite obviously in the best position to discern information such as the female candidates it interviewed and/or hired; who made the decision and for which region; what constitutes similar or relevant "qualifications/background;" and other such matters. To the extent comparative qualifications information will be used at the Stage I pattern or practice liability trial, *that information is already within Defendant's possession* via its own business records (e.g., job applications, resumes, electronic applications, cover letters, interview notes, pre-screening forms, and any hiring guidelines actually followed by its personnel in particular instances) and the recollection of its own personnel who were, after all, the individuals who determined selection criteria and are the decision-makers. Given these facts, it is highly improper for Defendant to demand that EEOC's counsel share their existing work product and undertake the burdensome task of further going through the volumes of incomplete information provided by Defendant in order to provide Defendant with information it is in a better position to discern in the first place. Defendant conducted the job interviews. Defendant made the hiring decisions in question. Defendant generated and maintained the records of those events. Defendant can examine its own records and, unlike the EEOC, can freely interview all of its employees to secure the information it seeks. As a matter of law, what the Defendant cannot do is sit back, fail to conduct an adequate investigation of its own defense, and then ask EEOC counsel to lay open their trial preparation files for use as a weapon against their own client. This is exactly the type of tactic that attorney work product immunity is intended to prevent. See Hickman, 329 U.S. at 516 (Jackson, J., concurring) (a trial is an adversarial proceeding, and "[d]iscovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary").

**Interrogatory Nos. 34, 35, and 36**

INTERROGATORY NO. 34:  Identify all Prospective Class Claimants.

ANSWER:  Plaintiff EEOC objects to the Interrogatory as premature, over-broad and contrary to the Court's Order Regarding Bifurcation and Scheduling entered on May 25, 2004 in this action, as it seeks discovery related to any and all EEOC claimants, many regarding whom EEOC will not seek to present individualized proof at Stage I of this action.

Plaintiff EEOC further objects to this Interrogatory as duplicative.  Plaintiff EEOC has previously answered an Interrogatory, Defendant's No. 11, calling for essentially the same information.  In addition, Plaintiff EEOC objects to the Interrogatory as ambiguous.

To the extent the Interrogatory, in conjunction with Defendant's definition of the term "Prospective Class Claimants," asks that EEOC identify all male applicants for employment with Defendant, EEOC objects to the Interrogatory on the ground that it is unduly burdensome, as it purports to require EEOC to identify thousands of individuals, and also because it seeks information that, as to particular individuals, may not be within the knowledge of EEOC.  In addition, the Interrogatory seeks mental impressions and opinions of EEOC counsel formulated during the course of counsel's representation of the Government in this action, and in particular, counsel's opinions  regarding the possible sex of applicants as well as counsel's efforts to ascertain the sex of those individuals.  EEOC therefore objects on the ground of the work product doctrine.

To the extent the Interrogatory can be read to request that EEOC identify separately by category particular individuals who have expressed a desire to participate as a claimant in this action, who have chosen to not participate, or whom EEOC has chosen to not include as a claimant, EEOC further objects to the Interrogatory on the basis of attorney-client privilege and the common interest privilege/doctrine, as such Interrogatory calls for disclosure of confidential communications between EEOC counsel and/or their agents and claimants/potential claimants made for the purpose of rendering legal advice and carrying out the instant litigation.  EEOC further objects on the basis of the work product doctrine, as such information was acquired as a result of EEOC counsel's confidential efforts in the prosecution of the instant action, and disclosure would reveal the mental impressions, opinions and legal strategy of counsel.

Plaintiff EEOC further objects to the Interrogatory as premature, over-broad and contrary to Court order.  In accordance with the Court's Order Regarding Bifurcation and Scheduling, Plaintiff EEOC is not yet required to provide a final list of all claimants for whom it will seek relief in this action (though it will continue to disclose the names of those individuals as they are identified).  Yet, the Interrogatory and its definitions appear to require identification of all claimants immediately, which is contrary to court order.  Plaintiff EEOC's efforts to determine the identities of the persons for whom it will seek relief in this action, as well as discovery (including Defendant's production of application documents), are on-going, and Plaintiff EEOC reserves the right to supplement, modify, or otherwise change its identification of claimants at any time prior to the date ordered by the Court for final determination of claimants in this action.

For the foregoing reasons pertaining to the over-broad and premature nature of the Interrogatory, Plaintiff EEOC further objects to this Interrogatory as unduly burdensome. Plaintiff EEOC states that it "might seek relief" for any male who unsuccessfully sought a position with Defendant, or whom was deterred from seeking a position with Defendant as a result of its discriminatory employment practices, for any position at any time during the period 1997 to present. These individuals would potentially include, but are not limited to, all male persons who ever applied for employment with Defendant. Plaintiff EEOC is unable to list all such persons, as discovery is on-going and Defendant has not produced all application-related documents, and to require EEOC to compile and provide such a listing is unduly burdensome, as it may include tens of thousands of individuals. In this regard, Defendant has possession of all application-related documents produced to EEOC. EEOC refers Defendant to those documents.

INTERROGATORY NO. 35:  For each Prospective Class Claimant identified in response to Interrogatory Number 34, provide the following information:

a.    a list of all Prospective Class Claimants interviewed by EEOC;
b.    a list of all Prospective Class Claimants to whom EEOC provided a Questionnaire and the date on which each Questionnaire was provided;
c.    a list of all Prospective Class Claimants that returned a Questionnaire, complete or incomplete, to EEOC and the date on which each Questionnaire was returned.

INITIAL ANSWER:  Plaintiff EEOC objects to the Interrogatory as premature, over-broad and contrary to Court order. The Interrogatory seeks discovery regarding persons whom have not been designated by either party as potential Phase I trial witnesses. In accordance with the Court's Order Regarding Bifurcation and Scheduling entered on May 25, 2004 in this action, Plaintiff EEOC is not required to provide written discovery responses regarding particular non-designees at this juncture in the litigation, as all such discovery has been stayed until completion of Phase I proceedings. In addition, Plaintiff EEOC's efforts to determine the identities of the persons for whom it will seek relief in this action, as well as discovery (including Defendant's production of applicant documents), are on-going, and Plaintiff EEOC reserves the right to supplement, modify, or otherwise change its identification of claimants at any time prior to the date ordered by the Court for final determination of claimants in this action.
Plaintiff EEOC further objects to this Interrogatory on the ground that it seeks information that is not relevant to the claims and defenses in this action.
Plaintiff EEOC further objects on the basis of the work product doctrine.  Such information, which includes the names of persons chosen from many tens of thousands of individuals for verbal communication or questionnaire receipt by EEOC counsel and the timing of such selection, constitutes EEOC counsel's confidential, day-to-day case management and prosecution efforts in the instant action, and disclosure would reveal the mental impressions, opinions and legal strategy of counsel.
Plaintiff EEOC further objects to this Interrogatory on the ground that it seeks information protected from disclosure by the attorney-client privilege and the common interest privilege/doctrine.  The Interrogatory calls for disclosure of confidential communications between EEOC counsel and/or their agents and claimants/potential claimants made for the

18

purpose of rendering legal advice and carrying out the instant litigation.

Plaintiff EEOC further objects to the Interrogatory as vague in its use of the terms "interviewed,""complete," "incomplete," and "returned."

For the foregoing reasons pertaining to the over-broad and premature nature of the Interrogatory, Plaintiff EEOC further objects to this Interrogatory as unduly burdensome. Plaintiff EEOC states that it "might seek relief" for any male who unsuccessfully sought a position with Defendant, or whom was deterred from seeking a position with Defendant as a result of its discriminatory employment practices, for any position at any time during the period 1997 to present. These individuals would potentially include, but are not limited to, all male persons who ever applied for employment with Defendant. As to subparts (b) and (c) of the Interrogatory, to require EEOC to compile and provide such a listing is unduly burdensome, as it includes thousands of individuals and may eventually include tens of thousands of individuals. Moreover, in many cases the date of receipt by EEOC is not capable of determination.

Subject to and without waiving the foregoing objections and any of its general objections, Plaintiff EEOC states that it has received questionnaires from approximately 567 individuals. The dates on which these questionnaires were received range between December 2002 and August 2005. All questionnaires were prepared by EEOC counsel and their agents during and for the purpose of prosecution of the instant action, and constitute confidential communications between EEOC counsel and their claimants/potential claimants. In addition, during the course of this litigation EEOC counsel (and in a small number of cases, EEOC personnel acting as counsel's agents) have spoken with in excess of 120 "Prospective Class Claimants." The identities of these individuals are irrelevant and are work product.

SUPPLEMENTAL ANSWER:  Subject to and without waiving any of its previous objections to this Interrogatory and any of its general objections, Plaintiff EEOC states that it has received questionnaires from approximately 612 individuals.  The dates on which these questionnaires were received range between December 2002 and September 2005.  All questionnaires were prepared by EEOC counsel and their agents during and for the purpose of prosecution of the instant action, and constitute confidential communications between EEOC counsel and their claimants/potential claimants.  In addition, during the course of this litigation EEOC counsel (and in a small number of cases, EEOC personnel acting as counsel's agents) have spoken with in excess of 120 "Prospective Class Claimants."  The identities of these individuals are irrelevant and are work product.  The names, last known home addresses and last known home telephone numbers of the individuals who were not previously identified by EEOC as claimants and who have returned questionnaires to EEOC are set forth in a 37-page document which is attached to these supplemental answers and is styled, "Attachment to Supplemental Answers to Defendant's Fifth Set of Interrogatories."  In addition, EEOC believes that there are three or four other individuals who returned questionnaires to EEOC, have not previously been identified as EEOC claimants, and are not identified in the attached list.  EEOC will supplement this answer when it ascertains the identities of those individuals.

INTERROGATORY NO. 36:  Identify each Prospective Class Claimant who has indicated, verbally or in writing, that: (a) they wish to participate as a class claimant in this case; or (b) they do not wish to participate as a class claimant in this case.

ANSWER:  Plaintiff EEOC objects to the Interrogatory as premature, over-broad and contrary to Court order.  The Interrogatory seeks discovery regarding persons whom have not

been designated by either party as potential Phase I trial witnesses.  In accordance with the Court's Order Regarding Bifurcation and Scheduling entered on May 25, 2004 in this action, Plaintiff EEOC is not required to provide written discovery responses regarding particular non-designees at this juncture in the litigation, as all such discovery has been stayed until completion of Phase I proceedings.  In addition, Plaintiff EEOC's efforts to determine the identities of the persons for whom it will seek relief in this action, as well as discovery including Defendant's production of applicant documents, are on-going, and Plaintiff EEOC reserves the right to supplement, modify, or otherwise change its identification of claimants at any time prior to the date ordered by the Court for final determination of claimants in this action.

Plaintiff EEOC further objects to this Interrogatory on the ground that it seeks information that is not relevant to the claims and defenses in this action.

Plaintiff EEOC further objects on the basis of the work product doctrine.  Such information, which includes the names of persons chosen from many tens of thousands of individuals for interview or questionnaire receipt by EEOC counsel, constitutes EEOC counsel's confidential, day-to-day case management and prosecution efforts in the instant action, and disclosure would reveal the mental impressions, opinions and legal strategy of counsel.

Plaintiff EEOC further objects to this Interrogatory on the ground that it seeks information protected from disclosure by the attorney-client privilege and the common interest privilege/doctrine.  The Interrogatory calls for disclosure of confidential communications between EEOC counsel and/or their agents and claimants/potential claimants made for the purpose of rendering legal advice and carrying out the instant litigation.

For the foregoing reasons pertaining to the premature nature of the Interrogatory, Plaintiff EEOC further objects to this Interrogatory as unduly burdensome.  Plaintiff EEOC states that it "might seek relief" for any male who unsuccessfully sought a position with Defendant, or whom was deterred from seeking a position with Defendant as a result of its discriminatory employment practices, for any position at any time during the period 1997 to present.  These individuals would potentially include, but are not limited to, all male persons who ever applied for employment with Defendant.  To require EEOC to compile and provide such a listing is unduly burdensome, as it includes an unduly burdensome number of individuals and may eventually include tens of thousands of individuals.

## IV.    EEOC Argument Regarding Interrogatory Nos. 34, 35 and 36

### A.    Interrogatory Nos. 34, 35, and 36 Request Attorney Work Product, Privileged Information, and Information Not Relevant

Defendant asks this Court to compel answers to interrogatories which seek: (1) all Prospective Class Claimants; (2) all Prospective Class Claimants to whom EEOC provided a questionnaire, and the date it was provided; (3) all Prospective Class Claimants EEOC interviewed; (4) all Prospective Class Claimants who returned a questionnaire, and the date each questionnaire was returned; and (5) each Prospective Class Claimant who indicated that he

wishes or does not wish to participate as a claimant in the litigation. Defendant's definition of "Prospective Class Claimants" is defined as essentially all men who applied for LA Weight Loss field jobs during the period covered by this suit: "Any person whom EEOC identified as an applicant to LAWL on whose behalf the EEOC might seek relief, including confirmed class claimants, persons who chose not to participate as claimants and persons whom EEOC chose not to name as class claimants."

At the time Defendant propounded the above interrogatories, Defendant was aware of the identities of most of the claimants disclosed by EEOC pursuant to its ongoing duty under the Federal Rules of Civil Procedure. In response to the above interrogatories EEOC has provided Defendant a 37-page list of the names, last known addresses, and last known telephone numbers of the individuals who returned questionnaires to EEOC and who had not yet been identified as claimants for whom EEOC was seeking victim-specific relief. EEOC has also provided the time frame during which EEOC received the questionnaires (though not specific dates because the date range alone shows the applicability of the privilege and work product immunity). EEOC also has answered that it has received questionnaires from approximately 612 "Prospective Class Claimants," and that EEOC attorneys (or their agents) have spoken to approximately 120 of them. EEOC has provided Defendant with responsive information to the extent feasible without revealing EEOC counsel's work product.

Yet, Defendant is not satisfied. The crux of Defendant's demand is that EEOC counsel go much further and, in essence, answer the following objectionable questions: When did you create your work product (i.e., questionnaires)? Which potential claimants did you send your work product to, and when? Which potential claimants, upon receiving your work product, used it to provide EEOC with work product and privileged communications, and when? Which

potential claimants did you select for privileged oral communications (i.e., interviews)? The clear effect of disclosing such information would be to reveal EEOC counsel's day-to-day decision-making and case management strategies. No party is entitled to such an intimate accounting of the inner workings of their opposing counsel's ongoing case prosecution activities.

Defendant, of course, denies that its interrogatories seek information covered by the attorney work-product doctrine or by the attorney-client privilege. Defendant's primary argument is Orwellian – that the interrogatories only seek "facts." In reality, however, Interrogatory Nos. 34-36 seek to elicit EEOC counsel's work product and privileged communications between EEOC counsel and claimants and potential claimants.

### 1.    The Interrogatories Request Attorney Work Product

With respect to the attorney-work product doctrine, there can be no real dispute that the information sought by Interrogatory Nos. 34-36 pertains to EEOC counsel's case prosecution activities during the instant litigation. One of the purposes of the attorney work product doctrine is to avoid the demoralizing unfairness that would result by allowing counsel to probe and disrupt the opposing counsel's preparation process. See Hickman v. Taylor, 329 U.S. 495, 511 (1947). Defendant's interrogatories run contrary to this purpose. As the Hickman Court stated:

> [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

Hickman, 329 U.S. at 510-11. Thus, the attorney work product doctrine precludes the granting of Defendant's motion to compel answers to Interrogatory Nos. 34-36. The Interrogatories necessarily solicit disclosure of EEOC counsel's mental impressions such as attorney impressions of which of tens of thousands of applicants are male (only males are potential

claimants), which among the thousands of potential claimants should have received questionnaires, and which potential claimants EEOC attorneys selected to interview among the approximately 612 persons who returned questionnaires. Defendant's attempted intrusion into EEOC attorneys' mental processes with respect to their selection of claimants to interview is no more proper than would be a probing inquiry into the attorneys mental processes related to the selection and compilation of documents. <u>See, e.g.</u>, <u>In re Allen</u>, 106 F.3d 582, 608 (4th Cir. 1997)(attorney's choice of documents constituted opinion work product because it revealed thought processes and theories regarding the litigation); <u>Shelton v. American Motors Corp.</u>, 805 F.2d 1323, 1328-29 (8th Cir. 1986)(attorney's "mental selective process reflects . . . legal theories and thought processes, which are protected as work product").

Moreover, Defendant has again failed to demonstrate rare and exceptional circumstances or even substantial need and the inability to obtain the substantial equivalent without undue hardship. The individuals who are claimants and potential claimants were identified solely from Defendant's own applicant flow records produced to EEOC by Defendant. Defendant has an equal ability to examine its own business records, identify addresses and draw inferences regarding the sex of its applicants. Defendant is also free to send its own questionnaire to male applicants/potential claimants who have not yet been selected by EEOC as claimants in order to gather information it deems relevant to the preparation of its defense. Moreover, as to certain of Defendant's Interrogatory sub-parts, such as its inquiry regarding which male applicants were provided a questionnaire by EEOC, the date EEOC provided the Questionnaire or received it from a potential claimant, and the names of all male applicants interviewed by EEOC, the relevancy of such information to the claims and defenses in this action is hardly apparent, and Defendant has done nothing but simply make a conclusory assertion of relevancy. This is

insufficient, especially when balanced against the fact that the Interrogatories would require the highly burdensome task of producing potentially thousands of names, addresses, and other identifying information.

> **2.  The Interrogatories Request Information Protected by the Attorney Client Privilege, the Common Interest Rule, and that is Not Relevant to a Claim or Defense in this Action**

Defendant's Interrogatory No. 36 requests that EEOC indicate which potential claimants communicated to EEOC attorneys a desire to participate or not participate as a claimant in the instant suit.  However, communications between EEOC and potential claimants are confidential and protected by the attorney-client privilege.  See, e.g., EEOC v. Int'l Profit Associates, 206 F.R.D. 215, 219 (N.D. Ill. 2002)("Communications between prospective class members and EEOC are protected from disclosure by the attorney-client privilege."); EEOC v. Chemsico, 203 F.R.D. 432, 433 (E.D. Mo. 2001); Bauman v. Jacobs Suchard, Inc., 136 F.R.D. 460, 462 (N.D. Ill. 1990)(questionnaires returned to EEOC by prospective claimants were protected by a de facto attorney-client privilege).  To avoid duplication, EEOC will discuss this issue more fully below in its argument regarding Defendant's requests for production of EEOC claimant questionnaires, see infra at Pgs. 36-39, and it incorporates that discussion herein by reference.

In addition, Interrogatory No. 36 also seeks information that is not relevant to the claims or defenses in this lawsuit.  First, it asks EEOC to indicate which potential claimants communicated to EEOC attorneys a desire not to participate as a claimant in the instant suit.  A potential claimant's decision to not participate in a government enforcement action says nothing about whether Defendant discriminated against him (nor does it even suggest why the potential claimant does not want to participate – e.g., fear of the government, apathy, overwhelming life circumstances, fear of litigation, philosophical objection to lawsuits, etc.).  Second, with respect

to all persons who returned a questionnaire, Defendant requests the date each questionnaire was

provided and the date each questionnaire was returned.    It should suffice that EEOC has

provided to Defendant the names, last known addresses, and last known telephone numbers of

the individuals who returned questionnaires to EEOC, as well as the date range of those

questionnaires.  The specific dates questionnaires were sent or returned are not relevant to any

claim or defense in this action.

## V.    DOCUMENT REQUESTS

**Document Request Nos. 52 - 57**

DOCUMENT REQUEST NO. 52:    All Questionnaires sent to Prospective Class
Claimants.

RESPONSE:  Plaintiff EEOC objects to the Request on the basis of the work product
doctrine.  Such documents were prepared by EEOC counsel and its agents for the purpose of the
instant litigation and constitute EEOC counsel's work product.  Disclosure would reveal the
mental impressions, opinions and legal strategy of counsel.
Plaintiff EEOC further objects to this Request on the ground that it seeks documents
protected from disclosure by the attorney-client privilege and the common interest
privilege/doctrine.  The Request calls for production of confidential communications between
EEOC counsel and claimants/potential claimants made for the purpose of rendering legal advice
and carrying out the instant litigation.
Plaintiff EEOC further objects to the Request as premature, over-broad and contrary to
Court order.  The Request seeks discovery regarding persons whom have not been designated by
either party as potential Phase I trial witnesses.  In accordance with the Court's Order Regarding
Bifurcation and Scheduling entered on May 25, 2004 in this action, Plaintiff EEOC is not
required to provide written discovery responses regarding particular non-designees at this
juncture in the litigation, as all such discovery has been stayed until completion of Phase I
proceedings.  In addition, Plaintiff EEOC's efforts to determine the identities of the persons for
whom it will seek relief in this action, as well as discovery including Defendant's production of
applicant documents, are on-going, and Plaintiff EEOC reserves the right to supplement, modify,
or otherwise change its identification of claimants at any time prior to the date ordered by the
Court for final determination of claimants in this action.
Plaintiff EEOC further objects to this Request as unduly burdensome.  The EEOC's
process of identifying claimants is on-going, and by Court order it is not required to be
completed until after the conclusion of Phase I proceedings in this action.  The vast majority of
the requested documents are still under review by EEOC and will continue to be reviewed as
more information is obtained in litigation regarding the potential claimants themselves and
Defendant's hiring practices. Production of the requested documents prior to the conclusion of
the process, while they are still under consideration, will unduly interfere with EEOC counsel's

identification of claimants and preparation of the Government's case. In this regard, production may also result in breach of confidentiality regarding past, present or future privileged communications and deterrence of voluntary responses and case participation by potential claimants.

Plaintiff EEOC further objects to this Request on the ground that it seeks documents that are not relevant to the claims and defenses in this action.

Plaintiff EEOC further objects to this Request on the ground that it exceeds the number of document production requests authorized by the Federal Rules of Civil Procedure, Local Rules of this Court, and the Court's Order Regarding Bifurcation and Scheduling.

Subject to and without waiving the foregoing objections and any of its general objections, Plaintiff EEOC responds by stating that it has sent questionnaires to thousands of individuals, though a precise number has not yet been ascertained. Of these, approximately 567 were returned to EEOC by the individual to whom it was addressed. The dates on which these questionnaires were sent by EEOC range between December 2002 and June 2005. All questionnaires were prepared by EEOC counsel and their agents during and for the purpose of prosecution of the instant action, and constitute confidential communications between EEOC counsel and their claimants/potential claimants.

DOCUMENT REQUEST NO. 53: All Cover Letters sent to Prospective Class Claimants.

RESPONSE: Plaintiff EEOC objects to the Request on the basis of the work product doctrine. Such documents were prepared by EEOC counsel and its agents for the purpose of the instant litigation and constitute EEOC counsel's work product. Disclosure would reveal the mental impressions, opinions and legal strategy of counsel.

Plaintiff EEOC further objects to this Request on the ground that it seeks documents protected from disclosure by the attorney-client privilege and the common interest privilege/doctrine. The Request calls for production of confidential communications between EEOC counsel and claimants/potential claimants made for the purpose of rendering legal advice and carrying out the instant litigation.

Plaintiff EEOC further objects to the Request as premature, over-broad and contrary to Court order. The Request seeks discovery regarding persons whom have not been designated by either party as potential Phase I trial witnesses. In accordance with the Court's Order Regarding Bifurcation and Scheduling entered on May 25, 2004 in this action, Plaintiff EEOC is not required to provide written discovery responses regarding particular non-designees at this juncture in the litigation, as all such discovery has been stayed until completion of Phase I proceedings. In addition, Plaintiff EEOC's efforts to determine the identities of the persons for whom it will seek relief in this action, as well as discovery including Defendant's production of applicant documents, are on-going, and Plaintiff EEOC reserves the right to supplement, modify, or otherwise change its identification of claimants at any time prior to the date ordered by the Court for final determination of claimants in this action.

Plaintiff EEOC further objects to this Request as unduly burdensome. The EEOC's process of identifying claimants is on-going, and by Court order it is not required to be completed until after the conclusion of Phase I proceedings in this action. The vast majority of potential claimants previously contact by EEOC are still under review and will continue to be reviewed as more information is obtained in litigation regarding the potential claimants themselves and Defendant's hiring practices. Production of the requested documents prior to the conclusion of the process, while they are still under consideration, will unduly interfere with

EEOC counsel's identification of claimants and preparation of the Government's case.  In this regard, production may also result in breach of confidentiality regarding past, present or future privileged communications and deterrence of voluntary responses and case participation by potential claimants.

Plaintiff EEOC further objects to this Request on the ground that it seeks documents that are not relevant to the claims and defenses in this action.

Plaintiff EEOC further objects to this Request on the ground that it exceeds the number of document production requests authorized by the Federal Rules of Civil Procedure, Local Rules of this Court, and the Court's Order Regarding Bifurcation and Scheduling.

Subject to and without waiving the foregoing objections and any of its general objections, Plaintiff EEOC responds by stating that it has sent cover letters to thousands of individuals, though a precise number has not been ascertained.  The cover letters were sent between December 2002 and June 2005.  All cover letters were prepared by EEOC counsel and their agents during and for the purpose of prosecution of the instant action, and constitute confidential communications between EEOC counsel and their claimants/potential claimants.

DOCUMENT REQUEST NO. 54:  All Questionnaires returned to EEOC from Prospective Class Claimants, whether or not completed.

RESPONSE:  Plaintiff EEOC objects to the Request on the basis of the work product doctrine.  Such documents were prepared by EEOC counsel and its agents for the purpose of the instant litigation and constitute EEOC counsel's work product.  Disclosure would reveal the mental impressions, opinions and legal strategy of counsel.

Plaintiff EEOC further objects to this Request on the ground that it seeks documents protected from disclosure by the attorney-client privilege and the common interest privilege/doctrine.  The Request calls for production of confidential communications between EEOC counsel and claimants/potential claimants made for the purpose of rendering legal advice and carrying out the instant litigation.

Plaintiff EEOC further objects to the Request as premature, over-broad and contrary to Court order.  The Request seeks discovery regarding persons whom have not been designated by either party as potential Phase I trial witnesses.  In accordance with the Court's Order Regarding Bifurcation and Scheduling entered on May 25, 2004 in this action, Plaintiff EEOC is not required to provide written discovery responses regarding particular non-designees at this juncture in the litigation, as all such discovery has been stayed until completion of Phase I proceedings.  In addition, Plaintiff EEOC's efforts to determine the identities of the persons for whom it will seek relief in this action, as well as discovery including Defendant's production of applicant documents, are on-going, and Plaintiff EEOC reserves the right to supplement, modify, or otherwise change its identification of claimants at any time prior to the date ordered by the Court for final determination of claimants in this action.

Plaintiff EEOC further objects to this Request as unduly burdensome.  The EEOC's process of identifying claimants is on-going, and by Court order it is not required to be completed until after the conclusion of Phase I proceedings in this action.  The vast majority of the requested documents are still under review by EEOC and will continue to be reviewed as more information is obtained in litigation regarding the potential claimants themselves and Defendant's hiring practices.  Production of the requested documents prior to the conclusion of

the process, while they are still under consideration, will unduly interfere with EEOC counsel's identification of claimants and preparation of the Government's case. In this regard, production may also result in breach of confidentiality regarding past, present or future privileged communications and deterrence of voluntary responses and case participation by potential claimants.

Plaintiff EEOC further objects to this Request on the ground that it seeks documents that are not relevant to the claims and defenses in this action.

Plaintiff EEOC further objects to this Request on the ground that it exceeds the number of document production requests authorized by the Federal Rules of Civil Procedure, Local Rules of this Court, and the Court's Order Regarding Bifurcation and Scheduling.

Subject to and without waiving the foregoing objections and any of its general objections, Plaintiff EEOC responds by stating that it has received questionnaires from approximately 567 individuals. The dates on which these questionnaires were completed by the individuals range between December 2002 and August 2005. All questionnaires were prepared by EEOC counsel and their agents during and for the purpose of prosecution of the instant action, and constitute confidential communications between EEOC counsel and their claimants/potential claimants.

DOCUMENT REQUEST NO. 55:    All documents, including notes of telephone interviews, relating or referring to Prospective Class Claimants.

RESPONSE:  Plaintiff EEOC objects to the Request on the basis of the work product doctrine. Such documents were prepared by EEOC counsel and its agents for the purpose of the instant litigation and constitute EEOC counsel's work product. Disclosure would reveal the mental impressions, opinions and legal strategy of counsel.

Plaintiff EEOC further objects to this Request on the ground that it seeks documents protected from disclosure by the attorney-client privilege and the common interest privilege/doctrine. The Request calls for production of confidential communications, or attorney files referring/relating to confidential communications, between EEOC counsel and claimants/potential claimants made for the purpose of rendering legal advice and carrying out the instant litigation.

Plaintiff EEOC further objects to the Request as premature, over-broad and contrary to Court order. The Request seeks discovery regarding persons whom have not been designated by either party as potential Phase I trial witnesses. In accordance with the Court's Order Regarding Bifurcation and Scheduling entered on May 25, 2004 in this action, Plaintiff EEOC is not required to provide written discovery responses regarding particular non-designees at this juncture in the litigation, as all such discovery has been stayed until completion of Phase I proceedings. In addition, Plaintiff EEOC's efforts to determine the identities of the persons for whom it will seek relief in this action, as well as discovery including Defendant's production of applicant documents, are on-going, and Plaintiff EEOC reserves the right to supplement, modify, or otherwise change its identification of claimants at any time prior to the date ordered by the Court for final determination of claimants in this action.

Plaintiff EEOC further objects to this Request as unduly burdensome. The EEOC's process of identifying claimants is on-going, and by Court order it is not required to be completed until after the conclusion of Phase I proceedings in this action. The vast majority of the requested documents are still under review by EEOC and will continue to be reviewed as more information is obtained in litigation regarding the potential claimants themselves and Defendant's hiring practices. Production of the requested documents prior to the conclusion of the process, while they are still under consideration, will unduly interfere with EEOC counsel's identification of claimants and preparation of the Government's case. In this regard, production

may also result in breach of confidentiality regarding past, present or future privileged communications and deterrence of voluntary responses and case participation by potential claimants.

Plaintiff EEOC further objects to this Request on the ground that it seeks documents that are not relevant to the claims and defenses in this action.

Plaintiff EEOC further objects to this Request on the ground that its use of the term "interview" is vague.

Plaintiff EEOC further objects to this Request on the ground that it exceeds the number of document production requests authorized by the Federal Rules of Civil Procedure, Local Rules of this Court, and the Court's Order Regarding Bifurcation and Scheduling.

Subject to and without waiving the foregoing objections and any of its general objections, to the extent the Request seeks questionnaires or cover letters, Plaintiff EEOC incorporates by reference its response to Request Nos. 53 and 54.

To the extent the Request seeks interview notes or any other documents in EEOC counsel's files that refer/relate to claimants or potential claimants, EEOC states that such documents exist, that they were prepared by EEOC counsel and their agents during and for the purpose of prosecution of the instant action, that they are kept in counsel's litigation files, and that many reflect counsel's mental impressions and opinions regarding this action and confidential, privileged communications between EEOC counsel and their claimants/potential claimants.  EEOC also states that during the course of this litigation EEOC counsel (and in a small number of cases, EEOC personnel acting as counsel's agents) have spoken with in excess of 120 "Prospective Class Claimants."  Many of these communications at various times have been documented, though not all. EEOC declines to provide any further description of such documents within its possession, custody or control, as any further description, including but not limited to individuals selected for communication, would reveal work product.

DOCUMENT REQUEST NO. 56:   All documents identified or required to be identified in response to Defendant's Fifth Set of Interrogatories to Plaintiff.

RESPONSE: Plaintiff EEOC objects to this Request as unintelligible.  Defendant's Fifth Set of Interrogatories does not request that EEOC identify any documents.  Accordingly, EEOC cannot comply with the Request.

To the extent that the Request was intended to seek any documents referenced in any or all of Defendant's Interrogatories, or the present set of Requests, or their definitions and instructions, Plaintiff EEOC incorporates by reference its objections to Interrogatory Nos. 34-36 and Request Nos. 52-55, and 57.

DOCUMENT REQUEST NO. 57:   All documents reviewed and/or relied upon to prepare any of the responses to Defendant's Fifth Set of Interrogatories to Plaintiff.

RESPONSE: Plaintiff EEOC incorporates by reference its response and objections to Request Nos. 52-55.

**VI.    EEOC Argument Regarding Document Request Nos. 52-57**

    **A.    Document Request Nos. 52-57 Seek Attorney Work Product Without The Requisite Showing**

Defendant's Motion to Compel asks the Court to require EEOC to produce: (1) "[a]ll Questionnaires sent to Prospective Class Claimants;" (2) "[a]ll cover letters sent to Prospective Class Claimants;" (3) "[a]ll Questionnaires returned to EEOC from Prospective Class Claimants, whether or not completed;" (4) "[a]ll documents, including notes of telephone interviews, relating or referring to Prospective Class Claimants;" (5) [a]ll documents identified or required to be identified in response to Defendant's Fifth set of Interrogatories to Plaintiff;" (6) "[a]ll documents reviewed and/or relied upon to prepare any of the responses to Defendants's Fifth Set of Interrogatories to Plaintiff."   Defendant's requests seek attorney work product, privileged communications, and exceed the proper scope of discovery under the Court's Order Regarding Bifurcation and Scheduling (Document No. 89).  Defendant's Motion is therefore without merit and should be denied.

    **1.    Questionnaires and Cover Letters Sent to or Returned From Potential Claimants, and EEOC's Notes and Other Documents Related to Potential Claimants, are Attorney Work Product**

The questionnaires and cover letters at issue were created by EEOC attorneys after the inception and for the purpose of this litigation and thus are work product.  EEOC sent them to potential claimants for the purpose of providing and soliciting information that would help both the potential claimant and EEOC determine whether the individual would become a claimant for whom EEOC would seek victim-specific relief.  The questionnaires reflect EEOC counsel's mental impressions concerning which, among the universe of relevant questions that could be

asked of potential claimants, EEOC attorneys deemed appropriate to ask in the questionnaire, and were selected based upon considerations of case strategy and mental impressions of the case and the evidence.  EEOC has maintained the confidentiality of these materials and information in the claimant/potential claimant responses.  See Exb. 4 at ¶¶ 1-6 (Declaration of Ronald L. Phillips).

Numerous federal courts have held that questionnaires filled out by potential claimants/claimants as well as witnesses are protected from disclosure by the attorney work product doctrine. See EEOC v. Carrols Corp., 215 F.R.D. 46, 51-52 (N.D.N.Y. 2003)(holding questionnaires were work product); EEOC v. General Motors Corp., No. 4:96CV01547, 1997 WL 807862, at * 2 (E.D. Mo. Nov. 24, 1997)(denying defendant's motion to compel production of completed damages questionnaire because the "questionnaire was protected under the work product doctrine")(unpublished decision attached as Exb. 5); Donovan v. Forbes, 614 F. Supp. 124, 127 (D. Vermont 1985)(in FLSA action, denying motion to compel Department of Labor's questionnaires filled out by defendant's employees in connection with litigation on basis of work product doctrine and informer's privilege); Connelly v. Dun & Bradstreet, Inc., 96 F.R.D. 339, 341-42 (D. Mass. 1982); EEOC v. Plessey, Inc., No. 78-1383, 1981 WL 2441, at *2 (D. Kan. Apr. 30, 1981)(denying motion to compel questionnaire under the work product doctrine)(unpublished decision attached as Exb. 6); United States v. Deere & Co., 9 F.R.D. 523, 528 (D. Minn. 1949)(witness questionnaires are one of the steps by which a counsel prepares for trial and are "as much the work of a lawyer as the preparation of proposed questions to be used in

examining a witness at the actual trial").  These cases comport with Supreme Court and other federal court precedents stating that witness statements, declarations, affidavits and notes of counsel's interviews with witnesses are attorney work product. See, e.g., Hickman v. Taylor, 329 U.S. 495, 512 (1947)(referencing witness statements and memoranda as work product); Upjohn Co. v. United States, 449 U.S. at 383, 399 (1981)("[f]orcing an attorney to disclose notes and memoranda of witness's oral statements is particularly disfavored because it tends to reveal the attorney's mental processes"); EEOC v. Carrols Corp., 215 F.R.D. 46, 51-52 (N.D.N.Y. 2003)("Carrols argument that claimants, not the EEOC, filled out the questionnaires is unavailing.  In Hickman and Upjohn, the Supreme Court afforded such protection to witness statements and such statements are incorporated in questionnaires.");  Intel Corp. v. VIA Tech., Inc., 204 F.R.D. 450, 452  (N.D. Cal. 2001)(holding declarations were work product); United States v. Chatham, 72 F.R.D. 640, 643 (S.D. Ga. 1976) (holding witness statements taken by FBI agents were work product protected from disclosure).

In addition to questionnaires, any EEOC attorney notes of interviews with potential claimants are also, quite obviously, protected by the attorney work product doctrine for the reasons set forth herein and under the authorities cited in EEOC's discussion of questionnaires. They are also protected by the attorney-client privilege and common interest rule, as discussed in this Memorandum's discussion of questionnaires, below.  The notes were generated by EEOC counsel or their agents during and for purposes of this litigation, they have been kept confidential, they pertain to communications about the present litigation that were made outside

the presence of any third-parties, and all other factors supporting privilege and work product protection are present. See Exb. 4 at ¶¶ 13-14 (Declaration of Ronald L. Phillips).5

### 2.    Defendant Cannot Demonstrate Substantial Need or Undue Hardship

Contrary to Defendant's view, mere relevancy or the possibility that questionnaires and other work product witness documents may contain inconsistencies that could be used for possible impeachment is not sufficient to demonstrate substantial need.  As one Court put it, "[I]f the desire to impeach a witness with prior inconsistent statements is a sufficient showing of substantial need, the work product privilege would cease to exist.  There is not a lawyer born who would not like to see opposing counsel's files in order to search for inconsistencies in opposing witnesses' potential testimony." McPeek v. Ashcroft, 202 F.2d 332, 339 (D.D.C. 2001).  See also EEOC v. Plessey, Inc., Civ. A. No. 78-1383, 1981 WL 2441, at * 1 (D. Kan., April 30, 1981); United States v. Chatham City Corp., 72 F.R.D. 640, 643 (S.D. Ga. 1976)("The surmise or possibility that impeaching material in the statements of the witnesses might be found does not justify a court to order inspection thereof.")(citing cases); Dinger v. Halcyon Lijn, N.V., 50 F.R.D. 211, 212 (E.D. Pa. 1970). Cf. Guilford Nat. Bank of Greensboro v. Southern Railway Co., 297 F.2d 921, 924-25 (4th Cir. 1962)(applying former good cause standard of Rule 34 and rejecting notion that witness statements were discoverable for potential impeachment purposes).

The claimants for whom EEOC seeks relief in this case are all male applicants for jobs with Defendant since 1997, except applicants for jobs in Defendant's corporate headquarters.

---

5   In its Motion to Compel, it appears that Defendant has made no specific effort to explain how attorney interview notes are legally discoverable, and it is therefore not clear to EEOC that Defendant is persisting in its extraordinary demand for such documents.  Should Defendant persist in this demand, or should the Court require additional supporting evidence, EEOC will supplement with additional evidence as directed by the Court, including in camera review if necessary.

Defendant has known the scope of EEOC's case since at least early 2002 when EEOC filed its complaint.  EEOC has taken the position that Defendant may not contact an individual ex parte once EEOC has designated him as an actual claimant – i.e., a person for whom EEOC is definitely seeking victim-specific relief.   However, as EEOC counsel has long ago informed counsel for Defendant, nothing precludes Defendant from interviewing or sending questionnaires to potential class claimants who have not been designated by EEOC as actual claimants.   Indeed, Defendant has had every opportunity to do so given that EEOC's efforts in this regard – identifying potential claimants and sending questionnaires out to them, reviewing the responses, conducting interviews, etc. – have been based solely on application records produced by Defendant during discovery.   See EEOC v. The Pasta House Co., No. 4:94CV1715, 1996 WL 120648, at *3 (E.D. Mo., Jan. 29,1996)(claimant questionnaire responses deserve work product protection and providing names and addresses of class members who filled out a questionnaire would "give defendant an opportunity to obtain information by sending out its own questionnaire")(unpublished decision attached as Exb. 7).   Defendant was also free to depose potential claimants.   Defendant may not now, as a multi-year discovery period draws near its close, plausibly argue "substantial need" or "undue hardship" simply because of its own apparent lack of diligence.   See, e.g., EEOC v. Plessey, Inc., No. 78-1383, 1981 WL 2441, at *2 (D. Kan. Apr. 30, 1981) ("Had defendant acted promptly it could, by means of the same or a similar Questionnaire, have obtained the same information plaintiff gleaned.").

"It has been the rule at least since Hickman v. Taylor that one party has no right to discovery of material gathered for the purposes of the litigation through the efforts of another party or its counsel when the first party could obtain the same information through its own

efforts." <u>H.L. Hayden Co. of New York v. Siemens Medical Sys., Inc.</u>, 108 F.R.D. 686, 690 (S.D.N.Y. 1985) (holding transcripts of telephone conversations with third-parties were non-discoverable work product).  Given that Defendant has been and is still free to employ various alternative means of obtaining the same information EEOC has obtained through its Questionnaires, Defendant cannot establish the requisite substantial need or inability to obtain the equivalent.  <u>See, e.g.,</u> 4 Moore's Federal Practice par. 26.64(3), at 26-369 & n.8 (2d ed. 1984) (where discovery of witness statements is sought, a key consideration is whether the party seeking discovery can interview the witnesses himself); <u>United States v. Chatham City Corp.</u>, 72 F.R.D. 640, 643-44 (S.D. Ga. 1976)(substantial equivalent of the witness's statement could be obtained by personal interview, by deposition, or by written deposition); <u>Dingler v. Halcyon Lijn N.V.</u>, 50 F.R.D. 211, 212 (E.D. Pa. 1970)(no showing that witness was unavailable for deposition, so production of statement protected by work product was denied).

The absence of substantial need is particularly pronounced in this case given the current discovery and trial structure.  As previously discussed, the Court's Order Regarding Bifurcation and Scheduling entered on May 25, 2004 (Document No. 89) restricts the scope of discovery at this Stage and provides that EEOC and Defendant can only designate up to a maximum of 80 claimants total for testimony.  Yet, Defendant seeks all questionnaires submitted by all claimants and all persons generally.

**B.    Document Request Nos. 52-57 Seek Attorney-Client Privileged Communications**

The attorney-client privilege applies if (1) the asserted holder of the privilege is *or sought to become a client*; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. E.g., United States v. Jones, 696 F.2d 1069, 1072 (4th Cir.1982).

Here, the information Defendant seeks was obtained through answers to EEOC questionnaires which ask, as a final question, whether the potential claimant wishes to participate as a claimant in this case. EEOC attorneys and their agents mailed all of EEOC's questionnaires to potential claimants and sought information in confidence – information which, in context, was provided by potential claimants for the purpose of seeking a legal opinion from EEOC attorneys as to whether the person was a suitable claimant and to secure legal services in the form of EEOC seeking relief. Defendant has acquired a copy of the cover letter and questionnaire that EEOC mailed to potential claimants in this case and attached those documents to its Fifth Set of Interrogatories directed to the EEOC (which include the present Interrogatories). These written communications between EEOC counsel and potential claimants were intended to be confidential, as EEOC gave explicit assurances that the questionnaires and responses thereto

36

were both confidential and privileged.[6]   In addition, EEOC has maintained the confidentiality of both the questionnaires received from potential claimants and their answers to EEOC's questions.   These communications were made for the purpose of obtaining/providing legal assistance in this case, and all elements of the privilege are satisfied.   See generally Exb. 4 (Declaration of Ronald L. Phillips).

Responses to questionnaires and any notes reflecting responses (written or oral) are protected by the attorney-client privilege, see, e.g., Upjohn, U.S. 383 at 397 (responses to questionnaires provided to corporate attorney by employees, and notes reflecting responses to interview questions, are covered by the attorney-client privilege), and it is well-established that communications specifically between EEOC counsel and potential and actual claimants, including notes and questionnaires, are attorney-client and common interest rule privileged.   See, e.g., EEOC v. Int'l Profit Associates, 206 F.R.D. 215, 219 (N.D. Ill. 2002)("Communications between prospective class members and EEOC are protected from disclosure by the attorney-client privilege."); EEOC v. Chemsico, 203 F.R.D. 432, 433 (E.D. Mo. 2001); Bauman v. Jacobs Suchard, Inc., 136 F.R.D. 460, 462 (N.D. Ill. 1990)(questionnaires returned to EEOC by prospective claimants were protected by a de facto attorney-client privilege).   See also Connelly v. Dun & Bradstreet, Inc., 96 F.R.D. 339, 341-42 (D. Mass. 1982)(holding questionnaires

---

[6]    EEOC continues to maintain the confidentiality of the cover letter and questionnaire forms and thus has not attached blank, sample copies to this memorandum.  To the extent the Court believes it necessary to review a sample questionnaire form and cover letter, or all of the questionnaires that were completed and returned, or a summary of certain responses to the questionnaires, EEOC will submit those documents to the Court for *in camera* review when directed to do so.

returned to bankruptcy court-appointed lawyer by former customers of bankrupt company privileged despite absence of traditional attorney-client relationship).  As federal courts have held, preliminary consultations with attorneys are privileged for obvious public policy reasons, and when a potential claimant fills out a questionnaire under circumstances suggesting a desire to be included as a claimant, the questionnaire is entitled to protection by the attorney-client privilege. See Barton v. United States District Court for the Central Dist. of CA, 410 F.3d 1104, 1111-12 (9th Cir. 2005)(holding internet questionnaires filled out by potential class members privileged under California law even where attorney only sought to gather information about potential claimants and questionnaire explicitly disclaimed the purpose of seeking legal advice). In this regard, the Fourth Circuit has also held that communications between an attorney and an individual who seeks to become a client (a preliminary consultation) are privileged. See United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982)(privilege applies if the asserted holder "is *or sought to become* a client")(emphasis added).

At the heart of privilege law is the goal of fostering, not inhibiting, confidential communications that are consistent with and that further public policy.  In this regard, potential claimant questionnaires have a high degree of utility in furthering law enforcement objectives. As one court noted regarding private litigation, "In actions involving representation of multiple clients like this one, a client questionnaire is often prepared by counsel as an efficient substitute for more time consuming face-to-face interviews to provide the attorney with client information in response to focused questions fashioned by the attorney about the potential client and his or

her claims." <u>Hudson v. General Dynamics</u>, 186 F.R.D. 271, 275 (D. Conn. 1999)(holding questionnaire responses privileged).  Without privilege protection, both government counsel and their potential claimants would be significantly deterred from using the most efficient means available to have frank communications about possible participation in government litigation to enforce federal law, litigation which is filed by federal government agencies like the EEOC, the Department of Justice, the Department of Labor and other federal agencies pursuant to Congressional mandate to vindicate the public interest.  As a matter of law and public policy, preliminary discussions between EEOC counsel and potential claimants must remain privileged.

### C.    No Waiver of Privilege Simply Because Questionnaires Not Identified on a Formalized Privilege Log

Defendant also argues that EEOC has waived its work product and privilege protection because it has not provided a formal privilege log reflecting the thousands of questionnaires sent and hundreds returned, as well as cover letters, attorney interview notes, and other work product documents created after the inception of, and for the purpose of, this litigation.  Defendant elevates form over substance, for a privilege log would serve no useful purpose given the particular circumstances of discovery in this case and the nature of the materials sought.  In accordance with District of Maryland Discovery Guideline 9(c), privilege logs should include (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and, where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.  The purpose of a privilege log is for an opposing party to determine

whether a privilege applies to a particular document that is otherwise potentially discoverable.

With regard to the questionnaires, however, Defendant is already in possession of much of the information called for by Discovery Guideline 9(c), and certainly enough information to assess applicability of the privilege. The type of document and its subject matter are already known to Defendant, for it has obtained a copy. Similarly, Defendant now knows the specific names of the persons who have returned the questionnaires to EEOC, and even before being provided that information Defendant would have known that whatever their names, given the nature of the document the respondents were potential claimants. Defendant has long-known the identities of EEOC's presently identified claimants, whom one could infer filled out these questionnaires and EEOC has in fact identified as completing questionnaires (with a few exceptions). As to dates, EEOC has given Defendant a range of dates during which the questionnaires were returned to EEOC by potential claimants, and given that the documents are all, by their plain language, post-litigation filing questionnaires, the particular dates of each document are of no additional assistance in determining the applicability of the privilege.[7]

More importantly, attorney work product generated after the commencement of litigation, including questionnaires, written statements, and interview notes, need not be set forth in any formal privilege log. See, e.g., Intel Corp. v. VIA Technologies, Inc., 204 F.R.D. 450, 451-52 (N.D. Cal. 2001) ("[I]t would be unreasonable and burdensome (and rarely, if ever done in practice) to require all sides to augment any privilege logs or disclosure lists each and every time

---

[7]    In Document No. 77, Defendant cited In re Imperial Corp., 174 F.R.D. 475, 479 (S.D. Cal. 1997), and noted that the court in Imperial Corp. permitted the following alternative to a privilege log: (1) an aggregate listing of the numbers of the withheld documents; (2) an identification of the time periods encompassed by the withheld documents; and (3) an affidavit containing representations sufficient to meet the elements of the attorney-work product doctrine or attorney-client privilege. EEOC, through its sworn discovery answers, supplemental answers, and this Memorandum and attachments, has met or exceeded the requirements of Imperial Corp.

they obtain a declaration for potential use on summary judgment."); In re Imperial Corp., 174 F.R.D. 475, 479 (S.D. Cal. 1997). Any other rule would allow parties to constantly monitor the progress of their adversary's case preparation, including which witnesses have been selected for interview and when (which itself an invasion of attorney work product), and is intolerably burdensome.[8] Defendant's position ignores these practical and legal realities of litigation.

This has not always been Defendant's position. Indeed, Defendant has itself recognized these practical and legal realities and has previously represented to this Court, in this litigation, that parties are *not* legally required to log privileged and work product materials generated after the filing of litigation. See Defendant's Memorandum in Support of Objection to Order of April 6, 2004 Regarding Plaintiff Intervenor Kathy Koch's Motion to Compel at 4-5 (Document No. 77). As Defendant has already stated to this Court, "The production of documents and/or a privilege log which essentially tracks LAWL's counsel's day-to-day management of the instant case is simply irrelevant to the claims or defenses of the parties and encroaches dangerously upon counsel's entitlement to work product protection that 'not even the most liberal of discovery theories can justify.'" See id. 3-4 (quoting Hickman). Defendant should be judicially estopped from arguing both for and against a legal position in the same litigation.

For the foregoing reasons, EEOC respectfully requests that Defendant's Motion to Compel Answers to Interrogatories and Document Requests be denied.

Respectfully submitted,

---

[8] EEOC notes that Defendant has not provided EEOC with a privilege log of all communications that it has had with its counsel during this litigation an all attorney work product generated after the inception of this litigation, and EEOC does not demand such a log.

EQUAL     EMPLOYMENT     OPPORTUNITY
COMMISSION

JACQUELINE MCNAIR
Regional Attorney

GERALD S. KIEL
Associate Regional Attorney

TRACY HUDSON SPICER
Supervisory Trial Attorney

CORBETT L. ANDERSON
Trial Attorney

_____/s/_____
RONALD L. PHILLIPS
Trial Attorney
EEOC-Baltimore District Office
City Crescent Building, 3rd Floor
10 South Howard Street
Baltimore, Maryland 21201
Telephone number: (410) 962-4628
Facsimile number: (410) 962-4270/2817