

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

▷

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
UNITED STATES of America, Plaintiff,
v.
DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al., Defendants.
**No. 90 CIV. 5722 (CSH).**

Aug. 18, 1992.

MEMORANDUM OPINION AND ORDER

THEODORE H. KATZ, United States Magistrate Judge.
**\*1** This action, which invokes the civil RICO jurisdiction of the Court under 18 U.S.C. § 1964, involves claims by the United States against the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("the District Council"), certain of its present and former officers, and other individuals. Before the Court is a motion brought by the District Council, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel the Government to answer questions posed to its representative at a deposition noticed pursuant to Rule 30(b)(6), Fed.R.Civ.P. The Government instructed the witness to not answer certain questions on the ground that they invaded government counsels' work product. For the reasons set forth below, the District Council's motion to compel is denied.

*BACKGROUND*

On September 6, 1991, the District Council served a deposition notice upon the United States Attorney's Office, pursuant to Rule 30(b)(6), Fed.R.Civ.P., seeking the testimony of a representative of the U.S. Attorney's Office regarding a) the facts and circumstances surrounding the allegations in the Complaint; b) grants of immunity received by potential witnesses in this action; and c) the sharing of information between the U.S. Attorney's Office and other law enforcement and government agencies relating to the investigation and prosecution of this case. (The deposition notice is attached to the moving affidavit of Abraham Rappaport, dated February 12, 1992 ["Rappaport Affidavit"] as Exhibit 1.) After receipt of the deposition notice, government counsel and defense counsel had several exchanges relating to the Government's objections to the deposition of an attorney and its position that the proposed areas of inquiry improperly sought government work product. By letter dated September 17, 1991, the District Council modified its Rule 30(b)(6) notice to allow the appearance of a representative of either the U.S. Attorney's Office or any other government agency who could testify to the matters designated in the notice. Exhibit 2 to Rappaport Affidavit. Although government counsel agreed to designate one of the F.B.I. agents assigned to this case to appear at the deposition, it advised defense counsel that it considered much of the anticipated inquiry to invade its work product and suggested that virtually all of the information sought was available through more appropriate avenues such as the documents produced in response to the District Council's document request and through interrogatories seeking the identity of persons with knowledge of the allegations of the Supplemental Complaint. *See* letter dated September 26, 1991, Exhibit C to Declaration of Assistant United States Attorney Thomas A. Zaccaro ("Zaccaro Declaration"). Defense counsel registered its disagreement with the Government's view of the propriety of the proposed deposition and opted to proceed. *See* letter of Robert J. Anello, dated October 17, 1991, Exhibit D to Zaccaro Declaration.

**\*2** The Government designated Special Agent Karen Worsham of the F.B.I. in response to the District Council's deposition notice. Special Agent Worsham was assigned to assist the U.S. Attorney's Office in this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

litigation in October 1989. Zaccaro Declaration, ¶ 8. Agent Worsham's deposition was conducted on November 19, 1991. (A copy of the deposition transcript was attached as Exhibit 4 to the Rappaport Affidavit, and further references to the substance of the deposition shall be designated as "Worsham Deposition", with citation to the transcript.) At her deposition, Agent Worsham testified that she was assigned to investigate labor racketeering and corruption allegations in the District Council, upon referral from and in conjunction with the U.S. Attorney's Office; she identified other Special Agents and representatives of the U.S. Attorney's Office with whom she worked on the investigation and litigation of this case (Worsham Deposition, Tr. at 5-12), and other F.B.I. agents who worked on completed criminal investigations which led to indictments for criminal conduct which, in part, formed the basis of the Complaint in this case (*Id.* at 70-76). Agent Worsham also described her report writing process in this case and her knowledge of where her reports are filed and who has access to them. *Id.* at 77-87. She testified that she never saw any federal or state grand jury testimony during her investigation (*Id.* at 102-03); she also testified as to whether she received from or gave information to various state law enforcement officials and officials of the Department of Labor, without disclosing the substance of that information (*Id.* at 102-120).

Defense counsel sought responses to four broad categories of questions to which objections were lodged: 1) questions seeking the identity of witnesses known to Agent Worsham with knowledge of facts underlying the allegations in the Supplemental Complaint; 2) questions seeking the identification of documents known to Agent Worsham that support the allegations in the Supplemental Complaint; 3) questions regarding discussions Agent Worsham had with attorneys and other law enforcement personnel concerning the allegations in the Supplemental Complaint; and 4) questions relating to communications Agent Worsham had with persons specified in the Supplemental Complaint. Government counsel objected on work product grounds and advised Agent Worsham not to testify regarding any questions which sought disclosure of information which was told to her by an Assistant U.S. Attorney or information she secured through any investigation conducted at the request of the U.S. Attorney's Office for this litigation. Agent Worsham was permitted to respond to questions she could answer based upon personal knowledge, independent of her role as an F.B.I. investigator assisting the U.S. Attorney's Office in this case. (*See* Worsham Deposition, Tr. at 17-18, for an example of the continuing objection lodged by the Government's attorney.) Not surprisingly, Agent Worsham had virtually no independent, personal knowledge of facts related to this case. *Id.* at 18-19.

**\*3** After defendant's motion to compel was fully submitted, the Court heard extensive argument on the motion at a proceeding held on March 12, 1992. [FN1] At the hearing the parties' positions were clarified and redefined so that, in response to the Court's suggestion, the parties agreed to attempt to, in effect, moot out their controversy over the Worsham deposition: 1) by simplifying defendants' search for facts underlying the allegations of the Supplemental Complaint through a reorganization or indexing of the documents produced by the Government, and 2) through reference to a list of persons with relevant information produced by the Government as part of its response to the instant motion. The parties' discussions were unsuccessful and throughout March and April the Court received a series of letter-briefs setting forth the parties' respective positions on the failed negotiations and restating their arguments on the motion to compel answers to deposition questions. [FN2]

*THE PARTIES' POSITIONS*

The parties' positions now have been cast and recast in a variety of forms and submissions, including the objections and responses at the deposition, their respective motion papers and oral argument on the motion, and the numerous submissions received since that time. They are summarized below.

The District Council contends that it is entitled in discovery to seek facts underlying the Government's allegations in the Supplemental Complaint. As part of its quest for such facts it has the right, pursuant to Rule

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                 Page 3
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

30(b)(6) of the Federal Rules of Civil Procedure, to notice the deposition of the Government, which must then designate a person to testify on its behalf as to matters known or reasonably available to the Government which are relevant to the many allegations in the Supplemental Complaint. Among the matters regarding which the Government's representative must be able to testify are the factual bases for the Supplemental Complaint's allegations, the identity of persons with knowledge of facts underlying the Supplemental Complaint and the identification of documents supporting those allegations. (She also must be prepared to correlate particular documents and names of individuals with specific allegations.) The person produced by the Government in response to the Rule 30(b)(6) deposition notice must be prepared to testify as to all matters set forth in the deposition notice; if the deponent does not have personal knowledge of the information sought, then he or she must be provided such information by government counsel, or other Government representatives with relevant information must be produced to testify.

The Government does not dispute that defendants are entitled to discovery regarding the factual allegations in the Supplemental Complaint. However, it contends that it has provided and will continue to provide all relevant information in its possession or control, provided such information is non-privileged. Specifically, the Government produced approximately 130,000 documents in response to defendants' document request, and other documents were submitted in support of its motion for a preliminary injunction; it has permitted depositions of various F.B.I. agents who have knowledge of relevant information but who have not worked under counsel's supervision in the investigation or preparation of this case; and it has provided a list of persons whom it believes have relevant knowledge. *See* Exhibit H to Zaccaro Declaration. [FN3]

***4** The Government objects, however, on the basis of the work product doctrine, to having its counsel or agents of its counsel questioned about what they did or learned in the course of their investigation and preparation of this case. Specifically, it contends that Agent Worsham, and presumably other law enforcement agents working under the supervision of counsel on this case, are not and will not be fact witnesses in the case. According to the Government, requiring the agents to identify people they spoke with and steps they took in preparing this case under the supervision of government counsel, would reveal counsel's trial preparation and strategy which is protected by the work product doctrine. It is further argued that eliciting responses from Agent Worsham about people with knowledge of the allegations in the Supplemental Complaint and documents supporting its allegations, if such responses are derived from information provided by counsel or obtained in the course of an investigation supervised by counsel, will necessarily disclose government counsel's thinking and trial strategy in contravention of the work product doctrine. In short, Agent Worsham's knowledge of this case, and her selective recollection of that information, is inextricably intertwined with counsel's mental processes and strategy-her knowledge and recollection will reflect the information, within a larger universe of relevant information, to which counsel attaches greater or lesser significance. Moreover, the larger universe of relevant information was provided to defendants.

The District Council replies that facts relevant to the case, including people and documents with information pertinent to the allegations of the Supplemental Complaint, even if based upon information provided by counsel, do not constitute work product and are clearly discoverable. The party seeking relevant discovery has the right to determine the best method for securing it and has the right to have the Government key its proof to the specific allegations in the Supplemental Complaint so that defendants can tailor their own discovery in a meaningful and efficient manner.

In any event, assuming this information is work product, the District Council contends that a substantial need for its production exists, consistent with Rule 26(b)(3), Fed.R.Civ.P. Defendants argue that they have been deprived of any meaningful discovery in this case because: 1) the numerous documents produced by the Government, including approximately 3,700 untranscribed tapes, are voluminous and extremely burdensome to review; and 2) many of the individuals identified as having relevant information have invoked

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

their Fifth Amendment rights and cannot be deposed, and the Government has not yet indicated which of them it will immunize.

The Government responds that the document production was responsive to defendants' very broad document request and, although defendants have had possession of the documents for more than a year, they have simply chosen not to do their own work in reviewing them. The Government further states that all existing tape transcripts have been produced; where transcripts do not exist, line sheets identifying the persons recorded and subject matter of tapes have been made available to defendants; many of the people who chose to invoke their Fifth Amendment rights are present or former officers of the union defendant and are more readily available to the defendants than the Government; and, in any event, as soon as the Government determines which individuals it will immunize, defendants will be informed and will then have an opportunity to depose those witnesses. [FN4]

*APPLICABLE LAW*

**\*5** There is no question that the Government, as a litigant, is subject to the same rules of discovery as any private party to litigation. *See United States v. Procter & Gamble Co.,* 356 U.S. 677, 681 (1958); *Fay v. United States,* 22 F.R.D. 28, 30 (E.D.N.Y.1958); 4 *Moore's Federal Practice* ¶ 26.61[2] at 26-231 (2d ed. 1991). Indeed, Rule 30(b)(6) of the Federal Rules of Civil Procedure, pursuant to which the deposition in issue was noticed, makes specific reference to government agencies. It provides, in pertinent part:

A party may ... name as the deponent a public or private corporation or ... governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more ... persons who consent to testify on its behalf.... The persons so designated shall testify as to matters known or reasonably available to the organization.

Fed.R.Civ.P. 30(b)(6); *see also FDIC v. Butcher,* 116 F.R.D. 196 (E.D.Tenn.1986) and *Fay, supra,* cases in which employees of government agencies were deposed pursuant to Rule 30(b)(6).

The Government does not argue that it cannot be the subject of a Rule 30(b)(6) deposition. In this case, however, defendants did not simply notice the deposition of a government agency in order to determine, for example, how it maintains its records, or what information it possesses which could lead to the discovery of relevant evidence; nor did it notice the deposition of a government employee who has personal knowledge of relevant facts. They noticed the deposition of counsel, the U.S. Attorney's Office, and an F.B.I. agent, who worked with counsel on the preparation of this case, appeared on its behalf.

Although attorneys are not exempt from discovery under the Federal Rules, courts have looked with disfavor on such depositions because they invite delay, disruption and are fraught with potential problems of privilege. *See, e.g., Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.1986) (attorney depositions should be limited to circumstances where no other means exist to secure information, the information is relevant and non-privileged, and is crucial to preparation of the case); *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.,* 117 F.R.D. 83, 85-86 (M.D.N.C.1987) ( "... courts should exercise great care before permitting the deposition of an attorney inasmuch as even seemingly innocent questions, such as the existence or nonexistence of documents or queries concerning which documents counsel has selected in preparing a witness for deposition may implicate opinion work product"; burden on moving party to show need and legitimate basis for attorney deposition was not met since the attorney was not a fact witness, other people could be deposed and other methods, such as interrogatories, could be utilized which would reduce danger of disclosure of work product).

**\*6** These same concerns have been vividly realized in this case. In seeking to depose the U.S. Attorney's Office or agents of that office, defendants' search for facts relevant to the allegations of the Supplemental Complaint must inevitably clash with matters arguably protected by the work product doctrine.

The principles underlying the work product doctrine

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

and Rule 26(b)(3), Fed.R.Civ.P., were set forth in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385 (1947). There, the Supreme Court recognized that "[n]ot even the most liberal discovery theories can justify unwarranted inquiries into files and mental impressions of an attorney." *Id.* at 510. The Court, in precluding discovery of witness statements or interviews conducted by counsel, set forth the underlying purpose of protecting an attorney's trial preparation, noting that "it is essential that a lawyer work with a certain degree of privacy" and that

[p]roper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.

*Id.* at 511.

The Court also made clear that the work product doctrine does not protect against the discovery of relevant non-privileged facts, whether or not they are contained in protected documents or were learned by an attorney. *Id.,* 329 U.S. at 501, 507. "Where relevant and nonprivileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may be properly had." *Id.* at 511. *See also* 8 Wright and Miller, *Federal Practice and Procedure, Civil,* § 2023 at 194 (1970).

The work product doctrine was codified in 1970 in Rule 26(b)(3) of the Federal Rules of Civil Procedure. The Rule explicitly protects from discovery documents and things prepared by a party or his representative in anticipation of litigation or in preparation for trial. Production of those materials can be compelled only where the seeking party demonstrates a "substantial need" for the materials and an inability to obtain the substantial equivalent of the desired information by other means. Rule 26(b)(3) contemplates, however, that even when a party can justify the production of work product documents, the court must protect against the disclosure of the opinions, mental processes and legal theories of an attorney. *See Hickman,* 329 U.S. at 512-13; *Upjohn Co. v. United States,* 449 U.S. 383, 398-402, 101 S.Ct. 677, 687-689 (1981) (Court declined to hold that disclosure of attorney mental processes may never be required, but recognized the need for a much higher showing of necessity and cited to other court decisions which accorded such materials absolute protection); *In re John Doe Corp.,* 675 F.2d 482, 492-93 (2d Cir.1982) (opinion work product entitled to greatest protection available and should be divulged only in rare cases); *Sporck v. Peil,* 759 F.2d 312, 316 (3d Cir.1985), *cert. denied,* 474 U.S. 903 (1985) (opinion work product accorded almost absolute protection); *In re Sealed Case,* 676 F.2d 793, 809-810 (D.C.Cir.1982) (extraordinary justification required for disclosure of attorney opinions and thought processes).

**\*7** Although the work product doctrine is most commonly applied to documents and things, unjustified disclosure of the opinions or mental processes of counsel may occur when questions are posed which seek information at depositions or in interrogatories. *See* 4 *Moore's Federal Practice,* ¶ 26.64[1] at 26-349 (2d ed. 1991). For example, when an attorney has secured oral statements from witnesses in anticipation of litigation, it is of no moment that the statements have not been reduced to writing. *See Hickman,* 329 U.S. at 512-13 (production of attorney's recollections, as well as written memoranda, reflecting substance of witness interviews would tend to reveal the attorney's mental processes-what he recalled, what he saw fit to write down or considered significant-and may be compelled only in rare situations). Requiring an attorney to give his or her personal recollection of those interviews would create as great or greater threat to disclosing his thoughts, opinions and strategy as would disclosure of his written notes reflecting those interviews. *See, e.g., In re Grand Jury Proceedings,* 473 F.2d 840, 848 (8th Cir.1973) (absolute protection to *personal recollections,* notes and memoranda pertaining to conversation with witnesses); *Appeal of Hughes,* 633 F.2d 282, 290 (3d Cir.1980) (oral testimony sought regarding witness interviews was core work product; what attorney or his agent recollects might indirectly reveal his mental processes and might convert him into a witness); *Barrett Industrial Trucks, Inc. v. Old Republic Insurance Co.,* 129 F.R.D. 515, 518 (N.D.Ill.1990) (deponent may not be asked questions that would reveal his lawyer's mental impressions or opinions); *Clute v. Davenport Co.,* 118 F.R.D. 312,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.)**

Page 6

315-16 (D.Conn.1988) (work product covers more than physical objects and documents; deposition questions of plaintiff seeking information that would give indirect access to opposing counsel's trial strategy and preparation need not be answered); *Bercow v. Kidder, Peabody & Co.,* 39 F.R.D. 357, 358 (S.D.N.Y.1965) (deponent not required to answer questions on his preparation for a deposition because it was an indirect attempt to ascertain the manner in which counsel was preparing for trial).

Although there are a number of ways in which an attorney's thought processes and strategy may be revealed in response to discovery requests, of particular relevance to the instant motion is a line of cases relied upon by the Government which has given rise to what is termed the "selection and compilation" theory of work product. The Third Circuit's decision in *Sporck v. Peil,* 759 F.2d 312 (3d Cir.1985), *cert. denied,* 474 U.S. 903 (1985), and the Eighth Circuit's decision in *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir.1986), are the most widely cited sources of the doctrine. In *Sporck,* after defendant produced hundreds of thousands of documents in discovery, defendant's counsel selected, and had defendant review, certain documents in anticipation of his deposition. None of the documents themselves was claimed to contain work product. The Court upheld counsel's objections to deposition questions which sought the identification of documents the deponent reviewed to prepare for the deposition. It found counsel's sifting, selection and compilation of documents to fall within the category of highly protected opinion work product, because it would reveal counsel's mental impressions and opinions as to how the documents relate to the issues. An attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case and the inferences he draws from the facts are all opinion work product. The court held that:

**\*8** Such material is accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases.

*Id.* at 316.

In *Shelton,* defendant's in-house counsel refused to respond to deposition questions seeking information regarding the existence or non-existence of documents in defendant's possession. She argued that relevant documents were already produced, interrogatories were answered, her knowledge was acquired solely in her efforts to assist her client in litigation and thus constituted work product, and that any recollection of particular documents on certain subjects would reveal those to which she attached particular significance, revealing her theories and opinions. The court held that counsel had no first hand factual information related to the claims and that the questions she was asked sought more than just information about the existence of documents. The court agreed that the selective review and recollection of documents reflects the attorney's professional judgment on the issues, as well as her legal theories and thought processes. It found that "[i]n cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research...." *Id.* at 1328.

The selection and compilation theory of work product has been recognized by other courts, including the Second Circuit. In a recent decision, the Court acknowledged the *Sporck* principle that production of otherwise unprivileged documents might be protected from discovery if their disclosure presented a real concern that the thought processes of counsel would be exposed. *In re Grand Jury Subpoenas Dated October 22, 1991 and November 1, 1991,* 959 F.2d 1158 (2d Cir.1992). In that case, production was required because the documents sought from counsel were *all* telephone records relating to particular clients for a five year period-not a select group of documents to which counsel attached particular relevance. Moreover, the court recognized a substantial need for the production because it was unlikely the information would otherwise be available from another source. *See also Gould Inc. v. Mitsui Mining & Smelting Co.,* 825 F.2d 676, 680 (2d Cir.1987) (compilation and selection doctrine depends upon real, rather than speculative, concern that thought processes of counsel would be revealed and may not apply where information is not otherwise

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 7

available); *Santiago v. Miles,* 121 F.R.D. 636, 638-40 (W.D.N.Y.1988) (court applied *Sporck,* observing that Second Circuit has recognized the selection and compilation doctrine; while data in computer printouts consists of unprivileged facts, printouts were prepared at direction of counsel and reflect counsel's selection process and mental impressions, deserving of protection in absence of strong showing of necessity and unavailability). *But see In re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007 (1st Cir.1988) (in requiring the production of documents to be used by counsel in advance of a deposition, as a case management tool, the court distinguished *Sporck* and *Shelton;* the selection and screening of documents in this case would not substantially reveal an attorney's thought processes and therefore did not constitute "opinion work product"; such thought processes would be revealed in any event in a short time, and there was a substantial need to identify documents in advance to serve the overall management needs of an extremely complicated litigation); *United States v. Pepper's Steel & Alloys, Inc.,* 132 F.R.D. 695, 698-99 (S.D.Fla.1990) (while the ordering of documents by counsel might reflect opinion work product, as found in *Sporck* and *Shelton,* the privilege here would not protect a Rule 30(b)(6) witness from answering factual questions even if those facts were learned by reviewing documents provided by counsel; situation presented only a remote risk of disclosure of counsel's impressions and thought processes).

**\*9** By its terms, Rule 26(b)(3) makes clear that the work product doctrine protects work done in anticipation of litigation or trial by an attorney, as well as a party or other agents of the party or its representative. Of particular relevance to this case is the recognition that materials produced or information possessed by an agent working for an attorney, such as an investigator, may be protected as work product, particularly when disclosure of such information would reveal the attorney's thinking and strategy, *i.e.,* opinion work product. *See, e.g., United States v. Nobles,* 422 U.S. 225, 238-39, 95 S.Ct. 2160, 2170 (1975) (attorneys often must rely on investigators and work product doctrine applies to materials prepared by such agents); *Sterling Drug Inc. v. Harris,* 488 F.Supp. 1019 (S.D.N.Y.1980) (privilege extends to documents prepared by agent of attorney responsible for coordinating and gathering evidence in anticipation of hearing); *Phoenix National Corp. v. Bowater United Kingdom Paper Ltd.,* 98 F.R.D. 669 (N.D.Ga.1983) (although employee witnesses were required to respond to deposition questions seeking their knowledge of relevant facts, they could not be questioned about the substance of their conversations with their employer's attorney's agent/investigator; questions asked by investigator and discussion of particular documents would disclose counsel's mental impressions, seek to discover the theory of the defense and invade the privacy of the trial preparation process); *In re Conticommodity Services, Inc. Securities Litigation,* 123 F.R.D. 574 (N.D.Ill.1988) (work product does not protect accountant's factual knowledge regarding his client's claims for tax refunds before IRS, even if facts were learned in part through conversations with attorney; however, to the extent he was acting as an agent of the client's attorney in investigation for purposes of litigation, documents he prepared were protected by work product doctrine and he could not be required to respond to questions that would reveal the attorney's legal theories or mental impressions); *Appeal of Hughes,* 633 F.2d 282 (3d Cir.1980) (investigator's work in assisting attorney in anticipation of litigation, including instructions received from attorney, documents sought at request of attorney and recollection of witness interviews was core work product that need not be disclosed; although list of witnesses interviewed also constituted work product, it was ordered disclosed because it represented only a minimal intrusion into counsel's thought processes and sufficient need was demonstrated); *U.S. v. Chatham City Corp.,* 72 F.R.D. 640 (S.D.Ga.1976) (work product protects F.B.I. agent's investigative reports, notes of interviews and statements taken by attorney; requesting party could secure factual information through its own depositions of people with relevant knowledge and therefore "substantial need" or "undue hardship" was not shown).

*APPLICATION OF LAW TO FACTS*

**\*10** Two of the lines of questions posed to Agent Worsham, which were objected to by the U.S.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                     Page 8
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Attorney's Office, are clearly privileged and need not be answered. The substance of discussions she had with counsel or other law enforcement personnel working on this case are patently confidential and do not constitute factual information to which defendants are entitled in discovery. When an attorney and his/her investigator discuss a case, their discussions, even if they make reference to factual information, fall within the sphere of activity as to which an expectation of confidentiality is routine. Counsel's conversations regarding the case, which obviously reflect his/her thoughts and strategy, are classic work product. [FN5] *See, e.g., Phoenix National Corp.,* 98 F.R.D. at 671; *Appeal of Hughes,* 633 F.2d at 288. Defendants have not addressed in any significant fashion their right to or need for such information and I cannot conceive of a justification for such disclosure in the context of this case.

Similarly, the identity of people mentioned in the Supplemental Complaint to whom Agent Worsham spoke, and the substance of her conversations, also constitute work product. How a party, its counsel and agents choose to prepare their case, the efforts they undertake, and the people they interview is not factual information to which an adversary is entitled. Disclosure of this information would inevitably teach defendants which individuals the Government considered more or less valuable as witnesses and how it was preparing for trial. *See, e.g., Appeal of Hughes,* 633 F.2d at 288-90; *American Floral Services, Inc. v. Florists' Transworld Delivery Assoc.,* 107 F.R.D. 258, 261 (N.D.Ill.1985); *Board of Education v. Admiral Heating and Ventilating, Inc.,* 104 F.R.D. 23, 32 (N.D.Ill.1984) (party must identify people it knows to have relevant knowledge of allegations in complaint, but need not indicate with whom or when it conducted interviews or whether a record of the interviews was made; rather than providing relevant facts this provides insight into attorney's trial preparation.)

Although there have been cases in which the identity of people interviewed has been found to enjoy only a qualified privilege, on the theory that a list of names contained little substantive content and would save substantial time and effort of an adversary, *see, e.g., U.S. v. Amerada Hess Corp.,* 619 F.2d 980, 987-88 (3d Cir.1980); *American Floral Services,* 107 F.R.D. at 260-62, defendants have not demonstrated any such need for production of this information in this case. There is no question here that defendants have knowledge of the universe of people who have information relevant to the issues in this case. Indeed, they are either mentioned in the Supplemental Complaint or have been identified in Exhibit H to the Zaccaro Declaration. The only possible rationale for these questions is defendants' attempt to learn to whom the Government's attorney attaches particular significance or how plaintiff intends to present its case at trial. Moreover, requiring Agent Worsham to testify as to what these individuals told her, as recognized in *Hickman, Upjohn* and their progeny, would convert plaintiff's agent/investigator into a witness in the case, and force her to draw upon her selective recollection of information she was provided and to which she attached significance. This information is classic work product and defendants have not offered adequate justification for its production. *Hickman,* 329 U.S. at 513; *Appeal of Hughes,* 633 F.2d at 290.

**\*11** The other information sought by the District Council consists of: 1) facts known to Agent Worsham, and the Government generally, that concern or support the allegations in the Supplemental Complaint (it is argued that if Agent Worsham does not have full knowledge of all facts known to the Government, she must be prepared in advance of the deposition so that she can provide this information); 2) the identity of persons who have knowledge of facts supporting the allegations in numerous, specific paragraphs of the Supplemental Complaint, and the facts they know; and 3) the identification of documents that concern or support specific allegations in the Supplemental Complaint. *See* Defendants' Memorandum in Support of the Motion to Compel Deposition Testimony, at 15.

Initially, the Court must determine whether the information sought is work product. If it is not, it must be provided; if it is work product, the Court must further determine whether defendants have adequately met their burden in justifying its production.

On their face, defendants' questions appear to seek information routinely provided in discovery, *i.e.,* facts relevant to the claims which are known by a party and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.)**

Page 9

the identity of persons and documents with information relevant to the issues in the case. Local Rule 46 specifically provides for provision of the latter two categories of information in interrogatory responses. *See also* 8 Wright and Miller, *Federal Practice and Procedure* § 2023 at 194 (1970). Because facts are not protected by the work product doctrine, defendants argue that they are entitled to detailed answers regarding the factual underpinnings of the numerous allegations of the Supplemental Complaint. Thus, they claim, plaintiff is obligated to provide all information it is aware of which supports the particular allegations of the Supplemental Complaint, including the identity of all individuals and documents who have or contain relevant information. *See, e.g.,* In re Dayco Corp. Derivative Securities Litigation, 99 F.R.D. 616, 624 (S.D.Ohio 1983); U.S. v. Pepper's Steel & Alloys Inc., 132 F.R.D. 695, 697-99 (S.D.Fla.1990) (corporate representative must provide facts, even if learned from counsel); Barrett Industrial Trucks, Inc. v. Old Republic Insurance Co., 129 F.R.D. 515, 518-19 (N.D.Ill.1990).

Nevertheless, the context in which this information is sought does raise work product concerns. Defendants' deposition questions were not addressed to a party or a witness with first-hand information; Agent Worsham is an investigator, working with the U.S. Attorney's Office on the preparation of this case. She has no independent knowledge of facts, other than in her role as a counsel's agent; she will not be a fact witness at the trial. Transcript dated March 12, 1992, at 37-38. While it is true that the work product doctrine does not protect facts, even when such facts are learned by a witness from protected documents, *see, e.g.,* Nutmeg Insurance Co. v. Atwell, Vogel & Sterling, 120 F.R.D. 504, 509 (N.D.La.1988); Eoppolo v. National Railroad Passenger Corp., 108 F.R.D. 292, 294 (E.D.Pa.1985); 4 *Moore's Federal Practice* ¶ 26.57[2] at 26-167, a party may not secure disclosure of an adversary's counsel's view of the case or trial preparation by seeking disclosure of those facts or sources of facts which counsel considers more significant than others and has devoted time to pursuing.

**\*12** While the Government may go too far in arguing that everything that Agent Worsham knows is work product simply because it was either told to her by attorneys on the case or learned as the result of her investigation under the supervision of attorneys, I find equally dubious defendants' contention that all they are seeking to establish is the existence or non-existence of basic facts, as well as documents and people with relevant information. An investigator, or indeed an attorney, may possess factual information that is not privileged and that must be divulged. However, as courts have recognized, when a party seeks discovery directly from an attorney or an attorney's agent, there is more than a strong likelihood that the concerns underlying the work product doctrine will be implicated. Moreover, when the information being sought is available from sources less entangled in privilege issues, a founded suspicion may arise that the seeking party is in fact attempting to exploit attorney work product. *Cf.* In Re Grand Jury Subpoenas Dated October 22, 1991 and November 1, 1991), 959 F.2d 1158 (2d Cir.1992) ("[W]here a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be, even third-party documents may be protected [by the work product doctrine]"); *N.F.A. Corp.,* 117 F.R.D. at 85-86 (because subtleties of what constitutes work product may not be readily perceived at first glance, depositions of attorneys should be allowed only where other sources of information have been exhausted and attorney deposition is the only practical means of obtaining the information).

In this case there is a real, rather than speculative, concern that Agent Worsham's responses to deposition questions will reveal government counsel's legal strategy and thought processes. Her identification of persons and documents with information relevant to particular claims in the Supplemental Complaint will, of necessity, be selective. No one claims that she is the repository of all of the information the Government possesses that is relevant to this case. And since what she knows has either been told to her by plaintiff's counsel, or learned on direction of counsel in supervising her investigation and trial preparation, her selective revelation of information will no doubt indicate particular documents or witnesses to which she and her supervising attorneys attach the greatest

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.)**

Page 10

significance; it will also reveal how they are preparing to prove and try their case. "In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research ..." *Shelton,* 805 F.2d at 1328-1329. Thus, the *Sporck* selection and compilation concept of work product is implicated. This, however, does not end the analysis.

Although the *Sporck* court considered work product revealed by counsel's selection and compilation of documents to be entitled to the almost absolute protection afforded "opinion work product", *Sporck,* 759 F.2d at 316, other courts have adopted an equitable, balancing approach which I consider more reasonable and appropriate on the facts of this case. There are many legitimate ways in which an attorney's thoughts and strategy may be revealed, *e.g.,* in pleadings, interrogatory answers, requests for admissions, responses to contention interrogatories and pre-trial orders. In those contexts, the work product privilege affords little or no protection. Thus, rather than cloaking with absolute protection any information that would tend to provide some insight into an attorney's thinking, courts have considered such factors as: the extent to which the substance of an attorney's thinking and strategy would actually be revealed; the timing of such revelation, *e.g.,* whether the information would, in any event, ultimately be subject to revelation, whether the information is such that it should never be revealed, or whether the information should only be revealed at a particular stage of litigation; whether the production of the information would serve legitimate case management goals of expediting discovery or substantially reducing an adversary's burden and expense; and whether the information was otherwise available to the seeking party or beyond its reasonable access. [FN6] In effect, these cases take the view that depending upon the circumstances, some "opinion work product" is more appropriately subject to the traditional work product analysis of Rule 26(b)(3), Fed.R.Civ.P., where the seeking party must show substantial need and inability, without undue hardship, to obtain the substantial equivalent of the materials sought. *See, e.g., In Re Grand Jury Subpoenas Dated October 22, 1991 and November 1, 1991),* 959 F.2d 1158 (2d Cir.1992); *Gould,* 825 F.2d at 680; *In re San Juan Plaza Hotel Fire Litigation,* 859 F.2d at 1015-1018; *Santiago v. Miles,* 121 F.R.D. 636, 639 (W.D.N.Y.1988); *Clute v. Davenport Co.,* 118 F.R.D. 312, 316 (D.Conn.1988).

**\*13** Even applying this more equitable approach to the attorney work product in issue, I must conclude that defendants have failed to meet their burden in justifying its production. Any information that could be provided by Agent Worsham in response to the deposition questions in issue was already made available to defendants in a more comprehensive form. They were provided with the names of *all* individuals the Government is aware of who have relevant knowledge regarding the allegations in the Supplemental Complaint. At best, Agent Worsham herself could only identify a very limited subset of those individuals based on her recollection or particular duties as an investigator. Furthermore, in response to defendants' document request, the Government provided *all* documents in its possession with information relevant to the Supplemental Complaint's allegations. Those documents were provided in the manner originally requested by the defendants, and consistent with Rule 34(b) of the Federal Rules of Civil Procedure. As with the identification of persons with relevant knowledge, Agent Worsham's ability to identify documents personally known by her to support specific allegations of the Supplemental Complaint, understandably, would be extremely limited and far less comprehensive than the documents themselves. I can conceive of no possible benefit to be gained from her responses except to secure some indirect insight into opposing counsel's trial preparation, strategy and thought processes by her selective identification of those documents, already provided to defendants, which are significant enough for her to recall.

I am unpersuaded by the District Council's argument that the responses are necessary for it to understand the factual bases for the Government's allegations. This is not a case in which a party denied its adversary access to relevant facts in its possession. The relevant facts in this case are contained in the documents provided to the defendants and are known by the individuals identified as having first-hand knowledge. Those fact sources can be tapped without the complications and limitations

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 11
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

that necessarily flow from depositions of attorneys and their investigators. Defendants can and, indeed, have been conducting depositions of individuals identified as having relevant information. In fact, there have been unopposed depositions of F.B.I. agents and other law enforcement officials who worked on the completed criminal investigations and cases which form much of the basis of the Supplemental Complaint in this case. While there are individuals, not in the control of the Government, whose depositions have been thwarted by their invocation of their Fifth Amendment rights, in my decision of June 17, 1992, I directed the Government to decide upon and identify those individuals to whom it will grant immunity-thus removing any barriers to their depositions. Defendants have been assured that any delay in such identification will not operate to their detriment if the depositions cannot be taken within the deadline currently in place for the completion of discovery.

**\*14** The District Council's claim that it was provided with a mass of documents and tapes which are of no use because they were not correlated with the allegations of the Supplemental Complaint, was also addressed in earlier rulings of the Court. In my decision of June 17, 1992, applicable to defendant McGuinness, I found that the Government produced all relevant documents in its possession or control in a manner which was responsive to the District Council's document request. Those documents, which numbered some 130,000, were grouped, as requested, by investigative file or criminal prosecution or in similar ways. I concluded that it was unnecessary for the Government to recategorize the documents already produced by keying them to the many allegations of the Supplemental Complaint. There is nothing to suggest that there was some mystery as to the significance of the documents and the only genuine issue was whether the defendants had the right to require the Government to assume their burden of reviewing the documents produced. I concluded that they did not. Transcript of Hearing of June 17, 1992, at 37-39. Judge Haight affirmed that decision, stating: I think the Government has done enough. No Rosetta stone is necessary to unlock their mysteries. Defendant and his counsel can read them and determine which documents pertain to an allegation, and to what degree, directly or indirectly.

*United States v. District Council,* Memorandum Opinion and Order dated July 30, 1992 at 13.

In the present context, defendants' argument is even weaker. It is the District Council itself which sought the documents produced and agreed that they could be produced as kept in the regular course of business. That is how they were produced.

With respect to the defendants' arguments that they are faced with an inordinate and overwhelming burden in reviewing the audio and video tapes produced in response to their document request, the Court already ruled that the Government must review the tapes and actually identify those tapes it intends to use at trial; in addition, if requested, it is to make available to defendants any indices or summaries which exist that would facilitate defendants' own identification of relevant tapes. June 17, 1992 Hearing Transcript at 58-65. Thus, there can no longer be any argument that the tapes are unfathomable, too burdensome to review, or leave the defendants at a loss as to their relevance to the allegations in the Supplemental Complaint.

In sum, if there ever was any merit to defendants' position-that because of the unique problems encountered in discovery in this case, it is imperative that Agent Worsham provide responsive answers to her deposition questions so that defendants could achieve a basic understanding of the factual bases of the Supplemental Complaint-as the result of further developments in this case and rulings of the Court, that position can no longer be credibly advanced. The facts which defendants seek are available from first-hand sources, rather than investigators assisting counsel whose limited and selective knowledge is laced with work product protection. [FN7] Other than providing defense counsel with some insight into the United States Attorney's trial preparation and strategy, the information Agent Worsham possesses would do little to advance defense counsel's purported basis for the deposition-securing an understanding of the factual underpinnings of the Supplemental Complaint.

**\*15** Defendants' contention that, as a Rule 30(b)(6) deponent, Agent Worsham has an obligation to supplement her limited personal knowledge with all

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 12
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

relevant information known to the Government, does not, in my view, merit serious consideration. Taken to its logical conclusion, defendants' position would require that: 1) the various Assistant United States Attorneys with responsibility for drafting the Supplemental Complaint, supervising the investigation and preparing for trial in this action, collect and synthesize all of the information in their possession; 2) that they then impart that body of knowledge to Agent Worsham; and 3) that Agent Worsham, in turn, feed it back to defendants in response to their deposition questions. To state the proposition is to defeat it. However liberal the discovery rules are, they could not reasonably be construed as requiring a party in a case such as this to make a Rule 30(b)(6) deponent, who is an investigator assisting counsel, the repository of all information known to counsel so that she could then provide it to an adversary.

The case defendants primarily rely on for the proposition that a Rule 30(b)(6) witness must be prepared to answer questions about all matters known to a corporate or government entity, is inapposite. In *FDIC v. Butcher,* 116 F.R.D. 196 (E.D.Tenn.1986), the defendant bank officers, sued for various acts of negligence in carrying out their duties, were frustrated in securing information as to even the most basic facts underlying the accusations against them, *e.g.,* identification of the loans they were alleged to have negligently executed and administered and the amount of loss claimed for each loan. That information was known only by the FDIC (which presumably stood in the shoes of the banks) and was thoroughly set forth in an FDIC memorandum, which itself was found to be privileged. However, the *facts* contained in the document were not themselves privileged and were basic to understanding the claims asserted by the FDIC. When the FDIC Rule 30(b)(6) witnesses were deposed, subject to deposition notices that specifically apprised them of the facts being sought, they had not even reviewed the FDIC memorandum detailing those facts, had no role in preparing the memorandum and, essentially, were able to provide little or no useful information. The court, obviously concerned about the defendants facing "trial by ambush", found the deposition tactics of the plaintiff to be inefficient and wasteful since it could have presented the examiners who prepared the FDIC's memorandum and who had precise, first-hand knowledge of the clearly discoverable information being sought. *Id.* at 201.

In contrast, in the instant action defendants are seeking information from an attorney's agent/investigator which, in this context, has been determined to be not properly discoverable because it constitutes work product. While the District Council certainly has the right to discover relevant factual information, as set forth above, those facts have not been concealed by the Government. They are available in the documents provided and through depositions of fact witnesses who were named as having relevant information. Moreover, for Agent Worsham to provide the information defendants seek would in effect require the Government to marshal all of its factual proof and then provide it to Agent Worsham so that she could respond to what are essentially a form of contention interrogatories. Aside from any issues of privilege, this would be highly inefficient and burdensome, rather than the most direct manner of securing relevant information, as advocated by the *Butcher* court. [FN8]

*\*16* There may come a time in this litigation when a legitimate justification for focused contention interrogatories can be demonstrated. Although their indiscriminate use is often pointless and can be highly burdensome (*e.g.,* when they require a party to marshal all of its proof), they may fulfill an appropriate need under the proper circumstances, as contemplated by Local Civil Rule 46(c). In any event, the deposition of an attorney or attorney's investigator, which requires that person to inform herself of all relevant facts known by counsel or the Government, is not an appropriate alternative. [FN9] Of relevance here is the Eighth Circuit's observation in the *Shelton* case:

Undoubtedly, counsel's task in preparing for trial would be much easier if he simply could dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy. The strategy of forcing trial counsel to testify as a witness has long been discouraged.... Taking the deposition of opposing counsel not only disrupts the adversarial system and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 13

lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

Shelton, 805 F.2d at 1327.

The same reasoning is equally applicable to the deposition of Agent Worsham. The information which Agent Worsham could reasonably provide to defendants is not crucial to the preparation of their case and implicates work product; moreover, other, more efficient means exist to obtain the information. For all of the above reasons, defendants' motion to compel Agent Worsham's deposition testimony is denied. FN10

SO ORDERED.

> FN1. At the hearing, the Court also heard argument on a separate motion to stay the deposition of defendant Paschal McGuinness until he had an opportunity to conduct meaningful discovery as to the allegations against him. That motion was denied in a decision from the bench on June 17, 1992, which was affirmed by Judge Haight in a Memorandum Opinion and Order, dated July 30, 1992.
>
> FN2. It is noted that the issues raised in the instant motion are of relevance to proposed depositions of other law enforcement officials.
>
> FN3. The Government argues that prior to, during and subsequent to Agent Worsham's deposition, it invited the District Council to serve interrogatories, as contemplated by Local Rule 46, seeking the identity of persons with knowledge of the Supplemental Complaint's allegations. Zaccaro Declaration ¶ 12 and Exhibits C and E thereto. Although the Government never received such interrogatories, it provided that information on its own initiative in response to the instant motion. *See* Exhibit H to the Zaccaro Declaration.
>
> FN4. It is noted that since this motion was fully submitted, discovery has continued and the Court has issued rulings, in the context of defendant McGuinness' motion to compel interrogatory answers, requiring further production of discovery by the Government. For example, there have been unopposed depositions of various law enforcement agents who worked on the completed criminal cases and investigations which form the basis of most of the racketeering allegations of the Supplemental Complaint. (All of the criminal files related to those cases have been produced in discovery, including grand jury minutes.) Furthermore, the Government was ordered to identify the audio and video tapes it intends to use at trial, so that defendants need not review all 3,700 tapes themselves. The Government has also been directed to identify, on a staggered schedule, those individuals who will be granted immunity, so that the parties can then conduct depositions. (These Orders were issued from the bench on June 17, 1992).
>
> FN5. It is possible that some or all of Agent Worsham's communications with counsel are also protected by the attorney-client privilege (as claimed by the Government in its objections to various deposition questions). However, there is no present need to address this issue since plaintiff has not briefed it and the testimony at issue is already protected as work product.
>
> FN6. These factors also suggest the distinction between deposition questions addressed to Agent Worsham and the information that might be required in a RICO case statement. (Defendants argue that both seek similar

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.)**

Page 14

factual information which is not privileged. *See* April 20, 1992 letter of Jed S. Rakoff, the District Council's attorney.) In the context of Agent Worsham's deposition, only a subjective, selective and limited provision of information would be secured in such a fashion as to reveal counsel's strategy, opinions and trial preparation. In a RICO case statement, which is intended early in the litigation to serve the court's concerns with the sufficiency of a RICO pleading as well as other case management interests, an objective and relatively comprehensive body of information known at the time of the filing of the complaint, is provided by counsel. That information is not likely to focus on the attorney's strategy or trial preparation.

FN7. In fact, when pressed, defendants virtually conceded that they have no realistic expectation that Agent Worsham is in a position to provide them with more than very limited, selective information in response to their deposition questions. Transcript of March 12, 1992 Hearing at 75-77, 79-81.

FN8. The Court's decision in *U.S. v. Pepper's Steel & Alloys, Inc.,* 132 F.R.D. 695 (S.D.Fla.1990), also cited by defendants, can be distinguished on the same grounds. In that case, a corporate employee designated as a Rule 30(b)(6) witness, had knowledge of facts relevant to the claims in the issues in the case. Unlike Agent Worsham, much of his knowledge was acquired first-hand over several years, as the supervising examiner of the company's liability division, *Id.* at 697, and only some of his information was acquired in conversations with counsel or by reviewing documents in connection with the litigation. The deponent's responses to questions did not require that he reveal or provide the source of the non-privileged factual information he was providing; thus, there was no, or only a remote, possibility that his responses would reveal counsel's mental impressions or legal strategy. Moreover, unlike this case, there was no suggestion that there were other, more efficient or appropriate sources of the facts being sought.

FN9. Similarly, there is little point to the Government filing a RICO case statement at this stage in the litigation, as defendants have demanded rather belatedly. *See* letter, dated April 20, 1992, from Jed S. Rakoff, the District Council's attorney. Contrary to defendants' assertion, the Government is not in violation of Judge Haight's rules for failing to complete such a statement. Judge Haight's "Sample Order" requires a RICO statement only when so ordered by the judge, which was not done. *See* letter from Assistant U.S. Attorney Marla Alhadeff, dated April 27, 1992. Moreover, given the detail set forth in the Supplemental Complaint, the materials the Government submitted in support of its motion for a preliminary injunction, and the voluminous discovery produced in this case, there can be no argument that there was an insufficient basis under Rule 11, Fed.R.Civ.P., for the filing of this action. Indeed, in denying the defendants' motion to dismiss, Judge Haight specifically found that the Supplemental Complaint provided defendants sufficient notice to prepare their defense. *See United States v. District Council,* 778 F.Supp. 738, 752-53 (S.D.N.Y.1991).

FN10. It should be clear that this conclusion is equally applicable to any proposed depositions of other similarly situated law enforcement agents working under the supervision of counsel in the preparation of this case.

S.D.N.Y.,1992.  
U.S. v. District Council of New York City and Vicinity of United Broth. of Carpenters and Joiners of America  
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:90cv05722 (Docket) (Sep. 06, 1990)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 15
Not Reported in F.Supp., 1992 WL 208284 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.