

Not Reported in F.Supp.2d                                                                                                              Page 1
Not Reported in F.Supp.2d, 2000 WL 116082 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**



Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
SMITHKLINE BEECHAM CORPORATION and BEECHAM GROUP, P.L.C., Plaintiffs,
v.
APOTEX CORP., APOTEX, INC., and TORPHARM, INC., Defendants.
**No. 98 C 3952.**

Jan. 24, 2000.

MEMORANDUM OPINION

KOCORAS, District J.
**\*1** Before the Court are the following motions: (1) Plaintiffs' Motion to Compel Defendant Apotex, Inc. to Produce Discovery; (2) Defendants' Motion to Amend their Answer and Affirmative Defenses; and (3) Defendants' Motion to Compel Plaintiffs to Testify on Topics 2 and 15-19 of Defendants' Rule 30(b)(6) Notice. For the reasons set forth below, we rule as follows: (1) Plaintiff's Motion to Compel is granted in full; (2) Defendants' Motion to Amend their Answer and Affirmative Defenses is granted; and (3) Defendants' Motion to Compel is granted in part and denied in part.

BACKGROUND

On June 26, 1998, Plaintiffs SmithKline Beecham Corporation and Beecham Group, p.l.c. (collectively "SmithKline") filed a one-count patent infringement complaint against Defendants Apotex Corp., Apotex, Inc. and TorPharm, Inc. (collectively "Defendants"). SmithKline seeks an order barring FDA approval of the Defendants' proposed product until the expiration of SmithKline's patent, and also barring Defendants from manufacturing, using or selling their product until the expiration of SmithKline's patent.

The suit claims that pursuant to 35 U.S.C. §§ 271(b), 271(e) and 281-283, Defendants infringed Patent No. 4,721,723 ("the '723 Patent"), which the United States Patent and Trademark Office granted Beecham on January 26, 1988 for an invention called "Anti-Depressant Crystalline Paroxetine Hydrochloride Hemihydrate." Beecham eventually assigned the patent to SmithKline, which markets the paroxetine as a pharmaceutical drug, Paxil.

Defendant Apotex, Inc. is a corporation organized under the laws of the Dominion of Canada, with its principal place of business located in Weston, Ontario, Canada. Apotex, Inc. manufactures and markets pharmaceuticals, and it contends that it conducts its testing and manufacturing work solely for prescription drugs to be sold in Canada and other markets outside of the United States.

In 1993, Apotex, Inc. established an operating division, TorPharm Inc., [FN1] a Division of Apotex, Inc. ("TorPharm Division"), for the express purpose of "[d]eveloping, testing and manufacturing prescription drugs in conformance with the detailed regulatory requirements" of the United States Food and Drug Administration ("FDA"). Defendants contend that TorPharm Division operates a "stand alone" facility in Etobicoke, Ontario, Canada. Defendants claim that the TorPharm Division facility in Etobicoke is autonomous and wholly distinct from Apotex, Inc.'s Weston facility.

> FN1. TorPharm, Inc. is a corporation organized under the laws of the Dominion of Canada.

The suit arose on May 18, 1998, when SmithKline received a letter from TorPharm Division, informing and notifying SmithKline that through its United States agent, Apotex Corp., TorPharm Division had previously filed an Abbreviated New Drug Application ("ANDA") No. 75-356 for "Paroxetine HCI Tablets"

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 2
Not Reported in F.Supp.2d, 2000 WL 116082 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

with the FDA. The letter purported to be a Notification of Certification of noninfringement under Section 505(j)(2)(B) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355(j)(2)(B)(i) and (ii), and informed SmithKline TorPharm Division believed that because TorPharm Division's product contained paroxetine hydrochloride solely in an anhydrous state, unlike the '723 Patent which is in hemihydrate form, its "Paroxetine HCI Tablets" did not infringe upon the '723 Patent. SmithKline disputes TorPharm Division's claim, arguing paroxetine hydrochloride in an anhydrate state will convert into a hemihydrate form. Thus, SmithKline claims ANDA No. 75-356 for "Paroxetine HCI Tablets" infringes on the '723 Patent.

**\*2** This is our second opinion in this case involving discovery disputes between the parties. Our first opinion concerned SmithKline's motion to compel Defendants, which we granted in part, and denied in part. *See SmithKline Beecham Corp. v. Apotex Corp.,* 1999 WL 311697 \*1 (N.D.Ill. May 13, 1999). SmithKline renews a portion of its motion to compel, arguing that new information establishes the propriety of an order compelling Apotex, Inc. to produce materials about the role of Apotex, Inc. in the development of TorPharm's paroxetine hydrochloride. In addition to opposing SmithKline's motion, Defendants seek to amend their answer and affirmative defenses to assert that the '723 Patent is invalid or unenforceable. Defendants also move to compel SmithKline to designate and produce witnesses pursuant to Federal Rule of Civil Procedure 30(b)(6). We shall address each motion in turn.

DISCUSSION

I. Plaintiffs' Motion to Compel

SmithKline moves to compel Apotex, Inc. to produce all documents, samples, and things for two categories: (1) Apotex Inc.'s work and efforts to develop the formula, specifications, and process for formulating and producing paroxetine hydrochloride, which Apotex provided on April 15, 1997 to its TorPharm Division to produce a product for the United States market; and (2) Apotex Inc.'s recent work and efforts to test and tablet larger-scale batches [ (PAR(108), PAR(109), and PAR (110) ] of bulk paroxetine hydrochloride, produced by Brantford Chemicals, Inc. ("BCI"), allegedly the common supplier for both TorPharm Division and Apotex, Inc. SmithKline argues that these documents fall within the parameters of requests 9, 11, 23-25, 31, and 33 of SmithKline's first set of document requests.

A. Apotex's Initial Development Work

This is not our first review of this issue. Apotex, Inc. had objected to producing these documents and things when SmithKline initially propounded its production requests. SmithKline then moved to compel their production.

In our prior opinion of May 13, 1999, we noted the Defendants had represented to the Court that the only paroxetine products with any potential to reach the United States market were manufactured in TorPharm Division's facility in Etobicoke, Ontario. *See SmithKline,* 1999 WL 311697 at \*5. The Defendants also stated that "Apotex has no intention of marketing paroxetine products in the United States." *Id.* Because SmithKline's production requests sought the production of documents and things that were solely related to Apotex Inc.'s Weston, Ontario facility, Defendants argued that the information was irrelevant. *See id.*

We found the Defendants' logic compelling and ruled that Defendants must only produce samples of paroxetine products manufactured at TorPharm Division's facility because we believed the information sought was solely related to the paroxetine products for non-U.S. Markets. *See id.* However, we explicitly noted that our decision was based on the record before us, and SmithKline was not precluded from bringing this matter before the Court if further developments warranted our attention. *See id.*

**\*3** SmithKline claims discovery has shown it is entitled to the documents, information and things it seeks from Apotex, Inc.'s Weston, Ontario facility. Specifically, SmithKline claims to have discovered evidence showing TorPharm Division's proposed product was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 3
Not Reported in F.Supp.2d, 2000 WL 116082 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

developed as follows: (1) BCI, an Apotex owned entity, developed paroxetine hydrochloride, the active ingredient in the product, which it furnished to Apotex; (2) Apotex developed the specifications, formula, and process to formulate and tablet paroxetine hydrochloride, which it furnished to TorPharm Division; and (3) TorPharm Division incorporated Apotex's formula and specifications and adapted Apotex's process to meet the capabilities of TorPharm's manufacturing equipment.

SmithKline also claims BCI produced three large-scale batches of paroxetine hydrochloride [ (PAR(108), PAR(109), and PAR (110) ] in the early part of 1999, which it delivered to Apotex. SmithKline contends BCI and TorPharm Division are utilizing these batches with the FDA to assert their capability to increase production to their anticipated commercial-scale level for the United States. SmithKline has only been able to obtain discovery from BCI on the production of these three new batches, but has not been able to obtain discovery from Apotex pertaining to the testing of the batches, actual tablets produced from them, or any other information from Apotex regarding the batches or tablets. In essence, SmithKline claims Defendants are misusing our May 13, 1999 opinion by storing information or items at Apotex that it does not want to produce in discovery.

Defendants admit Apotex provided TorPharm Division with the formula and process for manufacturing paroxetine tablets, but claim this served merely as an insignificant starting point from which TorPharm Division conducted its own development work, which Defendants claim forms the basis of the ANDA submitted to the FDA by TorPharm Division. We disagree with Defendants and rule that they must provide the discovery sought by SmithKline.

In determining what matters are discoverable in this case we bear in mind "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. Proc. 26(b)(1). "The information need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* We broadly construe relevancy at the discovery stage. *See In re Aircrash Disaster Near Roselawn, Indiana October 31, 1994,* 172 F.R.D. 295, 303 (N.D.Ill.1997).

In its briefs pertaining to SmithKline's initial motion to compel Defendants claimed Apotex, Inc.'s Weston facility had no connection whatsoever to the development of any products for marketing in the United States. *See SmithKline,* 1999 WL 311697 at *5. Despite this representation to the Court, the Defendants now claim the only connection the Weston facility has with the ANDA is providing a starting point for TorPharm's development work. This contradiction of Defendants' earlier representations to the Court indicate it is far from settled what role Apotex, Inc.'s Weston facility played, and continues to play, in the development of its TorPharm Division's paroxetine.

**\*4** In addition, SmithKline has presented newly obtained information to the Court that the development process of the paroxetine intended to be marketed by TorPharm Division was not as segregated as Defendants initially claimed. Instead, SmithKline alleges Apotex Inc.'s Weston facility played a role, which it continues to play, in the development of TorPharm's paroxetine.

Defendants admit TorPharm Division based its development work upon the formula and process developed by Apotex, Inc. at its Weston facility. Indeed, Gaetan Marcoux, the former formulation development manager for TorPharm Division stated on page 99 of his deposition that the formula and process provided to TorPharm Division from Apotex, Inc. were the building blocks for TorPharm Division's process. The evidence also shows TorPharm Division received the "building blocks" for its development work no later than April 15, 1997, when Dr. Sherman, Apotex's president, faxed the formula and process package for paroxetine to Dr. Coffin-Beach, TorPharm's president. [FN2] Plainly, whatever work, assumptions, calculations, and processes went into developing Apotex's formula and process is necessarily relevant to TorPharm's ANDA, because they were an essential component of the development process. This is in accord with our prior opinion permitting SmithKline to review and analyze representative samples from each stage in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 4
Not Reported in F.Supp.2d, 2000 WL 116082 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

development of paroxetine products at TorPharm's Division facility. See *SmithKline,* 1999 WL 311697 at *6.

> FN2. Marcoux testified that he had already received the formula and process package prior to Coffin-Beach's receipt.

Defendants argue Apotex supplies product only to non-U.S. markets . [FN3] Thus, permitting SmithKline discovery from Apotex's Weston facility would improperly expand the scope of discovery to include information regarding paroxetine products that will not be sold in the United States.

> FN3. Defendants also argue that allowing the requested discovery will delay the litigation. Had Defendants advised the Court of the true nature of Apotex's role prior to our initial determination of this matter, we would not be facing a second motion at this late date. Also, Defendants are seeking leave to amend their answer and affirmative defenses. If granted such leave, they seek corresponding discovery responses from SmithKline. Granting Defendants their sought remedies will certainly delay the proceedings, undercutting Defendants argument.

Defendants miss the point. SmithKline has presented the Court with compelling, uncontroverted, newly-obtained evidence that the starting point for TorPharm Division's development process of paroxetine was the product produced by Apotex to be marketed in countries other than the United States. Based on this information, compelling Apotex to produce documents and samples from its Weston facility is no longer related to their non-U.S. paroxetine products, but bears directly on Apotex's role in developing the "building blocks" for the paroxetine product produced by TorPharm Division, which TorPharm Division intends to market in the United States. Merely because that product is also sold outside of the United States is entirely irrelevant. SmithKline is entitled to discovery of each stage of the development of TorPharm's paroxetine product, *See SmithKline,* 1999 WL 311697 at *6. Apotex, Inc. must produce documents and samples reflecting Apotex Inc.'s work and efforts to develop the formula, specifications, and process for formulating and tableting paroxetine hydrochloride.

B. Apotex's Recent Large-Scale Work

SmithKline next moves to compel Defendants to produce discovery related to Apotex's efforts to test and tablet three larger scale batches of paroxetine hydrochloride recently produced by BCI. SmithKline claims BCI recently produced three batches, designated PAR(108)3-99, PAR (109)3-99, and PAR (119) 3-99. All three batches were significantly larger than any previous quantities produced by BCI for TorPharm, Division and are being stored at Apotex, Inc.'s Weston facility.

**\*5** SmithKline argues that the larger size of the batches, relative to the size of any batches previously produced, evidences TorPharm Division intends to rely upon them to assert to the FDA their anticipated capability of producing paroxetine hydrochloride at a commercial production level. Thus, SmithKline claims that even though the batches are stored at Apotex's Weston facility, TorPharm Division will utilize the batches to further its efforts to market the product in the United States. Consequently, SmithKline accuses TorPharm Division of improperly using this Court's prior order as a shield to prevent SmithKline from conducting appropriate discovery of any documents and things about the larger batches, even though the batches are actually earmarked for use by TorPharm in its efforts geared towards the United States market.

Defendants claim their actions are warranted and proper. They claim BCI produces bulk paroxetine hydrochloride for both Apotex and TorPharm Division. In contrast to TorPharm Division, Apotex uses the paroxetine to produce products for non-U.S. markets. Defendants *imply* the paroxetine batches are solely for the use of Apotex. Thus, Defendants argue that their failure to produce any documentation on these batches is warranted.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 5
Not Reported in F.Supp.2d, 2000 WL 116082 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

The parties have framed the issue in such a way that it lends itself to easy resolution. If TorPharm is going to rely upon the batches for its application process to the USFDA, SmithKline is entitled to discovery about them. If indeed the batches are intended *exclusively* for use by Apotex in markets outside of the United States, information concerning them is irrelevant to the controversy before the Court.

Defendants argue "there is absolutely no evidence which even suggests that Apotex will use these three batches (or any batches of bulk material) to supply paroxetine to the United States, or that anyone other than TorPharm will be the supplier to the United States ." This not a flat denial of SmithKline's claim. Rather, their "denial" is couched in terms of there being no evidence.

Defendants next argue TorPharm Division will be the sole supplier to the United States market. While evidently true, SmithKline has not argued that Apotex is producing paroxetine products for the United States market. Rather, the dispute centers on whether Apotex is warehousing paroxetine to shield it from discovery by SmithKline, when TorPharm Division intends to use the paroxetine in its efforts to obtain FDA approval to market its product in the United States. Defendants make no argument on this point, much less a flat denial.

Finally, Defendants argue Apotex will not use the three batches to supply paroxetine to markets in the United States. Again, this is not the issue. SmithKline has not made this argument, but instead claims that TorPharm Division will use the three batches in its efforts to market a paroxetine product in the United States. Defendants have not argued this point either, and again have not made an outright denial of SmithKline's allegations.

**\*6** Given that Defendants have not stated that TorPharm Division will not use the three larger batches that are currently located at Apotex's Weston facility in its efforts to obtain FDA approval allowing it to produce paroxetine products to be sold in the United States market, we believe that the batches may be used by TorPharm and thus are relevant to this action. SmithKline is entitled to the discovery they seek regarding the paroxetine hydrochloride contained in batches PAR(108)3-99, PAR (109)3-99, and PAR (119) 3-99 and its motion to compel is granted.

II. Defendants' Motion to Amend Their Answer and Affirmative Defenses

Next, Defendants move to amend their answer and affirmative defenses to assert that the '723 patent is invalid or unenforceable. Federal Rule of Civil Procedure 15(a) provides that a party must obtain leave of court or written consent of the opposing party to amend a pleading. See Garner v. Kinnear Mfg. Co., 37 F.3d 263, 269 (7th Cir.1994) (citing Perrian v. O'Grady, 958 F.2d 192, 194 (7th Cir.1992)). Under Rule 15(a) of the Federal Rules of Civil Procedure, district courts may grant leave to amend pleadings and such leave "shall be freely given when justice so requires," so long as there is no harm to the other party. Leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment." *Perrian,* 958 F.2d at 194; *see also* General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1085 (7th Cir.1997) (citing *inter alia* Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227 (1962)); Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc., 125 F.3d 468, 480 (7th Cir.1997) (citing Ferguson v. Roberts, 11 F.3d 696, 706 (7th Cir.1993)). Delay is an insufficient justification by itself for denying a motion to amend, unless the delay causes undue prejudice to the opposing party. See Tragarz v. Keene Corp., 980 F.2d 411, 432 (7th Cir.1992).

SmithKline argues Defendants have unduly delayed seeking to amend for improper reasons, prejudicing SmithKline's ability to swiftly prosecute their case. Defendants dispute Plaintiffs characterization of the delay as undue. They contend they could not previously plead the '723 patent was invalid or unenforceable because they did not have a good faith basis for doing so. Defendants claim SmithKline delayed producing their discovery responses, and turned over a prodigious

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 6
Not Reported in F.Supp.2d, 2000 WL 116082 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

amount of documents (in excess of 375,000 pages). As a result, Defendants only recently were able to determine a good faith basis existed for pleading that the '723 patent is invalid or unenforceable. Defendants further contend SmithKline will not be prejudiced if the Court permits them to amend their answers and affirmative defenses. We conclude Defendants may amend their affirmative defenses and answer because Defendants did not unduly delay seeking to file their amendments. [FN4]

> FN4. Because we find that no undue delay exists we need not examine whether SmithKline is prejudiced by the delay. As for SmithKline's prejudice argument regarding the Philadelphia case concerning the '723 patent, we note that SmithKline is the Plaintiff in both cases and opposed their consolidation. The resolution of any prejudice to SmithKline arising from duplicative depositions is within their control and it may not claim prejudice on this basis.

**\*7** This case has been in litigation since June 26, 1998. Defendants filed their original answer and affirmative defenses on August 31, 1998, and moved to amend their answer and counterclaim on December 22, 1999, nearly sixteen months later. Contrary to SmithKline's implication, however, the record does not show Defendants were inactive during this period. Defendants promptly served their first requests for production of documents on SmithKline in September of 1998. They followed these initial requests with a second set of production requests on March 10, 1999. SmithKline admits it did not fully comply with these production requests until September 21, 1999, and the last batch of documents concerned Ferrosan, a company with whom SmithKline has a licensing deal.

Defendants claim the '723 patent is invalid and unenforceable based upon Ferrosan's role in the development of the paroxetine hydrochloride marketed by SmithKline. Specifically, Defendants claim they recently obtained evidence indicating in the early 1980's SmithKline received paroxetine hydrochloride material and specifications from Ferrosan. Because SmithKline did not list any Ferrosan employees as named inventors in the '723 patent, Defendants argue the '723 patent is invalid under 35 U.S.C. § 102(f). Based on this recently discovered information, Defendants seek to amend their answer and affirmative defenses to plead the '723 patent is invalid and unenforceable.

SmithKline challenges this version of events, pointing to Defendants' own statement that SmithKline has been producing Ferrosan documents for over one year. SmithKline also claims Defendants are actually the party slowing the progress of discovery to better align this action with a similar case in Pennsylvania.

We find SmithKline's arguments unpersuasive. Contrary to SmithKline's assertion, the pertinent factor is when they completed their document production. Only then could Defendants fully synthesize the documents and compose their theory of the case. Defendants received the final documents from SmithKline in September 1999. They subsequently filed Rule 30(b)(6) deposition notices seeking information relevant to the invalidity and unenforceability issues. After SmithKline balked at designating witnesses, claiming irrelevance to the issues before the Court, Defendants moved to amend their answers and affirmative defenses. We do not believe this qualifies as foot-dragging by Defendants.

Moreover, the record shows SmithKline's production tardiness was not an insignificant factor in the timing of Defendants seeking to assert the invalidity and unenforceability defenses. SmithKline contributed to any delay by taking over six months to finish producing the documents sought by Defendants in March of 1999, and taking one year to fully comply with Defendants' September 1998 requests. Allowing SmithKline to assert delay as a basis for prohibiting Defendants from amending their answer and affirmative defenses would be inequitable inasmuch as SmithKline has been less than diligent in fulfilling its production obligations. Based on the relatively brief period between the completion of production and Defendants seeking leave to amend in tandem with SmithKline's contributing role, we conclude Defendants did not unduly delay seeking to amend their answer and affirmative defenses.

**\*8** SmithKline next argues Defendants are barred from

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 7
Not Reported in F.Supp.2d, 2000 WL 116082 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

raising these issues because they failed to assert them in their notice letter to SmithKline, thus precluding Defendants from raising them in any subsequent litigation. SmithKline essentially analogizes this situation to cases barring a discrimination complainant from raising any basis for discrimination in her complaint that she did not plead with EEOC. In support of this original proposition, SmithKline cites Bristol-Myers Squibb Co. v. Royce Labs, Inc., 69 F.3d 1130 (Fed.Cir.1995), wherein the court stated that in an infringement action, "depending upon the nature of the certification that has been filed, the district court determines the validity of the patent at issue and/or whether the drug sought to be marketed infringes the claims of the patent." Bristol-Myers Squibb, 69 F.3d at 1135.

*Bristol-Myers* does not support SmithKline's argument. The cited language merely discusses what the court should look to in its determination of the validity of the patent. *Bristol-Myers* does not say notification letters to patent-holders must assert all potential basis for noninfringement, at risk of being precluded from asserting them in a subsequent suit. Because SmithKline does not assert any other authority for barring Defendants from asserting in litigation a theory not presented in its notice letter, we conclude Defendants may amend their answer and affirmative defenses.

III. Defendants' Motions to Compel

The final matter before the Court is Defendants' motion to compel SmithKline to testify on Topics 2,3 and 15-19 of Apotex's Rule 30(b)(6) notice. Rule 30(b)(6) authorizes litigants to name a business entity as a deponent. *See* Fed. R. Civ. Proc. 30(b)(6). Doing so triggers a duty upon the business to designate an individual to testify on its behalf, while setting forth the matter upon which the individual will testify. *See id.* The designated witness "must testify as to matters known or reasonably available to the organization." *Id.*

Defendants originally filed a motion to compel SmithKline to testify on topics 1-20 of defendants' Rule 30(b)(6) notice. Following receipt of the motion, SmithKline forwarded Defendants a letter naming individuals to testify on topics 1, 4-14, and 20. SmithKline declined to designate witnesses for topics 2, and 15-19. SmithKline promised to shortly name a witness for topic 3, but as of this writing, has failed to do so. We will examine the propriety of a Rule 30(b)(6) deposition for each these topics in sequence.

A. Rule 30(b)(6)

Rule 30(b)(6) is a vehicle for streamlining the discovery process. *See* Resolution Trust Corp. v. Southern Union Co., Inc., 985 F.2d 196, 197 (5th Cir.1993). The effect of the rule is to place upon the business entity the burden of identifying witnesses who have knowledge responsive to subjects requested in the Rule 30(b)(6) requests of its opponent. *See id.* Rule 30(b)(6) is also designed to prevent business entities from "bandying," the practice of presenting employees for their deposition who disclaim knowledge of facts known by other individuals within the entity. *See* Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C.1999). Consequently, Rule 30(b)(6) imposes a duty upon the named business entity to prepare its selected deponent to adequately testify not only on matters known by the deponent, but also on subjects that the entity should reasonably know. *See* Alexander, 186 F.R.D. at 152; United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C.1996); Media Svcs. Group, Inc. v. Lesso, Inc., 45 F.Supp.2d 1237, 1253 (D.Kan.1999). If a deponent is unable to testify about certain relevant areas of inquiry the business entity must designate additional parties to satisfy a Rule 30(b)(6) notice. *See* Alexander, 186 F.R.D. at 152; Taylor, 166 F.R.D. at 360; Starlight Intl. Inc. v. Herlihy, 186 F.R.D. 626, 639 (D.Kan.1999); Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 75 (D.Neb.1995)(corporation must provide a substitute for a deponent with insufficient knowledge). Failure to adequately prepare the deponent may subject the entity to sanctions. *See* Bank of New York v. Meridien Biao Bank Tanzania Ltd., 171 F.R.D. 135, 151 (S.D.N.Y.1997); Taylor, 166 F.R.D. at 363; Starlight, 186 F.R.D. at 640.

**\*9** A Rule 30(b)(6) deponent's testimony does not represent the knowledge or opinions of the deponent,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 8
Not Reported in F.Supp.2d, 2000 WL 116082 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

but that of the business entity. *See Taylor, 166 F.R.D. at 361*. In effect, the deponent is "speaking for the corporation," giving the corporation's position on the topic. *See id*. The deponent must testify to both the facts within the knowledge of the business entity and the entity's opinions and subjective beliefs. *See id*. This includes the entity's interpretation of events and documents. *See id*.

### B. Topic 2

On October 22, 1999, Defendants served their Notice of Deposition Pursuant to Rule 30(b)(6) ("the Rule 30(b)(6)") upon SmithKline. Topic 2 of the Rule 30(b)(6) requested SmithKline designate a witness to testify regarding "SmithKline's responses to Defendants' Interrogatories and requests for production, along with the subjects identified therein." SmithKline objected to this Interrogatory, claiming that complying with it would be unduly burdensome because it would require having a witness study the vast amount of discovery pertaining to the case.

While the liberal discovery allowances of the Federal Rules do not permit a recipient of discovery requests to fulfill its discovery obligations by failing to conduct a search for answers and then stating it does not know the answer, *See In re Independent Svc. Org. Antitrust Litig., 168 F.R.D. 651, 653-54 (D.Kan.1996)*, the Rules also preclude proponents of discovery from wielding the discovery process as a club by propounding requests compelling the recipient to assume an excessive burden. *See United States v. District Council of New York City, 1992 WL 208284 at *15 (S.D.N.Y. Aug. 19, 1992)*. Consequently, the recipient of a Rule 30(b)(6) request is not required to have its counsel muster all of its factual evidence to prepare a witness to be able to testify regarding a defense or claim. *See In re Independent Svc. Org. Antitrust Litig., 168 F.R.D. at 654*. This rule holds especially true when the information sought is likely discoverable from other sources. *See E.E.O.C. v. HBE Corp., 157 F.R.D. 465, 466-67 (E.D.Mo.1994)*.

Defendants assert that compelling SmithKline to prepare such a witness would not be an undue burden, but would serve to narrow and focus the issues of the case. As Defendants are aware, answering requests for production and interrogatories customarily is performed with the assistance of counsel. Thus, the proposed area of inquiry improperly trespasses into areas of work product and attorney-client privilege. *See In re Independent Svc. Org. Antitrust Litig., 168 F.R.D. at 654*. In such cases, courts will not permit discovery implicating privilege concerns absent a showing that the information sought is not discoverable by other means. *See HBE Corp., 157 F.R.D. at 466-67*.

Defendants could readily have obtained the same information in a more efficient manner by propounding "standard" interrogatories upon its opponent. By doing so, Defendants could obtain the same information with infinitely less intrusion upon privilege concerns, in a more workable form, and from the individuals who have actual knowledge of the matters at issue.

**\*10** In its present form, we find Defendants' Rule 30(b)(6) deposition notice overbroad, unduly burdensome, and an inefficient means through which to obtain otherwise discoverable information. Defendants have also failed to convince us that the factual information they seek has not already been produced, or that it cannot be discovered through a less invasive method. Accordingly, we deny Defendants' motion to compel on Topic 2.

### C. Topic 3

Topic 3 of the Rule 30(b)(6) requests SmithKline designate a witness to testify on the content of SmithKline's patent. While SmithKline has not explicitly objected to this Topic, it also has failed to designate a testifying witness. Because SmithKline also has not tendered to the Court any basis for not designating and producing a witness knowledgeable on Topic 3, we hold that it must do so without delay.

### D. Topics 15-17

In Topics 15-17, Defendants requested SmithKline designate and produce a Rule 30(b)(6) witness who will

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 9
Not Reported in F.Supp.2d, 2000 WL 116082 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

testify on prior art bearing on the validity and enforceability of the '723 patent. SmithKline argues topics 15-17 are irrelevant to the interpretation of the patent claim and whether Apotex's proposed drug will infringe any claims of the patent. The determination of this issue hinges on the outcome of Defendants' motion to amend their answer and affirmative defenses, which would make the information sought quite relevant. Because we granted Defendants' motion to amend *supra,* topics 15-17 are relevant to the case and SmithKline must designate witnesses to testify on these matters.

### E. Topic 18

In Topic 18, Defendants seek information on the factual basis of SmithKline's claim that Defendants infringed the '723 patent. The issue here is duplication. SmithKline argues it need not designate a 30(b)(6) witness because Defendants have also served Interrogatory Number 12 upon SmithKline seeking the same information. SmithKline is currently preparing its answer to this interrogatory, and argues it should not have to prepare a representative witness to testify to matters it is already providing to Defendants.

We agree. As with Topic 2, Topic 18 improperly infringes upon matters of attorney-client privilege, work product, imposes an undue burden, and is needlessly duplicative because Defendants will already be receiving the information. *See HBE Corp.,* 157 F.R.D. at 466-67; *In Re Independent Svc. Org. Antitrust Litig.,* 168 F.R.D. at 654. Inasmuch as complying with producing a witness to testify on Topic 18 would require SmithKline to brief its designee on SmithKline's response to Interrogatory Number 12, compelling SmithKline to undergo this duplicate process is unnecessary and overly burdensome. *See Dist. Council of New York City,* 1992 WL 208284 at * 15. Consequently, we deny Defendants' motion to compel on Topic 18.

### F. Topic 19

Along a similar vein, Topic 19 is better suited to alternative means of discovery than a Rule 30(b)(6) deposition. Topic 19 concerns SmithKline's investigation and testing activities which led to the conclusion that Defendants were infringing the '723 patent. Similar to Topic 2, we believe a Rule 30(b)(6) deposition is an inefficient means of ascertaining the information sought. Instead, standard interrogatories would be a better method of discovering the particulars of SmithKline's investigation because SmithKline could synthesize the information from all of the necessary sources, which would then be presented to Defendants in a comprehensible manner. In addition, SmithKline claims any testing was conducted by individuals who are knowledgeable in the field, who it will tender as expert witnesses. Again, this is an area better suited for an alternate means of discovery; in this case interrogatories identifying all individuals involved in testing, expert interrogatories and depositions. Consequently, we deny Defendants' motion to compel SmithKline to designate a witness to answer Topic 19.

### CONCLUSION

**\*11** For the foregoing reasons, (1) Plaintiffs' Motion to Compel is granted in full; (2) Defendants' Motion to Amend their Answer and Affirmative Defenses is granted; and (3) Defendants' Motion to Compel is granted in part and denied in part. The parties have fourteen (14) days to comply with this Order.

N.D.Ill.,2000.
Smithkline Beecham Corp. v. Apotex Corp.
Not Reported in F.Supp.2d, 2000 WL 116082 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:98cv03952 (Docket) (Jun. 26, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.