

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Baltimore Field Office

10 S. Howard Street, 3rd Floor
Baltimore, MD 21201
PH: (410) 962-3932
TDD: (410) 962-6065
FAX: (410) 962-4270

November 27, 2006

**VIA HAND-DELIVERY AND ELECTRONIC FILING**

Honorable Paul W. Grimm
Chief United States Magistrate Judge
U.S. District Court for the District of Maryland
101 W. Lombard St.
Baltimore, MD 21201

  Re: EEOC Response to Defendant motion to exclude expert testimony in EEOC v. LA Weight Loss, Case No. WDQ-02-CV-648

Dear Judge Grimm:

This letter constitutes the U.S. Equal Employment Opportunity Commission's ("EEOC") brief response to Defendant LA Weight Loss's motion to exclude certain testimony of EEOC expert Elvira Sisolak filed on November 22, 2006, (Paper No. 169) in the above-referenced action. In this response, EEOC will endeavor to briefly set forth its basic position regarding Defendant's motion and will await a hearing of this matter to expand upon that position.

Defendant's motion should be denied. Under the present scheduling order in this action, the parties are permitted until January 5, 2007, to serve Fed. R. Civ. P. 26(e)(1) supplements regarding their expert reports. EEOC timely-served Defendant with Labor Economist Elvira Sisolak's Supplemental Report on November 14, 2006, well in advance of her deposition, which is presently scheduled for December 8, 2006, and well in advance of the January 5th supplementation and discovery cut-off date.

Defendant seeks to avoid the fact that service of this Supplemental Report was timely under the scheduling order and authorized by the Federal Rules of Civil Procedure by asserting that the report is not a supplement but "a sur-rebuttal." Defendant's argument is without merit. The Supplemental Report is, in-fact, a Rule 26(e)(1) supplement to the original report of Ms. Sisolak served on May 26, 2006.

Granted, the line between what constitutes a supplemental report under Rule 26(e)(1) and what is an entirely new report may not be clear in all cases, but what is clear is that the federal courts do not draw that line in the way Defendant has tried to draw it here. "A revised expert report that is consistent with the core opinions expressed in the original expert report is likely to qualify as a supplemental report. Depending on the facts of the case, a revised expert report that utilizes an additional method of analysis and offers

additional conclusions that were not part of the original report may also constitute a supplemental report." Gilbane Building Co. v. Downers Grove Comm. High Sch. Dist No. 99, No. 02 C 2260, 2005 WL 838679, at *8 (N.D. Ill., April 5, 2005)(citations omitted)(unpublished decision attached as Exhibit 2). Consistent with these principles, this Court and other federal courts have permitted Rule 26(e)(1) supplementation of expert reports, in some cases on the eve of or even after the close of discovery, where the supplemental material consisted of additional analyses undertaken in response to opposing parties' criticisms of the methodology used in the original reports. See Tucker v. Ohtsu Tire & Rubber Co., Ltd., 49 F. Supp.2d 456, 459-64 & 460 n.7 (D. Md. 1999); Confederated Tribes v. Weyerhaeuser Co., No. CV 00-1693-PA, 2003 WL 23715981, at *1-2 (D. Or., Jan. 21, 2003)(denying motion to exclude supplemental analyses of expert economists who re-defined markets in anti-trust case in manner consistent with methodology Defendant argued was legally-required)(unpublished decision attached as Exhibit 3); Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., No. C.A. 04-1371-JJF, 2006 WL 2435083, at *1-2 (D. Del., Aug. 22, 2006)(permitting additional supplemental analyses in response to criticisms by opposing party)(slip copy attached as Exhibit 4).

In this regard, the present circumstances are directly analogous to the facts in Tucker v. Ohtsu Tire & Rubber Co., Ltd., 49 F. Supp.2d 456 (D. Md. 1999)(Grimm, J.). As the Court is aware, in Tucker the plaintiffs offered supplemental testimony from their expert witness—a tire expert—that included new opinions regarding the same general subject matter, opinions disclosed for the first time in deposition. See id. at 458. More significantly, approximately six months after their expert's deposition testimony, and 10 days before the discovery cut-off, the plaintiffs disclosed a supplemental report that described additional analyses and conclusions resulting from a new test that the expert asked a third-party to conduct in response to criticisms leveled at the expert during his deposition about his failure to conduct materials tests as opposed to visual inspection. See id. at 459, 461. Presented with these facts, this Court held that the plaintiffs' report was a Rule 26(e)(1) supplement to the original expert report and not a rebuttal report under Rule 26(a)(2)(C), id. at 460 n. 7, and further, that the supplemental report was proper and would not be excluded, id. at 463.

As in the Tucker case, in this case Ms. Sisolak does not drastically revise the analysis of her original report. In her Supplemental Report, Ms. Sisolak does not discuss the vast majority of the matters set forth in her original report, instead focusing only on certain limited matters related to Table 13, which is discussed on Pages 13-15 of her original report.

Moreover, the issues Ms. Sisolak reviewed and conclusions reached in her Supplemental Report are fully consistent with the issues discussed and opinions she held in her original report. Indeed, her core conclusion/opinion—that Defendant hires women at a much higher rate than the rate at which it hires men, and that the difference in treatment is statistically significant—is precisely the same in both reports. Thus, this is not a circumstance discussed in the case law where the expert has drastically changed her opinions or introduced a new theory of the case. Rather, Ms. Sisolak has simply confirmed her original opinions by categorizing and grouping certain data somewhat differently from

her original report. As in the cases cited above, Ms. Sisolak has properly supplemented her report by taking into account several methodological criticisms leveled by the Defendant. This is entirely permissible, and disclosure was required under Rule 26(e)(1).

While Defendant makes much of the fact that Ms. Sisolak did not employ a Cochran-Mantel-Hansel ("CMH") statistical test in her original report, this fact does not convert her supplementation into a "sur-rebuttal." It is true that Ms. Sisolak's use of the CMH test was intended to model a similar analysis employed by Defendant's expert, Leonard Cupingood, Ph.D., in his critique of Ms. Sisolak's analysis, see Exb. 1 at 13-14 (report of Leonard Cupingood, Ph.D.);[1] however, nowhere in her Supplemental Report does Ms. Sisolak attack Dr. Cupingood's analysis or the soundness of his proposed methodology. Instead, Ms. Sisolak simply applies Cupingood's methodology and proposed variables to a more current data set, a data set needed to update her analysis in light of EEOC's allegation of on-going discrimination.[2] In so doing, Sisolak applied the CMH test to simply *confirm her original conclusion*, viz., that Defendant selects female applicants at a higher rate than male applicants at each stage of its hiring process, and that the disparity is statistically significant. She has now confirmed that conclusion. She has not offered a new conclusion regarding that issue. This is the same fact pattern presented to this Court in Tucker, where the expert conducted a test not previously reflected in his original report in order to confirm the conclusions in his original report. Id. at 461. See also Confederated Tribes v. Weyerhaeuser Co., No. CV 00-1693-PA, 2003 WL 23715981, at *1-2 (D. Or., Jan. 21, 2003)(permitting supplement after close of discovery using new analysis of market suggested by opposing party). In fact, the circumstances in this case are more favorable to a finding of proper supplementation, for unlike the present case, in Tucker (a) the expert's deposition had already been taken at the time of supplementation and (b) the discovery cut-off was much closer in time to the supplement than in this case.

Also, as was true in the Tucker case, in this case Ms. Sisolak analyzes the same basic evidence as in her original report. The data employed by Ms. Sisolak in the Supplemental Report consists of applicant/hire data generated by Defendant's recruiting department, and it is drawn from *the same database* as Ms. Sisolak analyzed in Table 13 of her original report, including all the same data elements/fields. The only difference between the data reviewed in the original and supplemental reports is the amount of data. The supplemental data set includes records of additional persons whose electronic records were not available to Defendant in its first production to EEOC because those persons had not yet applied for work. Such supplementation using the most current data is permissible and to be expected, especially in a case such as this one where the Government alleges on-going discrimination,

---

[1] Dr. Cupingood's description of his analytic techniques in his report was vague. See Exb. 1 at 13-14. It was not until his deposition on September 21, 2006, that the precise nature of his methodology and critique became clear to EEOC.

[2] The original data set included hiring data for late 2004 until September 2005. The new data set includes that data plus approximately 40,000 more applicant and hiring records for the period late 2005-early 2006.

which necessarily involves updating of statistics over time.

The mere fact that the data was in possession of EEOC at the time it produced the original Sisolak report does not, standing alone, bar its use in future supplemental reports. See Talbert v. City of Chicago, 236 F.R.D. 415, 420-24 (N.D. Ill. 2006)(holding supplemental use of documents possessed at time of original report to address criticism of original report permissible). That is particularly true in this case where Defendant delivered the updated data set to EEOC, containing **over 100,000** applicant records, approximately five business days before Ms. Sisolak's report was due. See Defendant Exb. C.[3] As suggested by common reason and reflected in Ms. Sisolak's Supplemental Report, see Defendant Exb. A, starting from scratch and preparing that quantum of completely raw data for analysis, doing the analytical computer programming necessary to conduct the analysis, and actually analyzing the data and committing the analysis to a writing is very labor-intensive and time-consuming. As discussed more fully below, it is highly unreasonable to expect that it be completed in such a short time span. Defendant's argument that the updated data set should have been in the original report is patently unreasonable and bootstraps on its own failure to seasonably supplement discovery owed to EEOC.

Thus, given that EEOC has properly supplemented the Sisolak report and, unlike the plaintiffs in Tucker, did so well-before the expert's deposition and almost two months before the close of expert discovery and the deadline for Rule 26(e)(1) supplementation, the five Southern States factors are inapplicable to this Motion. Nevertheless, if the Court determines that it will apply the factors set forth in Southern States or analogous factors in Tucker, id. at 461, those factors clearly favor denial of Defendant's motion.

There was no surprise to Defendant. EEOC disclosed Ms. Sisolak's Supplemental Report almost four weeks before her deposition date and almost two months before the close of discovery and Rule 26(e)(1) supplementation. Moreover, from an objective standpoint it is not tenable to allege surprise when Ms. Sisolak merely updated her report using the technique proposed and used by Defendant's own expert, Dr. Cupingood. Simply put, when a defense expert proposes an alternative statistical test, it is should be no surprise when the plaintiff's expert supplements her report using that test. In addition, it should be no surprise to Defendant that Ms. Sisolak would update her review by employing data Defendant itself compiled and provided to EEOC, data provided to EEOC at such a late hour that Defendant could not reasonably expected EEOC to include it in the original report.

Similarly, there has been no prejudice, and there is a clear ability to cure any alleged surprise. As discussed, Ms. Sisolak's Supplemental Report was disclosed so far in advance of her deposition and the close of discovery that Defendant will have every opportunity to interrogate her about it, as well as have its experts examine the Report. Defendant has not

---

[3] The undersigned counsel was out of the office on the day the new data set would have been delivered to EEOC, which was Friday, May 19th, and therefore was not even aware of having received the package until at least Monday, May 22nd or Tuesday, May 23rd.

shown that its experts are unavailable to examine the Supplemental Report, or that such unavailability would incurably interfere with the trial date in this case, which has yet to be set by the Court, or any other scheduling dates.[4] The fact that there may be some additional discovery of Ms. Sisolak's opinions in light of her Supplemental Report does not justify exclusion of her opinions. See Tucker v. Ohtsu Tire & Rubber Co., Ltd., 49 F. Supp.2d 456, 463 (D. Md. 1999)("To be sure, defendants would rather not undertake the time and expense of further discovery regarding [plaintiff expert's] opinions, but this alone is not sufficient to grant their motion.")

Thus, with regard to the first three Southern States factors—surprise, prejudice/cure, and disruption of trial—this case presents an even less persuasive argument for exclusion than the circumstances that supported this Court's denial of the motion to exclude supplemental expert testimony in Tucker. See id., 49 F. Supp.2d at 462-63 (permitting expert supplementation where supplementing expert had already been deposed and supplemental report issued 10 days before the close of discovery where trial date was not imminent and additional discovery after supplementation was contemplated by the Court).

Furthermore, the importance of the evidence in the Supplemental Report is extremely high, for it goes to the central issue in this case. The revised Table 13 statistical analysis examines Defendant's on-going hiring discrimination using the most recent data available and the technique suggested by Defendant's own expert to show a sex-discriminatory hiring pattern. Moreover, if the jury is persuaded by Dr. Cupingood's critique of Ms. Sisolak's original report, such as his argument that in Table 13 she should have divided the hiring data into subgroups by time, position and geography, then Sisolak's supplemental analysis becomes even more critical, as it demonstrates that applying Cupingood's methodology makes no material difference in the result and that the disparity in treatment between male and female candidates remains statistically significant. Thus, the fourth Southern States factor clearly supports permitting Ms. Sisolak's Rule 26(e)(1) supplementation.

Finally, the facts of this case clearly favor admissibility of Sisolak's supplemental testimony under the fifth Southern States factor, for they provide an even greater justification than previously found sufficient by this Court. See Tucker, 49 F. Supp.2d at 461-62. Contrary to Defendant's inflammatory allegation, EEOC has not engaged in any improper "ambush." As previously discussed, the Supplemental Report was disclosed far in advance of the

---

[4] While Defendant references three defense experts who purported to critique Ms. Sisolak's original report—Cupingood, Stockdale and Adler—Defendant omits the fact that only Cupingood and Adler critiqued Ms. Sisolak's statistical methodology in any way that has bearing on her Supplemental Report. Adler critiqued Ms. Sisolak's original Table 13 analysis only briefly, with the vast majority of his opinions dealing with either selection procedures issues not discussed by Sisolak or parts of the original Sisolak report that are not discussed in the Supplemental Report. Sisolak's supplemental analysis would not significantly alter Adler's opinions. As for Cupingood, EEOC disclosed to Defendant the now-refined data underlying the Supplemental Report, and there is no showing that Cupingood could not review that data using the technique he has already employed in this case. (In order to avoid a lengthy filing, EEOC has not attached the Stockdale or Adler reports, which are voluminous. If the Court wants to review those reports to verify that Ms. Sisolak's Supplemental Report would not have any appreciable effect on their opinions, EEOC will provide them.)

Sisolak deposition, the deadline for Rule 26(e)(1) supplementation, and the close of expert discovery. Indeed, the Supplemental Report was disclosed only 38 business days after Defendant's expert Cupingood fully explained his methodology in his deposition. Moreover, at that deposition Cupingood opined for the first time, in response to factual information presented during questioning (but already available in the data that was disclosed to Defendant), that he believed the original Table 13 sample used by Sisolak excluded too much data (due to deficiencies in Defendant's compilation of the data) to make any analysis statistically meaningful. The Supplemental Report addresses this incomplete data issue by looking to a more complete data set.

In order to evaluate the new data set, Ms. Sisolak analyzed records containing over 100,000 applicants across more than 30 markets in the United States dividing them into 90-day periods, resulting in 1880 discrete selection groupings to be analyzed separately and then re-aggregated. Moreover, Ms. Sisolak had to sex-classify over 28,000 applicants for whom Defendant neglected to provide gender data. This is a time consuming task exacerbated by the fact (1) that at all relevant times Ms. Sisolak has been the only EEOC staff labor economist available to EEOC field offices for expert testimony services, (2) that she therefore testifies in EEOC cases throughout the country, (3) that at the time of her engagement in this case she was working extensively on other EEOC class litigation, and, (4) that unlike Dr. Cupingood, Ms. Sisolak does not have a staff of experts supporting her with data processing, analytical programming and other services. EEOC did not engage in improperly-motivated delay and disclosed the Supplemental Report to Defendant well-before the relevant dates in this case. Accordingly, the Supplemental Report and testimony should be permitted. See Tucker, 49 F. Supp.2d at 461 (concluding that while new test discussed in supplemental report might have been conducted more quickly in six-month interval between expert's deposition and disclosure of supplemental report, delay was not excessive or motivated by improper intent). See also Golden Nugget, Inc. v. Chesapeake Bay Fishing Co., L.C., No. 03-1339, 2004 WL 691429, at *2-4 (4th Cir., Apr. 2, 2004)(applying Southern States factors, finding expert testimony first disclosed at trial was properly admitted, and noting as significant the fact that opposing party did not avail itself of opportunity to cure surprise by seeking continuance to depose expert)(unpublished decision attached as Exhibit 5).

For the foregoing reasons, EEOC respectfully requests that Defendant's Motion be denied. For purposes of the hearing in this matter, my telephone number is (410) 962-4628.

Sincerely,

Ronald L. Phillips
Trial Attorney

cc:   Aliza Karetnick, Esq.
      David Landau, Esq.