# EXHIBIT BB

SUPPLEMENTAL REPORT ON THE HIRING OF MEN
BY LA WEIGHT LOSS CENTERS, INC.

Elvira Sisolak
Senior Economist

Research and Analytic Services
Office of General Counsel

Equal Employment Opportunity Commission
Washington, D.C.

November 14, 2006

Steps in the Hiring Process

In my report dated May 25, 2006, I presented a section with the above title. In that section, Table 13 presented data from a computer file of data collected by LA Weight Loss for the last quarter of 2004 and most of 2005. There were 54,929 persons on that file. In this supplemental report, I will expand that analysis based on a more recent file containing the same type of information for about 100,220 applicants. It included persons who applied through the second quarter of 2006. On the computer file, LA Weight loss identified the sex of 63,792 persons. By relying on the same procedure I used to identify the sex of applicants in Table 10 of my earlier report, I was able to identify the sex of 28,427 additional applicants on this file. Thus, 92,219 applicants were sex-identified, or 92 percent of the total. Men accounted for 19.4 percent of these applicants.

For each of the applicants, I determined their last step in the hiring process. Some had not completed the process, including those who passed pre-screening but had not advanced further, those whose last step was the scheduling of an interview, and a portion of those who had not responded by mid-2006 to attempts at contacting them. In supplemental Table 13, which follows, the rows defined by words in all upper case letters are those I calculated from the data. The other rows of data are from the computer file.

Table 13. Final Step in the Hiring Process – All Sex-Identified Applicants

|  | Total | Women | Men | |
|---|---|---|---|---|
| Final Step in Process |  | Number | Number | % of Total |
| Total Applicants | 92,219 | 74,321 | 17,898 | 19.4 |
|  |  |  |  |  |
| Rejected Prior to Prescreening | 42,148 | 28,442 | 13,706 | 32.5 |
|  |  |  |  |  |
| PRESCREENED | 20,630 | 18,540 | 2,090 | 10.1 |
| Prescreened Rejected | 18,429 | 16,502 | 1,927 | 10.5 |
| Prescreened Good | 2,201 | 2,038 | 163 | 7.4 |
|  |  |  |  |  |
| APPLICANT HALTED PROCESS | 18,094 | 16,641 | 1,453 | 8.0 |
| Did Not Respond | 15,420 | 14,133 | 1,287 | 8.3 |
| No Longer Interested | 2,674 | 2,508 | 166 | 6.2 |
|  |  |  |  |  |
| Interview Scheduled | 6,200 | 5,815 | 385 | 6.2 |
|  |  |  |  |  |
| INTERVIEWED | 5,147 | 4,883 | 264 | 5.1 |
| Rejected at Interview | 2,582 | 2,393 | 189 | 7.3 |
| OFFERED JOBS | 2,565 | 2,490 | 75 | 2.9 |
| Declined | 427 | 412 | 15 | 3.5 |
| Hired | 2,138 | 2,078 | 60 | 2.8 |

The first step in the process is the rejection of applicants on the basis of applications and resumes alone, meaning they were rejected prior to pre-screening. The applications and resumes of the applicants were reviewed by LA Weight Loss staff and 46 percent were rejected. Almost one-third of the rejected applicants were men. I conducted a Fishers Exact test to determine if the

1

difference between the number of men and women who were rejected and those who were allowed to pass to the next step of the process was statistically significance. The result shows a probability of much less than .05, the usual lower cutoff to determine statistical significance. Thus, I conclude that men were rejected at a higher rate than women and that the difference could not be expected to occur by chance. The exact probabilities for this statistical test and all others in my original report and this supplemental report are shown in Appendix C, which is attached to this report.

The other very distinct step in the process is the interview stage. Men accounted for 5.1 percent of the employees who were interviewed and 2.9 percent of those offered jobs. This difference is also statistically significant. I also compared the rate of offers for men to their 19.4 percent application rate for all applicants. This difference, too, is statistically significant.

Analysis of the other steps in the hiring process is more difficult because most of these applicants had not completed the process by mid-2006. Subtracting the 42,148 applicants rejected on the basis of their documents alone from the 92,219 total yields 50,071 applicants who advanced beyond the initial stage of application/resume review at some time during the period. Men accounted for 8.4 percent of those who advanced (4,192 applicants). This proportion is smaller than the proportion of men among applicants who were rejected at the telephone pre-screening stage (10.5 percent), but larger than those who halted the hiring process (8.0 percent), those who had interviews scheduled (6.2 percent), or those interviewed (5.1 percent).

Using the 8.4 percent figure as the pool of men available for each of these steps in the hiring process, the exact binomial statistical test first yields the conclusion that men were excluded from the hiring process by telephone pre-screening at a rate that was higher than the rate at which they were available for such pre-screening and that the difference was statistically significant. The difference between those applicants who halted the process and those who advanced beyond the initial stage of screening based solely on their documents was not statistically significant. But the difference between those available applicants and those interviewed was statistically significant and showed that men were interviewed at lower rates than would be expected. Thus, I conclude that men did not remove themselves from the hiring process at a rate substantially different from that of women but that LA Weight Loss rejected men at a higher rate than women in telephone pre-screening. In addition, there were fewer men than expected for whom the last step in the process was being scheduled for an interview or being interviewed. Comparisons of these four steps in the hiring process with the 19.4 percent total applicant rate for men yields the same conclusion related to the steps of rejections at telephone pre-screening, scheduling of interviews, and interviews. But the statistical comparison yields the conclusion that men halted the application process at a rate that was significantly lower than expected.

The following table shows the data from Table 13 separately for those applicants whose sex was identified by LA Weight Loss and those whom I identified on the basis of their first names. The patterns exhibited in each of these tables are very similar to those in Table 13, above.

2

Table 13 (expanded). Final Step in the Hiring Process – Applicants Whose Sex was Identified by LA Weight Loss and Those I Identified by Their First Names

| Applicants Whose Sex was Identified by LA Weight Loss | | | | |
|---|---|---|---|---|
| Final Step in Process | Total | Women | Men | |
| | | Number | Number | % of Total |
| Total Applicants | 63,792 | 51,094 | 12,698 | 19.9 |
| Rejected Prior to Prescreening | 32,789 | 22,516 | 10,273 | 31.3 |
| PRESCREENED | 13,457 | 12,134 | 1,323 | 9.8 |
| Prescreened Rejected | 11,883 | 10,660 | 1,223 | 10.3 |
| Prescreened Good | 1,574 | 1,474 | 100 | 6.4 |
| APPLICANT HALTED PROCESS | 11,311 | 10,512 | 799 | 7.1 |
| Did Not Respond | 9,197 | 8,517 | 680 | 7.4 |
| No Longer Interested | 2,114 | 1,995 | 119 | 5.6 |
| Interview Scheduled | 2,467 | 2,353 | 114 | 4.6 |
| INTERVIEWED | 3,768 | 3,579 | 189 | 5.0 |
| Rejected at Interview | 2,220 | 2,071 | 149 | 6.7 |
| OFFERED JOBS | 1,548 | 1,508 | 40 | 2.6 |
| Declined | 374 | 363 | 11 | 2.9 |
| Hired | 1,174 | 1,145 | 29 | 2.5 |
| Applicants Whose Sex I Identified from First Names | | | | |
| Final Step in Process | Total | Women | Men | |
| | | Number | Number | % of Total |
| Total Applicants | 28,427 | 23,227 | 5,200 | 18.3 |
| Rejected Prior to Prescreening | 9,359 | 5,926 | 3,433 | 36.7 |
| PRESCREENED | 7,173 | 6,406 | 767 | 10.7 |
| Prescreened Rejected | 6,546 | 5,842 | 704 | 10.8 |
| Prescreened Good | 627 | 564 | 63 | 10.0 |
| APPLICANT HALTED PROCESS | 6,783 | 6,129 | 654 | 9.6 |
| Did Not Respond | 6,223 | 5,616 | 607 | 9.8 |
| No Longer Interested | 560 | 513 | 47 | 8.4 |
| Interview Scheduled | 3,733 | 3,462 | 271 | 7.3 |
| INTERVIEWED | 1,379 | 1,304 | 75 | 5.4 |
| Rejected at Interview | 362 | 322 | 40 | 11.0 |
| OFFERED JOBS | 1,017 | 982 | 35 | 3.4 |
| Declined | 53 | 49 | 4 | 7.5 |
| Hired | 964 | 933 | 31 | 3.2 |

The statistical results from the analyses comparing applicants whose sex was identified by LA Weight Loss are shown in Appendix C. Men accounted for 19.9 percent of all applicants and 7.8 percent of the applicants available after the rejection of applicants based on their applications/resumes. The conclusions regarding statistical significance are identical to those in the analyses of all sex-identified applicants with one exception -- the difference between the number of male applicants who halted the application process (7.1 percent) and the 7.8 percent who passed the review based on applications/resumes is statistically significant. Thus, the numbers of men rejected on the basis of their applications/resumes and the number rejected at pre-screening are higher than expected and the differences are statistically significant. The number of men who reached each of the other points in the process (applicants halted process, interview scheduled, and interviewed) was lower than expected and the results are statistically significant. This applies whether the comparative group is the percent of men who passed the application/resume step or the percent of men among all applicants who were sex-identified by the company.

I also replicated Dr. Leonard Cupingood's analysis related to Table 13 of my original report on the data set discussed in the previous pages of this report. Relying on his factors of job sought, timing, and geography, I ran a Cochran-Mantel-Hansel analysis (CMH). The technique creates a separate table for women and men offered jobs and rejected at interview for each job in each market in each calendar quarter of each year. It created 1,880 tables, 61 percent of which were empty because no one was interviewed. Statistically combining the results of the statistical tests, as in Dr. Cupingood's analysis, yields a probability of less than .0001. This probability is much smaller than .05 and is significant. This analytical technique includes only a small portion of the available data. In addition to excluding all tables with no persons interviewed, the CMH test excludes those tables that have a zero row or column (for example, no persons who were rejected or no men who were offered jobs or rejected). Of the 734 tables that include at least one person, only 17 percent do not have a zero row or column and are, therefore, retained in the analysis. In total, this analysis relies on only 126 of the possible 1,880 tables (seven percent).

The same analysis using only the data in which the applicants were identified by sex by LA Weight Loss yields the same similar result, with a probability of less than .0001, again less than the lower cutoff of .05 for statistical significance. While the value of analyses that exclude so much data can be argued, the results of statistically significant differences do not disagree with any of my analyses of the data in Table 13 of this report.

List of Cases

The following page is an updated list of cases in which I have testified in the past four years.

_____          Nov. 14, 2006
Elvira Sisolak

4

Deposition and Trial Testimony of Elvira Sisolak in the Four Years Prior to June 1, 2006

EEOC v. Nicholas Markets, Inc., (Civil Action No.: 00-4734(AMW), D. N.J.). Deposition (June 2002 and August 2002). Case settled prior to trial.

EEOC v. Watkins Motor Lines, Inc., (Case No. C-3-02-505, S.D. Oh.). Deposition (January 2004). Summary Judgment in favor of Defendant. Affirmed on appeal; court did not reach statistical analysis.

EEOC v. Heartway Corporation d/b/a York Manor Nursing Center (CIV-003-534-WH, E.D. Ok.). Deposition (May 2004). Trial (August 2004). Jury verdict in favor of EEOC affirmed on appeal.

EEOC v. Allstate Insurance Company (Civil Action No. 4:04CV01359 ERW, Eastern District. Mo.). Deposition (January 2006). Summary Judgment decision on prima facie case of disparate impact in favor of EEOC. Issues of fact remain as to whether Defendant can establish a defense of a reasonable factor other than age.

APPENDIX C
Exact Probabilities

Table 11. Unsuccessful Applicants and Hires from the Payroll File

|  | Fishers Exact Results | Exact Binomial Results |
|---|---|---|
| Counselors | $2.47 \times 10^{255}$ | less than $1.0 \times 10^{100}$ |
| Medical Assistants | $1.44 \times 10^{19}$ | $1.0 \times 10^{21}$ |
| Assistant Managers | $9.47 \times 10^{115}$ | less than $1.0 \times 10^{100}$ |
| Managers | $9.08 \times 10^{161}$ | less than $1.0 \times 10^{100}$ |
| Area Supervisors | $4.02 \times 10^{9}$ | $2.37 \times 10^{9}$ |
| Total | less than $1.0 \times 10^{300}$ | less than $1.0 \times 10^{100}$ |

Unsuccessful Applicants and Hires from the Personnel Files

|  | Fishers Exact Results | Exact Binomial Results |
|---|---|---|
| Counselors | $3.87 \times 10^{216}$ | less than $1.0 \times 10^{100}$ |
| Medical Assistants | $1.46 \times 10^{20}$ | $2.12 \times 10^{19}$ |
| Assistant Managers | $7.33 \times 10^{82}$ | $9.26 \times 10^{65}$ |
| Managers | $3.99 \times 10^{118}$ | $9.30 \times 10^{99}$ |
| Area Supervisors | $4.86 \times 10^{13}$ | $7.24 \times 10^{13}$ |
| Total | less than $1.0 \times 10^{300}$ | less than $1.0 \times 10^{100}$ |

Table 13. Final Steps in the Hiring Process

All Sex-Identified applicants
   Rejected Prior to Prescreening and Offered Job/Rejected at Interview

|  | Fishers Exact Results | Exact Binomial Results |
|---|---|---|
| Rejected Prior to Pre-Screening | less than $1.0 \times 10^{300}$ | |
| Offers Compared to Rejected at Interview | $3.12 \times 10^{13}$ | |
| Offers Compared to All Applicants | | less than $1.0 \times 10^{100}$ |

   Comparison of Steps to Applicants Who Passed the Resume/Application Screening

|  | Fishers Exact Results | Exact Binomial Results |
|---|---|---|
| Pre-screened Rejected | | $1.28 \times 10^{22}$ |
| Applicant Halted Process | | not statistically significant |
| Interview Scheduled | | $5.12 \times 10^{11}$ |
| Interviewed | | $8.67 \times 10^{20}$ |

1

Comparison of Steps to All Applicants

|  | Fishers Exact Results | Exact Binomial Results |
|---|---|---|
| Pre-screened Rejected | | less than $1.0 \times 10^{100}$ |
| Applicant Halted Process | | less than $1.0 \times 10^{100}$ |
| Interview Scheduled | | less than $1.0 \times 10^{100}$ |
| Interviewed | | less than $1.0 \times 10^{100}$ |

Company-Sex-Identified Applicants   Fishers Exact Results  Exact Binomial Results
  Rejected Prior to Prescreening and Offered Job/Rejected at Interview

|  | Fishers Exact Results | Exact Binomial Results |
|---|---|---|
| Rejected Prior to Pre-Screening | less than $1.0 \times 10^{300}$ | |
| Offers Compared to Rejected at Interview | $2.37 \times 10^{9}$ | |
| Offers Compared to All Applicants | | $1.37 \times 10^{94}$ |

Comparison of Steps to Applicants Who Passed the Resume/Application Screening

|  | Fishers Exact Results | Exact Binomial Results |
|---|---|---|
| Pre-screened Rejected | | $1.79 \times 10^{22}$ |
| Applicant Halted Process | | .0016 |
| Interview Scheduled | | $1.67 \times 10^{10}$ |
| Interviewed | | $7.78 \times 10^{12}$ |

Comparison of Steps to All Applicants

|  | Fishers Exact Results | Exact Binomial Results |
|---|---|---|
| Pre-screened Rejected | | less than $1.0 \times 10^{100}$ |
| Applicant Halted Process | | less than $1.0 \times 10^{100}$ |
| Interview Scheduled | | less than $1.0 \times 10^{100}$ |
| Interviewed | | less than $1.0 \times 10^{100}$ |

2