# EXHIBIT KK

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

NORTHERN DIVISION

----------------------x
EQUAL EMPLOYMENT         : CIVIL ACTION
OPPORTUNITY              :
COMMISSION,              : NO. S02-CV-648
    Plaintiff,           :
                         :
KATHY KOCH,              :
    Intervenor/          :
    Plaintiff,           :
                         :
    v.                   :
                         :
LA WEIGHT LOSS,          :
    Defendant(s).        :
----------------------x

Thursday, January 27, 2005

    Videotaped deposition of MADELEINE BARTEL, held at the law offices of WOLF, BLOCK, SCHORR AND SOLIS-COHEN, LLP, 1100 North Market Street, Suite 1001, Wilmington, Delaware 19801, on Thursday, January 27, 2005, beginning at 11:00 a.m., on the above date, before Debra J. Weaver, a Federally Approved RPR, CRR, CSR of NJ (No. XI 01614) and Delaware (No. 138-RPR, Expiration 1/31/08), and a Notary Public of New Jersey, Pennsylvania and Delaware.

ESQUIRE DEPOSITION SERVICES
1880 John F. Kennedy Boulevard
15th Floor
Philadelphia, Pennsylvania 19103
(215) 988-9191

Page 110

1  MR. PHILLIPS: Objection.
2  Asked and answered.
3  Go ahead.
4  THE WITNESS: It may have
5  been in passing, not so formal,
6  not as structured.
7  BY MR. WETCHLER:
8  Q. Do you have a specific
9  recollection of anything like that?
10  A. In a phone conference, yes,
11  I believe I do.
12  Q. Okay. Okay. What was said
13  during that one phone conference?
14  A. And it wasn't just focused
15  on that. A number of topics. I
16  couldn't -- I couldn't give you a quote.
17  Alluded to the fact that we hire females,
18  we don't hire men.
19  Q. All right. So sitting here
20  today, you remember the conversation in
21  which Lynn said, we don't hire dicks, and
22  you remember another conference call in
23  which it was alluded to that we don't
24  hire men; is that right?

Page 111

1  A. Yeah. Yeah. Now, let me
2  say, I don't know the time frame of that
3  conference call, so I don't know if it
4  was before that incident or right after
5  when the three of us were on the phone.
6  I don't remember the time frame.
7  Q. Have you now described to me
8  all of the conversations that you had in
9  which Lynn Portlock was a participant in
10  which the subject of hiring or not hiring
11  men came up?
12  A. I think that was it. It was
13  cut and dry. Well, other than being told
14  to rescind the offer. Yeah.
15  Q. Other than Lynn Portlock,
16  during the time you worked at LA Weight
17  Loss, did anyone else say anything to you
18  about whether men -- let me start again.
19  Other than Lynn Portlock,
20  did anyone else at LA Weight Loss say
21  anything to you about the hiring of men?
22  A. Well, it would have been her
23  supervisor.
24  Q. Okay. When you say it would

Page 112

1  have been her supervisor, do you have a
2  specific recollection of a conversation
3  where Lynn's supervisor said something on
4  the subject of whether -- whether or not
5  men could or should be hired?
6  A. Not a specific.
7  Q. Is that -- is that the phone
8  conversation that you were just -- that
9  you just testified to a minute ago?
10  A. I believe -- I believe so,
11  yes.
12  Q. All right. So you believe
13  that in a phone conversation with Lynn
14  and her supervisor, the idea of not
15  hiring men was alluded to is what you
16  said, I think, a couple of minutes ago?
17  A. Yes. Yes.
18  Q. Other than the phone
19  conversation in which the subject of not
20  hiring men was alluded to, can you
21  remember anything that anyone else said
22  to you at LA Weight Loss about the hiring
23  of men other than Lynn Portlock?
24  A. I don't believe so.

Page 113

1  Q. Do you remember the name of
2  the fellow that you recommended for hire?
3  A. I wish I did. No. No, I
4  don't.
5  Q. And then I think you said it
6  was for a counselor position?
7  A. I believe it was a counselor
8  position.
9  Q. All right. Okay. Other
10  than the male counselor, the one male --
11  let me start again.
12  Other than the one male
13  counselor who you believe should have
14  been hired --
15  A. Correct.
16  Q. -- and wasn't, are you aware
17  of a single man who wasn't hired at LA
18  Weight Loss because he was a man?
19  A. Other than that individual?
20  Q. Yes.
21  A. No.
22  Q. Did you make any attempt to
23  hire a man at LA Weight Loss before Lynn
24  Portlock told you, we don't hire dicks?

29 (Pages 110 to 113)

ESQUIRE DEPOSITION SERVICES

Page 158

1    THE WITNESS: Boy, it sounds
2    like a direct quote from Lynn. I
3    spent quite a bit of time with
4    her.
5  BY MR. WETCHLER:
6    Q. I'm asking you whether you
7  remember today that it's a direct quote
8  from Lynn?
9    A. Boy. Yes.
10   Q. Okay. And, obviously, when
11 you -- at the time you signed your
12 declaration, you believed it was a direct
13 quote from Lynn; otherwise, you wouldn't
14 have signed it, I assume?
15   A. That's correct. Correct.
16   Q. All right. Now, if Ms.
17 Portlock did make that statement to you,
18 it would have been inaccurate because you
19 only interviewed one man, right?
20   A. That's correct.
21   MR. PHILLIPS: Objection.
22   Foundation. Calls for
23   speculation. Calls for
24   conclusion.

Page 159

1    MR. WETCHLER: Okay. You
2    can answer.
3    THE WITNESS: Well, I did
4    interview one male.
5  BY MR. WETCHLER:
6    Q. And one male only, correct?
7    A. Correct.
8    Q. That would make the
9  statement inaccurate, wouldn't it?
10   MR. PHILLIPS: Same
11   objection.
12   MR. WETCHLER: You can
13   answer.
14   THE WITNESS: Well,
15   logically it would make it
16   inaccurate. But in knowing the
17   linguistic skills of Lynn, and she
18   was a nice person, that would be
19   something typical.
20 BY MR. WETCHLER:
21   Q. All right. So it would be
22 something typical that she would say, but
23 it would be something inaccurate?
24   MR. PHILLIPS: Same

Page 160

1  objection.
2    MR. WETCHLER: You can
3    answer.
4    THE WITNESS: The plural and
5    the singular, yes.
6  BY MR. WETCHLER:
7    Q. Okay. All right. Directing
8  your attention to paragraph four of your
9  declaration, it references your attending
10 a training at the corporate offices in
11 Horsham.
12   A. Correct.
13   Q. Sitting here today, do you
14 have any recollection of the subject of
15 whether or not men could be hired coming
16 up at that corporate training in Horsham?
17   A. I remember Eileen coming in
18 and giving us the do's and the don't's,
19 and -- now that I'm remembering the
20 training. I don't know if it was a
21 direct, do not, will not, or avoid
22 hiring, like a gray area there. But the
23 implication certainly was there.
24   Q. Is the person who did the

Page 161

1  speaking on that subject Eileen?
2    A. Yeah.
3    Q. All right. So --
4    A. There were several people
5  training.
6    Q. So when it says here, "the
7  female instructor told the trainees" --
8    A. That's correct.
9    Q. -- the female instructor
10 you're referring to is Eileen Stankunas?
11   A. That's correct.
12   Q. At the time you signed your
13 declaration marked Bartel-6, were you
14 aware of anything that anyone said at LA
15 Weight Loss about not hiring men or on
16 the subject of hiring men that wasn't
17 included in the declaration?
18   A. That was not included? I
19 don't believe so.
20   Q. Now, at the training that
21 took place in Horsham, at which Eileen
22 indicated to you directly or indirectly,
23 I think you said it was -- you said what?
24   A. It was a group setting.