# EXHIBIT TTT

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

```
EQUAL EMPLOYMENT              :
OPPORTUNITY COMMISSION
         Plaintiff            :

    and                       :

KATHY C. KOCH                 :
    Plaintiff-Intervenor
    v.                        :   NO. WDQ-02-CV-648

LA WEIGHT LOSS CENTERS,INC:

         Defendant            :   Pages 1 - 56
                       -----------
```

Motions Hearing

Baltimore, Maryland

Tuesday, June 29, 2004

Reported by: Kathleen R. Turk, RPR-RMR

Page 38

1  time she makes reference to employment policies and
2  not toeing the line with respect to LA Weight Loss'
3  hiring practices, there's just no question in my mind
4  that as of March 12th, 1998, LA Weight Loss had a duty
5  to preserve documents relevant to the reasons why Koch
6  was fired, and this includes, but is not limited to,
7  the flip charts, the folders, the test scores, the
8  training aids, the notes from supervisors such as
9  O'Brian.
10         It's further clear to me that under the
11 duty that -- that because LA Weight Loss was under a
12 duty to preserve it, the next inquiry with regard to
13 the issue of spoliation as discussed in Thompson
14 versus HUD is whether or not they preserved it. And
15 even if there was some retention policy, which has
16 been described only in a conclusory fashion by Siegel
17 and was, apparently, unwritten, not to keep these
18 records or not to look at them as employee records,
19 that, as we learned from the Zubulake case, that
20 policy had to be suspended when there was a reason to
21 believe that these documents might be relevant to

Page 39

1  litigation.
2          And there's no question in my mind that
3  Koch's memo of March 8th of '98 put LA Weight Loss on
4  that notice.
5          Siegel's investigation, such as it was,
6  was too little too late, and we know for a fact that
7  O'Brian testified that she, in fact, had notes
8  regarding Koch's performance matters, and it was her
9  custom to keep them for a couple months.
10         Now, under Evidence Rule 406, that
11 custom would be admissible to show compliance
12 therewith, and if she did keep them for a couple of
13 months, that would have kept them around until later
14 in April or early May, even. And if, indeed, Siegel
15 had done any kind of investigation worthy of the name
16 of an investigation, they should have been able to be
17 found.
18         And there's, also, simply no evidence
19 of any reasonable effort to try to go out to the
20 centers where Koch performed her training and to
21 interview individuals about what she did or didn't do

Page 40

1  and to find out if these training aids that Koch
2  herself referred to in her March 8th memo as being
3  evidence of the fact that the reason why she got the
4  employee warning notice was pretextual. And if
5  there's any evidence this was done, it's absent from
6  the papers filed before me.
7          Furthermore, there appears to be no
8  instructions to O'Brian from counsel or from superiors
9  in LA Weight Loss to O'Brian to maintain her notes and
10 no memos to people other than Portlock and O'Brian to
11 look out and seek documents that I have found there
12 was a duty to preserve.
13         So I find, secondly, that not only was
14 there a duty to preserve, but that it was not complied
15 with.
16         Now, the next step is were these
17 documents relevant or not relevant in the spoliation
18 analysis that's discussed at Thompson versus HUD, and
19 I already found that the documents were not only
20 relevant, but they're critical because given the fact
21 that Portlock is the only person with real personal

Page 41

1  knowledge about why Koch was terminated, O'Brian is
2  secondhand and comes from Portlock, and Portlock's
3  knowledge or her memory from the information attached
4  as exhibits to these briefings can be charitably
5  described as vague, deficient, and faded. What we
6  have are conclusory allegations by Portlock that Koch
7  was deficient, and the particulars that could show
8  this -- the training aids, the flip charts, the test
9  scores, any contemporaneous notes that O'Brian may
10 have kept -- are gone.
11         So in this regard, these documents are
12 highly relevant, and the absence of these documents
13 make their clear prejudice to Koch.
14         Now, it's true that because the
15 documents were lost or destroyed that Koch would be
16 able to testify and provide secondary evidence as to
17 the contents of these writings under the original
18 writing rule, under Evidence Rule 1004, Subparagraph
19 1, but the problem is, is that if Portlock says that
20 they stand for something else, then under Evidence
21 Rule 1008, the competing versions go to the jury, and

Page 42

1  the jury's got to figure out just based upon its
2  ordinary assessment of credibility which version's
3  correct.
4        So a loss of these documents that were
5  not preserved is highly prejudicial to Koch because
6  they go to the central issue of whether or not she was
7  fired for a legitimate nondiscriminatory reason or for
8  pretext or for retaliation.
9        And for that reason, since the records
10 are highly relevant, the final test is whether or not
11 LA Weight Loss' failure to preserve these records was
12 done with the requisite state of mind to allow
13 spoliation to be found.
14        In this regard, as Thompson points out
15 at Page 101, we have three choices; bad faith or
16 knowing destruction, gross negligence, or simple
17 negligence. It's a sliding scale according to the
18 case law; the more culpable a state of mind, the less
19 the plaintiff, or the party that seeks a spoliation
20 instruction, the less relevance it must demonstrate.
21        But I've already found that the

Page 43

1  relevance is incredibly relevant and highly critical
2  and, therefore, there is no need to determine whether
3  there was bad faith and knowing destruction.
4        At a minimum, it was negligence, and I
5  find under the facts before me that it was grossly
6  negligent. If not grossly negligent, it was
7  negligent. And that this state of mind coupled
8  with -- this culpable state of mind coupled with the
9  high relevance of these documents, the clear duty to
10 preserve, and the clear evidence they did not do so, I
11 find that an adverse inference instruction would be
12 proper to give to the jury if this case goes to trial,
13 and I, therefore, recommend to Judge Quarles that he
14 give exactly such instruction, a spoliation
15 instruction, adverse inference instruction, to the
16 jury regarding the failure of LA Weight Loss to
17 preserve these documents.
18        Now, the question is whether or not
19 Rule 37 sanctions also should be imposed.
20        I find they should not for the
21 spoliation.

Page 44

1        The spoliation occurred years before
2  any discovery requests that were the subject of Koch's
3  Motion to Compel and my Order compelling discovery, so
4  that it would be improper under Rule 37 (b)(2), which
5  is the sanction that is available when a party fails
6  to obey a Court Order for production of discovery.
7        The destruction preceded by years --
8  the failure to preserve preceded by years the
9  discovery requests and the Court's subsequent Order to
10 produce. So while there may be cases where Rule 37
11 sanctions would be appropriate in addition to a
12 spoliation adverse inference, this is not one of them
13 because there is no evidence that the documents were
14 either destroyed or were not maintained after the
15 Court's Order that they be produced.
16        The remaining issue, therefore, is
17 whether or not the specific responses, the
18 supplemental responses, to the Interrogatories and the
19 document production requests that this Court Ordered
20 were deficient so that those responses would form an
21 independent basis under Rule 37 (b) to impose evidence

Page 45

1  preclusion sanctions, and I find that they are not.
2        The following Interrogatories are at
3  issue here, and only these, because these are the only
4  ones that are briefed; Interrogatory No. 6 that dealt
5  with employee retaliation complaints for the
6  Maryland/Delaware region from 1997 to the present,
7  Interrogatory 7 which dealt with all formal employee
8  complaints of retaliation in the same region for the
9  same time for the EEOC, Interrogatory 14 asking for a
10 description of agenda and contents of training
11 provided to corporate trainees, or trainers, in '97
12 and '98, and Interrogatory 17 asked to describe
13 complaints of employees of LA Weight Loss regarding
14 new hire policies.
15        As this Court pointed out in Lee versus
16 Flagstaff Industries, and as Ms. White's preliminary
17 comments indicate, Interrogatories serve a function,
18 but it's a limited function. They are not the vehicle
19 for follow-up questions.
20        The reasons stated in the Court's
21 original Motion to Compel, or Order to Compel, against