# EXHIBIT VVV

LEXSEE 1993 US APP LEXIS 20836



Analysis
As of: Mar 05, 2007

### THEODORE J. COKER, Plaintiff-Appellant, v. CHARLESTON COUNTY SCHOOL DISTRICT, Defendant-Appellee.

### No. 92-1589

### UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

*1993 U.S. App. LEXIS 20836*

**July 14, 1993, Argued**
**August 16, 1993, Decided**

**NOTICE:** [*1] RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the District of South Carolina, at Charleston. C. Weston Houck, District Judge. (CA-84-2162-2)

**DISPOSITION:** AFFIRMED

**COUNSEL:** Argued: Bruce Richard Lerner, BREDHOFF & KAISER, Washington, D.C., for Appellant.

Argued: Alice F. Paylor, ROSEN, ROSEN & HAGOOD, P.A., Charleston, South Carolina, for Appellee.

On Brief: Robert H. Chanin, BREDHOFF & KAISER, Washington, D.C.; Richard Mark Gergel, W. Allen Nickles, III, GERGEL, BURNETT, NICKLES & GRANT, Columbia, South Carolina, for Appellant.

On Brief: Robert N. Rosen, ROSEN, ROSEN & HAGOOD, P.A., Charleston, South Carolina, for Appellee.

**JUDGES:** Before NIEMEYER, HAMILTON, and WILLIAMS, Circuit Judges. Judge Hamilton wrote the opinion, in which Judge Niemeyer and Judge Williams joined.

**OPINION BY:** HAMILTON

**OPINION: OPINION**

HAMILTON, Circuit Judge:

Plaintiff-appellant, Theodore Coker (Coker), filed a complaint in the United States District Court for the District of South Carolina alleging violations of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e* [*2] et seq. n1 The two claims pertinent to this appeal are Coker's claim that the defendant-appellee, Charleston County School District (CCSD), engaged in a pattern or practice of racial discrimination and failed to hire him as principal of St. Andrews Elementary School because of his race. The district court granted the CCSD's motion for summary judgment on Coker's pattern or practice claim and the case proceeded to trial on Coker's disparate treatment claim. After a bench trial, the district court entered its findings of fact and conclusions of law. The district court found that Coker had not demonstrated that

the CCSD discriminated against him on account of race. Finding no error in the judgment entered below, we affirm.

> n1 In his original complaint, Coker also asserted claims under the Equal Protection Clause and *42 U.S.C. § 1981.* He subsequently abandoned these claims.

I

Prior to 1951, the schools in Charleston County, South Carolina were divided into twenty-one separate [*3] school districts. In 1951, these twenty-one school districts were grouped into eight school districts, which until 1967 existed as separate entities with each responsible for its own administrative functions. In 1967, the South Carolina General Assembly enacted Act 340 (1967), which created the CCSD and recast the eight separate school districts into "constituent" districts within the CCSD. n2

> n2 The eight "constituent" school districts are: (1) Moultrie School District No. 2; (2) St. James Santee School District No. 1; (3) St. Andrews District No. 10; (4) St. John's School District No. 9; (5) St. Paul's School District No. 23; (6) James Island School District No. 3; (7) River School District No. 4; and (8) School District No. 20.

In 1961, Coker was employed by the CCSD as a science teacher. Thereafter, in 1971, Coker was appointed Assistant Director of Middle Schools for the CCSD and served in that capacity until 1973. For the 1973-74 school year, Coker served as the language arts consultant for the CCSD. In [*4] 1974, Coker was appointed Career Education Consultant for the CCSD.

In early 1982, in response to budget constraints, Coker was informed that his position as Career Education Consultant was being abolished effective July 1, 1982. Thereafter, Coker was informed that he should apply for other administrative positions if he desired to stay with the CCSD. Deputy Superintendent Dr. Ronald A.

McWhirt wrote Coker on April 14, 1982:

> As you are aware, the Charleston County Board of Trustees voted to abolish your position at its regularly scheduled meeting on March 22, 1982. Therefore, you will not receive a contract for the 1982-83 school year. . . .

> You have a good performance record with the school district and I would like to assist you in finding another position. Please make an appointment with me in the next few days so we may discuss your career plans.

In the spring and summer of 1982, Coker applied for four positions with the CCSD, including the position of principal at St. Andrews Elementary School. The selection of school principals in the CCSD is governed by Act 340, and an amendment thereto, Act 721 (1978) (the Act). The Act requires that the selection of school [*5] principals be made by the CCSD Board from the three qualified individuals recommended by the board of trustees of the constituent school district in which the particular school is located. n3

> n3 The Act does not prohibit the submission of more than three qualified individuals for a principal's position.

In 1982, the CCSD Board utilized a "post" and "bid" procedure for the selection of principals. Whenever there was a vacancy for a principal's position, the CCSD would announce the opening and request interested individuals to apply for the position to be filled. Generally, the applications were screened by two officials: the CCSD's Director of Education for the appropriate level of instruction and the area superintendent for the constituent school district in which the position was located. The successful candidates from the initial screening process were interviewed by the constituent school district board. The constituent school district board would then submit the names of the candidates to the CCSD Board. The [*6] names recommended to the CCSD Board would then be forwarded to the Superintendent of Education for the

1993 U.S. App. LEXIS 20836, *6

CCSD, who would either personally interview or designate officials of his staff to interview the candidates. After those interviews, the Superintendent of Education for the CCSD would recommend one candidate for appointment to the CCSD Board. If the CCSD Board chose not to act on that recommendation or appoint any of the individuals recommended by the constituent school district board, it would request the constituent school district board to submit additional names for consideration. The CCSD Board also had a policy that provided if the constituent school district board chose to rank the names it recommended to the CCSD Board, the CCSD Board would confer with the constituent school district board before it selected a candidate that had not been ranked first by the constituent school district board.

Seventeen individuals applied for the job of principal at St. Andrews Elementary School and each was screened by Dr. Billie Holladay, then Director of Elementary Education for the CCSD, and William Jefferson, then Area Superintendent for St. Andrews Constituent District No. 10. Seven [*7] persons were recommended to be interviewed by the Board for St. Andrews Constituent District No. 10. At that time, only three individuals served on the Board for St. Andrews Constituent District No. 10. On the date of the interviews for the position of principal at St. Andrews Elementary School, only two Board for St. Andrews Constituent District No. 10 members, Nathaniel Mitchell and Barbara Gilchrist, were present. After interviewing the seven applicants, Mitchell and Gilchrist each made their recommendations known to Jefferson. Mitchell's recommendations were, in priority order: (1) Coker; (2) Floyd Funderburg; (3) Martha Brailsford; and (4) John Allen. Gilchrist's recommendations were, in priority order: (1) Funderburg; (2) Coker; (3) Allen; and (4) Brailsford. On May 19, 1982, the Board for St. Andrews Constituent District No. 10 submitted these four names, instead of the customary three, to the CCSD Board. n4

> n4 At the request of Mitchell, Jefferson contacted Anderson, the absent member of the Board for St. Andrews Constituent District No. 10, to determine if he had any preference among the candidates. Anderson stated that he preferred Coker.

[*8]

During the spring and summer of 1982, the CCSD was going through a transition process because Derthick had resigned as Superintendent, effective June 30, 1982, and McWhirt had been selected to succeed him. Derthick and McWhirt conferred regarding the St. Andrews Elementary School principalship appointment. Because neither of them knew Funderburg personally, they obtained further information concerning him from Edward O'Sheasy, the Associate Superintendent for Personnel for the CCSD. Derthick and McWhirt were informed that Funderburg had been a teacher in an elementary school for several years and then had served as Assistant Principal at Lambs Elementary School for four years. They also learned that he was highly recommended by Don Beers, the Principal of Lambs, John Halfacre, the Acting Principal of Lambs during one of the years in which Funderburg served as Assistant Principal, and George McCracken, the Area Superintendent for the constituent district in which Lambs was located. O'Sheasy, Derthick, and McWhirt determined that Funderburg was the most qualified applicant for the position. n5 On June 14, 1982, O'Sheasy advised the CCSD Board that the Board for St. Andrews Constituent [*9] District No. 10 recommended four applicants, Coker, Funderburg, Allen and Brailsford, with Coker having top priority. O'Sheasy, however, recommended, with the approval of both Derthick and McWhirt, that Funderburg be appointed as Principal of St. Andrews Elementary School. By a unanimous vote, the CCSD Board, which included a black woman, appointed Funderburg as the Principal of St. Andrews Elementary School. n6

> n5 As a result of his failure to interview or designate officials to interview the recommended candidates, Derthick did not act in compliance with the "post" and "bid" procedure.

> n6 This also was not in technical compliance with the CCSD Board policy which provided that, if the CCSD Board did not select the first choice of a constituent board, it would confer with the constituent board prior to selecting a principal. When the CCSD Board selected Funderburg, it did not confer with the Board for St. Andrews Constituent District No. 10.

1993 U.S. App. LEXIS 20836, *9

In the spring of 1982, the CCSD announced that the position of [*10] Principal of Minnie Hughes Elementary School was vacant and requested applications to fill that position. Minnie Hughes Elementary School is a rural school located about an hour outside the City of Charleston in St. Paul's Constituent School District No. 23. Only three individuals applied for this position and the Board for St. Paul's Constituent School District No. 23 recommended all three persons to the CCSD Board. The CCSD Board did not find any of these three individuals qualified for the position and rejected all three names. The CCSD Board then requested the Board for St. Paul's Constituent School District No. 23 to submit further applicants for consideration. When the same three names were resubmitted, the CCSD Board determined that it would appoint an Acting Principal to perform the duties of Principal at Minnie Hughes Elementary School. Because of his qualifications, Coker was appointed as Acting Principal at Minnie Hughes Elementary School for the school year 1982-83. Prior to the termination of his assignment as Acting Principal of Minnie Hughes, Coker applied for, and was appointed to, the position of Principal of E.B. Ellington Elementary School, another school located [*11] in St. Paul's Constituent School District No. 23. At the beginning of the 1991-92 school year, Coker was administratively moved to the principalship of Schroeder Middle School, which is located in St. Paul's Constituent School District No. 23. Since 1961, Coker has continuously been employed in various positions by the CCSD. In the first cause of action of his amended complaint, Coker alleged, inter alia, that the CCSD's failure to appoint him to the principalship at St. Andrews Elementary School in 1982 was "part of a pattern and practice of racial discrimination in violation of Title VII of the Civil Rights Act of 1964." (Joint Appendix (J.A.) 43). In the second cause of action of his amended complaint, Coker alleged that the CCSD's failure to appoint him to the principal's position at St. Andrews "constituted disparate treatment against [him] on the basis of his race," also in violation of Title VII. (J.A. 44). Prior to trial, the CCSD moved for summary judgment.

In response to the CCSD's motion for summary judgment on the pattern or practice claim, n7 Coker presented the deposition of his expert, Dr. David Peterson, who opined that blacks were routinely appointed as principals [*12] of schools that have predominately black enrollments, while whites are routinely appointed as principals of

schools which have predominately white enrollments. This opinion was not based on the racial composition of the group of individuals applying for a specific position, or the relative qualifications of those individuals, but rather simply on the assumption that the racial composition of the applicant pool remained constant.

> n7 The CCSD conceded before the district court that it was not entitled to summary judgment on the disparate treatment claim.

Coker also presented anecdotal evidence in response to the CCSD's motion for summary judgment on the pattern or practice claim. William Gathers testified that in 1970 or 1971, a white principal told him not to apply to a white school because the community would not accept him. Benjamin Powers testified that he did not apply for certain principal positions in the early 1970s because at that time black principals really were not assigned to white schools. In addition, [*13] Powers testified that in 1982, when the school at which he had been principal was being closed, Derthick told him about several predominately black schools which needed principals, but did not mention the opening at St. Andrews Elementary School, which Powers mistakenly believed to have a predominately white student body. n8 Finally, Coker testified in his deposition that he believed every black person who was a principal in a predominately black school was the victim of racial discrimination. He further testified that he had no other direct knowledge of any racial discrimination by the CCSD.

> n8 St. Andrews Elementary School was sixty-eight percent black in 1982.

The district court granted the CCSD's motion for summary judgment as to the pattern or practice claim, opining that "although the statistical evidence suggests that black principals are assigned to predominately black schools and white principals are assigned to predominately white schools, at a rate greater than norm, this evidence buttressed only by [*14] the testimony of plaintiff's expert and two former employees is not sufficient to establish a pattern or practice of district-wide discrimination." (J.A. 15).

The disparate treatment claim was tried before the district court for four days in December 1991. On April 17, 1992, the district court issued its findings of fact, conclusions of law, and order, in which it concluded that Dr. Coker "failed to meet his burden of showing that the CCSD intentionally discriminated against him on the basis of his race" when it rejected his application for the principalship at St. Andrews. (J.A. 35). Coker appeals.

II

Coker's first claim on appeal is that the CCSD engaged in a pattern or practice of racial discrimination in the selection of its principals. The district court granted the CCSD's motion for summary judgment on this claim, opining that "although the statistical evidence suggests that black principals are assigned to predominately black schools and white principals are assigned to predominately white schools, at a rate greater than norm, this evidence buttressed only by the testimony of plaintiff's expert and two former employees is not sufficient to establish a pattern or practice [*15] of district-wide discrimination." (J.A. 15).

A

Appellate review of the granting of a party's motion for summary judgment is de novo, and the court of appeals uses the same standards as the district court. Summary judgment is appropriate only if there are no genuine issues of material fact. *Charbonnages de France v. Smith, 597 F.2d 406 (4th Cir. 1979)*. An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)*. Factual disputes that are irrelevant or immaterial are properly excluded from consideration. Id. The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)*. This burden does not require the moving party to show evidence that proves absence of a genuine issue of material fact, but only to point out its absence. Id. The responding party may not rest upon mere allegations or denials, *Anderson, 477 U.S. at 248*, and [*16] summary judgment is appropriate if the responding party fails to show, under Rule 56, the existence of an element essential to that party's case. *Celotex, 477 U.S. at 322*. A mere scintilla of evidence supporting the case is

insufficient. *Anderson, 477 U.S. at 252*. The responding party is, however, entitled to have all reasonable inferences and questions of law resolved in his favor. *Id. at 255*.

B

To prevail in a case alleging that an employer has engaged in a pattern or practice of discrimination, the plaintiff ultimately must "'establish by a preponderance of the evidence that racial discrimination was the [employer's] standard operating procedure--the regular rather than the unusual practice.'" *Hazelwood School District v. United States, 433 U.S. 299, 307 (1977)* (quoting *Teamsters v. United States, 431 U.S. 324, 336 (1977))*. "Isolated or sporadic discriminatory acts by the employer [are] insufficient to establish a prima facie case of a pattern or practice of discrimination." *Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 875-76 (1984)*.

[*17]

The Seventh Circuit recently discussed the quantum of proof required to establish a pattern or practice claim:

> In Teamsters, for example, the government first presented statistical evidence showing grave disparities between the percentages of blacks in the population at large, those employed by the defendant, and those employed in particular positions . . . the government then supported this evidence with individual testimony recounting over forty specific instances of discrimination. . . . The court held that this evidence was sufficient to carry the government's burden of proof. . . .

> Other courts considering what evidence is necessary to show that an employer routinely and purposely discriminated have also required substantial proof of the practice. Thus, in *Chisholm v. United States Postal Service, 665 F.2d 482, 495 (4th Cir. 1981)*, twenty class members testified about individual discrimination to support the statistical evidence. Without significant individual testimony to support statistical evidence, courts have refused to

find a pattern or practice of discrimination.
. . . In *Ste Mari [v. Eastern R. Association,
650 F.2d 395, 406 (2d Cir. 1981)]*, [*18]
the court found seven individual
discriminatory acts coupled with
problematic and statistical evidence were
insufficient to support a finding of a
pattern or practice of discrimination. . . .

*King v. General Electric Co., 960 F.2d 617, 624 (7th
Cir. 1992)*. In King, the court went on to reverse the
judgment of the district court, entered after the rendering
of a jury verdict in favor of the plaintiffs, based on its
finding that the plaintiffs had failed to prove sufficient
anecdotal evidence to support a finding of a pattern or
practice of discrimination. *Id. at 627*. The evidence in
that case, albeit an age discrimination case, consisted of,
among other things:

> That the manager of the plant said that
> changes would have to be made,
> especially with the older employees,
> because they were set in their ways and
> not ready to take on new things. . . . He
> repeated similar statements from the
> witness stand. One of his deputies was
> more blunt: "We are going to get rid of
> these old farts and get some new blood in
> here." . . . Much of the rest of the
> anecdotal evidence had the same damning
> character.

*960 F.2d at 628* [*19] (Cudahy, J., dissenting).

The evidence in this case is markedly different from the
evidence in King. The only anecdotal evidence presented
to the district court was the deposition testimony of
Gathers, Powers, and Coker. This evidence, coupled with
limited--and fatally flawed--statistical evidence presented
by Peterson, n9 is insufficient to establish a pattern or
practice of discrimination, i.e. that racial discrimination
was the CCSD's standard operating procedure. Stated
differently, the evidence before the district court, taken in
a light most favorable to Coker, was closely akin to cases
involving isolated or sporadic instances of discrimination
as opposed to cases involving a pattern or practice of
discrimination. *Teamsters, 431 U.S. at 338; Chisholm,
665 F.2d at 495*. n10

n9 As the district court noted, Peterson's
statistics were flawed in that:

> He assumed that the racial
> percentages of the applicants
> remained constant even though he
> knew that assumption was false.
> He did not take into account the
> preferences of the applicants or the
> relative qualifications of those
> persons in rendering any of his
> opinions.

(J.A. 25).

[*20]

n10 In any event, in our view, the district
court essentially tried both causes of action in the
trial of the disparate treatment claim. After
allowing all the relevant pattern or practice
evidence in the trial of the disparate treatment
claim, the district court made the following
finding:

> CCSD offered the testimony and
> the opinions of Dr. Stephan
> Michelson, a statistical expert,
> through deposition. Dr. Michelson
> conducted a relatively simple test
> which relied on the applicant pool
> data to determine if there was any
> statistical significance or disparity
> in the hiring of blacks for the
> various principal and assistant
> principal positions filled by the
> CCSD from 1972-1985. The
> relevant labor pool for each hiring
> was the actual applicant pool for
> that position. Dr. Michelson
> determined that there was no
> statistical significance or disparity
> in the hiring of blacks to "black"
> schools, those with predominately
> black enrollments, or blacks to
> "white" schools, those with
> predominately white enrollments.
> The numbers of black persons
> chosen to fill the various openings

were well within the range of probability. The court finds Dr. Michelson's statistical studies and opinions persuasive and concludes that there is no statistical evidence to support Dr. Coker's claims.

(J.A. 25-26). Because the district court found no racial disparity in the hiring of blacks, and this finding is amply supported by the record, we believe that Coker's claim of a pattern or practice of racial discrimination in the hiring of principals cannot stand.

[*21]

III

Coker also argues that the district court erroneously entered judgment in favor of the CCSD on his disparate treatment claim. Coker initially argues that, if the district court found that he proved the pattern or practice claim, the burden of persuasion would have shifted to the CCSD to prove that Coker was not the most qualified applicant for the principal at St. Andrews Elementary School. See *Teamsters, 431 U.S. at 362* (Once a plaintiff has proven a pattern or practice claim, the burden of persuasion shifts to the employer to show that the plaintiff had not been a victim of discrimination.). This argument, of course, presupposes that Coker proved a pattern or practice claim. As discussed in part II, supra, Coker can make no such claim. In any event, even if the burden of persuasion shifted to the CCSD, the district court's findings clearly support the conclusion that Coker had not been the victim of racial discrimination.

The district court made the following finding:

    20. The CCSD's reason for selecting

Funderburg over Coker was that he had successful experience as a teacher in an elementary school and as an assistant principal in [*22] an elementary school, and Coker had no relevant experience in an elementary school setting. The court finds that Funderburg was better qualified for the position of principal of St. Andrews Elementary School, and that the CCSD had a legitimate, nondiscriminatory reason for selecting Funderburg over Coker. Coker offered no evidence of intentional racial discrimination in this selection process and has failed to show that racial discrimination was a motivating factor in the process. There is also no evidence that the reasons given by the CCSD for selecting Funderburg over Coker were pre-textual.

(J.A. 24). This finding--which is supported by substantial evidence in the record--creates an insurmountable obstacle to Coker's disparate treatment claim because Coker has the ultimate burden to prove that race was a motivating factor in the selection process. *St. Mary's Honor Center v. Hicks, 61 U.S.L.W. 4782* (U.S. June 25, 1993) (confirming that ultimate burden of a Title VII plaintiff is to demonstrate that race is the motivating factor for the employment action). Consequently, because race was not a motivating factor in the selection process, Coker's disparate [*23] treatment claim must fail.

IV

For the reasons stated herein, the decision of the district court is affirmed.

AFFIRMED