# EXHIBIT XXX

LEXSEE 2001 US DIST LEXIS 3574


Analysis
As of: Mar 05, 2007

JOAN BENIUSHIS, Plaintiff, v. KENNETH F. APFEL, Commissioner, Social Security Administration, Defendant.

No. 98 C 0395

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2001 U.S. Dist. LEXIS 3574*

March 26, 2001, Decided
March 27, 2001, Docketed

**DISPOSITION:** [*1] Plaintiff's motion to reconsider [49-1] denied. Defendant's motion for summary judgment [51-1] granted in part and denied in part. All of plaintiff's claims dismissed except the age and race discrimination claims as to the decisions not to select plaintiff for "Vacancy No. 17," "Vacancy No. 21," and the "May 5 Vacancy." Case referred to the assigned magistrate judge for the purpose of conducting a settlement conference within three weeks.

**COUNSEL:** For JOAN BENIUSHIS, plaintiff: Gary Donald McGuane, Attorney at Law, Aurora, IL.

For KENNETH F APFEL, defendant: Jack Donatelli, United States Attorney's Office, Chicago, IL.

**JUDGES:** William T. Hart, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** William T. Hart

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Plaintiff Joan Beniushis is a white female born in 1931 who was formerly employed by the Social Security Administration ("SSA"). Defendant is the Commissioner of SSA. Following prior rulings, plaintiff's claims are limited to denials of promotions and hostile treatment occurring from March 18, 1991 through July 31, 1991 based on (a) intentional age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), *29 U.S.C. § 621* [*2] et seq., (b) intentional sex and race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), *42 U.S.C. § 2000e* et seq., and (c) retaliation in violation of the ADEA and Title VII. See *Beniushis v. Appel [sic], 1998 U.S. Dist. LEXIS 19108, 1998 WL 852300* (N.D. Ill. Dec. 2, 1998 n1) ("Beniushis I"); *Beniushis v. Apfel, 2000 U.S. Dist. LEXIS 9318, 2000 WL 877021* (N.D. Ill. July 3, 2000 n2) ("Beniushis II"). Presently pending are (a) plaintiff's motion to reconsider Beniushis II and extend discovery and (b) defendant's motion for summary judgment.

n1 The ruling was issued on December 1, 1998. Westlaw uses the date entered on the docket.

n2 The ruling was issued on June 30, 2000.

On March 21, 1998, discovery in this case was set to close on August 27, 1998. On the date discovery was set

to close, plaintiff moved to compel discovery and extend the discovery deadline date. That motion was entered and continued pending ruling on defendant's motions to dismiss [*3] and for partial summary judgment which were filed the same day. Defendant's motions raised issues regarding the statute of limitations and exhaustion of administrative remedies. On December 1, 1998, the court ruled on defendant's motions, ordered the parties to attempt to resolve their discovery disputes, and extended discovery until January 22, 1999. See *Beniushis I, supra*. On January 21, 1999, plaintiff again moved to compel and extend discovery. The motion to compel was granted in part and discovery was extended to February 26, 2000. On February 8, 1999, the court sua sponte extended discovery until May 6, 1999. On April 29, 1999, plaintiff again moved to compel discovery. On May 18, that motion was withdrawn and discovery was extended to July 30, 1999. On July 22, 1999, plaintiff again moved to compel discovery. On July 29, that motion was denied without prejudice and discovery was extended to September 30, 1999. On September 28, 1999, plaintiff's motion to extend discovery was granted, extending discovery to October 27, 1999. On October 25, 1999, plaintiff filed her fourth motion to compel discovery. When presented on October 27, the fourth motion to compel [*4] was withdrawn and discovery was extended to December 28, 1999. On December 22, 1999, plaintiff's latest motion to extend discovery was granted, extending discovery to February 2, 2000. On February 2, plaintiff's latest motion to extend discovery was granted in part and discovery was extended to March 15, 2000. On March 15, on plaintiff's motion, discovery was extended to April 12, 2000.

On April 12, 2000, plaintiff presented her fifth motion to compel and a briefing schedule was set on that motion, a schedule that was subsequently extended on plaintiff's motion. On June 30, 2000, the fifth motion to compel was granted in part and defendant was ordered to provide the additional discovery within 30 days. See *Beniushis II, supra*. Discovery was not otherwise extended and no separate motion to extend discovery was filed. According to plaintiff's current motion, defendant provided the ordered materials on August 10, 2000. A status hearing was held on August 16, 2000. On August 31, 2000, more than two months after Beniushis II was issued and more than four months after discovery had previously been closed, plaintiff filed her current motion to reconsider Beniushis [*5] II and extend discovery. She seeks discovery broader than the particular promotions and time period set forth in Beniushis II. Plaintiff's motion was taken under advisement to be decided along with defendant's summary judgment motion that was being briefed. Following motions for extension of time filed by both parties, the final brief on summary judgment was filed on March 6, 2001.

Discovery in this case was originally set to close on August 27, 1998, more than two years prior to the filing of plaintiff's August 31, 2000 motion to extend discovery. In the interim, six of plaintiff's motions to extend discovery were granted, three times discovery was extended when plaintiff moved to compel discovery, n3 and one time the court sua sponte extended discovery. It is recognized that, to a substantial degree, the extensions were necessitated by defendant's delays in providing the requested materials. However, it must also be recognized that those delays were also caused, in substantial part, by plaintiff's failure to narrow her requests and identify particular promotions for which she had applied. But even ignoring the extensive delays that occurred prior to June 30, 2000, plaintiff [*6] does not explain why she waited two months after June 30 (and four months after the last close of discovery) to seek reconsideration of Beniushis II. The basis for her motion has nothing to do with the contents of the disclosures made on August 10, 2000. Based on plaintiff's dilatory motion, discovery will not be reopened. Even if the motion were to be considered on its merits, it would be denied. The issues raised and the evidence that is presently before the court do not justify extending or expanding discovery further. Plaintiff's motion for reconsideration and to extend discovery will be denied.

> n3 The court has not examined the texts of these motions nor any transcripts of the court hearings to determine if any contained express requests to extend discovery even if such a request was not included in the motion's caption.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. [*7] *Schneiker v. Fortis Insurance Co., 200 F.3d 1055, 1057 (7th Cir. 2000); Baron v. City of Highland Park, 195 F.3d 333, 337-38 (7th Cir. 1999)*. The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999);*

*Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). The nonmovant, however, must make a showing sufficient to establish any essential element for which she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999); *Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir. 1997). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 236 [*8] (7th Cir.), cert. denied, 515 U.S. 1104, 132 L. Ed. 2d 257, 115 S. Ct. 2249 (1995); *Covalt v. Carey Canada, Inc.*, 950 F.2d 481, 485 (7th Cir. 1991); *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852, 102 L. Ed. 2d 110, 109 S. Ct. 137 (1988). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); id. at 325 ("the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence [*9] of evidence to support the nonmoving party's case"). Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. Id. at 324. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. Id. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586; 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

*Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). [*10]

An employer's intent to discriminate may be proven by either direct evidence or the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), and its progeny. *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 2001 U.S. App. LEXIS 3333, 2001 WL 210178 *2 (7th Cir. 2001). Ordinarily, under the indirect method, plaintiff must first establish a prima facie case of discrimination or retaliation. If she does so, the burden shifts to defendant to offer a legitimate and nondiscriminatory or nonretaliatory reason for the adverse employment action. If defendant makes this showing, the burden shifts back to plaintiff to show that defendant's proffered reason was pretext. Id.; *Freeman v. Madison Metropolitan School District*, 231 F.3d 374, 379 (7th Cir. 2000). At all times, the burden of persuasion remains with plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999); *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir. 1998). To show that an employer's stated ground for an adverse employment action is pretextual, [*11] a plaintiff generally must present either direct evidence that an illegitimate ground was a motivating factor in the employer's decision or present a material factual dispute as to the sincerity of the proffered reason. *Freeman*, 231 F.3d at 379; *Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir. 1995) (quoting *Colosi v. Electri-Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992)). As to the latter, it must be

shown (a) that the proffered reason had no basis in fact, (b) that the proffered reason did not actually motivate the decision, or (c) that the reason was an insufficient reason to motivate the adverse action. *Freeman, 231 F.3d at 379; O'Connor v. DePaul University, 123 F.3d 665, 670 (7th Cir. 1997); McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 798 (7th Cir. 1997); Collier, 66 F.3d at 892* (quoting *Cliff v. Board of School Commissioners of City of Indianapolis, Ind., 42 F.3d 403, 412 (7th Cir. 1994)*).

A prima facie case of a discriminatory failure to promote can be made out by showing: (1) plaintiff was a member of a protected class (forty or over, [*12] White, n4 female); (2) she applied for and was qualified for an open position; (3) she was not promoted; and (4) a person outside the protected group received the promotion or the position remained open. *Wade,   F.3d at   , 2001 WL 210178 at *4; Howard v. Lear Corp. EEDS & Interiors, 234 F.3d 1002, 1005-06 (7th Cir. 2000); Bell v. Environmental Protection Agency, 232 F.3d 546, 549 (7th Cir. 2000); Hasham v. California State Board of Equalization, 200 F.3d 1035, 1044 (7th Cir. 2000).* Alternatively, the fourth element may be satisfied by other evidence from which a discriminatory intent may be inferred. *Hasham, 200 F.3d at 1044; Pafford v. Herman, 148 F.3d 658, 669 (7th Cir.), cert. denied, 525 U.S. 1020, 142 L. Ed. 2d 455, 119 S. Ct. 548 (1998).* A prima facie case of retaliation may be made out by showing: (1) plaintiff engaged in statutorily protected activity; (2) she suffered an adverse action; and (3) there is a causal link between the protected activity and the adverse action. *Abuzaffer Basith v. Cook County, 241 F.3d 919, 2001 U.S. App. LEXIS 3360, 2001 WL 220070* [*13] *10 (7th Cir. 2001); Bell, 232 F.3d at 554; Essex, 111 F.3d at 1309.*

> n4 There is no contention by defendant that the claim of "reverse" racial discrimination in the present case requires consideration of a different prima facie case. See *Mills v. Health Care Services Corp., 171 F.3d 450, 454-57 (7th Cir. 1999); Mellinger v. Combined Insurance Co. of America, 2001 U.S. Dist. LEXIS 2071, 2001 WL 185183 *6 (N.D. Ill. Feb. 26, 2001); Dewesse v. DaimlerChrysler Corp., 120 F. Supp. 2d 735, 748-49 (S.D. Ind. 2000).* Therefore, the usual prima facie elements will be employed. *Szymanski v. County of Cook, 2000 U.S. Dist. LEXIS 18258, at *7, 2000 WL 1847908 *2 n.2 (N.D. Ill. Dec. 15, 2000).*

Plaintiff contends that the usual burdens should not apply in this case. She contends that defendant is at fault for not preserving all the employment records regarding the subject promotions and therefore the burden should be placed on defendant to prove that it did not discriminate [*14] in denying her the promotions. See *Welsh v. United States, 844 F.2d 1239, 1246-47 (6th Cir. 1988).* Defendant responds that the destruction of the records was not willful, but instead resulted from plaintiff's failure to be specific in her allegations, making it difficult to determine which promotions she was challenging.

The only case plaintiff cites in support of her contention is *EEOC v. Jacksonville Shipyards, Inc., 690 F. Supp. 995, 997-98 (M.D. Fla. 1988).* In that case, during the pendency of administrative proceedings, the employer violated regulations requiring that relevant records be preserved. See *29 C.F.R. § 1602.14.* n5 The court held that its inherent power to manage the litigation permitted it to impose sanctions for violating § 1602.14 and that it would use the sanctions rules contained in *Fed. R. Civ. P. 37* as a guide for appropriate sanctions. See also *Smith v. Borg-Warner Automotive Diversified Transmission Products Corp., 2000 U.S. Dist. LEXIS 10200, 2000 WL 1006619 *6 (S.D. Ind. July 19, 2000); Capellupo v. FMC Corp., 126 F.R.D. 545, 551 (D. Minn. 1989).* Plaintiff does not specifically refer [*15] to a record retention regulation that was violated, though the citation to Jacksonville Shipyards implies she may contend that § 1602.14 was violated.

> n5 Section 1602.14 presently provides:
>
> > Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved

by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. In the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a period of one year from the date of termination. Where a charge of discrimination has been filed, or an action brought by the Commission or the Attorney General, against an employer under title VII or the ADA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected. The date of "final disposition of the charge or the action" means the date of expiration of the statutory period within which the aggrieved person may bring an action in a U.S. District Court or, where an action is brought against an employer either by the aggrieved person, the Commission, or by the Attorney General, the date on which such litigation is terminated.

[*16]

In *Latimore v. Citibank Federal Savings Bank*, 151 F.3d 712, 716 (7th Cir. 1998), the Seventh Circuit indicated that violation of a record retention regulation creates a presumption that the missing record contained evidence adverse to the violator. See also *Favors v. Fisher*, 13 F.3d 1235, 1239 (8th Cir. 1994) (violation of § 1602.14); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1418-19 (10th Cir. 1987) (same). Compare *Mitchell v. Utah State Tax Commissioners*, 26 F. Supp. 2d 1321, 1326 & n.3 (D. Utah 1998) (violation of 26 C.F.R. § 1602.31 n6 entitles plaintiff to adverse inference as to pretext, but does not relieve plaintiff of burden as to prima facie case). Latimore, however, makes clear that the presumption will not apply unless the failure to retain records actually violates the terms of the applicable regulation. The presumption was not applicable in Latimore because the recordkeeping regulation under consideration in that case excused inadvertent violations and there was no evidence in Latimore that the purported violation was other than inadvertent. See *Latimore*, 151 F.3d at 716; [*17] 12 C.F.R. §§ 202.12(b)(1)(i), 202.14(c).

> n6 Section 1602.31 is essentially identical to § 1602.14, but applies to state and local government agencies.

The violation of a record retention regulation only raises a presumption that the lost evidence would have been adverse to the responsible party. The presumption still can be rebutted. See, e.g., *Favors*, 13 F.3d at 1239. Moreover, even if this presumption is not rebutted, that does not necessarily mean that a sanction must be imposed. As long as it constitutes a violation of the applicable regulation, this presumption applies even if the loss of the records was not willful or in bad faith. *Hicks*, 833 F.2d at 1419 n.5; *Mitchell*, 26 F. Supp. 2d at 1326 n.3. However, to impose the sanction of an evidentiary presumption adverse to the responsible party, it must be found both that (a) the missing evidence was likely unfavorable to the responsible party (which is the presumption drawn from violation [*18] of the regulation) and (b) the loss of the records was willful or in bad faith. *S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co.*, 695 F.2d 253, 258-59 (7th Cir. 1982); *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998); *Keller v. United States*, 58 F.3d 1194, 1197 & n.6 (7th Cir. 1995); *Borg-Warner*, 2000 U.S. Dist. LEXIS 10200, 2000 WL 1006619 at *7; *Fucarino v. Thornton Oil Corp.*, 1999 U.S. Dist. LEXIS 13609, 1999 WL 691820 *8 (N.D. Ill. Aug. 23, 1999). In this context, "'bad faith' means destruction for the purpose of hiding

adverse information." *Mathis, 136 F.3d at 1155; Borg-Warner, 2000 U.S. Dist. LEXIS 10200, 2000 WL 1006619* at *7.

Section 1602.14 is not applicable to the present case. Section 1602.14 is contained in Subpart C of Part 1602. Subpart C's application is limited to "employers." n7 Agencies of the United States are not employers as that term is used in Title VII and the EEOC regulations. *42 U.S.C. § 2000e*(b); *29 C.F.R. § 1601.2*. n8 Like Title VII itself, see *42 U.S.C. § 2000e-16*, the EEOC regulations have separate provisions [*19] regarding federal sector employment. 29 C.F.R. Part 1614. Part 1614 contains reporting requirements for federal agencies. See *29 C.F.R. §§ 1614.601-602*. Part 1614, however, does not have any specific record preservation provision, leaving it to individual agencies to develop their own rules for processing complaints of employment discrimination. See *29 C.F.R. §§ 1614.102(a)(2), 1614.102(b)(1), 1614.104(a), 1614.108(b)*.

> n7 In addition to employers, Part 1602 contains record preservation rules for apprentice programs (1602.21), labor organizations (1602.28), state and local governments (1602.31), elementary and secondary schools (1602.40), and institutions of higher education (1602.49). Part 1602 does not contain a records preservation rule for federal agencies.
>
> n8 In *Favors, 13 F.3d at 1238-39*, the Eighth Circuit assumed without discussion, and apparently without opposition from the defendant, that § 1602.14 applied to the claim of an employee of the federal General Services Administration. Since the issue was not addressed, Favors does not constitute contrary precedent. To the extent Favors should be considered precedent, it is not binding and good reason exists for not following it.

[*20]

Similarly, the record preservation rules applicable to the ADEA apply only to employers ( *29 C.F.R. § 1627.3(b)(3)*), employment agencies (id. § 1627.4(a)(2)), and labor organizations (id. § 1627.5(c)). As with Title VII, federal agencies are not employers as that term is used in the ADEA and the applicable EEOC regulations. See *29 U.S.C. § 630*(b); *29 C.F.R. § 1626.2*. Again like Title VII, a separate statutory provision applies to federal employment, see *29 U.S.C. § 633a*, and Part 1614 contains the EEOC regulations applicable to ADEA claims by federal sector employees. See *29 C.F.R. §§ 1614.101, 1614.201*.

Although no regulation is specifically cited in plaintiff's brief or Local Rule 56.1 Statements of Facts, plaintiff provides a December 27, 1991 memorandum from the Director of the Civil Rights and Equal Opportunity Staff to the Regional Personnel Officer (Pl. Exh. J) in which the following portion of HHS Instruction 1613-3-40F.2 is quoted:

> F. Personnel Officers are responsible for:
>
> 2. Causing all official records in their [*21] possession, or under their custody and control, at any time immediately prior to or during the course of processing an EEO complaint, pending EEO complaint, appeal or civil action to be preserved until the case, complaint or appeal is either adjusted or a decision is issued, or until they determine there is no longer a need to preserve the records, such as by asking the EEO office about the disposition of the case, complaint or appeal.

This apparently is an agency regulation promulgated pursuant to *29 C.F.R. § 1614.102(b)(1)*. Plaintiff does not provide any other portion of the Instruction Manual (or other compilation) that contains this quoted instruction. The excerpt provided does not define the "official records" that are to be preserved. Plaintiff does provide deposition testimony of a personnel official in which that official indicates merit promotion files would ordinarily be preserved, but plaintiff's questioning did not elicit specifics as to what records would ordinarily be preserved. See Nelson Dep. at 60 (Pl. Exh. I).

As to "the investigation of complaints," *29 C.F.R. § 1614.108(c)*, the EEOC regulations [*22] do provide:

> (3) When the complainant, or the agency against which a complaint is filed, or its employees fail without good cause shown to respond fully and in timely fashion to requests for documents, records, comparative data, statistics, affidavits, or the attendance of witness(es), the

investigator may note in the investigative record that the decisionmaker should, or the Commission on appeal may, in appropriate circumstances:

> (i) Draw an adverse inference that the requested information, or the testimony of the requested witness, would have reflected unfavorably on the party refusing to provide the requested information;
>
> (ii) Consider the matters to which the requested information or testimony pertains to be established in favor of the opposing party;
>
> (iii) Exclude other evidence offered by the party failing to produce the requested information or witness;
>
> (iv) Issue a decision fully or partially in favor of the opposing party; or
>
> (v) Take such other actions as it deems appropriate.

*29 C.F.R. § 1614.108(c)(3).*

The burden is on plaintiff to show that sanctions should apply. See *Akiona v. United States, 938 F.2d 158, 161 (9th Cir. 1991),* [*23] cert. denied, *503 U.S. 962, 118 L. Ed. 2d 212, 112 S. Ct. 1567 (1992); United States v. Koch Industries, Inc., 197 F.R.D. 463, 486 (N.D. Okla. 1998); Gates Rubber Co. v. Bando Chemical Industries, Ltd., 167 F.R.D. 90, 101-02, 104, 108-09 (D. Colo. 1996); Borg-Warner, 2000 U.S. Dist. LEXIS 10200, 2000 WL 1006619 at *9; Anderson v. Leigh, 2000 U.S. Dist. LEXIS 1584, 2000 WL 193075 at *7 (N.D. Ill. Feb. 10, 2000).* She must show both that the missing personnel records are likely to have been favorable to her and that defendant acted in bad faith in not preserving the personnel records. See *Johnson, 695 F.2d at 258-59; Mathis, 136 F.3d at 1155; Fucarino, 1999 U.S. Dist. LEXIS 13609, 1999 WL 691820 at *8.* The first requirement may be satisfied by showing that a record retention regulation was violated. *Latimore, 151 F.3d at 716; Borg-Warner, 2000 U.S. Dist. LEXIS 10200, 2000 WL 1006619 at *7.* The presence of bad faith is a factual issue for the trier of fact. *Mathis, 136 F.3d at 1155.* The issue of bad faith cannot be resolved against plaintiff on the pending summary judgment motion unless the evidence is insufficient [*24] for a rational trier of fact to find bad faith.

The usual procedure for an employee to apply for another position at SSA is to submit an application form specifically in response to a job announcement. A less common procedure is to complete a Form 4100 indicating the employee's interest in jobs that may become open and for which the employee qualifies. n9 Sometime prior to March 1991, plaintiff completed a Form 4100. Form 4100 itself asked the employee to identify "specific position(s)" and the Personnel Manual for Supervisors at 11 (Pl. Exh. C) states the employee "should indicate thereon the specific position or types of positions." In the position box on her form, plaintiff stated: "Please consider me for all positions for which my qualifications might be acceptable." As to location, she stated: "Aurora, Illinois Area. Chicago, Illinois (in the 'Loop' area)." Plaintiff later clarified that she meant all of Chicago. Plaintiff was not always considered for all the positions that fell under the broad request she had placed on her Form 4100. Both during the administrative proceedings and the present lawsuit, the parties have had trouble identifying all possible promotions that might [*25] have been covered by plaintiff's Form 4100.

> n9 According to SSA's Personnel Manual for Supervisors at 11 (Pl. Exh. C), this procedure is limited to those "employees outside the normal area of consideration." Although defendant suggests plaintiff did not meet this qualification, it has not been shown that this disqualified her for the Form 4100 procedure.

On April 18, 1991, plaintiff conferred with an EEO counselor. On May 29, 1991, she filed her formal complaint, which included a number of harassment and overtime issues that are not part of the present lawsuit. As to promotions, she stated: "Unable to receive promotion. Rec'd info regarding Benefit Authorizer Vacancy in first wk of April, 1991: & other vacancies up to at least 3 years prior." The EEO investigator and/or plaintiff identified 26 position vacancies that she was denied.

On December 27, 1991, the Director of Civil Rights and Equal Opportunity Staff sent a memorandum to the Regional Personnel Officer stating the following:

> The Director, Division [*26] of

Investigations, HHS, has notified us that they have accepted the complaint of discrimination and reprisal filed by Joan Beniushis against the Social Security Administration (SSA). Ms. Beniushis alleges that because of her age (59), sex (female) and race (White): for every Saturday in the months of March and April 1991, she was denied overtime; since the implementation this past year of flextime, she was held to stricter standards than her co-workers; on March 18, 1991, she was intimidated when she was approached by four managers who used loud and dominating voices and she had to leave work; and, since April 5, 1989 and culminating in April 1991, she was not selected for 26 positions due to negative references given by her supervisor.

Ms. Beniushis is a Development Clerk GS-4 in the Chicago (Loop), IL Office.

I am requesting the preservation of all existing records pertaining to this complaint in accordance with HHS Instruction 1613-3-40F.2. which reads: . . .

It took the EEO investigator until June 1992 to complete the investigation. In May 1993, SSA determined plaintiff's claims lacked merit. In June 1993, plaintiff elected to pursue a hearing before the EEOC. In [*27] July 1993, plaintiff retired. By Fall 1993, plaintiff had retained counsel to represent her. On September 30, 1993, plaintiff submitted a document request in which she sought documents regarding all vacancies, from May 29, 1988 through July 1993, to which any of her Form 4100's or other applications applied. In November 1993, plaintiff withdrew her request for a hearing. In January 1994, she renewed her request for an EEOC hearing, but did not direct the request to SSA as the EEOC had previously informed her she should do. Nothing else occurred until October 1996, when the request for a hearing was made directly to SSA. In January 1997, however, plaintiff instead requested a decision without a hearing. In September 1997, the EEOC found for the agency. A month later, SSA issued its final decision by adopting the EEOC's decision.

The present lawsuit was filed in January 1998. As was recited above, numerous motions to compel and motions for extension of time were filed before discovery was closed. Much of the delay resulted from identifying the promotions in dispute and searching for the related documents. Plaintiff complains that she has not received the "promotion packet, including [*28] the rating sheets," for any of the March 19 to July 31, 1991 promotions that are at issue in this case. n10 Plaintiff provides an example of a promotion packet. See Pl. Exh. Q. The packet lists the qualifications for the jobs, the candidates, which candidates were rated best qualified, and the candidates' ranked scores. The packet does not identify the candidates' race, age, or sex (other than what can be inferred from a name), nor does it provide any information as to any candidate's specific qualifications nor how the scores were determined.

> n10 Defendant denies this is true, but cites nothing to refute the affidavit of plaintiff's counsel. See Def. Rule 56.1(a)(3) Reply P 22.

According to the affidavit of Personnel employee Yvonne Nelson, the records regarding promotions are ordinarily kept for two years and then destroyed in the ordinary course of business. See Nelson Aff. P 5 (Pl. Exh. T); *5 C.F.R. § 335.103(b)(5)*. By no later than December 1991, 26 disputed promotions [*29] had been identified. As of that time, the promotional materials should have still been available. As of plaintiff's September 1993 document request, it is possible the documents had already been destroyed in the ordinary course of business. In any event, that document request was so broad that it cannot be a basis for inferring that it informed defendant as to appropriate records to retain. Moreover, plaintiff provides no evidence as to what SSA did in response to the document request. n11

> n11 Less than two months after the request was filed, plaintiff withdrew her request for a hearing.

Defendant contends that destruction of the documents occurred because plaintiff failed to adequately identify the promotions that were being challenged. Defendant contends that willfulness or bad faith cannot be inferred from a failure to preserve all the correct

documents in response to plaintiff's nonspecific allegations. As to the 26 vacancies identified by the investigator and referenced in the December 1991 memorandum, defendant [*30] contends that most are not presently at issue and that the ones that are involve selections made subsequent to April 1991. See Def. Rule 56.1(a)(3) Reply P 20. Defendant does not raise this contention in his brief. The December 1991 memorandum refers to plaintiff "not [being] selected for 26 positions" between April 5, 1989 and April 1991. Perhaps defendant is contending that this should be read as excluding any positions selected after April 1991. The reference to 26 positions, however, is clear that it is the same 26 positions determined by the investigator. As to the 26 positions, SSA was on specific notice to preserve the records, either from the December 1991 memorandum or from information received from the investigator. Neither side suggests any explanation as to why the records were not preserved.

In not preserving the records related to the challenged promotions, SSA violated the HHS Instruction. Therefore, a presumption arises that some adverse evidence was in those records. However, before drawing any adverse inference or shifting any burdens, there must also be sufficient evidence to infer bad faith. There is, however, insufficient evidence to support such a finding. [*31] It is true that 26 promotions were identified, but that in itself is not a small number of promotions for which to ensure documents are preserved. There is no evidence to support when the documents were destroyed. Given the lengthy time that it took to process this case, including a nearly three-year period from November 1993 or January 1994 until October 1996 when plaintiff had already retired and the case may have appeared to have been dropped, it is not surprising that documents were not fully preserved. Moreover, the presumption the lost documents contained adverse information is rebuttable. The promotion packets, which are the only documents that plaintiff specifically identifies as having been lost, are not documents that are likely to be intentionally destroyed because thought to have incriminating evidence. The promotion packets themselves did not even contain information about race, sex, or age or the reasons for the selections made. Further, as to most of the particular vacancies still seriously at issue, the information that would be in the promotion packets is otherwise available. Additionally, plaintiff provides no evidence as to the particular person who should have been [*32] responsible for preserving the documents n12 and any actions that person took or motives that person may have had. On the evidence before the court, a rational factfinder could not find that the missing promotion packets were intentionally destroyed for the purpose of hiding adverse information. Since the documents were not destroyed in bad faith, no adverse inference or change in the usual burdens will be applied.

   n12 Although not referenced in plaintiff's brief or Statements of Fact, Nelson testified that all staffing specialists would be responsible for preserving the documents. Nelson Dep. at 59.

In the administrative proceedings, plaintiff's promotion claim was characterized as being based on her immediate supervisor providing negative references. Defendant contends the present claims should be limited to being based on the negative references. In *Beniushis I, 1998 U.S. Dist. LEXIS 19108, 1998 WL 852300* at *5, it was held that:

> . . . Generally, a lawsuit claiming employment discrimination will be limited to those [*33] claims included in the EEOC charge. *McKenzie v. Illinois Department of Transportation, 92 F.3d 473, 481 (7th Cir. 1996)*. The lawsuit, however, may also include claims "that are 'like or reasonably related to the allegations of the charge and [which] grow[] out of such allegations.'" Id. (quoting *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc., 538 F.2d 164, 167 (7th Cir.) (en banc ), cert. denied, 429 U.S. 986, 50 L. Ed. 2d 598, 97 S. Ct. 506 (1976))*. This standard is met
>
>> if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge. . . . The claims are not alike or

reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals.

Id. (quoting *Cheek v. Western & Southern Life Insurance Co., 31 F.3d 497, 501 (7th Cir. 1994)*). Recognizing that the original charge is usually completed by a [*34] layperson, it has been noted that the claimant "need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *McKenzie, 92 F.3d at 482* (quoting *Cheek, 31 F.3d at 501*).

Plaintiff included her promotional claims in the EEOC charge. Those claims are not further limited by specific evidence recited, relied upon, or pursued in the administrative investigation. *Babrocky v. Jewel Food Co., 773 F.2d 857, 864 n.2 (7th Cir. 1985); Green v. Runyon, 1996 U.S. Dist. LEXIS 1537, 1996 WL 65989 *2 (N.D. Ill. Feb. 12, 1996); EEOC v. Kim & Ted, Inc., 1996 U.S. Dist. LEXIS 1112, 1996 WL 48581 *2 (N.D. Ill. Feb. 2, 1996); Roepsch v. Bentsen, 846 F. Supp. 1363, 1367-68 (E.D. Wis. 1994); Otterbacher v. Northwestern University, 838 F. Supp. 1256, 1260 (N.D. Ill. 1993)*. Plaintiff's claims will not be limited to claims that her supervisor gave negative references.

In response to the motion for summary judgment, the burden is on plaintiff to identify specific evidence that precludes summary judgment. *Celotex, 477 U.S. at 324; Shank, 192 F.3d at 681;* [*35] *Selan, 969 F.2d at 564*. Although, plaintiff contends that her claims cover additional vacancies, she only makes arguments and presents evidence regarding five specific promotions. Therefore, those are the only promotions that will be considered. They are vacancies 17, 18, 19, and 21, n13 and an additional vacancy in the Aurora office that was filled effective May 5, 1991 (the "May 5 Vacancy").

n13 The numbering is taken from the 26 vacancies identified in the administrative proceedings and has been used by the parties throughout this litigation.

Plaintiff contends she has direct evidence of racial discrimination in that SSA favored non-Whites n14 for promotions. Plaintiff provides excerpts from SSA's Fiscal Year 1991 "Affirmative Employment Program Plan." The excerpts provided, however, only contain provisions to make selecting officials aware (on an annual basis) of the equal opportunity profiles of the work force and those promoted. See id. at 29-30 (Pl. Exh. M). Plaintiff does not point [*36] to a provision in the Plan that non-Whites be favored in the selection for promotions.

n14 The parties do not distinguish between race and national origin discrimination. Thus, Hispanics will be considered to be a non-White group for purposes of the race discrimination claims. Cf. *Majeske v. City of Chicago, 218 F.3d 816, 819 n.1 (7th Cir. 2000), cert. denied, 531 U.S. 1079, 148 L. Ed. 2d 676, 121 S. Ct. 779 (2001)*.

Plaintiff also points to statistical evidence. From 1991 through 1993, SSA promoted 294 employees working in the Chicago area, of which 203 were Black, 73 White, 18 Hispanic, 3 Asian-American, and 2 unknown. n15 No breakdown is provided for promotions in the technical and clerical categories in which plaintiff worked and applied for promotions. As of September 30, 1991, SSA's Chicago Region had 1526 technical workers of which 63.7% were White, 31.5% Black, 4.0% Hispanic, 0.3% Asian-American, and 0.5% Native American. As of September 30, 1991, SSA's Chicago Region had 1444 clerical [*37] workers of which 50.0% were White, 45.2% Black, 3.2% Hispanic, 0.6% Asian-American, and 1.0% were Native American. No breakdown is provided as to racial distribution of grades within these categories. Plaintiff points to statistics included in the supporting reports as to breakdowns in the regional civilian labor force for technical workers. The SSA reports indicate this breakdown is 88.2% White, 8.7% Black, 1.5% Hispanic, 1.3% Asian-American, and 0.3% Native American for technical workers and 84.7% White, 12.2% Black, 2.0% Hispanic, 0.7% Asian-American, and .3% Native American for clerical workers. The documents provided do not define the region covered by the statistics nor specify whether these are workers actually so employed or those qualified to

work in those positions. There is also no analysis regarding the populations in the specific locations where SSA has offices.

> n15 The parties do not dispute the totals, even though the breakdown totals 299 (not 294) and the underlying documents do not denote anyone as falling into more than one category. Also, no statistics are provided regarding the racial breakdown of applicants for the promotions.

[*38]

Plaintiff contends that the statistics show that Blacks were already overrepresented in the SSA workforce and that they also received a disproportionate share of promotions. n16 At a minimum, however, plaintiff must show that, during the pertinent time period, Blacks were favored in promotions for the types of positions for which plaintiff applied. Plaintiff has not presented statistics limited to the types of jobs and locations for which plaintiff applied. Even if administrative and technical positions in the entire Chicago region is a narrow enough pool to use, plaintiff does not point to statistics regarding promotions in those categories. The promotion statistics are not broken down by job type. Moreover, plaintiff has not shown that Blacks are already overrepresented in the pertinent positions. She provides no statistics regarding the racial breakdown for persons in the grade 5, 6, and 7 positions plaintiff was seeking. It is possible that, assuming the statistics show overrepresentation of Blacks in clerical and technical positions, that they are concentrated in lower graded positions. Plaintiff has not presented adequate statistical evidence that Blacks and other non-Whites [*39] received a disproportionate number of promotions in the pertinent job categories. Cf. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Moreover, even if the statistics were sufficient to show, in the pertinent jobs, a disproportionate number of promotions for non-Whites, plaintiff does not present evidence linking any inferred discriminatory intent to particular promotions that were denied to plaintiff. See *id.* at 616-17; *Sample v. Aldi Inc.*, 61 F.3d 544, 551 (7th Cir. 1995); *Sapienza v. Cook County Office of Public Defender*, 128 F. Supp. 2d 563, 570-71 (N.D. Ill. 2001). Plaintiff has not presented sufficient direct evidence of discrimination; she must instead rely on the indirect method.

> n16 Plaintiff actually focuses on Black females, but the proper comparison for purposes of race discrimination is to look at both males and females. Because of the predominance of females in the clerical and technical positions, White females are also overrepresented as compared to the regional civilian labor force statistics provided.

[*40]

Vacancy No. 17 for a GS-5/6 secretary position was posted on April 22, 1991. Plaintiff was one of nine applicants, all of whom made the best-qualified list and all of whom were female. Four of the other applicants were Black and the race of the other four applicants is not known. Six of the other applicants were under age 40 and two were over 40. Nancy Dowell made the hiring decision. A Black female under age 40 was selected for the position. Additionally, defendant represents that Dowell does not specifically recall plaintiff, but "believes" she selected the person she did select because Dowell was already familiar with that employee's work. This representation is not supported by an affidavit or deposition of Dowell, but instead is supported by defendant's own interrogatory answers which are signed by defendant's counsel. On plaintiff's objection, defendant's own interrogatory answer, not based on personal knowledge, is not admissible evidence. See *Andree v. Ashland County*, 818 F.2d 1306, 1316 n.13 (7th Cir. 1987); Case *Mix Analysis, Inc. v. Doctors Hospital of Hyde Park, Inc.*, 2000 U.S. Dist. LEXIS 9853, 2000 WL 968824 *2 (N.D. Ill. July 12, 2000); *Fucarino*, 1999 U.S. Dist. LEXIS 13609, 1999 WL 691820 [*41] at *7; *Henderson v. Handy*, 1996 U.S. Dist. LEXIS 3874, 1996 WL 148040 *4 (N.D. Ill. March 29, 1996). Such evidence cannot be considered on summary judgment. See *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994).

As to age and race, the above facts support a prima facie case of discriminatory denial of a promotion to Vacancy No. 17. See *Wade*, F.3d at , 2001 U.S. App. LEXIS 3333, 2001 WL 210178 at *4; *Howard*, 234 F.3d at 1005-06; *Bell*, 232 F.3d at 549; *Hasham*, 200 F.3d at 1044. Defendant contends the prima facie case is not satisfied because it must be shown that the person actually hired had similar or lesser qualifications than plaintiff. See *Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir. 2000) (fourth element of prima facie case of

denial of promotion is that person hired was someone outside protected category who had similar or lesser qualifications); *Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995)* (same). Defendant contends that it cannot be assumed that two best-qualified candidates are equally qualified and instead evidence of the candidates' [*42] actual qualifications must be presented to show plaintiff had equal or better qualifications.

The selecting official was permitted to select from among the best-qualified candidates; nothing about plaintiff's qualifications automatically eliminated her from consideration. Even if being similarly or better qualified than the employee actually hired is a necessary element of the prima facie case, plaintiff and the person hired both being rated best qualified is sufficient to show similar qualifications. Cf. *Banks v. Rubin, 1998 U.S. Dist. LEXIS 13780, 1998 WL 565088 *2-3 (N.D. Ill. Aug. 31, 1998)* (meeting minimum qualifications for position is enough to be similarly situated for purposes of similarly qualified element of prima facie case, even though the persons actually promoted were rated best qualified or highly qualified and plaintiff was not). The issue of whether plaintiff was not promoted because the other candidate was more qualified is more appropriately raised at the next step as a legitimate, nondiscriminatory ground for not selecting plaintiff. See id. at *3; *Carter v. Pena, 14 F. Supp. 2d 1, 7-8 (D.D.C. 1997)*, summarily aff'd, *1998 U.S. App. LEXIS 10637, 1998 WL 315616* [*43] (D.C. Cir. April 8, 1998).

As to race and age discrimination regarding Vacancy No. 17, plaintiff presents adequate evidence to support a prima facie case. Since a female was actually hired and plaintiff points to no other evidence from which sex discrimination can be inferred, she does not satisfy a prima facie case of sex discrimination. Since there is no evidence that Dowell knew of plaintiff's prior complaints of discrimination, plaintiff also fails to make out a case of retaliation. *Maarouf v. Walker Manufacturing Co., 210 F.3d 750, 755 (7th Cir. 2000); Dey v. Colt Construction & Development Co., 28 F.3d 1446, 1458 (7th Cir. 1994); Noble v. Sheahan, 116 F. Supp. 2d 966, 2001 WL 224496 *15 (N.D. Ill. 2001); Greer v. Board of Education of City of Chicago, 2000 U.S. Dist. LEXIS 17981, 2000 WL 1808423 *7 (N.D. Ill. Nov. 9, 2000)*. As to Vacancy No. 17, the sex and retaliation claims will be dismissed.

Defendant does not contend that the other candidate was promoted because plaintiff had lesser qualifications. Instead, defendant contends Dowell decided to promote another employee because she was familiar with that employee's [*44] work. Defendant, however, presents no competent evidence to support this contention. Therefore, defendant fails to satisfy its burden to produce admissible evidence of a legitimate, nondiscriminatory reason for not selecting plaintiff. See *St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993); Stockett v. Muncie Indiana Transit System, 221 F.3d 997, 1001 (7th Cir. 2000)*. And even if defendant's representations were given credence, it is stated that Dowell has a limited memory of the promotion and "believes" she promoted the other employee because of familiarity. Dowell's lack of certainty would itself be a sufficient basis to raise a factual dispute as to pretext. The race and age discrimination claims as to Vacancy No. 17 will not be dismissed.

Vacancy No. 18 for a GS-5/7/9 claims representative position was posted on March 14, 1991. However, on April 24, 1991, it was cancelled because a person already in a GS-10 position was placed in Vacancy No. 18. The person placed in the position apparently was a woman, her given name being Donna. Plaintiff presents no evidence that plaintiff herself was qualified for [*45] this position n17 nor any evidence that the person hired was non-White or under forty. Neither does she point to any other evidence from which discrimination can be inferred. There is not even any evidence that the person who cancelled the announcement even knew who the other possible candidates were. Cf. *Walker v. Glickman, 241 F.3d 884, 2001 U.S. App. LEXIS 2838, 2001 WL 194510 *5 (7th Cir. 2001)*. Plaintiff also does not attempt to connect her failure to receive this job to retaliation for any protected activity. Since plaintiff fails to present a prima facie case as to any form of discrimination or retaliation, all claims as to Vacancy No. 18 will be dismissed.

n17 Plaintiff complains she did not receive a copy of the actual vacancy announcement, but does not contend that she was unaware of the qualifications necessary to be a claims representative. In any event, she also fails to satisfy the fourth element of a prima facie case.

Vacancy No. 19 for a GS-5 retirement benefit authorizer was [*46] posted in April 1991. Plaintiff was rated best qualified for this position. However, there is no

evidence as to who was actually hired for this position. Neither does plaintiff provide any other evidence from which discrimination may be inferred. All claims concerning Vacancy No. 19 will be dismissed.

Vacancy No. 21 for a GS-5/6 secretary position was posted on May 23, 1991. Plaintiff was one of ten applicants, all of whom were female. Of the other nine applicants, five were Black, one was Hispanic, and the race of the other three is unknown. Eight of the applicants were under forty and the age of the other applicant is unknown. Plaintiff and six others were rated best qualified. The six other best-qualified candidates were all under 40, two were Black, one was Hispanic, and the race of the other three was unknown. The woman selected for the position was Hispanic. Mary Coonda was the selecting official. Defendant contends that Coonda did not select plaintiff because of concerns that plaintiff lacked the ability to maintain confidentiality, which was a requirement for the position. Again, however, defendant relies on his own interrogatory answer instead of an affidavit, deposition, [*47] or other personal knowledge statement of Coonda. Therefore, the contention as to Coonda's reason for her decision cannot be considered.

As to age and race, plaintiff has presented prima facie evidence that she was denied the promotion to Vacancy No. 21 because of discrimination. Since a woman was selected for the position and plaintiff does not present other evidence from which sex discrimination may be inferred, plaintiff does not present a prima facie case of sex discrimination. Neither does she satisfy a prima facie case for retaliation; there is no evidence that Coonda was aware of her prior complaints of discrimination. The sex discrimination and retaliation claims as to Vacancy No. 21 will be dismissed. As to the age and race claims, defendant does not provide competent evidence of a legitimate, nondiscriminatory reason for the decision not to select plaintiff. Therefore, the prima facie case is not rebutted. The age and race discrimination claims regarding Vacancy No. 21 will not be dismissed.

Effective, May 5, 1991, a 27-year-old Hispanic woman was promoted to a GS-5/6/7 service representative position in the Aurora office. Plaintiff was qualified for that [*48] position and actually received a promotion to that type of position in July 1991. Plaintiff was not actually considered for the May 5 Vacancy, though she should have been based on the broad request in the Form 4100 she had submitted. As to the May 5 Vacancy, plaintiff has presented sufficient evidence of a prima facie case of age and race discrimination. She has not presented prima facie evidence of sex discrimination or retaliation. As to the May 5 Vacancy, the sex discrimination and retaliation claims will be dismissed. Defendant does not attempt to rebut the prima facie case of age and race discrimination. The age and race discrimination claims as to the May 5 Vacancy will not be dismissed.

Since the alleged discrimination in this case predates the November 1991 amendments to Title VII, plaintiff's race discrimination damages are limited to lost wages and benefits and she is not entitled to a jury trial on the race discrimination claims. See *Landgraf v. USI Film Products*, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994); *Place v. Abbott Laboratories*, 215 F.3d 803, 804-05 (7th Cir. 2000), cert. denied, 531 U.S. 1074, 148 L. Ed. 2d 668, 121 S. Ct. 768 (2001). [*49] Because plaintiff was a federal employee, the same limitation applies to the ADEA claims. See *Lehman v. Nakshian*, 453 U.S. 156, 69 L. Ed. 2d 548, 101 S. Ct. 2698 (1981); *Smith v. Office of Personnel Management*, 778 F.2d 258, 263 (5th Cir. 1985), cert. denied, 476 U.S. 1105, 90 L. Ed. 2d 358, 106 S. Ct. 1949 (1986); *Sofio v. Brady*, 1992 U.S. Dist. LEXIS 13721, 1992 WL 229600 *1 (N.D. Ill. Sept. 11, 1992); *Guillory-Wuerz v. Brady*, 785 F. Supp. 889, 890-91 (D. Colo. 1992). The amount of damages remaining at issue in this case are limited. The position plaintiff was in was upgraded to GS-5 effective May 19, 1991. Even if plaintiff succeeds on her claim regarding Vacancy No. 17 or the May 5 Vacancy, at most she would have received a raise to a GS-5 salary a couple weeks earlier. In July 1991, plaintiff was promoted to a GS-5/6/7 position. Success on any one of her claims would have allowed her to be promoted to GS-6 and/or 7 up to a couple months earlier than she actually was promoted. The slightly earlier promotions presumably would affect her pension as well. Plaintiff retired in July 1993. While the pay differences presumably are [*50] significant from plaintiff's perspective, they are limited. At this point in time, settlement discussions may be fruitful. Since there would be a bench trial, the case will be referred to the assigned magistrate judge for a settlement conference. At the next status hearing, the parties are to report as to the likelihood of settlement. If settlement appears unlikely, a short date will be set for presentation of the final pretrial order.

IT IS THEREFORE ORDERED that plaintiff's motion to reconsider [49-1] is denied. Defendant's motion for summary judgment [51-1] is granted in part and denied in part. All of plaintiff's claims are dismissed except the age and race discrimination claims as to the decisions not to select plaintiff for "Vacancy No. 17," "Vacancy No. 21," and the "May 5 Vacancy." It is recommended that this case be referred to the assigned magistrate judge for the purpose of conducting a settlement conference within three weeks. A status hearing before Judge Hart is set for April 25, 2001 at 11:00 a.m.

ENTER:

William T. Hart

UNITED STATES DISTRICT JUDGE

DATED: MARCH 26, 2001