IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, NORTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY : 
COMMISSION, :
 :
        Plaintiff, :
 :
   and :
 :
KATHY KOCH, :    CASE NO.: WDQ 02-CV-648
 :
       Intervenor/Plaintiff, :    JURY DEMANDED
 :
   v. :
 :
LA WEIGHT LOSS CENTERS, INC., :
 :
       Defendant. :
_____ :

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF
EEOC'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND LA WEIGHT LOSS CENTERS, INC.'S
CROSS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................1

II.  STATEMENT OF DISPUTED FACTS ..........................................................2

    A.   Notice of Discrimination in Hiring................................................................2

        1.   The Reasonable Cause Determination was LAWL's First Notice
            that EEOC Expanded its Investigation to Discriminatory Hiring
            Practices ....................................................................................................2
            a.   Koch's Letter ...................................................................2
            b.   Koch's Charge ..................................................................3
            c.   EEOC's Second Document Request....................................3
            d.   The Reasonable Cause Determination ...............................4

        2.   The Court Did Not Find that LAWL Should Have Anticipated
            Litigation for Discrimination in Hiring Before the Determination..............4

    B.   Applicant and Personnel Documents ..............................................................5

        1.   LAWL Consistently Adhered to its Document Preservation Policy ...........5

        2.   LAWL Did Not Target for Destruction Documents Submitted by
            Male Applicants.........................................................................................6

        3.   LAWL Preserved and Produced or Made Available All Online Job
            Board Postings ..........................................................................................9

        4.   LAWL's Expert Report is Not Evidence of Spoliation ............................11

        5.   LAWL Did Not Destroy Employee Resumes and Applications ...............12

        6.   LAWL Reviewed Personnel Files for Completeness ...............................13

        7.   LAWL Instructed Executive Search Group to Preserve All
            Resumes and Applications........................................................................13

        8.   LAWL Preserved and Produced all Payroll Data .....................................14
            a.   Zurich Payroll Systems...................................................14
            b.   ADP...............................................................................16

    C.   EEOC's Claim for Retaliatory Discharge....................................................17

III. ARGUMENT ...................................................................................................19

    A.   EEOC's Motion is Procedurally Improper ...................................................19

1.    EEOC Never Moved for an Order Compelling Discovery...................19

2.    EEOC's Attempt to Invoke the Court's Inherent Powers is Unjustified..............................................................................................20

B.    EEOC is Not Entitled to Summary Judgment or an Adverse Inference...............22

1.    Standard Applicable to Summary Judgment.............................................22

2.    LAWL First Anticipated Litigation Concerning Discrimination in Hiring on September 14, 2000.................................................................23

3.    The Facts Concerning LAWL's Preservation of Documents and State of Mind Are in Dispute....................................................................24
      a.    Documents ...................................................................................26
      b.    Bad Faith......................................................................................27

4.    EEOC's Expert Analysis is Not Prejudiced.............................................28

C.    LAWL is Entitled to Summary Judgment on EEOC's Retaliatory Discharge Claim................................................................................................29

IV.    CONCLUSION......................................................................................................31

## TABLE OF AUTHORITIES

### CASES

Ausherman v. Bank of America Corp., 212 F. Supp. 2d 435 (D. Md. 2002) ...............................20

Beniushis v. Apfel, No. 98 C 0395, 2001 U.S. Dist. LEXIS 3574
    (N.D. Ill. Mar. 26, 2001)...................................................................................25

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ................................................................23

Chambers v. NASCO, Inc., 501 U.S. 32 (1991) ................................................................20

Diamond v. Colonial Life & Accident Insurance Co., 416 F.3d 310 (4th Cir. 2005) .................23

EEOC v. Cosmair, Inc., 821 F.2d 1085 (5th Cir. 1987) ....................................................30

EEOC v. General Electric Co., 532 F.2d 359 (4th Cir. 1976) ...........................................24

EEOC v. Goodyear Aerospace Corp., 813 F.2d 1539 (9th Cir. 1987) ...............................29

EEOC v. Optical Cable Corp., 169 F. Supp. 2d 539 (W.D. Va. 2001)................................24

EEOC v. Turtle Creek Mansion Corp., No. 3:93-CV-1649-H, 1995 U.S. Dist. LEXIS
    12788 (N.D. Tex. May 18, 1995)...................................................................28

Favors v. Fisher, 13 F.3d 1235 (8th Cir. 1994)................................................................25

Francis v. Dietrick, 682 F.2d 485 (4th Cir. 1982).............................................................31

General Telegraph Co. v. EEOC, 446 U.S. 318 (1980).....................................................30

Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446 (4th Cir. 2004)..........................................26

Lombard v. MCI Telecomm. Corp., 13 F. Supp. 2d 621 (N.D. Ohio 1998) .........................25

Mathis v. John Morden Buick, Inc., 136 F.3d 1153 (7th Cir. 1998) .............................25, 26

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)...................23

New Orleans Steamship Association v. EEOC, 680 F.2d 23 (5th Cir. 1982) ........................30

Park v. City of Chicago, 297 F.3d 606 (7th Cir. 2002)................................................25, 26

Samsung Electrics Co. Ltd. v. Rambus Inc., 439 F. Supp. 2d 524 (4th Cir. 2006) ................20

Segal v. L.C. Hohne Contractors, Inc., No. 2:02-1260, 2003 U.S. Dist. LEXIS 25145
(S.D.W. Va. Sept. 11, 2003) ................................................................20,22

Silvestri v. General Motors Corp., 271 F.3d 583 (4th Cir. 2001) ....................................21

Skippy, Inc. v. CPC International, Inc., 674 F.2d 209 (4th Cir. 1982) ..........................31

Thompson v. HUD, 219 F.R.D. 93 (D. Md. 2003) ........................................................21

Timmons v. United States, 194 F.2d 357 (4th Cir. 1952)..............................................31

United States v. County of Fairfax, 629 F.2d 932 (4th Cir. 1980) ................................21

Wembley, Inc. v. Diplomat Tie Co., 216 F. Supp. 565 (D. Md. 1963) ..........................21

Williams v. Aluminum Co. of America, 457 F. Supp. 2d 596 (M.D.N.C. 2006)...........23

Zimmermann v. Associates First Capital Corp., 251 F.3d 376 (2d Cir. 2001).........21, 22

Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003)..............................21

## STATUTES

29 C.F.R. § 1602.14 ........................................................................1, 5, 6, 21, 24, 25, 26

## I.    INTRODUCTION

The Equal Employment Opportunity Commission's ("EEOC") Motion for Partial Summary Judgment and for Adverse Inference Jury Instructions at Trial ("Motion") is, at its core, an untimely Rule 37 request seeking sanctions for spoliation of evidence.  Failing to move the Court during discovery, EEOC now requests summary judgment for LAWL's purported discovery abuses and uses its claim under 29 C.F.R. § 1602.14 as the legal hook.  Even if EEOC's approach were proper, which it is not, the Motion falls short under Rule 56(c).  Not only is the record rife with material factual disputes, but EEOC could not muster a single case in support of its Draconian request for an adverse inference.

The record is clear that LAWL did not have notice of a nationwide pattern or practice class action until it received EEOC's Reasonable Cause Determination on September 14, 2000, nearly two years after EEOC contends notice was provided.  It is plain that absent notice, the duty to preserve charge-related documents under 29 C.F.R. § 1602.14 is not triggered.  The evidence also shows that from the date of notice and before, it was LAWL's policy to preserve all relevant applicant and personnel records.  There is no evidence to the contrary.  Nor is there any evidence of systematic document destruction.  To the contrary, many of the documents EEOC decries as missing – electronic job board postings, resumes, payroll records – were produced or made available for inspection in their entirety.  EEOC admits that it neglected to review over 60,000 documents from LAWL's production.

In the end, the Motion is EEOC's transparent attempt to avoid presenting evidence at trial and bolster its flawed statistical case.  LAWL respectfully requests that this Court deny EEOC's Motion and grant LAWL's cross motion for summary judgment.

## II.    STATEMENT OF DISPUTED FACTS

### A.    <u>Notice of Discrimination in Hiring</u>

#### 1.    The Reasonable Cause Determination was LAWL's First Notice that EEOC Expanded its Investigation to Discriminatory Hiring Practices

EEOC contends that by June 22, 1998, the date of intervenor Kathy C. Koch's Charge of Discrimination ("Charge"), LAWL was on notice of a claim for a pattern or practice of gender discrimination in hiring. <u>See</u> Charge, attached hereto as Exhibit A; EEOC Memorandum in Support of Plaintiff EEOC's Motion for Partial Summary Judgment and for Adverse Jury Instructions at Trial ("EEOC Memorandum") at p. 2. EEOC is wrong. The Charge did not provide notice "of the allegations that are the basis of EEOC's lawsuit." EEOC Memorandum at p. 2.

##### a.    Koch's Letter

Shortly after she was hired by LAWL as an Area Corporate Trainer in November 1997, the Company determined that Koch's performance was deficient. <u>See</u> Employee Warning Notice, attached hereto as Exhibit B. Koch was improperly and ineffectively training counselors by failing, among other things, to follow the established LAWL training program. <u>Id.</u> On or around March 6, 1998, Koch was given a written warning documenting her substandard job performance. <u>Id.</u>

Two days later, Koch's direct supervisor received a letter ("Letter"). <u>See</u> March 8, 1998, Letter, attached hereto as Exhibit C. Largely an attempt to rebut the written warning, the Letter suggested that LAWL's actual intent was to "achieve unknown alternative purposes since I have not followed company hiring policy." <u>Id.</u> The Letter did not, however, contain any reference to what "company hiring policy" Koch was referring. The only practices specifically complained of were "several incidents of intolerable sexual harassment." <u>Id.</u>

Shortly thereafter, on March 12, 1998, Koch was dismissed for failing to correct her performance problems. See Employee Change Form, attached hereto as Exhibit D. Six weeks after termination, LAWL received a letter from Koch's counsel advising that Koch believed she was discharged in retaliation for lodging a complaint with EEOC about gender-biased hiring practices. See April 21, 1998, letter, attached hereto as Exhibit E. Upon receipt of the letter, LAWL investigated Koch's complaint of retaliation and found it to be without merit. See Deposition of Karen Siegel, October 27, 2004, at pp. 92-93, attached hereto as Exhibit F.

### b.    Koch's Charge

On June 22, 1998, Koch filed the Charge against LAWL with EEOC's Baltimore regional office. Exhibit A. Koch made only one allegation – that she was discharged for complaining about LAWL's "failure to hire qualified male applicants." Id. As part of its investigation, EEOC sent LAWL a request for "information and records relevant to the subject charge of discrimination". See November 3, 1998, letter and Request for Information ("Request"), attached hereto as Exhibit G. The Request sought a wide range of information and many documents, which were separated largely into two delineated issues – "discharge" and "discipline." There was *no* request pertaining to discriminatory hiring. Id. Only one question – whether LAWL contends that the female gender is a bonafide occupational qualification – related to gender, but that question standing alone did not provide notice that EEOC was investigating a nationwide pattern or practice of gender discrimination in hiring. Id.

### c.    EEOC's Second Document Request

On May 10, 2000, EEOC issued another bare document request for applications and resumes relating to Counselor vacancies, as well as a list of all hires from 1995 through May 10, 2000, the date of the correspondence ("Second Document Request"). See Second Document Request, attached hereto as Exhibit H. The Second Document Request was not related solely to

Koch. Rather, it was sent in connection with three charges, two of which concerned pregnancy or gender discrimination.[1] Id.; Deposition of Karen Karzen-Raybuck at pp. 61-68, attached hereto as Exhibit I; Althea Diggs' Charge of Discrimination, attached hereto as Exhibit J.  In no way did the Second Document Request indicate that EEOC considered charging LAWL with a pattern or practice of *discrimination against men in hiring*.  Exhibit H.  LAWL objected to the information sought as irrelevant to the enumerated charges.  See May 25, 2000, letter, attached hereto as Exhibit K.  EEOC did not respond to LAWL's objection or even attempt to explain the reason for its request.

### d.    The Reasonable Cause Determination

In Spring 2000, EEOC conducted several LAWL employee interviews.  See Sample Interview Cover Pages, attached hereto as Exhibit L.  Again, EEOC never informed the Company it was investigating a pattern or practice of discrimination and never propounded a Commissioner's Charge.  Months later, on September 14, 2000, EEOC issued a Reasonable Cause Determination ("Determination") finding a basis to believe LAWL retaliated against Koch and that LAWL discriminates against males as a class with respect to selection and hiring.  See Determination, attached hereto as Exhibit M.  The Determination was LAWL's first notice that EEOC had expanded its investigation to include a claim for company-wide discrimination against men.  Id.

### 2.    The Court Did Not Find that LAWL Should Have Anticipated Litigation for Discrimination in Hiring Before the Determination

In a hearing on June 29, 2004, the Honorable Paul W. Grimm recommended an adverse inference instruction to the jury concerning LAWL's failure to preserve documents relevant to

---

[1]      EEOC did not produce a clean copy of the Second Document Request for this Court's review.  EEOC redacted all but Koch's name and charge number.

Koch's job performance. <u>See</u> Hearing Transcript, attached hereto as Exhibit N. The documents – training aids, flip charts, test scores and contemporaneous notes from former LAWL employee, Kristi O'Brien – were lost sometime after March 8, 1998, the date on which Judge Grimm determined LAWL should reasonably have anticipated litigation by *Koch*. <u>Id.</u> at 36-38. Significantly, the documents were specific to *Koch* and wholly *irrelevant* to EEOC's pattern or practice claim. <u>Id.</u> at 40-43. EEOC neither initiated nor joined in the Rule 37 motion, and Koch herself never argued that the documents at issue were relevant to a pattern or practice of hiring discrimination. Indeed, Judge Grimm specifically did *not* find that March 8, 1998, was the date on which LAWL had notice of litigation for discrimination against men. <u>Id.</u> at 35-36.

> Now, whether or not [LAWL] could connect the dots and figure out that there was some employment policy that resulted in Ms. Koch's complaint to the EEOC that was involved with hiring, whether or not that involved discrimination against males or not, is not dispositive of this....

<u>Id.</u>

### B.    **Applicant and Personnel Documents**

EEOC argues that LAWL not only lacked any document retention protocol in its first years of operation, but that after Koch's Charge, the Company failed to preserve documents in violation of 29 C.F.R. § 1602.14. The record belies EEOC's contention, showing instead that LAWL complied with its record keeping obligations at all relevant times.

### 1.    **LAWL Consistently Adhered to its Document Preservation Policy**

In 1998, following its first year in operation and unprecedented growth, LAWL formed a Human Resources Department ("HR Department"). Shortly after its creation, the HR Department codified the Company's document retention policy. <u>See</u> Deposition of Karen Siegel, August 28, 2002, at pp. 42-50, attached hereto as Exhibit O; Deposition of Karen Siegel, March 31, 2005, at pp. 43-45, attached hereto as Exhibit P. That policy, which is still in effect today,

requires all hiring- and personnel-related documents be sent to the HR Department for

safeguarding. Exhibit P at pp. 57-58.

> [T]he policy is twofold, one, that the hiring supervisor maintain a
> recruitment file that has all the applications, interview notes,
> resumes for any particular job that they're attempting to fill, they
> are supposed to send to us separately and [the HR Department
> does] receive them, anybody that they've hired. But sometimes
> those applications and resumes get sent along with all the other
> applications and resumes of people that they didn't hire so they're
> included.

Id. The policy was first disseminated to LAWL employees in early 1999, one year before

LAWL anticipated litigation.[2] Id. at 44-45.

### 2.    LAWL Did Not Target for Destruction Documents Submitted by Male Applicants

The deposition testimony of just three former employees – out of dozens deposed – does

not show an undisputed record that LAWL's document retention was deficient. The testimony

EEOC relies upon is inapposite. Not only does it fail to support the allegation that LAWL

intentionally destroyed the resumes and applications of male candidates, but it supports LAWL's

---

[2]    EEOC's reference to the testimony of Scott Moyer – LAWL's Chief Operating
Officer from 1997 to 1998 – and former employees Nina Catagnus and Joy Freathy, is of no
consequence. EEOC Memorandum at p. 9. Not only is it undisputed that LAWL's document
retention policy was implemented in early 1999, but all three witnesses stopped working for the
Company before notice that EEOC was investigating a pattern or practice of discrimination in
hiring. See Employee List, attached hereto as Exhibit Q (indicating that Nina Catagnus was
discharged on November 11, 1999); Employee Change Form, attached hereto as Exhibit R
(indicating that Joy Freathy was discharged on December 16, 1999); Deposition of Scott Moyer
at pp. 25-26, attached hereto as Exhibit S (indicating that Mr. Moyer became involved in the
franchising portion of LAWL as of Spring/Summer 1998).

position that documents were not discarded. To overcome this fact, EEOC mischaracterizes and skips over significant testimony contrary to its argument.[3]

EEOC's selective citation to Melinda Temple-Passin's deposition conspicuously omits key testimony showing an absence of document destruction. Passin, who left the Company before September 2000, testified that she abided by LAWL's retention policy without fail and never disposed of *any* applicant documents – male or female. Deposition of Melinda Temple-Passin at pp. 9-12, 50-52, attached hereto as Exhibit T.

> Q.   Now, while you were employed with LA Weight Loss, there was a policy, was there not, of retaining applications or resumes?
>
> A.   Yes.
>
> Q.   Did you comply with this policy?
>
> A.   Yes, I did.
>
> Q.   After receiving an application or resume, irrespective of whether the person was interviewed or hired, you sent those resumes to corporate; did you not?
>
> A:   Yes, I did.
>
>              * * *
>
> Q.   What did you do with those applications?
>
> A.   They were put in a mailer and sent to corporate.
>
>              * * *
>
> Q.   Did you ever throw any applications away?
>
> A.   No, I did not.

---

[3]    LAWL reserves all rights to and will dispute the testimony at the time of trial. Similarly, LAWL does not waive its right to challenge the admissibility of the testimony upon which EEOC relies.

> Q.   Did you ever throw any applications away, because you
> believed the person would never be interviewed or hired?
>
> A.   No.
>
> Q.   Did you ever see anyone else throw any applications away?
>
> A.   No.

Id.

Similarly, Mercedes Generette – employed by LAWL from 1999 to 2001 – did not testify

that LAWL engaged in systemic destruction of male candidate submissions.  See New Hire and

Employee Change Forms, attached hereto as Exhibit U.  Rather, she recounted *one* incident

where a resume was thrown in the trash.  Deposition of Mercedes Generette at pp. 47-48,

attached hereto as Exhibit V.

> A.   I've seen her personally tear one up, and other ones, I couldn't
> tell you what she did with them.
>
> * * *
>
> Q.   Other than seeing Miss Bellone tear up that one application,
> did you ever see any applications for employment torn up or
> discarded?
>
> A.   No.

Id.

Finally, EEOC's summary of former employee Jodi Walters' deposition disregards

portions of her testimony that support LAWL's version of the facts.  Although Walters testified

she threw out applicant materials, she also recounted that Diane Rizio, a senior manager at

LAWL, said to "make sure that [Walters] forwarded the resumes so they would be on file."

Deposition of Jodi Walters at pp. 72-73, 97, attached hereto as Exhibit W.  Walters' testimony –

like Passin's – underscores that LAWL's document retention policy was known to employees

and proves nothing more than Walters' insubordination.

8

### 3.    LAWL Preserved and Produced or Made Available All Online Job Board Postings

EEOC would have the Court believe that LAWL destroyed *en masse* all electronic job postings submitted to Hotjobs.com. EEOC's abridged version of the facts is disingenuous at best. Not only does EEOC noticeably exclude LAWL's offer to make available for inspection *all* Hotjobs.com documents, but EEOC fails to mention months of discussion between the parties about data format.

Nearly all of LAWL's candidates apply online through one of three employment websites – Hotjobs.com, CareerBuilder.com or Monster.com. Deposition of Karen Siegel, November 11, 2004, at pp. 67, 76, attached hereto as Exhibit X. It is undisputed that LAWL produced to EEOC electronic images of all online submissions considered by the Company from CareerBuilder.com and Monster.com. It is also undisputed that LAWL made available for inspection every single electronic posting from Hotjobs.com. See Declaration of Aliza Karetnick at ¶¶ 3-5, attached hereto as Exhibit Y.

For a brief period, resumes posted on the Hotjobs.com website were viewed by recruiters and LAWL personnel, but not printed or saved to a Company computer. Exhibit X at pp. 200-01. All resumes and related postings were, however, maintained in their original format on Hotjobs.com's servers. Id. As the primary online job board for LAWL applicants, the volume of data requiring printing and conversion to image is alarming. Id. at 199-200. Indeed, as LAWL explained to EEOC in discovery, any attempt to produce the information independently would be unduly burdensome and excessively expensive.

> In order to get hard copies you literally would have to go into each individual posting and download each individual application separately and then print that....The time involved to do that would be astronomical....

Id.

9

To make available to EEOC *all* applicant data, LAWL worked with Hotjobs.com to convert candidate information into a machine-readable format that could be produced and accessed on CD. See Exhibit Y at ¶¶ 3-5; April 25, 2005, email from Aliza Karetnick to Ronald Phillips, attached hereto as Exhibit Z; May 24, 2005, letter from Aliza Karetnick to Ronald Phillips, attached hereto as Exhibit AA; June 9, 2005 email chain between Ronald Phillips and Aliza Karetnick, attached hereto as Exhibit BB; September 12, 2005, email from Ronald Phillips to Aliza Karetnick, attached hereto as Exhibit CC; September 27, 2005, email chain between Ronald Phillips and Aliza Karetnick, attached hereto as Exhibit DD. A sample of the converted data was provided to EEOC on CD. Exhibit AA. EEOC rejected the format, suggesting that it was not sufficiently comprehensive. Exhibit BB. In the interim, LAWL offered to provide EEOC with a computer and password to view and print directly from the Company's Hotjobs.com account. Id. EEOC rejected LAWL's offer.

LAWL does not maintain the computer servers containing Hotjobs.com postings and is not familiar with its data conversion process. EEOC, therefore, represented that it would take the deposition of Hotjobs.com to ferret out a comprehensive and functional format for electronic production. Exhibit CC. LAWL agreed to participate. Exhibit DD. EEOC said that it would issue a subpoena and pursue the deposition, going so far as to solicit LAWL's counsel's availability to participate. Exhibits CC and DD. EEOC never issued the subpoena and no deposition was held. In fact, between November 2005 and March 2006 – the discovery deadline – EEOC never again sought any Hotjobs.com information. Incredibly, although there is no dispute that the Hotjobs.com information exists and that it was available for review, EEOC claims that LAWL is accountable for spoliation and an adverse inference jury instruction should issue.

10

### 4.    LAWL's Expert Report is Not Evidence of Spoliation

The frailty of EEOC's spoliation claim is highlighted by its misreading of David Jones' expert report as evidence of document destruction. Paragraphs 61 and 62 of the report contain a description of the methodology Dr. Jones employed to derive a sound statistical sample. See Expert Report of David P. Jones, PhD at p. 27, attached hereto as Exhibit EE. They do not, however, illustrate or even suggest spoliation. Id.

It is undisputed that Dr. Jones' initial research sample called for 600 more resumes than were located. Id. at 27. As Dr. Jones' report makes clear, however, he neither chose the sample nor compiled the resumes. Id. at 12-16. The original list of 2,300 names was generated from the Access Database by LAWL's consultants. Id. at 12-14. See also Declaration of Christopher Starr at ¶ 5, attached hereto as Exhibit FF. The corresponding resumes and related materials were found on CD's containing applicant submissions categorized by region, which were produced to EEOC during discovery. Id. at ¶¶ 6-7. Copy Secure also printed the documents and made multiple copy sets. Id. at ¶ 8. One copy set was sent via Federal Express to LAWL's expert, David Jones, Ph.D. Id. LAWL's vendor, Copy Secure, conducted the search and provided LAWL's counsel with a list of 600 names for whom applicant materials were not found. Id. at ¶¶ 7-8.

In response to EEOC's Motion, LAWL investigated and determined that out of the 600 names, nearly 400 were from licensee markets or were speared. Licensee markets – Michigan, Nebraska, Tampa, Florida, Kansas – are not subject to this lawsuit and LAWL sends all candidate documents, if any, to the applicable market. Declaration of Nicola Fryer at ¶ 3, attached hereto as Exhibit GG. "Speared" denotes people who LAWL *invited* to apply for employment. Id. at ¶ 4. "Spears" do not independently submit a resume or application. In fact, they do not become applicants unless and until they accept LAWL's invitation to be considered

11

for a position. Id. LAWL's counsel and staff searched for some of the 200 remaining names and were quickly able to locate corresponding resumes, finding that they were overlooked by Copy Secure for miscoding, misspelling or inaccurate file type. Exhibit FF at ¶ 10. See also Excel Spreadsheet, attached hereto as Exhibit HH. There is no evidence and no reason to believe that EEOC is not in possession of all resumes. LAWL, however, does not intend to do EEOC's work by continuing to search for purportedly missing documents.

### 5.    LAWL Did Not Destroy Employee Resumes and Applications

EEOC wrongly assumes that its inability to find resumes and applications of LAWL employees is spoliation. EEOC Memorandum at pp. 6-9. Discovery, however, has not yielded any evidence that LAWL discarded resumes and applications after the Company anticipated litigation. Indeed, EEOC did not even complete its review of LAWL's document production before bringing this Motion. See EEOC Memorandum at p. 8, n. 1; EEOC Appendix C at 1, ¶ 5.

Buried in a footnote, EEOC discloses that it did not attempt to examine *tens of thousands* of documents because there was not "sufficient time" and because "upon *brief* visual inspection it appears these documents are primarily for the period 2004-2006, *though there are also a limited number of 2002 and 2003 documents.*" See EEOC Memorandum at p. 8, n.1; EEOC Appendix C at 1, ¶ 5 (emphasis added). That EEOC contends it did not have adequate time to inspect the complete set of the documents is absurd. It is undisputed that LAWL supplemented its production of resumes and personnel files at regular intervals. EEOC, however, consistently failed to retrieve the documents. See Exhibit FF at ¶¶ 2-4 and included Excel Spreadsheet. For example, over 58,000 pages of bates labeled resumes, applications, and personnel file forms were available for pick up on April 20, 2006. EEOC did not claim them until March of 2007, almost a full year later. Exhibit FF at Excel Spreadsheet.

12

### 6.    LAWL Reviewed Personnel Files for Completeness

EEOC makes much to do about LAWL's alleged failure to "track the location of hiring documents or to audit field managers' compliance with purported recordkeeping procedures" between the years 1997 and 2003. EEOC Memorandum at p. 12. EEOC's indignation is misplaced. First, there is no evidence that tracking and audit procedures did not exist during that time period. To the contrary, Karen Siegel – Senior Vice President of Human Resources – testified that each payroll coordinator individually checked the contents of new personnel files. See Exhibit P at p. 59. Second, LAWL was under no legal duty to track applicants or to conduct audits.

### 7.    LAWL Instructed Executive Search Group to Preserve All Resumes and Applications

EEOC's accusation that LAWL did not provide its third party recruiter – Executive Search Group ("ESG") – with any instructions about document retention is shocking. The record is rife with divergent evidence, all of which EEOC conveniently overlooks.

During LAWL's evolution from small "mom and pop" operation to a company holding one of the largest market shares in the weight loss business, recruiting and hiring procedures changed considerably. At times, recruiters were spread throughout LAWL's territories. Exhibit O at pp. 70-71. At others, recruiters were stationed in-house. Exhibit X at pp. 84-86. For several years, LAWL operated without any recruiters, and for less than two years, the Company contracted with a third party agency, ESG. Id. at 69-70, 75-76.

In 2002, LAWL engaged ESG to recruit and screen Area and Regional Managers. Id. at 69-70. In 2003, ESG took on the additional task of recruiting Assistant and Center Managers. Id. at 74. In keeping with past practice, LAWL handled all phases of recruiting and hiring for Counselors, who constitute the disproportionate majority of the Company's staff. Id. at 75-76

(indicating LAWL handled all recruiting and hiring for Counselors). LAWL stopped using ESG's services around October 2004. Id. at 75.

Contrary to EEOC's myopic reading of the record, LAWL specifically *instructed* ESG that "company policy requires [LAWL] to keep all resumes."[4] See July 23, 2004, email chain between David Fox and Elaine Bussoletti, attached hereto as Exhibit II. Further, ESG represented to LAWL that every applicant-related document was preserved. "When I asked [ESG's owners] for [the resumes] [they] said [they] did not have the manpower to make all the copies at that time but that [they] would work on it." Id. ESG never worked on it. "[W]e never received anything. And we made numerous, numerous requests to [ESG]." Exhibit X at pp. 182-83.

Discovery has not unearthed any evidence that ESG discarded candidate documents. In response to a subpoena issued by EEOC, ESG produced thousands of resumes and emails. See Subpoena to Executive Search Group, attached hereto as Exhibit JJ. To date, EEOC has not pointed to a single document missing from that production. Instead, EEOC plays fast and loose with the facts, arguing wholesale destruction by LAWL.[5]

### 8.    LAWL Preserved and Produced all Payroll Data

#### a.    Zurich Payroll Systems

LAWL produced or made available all payroll data requested by EEOC. From 1997 to 2000, LAWL used a third party vendor, Zurich Payroll Systems ("Zurich"), as its payroll

---

[4]    EEOC cites to Siegel's deposition to support its argument that the Company never instructed ESG to preserve applicant resumes. EEOC Memorandum at p. 11. Siegel, however, testified only that *she* never gave ESG any preservation instructions, not that *LAWL* failed to do so. See Exhibit X at pp. 176-77.

[5]    EEOC neither complained to ESG nor the Court that the documents produced in response to the subpoena were deficient.

administrator.  See Deposition of Christine Moffit at pp. 168-170, attached hereto as Exhibit KK.

The payroll data was maintained in machine-readable format on a computer located at LAWL,

and also in hard copy in the form of bi-weekly, quarterly and year-end reports.  Id. at 170.

Because of advances in technology and computer programming, Zurich performed an upgrade to

LAWL's payroll system in first quarter 1999.  Exhibit KK at pp. 171-172.  During the upgrade,

Zurich moved all active LAWL employees to a Windows-based operating system.  Deposition of

John Janthor at p. 43, attached hereto as Exhibit LL.  The inactive employees remained

accessible for a period of time via the old, DOS-based computer, which no longer exists.  Exhibit

KK at p. 175-76, 180-83.  LAWL never authorized Zurich to transfer only active employees to

the new system.  Zurich unilaterally performed the computer upgrade as payroll administrator.

Exhibit LL at pp. 45-46.

Although LAWL was under no obligation to preserve payroll documents and data before

the Determination, all Zurich information exists in paper format and was produced or made

available to EEOC.  The bi-weekly, monthly, quarterly and year-end reports contain information

on active and inactive employees and include, among other things, employee name, social

security number, center location and pay rate.  See Sample Zurich Documents, attached hereto

as Exhibit MM.  In addition to the reports, LAWL arranged for production of active data files

from the Zurich hard drive.  Those files included information on active employees from 1997 to

2000, and inactive employees from 1999 to 2000.  See Exhibit FF at ¶ 12.

EEOC's Memorandum does not identify what information, if any, LAWL failed to

produce during the course of discovery and conspicuously does not explain its relevance.  It is

undisputed that payroll information for *all* employees for whom Zurich administered payroll –

active and inactive – exists and is in EEOC's possession.

### b.    ADP

EEOC's request for an adverse inference on the basis that LAWL destroyed ADP payroll data is outrageous. EEOC admits receiving complete information during discovery. EEOC Memorandum at p. 6. EEOC is simply unhappy with the manner of production. Id. The law does not provide an adverse inference as a cure for EEOC's unhappiness. Id.

In first quarter 2001, LAWL began using ADP as its payroll administrator. Exhibit LL at p. 88. To begin service, ADP transferred all active employees to its operating system housed on LAWL's computer network. Id. at 81, 95. Inactive employee data remained within reach electronically through the Zurich harddrive in LAWL's payroll office. Exhibit KK at pp. 176, 180-81. In first quarter 2002, ADP initiated and performed an upgrade to the system. Id. at 195. The upgrade rendered data concerning inactive employees for the year 2001 accessible only in checkview format, which requires the user to manually flip through screen shots of employees' payroll history. Id. at 250-52, 289. Again, LAWL did not ask its administrator to alter access to inactive employee information. Id. at 194-96; Exhibit LL at pp. 100-01. In fact, LAWL attempted without success to restore the data to its original format and instructed ADP to never purge or modify the payroll data of any employee. Exhibit KK at pp. 196-97.

As with Zurich, the ADP payroll data affected by the upgrade is accessible and was produced or made available in an alternative format – electronically via checkview, electronically via quarterly and year-end CD's and in hard copy. Id. at 250-51; Exhibit O at pp. 171-72; List of ADP CD's, attached hereto as Exhibit NN; LACD 0283, a screen print from which is attached hereto as Exhibit OO.

### C.    EEOC's Claim for Retaliatory Discharge

EEOC's retaliatory discharge claim is unrelated to its allegation that LAWL engages in a pattern or practice of gender discrimination in hiring.  Koch, who intervened in this lawsuit on or around June 26, 2002, alleged a single claim for relief – retaliatory discharge for opposition to a purportedly unlawful employment practice under Title VII.  See Koch's First Amended Complaint, at ¶¶ 18-23, attached hereto as Exhibit PP.  In her First Amended Complaint, Koch sought relief in the form of lost wages, compensatory damages, punitive damages, attorneys' fees and expenses.  Id.  As plaintiff on behalf of Koch, EEOC also alleged unlawful discharge and demanded compensation for past and future pecuniary losses, punitive damages, generalized injunctive relief and reinstatement as an LAWL employee.  See EEOC's Amended Complaint, attached hereto as Exhibit QQ.

Koch settled her claims against LAWL in a confidential agreement dated November 21, 2005, a fact that EEOC conveniently ignores until the final page of its Memorandum.  See EEOC Memorandum at p. 31.  Koch seeks no additional monetary or injunctive relief.  See Stipulation and Order of Dismissal, attached hereto as Exhibit RR; Deposition of Kathy Koch, November 30, 2005, at pp. 9-13, attached hereto as Exhibit SS.  After settlement, Koch testified as follows:

> Q:  [D]oes that settlement agreement resolve all of your claims
> against LA Weight Loss Centers?
>
> A:  Yes.
>
> Q:  And does the settlement agreement resolve all your claims for
> loss [sic] wages?
>
> A:  Yes.
>
> Q:  And does the settlement agreement resolve all – currently all of
> your claims for lost benefits?
>
> A:  Yes.

Q: Does the settlement agreement resolve all of your claims for compensatory damages for your pain and suffering and emotional distress?

A: Yes.

Q: Does the settlement agreement resolve all of your claims against LA Weight Loss for your claim of punitive damages?

A: Yes.

\* \* \*

Q: Does the settlement agreement resolve all of your claims with respect to anything to do with your employment at LA Weight Loss Centers?

A: Yes.

\* \* \*

Q: Are you seeking any other relief, monetary or otherwise, from LA Weight Loss Centers for the claims you've raised in this lawsuit?

A: No. I am not seeking other relief.

Q: Are you seeking to ever be employed by LA Weight Loss again?

A: No, I am not.

Exhibit SS at pp. 11-13.

Purportedly out of concern for the "public interest," EEOC is not satisfied with the settlement and looks to try Koch's individual claim before a jury. See EEOC Memorandum at p. 31. "EEOC still maintains its retaliation claim… and seeks a result calibrated to serve [the] broader [public] interest." Id. EEOC does not, however, bother to specify what, if any, additional relief it is entitled to under the law. Id. EEOC does not present this Court with any evidence that the settlement was deficient, and the record does not contain any evidence that LAWL retaliated against other employees for complaining of gender-biased hiring practices.

18

There is simply no relief this Court can fashion, and the undisputed facts do not support EEOC's

bald assertion that it is entitled to pursue Koch's retaliation claim.

## III.    ARGUMENT

### A.    <u>EEOC's Motion is Procedurally Improper</u>

#### 1.    **EEOC Never Moved for an Order Compelling Discovery**

This Court bifurcated the discovery and trial into a liability/injunctive phase, followed by

a remedial/damages phase. See May 25, 2004 Order, attached hereto as Exhibit TT. Fact

discovery lasted nearly four years from May 2002 through March 2006. During that time, the

parties propounded and responded to over 80 interrogatories and in excess of 100 document

requests. In total, LAWL produced nearly 300 CD's containing hundreds of thousands of

electronic documents, data and images. The parties engaged in over 145 days of testimony in

cities and towns across the country. EEOC deposed nearly 45 LAWL managers, executives and

former employees, some on multiple occasions. LAWL deposed approximately 60 class

claimants in at least 13 states, as well as a dozen former employees having knowledge of the

claims or defenses in this case. EEOC *never* moved this Court for an order compelling discovery

or for sanctions pursuant to Federal Rule of Civil Procedure 37. Now, at this late stage, EEOC

contends it did not receive critical documents in discovery.

Expert discovery proceedings involved multiple reports, statistical analyses and models

of LAWL's employment data and practices prepared by experts for all parties. EEOC disclosed

one expert who conducted a statistical analysis – Elvira Sisolak. LAWL, on the other hand,

revealed several experts who pointed out the absence of evidence in EEOC's statistical analysis,

as well as provided affirmative reports concerning LAWL's hiring practices, procedures, policies

and qualifications for employment. Several experts were deposed. As with fact discovery,

EEOC *never* moved this Court for an order compelling discovery. Nonetheless, EEOC seeks

19

partial summary judgment and an adverse jury instruction arguing that its expert case is

prejudiced by an absence of documents.

### 2.    EEOC's Attempt to Invoke the Court's Inherent Powers is Unjustified

Courts have flexibility to "fashion an appropriate sanction for conduct which abuses the

judicial process" pursuant to their inherent powers. Chambers v. NASCO, Inc., 501 U.S. 32, 44

(1991). Precedent, however, cautions that inherent powers "must be exercised with restraint and

discretion." Id. See also Ausherman v. Bank of Am. Corp., 212 F. Supp. 2d 435, 442 (D. Md.

2002). Where other avenues of redress are available, courts should not rely upon their inherent

powers. "[W]hen there is bad faith conduct in the course of litigation that could be adequately

sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent

power." Chambers, 501 U.S. at 50.

Where a party blatantly fails to take advantage of an available Rule of Civil Procedure,

reliance on a court's inherent powers is especially inappropriate. Segal v. L.C. Hohne

Contractors, Inc., No. 2:02-1260, 2003 U.S. Dist. LEXIS 25145, at *16 (S.D.W. Va. Sept. 11,

2003), aff'd, 303 F. Supp. 2d 790 (S.D.W. Va. 2004), attached hereto as Exhibit YY. In Segal,

plaintiffs did not seek a court order for purported discovery violations. Instead, they "proceeded

straight to a motion for sanctions," ignoring the procedural mandate of Rule 37(a), which

> requires a party complaining of an incomplete or evasive discovery
> response to (1) give reasonable notice to other parties, (2) confer or
> attempt to confer in good faith with the party in an effort to secure
> the information without court action, and (3) file a motion to
> compel with a certification of the good faith effort to resolve the
> dispute.

Id. at *15-16. The court denied plaintiffs' motion. See also Samsung Elecs. Co. Ltd. v. Rambus

Inc., 439 F. Supp. 2d 524, 539-41 (4th Cir. 2006) (right to impose sanctions for spoliation arises

from court's inherent power to control judicial process and litigation, but power is *limited* to that

necessary to redress conduct that abuses the *judicial process*); <u>Wembley, Inc. v. Diplomat Tie Co.</u>, 216 F. Supp. 565, 573 n.3 (D. Md. 1963) (Rule 37 deals with the consequences of failure to make discovery).

EEOC did not avail itself of Rule 37 at the appropriate time. Here, EEOC contorts a belated discovery motion into one for summary judgment. EEOC's procedurally improper tactic lacks support in the law and is an unjustifiable attempt to invoke the Court's inherent powers for an adverse jury instruction.

Significantly, EEOC relies upon just a few cases in support of its Motion. All are inapposite, arising squarely under Rule 37, resulting in an injunction to force compliance with 29 C.F.R. § 1602.14 or involving a *complete* absence of evidence. See <u>Silvestri v. Gen. Motors Corp.</u>, 271 F.3d 583 (4th Cir. 2001) (case dismissed on summary judgment because plaintiff could not establish prima facie case for product defect where *sole* piece of evidence in case – motor vehicle – destroyed by plaintiff); <u>Zimmermann v. Assocs. First Capital Corp.</u>, 251 F.3d 376 (2d Cir. 2001) (adverse inference instruction issued at trial affirmed in employment action where defendant had *no* records of plaintiff's performance); <u>United States v. County of Fairfax</u>, 629 F.2d 932 (4th Cir. 1980) (injunctive relief granted for violation of record keeping statute); <u>Thompson v. HUD</u>, 219 F.R.D. 93 (D. Md. 2003) (Rule 37 sanctions for failure to produce emails did not include spoliation inference); <u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212 (S.D.N.Y. 2003) (Rule 37 motion for sanctions denied despite spoliation).

<u>Zimmermann</u> – the only case EEOC cites arising under 29 C.F.R. § 1602.14 – is distinguishable. As a single plaintiff employment action, pretext was paramount. <u>Zimmermann</u>, 251 F.3d at 381-84. The employer, however, admittedly destroyed *all* documents relating to the plaintiff, making it nearly impossible for her to establish that the defendant's proffered reason for

dismissal was a ruse. Id. at 379-80. Accordingly, the District Court for the Eastern District of

New York permitted the following jury instruction:

> If you find that the defendant could have produced these records,
> and that the records were within their control, and that these
> records would have been *material* in deciding facts in dispute in
> this case, then you are permitted, but not required, to infer that this
> evidence would have been unfavorable to the defendant.

Id. at 383. The court noted that "this is the only case that I have presided over where the

defendant has *no* records whatsoever – on [the plaintiff] or her performance." Id. at 380. Here,

LAWL has produced hundreds of thousands of documents and data relating to thousands of

applicants, current and former employees. Further, there is a material dispute of fact about

whether any documents are missing.

Curiously, EEOC never sought, and this Court never issued, an order compelling

production of the resumes, applications and payroll data EEOC now contends are missing.

EEOC never put LAWL on notice that its document production was deficient in any respect.

LAWL, therefore, was foreclosed from curing or justifying the alleged insufficiency. On an

analogous set of facts, the Segal court found "Plaintiffs' suggestion that [it] should invoke its

inherent power... singularly unpersuasive, given Plaintiffs' failure to comply with Rule 37."

Segal, 2003 U.S. Dist. LEXIS 25145, at *16. EEOC's appeal to this Court's inherent powers

should similarly fail and EEOC's disregard for Rule 37's procedural prerequisites should not be

countenanced with an adverse jury instruction.

    **B.**    **EEOC is Not Entitled to Summary Judgment or an Adverse Inference**

        **1.**    **Standard Applicable to Summary Judgment**

Notably, EEOC does not set forth the legal standard by which its Motion should be

decided. The standard for summary judgment, however, is well established and inarguable.

EEOC misses the mark by a wide margin.

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See EEOC v. Goodyear Aerospace Corp., 813 F.2d 1539 (9th Cir. 1987) (granting employer's motion for summary judgment because EEOC's claim rendered moot by employee's settlement).

In reviewing and ruling on a motion for summary judgment, courts are required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. Williams v. Aluminum Co. of Am., 457 F. Supp. 2d 596, 605 (M.D.N.C. 2006). It is well settled that the moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Once the movant has met its burden, the non-moving party must set forth specific facts, by evidence, showing the existence of a genuine issue of material fact. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### 2. LAWL First Anticipated Litigation Concerning Discrimination in Hiring on September 14, 2000

It is axiomatic that where no charge specific to the discrimination at issue is filed, notice of impending litigation is "the date on which the EEOC notified Defendant that it was expanding

its investigation to encompass" additional areas of discrimination. EEOC v. Optical Cable Corp., 169 F. Supp. 2d 539, 547 (W.D. Va. 2001). See also EEOC v. Gen. Elec. Co., 532 F.2d 359, 372 (4th Cir. 1976) (finding that where no charge was filed specific to the type of discrimination at issue, EEOC's determination of reasonable cause provided notice to the employer of claimed discrimination).

In this case, LAWL's first awareness that EEOC enlarged its inquiry was the Determination finding cause to pursue a pattern or practice of discrimination on the basis of gender. Exhibit M. Until EEOC issued the Determination, LAWL had notice of only one claim – Koch's contention that she was discharged in retaliation for complaining to EEOC about the Company's purportedly unlawful hiring policy. Overbroad discovery requests referencing multiple investigations and a letter accusing retaliatory discharge could not provide notice of a nationwide class action. See Exhibits C, G and H. EEOC had the ability at any time to issue a Commissioner's Charge for gender-biased hiring practices but failed to do so. Instead, it waited until the investigation of Koch was over two years old. LAWL can not now be held accountable for documents it did not retain in the absence of notice.

### 3.    The Facts Concerning LAWL's Preservation of Documents and State of Mind Are in Dispute

EEOC's request for an adverse inference for a purported violation of 29 C.F.R. § 1602.14 is baseless. Not only is there a material dispute of fact about LAWL's preservation of documents, but EEOC did not proffer even a scintilla of evidence that LAWL acted with the bad faith required for an evidentiary sanction.

The plain language of 29 C.F.R. § 1602.14 obliges employers to keep personnel records for one year from the date the record was created, or one year from the personnel action involved, whichever is later. In the context of a charge of discrimination, an employer must

preserve all personnel records relevant to the charge until final disposition. 29 C.F.R. § 1602.14.

These documents include

> personnel or employment records relating to the *aggrieved person*
> and to all other employees holding positions similar to that held or
> sought by the *aggrieved person* and application forms or test
> papers completed by an unsuccessful applicant and by all other
> candidates for the same position as that for which the *aggrieved
> person* applied and was rejected.

Id.[6] (emphasis added).

The regulation does not, however, contain specific penalties for violation of its record

retention requirements. Rather, courts have fashioned relief guided by the particular factual

circumstances before them. See Lombard v. MCI Telecomm. Corp., 13 F. Supp. 2d 621, 627-28

(N.D. Ohio 1998) (noting that sanctions are only available "if the facts prove egregious

enough"). These decisions are few in number and offer minimal guidance.

Despite the paucity of caselaw, it is clear that EEOC must establish bad faith for

imposition of an adverse inference. "[A]bsent bad faith, a violation of 29 C.F.R. § 1602.14, the

EEOC record retention regulation, would not automatically trigger an adverse inference." Park

v. City of Chicago, 297 F.3d 606, 616 (7th Cir. 2002). See also Mathis v. John Morden Buick,

Inc., 136 F.3d 1153, 1155 (7th Cir. 1998) (indicating adverse inference applies only if documents

destroyed in bad faith); Favors v. Fisher, 13 F.3d 1235, 1238-39 (8th Cir. 1994) (applying

rebuttable presumption where documents destroyed in regular course of business and no bad

faith indicated); Beniushis v. Apfel, No. 98 C 0395, 2001 U.S. Dist. LEXIS 3574, at *17-18

---

[6]      EEOC reads the words "aggrieved person" out of 29 C.F.R. § 1602.14 and would
have this Court construe the statute to require preservation of every shred of paper or computer
record created for any reason from the date of Koch's Charge to the present. EEOC's
interpretation is overbroad and renders the statute meaningless. Further, it makes compliance
impossible, particularly where EEOC did not issue delineated notice of a charge until two years
after the investigation began.

(N.D. Ill. Mar. 26, 2001), attached hereto as Exhibit ZZ (evidentiary sanction requires finding of bad faith or willfulness). An employer's destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced, would have contained information adverse to the employer's case. Park, 297 F.3d at 616. To draw an adverse inference, the employer must have destroyed the documents for the *purpose* of hiding adverse information. See Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 449-50 (4th Cir. 2004) (adverse inference requires showing that party knew evidence relevant to some issue at trial and that willful conduct resulted in loss or destruction). See also Mathis, 136 F.3d at 1155. "Thus, the crucial element is not that evidence was destroyed but rather the reason for the destruction." Park, 297 F.3d at 616 (citing S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co., 695 F.2d 253, 258 (7th Cir. 1982)). Here, EEOC failed to satisfy its burden and any request for an adverse inference should be denied.

### a.    Documents

EEOC did not present any evidence that documents were discarded after the Determination in violation of 29 C.F.R. § 1602.14. At no point over the course of discovery did EEOC identify a set or class of records that existed and that LAWL did not maintain. To the contrary, the evidence is clear that LAWL maintained and produced all payroll data from 1997 to 2006. Exhibits MM and NN. LAWL maintained and produced all CareerBuilder.com and Monster.com online applications. Exhibit P at pp. 73-79; Exhibit X at p. 235. LAWL maintained and made available for inspection all Hotjobs.com submissions. Exhibits Y, Z, AA, BB, CC, and DD. LAWL maintained and produced all resumes, applications, cover letters and applicant-related documents from the Determination date to the close of discovery. Exhibit X at pp. 255-58.

26

EEOC overstates the significance of Cypher Services, Inc.'s inability to find some resumes and applications electronically. That Cypher Services, Inc. did not locate documents in personnel files does not mean LAWL destroyed them. Nor does it mean LAWL did not produce them. Indeed, Cypher Services, Inc. did not review each of the over 400,000 resumes, applications and related documents produced by LAWL in this case. By its own admission, EEOC did not even give Cypher Services, Inc. in excess of 60,000 relevant documents turned over in advance of the discovery deadline. See EEOC Memorandum at p. 8, n. 1; EEOC Appendix C at 1, ¶ 5. If LAWL, in fact, was "losing" documents to preclude EEOC's comparator analysis, wouldn't it have disposed of the resumes and applications for *all*, not *some*, female employees? EEOC Memorandum at p. 22-30.

EEOC relies upon the deposition testimony of Christine Stonecipher to illustrate the importance of handwritten notations on employee resumes and applications. EEOC Memorandum at p. 30. According to EEOC, markings on resumes reflect "the true motivation for non-selection decisions – e.g., notes that a jury may infer are indicative of sex bias." Id. EEOC's reliance on Stonecipher's deposition is misplaced. Stonecipher actually testified that she wrote the word "man" on a resume because the document bore only a first initial, not because the applicant's gender was a factor in her hiring decision. Deposition of Christine Stonecipher at pp. 101-03, attached hereto as Exhibit UU. If LAWL was discarding documents, wouldn't it have destroyed *all*, not *some*, resumes with handwritten notes bearing on the Company's hiring decisions? EEOC Memorandum at p. 30.

### b.    Bad Faith

Even if EEOC had properly reviewed LAWL's document production and specified documents that existed but were destroyed, it would still not be entitled to relief for failure to amass any evidence of bad faith destruction. Indeed, the evidence belies any argument that

LAWL acted in bad faith, demonstrating instead that LAWL codified its document retention policy and that LAWL employees complied. Exhibit P at pp. 50, 57-58.

LAWL did not have notice of EEOC's intention to mount a class pattern or practice discrimination suit until September 14, 2000, the Determination date. LAWL could not, therefore, have been expected to retain documents indefinitely in anticipation of litigation before receipt of the Determination. See Exhibit M. Moreover, discovery demonstrates unequivocally that LAWL's document preservation protocol, which was disseminated in January 1999, and requires sending all hiring- and personnel-related documents to the HR Department for preservation, was followed. See Exhibit P at pp. 44-45, 72-73. EEOC has not presented a shred of evidence that LAWL discarded documents containing unfavorable or harmful information, either before or after the Company was on notice of impending litigation for a pattern or practice of discrimination.

The stark absence of any evidence that LAWL knowingly destroyed documents for the purpose of concealing negative information is dispositive. EEOC's talismanic invocation of the words "bad faith" cannot change that fact and its request for an adverse inference in the absence of intentional misconduct is inappropriate and should be denied.

### 4.    EEOC's Expert Analysis is Not Prejudiced

Even if LAWL had discarded resumes and applications, which it did not, EEOC's argument that the missing documents disadvantage its expert and cause prejudice is specious. EEOC Memorandum at pp. 19-20. Indeed, the argument is nothing more than a thinly veiled attempt to make up for Sisolak's complete failure to analyze or take account of hiring criteria. Analysis of Report on the Hiring of Men by LA Weight Loss Centers, Inc. by Seymour Adler at pp. 4-5, attached hereto as Exhibit VV. See EEOC v. Turtle Creek Mansion Corp., No. 3:93-CV-1649-H, 1995 U.S. Dist. LEXIS 12788, at *28 (N.D. Tex. May 18, 1995), aff'd, 82 F.3d 414

(5th Cir. 1996), attached hereto as Exhibit AAA (rejecting Sisolak's statistical analysis as "fatally flawed" because it did not consider the qualifications needed for the positions at issue).

Although it is undisputed that LAWL selects candidates for employment based upon specific, objective factors, Sisolak failed to consider whether applicants possessed any of the qualifications LAWL seeks. Exhibit VV at. pp. 6-7; Expert Report by Margaret S. Stockdale at p. 8, attached hereto as Exhibit WW. Sisolak's Report does not account for the objective, measurable hiring criteria actually applied by LAWL. Sisolak did not even examine the "subjective" factors she contends LAWL relies upon in evaluating candidates for hire. See Deposition of Elvira Sisolak at pp. 173-74, attached hereto as Exhibit XX. This shortcoming makes it impossible for EEOC to accurately compare those offered positions to those who were eligible for hire – male or female. That EEOC now contends Sisolak cannot rebut LAWL's expert opinion concerning past job experience is illogical. EEOC Memorandum at pp. 19-20. Sisolak could have attempted to do so with the hundreds of thousands of resumes and applications within EEOC's possession. Instead, she chose not to take advantage of them.

C.    **LAWL is Entitled to Summary Judgment on EEOC's Retaliatory Discharge Claim**

In a desperate attempt to piggy back onto and make use of the adverse inference instruction concerning Koch, EEOC presses on with its claim for retaliatory discharge. See EEOC Motion at p. 31. Arguing that the relief Koch received in settlement is unsatisfactory, EEOC seeks "a result calibrated to serve" the "public interest." EEOC's retaliatory discharge claim, however, is moot. Not only has Koch been made whole monetarily and released the Company from any further liability, but EEOC is not entitled as a matter of law to seek damages or injunctive relief.

29

"If it is no longer possible for the court to grant any effective relief whatever, the case is moot. This may occur… [if] the plaintiff has been made whole and seeks no further relief." See Moore's Federal Practice, Civil § 101.95 (2007). Here, there is no relief to bestow. First, it is undisputed that Koch's financial claims – lost wages, benefits, compensatory and punitive damages – were satisfied by settlement with LAWL. Exhibit R at pp. 9-13. Second, it is undisputed that Koch does not want to be reinstated as a LAWL employee. Id. at 13.

LAWL recognizes that EEOC's and Koch's rights of action are independent and does not quarrel with EEOC's contention that it may seek relief *different* from that provided in settlement. See Gen. Tel. Co. v. EEOC, 446 U.S. 318, 326 (1980); New Orleans Steamship Ass'n v. EEOC, 680 F.2d 23, 25 (5th Cir. 1982). Where, as here, lost wages, attorneys' fees, compensatory and punitive damages were satisfied in settlement, the only remedy available is equitable. EEOC v. Cosmair, Inc., 821 F.2d 1085, 1091 (5th Cir. 1987) (finding that an "employee can waive not only the right to recover in his or her own lawsuit but also the right to recover in a suit brought by the EEOC on the employee's behalf").

EEOC is not entitled to an injunction because discovery has not shown any evidence that, since Koch's discharge in 1998, LAWL retaliated against any employee for protesting an alleged policy of discrimination against men in hiring. Nor has discovery yielded any evidence that LAWL is likely to do so in the future. To the contrary, with a growing HR Department – formed towards the end of Koch's tenure – non-compliance with the law is improbable. There simply remains no judicially cognizable dispute for which the Court can fashion a remedy. Summary judgment should be granted in favor of LAWL.

In the alternative, EEOC is not entitled to an adverse inference because it has no right to jury trial for its retaliation claim, which is distinct from and unrelated to allegation of a pattern or

30

practice of gender discrimination. <u>See</u> <u>Timmons v. United States</u>, 194 F.2d 357, 359 (4th Cir.

1952) (no jury trial where complaint sought injunctive relief). <u>See also</u> <u>Francis v. Dietrick</u>, 682

F.2d 485, 486-87 (4th Cir. 1982) (equitable claims appropriate for trial by court, not jury);

<u>Skippy, Inc. v. CPC Intern'l, Inc.</u>, 674 F.2d 209, 215 (4th Cir. 1982) (where court properly

dismissed damage claims, injunctive relief determined without jury). Employment actions for

injunctive relief are not triable before a jury and this Court should deny EEOC's request for

adverse jury instruction. <u>Francis</u>, 682 F.2d at 485-87.

## IV.    CONCLUSION

For all of the foregoing reasons, LAWL respectfully requests that this Court grant

summary judgment in its favor on EEOC's retaliation claim and deny EEOC's Motion.


                                        _____/s/_____
                                        Elizabeth Torphy-Donzella (Bar # 10809)
                                        Shawe & Rosenthall LLP
                                        20 South Charles Street
                                        Baltimore, MD 21201
                                        Tel:  (410) 752-1040
                                        Fax:  (410) 752-8861

                                        David E. Landau
                                        Jonathan D. Wetchler
                                        Aliza R. Karetnick
                                        Wolf, Block, Schorr and Solis-Cohen LLP
                                        1650 Arch Street – 22nd Floor
                                        Philadelphia, PA 19103
                                        Tel:  (215) 977-2000
                                        Fax:  (215) 405-3724

Date:  May 4, 2007

## CERTIFICATE OF SERVICE

I, Elizabeth Torphy-Donzella, hereby certify that I caused a true and correct copy of the

Memorandum of Law in Opposition to Plaintiff EEOC's Motion for Partial Summary Judgment

and LA Weight Loss Centers, Inc.'s Cross Motion for Summary Judgment as to Kathy C. Koch

to be filed and served electronically on May 4, 2007. I further certify that a copy of the

Memorandum and all exhibits shall be served via first class mail upon:

> Ronald L. Phillips
> EEOC
> Baltimore District Office
> 10 South Howard Street, 3rd Floor
> Baltimore, MD 21201

> _____/s/_____
> Elizabeth Torphy-Donzella