# EXHIBIT F

Page 1

```
    IN THE UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF MARYLAND
            NORTHERN DIVISION
              - - -
EQUAL EMPLOYMENT        : CIVIL NO.
OPPORTUNITY COMMISSION :
      and               :
KATHY C. KOCH           :
   INTERVENOR/PLAINTIFF :
         v              :
L.A. WEIGHT LOSS        :
CENTERS, INC.           :
         Defendant      : WDQ-02-CV-648
              - - -
            OCTOBER 27, 2004
              - - -
```

30(b)(6) oral deposition of L.A. WEIGHT LOSS CENTERS INC., taken through its representative, KAREN SIEGEL, taken pursuant to notice, was held at the law offices of WOLF, BLOCK SCHORR & SOLIS-COHEN, 1650 Arch Street, 2nd Floor, Philadelphia, PA, beginning at 10:32 a.m., on the above date, before Nancy D. Ronayne, a Court Reporter and Notary Public in the Commonwealth of Pennsylvania.

- - -

```
       ESQUIRE DEPOSITION SERVICES
              15th Floor
       1880 John F. Kennedy Boulevard
       Philadelphia, Pennsylvania 19103
              (215) 988-9191
```

Page 90

1  Q. Dated April 21st?
2  A. April 21st, yes.
3  Q. Thank you. Let me mark as
4  Exhibit 11 a personnel document, a
5  vacation slash sick log that I will
6  represent to you has come from Lynne
7  Portlock's personnel file, indicating
8  that her planned vacation in July was not
9  to take place but instead she would be
10 using vacation days on May 21, May 22,
11 June 3, 4, 5, June 8, 9, 10, 11.
12     (Siegel-11 marked for
13     identification.)
14 BY MS. WHITE:
15 Q. Did you have any
16 discussions with anyone at L.A. Weight
17 Loss about Lynne Portlock's employment or
18 her leave time in April or May of 1998?
19 A. Not that I recall.
20 Q. Do you recall that
21 Portlock's position was changed in the
22 summer of 1998?
23 A. Not specifically.
24 Q. Do you recall whether

Page 91

1  Portlock was disciplined in any respect
2  on account of her conduct in terminating
3  Kathy Koch?
4  A. No, not that I recall.
5  Q. Who was Lynne Portlock's
6  direct supervisor in the summer of 1998?
7  A. I believe that would have
8  been Eileen Stankunus.
9  Q. Did you speak with Eileen
10 Stankunus in the summer of 1998, the
11 spring or summer of 1998, about Lynne
12 Portlock's employment status.
13 A. Possibly. I don't have a
14 specific recollection.
15 Q. Where would you look, where
16 could you look to refresh your
17 recollection?
18 A. There would-- it would be
19 notated in Lynne's file, Lynne's
20 personnel file.
21 Q. Do you recall having any
22 discussions with Eileen Stankunus or
23 Scott Moyer or Vahan Karabajakian about
24 disciplinary concerns associated with or

Page 92

1  surrounding Lynne Portlock and her
2  termination of Kathy Koch?
3  A. No.
4     MS. WHITE: This is going to
5     be 12.
6     (Siegel-12 marked for
7     identification.)
8  BY MS. WHITE:
9  Q. Did you get a copy of
10 Exhibit 12.
11 A. Yes.
12 Q. This letter instructs or
13 advises that Ms. Koch was terminated for
14 poor performance; is that a conclusion
15 that you made?
16 A. Yes.
17 Q. And you made that conclusion
18 for the company?
19 A. Yes.
20 Q. And you made that conclusion
21 on June 4th on the basis of your
22 investigation between the end of April or
23 early May 1998 and early June of 1998?
24 A. Yes.

Page 93

1     MS. WHITE: This will be
2     number 13.
3     (Siegel-13 marked for
4     identification.)
5  BY MS. WHITE:
6  Q. Did you receive the charge
7  of discrimination and notice of the
8  charge of discrimination appended to
9  Exhibit 13 in June of 1998?
10 A. Yes.
11 Q. And you sent the charge to
12 company counsel, Mr. Landau?
13 A. Yes.
14 Q. Upon your receipt of the
15 charge did you undertake any further
16 investigation of Koch's employment, her
17 discharge from employment or her claim of
18 retaliatory dismissal?
19     MR. LANDAU: I think it's
20     been asked and answered but you
21     can answer again.
22     THE WITNESS: Just insofar
23     as reviewing the information that
24     was obtained originally,

24 (Pages 90 to 93)