# EXHIBIT I

```
              In the U.S. District Court

       District of Maryland, Northern Division

------------------------------x
Equal Employment              :
Opportunity Commission and    :
Kathy Koch                    :

                              : NO. WDQ-CV-648

           v.                 :

                              :

LA Weight Loss Centers,       :
Inc.                          :
------------------------------x
```

October 11, 2005

DEPOSITION OF:

Karen K. Raybuck,

a witness, called by counsel pursuant to notice,

commencing at 2:00 a.m., which was taken at Wolf,

Block, 1401 New York Ave., N.W., Washington, D.C.

Page 58

1   Q. It's my understanding from testimony that
2   you had a conversation with Joy Freathy.
3   A. Yes.
4   Q. When did that conversation take place?
5   A. The one specifically with reference to me
6   being terminated, I don't know if it happened on the
7   29th or if it was the day before, but it was that
8   morning when I showed up to work late. There was a
9   snow storm.
10   Q. During the six weeks you were employed at
11   LA Weight Loss was your performance at LA Weight
12   Loss ever evaluated?
13   A. I do believe so.
14   Q. Do you recall by whom?
15   A. Joy.
16   Q. Before the date of your termination were
17   you ever provided any, were you ever provided with
18   any notice or advice on areas of improvement in your
19   performance?
20   A. Yes.
21   Q. When was that?
22   A. I don't know if it was two weeks prior to

Page 59

1   termination. Maybe approximately that amount of
2   time. What was the rest of the question?
3   Q. You've answered the question.
4   A. Okay.
5   Q. By whom were you provided that notice or
6   warning?
7   A. Joy.
8   Q. What did Joy tell you? Strike that.
9       Was that notice or warning provided verbally
10   or in writing?
11   A. I think it was both but I'd have to go
12   back and look at my notes. Definitely verbally but
13   I'm under the impression it was also in writing,
14   from what I remember.
15   Q. The verbal warning was from Joy Freathy?
16   A. Yes.
17   Q. What did Joy say?
18   A. The areas I remember our conversation
19   emphasizing was one of being to work on time,
20   setting an example for any other employees and the
21   other was my counseling techniques that I wasn't
22   very empathic and that I could improve on being more

Page 60

1   of a motivator to those that were losing their
2   weight.
3   Q. How did you respond to Joy's warning?
4   A. What do you mean by how did I respond?
5   Q. Did you have any response?
6   A. In that conversation?
7   Q. In that conversation at that particular
8   time?
9   A. I don't remember. I don't remember if I
10   was too upset or I just apologized. I don't
11   remember.
12   Q. Did Ms. Freathy provide you with a
13   timeframe within which to improve your performance?
14   A. I don't remember.
15   Q. Do you recall ever being on a probationary
16   period at LA Weight Loss?
17   A. That does sound correct.
18   Q. Do you recall that probationary period
19   being about approximately two weeks?
20   A. I do believe so.
21   Q. During that two week probationary period
22   you were asked to work on your people skills. Does

Page 61

1   that sound correct?
2   A. Yes.
3   Q. That two week probationary period
4   concluded on or around December 29, 1998, did it
5   not?
6   A. Yes.
7   Q. At which point you were discharged,
8   correct?
9   A. Yes.
10   Q. You were discharged by the company for
11   failing to adequately improve those people skills,
12   correct?
13       MR. PHILLIPS: Objection, foundation.
14   A. Their perception of it.
15   BY MS. KARETNICK:
16   Q. That's your understanding of the company's
17   position?
18   A. Yes.
19   Q. Ms. Raybuck, you did not agree with the
20   company's stated reasons for discharging you?
21   A. That's correct.
22   Q. And, in fact, you filed a charge of

16 (Pages 58 to 61)

Page 62

1  discrimination with the Equal Employment Opportunity
2  Commission, did you not?
3      A.  I did.
4      Q.  The basis for that charge was gender
5  disability discrimination?
6      A.  Yes.
7      Q.  As well as retaliation?
8      A.  The retaliation, I'm not sure of. I don't
9  remember that necessarily.
10     Q.  What was the basis for your claim that LA
11 Weight Loss discriminated against you on the basis
12 of your sex?
13         MR. PHILLIPS: I would like to
14 register an objection.
15         I don't want to do it with the witness
16 present because I don't want to influence her
17 testimony. I understand there's a question pending
18 but I do need to make my objection.
19         If counsel will allow me to make the
20 objection with the witness in the room, that's fine,
21 but if counsel wishes the witness to leave the room
22 I can make the objection that way too.

Page 63

1          MS. KARETNICK: Since I don't know
2  what the objection is, I think it's probably
3  advisable that the witness leave the room for the 30
4  seconds hopefully it will take to make the
5  objection.
6          (Pause)
7          MR. PHILLIPS: Just for the record,
8  the EEOC is making an objection to any line of
9  inquiry concerning the underlying factual basis for
10 any allegations of discrimination that were alleged
11 by Ms. Raybuck against LA Weight Loss in connection
12 with the charge of discrimination that she has
13 previously filed.
14         The bases for the objection are several
15 fold. One, it is consistent with our position that
16 we took during the Jody Walters deposition.
17         It is the position of the EEOC that
18 that kind of evidence is not relevant to any issue
19 in this case.
20         In any event, it would not be
21 admissible under federal rule of evidence 403 and to
22 inquire into that matter causes unnecessary expense

Page 64

1  to the parties in light of that fact.
2          In addition, I would encourage counsel
3  prior to conducting any examination regarding that
4  issue to inquire of Ms. Raybuck whether she ever
5  retained counsel regarding those claims and to the
6  extent that she did, I believe it would be
7  appropriate for counsel to be notified, inquiry into
8  this matter which would be in the scope of that
9  representation is being made, and having said that,
10 EEOC is obviously not going to obstruct this
11 examination on the subject matter.
12         Ms. Raybuck is, at least not sitting
13 here today, is not represented by counsel. She is
14 not represented by EEOC so EEOC is not going to give
15 her an instruction not to answer the question.
16         Furthermore, we would note that, unlike
17 the Jody Walters matter, there is no pending
18 administrative proceeding with respect to
19 Ms. Raybuck's declaration -- I'm
20 sorry -- Ms. Raybuck's charge of discrimination.
21         Having said that, if the inquiry goes
22 on for an extended period of time then we may seek

Page 65

1  to cut that off but for now we'll sit back and just
2  note our objection.
3          MS. KARETNICK: In response to EEOC's
4  objection to this line of inquiry regarding
5  Ms. Raybuck's notice of charge of discrimination, LA
6  Weight Loss' position is Ms. Raybuck's charge of
7  discrimination against LA Weight Loss may go to her
8  credibility as a witness and may have some
9  impeachment or other value which would not preclude
10 its admissibility under federal rules of evidence.
11         That being said, I assure Mr. Phillips
12 that this line of inquiry is not going to be
13 extensive, that we are not here to waste
14 Mr. Phillips' or the witness' time.
15         Furthermore, the privilege, if any,
16 that attaches to the basis for Ms. Raybuck's charge
17 of discrimination is her privilege, one which, if
18 she chooses to waive, she may.
19         So whether or not she was represented
20 by counsel, I think at this point it is of no
21 moment, especially in light of the fact that
22 Ms. Raybuck did not and cannot take action against

Page 66

1  LA Weight Loss at this point in time for events that
2  occurred in 1998, and on that, Mr. Phillips, your
3  objection is noted.
4       Do you have further to add?
5       MR. PHILLIPS: Thank you. I'll just
6  note for the record that while it is certainly true
7  that an individual can agree to waive a privilege,
8  the privilege belongs to the client.
9       Having said that, the requirements of
10 Maryland rule of professional responsibility 4.2 are
11 not waiveable by the client.
12      I suspect that that is also true under
13 the -- if she has retained counsel, which this may
14 all be academic. I understand that. But that I
15 suspect that that is also true under the applicable
16 rule, either 4.2 or DR4107 that may be applicable in
17 either the State of Virginia or in the District of
18 Columbia.
19      With respect to the charge, certainly
20 the EEOC would be willing to agree to stipulate that
21 there was such a charge but beyond that we do not
22 believe that any of these matters should be subject

Page 67

1  to examination at this point.
2       We would also note that the filing of a
3  charge indicates a good faith belief by a charging
4  party. Therefore, whether or not -- good faith
5  belief that they've been subjected to
6  discrimination.
7       Whether that belief is firmly grounded
8  or in fact or ultimately proves meritorious is not
9  itself relevant.
10      By signing a charge, an individual does
11 not warrant that -- does not guarantee that there
12 was, in fact, discrimination and, therefore, inquiry
13 into the factual foundation for the charge is not
14 productive as part of even testing the credibility
15 of the witness.
16      Having said that, we've made our
17 objection and we will not interfere at this time
18 with counsel's examination on the subject matter.
19      MS. KARETNICK: Let's go off the
20 record for a moment.
21      (A discussion takes place which is
22  held off the record)

Page 68

1       (The record was read as requested)
2  BY MS. KARETNICK:
3     Q.  Why don't I rephrase the question,
4  Ms. Raybuck?
5     A.  That would be great.
6     Q.  Why did you believe that LA Weight Loss
7  discriminated against you on the basis of your sex?
8     A.  I was pregnant and my pregnancy was an
9  issue.
10    Q.  How was your pregnancy an issue?
11    A.  I don't believe that their confidence in
12 my ability to sell the product during pregnancy was
13 there, while I was pregnant, was something they
14 believed I could do.
15    Q.  At the time you were hired by LA Weight
16 Loss were you pregnant?
17    A.  Yes.
18    Q.  At the time you were hired at LA Weight
19 Loss how many months pregnant were you?
20    A.  Weeks.
21    Q.  Were you aware that you were pregnant at
22 the time that you were hired by LA Weight Loss?

Page 69

1     A.  Yes.
2     Q.  Did you make anyone else at LA Weight
3  Loss, any of your superiors, aware that you were
4  pregnant?
5     A.  No.
6     Q.  At what point did people at LA Weight
7  Loss, that is your superiors, become aware that you
8  were pregnant?
9     A.  Couple of weeks into my employment there.
10    Q.  How did they become aware that you were
11 pregnant?
12    A.  I told them.
13    Q.  Who did you tell?
14    A.  Joy, the trainer.
15    Q.  Why did you believe they did not have
16 confidence in your abilities to sell product while
17 pregnant?
18    A.  My need for eating, breaks and so forth,
19 became an issue.
20    Q.  As an area manager, not one in training as
21 you were the six weeks you were employed at LA
22 Weight Loss, but as a functioning area manager would