# EXHIBIT V

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

NORTHERN DIVISION

- - - - - - - - - - - - - - - - -X

EQUAL EMPLOYMENT OPPORTUNITY      :

COMMISSION,                       :

      Plaintiff,             :

KATHY C. KOCH,                    : Case No

      Intervenor/Plaintiff,  : WDQ-02-CV-648

   v.                             :

LA WEIGHT LOSS CENTERS, INC.,     :

      Defendant.             :

- - - - - - - - - - - - - - - - -X  Pages 1-106


DEPOSITION OF MERCEDES GENERETTE
District of Columbia
Tuesday, September 6, 2005




Reported by: Marijane Simon, RDR, CLR

Job No. 174959

Page 46

1  A. In Falls Church.
2  Q. In Falls Church?
3  A. Yes.
4  Q. -- as a medical technician -- were you
5  responsible for hiring?
6  A. No.
7  Q. Were you involved in the hiring
8  process at all?
9  A. No.
10  Q. Now, you occupied four positions over
11  your tenure -- during your tenure at LA Weight
12  Loss as I understand it: counselor, assistant
13  manager, manager, and med tech.
14  A. Yes.
15  Q. Is it your testimony that at no time
16  were you responsible or involved in hiring except
17  for the one interview that you described?
18  A. Right. And except for just referring.
19  That was it.
20  Q. Did you ever have anyone walk into
21  the -- to your center, either in Manassas or in
22  Falls Church, and submit an application for

Page 47

1  employment?
2  A. Yes.
3  Q. Were you the one to receive those
4  applications?
5  A. Yes.
6  Q. What did you do with those
7  applications after you received them?
8  A. Give them to Kim Bellone.
9  Q. By "application," by the way, I'm sort
10  of referring generally to either the submission of
11  a resume or completion of an application that is
12  LA-Weight-Loss-specific; so in instances where you
13  received any of those documents, it's your
14  testimony that you passed those on to Kim Bellone?
15  A. Yes.
16  Q. Do you know what Kim did with those
17  documents?
18  A. Some of them, she would read them and
19  call them in for an interview.
20  Q. Mm-hmm.
21  A. I've seen her personally tear one up,
22  and other ones, I couldn't tell you what she did

Page 48

1  with them.
2  Q. Do you know why she tore up one of the
3  applications?
4  A. The patient was -- The person was
5  HIV-positive.
6  Q. Do you recall that person's name?
7  A. No, I don't.
8  Q. Other than seeing Miss Bellone tear up
9  that one application, did you ever see any
10  applications for employment torn up or discarded?
11  A. No.
12  Q. Do you know whether Ms. Bellone sent
13  applications and related documents to corporate?
14  A. I don't know.
15  Q. Do you know or were you familiar at
16  the time that you were employed with what LA
17  Weight Loss's record retention policy was, if any?
18  A. No.
19  Q. Did you ever hear anyone discuss LA
20  Weight Loss's records retention policy?
21  A. No.
22  Q. Did you ever hear anyone at LA Weight

Page 49

1  Loss discuss what should be done with applications
2  after they're submitted?
3  A. No.
4  Q. Now, Ms. Generette, you've testified
5  that you signed a form stating that you received
6  the employee handbook.
7  A. Yes.
8  Q. And the employee handbook, according
9  to that form, contains LA Weight Loss's policies
10  and procedures.
11     Do you have any recollection of
12  reading the book?
13  A. I'm sure I did.
14  Q. Do you have any recollection of
15  whether or not that handbook contained an EEO
16  policy regarding hiring?
17  A. I'm sure it did.
18  Q. You're sure it did?
19  A. I'm sure it did, but I'm not -- I
20  can't say exactly what was in the book at the
21  time. It's been a while.
22  Q. It's been a while?

13 (Pages 46 to 49)