IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, NORTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY : 
COMMISSION, :
            :
       **Plaintiff,** :
            :
    **and** :
            :
KATHY KOCH, : **CASE NO.: WDQ 02-CV-648**
            :
       **Intervenor/Plaintiff,** : **JURY DEMANDED**
            :
    **v.** :
            :
LA WEIGHT LOSS CENTERS, INC., :
            :
       **Defendant.** :
_____ :

## REPLY TO PLAINTIFF EEOC'S OPPOSITION TO LA WEIGHT LOSS CENTERS, INC.'S MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

EEOC's ninety-five page memorandum in opposition to summary judgment is best described as volume over substance. It does not proffer the requisite level of evidence refuting LA Weight Loss Centers, Inc.'s ("LAWL") position that the Company's standard operating procedure has been and continues to be in compliance with the strictures of Title VII. Further, it does not substantiate the contention that EEOC is an exceptional plaintiff exempt from the temporal restrictions applicable to all others litigating under Title VII. Accordingly, LAWL's motion for summary judgment should be granted.

## II.    ARGUMENT

### A.    EEOC's Evidence Does Not Establish that LAWL Regularly and Purposefully Discriminated Against Men in Hiring

To establish a prima facie case of a pattern or practice of disparate treatment, EEOC must prove that LAWL "*regularly* and *purposefully* treated [men] less favorably, and that unlawful discrimination was [LAWL's] regular procedure or policy." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 360 (1977) (emphasis added); Morgan v. UPS, 143 F. Supp. 2d 1143, 1147-48 (E.D. Mo. 2000), aff'd, 380 F.3d 459 (8th Cir. 2004). "Proving isolated or sporadic discriminatory acts by [LAWL] is insufficient...." Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 875-76 (1984). Rather, EEOC must establish by a preponderance of evidence that "discrimination was [LAWL's] *standard operating procedure* – the regular rather than the unusual practice." Teamsters, 431 U.S. at 336 (emphasis added). See also Cooper, 467 U.S. at 875 ("[D]emonstrating the existence of a discriminatory pattern or practice establishe[s] a presumption that the individual class members ha[ve] been discriminated against...."); Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 759-60 (4th Cir. 1998), vacated and remanded in part on other grounds, 527 U.S. 1031 (1999). No matter how viewed, EEOC's limited testimony, near total lack of inculpatory documents and flimsy statistics are inadequate to make out a case of a nationwide pattern or practice of discrimination in hiring.

#### 1.    EEOC's "Direct Evidence" Consists of Isolated Second- or Third- Hand Remarks, Temporally Limited Comments and Documents Unrelated to LAWL

##### a.    The Alleged Remarks by LAWL Employees are Not Direct Evidence of a Nationwide Pattern or Practice of Discrimination

EEOC begins its opposition arguing that discovery yielded an abundance of "direct evidence" of discrimination. See Plaintiff EEOC's Memorandum in Opposition to Defendant

LA Weight Loss Centers, Inc.'s Motion for Summary Judgment ("EEOC Memorandum") at pp.
5-14. Specifically, EEOC focuses on an alleged admission by Vahan Karian – LAWL's founder
and owner – that men should not be hired. EEOC conveniently fails to mention, however, that
the supposed comment was communicated third-hand by a former manager – who denies the
statement – to her subordinate in 1998. Id. at 5. EEOC also ignores the significant fact that no
other admissions or relevant statements are attributable to Karian. Yet, EEOC concludes that
Karian directed discrimination against men from 1997 to the present. How does it reach this
conclusion? By arguing that Karian's continued ownership of the Company means an ongoing
nationwide pattern or practice. Without more, however, Karian's statement is just an isolated
remark in the distant past.

In the same way EEOC overstates the significance of Karian's purported remark, it
overplays the testimony of former employees with hiring authority and ignores critical factors of
their employment. First, most of the former employees upon whose testimony EEOC relies
worked for LAWL in just five states and the District of Columbia between the years 1997 and
2002. See Memorandum of Law in Support of Defendant LA Weight Loss Centers, Inc.'s
Motion for Summary Judgment at pp. 22-24. Second, they unanimously testified to being under
the supervisory control of Eileen Stankunas, who left the Company in 2002, or her subordinates.
Id. Third, they unanimously attributed to Stankunas and her charges any purported policy
against hiring men. Id. Rather than suggest an ongoing company-wide policy against hiring
men, at best their testimony indicates that a single supervisor in a single territory used her
position to influence some hiring managers under her supervision.

There is no dispute that the employees who did not leave the Company by 2002 – Lesia
Petrizio and Karian – became increasingly removed from LAWL's hiring. See Deposition of

3

Lesia Petrizio, at pp. 75-76, 156-57, 279-80, attached hereto as Exhibit A; Deposition of Vahan Karian, at pp. 55-56, 76-77, attached hereto as Exhibit B. As the Company's human resources department expanded, as equal employment policies were codified and as the management structure expanded, Petrizio and Karian were minimally involved in hiring and the policies according to which it was effected. Exhibit A at pp. 75-76, 156-57, 279-80; Exhibit B at pp. 55-56, 76-77. Again, it does not follow that because Karian owns LAWL, unlawful practices that *may* have been in effect in 1997 continued to exist thereafter. EEOC's "direct evidence" does not evince a pervasive and continuing practice of unlawful gender discrimination in hiring. See EEOC v. Fed. Reserve Bank, 698 F.2d 633, 643-44 (4th Cir. 1983), rev'd on other grounds, Cooper, 467 U.S. at 878 (finding 20 or 40 class members testifying of class discrimination adequate, but three or even seven incidents of discrimination over a period of years inadequate); Goff v. Continental Oil Co., 678 F.2d 593, 597 (5th Cir. 1982), overruled on other grounds, Carter v. South Cent. Bell, 912 F.2d 832, 840 (5th Cir. 1990) (finding that three witnesses' accounts of racial discrimination is not enough to prove a company-wide pattern or practice of discrimination).

### b.    LAWL's Documents are Not Direct Evidence of a Nationwide Pattern or Practice of Discrimination

The documentary evidence relied upon does not push EEOC over the hurdle. The single document containing a discriminatory instruction about hiring is one the Company never even used. See Deposition of Karen Siegel, November 11, 2004, at pp. 346-47, 356, attached hereto as Exhibit C. The undisputed testimony is that the document was once utilized in connection with the creation of a franchise, which is not subject to this lawsuit, sometime during the summer of 1997. Id. at 333, 343-44.

EEOC also argues that evidence of discrimination can be found in LAWL's internal training and hiring documents. EEOC Memorandum at pp. 33-35. That LAWL's hiring guides may make use of the pronoun "she" more often than its male equivalent, is not discriminatory. Indeed, Seymour Adler, Ph.D., who performed an audit of the Company's hiring process, found that the materials used by recruiters and managers are gender neutral. "The commitment to fairness and race- and gender- neutrality is expressed not just in policy but in practice." Expert Report by Seymour Adler, containing Review of Recruitment and Selection Processes at p. 26, attached hereto as Exhibit D.[1] Dr. Adler's findings are unrebutted.

That LAWL may have recruited applicants from "female-oriented websites and newspapers" such as "womensjobsearch.net" is neither inherently discriminatory nor evidence of intentional discrimination in hiring. To the contrary, it is nothing more than a reflection of the Company's efforts to recruit from sources known to yield candidates with the core competencies relevant to job success. See id. at 6-7. Again, EEOC overstates the significance of its documentary evidence and draws inferences that are inappropriate at this stage.

## 2. EEOC's Statistics and Anecdotal Evidence are Insufficient to Show a Nationwide Pattern or Practice of Discrimination

Absent adequate direct evidence of a pattern or practice of discrimination, a plaintiff must produce evidence showing statistical disparities between similarly situated protected and unprotected employees. Teamsters, 431 U.S. at 360. That evidence, which can be rebutted as inaccurate or insignificant, is not sufficient without anecdotal evidence. Coker v. Charleston County Sch. Dist., No. 92-1589, 1993 U.S. App. LEXIS 20836, at *17-18 (4th Cir. Aug. 16,

---

[1]     Dr. Adler was hired independently by LAWL to perform an audit of the Company's recruitment and hiring policies and processes. Dr. Adler was hired as an expert witness in this case after his audit was completed.

1993), attached hereto as Exhibit E (affirming district court's grant of summary judgment to defendant because plaintiffs only proffered deposition testimony of three plaintiffs, which was not enough to support usual practice). Without considerable individual testimony recounting specific instances of discrimination, statistical evidence does not carry a plaintiff's burden of proof in a disparate treatment case. See Chisholm v. United States Postal Serv., 665 F.2d 482, 495 (4th Cir. 1981); Coker, 1993 U.S. App. LEXIS 20836, at *17-18, citing King v. Gen. Elec. Co., 960 F.2d 617, 624 (7th Cir. 1992).

### a. EEOC's Statistics Alone are Not Adequate Evidence of a Nationwide Pattern or Practice of Discrimination

Unaided, the statistical disparity that EEOC claims exists between male and female hires at LAWL is not enough to establish that intentional discrimination against men was the Company's standard operating procedure from 1997 to the present. Teamsters, 431 U.S. at 360. See also Coker, 1993 U.S. App. LEXIS 20836, at *17-18. At best, EEOC's flawed statistical analysis reveals an undefined disparity that is "statistically significant." See EEOC Exhibit 143 at p. 16.[2] EEOC presents no evidence that the disparity comes close to the robust five to eight standard deviations deemed legally adequate for a prima facie case of discrimination. Id. See Lewis v. Bloomsburg Mills Inc., 773 F.2d 561, 569 (4th Cir. 1985) (statistical evidence demonstrating hiring levels at five to eight deviations sufficient to satisfy prima facie case of disparate impact).

---

[2] All EEOC exhibits referenced are appended to Plaintiff EEOC's Memorandum in Opposition to Defendant LA Weight Loss Centers, Inc.'s Motion for Summary Judgment.

> **b.  EEOC's Anecdotal Evidence Does Not Sufficiently Buttress the Statistical Analysis**

Analyzing EEOC's statistics alongside the anecdotal testimony presented, EEOC still cannot carry its burden.  See Chisholm, 665 F.2d at 495; Coker, 1993 U.S. App. LEXIS 20836, at *17-18, citing King, 960 F.2d at 624, 627.  Even if all class member testimony is admissible, which it is not, the evidence suffers from fatal temporal and geographic limitations.  The testimony EEOC proffers that gender is LAWL's motivation for not hiring men is limited to the early years of the Company's existence – 1997 to 2002 – and to only a few states in which LAWL operates.

EEOC obfuscates this significant evidentiary problem by burying the reader in page after page of deposition summaries resulting in the unsupported conclusion that LAWL failed to hire *all* class claimants because of their gender.  EEOC's erroneous conclusion, however, is nothing more than an *inference* that discrimination is the basis for class members' non-hire.  See EEOC Memorandum at pp. 16-31.

EEOC references the testimony of twenty-one claimants it selected from a pool of nearly 300.  Yet, of the twenty-one class members upon whose testimony EEOC relies, just ten provide any anecdotal evidence that their gender was a factor in LAWL's decision not to offer employment, all of which is limited to the years 1997 to 2002.[3]

The remaining eleven claimants have no relevant testimony.  Thus, in a desperate attempt to piece together additional support for its weak statistical case, EEOC compares their credentials to those of women hired by the Company, drawing the conclusion that gender was the impetus for rejection.  EEOC's approach is out of keeping with this Court's bifurcation order, which

---

[3]    LAWL does not contest the admissibility of the claimants' testimony for purposes of summary judgment, but reserves the right to do so at a later stage in the litigation.

provides that LAWL's proffered reasons for not hiring individual class members is appropriate at the damages, not liability, phase.

Moreover, EEOC's tactic is contrary to law. See Woodward v. UPS, Inc., 306 F. Supp. 2d 567, 574-75 (D.S.C. 2004) (citing Houck v. Polytechnic Inst. & State Univ., 10 F.3d 204, 206-07) (4th Cir. 1993)). See also Moore v. Capital Region Workforce Dev. Bd., 359 F. Supp. 2d 133, 137-38 (D. Conn. 2005) (plaintiff must show she is similarly situated to comparators in all material respects); In re Chevron U.S.A., Inc., 109 F.3d 1016, 1020 (5th Cir. 1997) (cases to be tried must be representative of the larger group of cases or claims from which they are selected). Isolated incidents or random comparisons demonstrating disparities in treatment are insufficient to draw an inference of discrimination without additional evidence that the alleged phenomenon of inequality exists with respect to the entire relevant group of applicants. Woodward, 306 F. Supp. 2d at 574-75. EEOC did not conduct a class-wide study of all comparators and therefore cannot impute LAWL's decision to hire equally or less qualified women to the entire class of men. Further, EEOC did not provide any evidence that the comparators upon whom it relies are similarly situated "in all relevant respects." Hollifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). In short, EEOC's use of comparator evidence – inaccurately dubbed "anecdotal" – is illegitimate and cannot shore up EEOC's statistics.

**B.      EEOC is Required to Provide Adequate Notice of its Investigation**

EEOC's dissertation concerning its independent statutory authority to pursue claims in the public interest is not responsive to LAWL's argument that notice of an alleged pattern or practice of discrimination was first provided by the Reasonable Cause Determination ("Determination"). See Determination, attached hereto as Exhibit F. See also EEOC Memorandum at pp. 81-83. LAWL does not quibble with EEOC's right to investigate or initiate suit independent of a charge. Nor does LAWL quarrel with EEOC's authority to examine

purported discrimination extending beyond a charge's four corners. Rather, LAWL takes issue with EEOC's baseless assertion that it is not required to provide notice of the scope of its pre-complaint investigation to trigger a target company's document retention obligations or toll the limitations period codified in Title VII.

It is clear that where no charge specific to the discrimination at issue is filed, notice of impending litigation is "the date on which the EEOC notified Defendant that it was expanding its investigation to encompass" additional areas of discrimination. EEOC v. Optical Cable Corp., 169 F. Supp. 2d 539, 547 (W.D. Va. 2001). See also EEOC v. Gen. Elec. Co., 532 F.2d 359, 372 (4th Cir. 1976) (EEOC's determination of reasonable cause provided notice to employer where no specific charge was filed). As discussed at length in LAWL's memoranda in support of and in opposition to summary judgment, the Company's first awareness that EEOC enlarged its inquiry was the Determination finding grounds to pursue a pattern or practice of discrimination on the basis of gender. Until EEOC issued the Determination, LAWL had notice of only one unrelated claim – intervenor Kathy Koch's allegation of retaliatory discharge.

The administrative history of Koch's claim is simple and in *no way* suggests EEOC was looking into a company-wide pattern or practice of discriminatory conduct until the Determination:

- On April 21, 1998, LAWL received a letter from Koch's counsel advising that Koch believed she was impermissibly discharged for lodging a complaint about gender-biased hiring practices with EEOC. See April 21, 1998, letter, attached hereto as Exhibit G.

- On June 22, 1998, Koch filed an amended charge ("Charge") against LAWL setting forth a single retaliatory discharge claim. See Charge, attached hereto as Exhibit H.

- On November 3, 1998, EEOC sent LAWL a request for "information and records relevant to the subject charge of discrimination," which did not include a demand for

information or documents pertaining to discriminatory hiring. <u>See</u> November, 3, 1998, request for information, attached hereto as Exhibit I.

- On May 10, 2000, EEOC issued a bare document request in connection to three distinct charges – including Koch's – two of which concerned pregnancy discrimination. The document request did not specify that EEOC considered pursuing a pattern or practice of reverse gender discrimination in hiring. <u>See</u> May 10, 2000, document request, attached hereto as Exhibit J.

- On September 14, 2000, EEOC propounded the Determination finding cause to pursue a pattern or practice of gender discrimination against men in hiring. <u>See</u> Exhibit F.

A review of the documents cited above shows that EEOC attempts to substitute expansive, vague discovery demands and Koch's allusion to an allegedly discriminatory hiring policy for notice of a nationwide pattern or practice investigation. The law does not support EEOC's approach. <u>See</u> <u>Optical Cable Corp.</u>, 169 F. Supp. 2d at 547; <u>Gen. Elec. Co.</u>, 532 F.2d at 372. By its nature, discovery is overbroad. Were it the case that requests for discovery constituted official notice of governmental investigation or impending litigation, companies would be forced to divine EEOC's intent with each request and the concept of a Commissioner's Charge would be moot. Indeed, EEOC had the ability at any time to issue a Commissioner's Charge for gender-biased hiring practices, but elected to keep LAWL in the dark. EEOC did not even respond to LAWL's relevance objections to document requests. Believing itself a specially favored litigant immune from any statutorily prescribed limitations period, EEOC waited over two years to enlighten LAWL that the Company was being probed for gender discrimination in hiring. LAWL should not be penalized for EEOC's delay and unjustified failure to make clear its intent to investigate a pattern or practice of discrimination in violation of Title VII.

### C.    <u>Title VII's Statutory Filing Limitation Applies to Pattern or Practice Cases</u>

Despite EEOC's assertion otherwise, the language of Title VII is unambiguous and neither invites nor warrants judicial interpretation. In fact, it makes decidedly clear that a

statutory limitations period is not "theoretical," as EEOC suggests, but a very real durational

boundary applicable to pattern or practice claims.  EEOC Memorandum at p. 81.  See also

Ledbetter v. Goodyear Tire & Rubber Co., Inc., No. 05-1074, slip op. at 9, 11-12 (U.S. May 29,

2007), attached hereto as Exhibit K (holding that discriminatory act must have occurred within

180 days of filing charge for plaintiff to recover for Title VII violation); Optical Cable Corp.,

169 F. Supp. 2d at 546-47 (finding 180-day limitations period applicable to pattern or practice

cases).

Section 2000e-6(e) confers on EEOC the authority to investigate and act on a charge of

pattern or practice of discrimination.  It further provides that "[a]ll such actions shall be

conducted in accordance with the procedures set forth in section 2000e-5 of this title."  Section

2000e-5, in turn, requires that a charge of discrimination be filed with EEOC within 180 days of

the alleged unlawful employment practice.  By reference to the procedures of 42 U.S.C. § 2000e-

5, pattern or practice charges are subject to the same filing limits as all other discrimination

charges.  Nowhere does Title VII specify that EEOC is excepted from the temporal restrictions

pertinent to all other plaintiffs.

In this case, the plain statutory language of Title VII clearly confines the scope of the

class to those who applied to LAWL during the 180-day period immediately preceding EEOC's

Determination.  Courts presented with analogous facts agree.  The court in Optical Cable Corp.,

for example, faced the precise issue at bar.  Holding that the statutory limitations period applied

to class claims, the court limited the class to within 180 days of the charge of systemic race and

gender discrimination filed with EEOC.  Id. at 542, 545-47.  In EEOC v. Joe's Stone Crabs, Inc.,

296 F.3d 1265, 1271-72 (11th Cir. 2002), the Court of Appeals for the Eleventh Circuit similarly

held that class members on whose behalf EEOC brings suit are subject to the applicable statute

of limitations. The court reasoned that "a one-time violation... does not extend the limitations period... The alleged acts at issue – the failure to hire the claimants because they were women – were discrete, one-time employment events that should have put the claimants on notice that a cause of action had accrued." Id. See also Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1192 (9th Cir. 2003) (holding that plaintiff's early failure to hire claims are time-barred despite allegation of pattern of discrimination on the basis of national origin); Domingo v. New England Fish Co., 727 F.2d 1429, 1442-43 (9th Cir. 1984) (holding that because plaintiff first filed with state agency, class began 300 days before charge); EEOC v. United Ins. Co. of Am., 666 F. Supp. 915, 917 (S.D. Miss. 1986) (holding that only those employees who could have filed individual charges with EEOC at the time class filing was made are proper members of the litigating class).

EEOC makes much to do about General Telephone v. EEOC, 446 U.S. 318 (1980), arguing that the Supreme Court granted EEOC more leeway in enforcement actions than private litigants. EEOC Memorandum at pp. 81-82. A careful analysis of the case, however, reveals that the Court excused EEOC only from *procedural* rules that do not affect *substantive* rights. Specifically, the Court held that EEOC enforcement actions under Title VII were not subject to or inhibited by Rule 23 class action certification. Gen. Tel., 446 U.S. at 325-26. It did not, as EEOC implies, excuse statutory filing requirements. There is simply no support in General Telephone for the proposition that EEOC has unique authority to seek relief for otherwise stale claims.

EEOC's reliance on Occidental Life Ins. Co. v. EEOC, 432 U.S. 355 (1977), is also misplaced. There, the Court found that EEOC – unlike private plaintiffs – was not required to file a *district court action* within 180 days of the filing of the charge with EEOC. Id. at 366.

The Court did not, however, hold that EEOC could seek relief on behalf of claimants who sustained injury before the limitations period. Id. at 366. EEOC does not enjoy favored litigant status exempting it from the restrictions of Title VII. Accordingly, LAWL's motion for summary judgment concerning Title VII's filing limitation should be granted.

### D.    The Doctrine of Continuing Violation is Inapplicable to this Case

EEOC's alternative argument – that Title VII's filing limitation is irrelevant to this case because LAWL's purported conduct is a continuing violation – similarly fails. The doctrine of continuing violation is "actually a conglomeration of several different ideas." Williams v. Owens-Illinois, Inc., 665 F.2d 918, 924 (9th Cir. 1982) (citation omitted). It connotes a systemic and ongoing policy of discrimination actionable precisely because it violates an employee's rights up to a point in time falling *within* the prescribed limitations period. Id. That some or even most of the underlying events occurred before is of no moment – the discrimination is by definition a *continuing system* affecting the plaintiff in the immediate. Id. See also Ledbetter, No. 05-1074, slip op. at 5-6, 18 (rejecting application of doctrine of continuing violation to pay discrimination suit and rejecting EEOC's position that each paycheck resets statutory clock).

A refusal to hire or a decision to fire places the victim beyond reach of any further effect of company policy. Williams, 665 F.2d at 924. A complainant must, therefore, file a charge within the requisite time period or face being time-barred. Id. If the victim cannot demonstrate that the company policy had any impact on them within the limitations period, the continuing violation doctrine is immaterial. Id. Mere impact from past occurrences is not actionable, continuing violations are. Ledbetter, No. 05-1074, slip op. at 6. "Current effects alone cannot breathe life into prior, uncharged discrimination." Id. at 9.

EEOC's flawed attempt to invoke the continuing violation doctrine in a hiring case effectively reads the limitations period out of Title VII, releasing EEOC from the constraint of

time under any circumstance.  This argument flies in the face of the Supreme Court's statement that:

> [a] discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate even in history which has no present legal consequences.

United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977).

Further, EEOC's reliance on National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), is mistaken.  EEOC reads Morgan to mean that a pattern or practice claim is by definition an indivisible employment practice for which EEOC can recover on behalf of *all* affected persons, regardless of the injury date.  EEOC Memorandum p. 87.  This interpretation is not only self serving, but illogical and inconsistent with the facts of Morgan, which involved a *single* plaintiff alleging both discrete and continuing Title VII violations.  Morgan, 536 U.S. at 105-08.  Thus, the Court's footnote that it had "no occasion here to consider the timely filing question with respect to 'pattern or practice' claims," is nothing more than a statement of fact. Id. at 115.  Holding that only discrete acts of alleged discrimination arising within the statutory limitations period were compensable, the Supreme Court confirmed that the continuing violation doctrine is irrelevant to hiring cases.  Id. at 122.  Expressly rejecting application of the doctrine of continuing violation to "serial violations," the Court stated:

> The Court of Appeals applied the continuing violation doctrine to what it termed 'serial violations,' holding that so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for purposes of liability…
>
> Discrete acts such as termination, failure to promote, denial of transfer, or *refusal to hire* are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a *separate actionable* 'unlawful employment practice.'

14

> Morgan can only file a charge of discrimination to cover discrete
> acts that 'occurred' within the appropriate time period.

536 U.S. at 114 (emphasis added).  That Morgan specifically did not address Title VII's filing

limitations in the context of pattern or practice claims brought by EEOC is, therefore,

inconsequential.

　　EEOC's reasoning jettisons the statutorily-mandated filing time and contradicts Morgan's

clear pronouncement that discrete acts *do not* constitute a continuing violation.  The Supreme

Court's decision in Ledbetter – rendered just three days ago – further confirms that EEOC's

attempt to recover for discrimination dating beyond the 180-day limitations period is

impermissible.[4]  If successful, EEOC's argument would have the anomalous effect of allowing

employees with untimely claims carte blanche to latch their allegations to those of employees

aggrieved within the precincts of the statute.  With this result, employers would find themselves

with the onerous burden of defending actions occurring years, even decades, in the remote past.

"If mere existence of a policy is sufficient to constitute a continuing violation, it is difficult to

conceive of a circumstance in which a plaintiff's claim of an unlawful employment policy could

be untimely." Sandoval v. Saticoy Lemon Ass'n, 747 F. Supp. 1373, 1386 (C.D. Cal. 1990)

(citation omitted).  See Domingo v. New England Fish Co., 727 F.2d 1429, 1443 (9th Cir. 1984)

(noting plaintiff's argument in favor of applying continuing violation doctrine would "effectively

read the limitation period out of [Title VII]…."); Lumpkin v. Coca-Cola Bottling Co. United,

Inc., 216 F.R.D. 380, 385 (S.D. Miss. 2003) (noting courts considering the issue have concluded

individuals not subject to adverse employment action within given limitations period may not be

---

[4]　　As the Supreme Court noted, the short Title VII filing deadline reflects Congress'
strong preference for prompt resolution of employment discrimination allegations.  Ledbetter,
No. 05-1074, slip op. at 11.

part of class challenging discrimination); <u>Rodriguez v. United States Dept. of Treasury</u>, 131 F.R.D. 1, 11 (D.D.C. 1990) (finding applicants for employment could only be class members "if they could show that they were aggrieved by the discriminatory policy within the charging period.").

Critically, <u>Morgan</u> and <u>Ledbetter</u> differentiated between harassment-based and non-harassment-based claims under Title VII, concluding that litigants may *not* establish employer liability for events occurring before the statutory limitations period in non-harassment-based cases. <u>Morgan</u>, 536 U.S. at 113-18; <u>Ledbetter</u>, No. 05-1074, slip op. at 19-20. Thus, a discriminatory practice extending over time and through a series of related incidents remains separable into a set of isolated acts, which require legal action to be brought within the limitations period. <u>Morgan</u> 536 U.S. at 113-18; <u>Ledbetter</u>, No. 05-1074, slip op. at 19-20. <u>See also</u> <u>Optical Cable</u>, 169 F. Supp. 2d at 547 (<u>citing</u> <u>Beall v. Abbott Labs.</u>, 130 F.3d 614, 620 (4th Cir. 1997)) (discrete acts of discrimination, such as a refusal to hire, constitute unlawful employment practices that are actionable individually and that therefore must occur within the limitations period to provide a timely basis for relief).

In light of the Court's distinction, EEOC's attempt to draw an analogy between failure to hire and hostile work environment claims must be rejected. <u>Morgan</u> makes clear that hostile environment claims are different in kind from the isolated act of turning away an individual for employment. <u>Morgan</u>, 536 U.S. at 115. Indeed, the Court held that an employee could recover in a hostile work environment case for acts occurring beyond the statutory limit. <u>Id.</u> at 122. The very nature of a hostile work environment claim involves repeated conduct. <u>Id.</u> at 113-118. "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act

of harassment may not be actionable on its own…. Such claims are based on the cumulative effect of individual acts." Id. at 115. As the Court put it in Ledbetter, "the actionable wrong is the environment, not the individual acts that, taken together, create the environment." Ledbetter, No. 05-1074, slip op. at 19.

It is impossible to imagine a more discrete act than failing to hire an applicant. As EEOC maintains, many class members were purportedly told by LAWL management that their gender was a direct bar to employment. EEOC Memorandum at pp. 17-35. Allegedly armed with the knowledge that they were discriminated against, nothing prevented the class members from filing timely charges with EEOC. Nonetheless, they did not do so. EEOC's transparent effort to revive stale claims by arguing that injury arose from a continuing violation "only evident by analyzing repeated conduct by multiple decision makers and/or over the passage of time" should not be countenanced. Id. at 87. Although a *pattern* of conduct might not be readily apparent to each individual class member, the fact that each discriminatory act is separately actionable remains unchanged. Title VII does not contemplate recovery for the continuing *impact* of violations beyond the statutory line. Accordingly, LAWL's request for summary judgment should be granted.

**E.    The Single Filing Rule is Inapplicable to this Case**

EEOC's final argument – that the "single filing rule" rescues the untimely claims of class members – is a misinterpretation of law. The single filing rule provides that plaintiffs who failed to lodge timely charges with EEOC may join in a lawsuit with others who have exhausted the filing requirement. White v. BFI Waste Servs., LLC, 375 F.3d 288, 293 (4th Cir. 2004), aff'd in part and rev'd in part on other grounds, Nos. 05-1804 and 05-1837, 2006 U.S. App. LEXIS 12749 (4th Cir. May 23, 2006), attached hereto as Exhibit L. To take advantage of the rule,

17

however, plaintiffs' claims must be "substantially similar and... the EEOC charge itself [must give] notice of the charge's collective nature." Id.

The single filing rule is inapplicable to this case and EEOC's attempt to invoke it is misguided.[5]  Koch's Charge does not allege a claim shared by a group of persons similarly situated to Koch.  See King, 2007 U.S. App. LEXIS 10635, at *6 (underlying purposes of filing a charge – notice and an opportunity for conciliation – are satisfied for untimely plaintiffs "[w]hen the initial plaintiff files an administrative charge making clear that *her grievance is shared by a group of similarly situated employees*....") (emphasis added).  In fact, Koch is not and cannot be a member of the class of aggrieved individuals in whose shoes EEOC stands.  Rather, she is a female former employee who was allegedly retaliated against in violation of Title VII.  To allow Koch's Charge to serve as notice of a pattern or practice class action on behalf of hundreds of male applicants would turn the single filing rule on its head, rendering every federal or state administrative charge filed by any individual a potential class action.

Even if the single filing rule were applicable, Koch's Charge falls woefully short of satisfying the rule's threshold requirements.  Again, the Charge is not substantially similar to the class claim.  Failure to hire claims are not remotely comparable to allegations of discriminatory

---

[5]    Even if the single filing rule were appropriate here, the Fourth Circuit has not clearly adopted it and EEOC's contention otherwise is belied by relevant caselaw.  See White, 375 F.3d at 293 (noting that single filing rule "has not yet been adopted in this circuit."); Proa v. NRT Mid Atlantic, Inc., 477 F. Supp. 2d 677, 679 (D. Md. 2007) (noting per White that Fourth Circuit has not expressly adopted single filing rule, but deciding that rule is inapplicable to plaintiff who filed timely charge but failed to file timely lawsuit).  But see King v. McMillan, No. 06-1183, 2007 U.S. App. LEXIS 10635, at *4 (D. Md. May 4, 2007), attached hereto as Exhibit M (indicating Fourth Circuit "has long applied this 'single-filing rule' to class actions" per Chisholm v. U.S. Postal Serv., 665 F.2d 482, 490 n.11 (4th Cir. 1981)); Lilly v. Harris-Teeter Supermkt., 720 F.2d 326, 335 (4th Cir. 1983), rev'd in part and remanded in part, 842 F.2d 1496 (4th Cir. 1988) (allowing intervention of certain plaintiffs who did not exhaust administrative remedies).

and retaliatory discharge.  See Lange v. Cigna Individual Fin. Servs. Co., 766 F. Supp. 1001, 1004 (D. Kan. 1991) (finding that rejected applicant alleging sex discrimination could not piggyback onto claim of employee alleging equal pay violations, termination because of gender and retaliation for associating with potential sex discrimination plaintiffs).  That her claim is unrelated to the class claim of discrimination in hiring is underscored by Koch's independent and confidential settlement agreement with LAWL.  See Foster v. Gueory, 655 F.2d 1319, 1322 (D.C. Cir. 1981) (stating that claims are not substantially similar where "there is a real possibility that one of the claims might be administratively settled while the other can be resolved only by the courts....").

Further, Koch's Charge does not provide notice that is collective in nature.  To the contrary, it epitomizes a single plaintiff claim by the absence of any allegation of class-wide discrimination.  See White, 375 F.3d at 293 (citations omitted); Bryson v. Fluor Corp., 914 F. Supp. 1292, 1294 (D.S.C. 1995) ("The single filing rule allows a plaintiff who has not filed a timely EEOC charge to rely on another individual's charge if the charge alleges class-wide discrimination."); Grayson v. K Mart Corp., 79 F.3d 1086, 1107 (11th Cir. 1996) (citing cases from the Second, Fifth, Seventh, and Eighth Circuits indicating that "to serve as the basis of an ADEA class action, the underlying EEOC charge must contain allegation(s) of class-wide discrimination.").  EEOC even concedes this point by admitting that the "*suggestion* of a company policy/pattern or practice" was "*implicit*" in Koch's allegation.  See EEOC Memorandum at p. 91 (emphasis added).  Koch's Charge, providing nothing more than an "implicit" "suggestion" of a company policy, cannot suffice as notice of a company-wide pattern or practice suit on behalf of an entirely distinct protected class.  Accordingly, the single filing rule fails.

III.    **CONCLUSION**

For all of the foregoing reasons and for the reasons set forth in the Memorandum in

Support of Defendant LA Weight Loss Centers, Inc.'s Motion for Summary Judgment, LAWL

respectfully requests that this Court grant summary judgment in its favor.

_____
/s/
Elizabeth Torphy-Donzella (Bar # 10809)
Shawe & Rosenthall LLP
20 South Charles Street
Baltimore, MD 21201
Tel:  (410) 752-1040
Fax:  (410) 752-8861

David E. Landau
Jonathan D. Wetchler
Aliza R. Karetnick
Wolf, Block, Schorr and Solis-Cohen LLP
1650 Arch Street – 22nd Floor
Philadelphia, PA 19103
Tel:  (215) 977-2000
Fax:  (215) 405-3724

Date:  June 1, 2007

## CERTIFICATE OF SERVICE

I, Elizabeth Torphy-Donzella, hereby certify that I caused a true and correct copy of the

Reply to Plaintiff EEOC's Opposition to LA Weight Loss Centers, Inc.'s Motion for Summary

Judgment to be filed and served electronically on June 1, 2007.  I further certify that a copy of

the Reply shall be served via first class mail upon:


Ronald L. Phillips
EEOC
Baltimore Field Office
10 South Howard Street, 3rd Floor
Baltimore, MD 21201


_____/s/_____
Elizabeth Torphy-Donzella