**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. WDQ 02-CV-648 |
| v. | ) ) | |
| LA WEIGHT LOSS CENTERS, INC., | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**REPLY MEMORANDUM IN SUPPORT**
**OF EEOC's MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND FOR ADVERSE INFERENCE JURY INSTRUCTIONS AT TRIAL**

The EEOC's Reply Memorandum is submitted in response to Defendant's Memorandum in Opposition and Cross-Motion for Summary Judgment, and in support of EEOC's Motion for Partial Summary Judgment and for Adverse Inference Jury Instructions at Trial, and Appendices A – D.  EEOC proffers that there is overwhelming evidence of Defendant's violation of Title VII's recordkeeping requirements.   EEOC also presents an array of evidence demonstrating spoliation, including (1) outright destruction of evidence, (2) material alteration of evidence, or (3) other failures to preserve evidence for use in litigation such as making it unavailable for production.  EEOC moves the Court not only for an injunction to prevent Defendant from further violating the recordkeeping provisions of Title VII and 29 C.F.R. § 1602.14, but also to grant a complete remedy by invoking its inherent powers to redress the violation by issuing adverse inference instructions tailored to each type of document at issue.

I.    THERE IS NO GENUINE DISPUTE THAT DEFENDANT DESTROYED AND
      OTHERWISE FAILED TO PRESERVE HIGHLY RELEVANT EVIDENCE, THE
      ABSENCE OF WHICH SEVERELY PREJUDICES EEOC

The standards applicable to a motion for summary judgment are clear.  Where no genuine

issue exists as to a material fact and the moving party is entitled to judgment as a matter of law,

summary judgment is appropriate.  Fed. R. Civ. P. 56(c).  Critically, to avoid summary

judgment, Defendant must do more than merely make assertions that contradict EEOC's proof.

Defendant must instead support its contradictions with "specific facts."  Fed. R. Civ. P. 56(e).

Moreover, Defendant's evidence must be of sufficient quantity and quality as to establish a

genuine issue of material fact for trial.  Id; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252

(1986).  Evidence that is "merely colorable" or "not significantly probative," cannot suffice to

defeat a motion for summary judgment.  Anderson, 477 U.S. at 249-50.  Thus, in this case,

Defendant's speculation and quibbling at the margins of EEOC's substantial spoliation proof

cannot defeat EEOC's summary judgment motion.  Defendant needed to present opposition

evidence sufficient to allow the factfinder actually to rule it its favor.  Id. at 252.  Defendant has

not met, and cannot meet, this standard.

A.    Defendant destroyed or otherwise failed to keep a high percentage of applications
      and résumés of persons Defendant hired or interviewed instead of EEOC's male
      claimants.

EEOC has presented substantial proof, properly supported by declarations, demonstrating

that for an extremely high percentage of persons Defendant actually hired, a search of the

person's personnel file and the applicant flow data produced by Defendant yielded no application

or résumé.  See EEOC Memorandum in Support of Plaintiff EEOC's Motion for Partial

Summary Judgment and for Adverse Inference Jury Instructions at Trial, at 6-8 (52% to 61%

employee applications or résumés could not be found by diligent efforts).  Moreover, EEOC

presented substantial proof, again properly substantiated in a declaration, that EEOC's search in Defendant's production for applications and résumés of females Defendant hired or interviewed instead of the EEOC male claimants designated as potential Stage I trial witnesses yielded no application or résumé in a high number of instances.  Id. at 20-30.  EEOC's point with respect to the absence of applications and résumés of employees generally, and with respect to the absence of such documents for women Defendant interviewed instead of EEOC's claimants, is simple: while EEOC's pattern-or-practice evidence is varied and quite strong, EEOC nevertheless has been substantially prejudiced in its ability to contradict directly Defendant's assertion that qualifications account for its pattern of grossly disproportionate female hiring, and EEOC has been substantially prejudiced in its ability to contradict directly Defendant's assertion that specific EEOC claimants were not hired because of allegedly inferior qualifications.  Id. at 19-22.

Defendant argues that because the search for applications and résumés by EEOC staff and Cypher Services did not include a batch of documents Defendant untimely produced in late 2005 and 2006, discovery has not yielded "any evidence" that Defendant discarded applications or résumés.  See Def. Opp. Br. at 12.  Similarly, Defendant argues that just because EEOC and Cypher could not locate large numbers of applications and résumés does not mean that Defendant destroyed them or that Defendant did not produce them.  Id. at 27.   Defendant thus presents an argument long on conjecture and non-sequitur logic, but short on the type of evidence required by Rule 56(e) to create a genuine issue of fact.

If Defendant is correct that it has produced all employee applications and résumés and that they can be found in either the person's personnel file or in the applicant flow, see Memorandum in Support of Plaintiff EEOC's Motion for Partial Summary Judgment, App. A

Ex. 7 at 63-64 (March 31, 2005 Deposition of Karen Siegel), it would not take Herculean efforts

to find these applications and résumés. And if one *were* to take such efforts – which EEOC and

Cypher essentially did here – one *should* be able to find them. Yet EEOC and Cypher could not

find applications or résumés for 52% and 61% of employees respectively, looking in the

designated personnel files and in the applicant flow documents. Id. at: App. A Ex. 5 (declaration

of Paul Olson); App. A. Ex. 6 (declaration of Elvira Sisolak); App. B (declarations of Robert de

Beck and Mildred Bonneau); App. C ¶ 5 (declaration of Ronald Phillips). No amount of

speculation and unsupported argument by Defendant can create a *genuine* issue of fact in light of

the evidence presented in EEOC's motion for partial summary judgment.

Moreover, Defendant's assertions of what it did preserve, and what it did produce, are red

herrings. EEOC obviously does not base its recordkeeping claim on those records.[1] What is

relevant is the substantial evidence demonstrating that a large volume of documents has *not* been

preserved. For example, although Defendant points to EEOC's statement that Cypher was not

provided with Defendant's late 2005 and early 2006 production, which contained a limited

number of 2002 and 2003 applications and résumés, this says nothing about Cypher's inability to

find applications and résumés of employees hired prior to 2002. Indeed, EEOC's supplemental

review of Cypher's work revealed 176 employees hired in 1998 for whom no application or

résumé could be found; 598 in 1999; 550 in 2000; and 632 in 2001. Exb. 1 (declaration of Elvira

Sisolak). Similarly, EEOC has identified over 80 females who Defendant interviewed or hired

instead of EEOC stage I claimant-witnesses, and whose applications or résumés EEOC could not

locate by searching extensively where Defendant says they are located. Unlike the Cypher

search that Defendant criticizes for not being exhaustively comprehensive, EEOC searched for

---

[1]         Thus, for example, the documents represented in Exhibit FF to Defendant's opposition brief are not at issue.

applications and resumes for these female comparators in *all* of Defendant's document production that could reasonably contain them. See EEOC Motion for Partial Summary Judgment App. C ¶¶6-7 (declaration of Ronald Phillips). Importantly, with the exception of only two female comparators to EEOC claimant Warren Walker, all of the female comparators listed in EEOC's motion for partial summary judgment whose applications or resumes were missing were hired either after, or less than one year prior to (per 29 C.F.R. § 1602.14),[2] the September 14, 2000, date Defendant erroneously asserts it first learned that EEOC was investigating its hiring practices. See EEOC Motion for Partial Summary Judgment at 22 - 30 and App. C ¶5 (declaration of Ronald Phillips). Defendant has simply sat back and criticized EEOC's substantial work to locate these applications and resumes, and has made bald assertions that the documents have been produced, but has come nowhere close to satisfying its Rule 56 burden of setting forth specific facts showing that there is a genuine issue for trial – i.e., by locating and identifying the missing documents by Bates number or in any other reasonable manner.

Defendant in essence argues that in order to prove a violation of the recordkeeping requirements of Title VII and 29 C.F.R. § 1602.14, EEOC must wait for Defendant's document production to drip to completion (e.g., it is worth noting that Defendant bases its argument on the fact that it produced a limited number of 2002 and 2003 documents *in late 2005 and early 2006*), and then at the end of discovery scour that production to review each and every résumé so as to prove the absence of employee applications and résumés beyond a reasonable doubt. The EEOC's burden is not nearly so high. At the summary judgment stage, EEOC's burden is to demonstrate that there is no genuine issue of fact, i.e., that no fair-minded jury could conclude

---

[2]      Defendant's opposition brief at p. 15 and footnote 6 argues that 29 C.F.R. § 1602.14 only requires Defendant to keep personnel records relevant to an "aggrieved person." However, Defendant misreads 29 C.F.R. § 1602.14. The regulation indeed requires that "any" personnel record an employer made or kept, including "application[s]," must be retained for a period of one year, regardless of whether it has any relevance to a pending EEOC charge.

that the preponderance of the evidence establishes that Defendant preserved the records EEOC alleges that it did not preserve. See Anderson, 477 U.S. at 252. EEOC's burden is not to prove its case beyond a shadow of a doubt or with an exhaustive scientific exactitude that forecloses every conceivable speculative argument by the Defendant. Id. at 252, 254-55. EEOC has done more than enough to demonstrate that there is no genuine dispute that Defendant has violated the recordkeeping requirements of Title VII and 29 C.F.R. § 1602.14 with respect to scores of applications and résumés of persons Defendant hired or interviewed instead of EEOC's male claimants. Defendant has not raised a genuine issue of fact as to this evidence.

      B.      <u>Defendant materially altered and otherwise failed to preserve a large volume of its applicant information on HotJobs.</u>

In its Motion for Partial Summary Judgment, EEOC previously informed the Court that one component of Defendant's wide-ranging non-retention of relevant evidence included the company's failure to preserve for production a large volume of internet job applications that it received through HotJobs.com. In its Response, Defendant asserts that these HotJobs applications exist, that they have been made available to EEOC, and in any event, EEOC should have incurred the expense of seeking them from HotJobs directly. Defendant's argument omits critical, undisputed facts establishing its spoliation, which renders its legal premises untenable.

It is undisputed that during the period late 2000-2004, Defendant's recruiters screened job applications submitted by e-mail through the HotJobs site by reviewing them on their company computers, but they only preserved the applications of candidates that they deemed appropriate for telephone pre-screen interview or to set up for interview with hiring managers. See Exb. 2 at pgs. 78-79, 200-05 (deposition of Karen Siegel); Exb. 3 (Sample HotJobs application submitted via e-mail). Thus, many of the applications were never saved to the company's computers or printed for production to the EEOC in this case. Defendant used this applicant data on its

computers for its hiring purposes but failed to retain it.  As a consequence, these applications have not been produced to the EEOC and are presently unavailable for use as evidence.

Defendant states that the applications still exist on the HotJobs server, though it has only offered the testimony of Karen Siegel, whose statements are of dubious foundation, to support this assertion.[3]  Regardless, assuming *arguendo* that the assertion is true, the issue is not simply one of existence of evidence but rather of alteration of the evidence and its practical inaccessibility.  See, e.g., Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001); White v. Office of Public Defender, 170 F.R.D. 138, 148 (D. Md. 1997).   Regarding these HotJobs applications, Defendant has done both.

Defendant states that it offered to allow EEOC personnel to use the company's HotJobs password to access the HotJobs applications.  This is true as a general proposition, but the devil is in the details.  Defendant offered to allow EEOC personnel to review and print applications only in the Philadelphia offices of defense counsel on one of their computers, which would be highly burdensome for EEOC to do each time it wished to review the documents, and would likely allow Defendant to track which applications EEOC was reviewing and printing, thus invading attorney work product.  See Exb. 4 at ¶4 (declaration of Ronald Phillips).  See also In re Allen, 106 F.3d 582, 608 (4th Cir. 1997) (attorney's choice of documents constituted opinion work product because it revealed thought processes and theories regarding the litigation); Shelton v. American Motors Corp., 805 F.2d 1323, 1328-29 (8th Cir. 1986).

More importantly, as Defendant admits in its Response, giving EEOC a password does not allow EEOC to obtain all of the original applications.  The data are so voluminous and the HotJobs system is configured in such a way that obtaining all of the HotJobs applicant flow

---

[3]        Moreover, the fact that someone else might have the data doesn't change the fact that Defendant had it and failed to preserve it for production to EEOC.

through use of the password is impossible. <u>See</u> Defendant's Response Brief at 9.  Indeed,

Defendant's counsel informed EEOC that the only way to obtain the documents in their original

form with all information intact would be to access each individual application manually, a

project Defendant's counsel estimated to require six workers, working full-time at a pace of 15

seconds per application, and requiring at least a year or more to complete.  Defendant refused to

undertake this project because it was unduly burdensome. <u>See</u> Exb. 4 at ¶ 3 (declaration of

Ronald Phillips).  Instead, Defendant improperly sought to impose this burden – occasioned by

Defendant's own wrongful failure to preserve evidence – upon the EEOC.  EEOC concluded that

Defendant's attempt to visit upon EEOC the consequences of Defendant's own wrongful conduct

was wholly unreasonable and improper, and that the burden of accessing the documents

manually as well as other disadvantages made this method a practical impossibility.  Had

Defendant instructed its recruiters, in accordance with the recordkeeping requirements of Title

VII and its regulation, to save or print the applications when they were on the recruiters'

computers, it would have avoided creating this insurmountable barrier to production.

   The other option that Defendant raises in its brief is production of the application data on

CD-ROM through a data conversion technique that Defendant asked HotJobs to create in mid-

2005.  Defendant has failed to share with the Court a sample of the converted data or to present

the known flaws which would be inherent in this technique.  The form of production materially

alters the content of the applications.  In other words, the documents that could have been

produced to EEOC would not be the original HotJobs applications that Defendant should have

preserved.  Data was missing from the converted applications, a fact that Defendant fails to

mention in its brief.  An original HotJobs application sets forth the market/location of the

position sought by the applicant. <u>See</u> Exb. 3 (sample printed HotJobs application).  However, the

converted data sample provided by HotJobs lacks that information.  See Exb. 5 (first 24 pages of HotJobs converted data file).  Defendant states that the job location information cannot be obtained through the data conversion technique used by HotJobs, and the only way to capture job location information for each applicant would be to navigate through the original HotJobs job posting for each person who applied.  See Exb. 6 (E-mail from Aliza Karetnick to Ronald Phillips dated 6/13/2005).[4]  This manual review would impose the same crushing burden upon EEOC that was previously discussed, a burden that would not have arisen had Defendant preserved the evidence as it was accessing it.  But there is also a more immediate problem: It appears this manual review would not yield the job location information at all.  A HotJobs attorney informed the EEOC that HotJobs uses the "slot model," rather than the "posting model," which means job-postings apparently are over-written when Defendant posts new jobs.  See Exb. 7 (declaration of Corbett Anderson).  Consequently, manual review apparently would be for naught because there would be nothing to which to match the applications.

Defendant's omission creates serious problems for EEOC's review of the anecdotal evidence of discrimination.  From Defendant's printouts of the (overwhelmingly female) applicants selected for further screening and interviewing, EEOC can review those applicants' identities, qualifications and job location sought.  But with the job location information missing from the non-selected/non-printed applicants, it becomes exceptionally difficult to match-up the better-qualified male applicants the Defendant did not select to be screened or interviewed with the women it did select for screening/interview.   The burden of looking up every home address of every applicant to determine their proximity to Defendant's markets would be even more

---

[4]      Defendant states in its brief that EEOC "suggest[ed]" that the data "was not sufficiently comprehensive," but Defendant fails to acknowledge its own understanding that there is a serious problem with that data.  Defendant only attached part of the relevant e-mail string as an exhibit to its brief, omitting its response to EEOC concerns in which it informed EEOC that HotJobs told Defendant this problem could not be cured.  Compare Defendant's Exb. BB with EEOC Exb. 6 (E-mail from Aliza Karetnick to Ronald Phillips dated 6/13/2005).

burdensome than the process of printing out the applications manually, which is a practical impossibility.  Defendant created this circumstance by not preserving the applications it reviewed.

Moreover, the format and layout of the converted applications is highly disorganized and confusing, making location and identification of comparators exceptionally difficult, if not impossible.  The samples of HotJobs applicant data were not separated into discrete documents, and they are not even grouped by state, unlike the hard copy applications.  See generally Exb. 5 (first 24 pages of HotJobs converted data file).  Take, for example, the case of a female applicant hired for a center manager position in New York City.  How would one even begin to locate male comparators who applied but were not even screened or interviewed for that position using this converted data, which contains line after line of non-segregated, non-geographically identified data text?  It would be extraordinarily difficult.  In this regard, the converted applications also contained significant distortions in the content and appearance of many of the applications that made them almost indecipherable. See id. at pgs. 14-22.   Note also that unlike the printed HotJobs applications, the converted data does not reflect the name of the LA Weight Loss employee who reviewed the application, or the date of that review, making identification of relevant witnesses problematic.  Compare Exb. 3 (noting name of LAWL personnel at the top) with Exb. 5 (first 24 pages of HotJobs converted data file).

Finally, the data conversion approach that Defendant proposed was inherently flawed because it did not cure the loss of certain highly relevant information that EEOC could have gleaned from the applications as a whole had Defendant's recruiters printed or saved them.  For example, note that e-mail addresses can and do contain first names, names that can identify the applicant's sex. See Exb. 3 (sample HotJobs application).  Thus, it is entirely plausible given the

evidence of discrimination in this case that some or all of Defendant's personnel did not review many of the applications submitted by men. Because Defendant only preserved, via printing, a limited number of the applications it reviewed, there is no way to observe patterns of gender bias in its selection of applications to open and review. Had Defendant printed all applications it actually reviewed, such a pattern could be discerned.

      C.      <u>Defendant destroyed or otherwise failed to preserve highly relevant payroll data.</u>

          1.     *Defendant permitted Zurich to destroy 1997 and 1998 electronic payroll data regarding inactive employees – data not fully captured on paper payroll records produced by Defendant.*

      In early 1999, Defendant permitted Zurich Payroll to update Defendant's payroll system by removing a workstation and replacing it with another one with newer software, and in doing so the system was purged of all inactive employees, making the data as to those inactive employees forever inaccessible in electronic format. <u>See</u> Exb. 8 at 39-51 (Rule 30(b)(6) deposition of Defendant, designee John Janthor). Defendant admits it has no idea what even happened to the payroll workstation that housed the Zurich data in 1997 and 1998. <u>See</u> Exb. 9 at 183, 191-92 (continuation of Rule 30(b)(6) deposition of Defendant, designee Christine Moffit). Defendant admits that it gave no instructions to Zurich in connection with the upgrade/purge in 1999, made no inquiries of Zurich in regard to the preservation of records, and admits that there were no policies in place to prevent the destruction of such records. <u>See</u> Exb. 8 at 41, 45-47 (Rule 30(b)(6) deposition of Defendant, designee John Janthor).

      Defendant argues that it has in fact complied with the recordkeeping requirements of Title VII and 29 C.F.R. §1602.14 with respect to the 1997 and 1998 Zurich payroll data because, Defendant states, it produced paper payroll reports for those years containing information on both active and inactive employees. <u>See</u> Def. Opp. Br. at 15 and Exb. MM. However, paper

records and electronic records are different documents.  Even if they contain the same or similar information, electronic records are essential in a class case such as this one, which depends heavily on electronic records for analysis.[5]  Defendant's production of paper records thus was grossly inadequate in light of its duty of preservation under Title VII and 29 C.F.R. §1602.14.  In any event, the Zurich paper payroll reports do not contain complete information – e.g., they do not contain information on former employees' sex, job titles, hire dates, or information about the reasons for termination, all of which Defendant admits the electronic Zurich data would have contained had it been preserved.  Compare Exb. 9 at 180-81 (continuation of Rule 30(b)(6) deposition of Defendant, designee Christine Moffit) with Def. Opp. Br. Exb. MM.  In addition, Defendant did not produce hard copy Zurich reports for 1997 at all.  See Exb. 10 at 18-19 (Defendant's 9/12/03 Opposition to EEOC Motion to Compel).

        2.      *Defendant's 1999 and 2000 Zurich payroll data were not fully recovered.*

After Defendant permitted Zurich to upgrade its payroll computer system in early 1999, the new system was populated only with employees still active as of the date of the Zurich upgrade.  Defendant maintained that system through the end of 2000.  As Defendant notes, the hard drive containing this 1999 and 2000 Zurich data was "arranged for production" to the EEOC via a "data recovery" by Kroll Ontrack.  Def. Opp. Br. at 15 and Exb. FF ¶12.  However, Defendant omits two important facts regarding this recovery effort.  First, the data needed to be recovered only because Defendant did not preserve access to it.  Specifically, Defendant changed its operating system in 2001, which rendered the data inaccessible even to Defendant, and therefore required forensic retrieval by Kroll Ontrack.  See Exb. 10 at 19 n.6 (Defendant's 9/12/03 Opposition to EEOC Motion to Compel).  Second, EEOC has discovered that the

---

[5]      Indeed, the non-fungible nature of electronic records vis-à-vis paper records is one of the key principles reflected in the recent revisions to the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 26, 34.

personnel data, if any, which may have been recovered by Kroll Ontrack were password protected by Defendant, rendering it unreadable, see Exb. 11 (declaration of Jeffrey Bannon), and EEOC has not been provided with a password, if one still can be determined. Defendant has made no showing that Kroll was able to recover complete payroll data for the period in question and thereby cure Defendant's mishandling of its payroll data.

3.    *Defendant's 2001 ADP payroll data are incomplete.*

In 2001, ADP replaced Zurich as Defendant's payroll contractor and, in transferring Zurich data to the ADP system, did not transfer data on inactive employees. See Exb. 8 at 80-81, 88-89 (Rule 30(b)(6) deposition of Defendant, designee John Janthor). In 2002, inactive employees again were purged from the system when ADP added a new feature to the payroll system, rendering inactive employees inaccessible in electronic format except by "Check View," i.e., viewing a person's payroll check. See Exb. 9 at 250-254 (continuation of Rule 30(b)(6) deposition of Defendant, designee Christine Moffit). The "Check View" format omits a rich array of pertinent information, such as the person's sex, job title, and date of hire. Id. at 245-50. Absence of this clearly important information in a case such as this one involving sex discrimination in hiring is highly prejudicial. Moreover, information in "Check View" can be produced only in PDF format – a format which is essentially no better than hard copy for purposes of importing into statistical software for analysis (such as Microsoft Excel or ASCII). Id. at 288; Exb. 12, Rothstein, Hedges, and Wiggins, *Managing Discovery of Electronic Information: A Pocket Guide for Judges*, at 13 (Federal Judicial Center 2007) (noting that electronically stored information produced as a PDF file is essentially a photograph of an electronic document, whereas electronically stored information produced in native format is produced in the form in which it was created and is used in the normal course of operations).

Thus, PDF format diminishes even further the utility of the data unless EEOC undertakes a burdensome and expensive conversion effort. Defendant was required to preserve the original data in its native format.

Defendant notes that it provided ADP payroll data on CDs for 2001 (and later years). Def. Opp. Br. at 16 and Exb. NN. However, the data on those CDs are also only in PDF format. Exb. 9 at 272-73 (continuation of Rule 30(b)(6) deposition of Defendant, designee Christine Moffit). Moreover, the ADP CDs covering 2001 are not nearly as complete as for later years – as depicted on page 1 of Exb. NN, Defendant did not produce, and EEOC did not receive, weekly 2001 CDs, or a CD for Q4 2001. See Def. Opp. Br. Exb. NN. EEOC apparently did receive a year-end 2001 CD. See Exb. 13 (table of contents to LACD 0002). However, unlike the CDs produced for later years, neither the quarterly 2001 ADP CDs nor the end-year 2001 ADP CD contain an ADP Master Control report. The master control report contains a vast array of important information not otherwise available on the ADP CDs, such as sex, date of hire, and job title (among others), compare Exb. 14 (2002 Week 32 ADP Master Control Report), with Exb. 15 (Q1 2001 ADP Wage and Tax Report), all of which is not only relevant, but critical in a sex-based hiring case.

Defendant ultimately produced a Microsoft Excel file containing payroll data, which EEOC's designated expert witness, Senior Labor Economist Elvira Sisolak, used to analyze hiring rates. Importantly, however, that payroll data file did not contain complete payroll information for 2001. See Exb. 9 at 336-38 (continuation of Rule 30(b)(6) deposition of Defendant, designee Christine Moffit). The payroll data file contains persons employed in 2001 only if they remained on the payroll in 2002. Id. There is simply no genuine issue of fact as to

whether Defendant's 1997 to 2001 payroll data was preserved sufficiently – it was not – or whether payroll data for that period could be analyzed reliably by Ms. Sisolak – it could not.

      D.    There is ample evidence of culpability.

The recordkeeping provisions of Title VII and 29 C.F.R. § 1602.14 do not require bad faith noncompliance. See 42 U.S.C. § 2000e-8(c); 29 C.F.R. § 1602.14. Moreover, the Fourth Circuit does not require bad faith for imposition of an adverse inference. Instead, the Fourth Circuit has articulated the commonsense rule that the mental state required to justify spoliation remedies depends on the relevance of the records at issue and the resulting prejudice caused by the absence of the records. See Silvestri, 271 F.3d at 593; Cole v. Keller Indus. Inc., 132 F.3d 1044, 1047 (4th Cir. 1998); Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 155-56 (4th Cir. 1995). Thus, if the records are highly relevant, even inadvertent destruction could warrant the ultimate sanction – dismissal – if the absence of the records prevents a defendant from making a defense. Silvestri, 271 F.3d at 593. It follows that remedies short of dismissal may be warranted to level the playing field at trial, such as an adverse inference jury instruction. Vodusek, 71 F.3d at 156-57. Indeed, this Court already has ruled in this case that bad faith is not required for an adverse inference jury instruction. See EEOC Motion for Partial Summary Judgment, at App. A. Ex. 1, Transcript of Motions Hearing Held June 29, 2004 at pp. 9-43, affirmed by this Court's Order dated January 7, 2005 (Paper No. 126).

To be sure, a litigant must have had notice that the documents that it failed to preserve were relevant. Defendant continues to assert a wholly unconvincing "ostrich defense" – i.e., it admits that Kathy Koch's charge of discrimination in June 1998 included the allegation that she was discharged for complaining about Defendant's failure to hire qualified male applicants, yet it contends that a reasonable employer would not surmise that documents related to the alleged

failure to hire qualified male applicants would be relevant to the charge.   Willful blindness is no

defense – indeed, it establishes liability.  Here, the EEOC's regulation at 29 C.F.R. § 1602.14,

combined with EEOC's notice of the charge, supplies the requisite notice.  Defendant's failure to

preserve documents covered by the regulation supplies the requisite culpability in that regard.

See e.g., Zimmerman v. Associates First Capital Corp., 251 F.3d 376, 383-84 & n.6 (2d. Cir.

2001) (intentional destruction of records required by law satisfies mental state needed for

adverse inference instruction; bad faith not required); Hicks v. Gates Rubber Co., 833 F.2d 1406,

1419 & n.5 (10th Cir. 1987) (stating "[w]e believe that because Gates violated §1602.14 by

destroying the personnel records, Hicks is entitled to the benefit of a presumption that the

destroyed documents would have bolstered her case," even though bad faith not shown).

   The record in this matter is replete with conduct by Defendant ranging from negligence to

gross negligence to outright bad faith.  Kathy Koch filed her charge in June 1998, and thus

Defendant knew or should have known of the allegations underlying this claim as of that time.

See Memorandum in Support of Plaintiff EEOC's Motion for Partial Summary Judgment and for

Adverse Inference Jury Instructions at Trial at 2-4.  This means that *all relevant records* dating

from one year prior to June 1998 – i.e., June 1997 – should have been preserved and produced

unaltered.[6]  Notwithstanding Defendant's interpretation of the facts, the totality of the evidence

leaves no *genuine* doubt or dispute as to Defendant's culpability.

   As an initial matter, there is an unmistakable *res ipsa loquitor* quality to vast quantities of

highly relevant evidence being either missing or being incomplete in violation of a

recordkeeping regulation. See id. at 5-13; and part I A - C, supra.  Defendant's first Chief

Operating Officer from 1997 to 1998 knew absolutely nothing about the law on recordkeeping,

---

[6]    Indeed, with respect to payroll records, Defendant was required to preserve such records for two years, not
one.  See 29 C.F.R. §1620.32(c).

16

and the company did not disseminate a policy on recordkeeping until March 1999.  The company

failed to instruct its third-party payroll administrators not to destroy data – resulting at least twice

in such destruction.  Moreover, not only did LA Weight Loss's recruiter, ESG, fail to keep

relevant documents, but Defendant's Chief Operating Officer in 2003, Elaine Bussoletti, actually

instructed ESG to discard relevant documents.  Most importantly, there is ample evidence that

Defendant intentionally destroyed applications submitted by men both to effectuate and to

conceal Defendant's system of discrimination.  See generally EEOC Motion for Partial Summary

Judgment at 5-13. [7]  This is the very essence of bad faith.  In short, the totality of the evidence

renders Defendant's attempts to create issues of fact incredible in the extreme, and thus EEOC's

motion for partial summary judgment and the remedies sought therein should be granted.  See

Anderson, 477 U.S. at 248-52.

II.    EEOC'S RECORDKEEPING CLAIM IS STATUTORY, AND EEOC PROPERLY
       SEEKS RELIEF PURSUANT TO TITLE VII AND THIS COURT'S INHERENT
       POWERS

       Defendant misreads EEOC's motion for partial summary judgment as a request for

sanctions under Fed. R. Civ. P. 37.  Def. Opp. Br. at 1, 19-22.  However, it has always been clear

that EEOC's recordkeeping claim is based on Defendant's violations of substantive law, and that

the injunction and the adverse inference jury instructions sought are based on the Court's

---

[7]       Defendant ignores or misinterprets the testimony EEOC presents in its motion for partial summary
judgment that it destroyed applications of men and others it did not want to hire, in an apparent attempt to obscure
the import of that evidence.  For example, Defendant ignores the testimony of Joy Freathy because, Defendant
argues, she left the company prior to September 2000, when Defendant argues (implausibly) that it first had notice
that EEOC was investigating Defendant's hiring practices.  Def. Opp. Br. at 6 n.2.  Importantly, however, Vahan
Karian – the subject of Freathy's testimony – was president of the company both then and now.  Freathy testified to
an instruction by Vahan Karian not to hire men and his desire to keep this policy covert because he did not want the
company to get in trouble with the EEOC.  Freathy also testified to one of Karian's top subordinates instructing
Freathy that she was to effectuate Karian's policy covertly by not telling her area managers but rather by secretly
throwing away applications from men.  See EEOC Memorandum in Support of Partial Summary Judgment at App.
A. Ex. 11 at 77-79.  Defendant also mischaracterizes the import of Melinda Temple-Passin's testimony, noting that
Ms. Temple-Passin said she did not throw away applications or see anyone do so.  Def. Opp. Br. at 7-8.  However,
Ms. Temple-Passin testified that she heard her Regional Manager tell *someone else* on the phone that the listener
could throw away applications from men instead of sending them to Defendant's corporate offices because
decisionmakers in Defendant's corporate offices would not want to hire men.  See EEOC Memorandum at 13.

statutory authority to provide equitable relief for violations of Title VII.  In EEOC's Amended

Complaint, paragraph 13 clearly invokes the statute and applicable regulations in alleging that,

since at least February 27, 1997, LA Weight Loss has failed to preserve records required to be

preserved by Title VII and 29 C.F.R. § 1602.14.   See Amended Complaint ¶13 (Paper No. 66).

EEOC's Amended Complaint also seeks remedies for this statutory violation:

> Order Defendant Employer to preserve personnel and employment records in
> compliance with the requirements of Title VII and the Commission's Regulations
> and order such other relief in connection with the proceedings and trial of this
> action that is appropriate in light of Defendant's failure to preserve personnel and
> employment records as required by law, including but not limited to charging the
> jury with adverse inference instructions regarding records no longer available due
> to Defendant's failure to comply with Title VII and 29 C.F.R. § 1602.14 or other
> improper disposition of evidence.

Paper No. 66 ¶ I.  Thus, Defendant's misguided attempts to recharacterize the EEOC's Motion

for Partial Summary Judgment and for Adverse Inference Jury Instructions at Trial as an

"untimely Rule 37 request seeking [discovery] sanctions" is unsupportable.  See Def. Opp. Br. at

1.  Moreover, Defendant's argument simply ignores EEOC's amended complaint.  EEOC's

recordkeeping claim is properly viewed as a statutory claim that, under the facts presented in

EEOC's motion for partial summary judgment, warrants injunctive relief and evidentiary relief

in the form of adverse inference jury instructions.

    A.    <u>Injunctive relief is warranted to prevent continued violations of Title VII and its
recordkeeping regulations.</u>

The EEOC is seeking, first and foremost, an injunction against further recordkeeping

violations.  This court has explicit jurisdiction under Title VII § 709(c) to issue an injunctive

order requiring Defendant to comply with the recordkeeping requirements of Title VII and its

regulations upon proof of Defendant's failure or refusal to comply with such requirement.  See

42 U.S.C. § 2000e-8(c) (if a person required to comply with Title VII's recordkeeping and

reporting requirements fails or refuses to do so, district courts have jurisdiction to issue an order requiring compliance). Notably, unlike the spoliation doctrine, Title VII § 709(c) contains no mental state requirement. See id. Indeed, under the circumstances in this case – i.e., when the employer's attitude toward its recordkeeping obligations has been lax, at best, an injunction should follow as a matter of course. See United States v. County of Fairfax, 629 F.2d 932, 942 n.11 (4th Cir. 1980). An injunction is all the more important here because EEOC alleges that Defendant's unlawful pattern-or-practice of discrimination against male job applicants is ongoing. Given that a Stage I trial may be several months away, and Stage II discovery regarding current and future EEOC claimants will not begin until the Stage I trial ends, an injunction is critical to ensure that Defendant preserves all relevant records in this case, such as resumes and applications of future EEOC claimants and their female comparators. See Paper No. 89, May 25, 2004, Order Regarding Bifurcation and Scheduling at pg.7 (cutoff for EEOC designation of claimants not until 14 days after entry of Stage II scheduling order).

B.    Adverse inference jury instructions are consistent with Title VII and should be granted pursuant to this Court's inherent powers.

Perhaps in some cases an injunction will be the only remedy warranted for spoliation. However, in this case, an injunction will not be enough to remedy Defendant's over ten years of spoliation of evidence. See EEOC Memorandum in Support of Plaintiff EEOC's Motion for Partial Summary Judgment and for Adverse Inference Jury Instructions at Trial 19-30 (explaining prejudice to EEOC by absence of documents in various categories). As where any Title VII violation has been found, such as when a company has discriminatorily denied an aggrieved individual a job, the remedy should at least make the victim whole. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 416-18 (1975) (equitable remedial powers under Title VII section 706(g) are broad and should be exercised so as to effectuate the purposes of the statute;

thus, back pay to make the victim whole should rarely be denied because it effectuates the

statute's purposes; bad faith not required).  Similarly, where, as here, highly relevant

documentary evidence has gone missing while in Defendant's possession – in violation of a

regulation with the clear purpose of avoiding such destruction or failure to preserve records – the

demands of both equity and justice call for more than a mere injunction.  EEOC has clearly been

prejudiced as a litigant and thus should receive make-whole relief in the form of adverse

inference instructions at trial.  See EEOC v. American Nat'l Bank, 652 F.2d 1176, 1195-96 (4th

Cir. 1981) (applicant flow was incomplete due to employer's failure to preserve relevant

employment records and thus the court should have given EEOC, not the employer, the benefit

of the doubt raised by the absence of those records in light of 29 C.F.R. § 1602.14 and its

purposes, as well as the broad remedial purposes of Title VII).  The Court should grant adverse

inferences instructions pursuant to its inherent powers "to preserve the integrity of the judicial

process in order to retain confidence that the process works to uncover truth."  Silvestri, 271 F.3d

at 590.

Defendant wants to shift the focus away from its illegal conduct and the resulting

prejudice to EEOC, arguing that EEOC cannot invoke this Court's inherent powers because

EEOC did not first file a motion to compel, and Defendant has not violated a court order.  See

Def. Opp. Brief at 19-22.   Defendant's argument puts form over substance.  The whole point of

Title VII's recordkeeping provisions is to provide EEOC broad access to Defendant's records in

order to document EEOC's claims and establish its case at trial.  Cf. Wards Cove Packing Co. v.

Atonio, 490 U.S. 642, 657-58 (1989) (stating same for recordkeeping requirements under

disparate impact regulations of the Uniform Guidelines on Employee Selection Procedures),

statutorily overruled in part on other grounds, Pub. L. No. 102-166, 105 Stat. 1071, 1071-81.

Although Rule 37 standards may be informative, the Court's inherent power to remedy spoliation in violation of positive law, by making the presentation of evidence at trial fair, is not dependent on Rule 37 or any preconditions thereof in order to render the redress the Commission seeks. See Silvestri, 271 F.3d at 590 (citing Rule 37 as *analogous* support); Trigon Ins. Co. v. United States, 204 F.R.D. 277, 285 (E.D. Va. 2001) (Defendant was "not in violation of a court order and is not in contempt.  Nonetheless, the inherent authority to control litigation empowers a court to sanction the spoliation of evidence even absent an antecedent order"); EEOC v. Jacksonville Shipyards, Inc., 690 F. Supp. 995, 997-99 (M.D. Fl. 1988) (noting that Rule 37 did not directly apply but could be used as a guide; defendant's breach of legal duty imposed by 29 C.F.R. §1602.14 rendered defendant's conduct analogous to conduct calling for Rule 37 sanctions, thus raising a range of potential remedies available pursuant to the court's inherent powers).  In any event, Defendant's conduct does not lend itself to a motion to compel.  Defendant has caused records not to exist anymore at all or, in some instances, to be materially altered or unpreserved in such a way as to destroy, render useless, or otherwise make inaccessible relevant information. A motion to compel with respect to these records thus would have been a futile exercise for the Commission.

III.    EEOC's RETALIATION CLAIMS AND ITS RELATED RECORDKEEPING CLAIM ARE NOT MOOT

In its Response brief, Defendant now elaborates on its unsupported argument, first set forth in its Motion for Summary Judgment, that EEOC's retaliation claims are moot.  Defendant's argument remains factually and legally unsupportable.  In EEOC v. Waffle House, Inc., 534 U.S. 279 (2002), the Supreme Court held that private agreements to arbitrate employment discrimination disputes entered into by discrimination victims do not bind the EEOC or prevent it from obtaining monetary and other remedies regarding those victims in federal court for the

purpose of vindicating the public interest. Id. at 295-96. Analyzing the statute and its purposes, the Court concluded in no-uncertain terms that Title VII has made the EEOC "the master of its own case" with the sole discretion to determine what is in the public interest in its Title VII enforcement actions. Id. at 291-92. The Court left open the question of whether a valid release or waiver of claims by a victim would limit the EEOC's ability to obtain remedies for victims, see id. at 296, nonetheless it noted the ability to avoid double recovery by using monetary amounts obtained by victims acting on their own as an offset against any judgment obtained by the EEOC. See id. at 297. Moreover, and as the three dissenting Justices noted, the Court's analysis demonstrates that EEOC has authority to decide the disposition of its claims for victim-specific remedies notwithstanding private settlement agreements. See id. at 311-12. Following the rationale of Waffle House, the federal courts that have addressed this issue post-Waffle House have held that private settlements by discrimination victims to which EEOC was not a party do not prevent EEOC from seeking monetary remedies regarding those individuals. See EEOC v. Continental Airlines, Inc., No. 04 C 3055, 2006 WL 3505485, at *1-2 (N.D. Ill., Dec. 4, 2006)(unpublished decision attached as Exb. 16); Senich v. American-Republican, Inc., 215 F.R.D. 40, 43-46 (D. Conn. 2003). See also EEOC v. Dayton Tire & Rubber Co., 573 F. Supp. 782, 785-87 (S.D. Ohio 1983)(same result pre-Waffle House). Cf. EEOC v. Johnson & Higgins, Inc., 91 F.3d 1529, 1535-37 (2d Cir. 1996)(EEOC may seek relief for victims who do not wish to receive remedy and deny discrimination).

Consequently, Koch's opinion about what monetary remedies are enough to satisfy her personal interests cannot serve as a basis for determining whether EEOC may proceed with its claims. In re Bemis Company, Inc., 279 F.3d 419, 421 (7th Cir. 2002) (citing Waffle House, and stating, "EEOC's primary role is that of a law enforcement agency and it is merely a detail that it

pays over any monetary relief obtained to the victims of the defendant's violation rather than pocketing the money itself and putting them to the bother of suing separately"). If – and only if – Koch received the maximum monetary recovery possible under Title VII for each separate component of EEOC's retaliation claims (i.e., full back pay and front pay, accompanied by the statutory cap for compensatory damages and punitive damages), only then would EEOC's claims for monetary remedies regarding the retaliation be mooted.[8]

However, Koch's receipt of the maximum possible monetary recovery would not moot EEOC's claim for injunctive remedies for Defendant's retaliation. Defendant argues otherwise, because, according to Defendant, EEOC has unearthed no evidence of any other instance of retaliation or that retaliation is likely to recur. This argument misstates the facts and misconstrues the law. "[I]t is well established that the voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit. That rule is subject to the caveat that an injunction is unnecessary when there is *no* reasonable expectation that the wrong will be repeated. But this exception is just that—an exception—and defendants face a heavy burden to establish mootness in such cases because otherwise they would simply be free to return to [their] old ways after the threat of a lawsuit has passed." Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 800 (4th Cir. 2001)(emphasis in original)(internal citations and quotations omitted). Defendant presents no competent evidence to meet its burden, just conjecture. On this basis alone Defendant's argument fails. In contrast, EEOC has already presented evidence

---

[8]    However, the terms of the settlement are confidential. See Exb. 17 at pg. 10 (11/30/05 deposition of Kathy Koch). Defendant has not disclosed those terms to either EEOC or the Court, and EEOC's efforts to uncover the terms of the settlement were unsuccessful, see id. at pgs. 14-15, and thus EEOC is unable to determine whether, or to what extent, the public interest has been satisfied or whether proceeding further would result in an impermissible double recovery as to any element of damages. Not only does the public interest demand that Koch be made whole and that Defendant pay sufficient damages, punitive or otherwise, to punish its violations and thereby deter future violations by itself and other employers, but it also requires that any such payments be made a matter of public record. General deterrence of employers is a core Title VII legislative purpose, and secret settlements in EEOC litigation are antithetical to that critical policy objective.

that Defendant has engaged in a number of acts of retaliation and threats of retaliation against female employees who have resisted its pattern or practice of gender discrimination. See Plaintiff EEOC's Memorandum in Opposition to Defendant LA Weight Loss Centers, Inc.'s Motion for Summary Judgment at 36-39. The evidence further shows that owner Vahan Karian is the driving force behind Defendant's sex-discriminatory hiring practices, and it creates a reasonable inference of his involvement in the retaliation that has been used to enforce those practices. See id. at 5, 8-9, 36, 38.

Moreover, Defendant's argument obfuscates the role of the EEOC's pattern or practice evidence in support of the injunctive remedy claim. The federal courts have long-recognized that a pattern or practice of discrimination is highly interrelated to claims of retaliation because an environment where discrimination is condoned increases the likelihood of retaliation. See Quinn v. Consolidated Freightways Corp., 283 F.3d 572, 577-79 (3d Cir. 2002); Hawkins v. Hennepin Technical Ctr., 900 F.2d 153, 155-56 (8th Cir. 1990); Ruffino v. State Street Bank and Trust Co., 908 F. Supp. 1019, 1040 n.38 (D. Mass. 1995); Tang v. State of R.I., 904 F. Supp. 69, 76-77 (D.R.I. 1995). As the Eighth Circuit has stated, "an employer's past discriminatory policy and practice may well illustrate that [its] asserted reasons for disparate treatment are pretext . . . . [A]n atmosphere of condoned [discrimination] in a workplace increases the likelihood of retaliation for complaints in individual cases." Hawkins, 900 F.2d at 155-56. Thus, the evidence of retaliation against Koch and others, coupled with the evidence of the continuing policy and practice of sex discrimination giving rise to that retaliation, demonstrate the need for an injunction in this matter.[9]

---

[9]    Furthermore, at any jury trial in this action, EEOC will offer the evidence of retaliation against Koch not only for its own sake but also as proof of the pattern or practice of sex discrimination, so Defendant's proposal of a bench trial regarding the retaliation claim promises to present the same set of facts to two different fact-finders and does not cure.

IV.    CONCLUSION

For the foregoing reasons, EEOC's Motion for Partial Summary Judgment and for

Adverse Inference Jury Instructions at Trial should be granted, and Defendant's cross-motion for

summary judgment should be denied.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

_____/S/_____
TRACY HUDSON SPICER
Supervisory Trial Attorney
EEOC-Washington Field Office
1801 L Street, N.W., Suite 100
Washington, D.C.  20507
Office #: (202) 419-0711
Facsimile #: (202) 419-0701

_____/S/_____
CORBETT ANDERSON
Trial Attorney
EEOC-Washington Field Office
1801 L Street, N.W., Suite 100
Washington, D.C.  20507
Office #: (202) 419-0724
Facsimile #: (202) 419-0701

_____/S/_____
RONALD L. PHILLIPS
Trial Attorney
EEOC-Baltimore Field Office
City Crescent Building, 3rd Floor
10 South Howard Street
Baltimore, MD 21201
Office #: (410) 209-2737
Facsimile #: (410) 962-4270/2817