IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|   |   |
|---|---|
| | * |
| EQUAL EMPLOYMENT OPPORTUNITY | |
| COMMISSION, | * |
| | |
| Plaintiff, | * |
| | |
| v. | *    CIVIL NO.: WDQ-02-0648 |
| | |
| LA WEIGHT LOSS, | * |
| | |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

The Equal Employment Opportunity Commission (the "EEOC")
has sued LA Weight Loss Centers, Inc. ("LAWL"), for violations
of Title VII of the Civil Rights Act of 1964,[1] as amended ("Title
VII"). Pending are LAWL's motions for summary judgment and
partial summary judgment, the EEOC's motion for partial summary
judgment, and the parties' motions for leave to file surreply
memoranda. For the following reasons, LAWL's motions for
summary and partial summary judgment will be denied, the EEOC's
motion for partial summary judgment will be granted in part and
denied in part, and the motions for leave to file surreplies
will be denied.

---

[1] Pub. L. No. 88-352, 78 Stat. 253; as amended, 42 U.S.C. §§
2000e to 2000e-17.

1

I.  Background

    LAWL is a Pennsylvania corporation and "leading national weight loss company."  Amended Compl. ¶ 4; Def.'s Mem. in Supp. of its Mot. for Summ. J. ("Def.'s Mem.") 2.  Since its founding in 1997, LAWL has offered nutritional plans, diet aids, and counseling services to its clients, and today operates approximately 400 weight-loss centers in Maryland and several other states.  Def.'s Mem. 2, 5-6.

    On June 22, 1998, Kathy Koch, a former LAWL employee, filed an amended employment discrimination charge with the EEOC, alleging that she was fired in retaliation for complaining about LAWL's failure to hire qualified male applicants.  Def.'s Mem. 25, Ex. XX (amended charge).  The EEOC commenced an investigation, and issued a letter of determination on September 14, 2000, finding reasonable cause that LAWL: (1) retaliated against Koch, and (2) discriminated against men in selection and hiring in all positions throughout the company.  Pl.'s Mem. in Supp. of its Mot. for Partial Summ. J. ("Pl.'s Mem.") 2-4, App. C, Ex. 1, EEOC 00032-33 (letter of determination).

    On February 22, 2002, the EEOC filed its original Complaint against LAWL, claiming LAWL (1) engaged in a pattern or practice of disparate treatment of men in its recruiting, hiring, and

2

assignment of employees, and (2) retaliated against Koch for opposing such practices. Paper No. 1. On July 15, 2002, Koch intervened as a plaintiff with her retaliation claim, and filed an amended complaint on August 26, 2002. Papers No. 13, 21.

On March 24, 2004, the EEOC filed its Amended Complaint, adding a claim that LAWL failed to preserve employment records as required under 42 U.S.C. § 2000e-8(c) and the EEOC's pursuant regulation, 29 C.F.R. § 1602.14. Paper No. 66.

On November 21, 2005, Koch entered into a settlement agreement with LAWL and voluntarily dismissed her retaliation claim with prejudice. Paper No. 144.

On March 9, 2007, following 33 months of discovery and attempts at settlement, LAWL filed its motion for summary judgment on all claims (Paper No. 177), and the EEOC filed its motion for partial summary judgment on its document-preservation claim (Paper No. 178). On May 4, 2007, LAWL filed its opposition to the EEOC's motion, and incorporated a motion for partial summary judgment on the EEOC's retaliation claim. Paper No. 183. Also pending is each party's motion for leave to file surreplies to complement the 248 pages of memoranda already before the Court. Papers No. 194, 195.

II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Only "facts that might affect the outcome of the suit under the governing law" are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  The court must also view any inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson,* 477 U.S. at 257.  The mere existence of a "scintilla" of evidence is insufficient.  *Id*. at 252.  If the nonmoving party fails to show an essential element of his case on which he

4

will bear the burden of proof at trial, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. 317, 323; Fed. R. Civ. P. 56(e).

III. Discussion

A.    Pattern or Practice of Disparate Treatment

LAWL moves for summary judgment on the EEOC's claim that LAWL has engaged in a pattern or practice of disparate treatment of men in its recruiting, hiring, and assignment of employees. LAWL argues that: (1) the EEOC lacks evidence of a *prima facie* case of such a pattern or practice of disparate treatment; and (2) in the alternative, LAWL is entitled to summary judgment on the EEOC's claims for male applicants who were denied employment prior to the charge-filing deadline in 42 U.S.C. § 2000e-5(e).

B.    Pattern-or-Practice Legal Framework

Section 707 of Title VII empowers the EEOC to sue "any person or group of persons . . . engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by [Title VII]." 42 U.S.C. § 2000e-6.

The EEOC bears the initial burden of proving a *prima facie* case of a pattern or practice of unlawful disparate treatment. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977); *E.E.O.C. v. Am. Nat. Bank*, 652 F.2d 1176, 1188 (4th Cir.

5

1981), *reh'g denied*, 680 F.2d 965 (4th Cir. 1982), *cert. denied*, 459 U.S. 923 (1982). "This prima facie showing may in a proper case be made out by statistics alone, or by a cumulation of evidence, including statistics, patterns, practices, general policies, or specific instances of discrimination." *Am. Nat. Bank,* 652 F.2d at 1188 (*citing, inter alia, Teamsters*, 431 U.S. at 339; *Hazelwood School Dist. v. United States*, 433 U.S. 299, 307-08 (1977)). Although most pattern-or-practice discrimination cases are proved through the use of statistics, statistical evidence is not necessary to establish a *prima facie* case. *See United States v. Gregory*, 871 F.2d 1239, 1243 (1989) (defendant's admission of discriminatory practices proof of Title VII violation). However,

> [p]roving isolated or sporadic discriminatory acts by the employer is insufficient to establish a prima facie case of a pattern or practice of discrimination; rather it must be established by a preponderance of the evidence that [unlawful] discrimination was the company's standard operating procedure-the regular rather than the unusual practice.

*Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 875-76 (1984) (internal quotation marks omitted).

If a *prima facie* case is established by the EEOC, the burden shifts to the employer to rebut the inference of a pattern or practice of disparate treatment. *Id*.

6

C.    Analysis of the Pattern-or-Practice Evidence

To prove a *prima facie* case of disparate treatment of men, the EEOC offers: (1) LAWL employee admissions of discriminatory practices; (2) testimony of rejected male applicants; (3) documentary evidence; and (4) statistical evidence.

The testimonial evidence alone demonstrates genuine issues of material fact regarding the EEOC's pattern-or-practice claim. Admissions by upper-level LAWL employees made within the scope of their employment indicate a practice of disparate treatment of male job applicants, and rejected male applicants were told by LAWL officials that they would not be hired because of their sex.

Joy Freathy was an LAWL Regional Manager from 1997 through December 1999 whose responsibilities included interviewing potential area and center managers.  Pl.'s Opp'n Ex. 2 ¶ 1 (Freathy Decl.).  Freathy attests that, during her employment, she was told by LAWL general manager Eileen Stankunas that Vahan Karian, LAWL's sole owner and chief executive officer, told Stankunas that men were not to be hired for any positions.  *Id*. ¶ 2.

Former LAWL mid-level employees Koch, Anastasia Meyer, and Pat Burroughs attest that Scott Moyer, LAWL's chief operating officer from 1997 through mid 1998, and Kristi O'Brien, LAWL's

director of training, instructed them during a November 1997
training event to refrain from hiring men.  Pl.'s Opp'n Ex. 4 at
25-26 (Moyer Dep.), Ex. 8 at 58 (O'Brien Dep.), Ex. 5 at 64-66,
(Koch Dep.), Ex. 6 at 78-81 (Meyer Dep.), Ex. 7 at 2 (Burroughs
Decl.).  O'Brien also told LAWL manager Sandra Brown-Talavera
that she was not supposed to hire males, and that such was
Stankunas's position on the matter.  Pl.'s Opp'n Ex. 11 at 65-66
(Aug. 1, 2003 Brown-Talavera Dep.), Ex. 16 at 50 (Apr. 30, 2001
Brown-Talavera Dep.).

In addition to other admissions by specific LAWL employees
indicating a practice of sex discrimination (Pl.'s Opp'n 8-16),
the EEOC also offers testimony from rejected male applicants who
recount being told by unidentified LAWL hiring officials that
LAWL would not hire them because of their sex.  Pl.'s Opp'n Ex.
62 at 8-12, 24-26 (Steve Comins Dep.), Ex. 63 at 73-74, 99-102
(James Gruber Dep.), Ex. 65 at 9, 17 (Everett Coleman Dep.).

LAWL challenges the value of this testimonial evidence by
contending that the statements are "isolated remark[s] in the
distant past," from employees in only five states and the
District of Columbia, and predate 2002.  These arguments go to
the probative value of the evidence, and are within the province
of the fact-finder.

As for admissibility, the statements on LAWL's hiring

8

policy by Karian, Stankunas, Moyer, and O'Brien are on a matter within the scope of their employment as CEO, general manager, COO, and director of training, are offered against LAWL, and thus are admissible under Federal Rule of Evidence 801(d)(2).[2] Similarly, the statements of the unidentified LAWL hiring officials in the applicants' testimony are also admissible as party admissions, as the applicants' depositions indicate that the declarants were involved in screening or interviewing applicants, making it reasonable to conclude that LAWL hiring practices were within the scope of the declarant's employment. *U.S. v. Portsmouth Paving Corp.*, 694 F.2d 312, 321-22 (4th Cir. 1982). Accordingly, summary judgment for LAWL on the EEOC's pattern-or-practice claim will be denied.

D.    Statutory Limitation on Certain Claims

LAWL contends that the deadline for filing an individual charge of unlawful employment practice in 42 U.S.C. § 2000e-5(e) applies to the EEOC's pattern-or-practice claim brought under 42 U.S.C. § 2000e-6. Thus, LAWL argues, the EEOC's claims for male

-----

[2] Federal Rule of Evidence 801(d) provides that:
    [a] statement is not hearsay if . . . [t]he statement is offered against the party and is . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.
Fed. R. Evid. 801(d).

applicants who were denied employment more than 180 days before the EEOC issued its September 14, 2000 determination letter are time-barred.

Under 42 U.S.C. § 2000e-6, the EEOC may file a charge on its own initiative when it has reason to believe that an employer has engaged in a pattern or practice of discriminatory conduct.  42 U.S.C. § 2000e-6(a), (c); *EEOC v. Shell Oil Co.,* 466 U.S. 54, 62 (1984).  Although § 2000e-6 does not contain its own statute of limitations, § 2000e-6(e) provides that the EEOC's actions under § 2000e-6 "shall be conducted in accordance with the procedures set forth in section 2000e-5 of this title." 42 U.S.C. § 2000e-6(e).  42 U.S.C. 2000e-5(e) requires that:

> a charge under this section shall be filed within *one hundred and eighty days* after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a state or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within *three hundred days* after the alleged unlawful employment practice occurred

42 U.S.C. § 2000e-5(e) (emphasis added).

The Fourth Circuit has not ruled on whether the limitations period of § 2000e-5(e) applies to pattern-or-practice cases brought under § 2000e-6.  In dicta, the Ninth Circuit noted that:

some of the [§ 2000e-5] procedural requirements seem to
apply only to individual unlawful employment practices and
not to pattern or practice suits. . . . For example, [§
2000e-5(e)] requires the filing of a charge within 180 days
of the alleged unlawful employment practice.  Section
[2000e-6], however, contains no requirement that anyone
file a charge.  A prima facie pattern or practice suit may
be based solely on statistical evidence.  Further, it takes
more than one unlawful practice to constitute a "pattern or
practice" of employment discrimination.  Thus, there could
be no certain date from which the 180-day period would run.

*U.S. v. Fresno Unified School Dist.,* 592 F.2d 1088, 1096 n.5

(9th Cir. 1979).

A few district courts have applied the limitations period

of § 2000e-5(e) to EEOC pattern-or-practice claims based on the

"plain language" of § 2000e-6(e),  *E.g.*, *E.E.O.C. v. Optical*

*Cable Corp.*, 169 F. Supp. 2d 539, 546 (W.D. Va. 2001); *EEOC v.*

*Sears, Roebuck & Co.,* 490 F. Supp. 1245, 1260 (M.D. Ala. 1980).

However, others have not, finding that "the application of a

limitations period in a § [2000e-6] action does not make

intuitive or legal sense," as an EEOC charge alleging a pattern

or practice of discrimination "involves a continuing violation"

that is "not amenable to a timeliness determination." *E.E.O.C.*

*v. Mitsubishi Motor Mfg. of America, Inc.*, 990 F. Supp. 1059,

1084 (C.D. Ill. 1998); *accord E.E.O.C. v. Scolari Warehouse*

*Markets, Inc.*, 488 F. Supp. 2d 1117, 1136 (D. Nev. 2007).  At

least two commentators agree that there is no statute of

limitations under Title VII for pattern-or-practice suits

11

brought by the EEOC. *Fed. Proc., L. Ed.* § 50:633 (Westlaw, June 2006); 4-75 Lex K. Larson, *Employment Discrimination* § 75.02[2] (Lexis 2d ed.1997) (concurring with the Ninth Circuit's reasoning in *Fresno*).

The language of sections 2000e-5(e) and 2000e-6(e) is not so plain as to warrant the application of § 2000e-5(e)'s limitations period for individual charges to pattern-or-practice claims brought by the EEOC under § 2000e-6. As reasoned by the Ninth Circuit in *Fresno* and the Central District of Illinois in *Mitsubishi*, § 2000e-6 permits the EEOC to remedy systematic violations of Title VII that occur over periods stretching well beyond § 2000e-5(e)'s charge-filing deadline against multiple victims. *Fresno,* 592 F.2d at 1096 n.5; *Mitsubishi*, 990 F. Supp. at 1084-86. Imposing the limitations period in § 2000e-5(e) on the EEOC's charge "would be inconsistent with the very nature of a pattern or practice violation." *Mitsubishi*, 990 F. Supp. at 1085.

Moreover, § 2000e-5(e) indicates that the statutory limitation applies specifically to charges "filed by or on behalf of the person aggrieved." 42 U.S.C. § 2000e-5(e). But unlike claims brought under § 2000e-5, EEOC actions under § 2000e-6 are not brought on behalf of individual victims, but on the EEOC's own initiative for the purpose of rectifying "a

pattern or practice of resistance to the full enjoyment of any of the rights secured by [Title VII]." 42 U.S.C. § 2000e-6(a); *Shell Oil,* 466 U.S. at 62.

Furthermore, "it is crucial that the [EEOC]'s ability to investigate charges of systemic discrimination not be impaired." *Shell Oil,* 466 U.S. at 69. In amending § 2000e-6 to transfer pattern-or-practice suit authority to the EEOC, Congress observed that "[p]attern or practice discrimination is a pervasive and deeply imbedded form of discrimination," warranting "[u]nrelenting broad-scale action" to achieve the objectives of Title VII. H.R. Rep. No. 92-238 at 14 (1972, *reprinted in* 1972 U.S.C.C.A.N. 2137, 2149. Accordingly, § 2000e-5(e) will not be applied to exclude the EEOC's claims for male applicants rejected prior to the charge-filing deadline.

E.    The EEOC's Retaliation Claim

LAWL contends that the retaliation claim brought by the EEOC for Koch under 42 U.S.C. § 2000e-5(f) is mooted by Koch's settlement agreement and voluntary dismissal.

"When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *Gen. Tel. Co. of the Northwest, Inc. v. E.E.O.C.*, 446 U.S. 318, 326 (1980). Thus, "the EEOC is not merely a proxy for the

victims of discrimination and . . . [its] enforcement suits should not be considered representative actions." *Id*. Accordingly, the EEOC is "the master of its own case," and "has the authority to pursue victim-specific relief regardless of the forum that the employer and employee have chosen to resolve their disputes." *E.E.O.C. v. Waffle House, Inc*., 534 U.S. 279, 292, 295 (2002). Simply put, Koch cannot limit the EEOC's authority to enforce Title VII by waiving the EEOC's statutory remedies.

The holding in *Waffle House* was expressly limited to the effect of arbitration agreements on EEOC remedies. *Id*. at 297. Although the Supreme Court noted that a monetary settlement should at least limit the extent of the EEOC's monetary recovery for the victim, as "courts can and should preclude double recovery by an individual," it did not state that a private waiver of rights could completely preclude the EEOC from seeking victim-specific relief *Id*. at 297. Following the rationale in *Waffle House*, the Court will permit the EEOC to seek monetary relief for its retaliation claim, and will offset any such award by the monetary relief paid Koch under her settlement agreement with LAWL.[3] *Senich v. American-Republican, Inc.,* 215 F.R.D. 40,

---

[3] LAWL contends that Koch's financial claims, including those for

14

45 (D. Conn. 2003); *accord E.E.O.C. v. Continental Airlines Inc.*, No. 04-C-3055, 2006 WL 3505485, at *2 (N.D. Ill. Dec. 4, 2006).

LAWL also argues that the EEOC is not entitled to injunctive relief under its retaliation claim because there is no evidence that LAWL has retaliated against any employee since Koch's discharge in 1998, or that it is likely to do so in the future.

The "voluntary discontinuance of challenged activities by a defendant" only makes injunctive relief unnecessary "when there is *no* reasonable expectation that the wrong will be repeated," and the "defendant[] face[s] a heavy burden to establish mootness in such cases." *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001).

The EEOC has produced evidence of another incident of retaliation since Koch's discharge (Pl.'s Opp'n Ex. 20 at 18-19, Ex. 26 at 249-52), and LAWL fails to meet its heavy burden of establishing mootness, alleging only that future non-compliance with Title VII's retaliation prohibition is improbable because

---

punitive damages, have been fully satisfied by the settlement agreement.  But because LAWL chooses to keep the terms of the agreement confidential, it fails to show what amount recovered by the EEOC would be a windfall for Koch.

of its "growing HR Department."  Def.'s Opp'n 30.  Accordingly,
LAWL's motion for summary judgment on the EEOC's retaliation
claim will be denied, and its motion for partial summary
judgment on the same claim will be denied as moot.

F.   Records Preservation

      The EEOC claims that LAWL has violated the record-retention
requirements of 42 U.S.C. § 2000e-8(c) and the EEOC's pursuant
regulation, 29 C.F.R. § 1602.14.  As remedies, the EEOC seeks an
injunction requiring LAWL to comply with the statute and
regulation, and adverse-inference instructions regarding those
records that are unavailable due to LAWL's failure to comply.
Both parties move for summary judgment.

      Title 42 U.S.C. § 2000e-8(c) provides that:

      [e]very employer . . . shall (1) make and keep such records
      relevant to the determinations of whether unlawful
      employment practices have been or are being committed, (2)
      preserve such records for such periods, and (3) make such
      reports therefrom as the [EEOC] shall prescribe by
      regulation.

42 U.S.C. § 2000e-8(c).  Under 29 C.F.R. § 1602.14, the EEOC
requires:

      [a]ny personnel or employment record made or kept by an
      employer (including but not necessarily limited to . . .
      records having to do with hiring, . . . or termination . .
      .) shall be preserved by the employer for a period of one
      year from the date of the making of the record or the
      personnel action involved, whichever occurs later.  In the
      case of involuntary termination of an employee, the
      personnel records of the individual terminated shall be

16

kept for a period of one year from the date of termination. Where a charge of discrimination has been filed . . . against an employer under title VII . . . , the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action.  The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected.

29 C.F.R. § 1602.14.

G.   Injunctive Relief

Title VII expressly provides injunctive relief for violations of § 2000e-8(c) and the EEOC's pursuant requirements. 42 U.S.C. § 2000e-8(c) ("If any person required to comply with the provisions of this subsection fails or refuses to do so, the . . . district court . . . shall, upon application of the [EEOC], . . . have jurisdiction to issue to such person an order requiring him to comply.").

On January 7, 2005, the Court affirmed Magistrate Judge Grimm's June 30, 2004 Order granting in part then plaintiff-intervenor Koch's motion for discovery-abuse sanctions under Rule 37.  Papers No. 106, 126.  Judge Grimm found that LAWL had failed to retain documents that were "incredibly relevant" to Koch's retaliation claim, and recommended an adverse-inference instruction to the Court.  Pl.'s Mem. App. A. Ex. 1 at 43 (June

17

29, 2004 Mot. Hr'g Tr.).

Although LAWL argues that the facts concerning its preservation of employment records relevant to the EEOC's pattern-or-practice claim are in dispute, it does not challenge the Court's factual finding that it breached its duty under Title VII to preserve all documents and materials relevant to Koch's retaliation claim.  LAWL relies instead on its contention that the EEOC's retaliation claim was mooted by Koch's settlement agreement, and thus its obligation to retain documents related to Koch's claim terminated with her settlement.

The EEOC's retaliation claim, however, is not moot, and LAWL's failure to abide by Title VII's retention policy with respect to that claim remains undisputed.  Accordingly, the Court will grant the requested injunctive relief and order LAWL to comply with the requirements of 42 U.S.C. § 2000e-8(c) and 29 C.F.R. § 1602.14.

H.   Adverse Inference Instructions

LAWL argues that the EEOC's motion for adverse inference instructions is procedurally improper because the EEOC never moved for an order to compel discovery of the allegedly despoiled documents or for sanctions under Rule 37.  Thus, LAWL contends, the EEOC's circumnavigation of discovery procedures

18

makes its appeal to the Court's inherent powers unjustified. The EEOC argues that its Amended Complaint expressly requests adverse-inference instructions as relief from LAWL's Title-VII-record-keeping violation, and granting such relief is in the Court's inherent power to remedy spoliation of evidence.

"The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct which abuses the judicial process." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (internal quotation marks omitted). In choosing an appropriate sanction for spoliation, "the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." *Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156 (4th Cir. 1995).

If spoliation has occurred, a court may impose an adverse-inference instruction pursuant to its inherent authority, but such an extreme sanction is not to be given lightly. *See Thompson v. U.S. Dept. of Housing and Urban Development*, 219 F.R.D. 93, 100-01 (D. Md. 2003) (considering adverse-inference instructions as sanctions for violating discovery orders). As the Court explained:

19

> In practice, an adverse inference instruction often ends the litigation--it is too difficult a hurdle for the spoliator to overcome.  The *in terrorem* effect of an adverse inference is obvious.  When a jury is instructed that it may infer that the party who destroyed potentially relevant evidence did so out of a realization that the evidence was unfavorable, the party suffering this instruction will be hard-pressed to prevail on the merits.

*Id.*  Thus, to warrant an adverse-inference instruction, the movant must show that:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered;
> (2) the destruction or loss was accompanied by a culpable state of mind; and
> (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Id.* at 101 (internal quotation marks omitted).  Three states of mind satisfy the culpability requirement: bad faith or knowing destruction, gross negligence, and ordinary negligence, with the more culpable state of mind lessening the burden of showing relevance.  *Id.*  "When evidence is destroyed in bad faith (i.e. intentionally or willfully), that fact alone is sufficient to demonstrate relevance."  *Id.* (internal quotation marks omitted).

As to whether an adverse-inference instructions are appropriate remedies for violations of Title VII's document-retention requirements, there is no Fourth Circuit law directly

20

on point, but other circuits provide some guidance.  The Seventh Circuit affirmed a refusal to give such an adverse-inference instruction, holding that, "absent bad faith, a violation of 29 C.F.R. § 1602.14 . . . would not automatically trigger an adverse inference."  *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002).  The Second Circuit approved an adverse-inference instruction for an employer's complete failure to retain an employee's performance records in *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 383-84 (2nd Cir. 2001).  In *Zimmermann*, the court held that:

> where, as here, the employer was required by law to retain the employee's records, bad faith that might otherwise be required, need not be shown to permit an adverse inference; intentional destruction satisfies the *mens rea* requirement. The only other requirement is that the party seeking the inference show that the destroyed records were relevant to the party's claim or defense.

*Id.* (internal citations omitted).

I.  Retaliation Evidence

The Court has already affirmed Magistrate Judge Grimm's recommendation of an adverse-inference instruction for LAWL's failure to maintain documents relative to Koch's retaliation claim.  Papers No. 106, 126; Pl.'s Mem. App. A. Ex. 1 at 43.  As the undisputed facts warranting redress of LAWL's spoliation of evidence relevant to the EEOC's retaliation claim are identical to those of Koch's, it follows that an adverse-inference

21

instruction is equally appropriate.  Accordingly, the Court will
provide an adverse-inference instruction to the jury with
respect to the EEOC's retaliation claim.

J.    Pattern-or-Practice Evidence

The facts material to LAWL's alleged spoliation of records
relevant to the EEOC's pattern-or-practice claim, however, are
in dispute.  The parties disagree on when LAWL's obligation to
preserve documents relative to the pattern-or-practice claim
commenced.  Section § 1602.14 specifies that "[w]here a charge
of discrimination has been filed . . . against an employer under
title VII . . . , the respondent employer shall preserve all
personnel records relevant to the charge or action until final
disposition of the charge or the action."  29 C.F.R. § 1602.14.
The EEOC argues that LAWL was put on notice of a potential
pattern-or-practice claim as early as July 1998, when LAWL
received a copy of Koch's retaliation charge.  LAWL contends
that it did not anticipate litigation concerning the pattern-or-
practice claim until it received the EEOC's September 14, 2000
determination letter.

Koch's amended retaliation charge states that she was
terminated "because [she] complained . . . about [LAWL's]
failure to hire qualified male applicants."  Def.'s Mem. Ex. XX.
Although Koch's charge demonstrates that she opposed a

22

discriminatory hiring practice, it does not indicate whether the offending conduct was localized or part of a company-wide policy, thus it is insufficient notice of a pattern-or-practice claim.  However, LAWL received notice of the scope of Koch's sex-discrimination allegation prior to receipt of the EEOC's determination letter.  On May 10, 2000, the EEOC provided LAWL's attorneys a request for "additional documentation" relevant to "the underlying allegations of [LAWL's] hiring practices." Def.'s Opp'n Ex. H.  The May 10, 2000 letter specifically requested "copies of all applications and/or resumes, applicant logs, lead/response tracking sheets and any interview notes pertaining to counselor vacancies occurring during the period of January 1995 to the present," as well as "a list of all hires . . . hired by [LAWL]" during the same period.  *Id.*  Accordingly, LAWL was on notice of its statutory duty to preserve documents relative to the EEOC's pattern-or-practice claim when it received the EEOC's May 10, 2000 request.

Although the temporal extent of LAWL's obligation is resolved, the facts material to LAWL's state of mind and what evidence has actually been despoiled remain disputed.  For example, the EEOC alleges that in early 2002, LAWL failed to instruct its payroll administrator to preserve the payroll data of former employees in its payroll system; but LAWL shows that

the employee data are still available in an alternative format.
Def.'s Opp'n Ex. O at 171-72; Ex. KK at 250-51.  The EEOC
alleges that it has been unable to locate an application or
resume in at least 52% of the electronic personnel files
produced by LAWL,; however it admits that it has not had time to
review all of the applications and resumes produced by LAWL.
Pl.'s Mem. 8 n.1.  The EEOC further alleges that LAWL either
destroyed or failed to keep the applications and resumes of
persons whom it did not hire.  But the EEOC's evidence of
employees destroying applicant resumes or applications is only
anecdotal, and falls short of proving a company policy of
destroying applicant records.  Further, LAWL produces evidence
demonstrating that it has maintained a policy of retaining
documents, resumes, and interview notes since 1999 (Def.'s Opp'n
Ex. P at 44-45, 57-58. (Karen Siegel Dep.)), and has attempted
to make applicant data from internet job-posting services
available to the EEOC (Def.'s Opp'n Exs. AA, BB).

In sum, there are too many disputed facts material to the
EEOC's claim of despoiled pattern-or practice evidence to
warrant summary judgment.  Accordingly, the EEOC's motion for
adverse-inference instructions with respect to its pattern-or-
practice claim will be denied; and, as the EEOC's motion for
partial summary judgment will otherwise be granted, LAWL's

motion for summary judgment with respect to the EEOC's document-preservation claims will be denied.

IV.  Motions for Leave to File Surreplies

"Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."  D. Md. R. 105(2)(a).

The EEOC's proposed surreply responds to LAWL's use of *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162 (2007) in its Reply to support its statute of limitations argument. LAWL's proposed surreply challenges evidence cited in the EEOC's Reply that LAWL contends was undisclosed and is inadmissible.

As the parties' proposed surreplies respond to case law and evidence that were not relied upon by the Court in its determinations, their arguments are irrelevant.  Accordingly, the parties' motions for leave to file surreplies will be denied.

V.  Conclusion

For the reasons stated above: (1) LAWL's motion for summary judgment will be denied; (2) LAWL's motion for partial summary judgment will be denied as moot; (3) the EEOC's motion for partial summary judgment will be granted in part and denied in part: LAWL will be ordered to comply with the document retention requirements of 42 U.S.C. § 2000e-8(c) and 29 C.F.R. § 1602.14, and an adverse-inference instruction will be given with respect

25

to the EEOC's retaliation claim, but not with respect to its
pattern-or-practice claim; and (4) the parties' motions for
leave to file surreplies will be denied.


<u>   8/31/07   </u>                          <u>         /s/                      </u>
Date                                 William D. Quarles, Jr.
                                     United States District Judge